**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **BOSTON EDISON COMPANY** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **No. 99-447C**<br>**(Judge Lettow)** |
| **THE UNITED STATES,** | ) | |
| **Defendants.** | ) | |

**PLAINTIFF BOSTON EDISON COMPANY'S PROPOSED FINDINGS OF UNCONTROVERTED FACT IN SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT ON LIABILITY FOR BREACH OF CONTRACT PURSUANT TO COUNT I OF ITS AMENDED COMPLAINT**

Pursuant to Rule 56(h)(l) of the Rules of the U.S. Court of Federal Claims ("RCFC"), Plaintiff Boston Edison Company ("Boston Edison"), through its undersigned counsel, hereby submits the following Proposed Findings of Uncontroverted Fact in Support of Its Cross-Motion for Summary Judgment on Liability for Breach of Contract Pursuant to Count I of Its Amended Complaint:

1. Boston Edison was the sole owner and operator of the Pilgrim Nuclear Power Station in Plymouth, Massachusetts ("Pilgrim") until the sale of that facility on July 13, 1999. Am. Compl. ¶¶ 2, 4.

2. Pursuant to the Nuclear Waste Policy Act of 1982, as amended, 42 U.S.C. § 10101 *et seq.* ("NWPA"), on June 17, 1983, Boston Edison and the U.S. Department of Energy ("DOE") executed the Standard Contract for Disposal of Spent Nuclear Fuel and/or High-Level Radioactive Waste, 10 C.F.R. § 961.11 ("Standard Contract"). Am. Compl. ¶ 31.

3. The Standard Contract was an important and integral element of Boston Edison's conduct of its business of generating electricity at Pilgrim, in that it provided for the orderly disposal of spent nuclear fuel and/or high-level radioactive waste ("SNF") produced during the normal course of operation. The Standard contract also facilitated the timely and orderly completion of post-retirement activities following the end of Pilgrim's life as a nuclear generating facility. Am. Compl. ¶ 3.

4. The NWPA made entry into the Standard Contract mandatory for all utilities, including Boston Edison. *Maine Yankee Atomic Power Co. v. United States*, 225 F.3d 1336, 1338 (Fed. Cir. 2000).

5. In accordance with the Standard Contract, DOE was required to begin removal and disposal of Boston Edison's SNF no later than January 31, 1998 in exchange for Boston Edison's payment of fees into the Nuclear Waste Fund. Standard Contract, 10 C.F.R. § 961.11, Art. II; *see also Maine Yankee*, 225 F.3d at 1338.

6. DOE was "under a statutory 'obligation . . . reciprocal to the utilities' obligation to pay, to start disposing of the SNF no later than January 31, 1998.'" *N. States Power Co. v. United States*, 224 F.3d 1361, 1366 (Fed. Cir. 2000) (quoting *Ind. Mich. Power Co. v. United States*, 88 F.3d 1272, 1277 (D.C. Cir. 1996)).

7. "[T]he [Nuclear Waste Policy Act] directs DOE to undertake the duty to begin taking the SNF by January 31, 1998, whether or not it has a repository or interim storage facility." *N. States Power Co. v. United States Dep't of Energy*, 128 F.3d 754, 760 (D.C. Cir. 1997).

8. "DOE's duty to take the materials by the 1998 deadline is also an integral part of the Standard Contract, which provides that the Department 'shall begin'

disposing of the SNF by January 31, 1998." *Northern States*, 128 F.3d at 758 (citing and quoting the Standard Contract, 10 C.F.R. § 961.11, Art. II).

9. The duty to begin taking SNF by January 31, 1998 was "without qualification or condition." *Indiana Micigan.*, 88 F.3d at 1276.

10. On May 3, 1995, DOE formally admitted that it would be unable to begin to dispose of SNF until 2010. *Final Interpretation of Nuclear Waste Acceptance Issues*, 60 Fed. Reg. 21,793, 21,794 (May 3, 1995).

11. DOE did not begin to remove and dispose of Boston Edison's SNF at Pilgrim by January 31, 1998. *Maine Yankee*, 225 F.3d at 1338.

12. DOE's failure to begin removal and disposal of SNF at Pilgrim by January 31, 1998 constituted a breach of the Standard Contract and "[t]he breach involved all the utilities that had signed the contract – the entire nuclear electric industry," including Boston Edison. *Maine Yankee*, 225 F.3d at 1342.

13. Boston Edison sold Pilgrim to Entergy Nuclear Generating Company, LLC ("Entergy") on July 13, 1999. As part of the sales transaction for Pilgrim, Boston Edison assigned the Standard Contract to Entergy subject to an express reservation of certain rights and claims, including claims related to the Standard Contract. Am. Compl. ¶ 4.

14. By the closing date of Boston Edison's sale of Pilgrim, Boston Edison's payments into the Nuclear Waste Fund exceeded $89 million. Appendix to Boston Edison Company's Brief in Response to Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment Upon Counts I and II and for Summary Judgment

Upon Count III of Plaintiff's Amended Complaint and Cross-Motion for Summary Judgment on Liability Regarding Count I of the Amended Complaint ("App.") at 2.

15. Boston Edison suffered damages as a result of DOE's failure to dispose of its SNF. Boston Edison realized significantly less value in the sale of Pilgrim than it would have realized had DOE met its obligations under the Standard Contract. App. at 2.

16. As part of the license transfer process from Boston Edison to Entergy, Boston Edison was required by the Nuclear Regulatory Commission to transfer a fully funded decommissioning trust fund (net of expected investment returns to end of license life) to Entergy to ensure that it would have sufficient funds to decommission the plant and surrounding site once the plant could no longer operate. Because of the uncertainty as to the timing of decommissioning and the ultimate removal of the SNF caused by DOE's breach of the Standard Contract, Boston Edison was required to transfer a much larger decommissioning trust to Entergy than would otherwise have

been the case had DOE met its obligations under the Standard Contract. App. at 2.

Date: July 9, 2004

Respectfully submitted,

s/ Richard J. Conway
Richard J. Conway
DICKSTEIN SHAPIRO MORIN
& OSHINSKY LLP
2101 L Street, NW
Washington, DC 20037
(202) 785-9700
*Counsel of Record for*
*Boston Edison Company*

Of Counsel: David M. Nadler
Nicholas W. Mattia, Jr.
Bradley D. Wine
Jeffery P. Becherer
DICKSTEIN SHAPIRO MORIN
& OSHINSKY LLP
2101 L Street, NW
Washington, DC 20037
(202) 785-9700

Neven Rabadjija, Esq.
Associate General Counsel
NSTAR Electric & Gas Corporation
800 Boylston Street
17th Floor
Boston, MA 02199-0228