**NO. 99-447C**
**(Judge Lettow)**

---

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**BOSTON EDISON COMPANY,**

**Plaintiff,**

**v.**

**UNITED STATES,**

**Defendant.**

---

# DEFENDANT'S MOTION TO STRIKE THE AFFIDAVIT OF GEOFFREY LUBBOCK

---

**PETER D. KEISLER**
**Assistant Attorney General**

**DAVID M. COHEN**
**Director**

**s/Harold D. Lester**
**HAROLD D. LESTER, JR.**
**Assistant Director**

**s/Stefan Shaibani**
**STEFAN SHAIBANI**
**Trial Attorney**
**U.S. Department of Justice**
**Civil Division**
**Commercial Litigation Branch**
**1100 L Street, N.W.**
**ATTN: Classification Unit, 8th Floor**
**Washington, D.C. 20530**
**Tel: 202-305-7597**
**Fax: 202-307-2503**

**OF COUNSEL:**
**JANE K. TAYLOR**
**Office of General Counsel**
**U.S. Department of Energy**
**1000 Independence Ave., S.W.**
**Washington, D.C. 20585**

**August 6, 2004**

# TABLE OF CONTENTS

DEFENDANT'S MOTION TO STRIKE THE AFFIDAVIT OF GEOFFREY LUBBOCK........ 1

BACKGROUND........................................................................................................ 2

ARGUMENT.......................................................................................................... 4

I. THE AFFIDAVIT OF MR. LUBBOCK IS INADMISSIBLE PURSUANT TO FEDERAL RULES OF EVIDENCE 602 AND 901 BECAUSE MR. LUBBOCK LACKS PERSONAL KNOWLEDGE OF THE MATTERS STATED IN HIS AFFIDAVIT........................................................................................ 4

II. MR. LUBBOCK'S AFFIDAVIT IS INADMISSIBLE BECAUSE IT IS NOT RATIONALLY BASED UPON HIS PERCEPTION AND INTRODUCES UNRELIABLE EXPERT TESTIMONY UNDER THE GUISE OF LAY WITNESS TESTIMONY IN VIOLATION OF FEDERAL RULES OF EVIDENCE 701 AND 702................................................................ 11

A. Paragraphs 9 Through 15 Of Mr. Lubbock's Affidavit Are Inadmissible Because They Are Not Based Upon First-Hand Knowledge And Attempt To Present Unreliable Expert Testimony Under The Guise of Lay Witness Testimony........................................................................ 12

B. To The Extent That Mr. Lubbock's Affidavit Is Being Introduced As Expert Testimony, It Is Inadmissible Under Federal Rule of Evidence 702 And Daubert......................................................................... 18

(i) Boston Has Neither Qualified Mr. Lubbock As An Expert, Nor Identified Him As An Expert In Its Initial Disclosures............................ 19

(ii) Mr. Lubbock's Testimony Is Inherently Unreliable................................ 20

CONCLUSION...................................................................................................... 21

# TABLE OF AUTHORITIES

## CASES


Abundis v. United States,
15 Cl. Ct. 619 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Asplundh Manufacturing Division v. Benton Harbor Engineering,
57 F.3d 1190 (3d Cir. 1995), cited in . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Bank of China v. NBM LLC,
359 F.3d 171 (2d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

Bourjaily v. United States,
483 U.S. 171 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Carmen v. San Francisco Unified School District,
237 F.3d 1026 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Conoco, Inc. v. Department of Energy,
99 F.3d 387 (Fed. Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7

DIJO, Inc. v. Hilton Hotels Corp.,
351 F.3d 679 (5th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15, 16, 17

Daubert v. Merrell Dow Pharmaceuticals, Inc.,
509 U.S. 579 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 19, 20, 21

Davis v. City of Chicago,
841 F.2d 186 (7th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 8

Dzialo v. United States,
230 Ct. C 677 F.2d 873 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

General Electric Co. v. Joiner,
522 U.S. 136 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Kumho Tire Co. v. Carmichael,
119 S. Ct. 1167 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Lujan v. National Wildlife Federation,
497 U.S. 871 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

O'Conner v. Commonwealth Edison Co.,
13 F.3d 1090 (7th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Orr v. Bank of America,
285 F.3d 764 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7

Payne v. Pauley,
337 F.3d 767 (7th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

United States v. Caballero,
277 F.3d 1235 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

United States v. Dotson,
799 F.2d 189 (5th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 12, 13

United States v. Figueroa-Lopez,
125 F.3d 1241 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Visser v. Packer Engineering Associate,
924 F.2d 655 (7th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

## STATUTES AND REGULATIONS

Fed. R. Civ. Proc. 56(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Federal Rule of Civil Procedure 56(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Fed. R. Evid. 602 (emphasis added) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Fed. R. Evid. 701(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12, 18

