**AMERICAN PUBLIC POWER ASSOCIATION**

2301 M STREET NW WASHINGTON DC 20037 • 202/775-8300

Office of the General Counsel
JAN 27 '83
HSS
LEW
WLU
DRW
MLW
JEB
SW
File

0120 Energy, U.S. Dept. of
; Disposal of High Level Radioactive Wastes

January 24, 1983

MEMORANDUM: 095

02405

TO: APPA Members with Interests in Nuclear Power Plants

FROM: Eileen Peerless

SUBJECT: Results of DOE Briefing on Nuclear Waste Bill and Disposal Contracts

A briefing by Department of Energy officials on the recently passed nuclear waste bill and DOE-utility obligations in signing nuclear waste disposal contracts was held Wednesday, January 19, at Washington's Hyatt Regency Hotel. A DOE draft waste disposal contract was made available to attendees at this meeting. A follow-up session was held Thursday, January 20 between DOE officials and utility representatives to discuss in detail the draft contract. (A list of attendees at both Wednesday's and Thursday's session is enclosed.) Both sessions were sponsored by APPA, Atomic Industrial Forum, National Rural Electric Cooperative Association and Edison Electric Institute.

APPA member systems who attended the Wednesday morning briefing met together that afternoon to formulate public power reaction to the DOE draft contract. The results of that discussion are enclosed. (A list of attendees at this meeting is enclosed.)

A work product put together Thursday and Friday by a smaller APPA review committee is also enclosed. It includes specific language changes to the DOE contract.

DOE says it is planning to publish the proposed contract in the February 4 Federal Register. A hearing to solicit public comments on the DOE proposed contract is scheduled for March 7.

If you would like a copy of the draft contract furnished by DOE on January 19, please let me know. This contract is a draft, and it is expected that changes will be made to it before the proposed contract appears in the February 4 Federal Register.

/af

Enclosures

RECEIVED
FEB 4 1983
GENERAL COUNSEL'S FILES

ATTENDEES
University Club
January 20, 1983

| NAME | AFFILIATION | TELEPHONE # |
|---|---|---|
| L. E. Mills | Edison Electric Institute | 202/828-7530 |
| Ron Leasburg | Virginia Electric Power Co. | 804/794-1211 |
| Hal B. Tucker | Duke Power Company Company | 704/373-4531 |
| Donald J. McLachlen | Isham, Lincoln & Beale | 312/558-7458 |
| George Rifakes | Commonwealth Edison Co. | 312/294-4416 |
| Robert Calabro | Northeast Utilities | 203/666-6911 |
| Bob Tomonto | Florida Power & Light Co. | 305/552-3497 |
| M. C. Cook | " | 305/552-3618 |
| Steven Kraft | Edison Electric Institute | 202/828-7534 |
| John Ladesich | So. California Edison Co. | 213/572-2622 |
| James J. Cavanagh | Department of Energy | 202/252-8188 |
| Elliot Winnick | " | 202/252-1526 |
| Bob Rosselli | " | 301/353-4808 |
| Frank Coffman | " | 301/353-5006 |
| Thomas A. Dillon | " | 202/252-6630 |
| Richard E. Shimshak | Dairyland Power Company | 608/788-4000 |
| R. Greg Snipes | Duke Power Company | 704/373-8704 |
| R. E. L. Stanford | EEI/UNWMG | 202/828-7669 |
| Eileen Peerless | APPA | 202/775-8300 |
| Peter Murray | Westinghouse | 202/833-5084 |
| James Lyons | Power Authority of the State of New York | 212/397-6359 |
| Dave Kaplan | Sacramento Municipal Utility District | 916/452-3211 |
| Robert J. Mullin | Tennessee Valley Authority | 615/751-3418 |
| John P. Gibbons | Philadelphia Electric Co. | 215/841-4860 |
| Jay Silberg | Shaw, Pittman - UNWMG | 202/822-1063 |
| John O'Neill | " | 202/822-1148 |
| Jim Pickard | Pickard, Lowe & Garrick | 202/296-8633 |
| Bradley R. Koch | National Rural Electric Cooperation Association | 202/857-9569 |
| Emmanuel Gordon | Atomic Industrial Forum | 301/654-9260 |
| Larry Hobart | APPA | |
| John Van Hoomeseen | General Electric | |
| Bill Pier | " | |
| Wade Ballard | Department of Energy | |
| Ed Davis | American Nuclear Energy Council | |

TV 1227



TVP0041013

MEETING OF
APPA MEMBER SYSTEMS
*Wednesday, January 19, 1983*
*Hyatt Regency on Capitol Hill*

| | |
|---|---|
| Mike Jones | Massachusetts Municipal Wholesale Electric Co. |
| Bob Cantor | Mudge, Rose, Guthrie & Alexander, Washington, D.C. |
| Tom Robbins | Pickard, Lowe & Garrick, Washington, D.C. |
| Paul Heim | Municipal Electric Authority of Georgia |
| James Lyons | Power Authority of the State of New York |
| Jim Clabby | Power Authority of the State of New York |
| Tom Hunt | Washington Public Power Supply System |
| Steve Masciallo | Power Authority of the State of New York |
| Dave Kaplan | Sacramento Municipal Utility District |
| Terry Frost | Bonneville Power Administration |
| Arnold Cordova | City of Los Angeles Department of Water & Power |
| Dan Kloke | Omaha Public Power District |
| Bob Mullin | Tennessee Valley Authority |
| Jay Pilant | Nebraska Public Power District |
| John McClure | Nebraska Public Power District |
| Doug Nichols | Tennessee Valley Authority |
| Larry Hobart | American Public Power Association |
| Eileen Peerless | American Public Power Association |

NUCLEAR INDUSTRY MEETING ON WASTE MANAGEMENT

Wednesday, January 19, 1983
Hyatt Regency on Capitol Hill

| | NAME | ORGANIZATION |
|---|---|---|
| 1 | Robt J. Mullin | TVA |
| 2 | James P Bennett | Baltimore Gas & Elect. |
| 3 | ARTHUR C. GEHR | Arizona Public Service Co |
| 4 | R. GREG SNIPES | DUKE POWER Co |
| 5 | WAYNE JENS | DETROIT EDISON |
| 6 | John Wozniak | Wis. Pub. Service. |
| 7 | Ed Wiggin | AIF |
| 8 | W. S. Pier | GE |
| 9 | LEE O. HILL, JR. | NORTHEAST UTILITIES |
| 10 | Randy Janne | Texas Utilities |
| 11 | Lee Sippel | KCPL |
| 12 | ROBERT S WEGENG | PUBLIC SERVICE INDIA |
| 13 | JOHN C. McCLURE | NEBRASKA PUBLIC POWER |
| 14 | THOMAS J. KEEFE | DOE |
| 15 | JAN L ATKINSON | DOE |
| 16 | GEORGE RUST | AIF |
| 17 | Mel Croft | B&W |
| 18 | LEONARD GELLER | SMSC |
| 19 | JIM CLABBY | PASLY |
| 20 | T. E. HUNT | WASH. PUBLIC POWER SUPPLY SYS. |
| 21 | JOHN M COFFEY | So CALIF EDISON |
| 22 | Marvin Monk | Power Authority of N.Y. |
| 23 | Stephen Greenleigh | DOE |
| 24 | Steven A. Oldag | DOE |
| 25 | John F. Bayley | DOE |

TV 1229



TVP0041015

NUCLEAR INDUSTRY MEETING ON WASTE MANAGEMENT

Wednesday, January 19, 1983
Hyatt Regency on Capitol Hill

| | NAME | ORGANIZATION |
|---|---|---|
| 1 | E. Gordon | AIF |
| 2) | JP GIBBONS | PHILA ELECT CO. |
| 3) | G. WRAM | WESTINGHOUSE |
| 4) | D. R. McCLINTOCK | WESTINGHOUSE |
| 5) | S Fucigna | Office of Mgt. Budget |
| 6) | Doug Nichols | TVA |
| 7) | MAX M. DELONG | Northern States Power. |
| 8) | V W Campbell | Westinghouse |
| 9) | M. M. Fiedler | Southern Co. Services |
| 10) | Arnold R. Cordova. | L.A. Dept. of Water & Power |
| 11) | Leonard M. Trosten | LeBoeuf, Lamb, Leiby & MacRae |
| 12) | MORGAN DUBROW | NRECA |
| 13) | Dave Kaplan | Sacramento MUD |
| 14) | Terry Frost | BPA. |
| 15) | Dwight Evans | Georgia Power Co |
| 16) | Eileen Peerless | APPA |
| 17) | Brian Flattery | NC EMC |
| 18) | Jack Thereault | DOE |
| 19) | Hilary Rauch | DOE |
| 20) | Elliott Wimmit | DOE |
| 21) | John O'Neill | Shaw, Pittman |
| 22) | Rick Sitt ift | Wabash Valley Pwr Ass |
| 23) | Thomas Dillon | DOE |
| 24) | James Cavanagh | DOE |
| 25) | Loring E. Mills | EEI |

