# EXHIBIT 1

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| **BOSTON EDISON COMPANY,**<br>**Plaintiffs,**<br>**v.**<br>**UNITED STATES OF AMERICA,**<br>**Defendant.** | **No. 99-447C (J. Lettow)** |

**AFFIDAVIT OF HENRY V. OHEIM**

I, Henry V. Oheim, after being first duly sworn, make this declaration of my own personal knowledge and, if called as a witness, could and would testify competently as follows:

1. I am Project Director for NSTAR Electric & Gas Corporation ("NSTAR"), One NSTAR Way, Westwood, MA 02090. Prior to the sale of the Pilgrim Nuclear Power Station ("Pilgrim") on July 13, 1999, I was employed as General Manager Technical by Boston Edison Company ("Boston Edison"), the then-owner of Pilgrim, and currently an operating affiliate of NSTAR, where I supported and was responsible for various aspects of Pilgrim operations. In that capacity, from 1995 to July 13, 1999, I was responsible for the submission of Delivery Commitment Schedules ("DCS") and Final Delivery Schedules ("FDS") under Standard Contract Number DE-CR01-83NE44372 between Boston Edison and the U.S. Department of Energy ("DOE") dated July 17, 1983.

2. I submitted DCSs for Boston Edison in 1995 (for SNF transfer in 2001) and 1998 (for SNF transfer in 2004) that were prepared under my direction. Prior to my 1995 submittal, and more recently, I also reviewed the DCSs filed on behalf of Boston Edison by my predecessor, W. C. Rothert, in 1993 (for SNF transfer in 1999) and 1994 (for SNF transfer in 2000). There were no DCSs submitted for SNF transfers in 2002 and 2003.

3. It is my understanding that Boston Edison was required to advise DOE no less than 63 months in advance of Boston Edison's proposed date for delivery and acceptance of certain identified quantities of its Spent Nuclear Fuel and/or other High Level Radioactive Waste (collectively, "SNF"), and to obtain DOE's agreement thereto.

4. Boston Edison submitted DCS filings with DOE covering proposed SNF transfers to occur during 1999, 2000, 2001 and 2004 in September 1993, September 1994, September 1995, and September 1998, respectively.

5. It was my understanding that the DCS submittal process was an initial indication by Standard Contract holders as to who proposed to ship what amounts of SNF in a particular year. DOE would then take the complete set of DCSs and prioritize them in accordance with the oldest-fuel-first principle. With the exception of Boston Edison's last DCS submission in September 1998, all of its DCS submittals were accepted by DOE. Boston Edison's final DCS submission in September 1998 was rejected by DOE by letter dated November 24, 1998. In that letter, DOE stated that it "is not able at this time to approve" Boston Edison's submittal, and waived "until further notice" the Standard Contract provisions pertaining to future DCS submittals.

6. Boston Edison's Standard Contract also provided for the submission of FDSs. An FDS was to be submitted to DOE twelve months prior the actual date on which the submitting utility wished to have its SNF scheduled for transfer to DOE. I interpreted the November 24, 1998, letter to mean that DOE would no longer accept or process any further SNF submittals and was suspending the DCS/FDS process until further notice.

7. Boston Edison did not submit an FDS to DOE. Based upon an anticipated delivery date in December, 1999 or early 2000, an FDS would not have been required to be filed until December, 1998 at the earliest. However, by December 1998 Boston Edison had already received DOE's November 24, 1998, letter suspending the DCS process. Thus, submission of an FDS would have been futile.

Under penalty of perjury, I hereby affirm that the above statements are true and accurate to the best of my knowledge.

Henry V. Oheim

NOTARY:
Subscribed to and sworn to before me this
8th day of September, 2004.

James R. Weaver
[Seal]

My Commission expires: Dec. 16, 2005

JAMES R. WEAVER
MY COMMISSION EXPIRES DEC. 16, 2005
NOTARY PUBLIC
COMMONWEALTH OF MASSACHUSETTS