# EXHIBIT 5

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

No. 98-1358

CONSOLIDATED EDISON COMPANY OF NEW YORK, INC., ET AL.

Petitioners,

v.

UNITED STATES DEPARTMENT OF ENERGY, ET AL.,

Respondents.

RESPONDENTS' MOTION TO DISMISS PETITION

STATEMENT

The five petitioners are generators and owners of spent nuclear fuel who have entered into the Standard Contract for Disposal of Spent Nuclear Fuel and/or High-Level Radioactive Waste (10 C.F.R. Part 961) ("Standard Contract"), created under Section 302(a) of the Nuclear Waste Policy Act ("NWPA"), 42 U.S.C. 10222(a) . The five petitioners were also petitioners in Northern States Power Company, et al. v. United States Department of Energy, No. 97-1064 and consolidated cases, 128 F.3d 754, rehearing denied, May 5, 1998, cert. denied, 119 S.Ct. 538 (1998). In that proceeding,

the petitioners here, along with other holders of spent fuel disposal contracts, filed a petition for review and a petition for a writ of mandamus to enforce the mandate of this Court in Indiana Michigan Power Co. v. U.S. Department of Energy, 88 F.3d 1272 (1996). In its 1996 decision, this Court held that the Department of Energy has an unconditional obligation to begin disposal of spent nuclear fuel under the NWPA by January 31, 1998. After DOE gave notice on December 17, 1996, under the Standard Contract, that it would not be able to begin performance by that date and invoked the Delays Clause of the Standard Contract, the present petitioners and others petitioned for review and sought mandamus in Northern States to compel DOE to begin performance and to allow petitioners to escrow their payment of the fees required under the Standard Contract. In addition, various states and state public utility commissions who had been parties to Indiana Michigan requested similar relief.

This Court denied the broad relief requested by the petitioners, holding that they had a potentially adequate remedy under the Delays Clause of the Standard Contract for DOE's inability to begin disposal on January 31, 1998. 128 F.3d at 759. The Court did, however, issue a partial writ prohibiting DOE from relying on the Unavoidable Delays Clause of the Standard Contract. 128 F.3d at 760.

Upon consideration of post-judgment motions to enforce the mandate, in which the five petitioners here joined, this Court rejected a renewed request to compel performance of the obligation to begin disposal and to allow escrow of fee payments. The Court

declared that this relief sought contractual remedies that the Court could not provide. Order, dated May 5, 1998. The Court declared that while Section 302(a)(5)(B) of the NWPA required DOE to undertake an unconditional obligation in the Standard Contract, that statutory provision did not itself require performance. Order, dated May 5, 1998, at 2-3. Thus, the Court had no jurisdiction under Section 119(a)(1)(B) of the NWPA, 42 U.S.C. 10139(a)(1)(B), to order compliance. Ibid. The Court reiterated that it had "remitted the utilities to their remedies under the Standard Contract" (p. 3).

The petitioners here did not adhere to that directive.[1] Instead, hard on the heels of the Court's May 5, 1998, Order, the petitioners filed on July 30, 1998, this new petition for review, together with a motion for leave to file a proposed complaint attached to the motion. Petitioners, purporting to invoke this Court's authority under 42 U.S.C. 10139, seek review of various alleged failures of the respondent Department of Energy to act.

In their "Petition," petitioners seek review of an alleged failure of DOE to perform, under Section 302(a)(4) of the NWPA, 42 U.S.C. 10222(a)(4), a proper evaluation of the adequacy of the fee paid by petitioners under the statute and the Standard Contract (Petition, pages 5-6, 19-26). Petitioners contend that the January 1, 1998, deadline found

---

[1] Nor did petitioners seek further review of this judgment. Both DOE and the state petitioners petitioned for writs of certiorari, but those petitions were denied on November 30, 1998. 119 S.Ct. 538. Nor have petitioners filed actions in the United States Court of Federal Claims under the Tucker Act, 28 U.S.C. 1491, as have some of their co-petitioners in Northern States. See e.g., Yankee Atomic Electric Co. v. United States, CFC No. 98-126.

in Section 302(a)(5)(B) bound DOE to collect by that date all of the money necessary to site, license, construct and open a repository by that date and that therefore DOE should now propose to reduce the fee to zero (Petition, pages 12-15, 19-23). Petitioners allege that DOE's failure to so reduce the fee has deprived them of property without substantive due process and constitutes an unauthorized taking in violation of the Fifth Amendment (Petition, pages 23-26). Petitioners also contend that DOE's use of the fees for any purpose but a "NWPA-compliant" repository constitutes a misuse of Nuclear Waste Funds (Petition, pages 27-29).

Second, petitioners seek review of an alleged failure of DOE to establish a schedule for a repository and to set the terms and conditions for disposal of spent nuclear fuel (Petition, pages 29-32). Petitioners allege this failure violates Sections 111(b)(1) and 302(a)(6) of the NWPA, 42 U.S.C. 10131(b)(1) and 10222(a)(6).[2]

---

[2] In their proposed complaint, these parties allege that Section 302(a)(5)(B) and the Standard Contract are enforceable directly by this Court in an action brought under Section 119, and that this Court can also award specific performance and damages for alleged breach of contract (Complaint for Relief of Consolidated Edison Company of New York, et al., pages 5-6, 15-23; Complaint for Relief of Illinois Power Company, pages 3-4, 11-16). The petitioners also contend that the alleged obligations to begin disposal of their spent fuel create property interests which have been adversely affected in violation of the Due Process and Takings provisions of the Fifth Amendment, and that continued storage of spent fuel at petitioners' facilities constitutes an unauthorized constructive condemnation of that property (ibid.). For relief, petitioners seek a declaration that DOE has violated these requirements, an order requiring DOE to provide storage for petitioners' spent fuel, and to accept and to take title to the fuel at a rate consistent with congressional intent, an order requiring DOE to pay all past and future costs of delay in performance, and, with the exception of the Illinois Power Company, (continued...)