Fed. R. Evid. 702 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20, 22

Fed. R. Evid. 901(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7

## MISCELLANEOUS

Weinstein's Federal Evidence § 701.03[4][b] . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| BOSTON EDISON COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 99-447C |
| | ) | (Judge Lettow) |
| UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S MOTION TO STRIKE THE AFFIDAVIT OF GEOFFREY LUBBOCK

Pursuant to Federal Rules of Evidence ("FRE") 602, 701, 702, and 901, and Rule12(f) of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States, respectfully requests that the Court strike portions of the affidavit of Geoffrey Lubbock filed by Boston Edison Company ("Boston") in support of its response to our motion to dismiss or, in the alternative, for summary judgment, and in support of Boston's cross-motion for summary judgment upon liability.[1] Specifically, we seek to strike paragraphs 9 through 15 of Mr. Lubbock's affidavit and related portions of Boston's proposed findings of fact and brief that rely upon these paragraphs of Mr. Lubbock's affidavit.

As demonstrated below, these paragraphs of Mr. Lubbock's affidavit attempt to introduce into evidence matters regarding which Mr. Lubbock has no personal knowledge, contain purely

---

[1] Although we are not required to file a motion to strike in order to seek exclusion of evidence submitted in a summary judgment motion, and instead may address that request in our reply brief, it is permissible for us to do so. See Abundis v. United States, 15 Cl. Ct. 619 (1988) (granting a motion to strike a settlement agreement submitted in a summary judgment motion); RCFC 12(f) ("Upon motion made by a party before responding to a pleading or if no responsive pleading is permitted by these rules, . . . the court may order striken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."). But see Dzialo v. United States, 230 Ct. Cl. 506, 512 n.3, 677 F.2d 873, 875 n.3 (1982) (under old rules of the Court of Claims, "only pleadings and evidence, and not portions of a legal brief, [were] subject to a motion to strike").

speculative claims regarding the loss of value of Boston's Pilgrim plant which are not based upon the rational perception of Mr. Lubbock, and constitute unreliable expert testimony proffered under the guise of lay witness testimony. Therefore, we respectfully request the Court to grant our motion and strike paragraphs 9 through 15 of Mr. Lubbock's affidavit. We further respectfully request the Court to strike the portions of Boston's proposed findings of fact and brief that rely upon the aforementioned paragraphs of Mr. Lubbock's affidavit.

## BACKGROUND

In response to our motion to dismiss or, in the alternative, for summary judgment, and in support of its cross motion for summary judgment upon liability, Boston heavily relies upon the affidavit of Mr. Lubbock to substantiate its claim that the Department of Energy's ("DOE") failure to begin accepting utility spent nuclear fuel ("SNF") and high-level radioactive waste ("HLW") on January 31, 1998, allegedly resulted in devaluation of Boston's Pilgrim plant by reducing the potential number of bidders and the amount that each bidder was willing to pay for Pilgrim. Boston characterizes its damages as "the dramatic decrease in the number of prospective bidders that actually participated in the auction of Pilgrim" and "a significant reduction in the per kWh purchase price of Boston Edison's nuclear assets." Pl.'s Brief, at 8. Boston further alleges that "the fair market value of Pilgrim was significantly decreased as a result of the future costs that encumbered the property as a direct result of the Government's breach. These costs included indefinite future payments to DOE of the one mil per kWh fee assessed by DOE, as well as increased costs associated with decommissioning Pilgrim." Pl.'s Brief, at 8.

Mr. Lubbock's affidavit constitutes the sole "factual" support for Boston's damages claim relating to the alleged loss of value of its Pilgrim plant.[2] In his affidavit, Mr. Lubbock states that "the Government's breach of the Standard Contract with Boston Edison had a significant negative impact on the fair market value of Pilgrim relative to what the value would have been had DOE performed its obligations under the Standard Contract. This is demonstrated, in part, by the limited number of bidders and the low prices that they were willing to pay . . . ." Lubbock Affidavit, ¶ 15.

However, as demonstrated below, Mr. Lubbock's affidavit is inadmissible because it violates Federal Rules of Evidence 602, 701, 702, and 901. Consequently, Mr. Lubbock's affidavit cannot be introduced as evidence to support Boston's claim that Pilgrim was sold for less than it would have been had DOE begun accepting Boston's SNF on January 31, 1998. Indeed, the Court should grant our motion for summary judgment and deny Boston's cross motion for summary judgment upon liability because Boston cannot establish that it suffered any cognizable damages.

---

[2] Boston has not provided us with its damages model to this date.