TV 1230



TVP0041016

NUCLEAR INDUSTRY MEETING ON WASTE MANAGEMENT

Wednesday, January 19, 1983
Hyatt Regency on Capitol Hill

| NAME | ORGANIZATION |
| --- | --- |
| C. T. Browne | Northeast Utilities |
| E R Van Hoof | Consumers Power |
| David Dixon | Combustion Eng |
| Dennis Murdock | Central Iowa Power |
| Bill Dolan | P.S. Elec + Gas Co |
| Peter Murray | Westinghouse |
| James R Ratliff | Tenn Valley Authority |
| Linn Draper | Gulf States Utilities |
| Robert R Calabro | Northeast Utilities |
| Thomas J. Bolch | North Carolina Electric membership corp |
| Russ Stanford | EEI / UNWMG |
| Thomas Robbins | Iowa Elec, Cleveland Elec, PLG |
| Frank Garner | Ks. Elec Power Corp. |
| Paul Lemberg | Long Island Light Co |
| John Richardson | GA. Power Co |
| Jan McKenzie | Edison Elec Inst. |
| Gerry Runte | GPUSC |

TV 1231



TVP0041017

NUCLEAR INDUSTRY MEETING ON WASTE MANAGEMENT

Wednesday, January 19, 1983
Hyatt Regency on Capitol Hill

| NAME | ORGANIZATION |
|---|---|
| Larry Hobart | American Public Power Association |
| T.E. Lempges | Niagara Mohawk Pwr C |
| R.M. Grube | Yankee Atomic Elec. Co. |
| John Ladesich | Southern California Edison Co |
| Jack Kearney | EEI |
| Bill Bennett | DOE |
| Jay Silberg | Shaw Pittman - for WEPCO, TECo |
| Frank Coffman | DOE |
| Donald J. McLoughlin | Comm. Edison Co |
| W. Wade Ballard | Dept of Energy |
| John Van Hoomissen | General Electric |
| Dalwyn R. Davidson | Cleveland Electric Illuminating Co |
| Robert A Canter | Mudge Rose Guthrie & Alexander |
| Don Casada | Carolina Power & Light |
| Wade Stansell | Texas Utilities |
| Louis Sonz | PSE&G NJ |
| Marilyn Shaw | LeBoeuf, Lamb, Leiby & MacRae |

TV 1232



TVP0041018

NUCLEAR INDUSTRY MEETING ON WASTE MANAGEMENT

Wednesday, January 19, 1983
Hyatt Regency on Capitol Hill

| NAME | ORGANIZATION |
|---|---|
| 1) Felix M. Killar, Jr. | Middle South Services Inc. |
| 2) Paul R Heim | Muni. Elect. Auth. of Ga. |
| 3) Bruce A. Beam | American Electric Power |
| 4) Richard H. Williamson | U.S. Dept. of Energy |
| 5) Steven Masciulli | Power Authority State of New York |
| 6) Jere M. Ballentine | Boston Edison |
| 7) James F. Stanfield | Fla. Power Corp |
| 8) T. Danese | Fla Power & Light Co |
| 9) [illegible] A Kline | DOE |
| 10) Ronald V. Furia | GPUN |
| 11) Jill Eiland | Portland Gen Electric |
| 12) [illegible] | ANEC |
| 13) JJ Carey | Duquesne Light Co |
| 14) Jay M Pilant | Nebr. Public Power District |
| 15) James D Lyons | Power Authority of the State of New York |
| 16) Mike Kurgan | DOE |
| 17) Jack Calhoun | Penn P&L |
| 18) Hal B. Tucker | Duke Power Co. |
| 19) | |
| 20) | |
| 21) | |
| 22) | |
| 23) | |
| 24) | |
| 25) | |

TV 1233



TVP0041019

NUCLEAR INDUSTRY MEETING ON WASTE MANAGEMENT

Wednesday, January 19, 1983
Hyatt Regency on Capitol Hill

| NAME | ORGANIZATION |
|---|---|
| 1) Bob Tomonto | Fla. Power + Light |
| 2) TONY MANSELL | Ark Power & Light |
| 3) Bradley Koch | NRECA |
| 4) M.A. BAUSER | UNWMG |
| 5) J.K. PICKARD | OPPD, CPL, |
| 6) Richard Terrill | Kansas Gas & Electric |
| 7) Steven McGee | Oglethorpe Power Corp. |
| ) CRIS SMITH | DOE |
| ) Jane Bergler | PG + E |
| 10) DAN LUBBOCK | PG & E |
| 1) Jotsey G Baynard | Florida Power Corp. |
| 2) Lou Weidel | AIF |
| 3) Amy Shimamura | DOE |
| 4) [illegible] | Dairyland Power |
| 5) W. Bateman | NFS |
| 6) R. KLEIN | DOE |
| 7) | |
| 8) | |
| 9) | |
| 20) | |
| 21) | |
| 22) | |
| 23) | |
| 24) | |
| 25) | |

TV 1234



TVP0041020

NUCLEAR INDUSTRY MEETING ON WASTE MANAGEMENT

Wednesday, January 19, 1983
Hyatt Regency on Capitol Hill

| | NAME | ORGANIZATION |
|---|---|---|
| 1) | James R Clark | Nuclear Fuel Services |
| 2) | Bob Rosselli | DOE |
| 3) | George Rifakes | Commonwealth Edison |
| 4) | Carl Walske | AIF |
| 5) | Bob Hagan | KG&E |
| 6) | Dan Kloock | Omaha Public Power District |
| 7) | Michael Cook | Fla Power & Light |
| 8) | Rich Cahaylc Wynne | GPU-Nuclear |
| 9) | Ray W Lambert | Electric Power Research I |
| 10) | John A. Duncan | GPU Service Corp. |
| 11) | M.L. Jones | Mass Muni. Wholesale E |
| 12) | Tom Kuhn | American Nuclear Energy Council |
| 13) | Bob Forst | DOE |
| 14) | Alan K. Williams | Allied-General Nucl. Serv |
| 15) | Mark Williams | USNRC |
| 16) | Leonard Abrams | E.R. Johnson Assoc. Inc |
| 17) | Ronald N Lensburg | VEPCO |
| 18) | [illegible] | DOE |
| 19) | Tony Queen | " |
| 20) | | |
| 21) | | |
| 22) | | |
| 23) | | |
| 24) | | |
| 25) | | |

TV 1235

Atomic Industrial Forum, Inc.
7101 Wisconsin Avenue
Bethesda, Maryland 20814
Telephone: (301) 654-9260
TWX 7108249602 ATOMIC FOR DC

RECEIVED
JAN 27 1983
Division of Fuels
Nuclear Fuel Branch

Emanuel Gordon
Nuclear Fuel Cycle
Projects Manager

January 24, 1983

TO: Working Group on Nuclear Waste Fund Draft Contract

FROM: Emanuel Gordon

Attached is an annotated copy of the draft "Contract for Disposal of Spent Nuclear Fuel and/or High-Level Radioactive Waste". The document was prepared by Jay Silberg of Shaw, Pittman, Potts & Trowbridge and several utility representatives. It includes comments and suggestions made at the meeting, held at the University Club, of owners (Purchasers) of spent fuel and at which DOE was present, at our invitation. The comments, for the most part, represent consensus opinions. There are obviously differing opinions on many of these points. However, those items, for the most part, relate to individual company's specific needs. Note that the comment on the formula in Appendix 4 for calculating the fee indicates that a change is needed to accommodate utility needs. It should have read "Purchasers'" needs. Input from our group is included in these comments.