## ARGUMENT

The petition for review should be dismissed. First, petitioners, having failed three times to obtain leave from this Court to escrow their fee payments because of DOE's failure to meet the January 31, 1998, deadline, now present alternative theories for achieving essentially the same relief. The Court's prior judgment, however, is binding on petitioners and prevents them from presenting their claims that the fee should be reduced or adjusted to nothing.

Second, even if petitioners may seek review of DOE's responsibility under Section 302(a)(4) to review and adjust the fee, as appropriate, the challenge does not meet the 180-day statute of limitations in Section 119(c). The petition, filed on July 30, 1998, was too late to challenge DOE's previous fee adequacy assessment issued in October 1996, and was too soon to challenge the new assessment issued in December 1998.

Third, petitioners' claims regarding the adequacy of the fee are based on its contention that DOE was required to collect, by January 31, 1998, all of the money necessary to site, license, construct and open a repository by that date. The NWPA does not contain such a requirement, however. For that reason there is no jurisdiction under Section 119 to review the allegation that DOE has failed to comply with such a mandate. Nor have petitioners presented any colorable claims of violations of the Fifth

(...continued)
damages for material breach of contract (Compl. pp. 21-23). DOE has this date filed its Opposition to Motion for Leave to File Complaint.

Amendment's due process or taking clauses arising out of the alleged failure of DOE to adhere to such requirement.

Lastly, DOE satisfied the requirement of Section 302(a)(6) to establish in writing the terms and conditions for disposal services when it promulgated the Standard Contract more than 15 years prior to the filing of the petition here. Petitioners' claim under Section 302(a)(6), therefore, is barred by the 180-day statute of limitations found in Section 119(c). Moreover, contrary to petitioners' contention, nothing in the statute mandates that DOE establish a precise schedule for the acceptance of petitioners' spent fuel. Accordingly, there is no jurisdiction under Section 119 to enforce such an obligation.

A. <u>Petitioners may not relitigate whether they must continue to pay fees after the failure of DOE to begin disposal services on January 31, 1998</u>

In Counts I through III of their petition, petitioners present alternative theories to support their claim that the fee must be reduced or eliminated: an alleged violation of statutory provision (Count I), an alleged deprivation of substantive due process (Count II), and an alleged taking (Count III). For all their artful pleading, however, petitioners are simply presenting again their claim that DOE's failure to begin disposal on January 31, 1998, permits them to escrow their fee payments. The foundation for each of these counts is the allegation that Section 302(a)(5)(B) required DOE to begin disposal by that date (Pet. pp. 19, 23, 25-26). Petitioners further claim the right to have the fee payment

reduced or eliminated because of DOE's alleged violation of this requirement (ibid.). But this Court has already ruled that Section 302(a)(5)(B) itself does not require DOE to perform the obligation to begin disposal by January 31, 1998, and that permission to suspend the payment of fees as a result of the delay in performance of the contractual obligation may not be granted to petitioners in a lawsuit under Section 119.

In its Order dated May 5, 1998, the Court declared (p. 3):

> [w]hile the statute requires the DOE to include an unconditional obligation in the Standard Contract, it does not itself require performance. Breach by the DOE does not violate a statutory duty, thus, our jurisdiction to hear allegations of failure to take an action required under the NWPA, see 42 U.S.C. § 10139(a)(1)(B), does not provide a basis for a move-fuel order.

Further, the Court twice rejected the request of petitioners here for an order requiring compliance with the obligation to begin disposal and allowing escrow of the fee payments, first in its opinion, 128 F.3d at 759, and then again in its May 5, 1998 Order at p.3. In the latter order, the Court recognized that such an

> order constitute[s] equitable contract remedies against DOE and fall[s] outside the scope of the Northern States mandate. Northern States describes the nature of the DOE's obligation, which was created by the NWPA and undertaken by the DOE under the Standard Contract. It does not place the question of contract remedies in this Court, nor set up this court as a source of remedies outside the Standard Contract.[[3]]

[3] This language disposed of the State petitioners' motion to enforce the mandate, but the Court also denied the petitioners' "essentially" similar request "for the same reasons" (Order, p. 3).

The Court's judgment in Northern States is now final, and under the principles of claim and issue preclusion, petitioners are bound by that judgment. See Yamaha Corp. of America v. United States, 961 F.2d 245, 254 (D.C. Cir. 1992), cert. denied, 506 U.S. 1079 (1993); Securities Industries Ass'n v. Board of Governors, 900 F.2d 360, 363-364 (D.C. Cir. 1990); Restatement 2d, Judgments, §§ 17, 19, 27. They cannot relitigate the scope of this Court's authority to provide other remedies for the alleged failure to comply with Section 302(a)(5)(B). Petitioners could have contended in Northern States that other provisions of the NWPA, such as Section 302(a)(4), or the due process clause and taking clause of the Fifth Amendment, support the claim that petitioners could enforce Section 302(a)(5)(B) through suspension or withholding of their fee payments. Their failure to do so bars litigation of Counts I through III of this petition. See Yamaha, 961 F.2d at 254.