## ARGUMENT

I. THE AFFIDAVIT OF MR. LUBBOCK IS INADMISSIBLE PURSUANT TO FEDERAL RULES OF EVIDENCE 602 AND 901 BECAUSE MR. LUBBOCK LACKS PERSONAL KNOWLEDGE OF THE MATTERS STATED IN HIS AFFIDAVIT

In his affidavit, Mr. Lubbock makes various statements regarding alleged damages suffered by Boston as a result of DOE's failure to begin accepting Boston's SNF on January 31, 1998. Mr. Lubbock claims that the Government's alleged breach of the Standard Contract for Disposal of Spent Nuclear Fuel and High-Level Radioactive Waste ("Standard Contract") reduced the number of bidders and the prices they were willing to pay for Boston's Pilgrim plant. However, as discussed below, Mr. Lubbock's affidavit is inadmissible under Federal Rules of Evidence 602 and 901, because Mr. Lubbock lacks personal knowledge regarding the bidders' valuation models and pricing decisions and the number of bidders that there would have been had DOE begun accepting utility SNF on January 31, 1998.

Federal Rule of Evidence 602 provides:

> **Rule 602. Lack of Personal Knowledge**
>
> A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of the witness' own testimony. This rule is subject to the provisions of rule 703, relating to opinion testimony by expert witnesses.

Fed. R. Evid. 602 (emphasis added). The requirement of personal knowledge as a precondition to admissibility of lay testimony applies to affidavits submitted in a summary judgment motion. See Fed. R. Civ. Proc. 56(e) ("Supporting and opposing affidavits shall be made on personal knowledge"). As the Court of Appeals for the Seventh Circuit held in Payne v. Pauley, 337 F.3d

767, 772 (7th Cir. 2003), "these affidavits fail to thwart summary judgment because they are not based on personal knowledge as required by both the Federal Rule of Civil Procedure on summary judgment, Rule 56(e) . . . , and by Federal Rule of Evidence 602." Payne, 337 F.3d at 772. Indeed, "although personal knowledge may include reasonable inferences, those inferences must be 'grounded in observation or other first-hand personal experience. They must not be flights of fancy, speculations, hunches, intuitions, or rumors about matters remote from that experience.'" Id. (quoting Visser v. Packer Engineering Assoc., 924 F.2d 655, 659 (7th Cir. 1991) (en banc)).

The requirement of personal knowledge is also a precondition to admissibility of lay witness testimony under Federal Rule of Evidence 901. See Fed. R. Evid. 901(b)(1) (indicating that the requirement of authentication can be satisfied by the "testimony of [a] witness with knowledge"). Thus, "[a]uthentication is a 'condition precedent to admissibility,' and this condition is satisfied by 'evidence sufficient to support a finding that the matter in question is what its proponent claims.' Fed. R. Evid. 901(a)." Orr v. Bank of Am., 285 F.3d 764, 773 (9th Cir. 2002); see also Conoco, Inc. v. Dep't of Energy, 99 F.3d 387, 391-95 (Fed. Cir. 1996) (imposing an authentication requirement for admissibility of evidence).

In his affidavit, Mr. Lubbock states that, in contrast to the auction of Boston's fossil fuel assets in which 60 parties participated in the initial due diligence process and six parties submitted final bids, only 10 parties participated in the initial due diligence process and two parties submitted final bids in the auction of Boston's Pilgrim plant. Lubbock Affidavit, ¶ 9. Mr. Lubbock then concludes that "the low number of Pilgrim bidders relative to the number of fossil fuel bidders was affected by the increased risk and cost associated with the uncertain future

of permanent disposition of SNF. In my opinion, this factor significantly reduced the per kWh purchase price for Pilgrim, as compared to the per kWh price received for Boston Edison's fossil fuel assets." Lubbock Affidavit, ¶ 10.

Mr. Lubbock's statement is inadmissible under Federal Rule of Evidence 602 because Mr. Lubbock lacks personal knowledge regarding the factors that went into the valuation models of Pilgrim's prospective and actual bidders. Mr. Lubbock cannot possibly know what caused potential bidders not to engage in the initial due diligence process for the sale of Pilgrim. Further, Boston has not presented any evidence to establish that the alleged "uncertain future of permanent disposition of SNF" is a factor that went into the valuation models (and pricing decisions) of bidders. Boston has not submitted the valuation models of its prospective and actual bidders, which would be the only evidence that could establish Mr. Lubbock's statements.

Indeed, Mr. Lubbock's statements are purely speculative, lacking in foundation, and inadmissible under Federal Rule of Evidence 602. See Carmen v. San Francisco Unified School District, 237 F.3d 1026, 1028 (9th Cir. 2001) ("To be cognizable on summary judgment, evidence must be competent. Carmen failed to show personal knowledge. It is not enough for a witness to tell all she knows; she must know all she tells. . . . Federal Rule of Evidence 602 prevents a witness from testifying on a matter 'unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.'"); Davis v. City of Chicago, 841 F.2d 186, 189 (7th Cir. 1988) (stating that in a summary judgment motion, the "affidavits presented must be based on the personal knowledge of the affiants and must set forth facts in a manner that would be admissible in evidence."); accord United States v. Dotson, 799 F.2d 189, at

192, n. 2 (5th Cir. 1986) ("The requirement of 'first-hand knowledge' is initially embodied in Federal Rule of Evidence 602").