On page 8, the subject of credits from reprocessed spent fuel was treated differently than what we and the utility group proposed. We proposed that if credits resulted from spent nuclear fuel reprocessed for a Purchaser, they should accrue to the Purchaser. Further, if DOE had the fuel reprocessed, credits should be applied to the waste fund. As proposed herein, the subject of credits to the Purchaser is not included.

As you know, the February 5 Federal Register will ask for comments on the final draft contract. We plan to get together for this.

RECEIVED
FEB - 3 1983
GENERAL COUNSEL'S FILES

EG:ao
Enclosure

cc: Paul McMurray, Chairman
Committee on Nuclear Fuel Cycle

JAN 27 1983
DIVISION OF FUELS

TV 1362



TVP0041148

**EDISON ELECTRIC INSTITUTE** The association of electric companies

1111 19th Street, N.W.
Washington, D.C. 20036
Tel: (202) 828-7400

02310

January 24, 1983

Office of the General Counsel
JAN 26 '83
DCS

| | | |
|---|---|---|
| HSS | | |
| LEW | | |
| WLO | ✓ | |
| DRN | ✓ | |
| MLW | ✓ | |
| JEB | ✓ | |
| EJV | ✓ | |
| | | |
| | | |
| | | |
| | | |
| Power | | |
| Garn. | | |
| File | | |

"U.S. Dept of Disposal of High-Level Radioactive Waste"

Mr. Robert J. Mullin
Assistant Director
Division of Fuels
Tennessee Valley Authority
403 Krystal Building
Chattanooga, Tennessee 37401

Douglas R. Nichols, Esq.
Attorney
Tennessee Valley Authority
400 Commerce Avenue
Knoxville, Tennessee 37902

Gentlemen:

Enclosed is a copy of the EEI marked-up version of the DOE draft HLW/SNF contract. We began with the language we developed on Friday morning and then "cut-and-pasted" together a revised version of the contract making changes based on the meetings last week. We have yet to work up our position statement on the charge for prior fuel, although we have had some lengthy discussions (?!) on the subject.

I would be interested in hearing any comments you might have on our suggested changes. Let's keep each other informed.

I have none now but we should, if possible, coordinate our comments on the upcoming Feb. 4 draft.

Sincerely,

S. P. Kraft
Nuclear Program Manager

SPK:jr

Enclosure

cc: Mr. L. Hobart, APPA

RECEIVED
FEB 7 1983
GENERAL COUNSEL'S FILES

TV 1317

# DRAFT

EEI's UNSOLICITED COMMENTS
ON
CONTRACT

FOR DISPOSAL OF SPENT NUCLEAR

FUEL AND/OR HIGH-LEVEL RADIOACTIVE WASTE

# DRAFT

U. S. DEPARTMENT OF ENERGY CONTRACT NO. ________

CONTRACT FOR DISPOSAL OF SPENT NUCLEAR FUEL AND/OR HIGH-LEVEL RADIOACTIVE WASTE.

THIS CONTRACT, entered into this ________ day of ________ 19 ___, by and between the UNITED STATES OF AMERICA (hereinafter referred to as the "Government"), represented by the UNITED STATES DEPARTMENT OF ENERGY (hereafter referred to as "DOE") and ____________________, a corporation organized and existing under the laws of the State of ____________________ (hereinafter referred to as the "Purchaser").

WITNESSETH THAT:

WHEREAS, the DOE has the responsibility for the disposal of high-level radioactive waste and spent nuclear fuel of domestic origin from civilian nuclear power reactors in order to protect the public health and safety, and the environment; and

WHEREAS, all costs associated with the preparation, transportation, and the disposal of spent nuclear fuel and high-level radioactive waste from civilian nuclear power reactors shall be borne by the owners and generators of such fuel and waste; and

WHEREAS, the DOE is required to collect a full cost recovery fee from ~~any~~ Purchaser^s^ delivering to the DOE any such spent nuclear fuel and/or high level radioactive waste; and

WHEREAS, the DOE is authorized to enter into contracts for the permanent disposal of spent nuclear fuel and/or high level radioactive waste of domestic origin in DOE facilities; and

WHEREAS, the Purchaser desires to obtain disposal services from DOE; and

WHEREAS, DOE is willing to provide such disposal services, under the terms and conditions hereinafter set forth; and

Whereas this contract is made and entered into under the authority of the DOE Organization Act (Pub. L. 95-91, 42 U.S.C. 7101 et. seq.) and the Nuclear Waste Policy Act of 1983 (Pub. L. 97-425);

NOW, THEREFORE, the parties hereto do hereby agree as follows:

ARTICLE I - DEFINITIONS

As used throughout this contract, the following terms shall have the meanings set forth below:

1. The term "Assigned Three-Month Period" means the period that each Purchaser will be assigned by DOE for purposes of reporting kilowatt hours generated [and sold] ~~by the Purchaser's nuclear power reactor~~ and for establishing fees due and payable to DOE.

# DRAFT

2

2. The term "Cas..." means a container ~~subject to l... ensing and other regulatory requirements~~ for shipping spent nuclear fuel and/or high-level radioactive waste, which meets all applicable regulatory requirements.

3. The term "Civilian Nuclear Power Reactor" means a civilian nuclear powerplant required to be licensed under Sections 103 or 104(b) of the Atomic Energy Act of 1954, as amended (42 U.S.C. 2133, 2134(b)).

4. The term "Commission" means the United States Nuclear Regulatory Commission, and any successor thereto.

TJK

5 The term "Contract" means this agreement and any duly executed amendment or modification thereto.

6. The term "Contracting Officer" means the person executing this contract on behalf of the Government, and any other officer or civilian employee who is a properly designated Contracting Officer; and the term includes, except as otherwise provided in this contract, the authorized representative of a Contracting Officer acting within the limits of his authority.

TJK

6A. The term "Domestic Origin" means irradiated in a civilian nuclear power reactor

7. The term "Delivery Commitment" means a promise by the Purchaser to deliver spent nuclear fuel and/or high-level radioactive waste to the DOE within a specified year.

8. The term "Delivery" means the transfer of custody, f.o.b. carrier, of spent nuclear fuel or high-level radioactive waste from Purchaser to DOE at the Purchaser's civilian nuclear power reactor or such other domestic site as may be designated by the Purchaser. ~~and approved by DOE.~~

9. The term "Disposal" means the emplacement in a repository of high-level radioactive waste, spent nuclear fuel, or other highly radioactive waste with no foreseeable intent of recovery, whether or not such emplacement permits recovery of such waste.

TJK

10. The term "DOE" means the United States Department of Energy or any other duly authorized representative thereof, including the Contracting Officer, and any successor thereto.

11. The term "DOE Facility" means a facility operated by or on behalf of DOE for the purpose of disposing of spent nuclear fuel and/or high level radioactive waste.

11A. The term "kilowatt hour generated and sold" means that electricity generated at a civilian nuclear power reactor measured at the station busbar net of all station uses, including an equivalent amount of electricity for any process steam generated by the reactor and used other than at the reactor.

12. The term "High-Level Radioactive Waste" (HLW) means -

(A) the highly radioactive material resulting from the reprocessing of spent nuclear fuel, including liquid waste produced directly in reprocessing and any solid material derived from such liquid waste that contains fission products in sufficient concentrations; and

(B) other highly radioactive material that the Commission, consistent with existing law, determines by rule requires permanent isolation.

13. The term "Purchaser's Site" means the location of Purchaser's civilian nuclear power reactor or such other locations as the Purchaser may designate.

TV 1320



TVP0041106

DRAFT



14. The term "Quarterly Treasury Rate" means the current value of funds rate as specified by the Treasury Fiscal Requirements Manual, Volume 1, Part 6, section 8020.20. This rate is published quarterly in the Federal Register prior to the beginning of the affected quarter.

TVK 15. The term "Reprocessed" means the process of recovering any products or by products ~~of remaining energy~~ value from spent nuclear fuel.

16. The term "Shipping Lot" means a specified quantity of spent nuclear fuel or high level waste designated for transportation by ~~DOE~~ Purchaser on a specified date.