## B. This Court lacks jurisdiction over the claims asserted in the petition

Even if petitioners are not barred from relitigating their claims, the petition must be dismissed for lack of jurisdiction. The only basis for subject matter jurisdiction alleged by petitioners is Section 119 of the NWPA, 42 U.S.C. 10139 (¶ 8). That section, entitled "Judicial review of agency actions," provides in pertinent part:

(a) Jurisdiction of United States courts of appeals

> (1) Except for review in the Supreme court of the United States, the United States courts of appeals shall have original and exclusive jurisdiction over any civil action--

(A) for review of any final decision or action of the Secretary, the President, or the [Nuclear Regulatory] under this part;

(B) alleging the failure of the Secretary, the President, or the [Nuclear Regulatory] Commission to make any decision, or take any action, required under this part;

(C) challenging the constitutionality of any decision made, or action taken, under any provision of this part;

* * * *

(c) Deadline for commencing action

A civil action for judicial review described under subsection (a)(1) of this section may be brought not later than the 180th day after the date of the decision or action or failure to act involved, as the case may be, except that if a party shows that he did not know of the decision or action complained of (or of the failure to act), and that a reasonable person acting under the circumstances would not have known, such party may bring a civil action not later than the 180th day after the date such party acquired actual or constructive knowledge of such decision, action, or failure to act.

This section thus creates subject matter jurisdiction in the courts of appeals for the specified proceedings so long as they are brought within the statute of limitations. See Public Citizen v. NRC, 845 F.2d 1105, 1109 (D.C. Cir. 1988). In addition, contrary to petitioners' belief (Pet. 5), Section 119 does not waive the sovereign immunity of the United States. See General Electric Uranium, 764 F.2d 896, 900-904 (D.C. Cir. 1985) (characterizing Section 119 as raising a question of subject matter jurisdiction); Wisconsin Elec. Power Co. v. Dep't of Energy, 778 F.2d 1, 2-3 (D.C. Cir. 1985) (applying General Electric Uranium). Compare Whittle v. United States, 7 F.3d 1259,

1262 (6th Cir. 1993) (grant of subject matter jurisdiction in 28 U.S.C. 1331 was not waiver of sovereign immunity); Coggeshall Development Corp. v. Diamond, 884 F.2d 1, 4 (1st Cir. 1989) (same); Voluntary Purchasing Groups, Inc. v. Reilly, 889 F.2d 1380, (5th Cir. 1989) (neither jurisdictional grant in Section 113 of the Comprehensive Environmental Response Compensation and Liability Act, 42 U.S.C. 9613(b), nor 28 U.S.C. 1331 was waiver of sovereign immunity). As the Supreme Court has held, "' [t]he fact that Congress grants *jurisdiction* to hear a claim does not suffice to show Congress has abrogated all *defenses* to that claim. The issues are wholly distinct." United States v. Nordic Village, Inc., 503 U.S. 30, 38 (1992), quoting Blatchford v. Native Village of Noatak, 501 U.S. 775, 786 (1991) (emphasis in original). The only possible waiver of sovereign immunity applicable here is that found in the Administrative Procedure Act ("APA"), 5 U.S.C. 702 & 704. We show below that the court lacks jurisdiction as to each count of the petition.

1. **Count I (Alleged violation of statutory duty to reduce or eliminate the petitioners fee obligation)**

For Count I, petitioners allege that DOE was required by Section 302(a)(5)(B) to begin disposal by January 31, 1998, and to have collected by that date from petitioners sufficient fees to satisfy that obligation (Pet. 13, 19). Petitioners allege that DOE had by that date collected sufficient fees to site, construct, license and initiate operation of a repository by that date (Pet. 19). Petitioners contend that under those circumstances,

Section 302(a)(4) of the NWPA, 42 U.S.C. 1022(a)(4), required DOE to reduce the fee and that the continued collection of the fee at the existing rate violates that provision (Pet. 20-22).

Section 302(a)(4) provides in pertinent part:

> The Secretary shall annually review the amount of the fees established by [Sections 302(a)(2) & (a)(3)] to evaluate whether collection of the fee will provide sufficient revenues to offset the costs as defined in subsection (d) of this section [42 U.S.C. 10222(d)]. In the event the Secretary determines that either insufficient or excess revenues are being collected, in order to recover the costs incurred by the Federal Government that are specified in subsection (d) of this section [42 U.S.C. 10222(d)], the Secretary shall propose an adjustment to the fee to insure full cost recovery.

At the time the petition was filed, DOE had issued such reviews in July 1984, February 1985, March 1986, June 1987, November 1990, and October 1996, each of which had concluded that no adjustment was necessary (Ex. 2 to Pet.). See National Association of Regulatory Commissioners v. U.S. Dep't of Energy, 851 F.2d 1424, 1427 (D.C. Cir. 1988). In December 1998, after the petition was filed, DOE issued its most recent assessment, which again concluded, based on the latest estimate of program costs through the year 2116, that no adjustment of the fee was warranted (Ex. 1, attached to this motion).

**a. Count I is barred by the statute of limitations.** -- In order to invoke this Court's jurisdiction under Section 119(a)(1)(A) or (B), the petitioners must identify a final decision or action of DOE under the NWPA or a failure to take action required under the

NWPA. As discussed above, reliance on Section 302(a)(5)(B)'s obligation to begin disposal cannot satisfy that requirement. The only DOE action identified by petitioners is the agency's prior fee assessment, issued in October 1996. And the only other provision of the NWPA identified by petitioners is Section 302(a)(4).