Similarly, Mr. Lubbock cannot authenticate his statements under Federal Rule of Evidence 901 because he is not a "witness with knowledge." Fed. R. Evid. 901(b)(1). Therefore, Mr. Lubbock's statement that the alleged "uncertain future of permanent disposition of SNF" significantly reduced the number of bidders and the price that they were willing to pay for Pilgrim, is inadmissible. See Orr, 285 F.3d at 773; Conoco; 99 F.3d at 391-95.

In addition, Mr. Lubbock's statement is inherently unreliable because it is based upon a comparison of two completely unrelated assets. Mr. Lubbock compares the auction of Boston's fossil fuel assets with the auction of Boston's nuclear assets. This comparison is improper because the market for fossil fuel assets is entirely different from the market for nuclear assets. The market for fossil fuel assets may, in fact, have significantly higher demand than the market for nuclear assets, irrespective of the Government's alleged breach of the Standard Contract. If Mr. Lubbock were to make a comparison, he would have to compare the sale of Boston's nuclear assets with the sale of other utilities' nuclear assets. However, Mr. Lubbock has failed to do so.

Mr. Lubbock next states that bidders "were concerned about the future viability of Pilgrim to continue to produce revenues beyond the end of its initial license life in 2012. . . . Without a permanent repository in place and operational, the owner of Pilgrim could either (a) forego seeking a renewal of the operating license by the Nuclear Regulatory Commission and close the facility or (b) expend considerable funds to construct a dry cask on-site storage facility." Lubbock Affidavit, ¶ 11. Mr. Lubbock concludes that, "bidders reflected this additional risk in their bids, thus further reducing the price they would be willing to pay for Pilgrim." Lubbock

Affidavit, ¶ 11. However, as discussed above, Mr. Lubbock lacks personal knowledge regarding the factors that went into the valuation models of Pilgrim's prospective and actual bidders. Boston has not submitted the valuation models of Pilgrim's bidders. In the absence of evidence indicating that these factors went into the valuation models of Pilgrim's prospective and actual bidders, Mr. Lubbock's statement lacks foundation and is inadmissible under Federal Rules of Evidence 602 and 901. As the Court of Appeals for the Seventh Circuit explained in Davis, a plaintiff cannot defeat a motion for summary judgment by relying upon an affidavit lacking in foundation:

> To substantiate his property claim of a long-standing customs or policy, Davis has only submitted one conclusory statement in his affidavit. . . . Davis' assertion not only fails to satisfy the requirements of Federal Rule of Civil Procedure 56(e), but it also fails to satisfy the requirements for evidence based on personal knowledge set forth by Federal Rule of Evidence 602. . . . Davis' conclusory assertion, unsubstantiated with any specific facts, fails to indicate any factual basis which would tend to show that he had personal knowledge of the matter. . . . Because Davis substantiates his allegations of a long-standing custom or policy solely on the basis of his one conclusory sentence in his affidavit, we cannot reasonably infer that such a custom did indeed exist without more.

Davis, 841 F.2d at 189. Similarly, here, because Boston's speculative damages claim regarding the loss of value of its Pilgrim plant as a result of the Government's alleged breach of the Standard Contract is solely based upon the affidavit of Mr. Lubbock, Boston can neither survive our motion for summary judgment nor succeed upon its cross-motion for summary judgment upon liability because the affidavit of Mr. Lubbock lacks foundation.

Further, Boston's amended complaint alleges that Boston incurred costs for construction of a dry cask storage facility. See Boston's Amend. Compl., ¶ 71 ("Boston Edison incurred

significant costs related to Pilgrim's SNF storage, including developing an on-site dry cask storage facility"). Boston's amended complaint thus explicitly provides that Boston constructed a dry cask storage facility for its Pilgrim plant prior to its sale. Therefore, Mr. Lubbock's contention that Pilgrim's bidders factored the costs of construction of a dry cask storage facility into their valuation models is contrary to the allegations made by Boston in its amended complaint.

Mr. Lubbock next states that "the Government's inability to accept the SNF from Pilgrim caused prospective buyers to assume a significantly shortened operating life expectancy for Pilgrim in their valuation of the plant. . . . This included having to pay indefinitely the 1 mil/kWh fee for the funding of a permanent SNF repository pursuant to the NWPA." Lubbock Affidavit, ¶ 12. Mr. Lubbock then concludes that "[i]t is apparent to me that the continuation of that fee into the indefinite future was factored into the bidder's models and reduced the plant's value significantly." Lubbock Affidavit, ¶ 12. However, as discussed above, Mr. Lubbock lacks personal knowledge regarding the factors that went into the valuation models of Pilgrim's prospective and actual bidders. Consequently, Mr. Lubbock's statement that, continuation of the ongoing fees into the nuclear waste fund "reduced the plant's value significantly," is both speculative and inadmissible under Federal Rules of Evidence 602 and 901.