17. The term "Spent Nuclear Fuel" (SNF) means fuel that has been withdrawn from a nuclear reactor following irradiation, without the intent to reinsert such fuel in the reactor, and the constituent elements of which have not been separated by ~~re~~processing. ~~chemical~~

18. The term "Year" means the period which begins on October 1 and ends on September 30.

ARTICLE II - SCOPE

TVK This Contract applies to the delivery by Purchaser to ~~acceptance by~~ DOE of spent nuclear fuel (SNF) and/or high-level radioactive waste (HLW) from civilian nuclear power reactors and, with respect to such material, establishes the charges to be paid by the Purchaser for the services rendered hereunder by DOE, as follows:

~~A. Disposal~~

TVK The services provided to the Purchaser by DOE under this contract are related ~~limited~~ to disposal of SNF and/or HLW of domestic origin from civilian nuclear power reactors. The SNF and/or HLW shall be specified in a delivery commitment schedule as provided in Article III below.

~~B. Term of Contract~~

TVK The disposal services to be provided by DOE under this contract shall commence not later than January 31, 1998 and shall continue until such time as all SNF and/or HLW ~~accepted by DOE hereunder is disposed of as provided for in this contract.~~ from the civilian nuclear power reactors specified in Appendix "A" hereto have been delivered to DOE. Each party agrees to use its best efforts to avoid delays in furthering the purposes of this contract

ARTICLE II A - TERM

The term of this contract shall be from the date on which it is entered into, until such time as DOE has taken delivery of all SNF and/or HLW from the civilian nuclear power

TV 1321



TVP0041107

DRAFT



reactors identified in Appendix "A" hereto.

ARTICLE III - DELIVERY OF SNF and/or HLW

A. Description of SNF and/or HLW

The Purchaser shall provide to DOE and DOE shall, as provided for in this contract, receive the SNF and/or HLW, which is provided for in Article VI.A., of this contract, for disposal thereof.

~~B. Schedule for Delivery Commitments~~

See insert III. B., C D and E.

~~1. Delivery commitment schedule(s), as set forth in Appendix "A", annexed hereto and made a part hereof, for SNF and/or HLW shall be furnished to DOE by Purchaser and, if approved by DOE, shall become a part of this contract. Such delivery commitment schedules shall specify:~~

~~(a) the quantity of SNF and/or HLW to be transported by DOE from a specified site;~~

~~(b) the fiscal year of delivery; and~~

~~(c) such other information as DOE may require.~~

~~All deliveries of SNF and/or HLW shall be covered by delivery commitment schedule(s) submitted by the Purchaser and approved by DOE at least five (5) years prior to the delivery date specified therein.~~

~~In addition to the delivery commitment schedule(s), the Purchaser shall provide DOE with a written final delivery schedule in the form set forth in Appendix "B", annexed hereto and made a part hereof, identifying the first and last date that SNF and/or HLW will be ready for transportation to the DOE facility. Said schedule shall be provided by the Purchaser to DOE for its approval not less than twelve (12) months before date of requested transport.~~

63 month

F ~~2~~. Waiver of the Requirement for ~~Five Year~~ 63 month Advance Delivery Commitment Schedule. The ~~five (5) year~~ 63 month prior notice required for scheduled ~~transportation~~ delivery of SNF and/or HLW to DOE may be waived by DOE, ~~in its sole discretion~~, as it may deem appropriate in the circumstances.

G. ~~3~~. Emergency Deliveries. Emergency deliveries of SNF and/or HLW may be accepted by DOE before the date provided in the Delivery Commitment upon prior written approval by DOE.

ARTICLE IV - RESPONSIBILITIES OF THE PARTIES

A. Purchaser's Responsibilities

~~1. Annual Forecast of Shipments~~

~~(a) The Purchaser shall provide DOE for its approval an annual forecast of estimated shipping lots to be~~

III. B. <u>Purchaser Forecasts</u>

On an annual basis, commencing on October 1, 1985 Purchaser shall provide DOE a forecast of estimated deliveries during the succeeding 10 year period. The form and content of this forecast shall be [redacted] as set forth in Appendix _______. This forecast is to be used by DOE for planning purposes and is not a binding commitment by Purchaser.

C. <u>Delivery Commitment Schedule</u>

~~2.~~ Delivery commitment schedule(s), in the form set forth in Appendix ___, for SNF and/or HLW shall be furnished to DOE by Purchaser. Purchaser shall submit delivery commitment schedules at least 63 months prior to the delivery date specified therein. DOE shall approve or disapprove a delivery commitment schedule within 3 months after receipt. [Contract needs to provide what happens if there is disapproval]. Purchaser shall have the right to adjust the quantities of SNF and/or HLW ± 20% and the delivery schedules by + 2 months, up to the submission of the final delivery schedule subject to DOE's prior written approval, which approval shall not be unreasonably withheld.

D. <u>Final Delivery Schedule</u>

~~3.~~ Final delivery schedule(s), in the form set forth in Appendix _____, for SNF and/or HLW covered by an approved delivery commitment schedule(s) shall be furnished to DOE by Purchaser. Purchaser shall submit final delivery schedules not less than 12 months before the delivery date specified therein. DOE shall approve or disapprove a final delivery schedule within 45 days after receipt. [Contract needs to provide what happens if there is disapproval.]

E. <u>Exchanges</u>

Purchaser shall have the right to exchange approved delivery commitment schedules and ~~fuel~~ final delivery schedules with Purchasers under other contracts for disposal of SNF and/or HLW, provided that DOE shall have the right to approve such exchanges to ensure consistency with DOE transportation arrangements, which approval shall not be unreasonably withheld.

DRAFT



~~transported by DOE from each site identified in the delivery commitment schedule. The form and content of this annual forecast are set forth in Appendix "C", annexed hereto and made a part hereof.~~

(b) ~~In the event that the Purchaser fails to provide the annual forecast in the form and content required by DOE, DOE may, in its sole discretion, require a rescheduling of delivery.~~

2. Preparation for Transportation

(a) The Purchaser shall arrange for all preparation, packaging, required inspections, and loading activities necessary for the transportation of SNF and/or HLW to the DOE facility. ~~DOE approval for all such activities shall be requested by Purchaser within ___ days before the activities begin.~~ The preparatory activities by the Purchaser shall be made in accordance with all applicable laws and regulations ~~of the United States, States and municipalities~~ relating to the Purchaser's responsibilities hereunder. DOE may designate a representative to observe the preparatory activities conducted by the Purchaser at the Purchaser's site, and the Purchaser shall afford access ~~and all reasonable accommodations~~ to such representative.

(b) ~~Except as otherwise agreed to by DOE,~~ The Purchaser shall advise DOE, in writing, as to the description of the material in each shipping lot sixty (60) days prior to scheduled transportation of that shipping lot by DOE. *The information to be supplied is identified in "Appendix __" hereto*

(c) The Purchaser shall maintain and administer *procedures* ~~a program~~ for the utilization, maintenance, protection and preservation of any and all shipping casks furnished to the Purchaser by DOE for the performance of this contract. ~~The Purchaser shall be liable for any loss of or damage to such DOE-furnished property, and for expenses incidental to such loss or damage, except as otherwise provided for hereunder.~~

*Notwithstanding this provision, DOE shall be responsible for normal maintenance of shipping casks. DOE shall provide Purchaser with such information necessary to develop these procedures.*

B. DOE Responsibilities - *[See inserted material]*

~~1. DOE shall review and approve or disapprove Purchaser's proposed delivery commitment schedule(s), and final and annual forecasts within approximately ninety (90) days after receipt thereof;~~

~~2. DOE shall arrange for and provide all necessary transportation of the SNF and/or HLW to the DOE facility. Unless otherwise agreed to in advance by DOE, DOE shall arrange for a shipping cask to be furnished to the Purchaser sufficiently in advance to accommodate scheduled deliveries.~~

SA

IV. B. DOE Responsibil 'es

1. DOE shall take delivery of all SNF and/or HLW that is packaged for safe transportation.
2. DOE shall have complete responsibility for all SNF and/or HLW after it has taken delivery of such material.
3. DOE shall review and approve or disapprove Purchaser's proposed delivery commitment schedules and final delivery schedules within ninety (90) days and after receipt thereof.
4. DOE shall start accepting delivery of SNF and/or HLW not later than January 31, 1998 at not less than the annual rate SNF and/or HLW is then being produced for Purchaser's nuclear powerplants specified in Appendix A.
5. After January 31, 1998, DOE shall be prepared to accept delivery of SNF and/or HLW produced prior to said date on a schedule sufficient to provide for delivery consistent with decommissioning plans for Purchaser's nuclear powerplants specified in Appendix A.
6. DOE shall arrange for and provide all necessary transportation of the SNF and/or HLW. Unless otherwise agreed in advance by DOE, DOE shall arrange for a shipping cask to be furnished to the Purchaser sufficiently in advance to accommodate scheduled deliverer. Casks to be furnished by DOE shall be suitable for use at the Purchaser's site.
7. DOE may fulfill any of its obligations, or take any action, under this contract either directly or through contractors.