This Court held in Public Citizen v. NRC, 845 F.2d 1105, 1109 (D.C. Cir. 1988), that the limitations period established in the judicial review provision of the NWPA is a "window," i.e., actions are untimely whether filed after the running of the 180-day period for filing suit or filed before that period begins to run. In that case, a public interest group petitioned the Nuclear Regulatory Commission to conduct a rulemaking on training of nuclear power plant operators to comply with Section 306 of the NWPA, 42 U.S.C. 10226, alleging that the Commission's previously issued Policy Statement on the subject did not satisfy the NWPA. Before the NRC acted on the request, the petitioners sought a writ of mandamus to compel the NRC to correct its "on-going" failure to initiate rulemaking. This Court held that Section 119 would not afford jurisdiction for this claim because to the extent it was a challenge to the Policy Statement, it was filed after the 180-day period allowed in Section 119(c). 845 F.2d at 1107-1108. The Court expressly rejected the argument that the time had not run because petitioners challenged an "on-going" failure to comply with Section 306. Ibid.

In addition, the Court also rejected the proposition that when the NRC eventually denied the petition for rulemaking, the court of appeals could assume jurisdiction to

review that denial. 845 F.2d at 1108-1109. Because the agency action sought to be reviewed had not yet occurred when the petitioners went to court, the law suit was filed prematurely and had to be dismissed. 845 F.2d at 1109-1110. This Court held that the statute did not allow the filing of petitions for review "of a suspected or future decision or action." 845 F.2d at 1109 (emphasis supplied).

The same result should be reached here. Count I attacks DOE's assessment of the fee, but at the time the petition was filed, the only agency action that would fall within Section 119 had been taken in October 1996, more than 180 days previously. Under Public Citizen, an allegation of "on-going" failure to assess the fee does not satisfy the jurisdictional prerequisite. Furthermore, in response to the petitioners' request for a revised fee assessment, DOE informed petitioners that a new assessment was in progress and would be completed by the end of 1998 (Ex. 2 to Pet.). Under Public Citizen, petitioners' window for challenging that new assessment would not open until it was issued, which occurred in December 1998, and the defect cannot be deemed cured by that event. As in Public Citizen, petitioners' attempt to seek review of DOE's implementation of Section 302(a)(4) was filed both too late and too soon.

b. **There is no statutory requirement to fix the fee based on the January 31, 1998 deadline**. -- The premise of Count I is petitioners' claim that the statute requires DOE to have collected by January 31, 1998, all the fees necessary to begin repository operations by that date. Petitioners are incorrect, and consequently, Section 119(a)(1)(B)

does not provide jurisdiction for this claim. See Nevada v. Watkins, 914 F.2d 1545, 1563-1564 (9th Cir. 1990), cert. denied, 499 U.S. 906 (1991). Petitioners can point to no express statement of such a requirement, but rely on inference built on Section 302(a)(5)(B)'s provision of a January 31, 1998, deadline for commencement of disposal services. The actual statutory provisions setting the fee, 42 U.S.C. 10222(a)(2) & (3), gauge the fee by the amount of electric power petitioners produce. Section 302(a)(4) also requires DOE to set the fee so as to insure full cost recovery for the program's costs. 42 U.S.C. 10222(a)(4). This provision implements Congress' express finding that "the costs of such disposal should be the responsibility of the generators and owners" of spent fuel. 42 U.S.C. 10131(a)(4).

In contrast, Section 302(a)(5)(B), the section relied on by petitioners, does not purport to govern DOE's setting of the fee, but instead mandated a set of contract promises premised on the existence of the fee established under Sections 302(a)(2), (3), & (4). As the Court has ruled, the enforcement of those promises must proceed under the contract process. The language of Section 302(a)(5)(B) does not support a further implication that DOE is authorized to collect only sufficient fees to have begun repository operations by January 31, 1998. Accordingly, the jurisdictional prerequisite of Section 119(a)(1)(B) is not satisfied.

2. Counts II and III (Alleged Deprivation of Substantive Due Process and Taking)

In Counts II and Count III, petitioners reassert the same claim as set out in Count I but allege that DOE's actions have violated petitioners' constitutional rights under the substantive due process and taking clauses of the Fifth Amendment (Pet. 23-26). The addition of the allegation of unconstitutional action does not, however, bring either count within the jurisdictional grant of Section 119.

First, these counts identify the same failure to act as required by the NWPA that forms the foundation of Count I. For the reasons stated above, there is no jurisdiction under Section 119(a)(1)(B) for review of a failure to act.

Second, Section 119(a)(1)(C), which grants jurisdiction to challenges to the constitutionality of DOE's actions under the NWPA, does not provide an independent jurisdictional basis for these claims. Both these counts are premised on an asserted property interest in the alleged statutory right to have DOE set the fee at a lower level (Pet. 23, 25). A unilateral expectation that an agency will comply with an alleged requirement of a statute, however, does not create a property right in the potential beneficiary of that compliance. See Webb's Fabulous Pharmacies, Inc. v. Beckwith, 449 U.S. 155, 161 (1980) ("a mere unilateral expectation * * * is not a property interest entitled to protection"). Moreover, at bottom petitioners's claims rest on the contractual obligation to begin disposal, a breach of which does not give rise to a due process or taking claim. See Manila Investment Co. v. Park Trammell, 239 U.S. 31, 32 (1915); Heath v. City of Fairfax, 542 F.2d 1236, 1237-38 (4th Cir. 1976); Coastal Petroleum Co.

v. Collins, 234 F.2d 319, 320 (1956); Tyler House Apartments v. United States, 38 Fed. Cl. 1, 10 (1997). See Sun Oil Co. v. United States, 215 Ct.Cl. 716, 769-770, 572 F.2d 786, 818 (1978). The lack of a cognizable property interest means that neither Count II nor Count III present a colorable constitutional challenge to DOE's actions within the jurisdiction granted by Section 119(a)(1)(C). See Morris v. Sullivan, 897 F.2d 553, 560 (D.C. Cir. 1990) (applying Bell v. Hood, 327 U.S. 678, 681-82 (1946), to uphold dismissal of due process claim brought after dismissal of statutory claim for same conduct).