Indeed, it is questionable whether the bidders' valuation of Boston's Pilgrim plant was based upon the quarterly fees that are to be paid into the Nuclear Waste Fund. Such fees are passed through to the ratepayers and should not affect the value of a nuclear plant. Instead, such fees would only affect the price of electricity charged to ratepayers. Further, the alleged short life-expectancy of Pilgrim has no relation to the quarterly fees paid into the Nuclear Waste Fund.

Mr. Lubbock next claims that "the ultimate buyer could face the need as early as three to four years from the date of sale to commence decommissioning." Lubbock Affidavit, ¶ 13. Mr. Lubbock concludes that the "uncertainty caused by virtue of DOE's breach with respect to when Pilgrim could, if ever, be fully decommissioned and returned to a condition where it could be used for other purposes, further substantially devalued the site in the valuation models of prospective buyers." Lubbock Affidavit, ¶ 14.

However, Boston auctioned Pilgrim in 1999, and Pilgrim's operating license is set to expire in 2012. Therefore, at the time of Pilgrim's auction, Pilgrim was to remain operational for at least 13 years. Mr. Lubbock's statement that Pilgrim's bidders perceived the need to decommission the plant "three to four years from the date of sale" is purely speculative. Boston has not presented any evidence to establish that Pilgrim was to remain operational for only "three to four years" from the date of its sale. Contrary to Mr. Lubbock's statement, Pilgrim was to remain operational until at least the expiration of its operating license in 2012, which would occur 13 years from the date of its sale. Indeed, it is in the best interests of Pilgrim's purchaser to decommission the plant shortly prior to the end of its operating license absent extraordinary circumstances compelling an early shutdown. No such circumstances have been demonstrated in this case. To substantiate such a claim, Boston would have to present evidence that Pilgrim could not store its SNF and HLW any longer than three to four years from the date of its sale, or that an external factor caused Pilgrim to shut down prior to the expiration of its operating license. However, there is no evidence to support such a claim, and Mr. Lubbock's affidavit does not offer any reasons for his speculative conclusion regarding Pilgrim's early shutdown. See Lujan v.

Nat'l Wildlife Federation, 497 U.S. 871, 888 (1990) (conclusory allegations, unsupported by specific facts, will not suffice).

Further, as discussed above, Boston has not presented the valuation models of Pilgrim's prospective and actual bidders. Therefore, Mr. Lubbock has no personal knowledge of whether the possibility of an early decommissioning of Pilgrim was factored into the bidders' valuation models. Mr. Lubbock's statement is thus inadmissible under Federal Rules of Evidence 602 and 901.

In short, paragraphs 9 through 15 of Mr. Lubbock's affidavit are inadmissible because Mr. Lubbock lacks personal knowledge of the matters stated therein.

## II. MR. LUBBOCK'S AFFIDAVIT IS INADMISSIBLE BECAUSE IT IS NOT RATIONALLY BASED UPON HIS PERCEPTION AND INTRODUCES UNRELIABLE EXPERT TESTIMONY UNDER THE GUISE OF LAY WITNESS TESTIMONY IN VIOLATION OF FEDERAL RULES OF EVIDENCE 701 AND 702

In his affidavit, Mr. Lubbock states that "the Government's breach of the Standard Contract with Boston Edison had a significant negative impact on the fair market value of Pilgrim relative to what the value would have been had DOE performed its obligations under the Standard Contract. This is demonstrated, in part, by the limited number of bidders and the low prices that they were willing to pay . . . ." Lubbock Affidavit, ¶ 15.

As demonstrated below, Mr. Lubbock's affidavit is inadmissible because it "is not rationally based on the perception of the witness." Fed. R. Evid. 701(a). Mr. Lubbock's testimony is not based upon first-hand knowledge, but instead constitutes speculation and unfounded assumptions regarding the valuation models of Pilgrim's potential and actual bidders. As further demonstrated below, Boston is attempting to introduce Mr. Lubbock's affidavit as lay

opinion testimony when, in fact, the testimony offered constitutes unreliable expert testimony in violation of Federal Rules of Evidence 701(c) and 702 and the Supreme Court's decision in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993).

A. Paragraphs 9 Through 15 Of Mr. Lubbock's Affidavit Are Inadmissible Because They Are Not Based Upon First-Hand Knowledge And Attempt To Present Unreliable Expert Testimony Under The Guise of Lay Witness Testimony

Federal Rule of Evidence 701 governs opinion testimony by lay witnesses. This rule limits presentation of opinion testimony by lay witnesses to that which is based upon the first-hand knowledge of the witness. See Dotson, 799 F.2d at 192-94 (the "Rule 701(a) limitation is characterized by the committee as the 'familiar requirement of first-hand knowledge or observation.'") (citation omitted). Federal Rule of Evidence 701, as amended in 2000, provides:

> **Rule 701. Opinion Testimony by Lay Witnesses**
>
> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Fed. R. Evid. 701. Federal Rule of Evidence 701 thus indicates that opinion testimony by a lay witness is limited to matters that are based upon first-hand knowledge rather than expert knowledge. "The prototypical example of lay opinion testimony contemplated by the adoption of Rule 701 relates to the appearance of persons or things, identity, the manner of conduct, competency of a person, degrees of light or darkness, sound, size, weight, distance, and an endless number of items that cannot be described in words apart from inferences." Asplundh

Manufacturing Division v. Benton Harbor Engineering, 57 F.3d 1190 (3d Cir. 1995), cited in Advisory Committee Notes to 2000 Amendments to Fed. R. Evid. 701.