5B

8. At Purchaser's request, and in any event not less often than annually, DOE shall periodically provide information to support waste disposal program cost projections, details of project plans and progress reports. If requested by Purchaser, DOE shall, in addition to providing such documents, periodically discuss plans and budgets for Nuclear Waste Fund monies with Purchaser or its designated representative and provide technical briefings on Nuclear Waste Fund activities.

9. DOE and Purchaser or its designated representative shall make a good faith effort during the study period under section 303 of the Act to consult on alternative approaches to managing the planning, design, licensing, construction and operation of civilian radioactive waste management facilities. It is contemplated that increased Purchaser access to information, Purchaser program audit rights, and an increased Purchaser oversight role will be considered by the parties.

DRAFT



3. DOE shall accept and handle SNF and/or HLW at the Purchaser's site in accordance with DOE standards and procedures. DOE shall be responsible for the unloading activities at the disposal facility.

4. DOE may fulfill any of its obligations, or take any action, under this contract either directly or through contractors.

ARTICLE V - DECONTAMINATION CHARGES

DOE shall have the right to decontaminate the shipping casks, railroad cars, trucks or other shipping vehicles, or DOE's unloading area and machinery, when and if DOE determines that (1) the shipping casks, the material, or the method of packaging and loading failed to meet the acceptance criteria set forth in Appendix "D", or the health and safety regulations of DOE or any other Federal agency having jurisdiction over such matters, or (2) such shipping casks, although received in acceptable condition, have become contaminated due to necessary actions of DOE in accepting, transporting, storing, disposing or otherwise handling material under this contract. In such event, Purchaser shall reimburse DOE for any and all costs it may incur by reason of such decontamination activities.

ARTICLE VI - CRITERIA FOR DISPOSAL

A. General Requirements

Note: This is covered by IV.B.1

1. Except as otherwise provided in this contract, DOE shall accept hereunder only such SNF and/or HLW which has been approved for delivery in advance by DOE and which meets the General Specifications for such fuel and waste as set forth in Appendix "D", annexed hereto and made a part hereof.

Note: This is covered by IV.A.2 (b).

2. Purchaser shall provide to DOE a detailed description of the SNF and/or HLW to be delivered hereunder in such form and content as DOE may require as set forth in Appendix "E", annexed hereto and made a part hereof. Purchaser shall promptly advise DOE of any changes in said SNF and/or HLW as soon as they are known to the Purchaser.

3. Purchaser shall accurately classify SNF and/or HLW prior to delivery in accordance with paragraphs "B" and "C" of Appendix "D".

4. For any SNF which has been designated by the Purchaser as other than Standard Fuel, as that term is defined in Appendix "D", the Purchaser shall obtain delivery and procedure confirmation from DOE prior to delivery to DOE by Purchaser. DOE shall advise Purchaser within approximately sixty (60) days after receipt of such confirmation request as to the technical feasibility of disposing of such fuel and any fee adjustment for such services. Fee adjustments for handling and disposal of such fuel shall be based upon DOE's experience or best judgment as to the extra costs to be incurred. Any disagreements arising from the fee adjustments shall be resolved as provided for in the clause of this contract entitled "DISPUTES."

DRAFT

[shall have the right to verify the packaging, loading, marking, labelling, and preparation for transportation of the material.]

B. ACCEPTANCE CRITERIA -

1. Verification of SNF and/or HLW

During cask loading and prior to acceptance by DOE for transportation to the DOE facility, the SNF and/or HLW description of the shipping lot ~~will~~ may be verified by DOE. To the extent the SNF and/or HLW is consistent with the description submitted and approved, in accordance with Appendices "D" and "E," DOE shall take delivery of ~~agrees to accept~~ such SNF and/or HLW for disposal. ~~when DOE has verified the SNF and/or HLW description, determined the material is properly loaded, packaged, marked, labeled and ready for transportation, and has taken custody, as evidenced in writing, of the material at the Purchaser's site, f.o.b. carrier.~~ A properly executed off-site radioactive shipment record describing cask contents must be prepared by the Purchaser along with a signed certification which states: "This is to certify that the above named materials are properly described, classified, packaged, marked and labeled and are in proper condition for transfer according to the applicable regulations of the U. S. Department of Transportation."

2. Improperly Described SNF and/or HLW

a. Prior to Acceptance - If SNF and/or HLW is determined by DOE to be improperly described prior to acceptance by DOE at the Purchaser's site, DOE shall promptly notify the Purchaser in writing of such determination. DOE reserves the right, in its sole discretion, to refuse to accept such SNF and/or HLW until the SNF and/or HLW has been properly described. ~~The Purchaser shall not transfer such SNF and/or HLW to DOE unless DOE agrees to accept such SNF and/or HLW under such other arrangements as may be agreed to in writing by the parties. Such other arrangements may include payment of extra charges by the Purchaser.~~

b. After Acceptance - If subsequent to its acceptance DOE finds that such SNF and/or HLW is improperly described, DOE shall promptly notify the Purchaser in writing of such finding. In the event of such notification, Purchaser shall promptly provide DOE with a proper description. ~~DOE may require payment of extra handling charges by the Purchaser for disposal of any such improperly described SNF and/or HLW. Such extra charges will be based upon DOE's experience or best judgment as to the extra costs involved. Any disagreements arising from the extra charges levied shall be resolved as provided for in the clause of this contract entitled "DISPUTES."~~

3. If the Purchaser's delivery commitment schedules for SNF and/or HLW require the disposal of more material than the annual receiving capacity of the DOE disposal facility (or facilities) can accommodate, then the ~~following acceptance priority ranking will be utilized:~~ amount of SNF to be delivered in any year shall be equal to the cumulative amount ~~(1). Except as provided for in paragraph 2 below, acceptance priority~~ shall be based upon the age of the SNF and/or HLW ~~as calculated~~ from the date of discharge of such ~~material from~~ the civilian nuclear power reactor to ~~the date~~ specified for transportation by DOE in the delivery ~~commitment~~ schedule. DOE will first accept from reactor sites ~~the oldest SNF and/or HLW for disposal in the DOE facility;~~

7A

of SNF discharged by the civilian nuclear power reactors identified in Appendix "A" five years prior to the delivery ~~date~~ year specified in the delivery commitment schedule, divided by the cumulative amount of all SNF discharged five years prior to that delivery year, times the annual receiving capacity of the DOE facility (or facilities) in that delivery year.

DRAFT



(2) Notwithstanding the age of the SNF and/or HLW, priority shall be accorded any SNF and/or HLW removed from a civilian nuclear power reactor that has reached the end of its useful life or has been shut down permanently for whatever reason.

TVA

ARTICLE VII - TITLE

Title to all SNF and/or HLW accepted by DOE for disposal shall pass to DOE upon delivery. acceptance by DOE at the Purchaser's site as provided for in Article VI hereof. DOE shall be solely responsible for control of all material upon assuming title. DOE shall have the right to dispose as it sees fit of any SNF and/or HLW to which it has taken title. The Purchaser shall have no claim against DOE or the Government with respect to such SNF or HLW nor shall DOE or the Government be obligated to compensate the Purchaser for such material, provided that in the event such SNF is reprocessed, the Nuclear Waste Fund will be credited with any net proceeds from the sale of recovered products and byproducts or for the net value of any recovered products or byproducts not sold.

TVA

ARTICLE VIII - PRICE AND TERMS OF PAYMENT

A. Fee Charges

(1) (a) Effective April 7, 1983 Purchaser shall be charged a fee in the amount of 1.0 mill per kilowatt-hour (MKWH) on electricity generated and sold. by Purchaser's nuclear power reactors. The said fee shall be paid commencing on ____________ 198__ and in quarterly payments thereafter as specified in Paragraph B of this Article VIII.