3. **Count IV (Alleged Misuse of Nuclear Waste Funds)**

In Count IV, petitioners allege that DOE's continuing to expend Nuclear Waste Funds on the repository program is a misuse of those monies (Pet. 27-28). In petitioners' view, expenditures for anything other than a "NWPA-compliant" repository, *i.e.*, one that was ready to begin operations on January 31, 1998, is improper (Pet. 28).

Once again this is a claim premised on the false notion that the NWPA required DOE to have a repository in operation by January, 31, 1998, financed entirely by collections owing as of that date. No such requirement exists in the NWPA, and consequently, there is no jurisdiction under Section 119(a)(1)(B) for such a claim.[4]

---

[4] Contrary to petitioners' allegation, the Nuclear Waste Fund is not a "trust fund" within the meaning of 31 U.S.C. 1321. Accordingly, the appropriate limitation on the use of the funds is found only in the NWPA, 42 U.S.C. 10222(d).

4. Count V (Alleged Failure to Establish Schedule, Terms and Conditions for Acceptance of Spent Nuclear Fuel

Petitioners' remaining claim is that DOE has not satisfied the direction in Section 302(a)(6) to establish terms and conditions for provision of disposal services and has not established a schedule for spent fuel acceptance (Pet. 29-32). As DOE informed petitioners prior to filing their lawsuit (Ex. 2 to Petition for Review), it is DOE's position that the Standard Contract, promulgated in 1983, and other documents prepared pursuant to the Standard Contract and issued in March 1995 fulfill any requirement of Section 302(a)(6) or obligation to establish a schedule. There is no jurisdiction to review the issuance of these documents, however, because the 180-day statute of limitations found in Section 119(c) has long run. See Public Citizen, supra.

DOE promulgated the Standard Contract in 1983 in order to "set[] forth the contractual terms and conditions under which DOE will make available the nuclear waste disposal services." 48 Fed. Reg. 16590 (April 18, 1983). The Standard Contract does so in several of its provisions. See 10 C.F.R. 961.11: Art. IV - Responsibilities of the Parties; Art. V - Delivery of SNF and/or HLW; Art. VI - Criteria for Disposal, Art. VII - Title; Art. VIII - Fees and Terms of Payment. In addition, pursuant to Article IV.B.5, DOE has established a procedure for ranking quantities of spent fuel and allocating the projected capacity for providing services among the contract holders. The most recent Annual Priority Ranking and Annual Capacity Report was issued by DOE in March 1995

(excerpts attached hereto as Exhibit 2). These documents plainly implement the mandate of Section 302(a)(6) to establish in "writing criteria setting forth the terms and conditions under which such disposal services shall be made available." 42 U.S.C. 10222(a)(6).[5]

As the Ninth Circuit has held, a petition alleging a failure to act as required under the NWPA can only be brought if the Secretary completely fails to perform the specified action. In Nevada v. Watkins, 939 F.2d 710 (9th Cir. 1991), the court dismissed the State of Nevada's attempt to obtain review of the repository siting Guidelines issued under 42 U.S.C. 10132(a). The court concluded that issuance of the Guidelines was not a final decision or action of the Secretary subject to review under 42 U.S.C. 10139(a)(1)(A). The Court also rejected the proposition that Nevada's challenge to the Guidelines could be heard under 42 U.S.C. 10139(a)(1)(B) on the theory that they failed to conform to the requirements of the statute. 939 F.2d at 714 n.11. An action under the latter provision, the court held, would be appropriate only if DOE had failed to issue any Guidelines. "The fact that petitioners allege deficiencies in the Guidelines does not signify that the Secretary failed to act within the meaning of [42 U.S.C. 10139(a)(1)(B)]." Ibid., citing Public Citizen v. NRC, supra, 845 F.2d at 1107-1108 ("almost any objection to an agency action can be dressed up as an agency's failure to act").

---

[5] 42 U.S.C. 10131(b)(1), relied on petitioners, does not impose a direct duty on DOE to meet a specific schedule for waste acceptance. Rather, that provision states that one of the legislative purposes is to establish a schedule for development of respositories that will provide reasonable asssurance of protection for the public and the environment.

Consequently, Count V is only cognizable as a challenge under Section 119(a)(1)(A) to a *final decision or action of* DOE, *i.e.*, the promulgation of the Standard Contract and/or the issuance of the Annual Capacity Report in 1995. Petitioners' petition, however, was filed on July 30, 1998, long after the 180-day statute of limitations in 42 U.S.C. 10139(c) had run. Accordingly, Count V must be dismissed as well.

CONCLUSION

For the reasons set out above, the petition for review should be dismissed.

Respectfully submitted,

JOHN A. BRYSON
Attorney, Department of Justice
Washington, D.C. 20530
(202) 514-2740

OF COUNSEL:

MARC JOHNSTON
Deputy General Counsel
for Litigation
Department of Energy
Washington, D.C. 20585

90-5-2-3-06315
JANUARY 1999

# CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Respondent's Motion to Dismiss Petition was served on this 19th day of January, 1999, by first-class mail, postage prepaid, on the following counsel of record:

Tami Lyn Azorsky
McKenna & Cuneo, L.L.P.
1900 K Street, N.W.
Washington, D.C. 20006

JOHN A. BRYSON
Attorney, Department of Justice
P.O. Box 23795 (L'Enfant Plaza Station)
Washington, D.C. 20026
(202) 514-2740

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

No. 98-1358

CONSOLIDATED EDISON COMPANY OF NEW YORK, INC., ET AL.