Here, Boston has submitted the affidavit of Mr. Lubbock as its sole "evidence" that it suffered damages as a result of the Government's alleged breach of the Standard Contract. In his affidavit, Mr. Lubbock claims that "the Government's breach of the Standard Contract with Boston Edison had a significant negative impact on the fair market value of Pilgrim relative to what the value would have been had DOE performed its obligations under the Standard Contract. This is demonstrated, in part, by the limited number of bidders and the low prices that they were willing to pay . . . ." Lubbock Affidavit, ¶ 15.

However, Mr. Lubbock's opinion is not rationally based upon his perception because he did not review the valuation models of Pilgrim's potential and actual bidders to form an opinion regarding the factors that influenced the bidders' pricing and bidding decisions. Indeed, Mr. Lubbock could not have possibly reviewed the valuation models of Pilgrim's potential bidders that never expressed an interest in the auction of Pilgrim. Nevertheless, Mr. Lubbock alleges that, had the Government not breached the Standard Contract, the auction of Boston's Pilgrim plant would have attracted more bidders. Clearly, Mr. Lubbock's statement is not rationally based upon his perception but is purely speculative. Consequently, Mr. Lubbock's affidavit is inadmissible as opinion testimony under Federal Rule of Evidence 701. See Dodson, 799 F.2d at 193 (reversing conviction because "the testimony of the government agents should not have been admitted absent evidence of the underlying facts upon which it was based," and stating that an "opinion, or indeed any form of testimony, without the underlying facts, may be excluded if it amounts to no more than a conclusory observation.").

Further, Mr. Lubbock's conclusion that the Government's alleged breach of the Standard Contract significantly reduced Pilgrim's value by lowering the prices that the bidders were willing to pay is based upon numerous speculative assumptions that have not been substantiated. Mr. Lubbock's conclusion is not rationally based upon his perception because he did not review the valuation models of Pilgrim's bidders. In the absence of a connection between the valuation models of Pilgrim's bidders and the factors claimed by Mr. Lubbock to have affected the pricing decision of Pilgrim's prospective and actual bidders, the affidavit of Mr. Lubbock is inadmissible under Federal Rule of Evidence 701.

In this regard, the Court of Appeals for the Second Circuit's decision in Bank of China v. NBM LLC, 359 F.3d 171 (2d Cir. 2004), and the Court of Appeals for the Fifth Circuit's decision in DIJO, Inc. v. Hilton Hotels Corp., 351 F.3d 679 (5th Cir. 2003), are instructive. In Bank of China, a bank employee who had conducted an investigation regarding a fraud perpetrated upon the bank testified that certain transactions between defendants did not comport with the business community's understanding of normal trade transactions and that it is considered a fraud to present a trust receipt to a bank to obtain a loan when there are no real goods involved. Id. The district court found that the bank employee's testimony was admissible under Rule 701 based upon the employee's many years of experience in international banking and trade. Id. at 181.

The Second Circuit reversed, finding that the "admission of this testimony pursuant to Rule 701 was error because it was not based entirely on Huang's perceptions." Bank of China, 359 F.3d at 181. The Court held that "the District Court abused its discretion to the extent it admitted the testimony based on Huang's experience and specialized knowledge in international banking." Id. The Court explained that "the purpose of Rule 701(c) is 'to eliminate the risk that

the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing.' That is, in part, what happened here." Id. (citations omitted). The Court thus held that "[t]estimony admitted pursuant to Rule 701 must be 'rationally based on the perception of the witness.'" Id. (citation omitted).

In DIJO, Inc. v. Hilton Hotels Corp., 351 F.3d 679, 685-87 (5th Cir. 2003), DIJO presented the testimony of Skinner, a financial consultant with extensive experience in real estate finance, who had served as DIJO's primary contact at a commercial lender that was planning to provide DIJO a construction loan for a hotel. DIJO, Inc. 351 F.3d at 685. The testimony was presented for the purpose of assessing DIJO's lost profits arising from a casino operator's breach of a lease agreement pertaining to the hotel. Id. Skinner testified that based upon his projected annual earnings for the hotel, DIJO's lost profits were $8 million. Id. The jury awarded DIJO $8 million of damages, and defendant appealed.