(b) DOE will annually review the adequacy of the fee and adjust it, if necessary, in order to assure that all costs to be incurred by the Government shall be recovered. The proposed fee adjustment will be transmitted to Congress and shall be effective after a period of ninety (90) days of continuous session have elapsed following receipt of such transmittal unless either House of Congress adopts a resolution disapproving the proposed adjustment. The adjustment to the fee will not be retroactive to previously generated electricity.

(2) For SNF, or solidified high-level radioactive waste derived from SNF, which fuel was used to generate electricity in a civilian nuclear power reactor prior to April 7, 1983, a one-time fee will be assessed according to the formula set forth in Appendix "H," annexed hereto and made a part hereof. The payment of this fee by the Purchaser shall be made to DOE as specified in paragraph B of Article VIII below.

B. Payment

1. For electricity generated after April 7, 1983, fees shall be paid quarterly by the Purchaser and must be received by DOE not later than the close of business on the last business day of the second month following the end of each assigned three month period. A one-time adjustment period payment covering fees due from April 7, 1983 until the beginning of the initial assigned three month period will be due ________. The initial assigned three month period for purposes of payment and reporting kilowatt hours, will begin ________.

2. For SNF discharged prior to April 7, 1983, fees shall be paid by the Purchaser over a three (3) year period beginning at the time of delivery. The unpaid balance of the fee shall be subject to interest charges to the Quarterly Treasury Ra[te] Purchaser will incur no interest penalty for accelerated payment

TV 1330

3. Method of Payment

a. Payments shall be made by wire transfer, in accordance with instructions specified by DOE in Appendix "F", annexed hereto and made a part hereof and must be received within the time periods specified in paragraph B.1 of this Article VIII.

b. The Purchaser will complete a Standard Remittance Advice, as set forth in Appendix F, annexed hereto and made a part hereof, for each assigned three month period payment, and mail the remittance advice postmarked no later than five business days prior to the end of the month following each assigned three month period to "Department of Energy, Office of CONTROLLER, Cash Management Division, Box 500, Room D-208, Germantown, Maryland 20874.

4. Any fees not paid on a timely basis or underpaid because of miscalculation will be subject to interest as specified in paragraph C of this Article VIII.

C. Interest on Late Fees

1. DOE will notify the Purchaser of amounts due only when unpaid or underpaid by the dates specified in paragraph B above. Interest will be levied according to the following formula:

| | | | | | |
|---|---|---|---|---|---|
| Interest = | Amount Due To DOE For Assigned Three Month Period | X | 130% of the Quarterly Treasury Rate ~~Plus Six Percent (6%)~~ | X | # Months Late Including Month Of Payment (Fractions Rounded Up to Whole Months) / 12 |

2. Interest is payable at anytime prior to the due date for the subsequent assigned three month period fee payment. Nonpayment by the end of the subsequent assigned three month period will result in compounding of interest due. Purchaser shall complete a Standard Remittance Advice for interest payments.

3. Collection, following the assessment of a late fee by DOE, will be applied against accrued interest first and the principal thereafter.

D. Effect of Payment

Upon payment of all applicable fees and any applicable interest due thereon, the Purchaser shall have no financial obligation to DOE for the disposal of the accepted SNF and/or HLW. ~~except for decontamination charges and any extra charges which may be imposed in accordance with Article V and Article VI.~~

E. Use of Fees

All fees paid hereunder shall be deposited in the Nuclear Waste Fund established by section 302(c) of the Nuclear Waste Policy Act of 1983. Fees may be used only for the following purposes:

(1) the identification, development, licensing, contruction, operation, decommissioning, and post-decommissioning maintenance and monitoring of any repository, monitored, retrievable storage facility or test and evaluation facility constructed under the Act;

(2) the conducting of nongeneric, site specific, research, development, and demonstration activities under the Act;

(3) the administrative cost of the radioactive waste disposal program;

(4) any costs that may be incurred by DOE in connection with the transportation, treating, or packaging of spent nuclear fuel or high-level radioactive waste to be disposed of in a repository, to be stored in a monitored, retrievable storage site or to be used in a test and evaluation facility;

(5) the costs associated with acquisition, design, modification, replacement, operation, and construction of facilities at a repository site, a monitored, retrievable storage site or a test and evaluation facility site and necessary or incident to such repository, monitored, retrievable storage facility or test and evaluation facility; and

(6) the provision of assistance to States, units of general local government and Indian tribes under sections 116, 118; and 219 of the Act.

DRAFT



F. ~~I.~~ Audit

1. The DOE or its representative shall have the right to perform any audits or inspections necessary to determine whether Purchaser is paying the correct amount under the fee schedule set forth in Paragraph A, above.

2. Nothing in this contract shall be deemed to preclude an audit by the General Accounting Office of any transaction under this contract.

3. The Purchaser shall furnish DOE with such records, reports and data as may be necessary for the determination of quantities delivered hereunder and for final settlement of amounts due under this contract and shall retain and make available to DOE and its authorized representative for examination at all reasonable times such records, reports and data for a period of three (3) years from the completion of delivery of all material under this contract~~.~~, provided that reports and data relating to the determination of mils per kwh generated and sold need only be retained for a period of 3 years following the close of the specific reporting period.

ARTICLE IX - DELAYS

A. Unavoidable Delays by Purchaser or DOE

Neither the Government nor the Purchaser shall be liable under this contract for damages caused by failure to perform its obligations hereunder, if such failure arises out of causes beyond the control and without the fault or negligence of the party failing to perform. In the event circumstances beyond the reasonable control of the Purchaser or DOE -- such as acts of God, fire, flood -- cause delay in scheduled delivery, acceptance or transport of SNF and/or HLW, the party experiencing the delay will notify the other party as soon as possible after such delay is ascertained and the parties will readjust their schedules, as appropriate, to accommodate such delay.

B. Avoidable Delays by Purchaser or DOE

In the event of any delay in the delivery, acceptance or transport of SNF and/or HLW to DOE caused by circumstances within the reasonable control of either the Purchaser or DOE or their respective contractors or suppliers, the ~~charges and~~ schedules specified by this contract will be equitably adjusted. ~~to reflect any estimated additional costs incurred by the party not responsible for or contributing to the delay.~~

ARTICLE X - TERMINATION

~~A. TERMINATION BY PURCHASER~~

In view of the Federal responsibility for the disposal of SNF and/or HLW, neither DOE nor Purchaser shall have no right to terminate this contract. ~~unless statutory authority is hereafter enacted to so provide.~~

ARTICLE XA - SUSPENSION

DOE shall have the right to suspend performance of its responsibilities under this contract, in whole or in part, only in the event of national emergency that requires priority be given to government programs to the exclusion of the work under this contract.

TV 1333

DRAFT



~~B. Termination by DOE~~

~~1. In addition to any other rights DOE may have hereunder, DOE reserves the right, at no cost to the Government, to terminate or suspend this contract upon written notice to the Purchaser within ninety (90) days of (i) the Purchaser's failure to perform its obligations hereunder, and the Purchaser's failure to take corrective action within thirty (30) days after written notice of such failure to perform as provided above, unless such failure shall arise from causes beyond the control and without the fault or negligence of the Purchaser, its contractors or agents; or (ii) bankruptcy or insolvency proceedings are commenced by or against the Purchaser or if receivers are appointed to take possession of the business of the Purchaser.~~

~~2. The DOE reserves the right to cancel any scheduled deliveries or terminate terminate the contract, in whole or in part, in the event that (1) legislation hereafter enacted shall preclude use of the facility or continuation of the activity necessary for performance; or (2) a national emergency requires that priority be given to Government programs to the exclusion of the work under this contract. In the event of termination by the Government under either of these conditions, the Government shall refund that portion of payments representing services not delivered as determined by the Contracting Officer to be an equitable adjustment. Any disagreement arising from the refund payment, if any, shall be resolved as provided in the clause of this contract, entitled "DISPUTES."~~

TVA ARTICLE X8 – REMEDIES Nothing in this contract shall be construed to preclude either party from asserting its rights and remedies under the contract or at law.

ARTICLE XI - NOTICES

All notices and communications between the parties under this contract (except notices published in the Federal Register) shall be in writing and shall be sent to the following addressees:

To DOE: ______________

______________

______________

To the Purchaser: ______________

______________

______________

TV 1334



TVP0041120

DRAFT



However, the parties may change the addresses or addressees for such notices or communications without formal modification to this contract; provided, however, that notice of such changes shall be given by registered mail.