Petitioners,

v.

UNITED STATES DEPARTMENT OF ENERGY, ET AL.,

Respondents.

RESPONDENTS' REPLY TO PETITIONERS' RESPONSE IN OPPOSITION TO MOTION TO DISMISS PETITION

Petitioners cannot escape the fact that Counts I through IV of their petition, and their request for relief from their obligation to pay fees to the Nuclear Waste Fund, are premised on the claim that Section 302(a)(5)(B) imposed on the Department of Energy (DOE) a particular obligation, *i.e.*, that the agency should have opened a repository by January 31, 1998, and should have collected by that date sufficient fees to accomplish that task. Petitioners maintain that DOE has violated that alleged obligation by failing to open a repository or otherwise provide disposal services, and by continuing to collect fees in accordance with the Standard Contract. In an attempt to divert attention from the actual basis for their claims, petitioners have couched them as violations of Section 302(a)(4)'s requirement that DOE conduct an annual assessment of the adequacy of the fee. They also offer further elaborations such as allegations that DOE's continued collection of fees is arbitrary and capricious, or shifts certain costs of the program to a later time, or creates

uncertainty as to when disposal services will be provided (Response, p. 7). These general complaints offer no basis for invoking this Court's jurisdiction under Section 119, or the authority of the Administrative Procedure Act (APA), 5 U.S.C. 701 et seq., to review agency action in the absence of a claim that DOE has violated a provision of the NWPA.

Petitioners eventually acknowledge that at bottom these claims rest on their view of the nature of DOE's obligations under Section 302(a)(5)(B). At pages 9-10, they allege that Section 302(a)(4) requires DOE to evaluate whether the fee is adequate to offset program costs as defined in Section 302(d), and that in turn Section 302(d) requires DOE to make expenditures from the Nuclear Waste Fund "only for purposes of radioactive waste disposal activities * * * under this chapter," 42 U.S.C. 10222(d), and that in turn that Section 302(a)(5)(B) governs commencement of disposal services "under this chapter." Implicit in this chain of reasoning is the recognition that neither Section 302(a)(4), nor Section 302(d), nor any other provision of the NWPA except Section 302(a)(5)(B), addresses a date certain for providing disposal services. Petitioners' claims, consequently, rise or fall on the proper interpretation of Section 302(a)(5)(B). As discussed below and in our Motion to Dismiss, however, petitioners may not relitigate that issue in a new lawsuit; moreover, these claims would be barred by the statute of limitations in the NWPA.

A. The doctrines of claim preclusion and issue preclusion bar petitioners' claims. - Petitioners have already litigated the nature of DOE's obligation under Section

302(a)(5)(B) and unsuccessfully sought relief from the obligation to pay fees because of a claimed violation of that obligation. In Indiana Michigan Power Co. v. U.S. Department of Energy, 88 F.3d 1272 (D.C. Cir. 1996), the petitioners sued to obtain performance of an alleged statutory obligation under Section 302(a)(5)(B) to provide disposal services by January 31, 1998, and for suspension of their fee payments after that date if DOE failed to perform. They obtained a judgment that Section 302(a)(5)(B) required DOE to undertake an *unconditional obligation to provide* disposal services in exchange for the fee payments, but the court otherwise denied relief.

In Northern States Power Company, et al., v. United States Department of Energy, No. 97-1064 and consolidated cases, 128 F.3d 754, rehearing denied, May 5, 1998, cert. denied, 119 S.Ct. 538 (1998), petitioners sought mandamus to enforce the mandate of Indiana Michigan, again seeking performance and permission to suspend their fee payments. Their petition for mandamus alleged that it was triggered by DOE's formal notice under Article IX of the Standard Contract that DOE would not begin disposal services on January 31, 1998 (Ex. 1, p. 2 & Att. 1).[1] The petition presented the claim that DOE had violated "both the Court's mandate and DOE's clear statutory duty under the NWPA" (page 2), and sought injunctive and declaratory relief, including a *declaration* that petitioners were relieved of their fee obligation unless and until DOE performed

[1] The petition for mandamus, together with three of its attachments, is attached to this reply as Ex. 1.

(pages 3, 18-19). Thus, the premise of the petition was that DOE would not satisfy the obligation created by Section 302(a)(5)(B) and that DOE would continue to collect fees. The Court issued a partial writ of mandamus precluding DOE from relying on the portions of the "Unavoidable Delays" clause of the Standard Contract, but denied the requested relief from the fee obligation, holding that petitioners had a potentially adequate remedy under the Standard Contract. The Court retained jurisdiction pending compliance with the mandate.[2]

On February 19, 1998, petitioners filed a motion to enforce the mandate.[3] Contrary to petitioners' assertion (Resp. p. 4), petitioners did not simply "ask[] [the Court] to enforce the limited mandate issued." This motion renewed the rejected requests for specific performance and permission to escrow fee payments (Ex. 2, p. 3). In addition, petitioners sought the further relief of an order (1) barring DOE from using Nuclear Waste Funds to pay damages to utilities, and (2) barring DOE from increasing fees to replace funds used to pay those damages (Ex. 2, pp. 2, 12). Petitioners pursued this relief in part because they construed DOE's petition for rehearing as indicating a threat to use the Fund in this manner (Ex. 2, p. 7). Petitioners also relied on the fact that DOE had, on January 12, 1998, denied a further request for permission to escrow fees filed by 27 of the

---

[2] DOE complied with the mandate by withdrawing its preliminary determination that the delay in performance was attributable to unavoidable delays.