The Court of Appeals for the Fifth Circuit reversed. It held that Skinner's testimony should have been excluded under Federal Rule of Evidence 701, because "he had little significant actual knowledge about DIJO and its operations. DIJO, Inc., 351 F.3d at 685. The Court stated that although business owners and officers can testify about their business when their testimony is "based on particularized knowledge derived from their position, . . . it has always been the rule that lay opinion testimony may be elicited only if it is based on the witness's first-hand knowledge or observations. This foundational requirement helps to eliminate the risk that a party will circumvent the reliability requirements set forth in Federal Rule of Evidence 702 by adducing expert testimony in lay witness clothing." Id. at 685-86.

The Court further explained: "Skinner simply did not have the requisite first-hand, personal knowledge about DIJO and the Project necessary to qualify as a Rule 701 opinion witness. His opinion about what the Project 'could' generate was based on preliminary income figures and other information that he had received from Bursley. Skinner performed his appraisal, but nothing in the record indicates that this was based on his own independent knowledge or observations." DIJO, Inc., 351 F.3d at 686. The Court found that Skinner's substantial business experience in real estate financing, including work on hotel projects, did not qualify him as a Rule 701 opinion witness. The Court concluded: "Such generic industry experience does not pass Rule 701 scrutiny. DIJO never attempted to qualify Skinner as an expert; and a lay witness who was never employed by or directly involved in a business is unlikely to have the type of first-hand knowledge necessary to provide reliable forecasts of future lost profits." Id.

Likewise, in this case, Mr. Lubbock's testimony regarding the factors that went into the valuation models and bidding decisions of Pilgrim's potential and actual bidders is inadmissible under Rule 701 because it is not based upon Mr. Lubbock's first-hand knowledge, as the information at issue is solely in the possession of Pilgrim's bidders. Boston has not presented testimony from its prospective and actual bidders to substantiate Mr. Lubbock's speculative claims regarding the factors that went into the valuation models of Pilgrim's potential and actual bidders. Nor has Boston submitted the valuation models of Pilgrim's bidders.

In effect, Mr. Lubbock's affidavit attempts to present expert testimony under the guise of lay opinion testimony in violation of Federal Rule of Evidence 701. However, this is precisely the danger against which Federal Rule of Evidence 701 was designed to guard. See United

States v. Figueroa-Lopez, 125 F.3d 1241, 1246 (9th Cir. 1997) (law enforcement agents testifying that the defendant's conduct was consistent with that of a drug trafficker could not testify as lay witnesses). As the advisory committee's notes to Federal Rule of Evidence 701 provide:

> Rule 701 has been amended to eliminate the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing. Under the Rule, a witness' testimony must be scrutinized under the rules regulating expert opinion to the extent that the witness is providing testimony based on scientific, technical, or other specialized knowledge within the scope of Rule 702. . . . The amendment does not distinguish between expert and lay *witnesses*, but rather between expert and lay *testimony*. (underline added, italics original).

Advisory Committee Notes to 2000 Amendments, Fed. R. Evid. 701.[3]

Boston's attempt to present "evidence" regarding its speculative loss of value damages claim in the form of an affidavit from a lay witness whose opinion is not based upon his perception of the valuation models of Pilgrim's potential and actual bidders is clearly in violation of Federal Rule of Evidence 701. Had Boston sought to present the testimony of Mr. Lubbock, Boston should have first qualified him as an expert and established the reliability of his expert opinion. Further, had Boston sought to present Mr. Lubbock's testimony as a lay opinion witness, Boston should have submitted the valuation models of Pilgrim's prospective and actual bidders and established a connection between Mr. Lubbock's conclusions and the bidders' valuation models. However, Boston did neither. Consequently, Boston cannot present

[3] See also United States v. Caballero, 277 F.3d 1235, 1247 (9th Cir. 2002), "[b]oth Federal Rules of Evidence 701 and 702 distinguish between expert and lay testimony, not between expert and lay witnesses. Indeed, it is possible for the same witness to provide both lay and expert testimony in a single case."

Mr. Lubbock's affidavit in support of its speculative damages claim under the guise of lay opinion testimony. To do so would defeat the underlying purpose of Federal Rule of Evidence 701.

As Weinstein explains, "[t]he purposes of the amendment [of Rule 701] are twofold. First, it ensures that evidence qualifying as expert testimony under Rule 702 will not evade the reliability scrutiny mandated by the Supreme Court's Daubert decision and the 2000 amendment to Rule 702. Second, it also provides assurance that parties will not use Rule 701 to evade the expert witness pretrial disclosure requirements of Rule 26 of the Federal Rules of Civil Procedure . . . ." Weinstein's Federal Evidence § 701.03[4][b].

B. To The Extent That Mr. Lubbock's Affidavit Is Being Introduced As Expert Testimony, It Is Inadmissible Under Federal Rule of Evidence 702 And Daubert

Federal Rule of Evidence 702 provides that, if expert knowledge would assist a trier of fact, a witness qualified as an expert may render an opinion if: "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702. The Supreme Court has interpreted Rule 702 to impose a gatekeeping function upon trial judges to exclude unreliable expert testimony. See Kumho Tire Co. v. Carmichael, 119 S. Ct. 1167, 1171 (1999). The burden to establish the admissibility of expert testimony rests upon the proponent of the evidence. See Bourjaily v. United States, 483 U.S. 171 (1987).

In Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), the Supreme Court set forth a checklist for trial courts to consider in assessing the reliability of expert testimony. The factors that bear upon the inquiry are: (1) whether the expert's methodology or

theory "can be (and has been) tested," (2) whether the expert's "theory or technique has been subjected to peer review and publication," (3) "the known or potential rate of error," and (4) the "general acceptance" of the technique or theory in the expert's community. Daubert, 509 U.S. at 593. As demonstrated below, the affidavit testimony of Mr. Lubbock does not meet the Daubert standard of reliability for expert testimony and is thus inadmissible under Federal Rule of Evidence 702.

(i) Boston Has Neither Qualified Mr. Lubbock As An Expert, Nor Identified Him As An Expert In Its Initial Disclosures

Boston has made no attempt to qualify Mr. Lubbock as an expert. Mr. Lubbock is not a valuation expert in auctions. Mr. Lubbock's affidavit indicates that his sole experience with auctions has been limited to the divestiture of Boston's fossil fuel assets and Pilgrim plant. See Lubbock Affidavit, ¶¶ 1-3. This is hardly sufficient to render Mr. Lubbock an "expert" in the field of valuation of assets in auctions. Further, Mr. Lubbock has no experience with respect to how a purchaser-bidder, rather than a seller-auctioneer, submits bids and values auctioned assets. Therefore, Mr. Lubbock cannot testify as an expert with respect to how a purchaser-bidder values assets at an auction. Boston's failure to qualify Mr. Lubbock as an expert is sufficient to render his testimony inadmissible. See Fed. R. Evid. 702 ("a witness qualified as an expert by knowledge, skill, experience, training, or education may testify . . . .").

Further, Boston did not identify Mr. Lubbock as an expert witness in its initial disclosures. Consequently, Boston should be barred from relying upon Mr. Lubbock's expert testimony. See RCFC 26(a)(2). This is particularly so because we have not had an opportunity to depose Mr. Lubbock, and Boston has relied upon Mr. Lubbock's affidavit as its sole support

for its speculative damages claim to defeat our motion for summary judgment and to succeed in its cross-motion for summary judgment upon liability.

(ii) Mr. Lubbock's Testimony Is Inherently Unreliable

Mr. Lubbock has not described a methodology for his speculative assumptions and conclusions concerning the factors that allegedly went into the valuation models of Pilgrim's potential and actual bidders. To the contrary, the assumptions and conclusions reached in Mr. Lubbock's affidavit are devoid of a methodology and more characteristic of a hunch. See Daubert, 509 U.S. at 595 (stating that the "focus" of the inquiry must be on "principles and methodology"); O'Conner v. Commonwealth Edison Co., 13 F.3d 1090 (7th Cir. 1994) (excluding expert testimony that was based upon a completely subjective methodology). Nor is there any evidence that Mr. Lubbock's valuation "methodology" has been subjected to peer review and publication. In addition, Mr. Lubbock's valuation "methodology" appears to be subject to a high rate of error because of the lack of sufficient data and information to substantiate his claims. Indeed, Mr. Lubbock has not presented us with any data upon which his conclusions are based. Finally, there is no evidence that the "methodology" used by Mr. Lubbock is generally accepted in the auction valuation community.

In short, Mr. Lubbock's testimony pertaining to the alleged loss of value of Boston's Pilgrim plant is inherently unreliable and thus inadmissible under Federal Rule of Evidence 702. See General Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997) (noting that a trial court "may conclude that there is simply too great an analytical gap between the data and the opinion proffered"). As the advisory committee's notes to Federal Rule of Evidence 702 provide: "The amendment requires that the testimony must be the product of reliable principles and methods

that are reliably applied to the facts of the case. . . . If the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts. The trial court's gatekeeping function requires more than simply 'taking the expert's word for it.'" Fed. R. Evid. 702, Advisory Committee Notes to 2000 amendments.

CONCLUSION

For the foregoing reasons, we respectfully request the Court to strike paragraphs 9 through 15 of Mr. Lubbock's affidavit and the relating portions of Boston's proposed findings of fact and brief that rely upon these paragraphs of Mr. Lubbock's affidavit.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/Harold D. Lester
HAROLD D. LESTER, JR.
Assistant Director

s/Stefan Shaibani
STEFAN SHAIBANI
Trial Attorney
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
1100 L Street, N.W.
ATTN: Classification Unit, 8th Floor
Washington, D.C. 20530
Tel: 202-305-7597
Fax: 202-307-2503

OF COUNSEL:
JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

August 6, 2004

CERTIFICATE OF SERVICE

I hereby certify that on August 6, 2004, a copy of the foregoing "DEFENDANT'S MOTION TO STRIKE THE AFFIDAVIT OF GEOFFREY LUBBOCK," was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Stefan Shaibani