ARTICLE XII - GENERAL PROVISIONS

The General Terms and Conditions of this contract are set forth in full in Appendix G annexed hereto and made a part hereof.

ARTICLE XIII - REPRESENTATION CONCERNING NUCLEAR HAZARDS INDEMNITY

DOE represents that it will include in its contract(s) for the transportation of SNF and/or HLW to the DOE facility, an indemnity agreement based upon Section 170(d) of the Atomic Energy Act of 1954, as amended, a copy of which agreement shall be furnished to the Purchaser; that under said agreement, DOE shall have agreed to indemnify the contractor and other persons indemnified against claims for public liability (as defined in said Act) arising out of or in connection with contractual activities; that the indemnity shall apply to covered nuclear incidents which (1) take place at a contract location; or (2) arise out of or in the course of transportation of source, special nuclear or by-product material to or from a contract location. The obligation of DOE to indemnify shall be subject to the conditions stated in the indemnity agreement.

ARTICLE XIV - ENTIRE CONTRACT

This contract, which consists of Articles I through XIV and Appendices "A" through "H", annexed hereto and made a part hereof, contains the entire agreement between the parties with respect to the subject matter hereof. All previous and collateral contracts, representations, warranties, promises and conditions of sale are superseded by this contract. Any representation, promise, or condition not incorporated in this contract shall not be binding on either party. No course of dealing or usage of trade or course of performance shall be relevant to explain or supplement any provision contained in this contract.

IN WITNESS WHEREOF, the parties hereto have executed this contract as of the day and year first above written.

Appendices:

A. Delivery Commitment Schedule
B. Final Delivery Schedule
C. Annual Forecast
D. Acceptance Criteria and General Specifications
E. Description of Purchaser's Fuel
F. Standard Remittance Advice
G. General Terms and Conditions
H. Fee Calculation Formula

TUA

ARTICLE XV - OTHER CONTRACTS

Nothing in this contract is intended to relieve or in any way affect the contractual obligation of any other persons who may have contracted with Purchasers to be responsible for some or all disposal costs or to accept title to SNF and/or HLW

TV 1335



TVP0041121

DRAFT



UNITED STATES OF AMERICA

UNITED STATES DEPARTMENT OF ENERGY

BY: ______________________
(Contracting Officer)

WITNESSES AS TO EXECUTION ON BEHALF OF CONTRACTOR

______________________
(Name)

______________________
(Address)

______________________
(Name)

______________________
(Address)

(Purchaser's Company Name)

By:

Title:

I, ________, certify that I am the (Title) of the corporation named as Purchaser herein; that ________ who signed this document on behalf of the Purchaser was then (Title) of said corporation; that said document was duly signed for and on behalf of said corporation by authority of its governing body and is within the scope of its corporate powers.

IN WITNESS WHEREOF, I have hereinto affixed my hand and the seal of said corporation this _____ day of _____, 1983

(Corporate Seal)

______________________
(Signature)

DRAFT

APPENDIX A

DELIVERY COMMITMENT SCHEDULE

In accordance with the contract for Disposal of Spent Nuclear Fuel and/or High-Level Radioactive Waste between ________________(Purchaser) and DOE under Contract No. __________ dated ___________, the following Delivery Commitment schedule is submitted by Purchaser to DOE. This Delivery Commitment Schedule shall be submitted by Purchaser and approved 5 years prior to delivery.

Reactor Name: ______________________________________________

Type Reactor - PWR/BWR __________________ Location ______________

Shipping Lot No. ______
Discharge Date ______
Metric Tons Uranium ______
Number of Assemblies ______
Commitment Year for Delivery ______
Proposed Shipping Mode (Rail/Truck) ______

A detailed description of the Purchasers fuel will be submitted as set forth in Appendix E of this contract.

Unless otherwise agreed to in writing by DOE, the Purchaser shall furnish to DOE suitable proof of ownership of the SNF and/or HLW to be delivered hereunder. The Purchaser shall notify DOE in writing at the earliest practicable date of any change in said ownership.

By Purchaser: ________________________

________________________
Title

________________________
Date

Approved for DOE: ________________________

________________________
Title

________________________
Date

TV 1337

DRAFT

APPENDIX B

FINAL DELIVERY SCHEDULE

(To be submitted by Purchaser not later than twelve (12) months prior to estimated date of first delivery)

In accordance with the contract for Disposal of Spent Nuclear Fuel and/or High-Level Radioactive Waste between ________________(Purchaser) and DOE under Contract No. __________ dated ____________, the following Final Delivery schedule is submitted for DOE approval.

Reactor Name: ______________________________________________

Type Reactor - PWR/BWR ____________________ Location ________________

| | |
|---|---|
| Shipping Lot No. | ______ |
| Discharge Date | ______ |
| Metric Tons Uranium | ______ |
| Number of Assemblies | ______ |
| Estimated Date First Delivery | ______ |
| Estimated Date Last Delivery | ______ |
| Proposed Shipping Mode (Rail/Truck) | ______ |
| Type of Shipping Casks required | ______ |
| Number of Assemblies per Cask | ______ |
| Delivery to be made to DOE from Purchaser's site | ______ |

The above data must correspond to the Delivery Commitment Schedule (Appendix A) regrouped for shipping purposes.

Purchaser confirms that no change has taken place in the status of ownership of the SNF and/or HLW schedule hereunder.

NOTE: Contact ________________ ________________________ Title ____________ Phone

for DOE confirmation on an acceptable delivery date.

DRAFT

By Purchaser: ____________________

____________________
Title

____________________
Date

Approved for DOE: ____________________

____________________
Title

____________________
Date

DRAFT

APPENDIX C

ANNUAL FORECAST

In accordance with the contract for Disposal of Spent Nuclear Fuel and/or High-Level Radioactive Waste between ________________(Purchaser) and DOE under Contract No. __________ dated ___________, the following Annual Forecast is submitted. This information is to be used for DOE planning purposes and does not represent a firm commitment by Purchaser.

Reactor Name: ______________________________________________

Type Reactor - PWR/BWR __________________ Location _______________

Shipping Lot No. ______
Discharge Date ______
Metric Tons Uranium ______
Number of Assemblies ______
Commitment Year for Delivery ______
Proposed Shipping Mode (Rail/Truck) ______

By Purchaser: ________________________

________________________
Title

________________________
Date

DRAFT

APPENDIX D

ACCEPTANCE CRITERIA AND GENERAL SPECIFICATIONS

A. Fuel Category Identification

1. Categories - Purchaser shall use reasonable efforts, utilizing technology equivalent to and consistent with the commercial practice, to properly classify Spent Nuclear Fuel (SNF) prior to delivery to DOE as follows:

a. "Standard Fuel" means SNF that meets all the General Specifications therefor set forth in Paragraph B below;

b. "Nonstandard Fuel" means SNF that does not meet one or more of the General Specifications set forth in Subparagraphs 1 through 4 of Paragraph B below, and which is classified as Nonstandard Fuel Classes NS-1 through NS-4, pursuant to Paragraph B; or

c. "Failed Fuel" means SNF that meets the specifications set forth in Subparagraphs 1 through 3 of Paragraph B below and which is classified as Failed Fuel Class F-1 through F-3 pursuant to Subparagraph 5 of Paragraph B below.

d. Fuel may have "Failed Fuel" and/or several "Nonstandard Fuel" classifications.

B. Fuel Description and Subclassification - General Specifications

1. Maximum Nominal Physical Dimensions

| | Boiling Water Reactor (BWR) | Pressurized Waste Reactor (PWR) |
|---|---|---|
| Overall Length | 14 feet, 11 inches | 14 feet, 10 inches |
| Active Fuel Length | 12 feet, 6 inches | 12 feet, 0 inches |
| Cross Section* | 6 inches X 6 inches | 9 inches X 9 inches |

NOTE: Fuel that does not meet these specifications shall be classified as Nonstandard Fuel - Class NS-1

* The cross section of the fuel assembly shall not include the channel

DRAFT

2. Mechanical Components

a) Cladding shall be Zircaloy 2, Zircaloy 4, stainless steel or such other material as may be approved in writing by DOE.

b) Any nonfuel components such as control spiders, burnable poison rod assemblies, and control rod elements that are integral with the fuel assembly and do not require special handling may be stored and/or disposed of at no extra charge.