[3] The Utility Petitioners' Motion to Enforce the Mandate, together with five of its attachments, is attached to this reply as Ex. 2.

petitioners, including two of the petitioners in the instant case, Consolidated Edison Company of New York, and Rochester Gas and Electric Corporation (Ex. 2, p. 8, Atts. D & E). In its Order of May 5, 1998, the Court denied the requested relief of these petitioners, as well as similar requests of other utilities. Order, May 5, 1998, pp. 2-3.

Under the doctrine of claim preclusion, "'the parties to a suit and their privies are bound by a final judgment and may not relitigate any ground for relief which they have already had an opportunity to litigate - even if they chose not to exploit that opportunity- whether the initial judgment was erroneous or not.'" Page v. United States, 729 F.2d 818, 820 (D.C. Cir. 1984), quoting, Hardison v. Alexander, 655 F.2d 1281, 1288 (D.C. Cir. 1981). Further claims based on the same nucleus of facts are barred because "'it is the facts surrounding the transaction or occurrence which operate to constitute the cause of action, not the legal theory upon which a litigant relies.'" Page, 729 F.2d at 820, quoting Expert Elec., Inc. v. Levine, 554 F.2d 1227, 1234 (2d Cir.), cert. denied, 434 U.S. 903 (1977).

Here, there is no essential difference between petitioners' contentions (1) that they may suspend fee payments because DOE has not performed an obligation under Section 302(a)(5)(B) to begin disposal services, (2) that the Section 302(a)(5)(B) obligation entitles them to an injunction preventing DOE from raising fees to cover costs of delay paid out of the Fund to contract holders, and (3) that Section 302(a)(5)(B) requires DOE to reduce the fee if a repository or other facility were not available by the date contained

in Section 302(a)(5)(B). If the claims are *the same*, petitioners are plainly precluded by the prior adverse judgment. But even if the third contention is treated as a different claim, it is evident that in the pursuit of their effort to obtain relief from the fee obligation, petitioners had the opportunity to pursue the last claim in the prior litigation with DOE over the same nucleus of facts, but failed to do so. Accordingly, the adverse judgment bars petitioners from litigating it in this lawsuit.

Even if claim preclusion does not apply here, issue preclusion bars relitigation of the question of whether Section 302(a)(5)(B) imposes on DOE any duty other than a requirement to enter into a contract with an unconditional obligation to begin disposal services on January 31, 1998, and consequently whether remedies outside the Standard Contract are available. The Court expressly rejected these petitioners' request for such remedies, saying they

> constitute equitable contract remedies against the DOE and fall outside the scope of the Northern States mandate. Northern States describes the nature of the DOE's obligation, which was created by the NWPA and undertaken by the DOE under the Standard Contract. It does not place the question of contract remedies in this court, nor set up this court as a source of remedies outside the Standard Contract.

(May 5, 1998, Order, p. 3). The Court further explained in denying petitioner Yankee Atomic's request for a order requiring DOE to move its spent fuel that the mandate could not extend to requiring DOE to perform under the Standard Contract because Section 302(a)(5)(B) itself did not require DOE to perform the obligation created thereby. Ibid. Rather, the statutory obligation was "to include an unconditional obligation in the

Standard Contract" (ibid.). This reasoning is identical to that set out in the denial of petitioners' particular motion, *quoted* above. The determination that Section 302(a)(5)(B) only required DOE to include an unconditional obligation in the Standard Contract necessarily precludes a conclusion that Section 302(a)(5)(B) requires DOE to reduce the fee if it failed to meet the January 31, 1998, deadline. Petitioners litigated and lost the specific issue whether Section 302(a)(5)(B) imposed duties other than to undertake an unconditional obligation in the Standard Contract, and therefore, they may not present the same issue again.

B. Petitioners' claims are time-barred. – Petitioners' defense of the timeliness of their lawsuit is without merit. Section 119(c) of the NWPA sets a 180-day statute of limitations triggered by DOE's "decision or action or failure to act," except where a petitioner shows he did not know of the decision or action or failure to act and that a reasonable person would not have known of the decision or action or failure to act. 42 U.S.C. 10139(c). In the latter case, the period runs from the time a petitioner obtains "actual or constructive knowledge of such decision, action, or failure to act." Ibid. Petitioners filed their lawsuit on July 30, 1998; consequently, the question is whether petitioners can be charged with knowledge of the relevant decision, action, or failure to act before January 31, 1998.

This Court construed and applied Section 119(c) in Public Citizen v. NRC, 845 F.2d 1105, 1109 (D.C. Cir. 1988), a case petitioners fail to cite or address. There, the

Court held the limitations period is a "window," i.e., actions are untimely whether filed after the running of the 180-day period for filing suit or filed before that period begins to run. Where the agency has made a decision or taken an action under a provision of the statute, petitioners must sue within 180 days of that decision or action, and may not sue after that time period on the theory the alleged invalidity of the action is an "on-going failure" to act cognizable under Section 119(a)(1)(B). 845 F.2d at 1107-1108. Further, the statute does not allow the filing of petitions for review "of a suspected or future decision or action." 845 F.2d at 1109 (emphasis supplied).