NOTE: Fuel that does not meet these specifications shall be classified as Nonstandard Fuel - Class NS-2

3. Cooling - The minimum cooling time for fuel is five (5) years (the date of delivery of SNF to DOE shall not be scheduled earlier than five (5) years after the final discharge date for that fuel).

NOTE: Fuel that does not meet these specifications shall be classified as Nonstandard Fuel - Class NS-3

4. Non-LWR Fuel - Fuel from other than LWR power facilities shall be classified as NONSTANDARD FUEL - Class NS-4. Such fuel may be unique and require special handling, storage and disposal facilities. ~~The cost of such handling cannot now be determined by DOE but will be evaluated using the general principles of full cost recovery to the Government on a case-by-case basis.~~

5. Failed Fuel

a. Visual Inspection. Assemblies shall be visually inspected for evidence of structural deformity of damage to classing or spacers which may require special handling. Assemblies which (i) are structurally deformed or have damaged cladding to the extent that special handling may be required or (ii) for any reason cannot be handled with normal fuel handling equipment shall be classified as FAILED FUEL - CLASS F-1.

~~b. Radioactivity Release Test. Assemblies determined to be structurally sound by meeting the criteria of item a above, shall be tested in water by DOE approved means to determine the radioactive release resulting from (i) cladding leakage and/or (ii) surface deposits. Assemblies found to have such radioactivity release that the radioactivity level in the cask coolant on delivery to DOE would exceed by 15% the regulatory limits permitted during transport of Spent Fuel Assemblies shall be classified as FAILED FUEL - CLASS F-2.~~

~~For the initial loading of any shipping lot under this contract, the specified percentage shall be as measured by the Purchaser in the cask water at the reactor site prior to delivery to DOE. Such percentage may be subsequently modified based upon operating experience. For any water-cooled shipping lots, such limits shall be based on 10 CFR 71.36 (a) 2; for any gas-cooled shipping lots such limits shall be based on 10 CFR 71.35 (a) 4.~~

DRAFT

b.f. Previously Encapsulated Assemblies. Assemblies encapsulated by Purchaser prior to classification hereunder shall be classified as FAILED FUEL - CLASS F-3. Purchaser shall advise DOE of the reason for the prior encapsulation of assemblies, in sufficient detail so that DOE may plan for appropriate subsequent handling.

2. Summary of Fuel Classifications

a) Standard Fuel

(1) Class S-1; PWR

(2) Class S-2; BWR

b) Nonstandard Fuel

(1) Class NS-1; physical dimensions

(2) Class NS-2; mechanical components

(3) Class NS-3; short cooled

(4) Class NS-4; non-LWR

c) Failed Fuel

(1) Class F-1; visual failure or damage

(2) Class F-2; radioactivity "leakage"

(3) Class F-3; encapsulated

C. High-Level Radioactive Waste

~~The~~ DOE shall accept high-level radioactive waste ~~derived from the reprocessing of spent fuel~~. Detailed acceptance criteria and general specifications for such waste will be issued by the DOE no later than the date on which DOE submits its license application to the Nuclear Regulatory Commission for the first disposal facility.

DRAFT

APPENDIX E

DETAILED DESCRIPTION OF PURCHASER'S FUEL

Reactor Name ____________
Shipping Lot No. ____________
Number of Assemblies
Herein Described ____________

This information shall be provided by Purchaser for each distinct fuel type within a shipping lot. It will accompany the Delivery Commitment Schedule.

The following definitions shall apply to the Spent Nuclear Fuel described in this Exhibit:

"Fuel Element" means the smallest integral unit of clad fuel (or blanket) containing Special Nuclear Material (SNM); i.e., a plate, tube, rod, disc, etc.

"Subassembly" means a group of elements, combined in a structural unit, which is grouped with other subassemblies to form the larger unit called the assembly.

"Assembly" means a group of fuel elements or subassemblies combined in a structural unit. The assembly is usually that fuel structure which is removed from the reactor as an individual unit.

All dimensions must be given in feet and inches and all weights in grams or kilograms.

A. Form and Composition of Spent Nuclear Fuel

1. Drawings Attached. The following drawing(s) constitute(s) a comprehensive illustration of the fuel elements, subassemblies, and assemblies to be delivered under the Contract:

| | | | | |
|---|---|---|---|---|
| 1.1 | Assembly | Dwg. ______ | Rev. ___ | (May be proprietary information) |
| 1.2 | Fuel Rod Details | Dwg. ______ | Rev. ___ | |
| 1.3 | Upper and Lower End Fittings | Dwg. ______ | Rev. ___ | |
| 1.4 | Grid Spacer, Detail | Dwg. ______ | Rev. ___ | |
| 1.5 | Poison Members | Dwg. ______ | Rev. ___ | |

2. Material Description. The following summarizes the description of fuel elements, subassemblies, assemblies modified after discharge. Where dimensions are required, the nominal dimensions, as they relate to the said reactor, must be used and the best estimates of the maximum change of these dimensions because of irradiation must be given. Weights must be dry, unirradiated weights with the expected range of weights also to be included.

DRAFT

a) Fuel Element Description

(1) Type (plate, disc, rod, tube, etc.) ____________

(2) Nominal Dimensions: Fuel Element Length ____________

Active Fuel Element Length ____________

(3) Nominal Weight ____________

(4) Weight of Special Nuclear Material (SNM) before Irradiation

Total U ____________

$^{235}U$ ____________

(5) Chemical form of SNM ($UO_2$, UC, etc.)

____________ Weight ____________

(6) Fabricated form of SNM (pellets, slugs, ribbons) and loading pattern in element ____________

(7) Alloy or dispersing material (Al, SS, etc.)

____________ Weight ____________

(8) Cladding Material (ZR, SS, etc.) ____________

(9) Bonding Material, if any (Na, Al-Si, etc.) ____________

(10) Other materials contained in fuel element:

____________

____________

____________

Any material not covered by the above shall be added to describe the element completely.

____________

____________

____________

DRAFT

b) Subassembly Description

(1) Number of elements ______________________________

(2) Overall dimensions ______________________________

(3) Total weight ______________________________

c) Assembly Description

(1) Number of elements ______________________________

(2) Overall dimensions: Length __________; Envelope __________

(3) Overall weight ______________________________

(4) Casing Material (Zr, SS, etc.) ____________________

3. Identification: Each separately removable unit in a Shipping Lot must be identified by a durable metal tag or label, or by embossing.

Identification of the units to be delivered under this Delivery Commitment are as follows:

______________________________________________

______________________________________________

______________________________________________

______________________________________________

B. Fuel Classification

1. In accordance with provisions of Article VI, "Criteria for Disposal", of this contract, the fuel in the shipping lot is hereby classified as __________.

2. If this fuel has been designated as other than Standard Fuel - "Class S-1" or "Class S-2", the basis for the classification must be listed below.

______________________________________________

______________________________________________

______________________________________________

______________________________________________

DRAFT



C. Specifications for Fuel Units that Contain Breeched Cladding or Exposed SNM or that are Warped.

1. A fuel element with breeched cladding or exposed SNM shall be canned in a container whose material and design shall be approved by DOE unless DOE determines that such canning is unnecessary.

2. Units distorted beyond specified dimensional limits must be considered on an individual basis. The Purchaser should provide dimensional information for each warped unit below.

____________________________________________

____________________________________________

____________________________________________

____________________________________________

D. Irradiation History

Report the irradiating history for each assembly as indicated in the table below:

| | Data Set | | | | |
|---|---|---|---|---|---|
| Assembly No. __________ | 1 | 2 | 3 | 4 | etc. |
| 1. Reactor Position | ___ | ___ | ___ | ___ | ___ |
| 2. Startup Date | ___ | ___ | ___ | ___ | ___ |
| 3. Average Reactor Power, MWTh | ___ | ___ | ___ | ___ | ___ |
| 4. Average Fuel Exposure, MW/MTU | ___ | ___ | ___ | ___ | ___ |
| 5. Cumulative Fuel Exposure, MWD/MTU | ___ | ___ | ___ | ___ | ___ |
| 6. Shutdown Date | ___ | ___ | ___ | ___ | ___ |
| 7. Heat Output/Assembly, Watts as of date __________ | ___ | ___ | ___ | ___ | ___ |