Petitioners challenge an alleged failure to reduce or adjust the fee to nothing under the process prescribed by Section 302(a)(4). That section directs DOE to prepare annual fee adequacy reports, and DOE issued such a report in October 1996, after the decision in Indiana Michigan, that evaluated the fee and concluded no adjustment was necessary (attached as Ex. 3 to this reply). That report was premised on a projection that disposal would not begin until 2010, when a repository was expected to be operating (Ex. 3, p. 6). The agency had acted more than 180 days prior to petitioners' filing suit, and under Public Citizen, an alleged "on-going" failure to comply with an alleged statutory requirement to make an downward adjustment is not cognizable under Section 119. DOE's next fee report was issued in December 1998, after petitioners sued, and they cannot obtain review under Section 119 of that event in the present lawsuit.

Petitioners premise their argument that their petition is timely on the remarkable

claim that it was not until January 31, 1998, that they could have known that DOE would not begin disposal services and would continue to collect fees (Response, pp. 12-13). This contention ignores the relevant actions, *i.e.*, DOE's fee adequacy reports. In any event, the argument is completely belied by the notice give by DOE's fee adequacy report published in October 1996 (Ex. 3, p. 6), and by DOE's formal notice on December 17, 1996, to petitioners of a delay in contract performance beyond January 31, 1998 (Ex. 1, Att. 1), a document that petitioners relied upon to file their petition for mandamus in Northern States on January 31, 1997.[4] Further, DOE formally denied on January 12, 1998, the request of two of the instant petitioners to escrow their fee payments (Ex. 2, Att. E). Petitioners' claim is that DOE was obliged to open a repository by January 31, 1998, and reduce the fee by that date to the level that would be appropriate if a repository had opened by that date. Petitioners plainly had at least constructive knowledge well before January 31, 1998, that DOE would not take either of those actions.

Petitioners' reliance on events subsequent to January 31, 1998, is misplaced. Secretary Pena's letter of May 18, 1998, (attached hereto as Ex. 4), offering a possible contract amendment to address petitioners' claims about delay, added nothing to

---

[4] Petitioners also presented to the Court with its petition for mandamus the April 29, 1997, statement of the Acting Director of the Office of Civilian Radioactive Waste Management before a committee of Congress (Ex. 1, Att. 3). The Acting Director presented the projected schedule for emplacement of spent fuel in a repository in 2010, and described the agency's intention to issue a new fee adequacy assessment in the fall of 1998 (pp. 3, 5).

petitioners' knowledge of the failure to begin disposal on January 31, 1998, and the continuation of fee collections. Similarly, DOE's letter (Ex. 2 to Petition) responding to petitioners' letter requesting a fee adjustment does not qualify as a decision or action subject to judicial review. See Public Citizen v. Office of U.S. Trade Representatives, 970 F.2d 916, 921 (D.C. Cir. 1992). The response, in any event, did not grant or reject petitioners' request, but merely noted that DOE was preparing a new assessment. Further, petitioner's suggestion (Response, p. 15) that they could wait until DOE's alleged failure to comply was "unreasonable" would, if sustained, improperly substitute a different standard for equitable tolling than Congress allowed in Section 119(c). See United States v. Beggerly, 118 S.Ct. 1862, 1868 (1998). Finally, none of these events reopened an agency proceeding which in turn might trigger a new limitations period.

## CONCLUSION

For the reasons set out above and our motion to dismiss, the petition for review should be dismissed.

Respectfully submitted,

JOHN A. BRYSON
Attorney, Department of Justice
Washington, D.C. 20530
(202) 514-2740

OF COUNSEL:

MARC JOHNSTON
Deputy General Counsel
Department of Energy

90-5-2-3-06315
FEBRUARY 1999

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Respondent's Reply to Petitioners' Response in Opposition to Motion to Dismiss Petition was served on this 4th day of February, 1999, by first-class mail, postage prepaid, on the following counsel of record:

Tami Lyn Azorsky
McKenna & Cuneo, L.L.P.
1900 K Street, N.W.
Washington, D.C. 20006

JOHN A. BRYSON
Attorney, Department of Justice
P.O. Box 23795 (L'Enfant Plaza Station)
Washington, D.C. 20026
(202) 514-2740

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

**No. 98-1358** **September Term, 1998**

Consolidated Edison Company of New York, Inc., et al.,
Petitioners

v.

Department of Energy, et al.,
Respondents

UNITED STATES COURT OF APPEALS FOR DISTRICT OF COLUMBIA CIRCUIT
FILED APR 16 1999
CLERK

**BEFORE:** Wald, Ginsburg, and Sentelle, Circuit Judges

**ORDER**

Upon consideration of the motion to dismiss, the opposition thereto, and the reply; the motion for oral argument, and the opposition thereto; the motion for leave to file a complaint, the opposition thereto, and the reply; the motion for appointment of a special master, the opposition thereto, and the reply; and the motion for an order confirming the scope of the court's review, the opposition thereto, and the reply, it is

**ORDERED** that the motion for oral argument be denied. It is

**FURTHER ORDERED** that the motion to dismiss be granted. Petitioners' arguments are precluded by the court's holding in Northern States Power Co. v. Dep't of Energy, 128 F.3d 754 (D.C. Cir. 1997), and the unpublished order issued May 5, 1998, denying rehearing in that case. It is

**FURTHER ORDERED** that the remaining motions be dismissed as moot.

The Clerk is directed to withhold issuance of the mandate herein until seven days after disposition of any timely petition for rehearing or petition for rehearing en banc. See Fed. R. App. P. 41(b); D.C. Cir. Rule 41.

Per Curiam

received 4/19/99