# ATTACHMENTS

# INDEX TO ATTACHMENTS

ATTACHMENT 1 — "Petition For Review Of Actions And Failures To Act Of The Secretary Of The Department Of Energy, The Department Of Energy And The United States Of America (Corrected Copy)," Consolidated Edison Co. of New York, Inc. v. United States, No. 98-1358 (D.C. Cir. filed July 30, 1998)

ATTACHMENT 2 — "Petitioners' Response In Opposition To Motion To Dismiss Petition," Consolidated Edison Co. v. New York, Inc. v. Department of Energy, No. 98-1358 (D.C. Cir. filed Jan. 29, 1999)

# ATTACHMENT 1

# United States Court of Appeals
FOR THE DISTRICT OF COLUMBIA CIRCUIT

**No. 98-1358** **September Term, 1997**

Consolidated Edison Company of New York, Inc., et al.,
Petitioners

v.

Department of Energy, et al.,
Respondents

Department of Energy
1000 Independence Avenue, SW
Washington, DC 20585

This case was filed and docketed on July 30, 1998. The respondent is hereby notified that the attached is a true copy of the petition for review, filed in the United States Court of Appeals for the District of Columbia Circuit, at Washington, D.C. in the above-entitled case.

IN TESTIMONY WHEREOF, I hereunto subscribe my name and affix the seal of said United States Court of Appeals for the District of Columbia Circuit, at Washington, D.C., 8/5/98.

**FOR THE COURT:**
Mark J. Langer, Clerk

BY: MaryAnne McMain
MaryAnne McMain
Deputy Clerk

DEPARTMENT OF JUSTICE
ENVIR.
ENVIRONMENT DIV.
~~ENVIRONMENTAL DEFENSE~~
APPELLATE

JACKET-

90-5-2-3-06315

Form 26 (June 1992)

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

CONSOLIDATED EDISON COMPANY OF NEW YORK, INC.
4 Irving Place
New York, NY 10003

CONSUMERS ENERGY COMPANY
f/k/a CONSUMERS POWER COMPANY
212 West Michigan Avenue
Jackson, MI 49201-2276

ILLINOIS POWER COMPANY
500 South 27th Street
Decatur, Illinois 62521

PACIFIC GAS AND ELECTRIC COMPANY
77 Beale Street
San Francisco, CA 94177

AND

ROCHESTER GAS AND ELECTRIC CORPORATION
89 East Avenue
Rochester, NY 14649

Petitioners,

v.

UNITED STATES DEPARTMENT OF ENERGY
1000 Independence Avenue, S.W.
Washington, DC 20585

THE HONORABLE ELIZABETH ANNE MOLER
ACTING SECRETARY OF ENERGY
1000 Independence Avenue, S.W.
Washington, DC 20585

AND

UNITED STATES OF AMERICA,

Respondents.

No.: 98-1358

CORRECTED COPY

**PETITION FOR REVIEW OF ACTIONS AND FAILURES TO ACT OF THE SECRETARY OF THE DEPARTMENT OF ENERGY, THE DEPARTMENT OF ENERGY AND THE UNITED STATES OF AMERICA**

**PETITION FOR REVIEW OF ACTIONS AND FAILURES TO ACT OF THE SECRETARY OF THE DEPARTMENT OF ENERGY, THE DEPARTMENT OF ENERGY AND THE UNITED STATES OF AMERICA**

Under 42 U.S.C. § 10139 and Fed. R. App. P. 15(a) and 21, petitioners respectfully submit this Petition for Review of Actions and Failures to Act of the Department of Energy, the Secretary of the Department of Energy and the United States of America under the Nuclear Waste Policy Act of 1982 ("NWPA" or "the Act."), and allege as follows:

**PARTIES**

1. Petitioners are public utility companies. Each company holds spent nuclear fuel as defined by the NWPA, 42 U.S.C. § 10101(23).

2. Petitioner Consolidated Edison Company of New York, Inc. ("Consolidated Edison") is the owner and operator of the Indian Point Unit Nos. 1 and 2 nuclear generating stations, located in Buchanan, New York. Indian Point Unit No. 1 commenced operation in 1962 and ceased operation in 1974. Indian Point Unit No. 2 received its operating license from the Atomic Energy Commission ("AEC") and commenced operation in 1973. Consolidated Edison's spent nuclear fuel inventory is currently stored at the Indian Point site in spent fuel pools. The current aggregate inventory is 1,077 fuel assemblies, or approximately 430 metric tons of uranium.

Consolidated Edison executed its statutory contract with DOE in June 1883 and has paid over $113,213,450 into the Nuclear Waste Fund.

3. Consumers Energy Company, d/b/a Consumers Power Company ("Consumers") is the owner and operator of the Big Rock Point Nuclear Plant, located in Charlevoix, Michigan, for which an operating license was issued by the AEC in 1962. Consumers is also the owner and operator of the Palisades Nuclear Plant, located near South Haven, Michigan, for which an operating license was issued by the AEC in 1971. Consumers' current aggregate inventory of spent nuclear fuel is approximately 1,400 fuel assemblies, or approximately 500 metric tons of uranium. Consumers executed its statutory contract with DOE in June 1983 and has paid approximately $57,000,000 into the Nuclear Waste Fund.

4. Illinois Power Company is the owner and operator of the Clinton Nuclear Power Plant, located near Clinton, Illinois, for which an operating license was issued in 1987. Illinois Power's current aggregate inventory of spent nuclear fuel is approximately 1,124 fuel assemblies, or approximately 201 metric tons of uranium. Illinois Power has paid almost $47,000,000 into the Nuclear Waste Fund.

5. Pacific Gas & Electric Company ("PG&E") is the owner and operator of the Diablo Canyon Nuclear Power Plant, located in Avila Beach, California, which has two operating

units, for which operating licenses were obtained from the Nuclear Regulatory Commission ("NRC") in 1981 and 1985 respectively. PG&E is also the owner and operator of the Humboldt Bay Power Plant, Unit 3, located in Humboldt County, California, for which an operating license was issued by the AEC in 1963. Unit 3 was retired from commercial operation in 1983, and received a possession-only license from the NRC in 1988. PG&E's current aggregate inventory of spent nuclear fuel is approximately 550 metric tons of uranium. PG&E executed its statutory contract with DOE in April 1983 and has paid over $180,000,000 into the Nuclear Waste Fund.

6. Rochester Gas and Electric Corp. ("RG&E") is the owner and operator of the R.P. Ginna Nuclear Power Plant, located in Wayne County, New York, for which an operating license was issued by the AEC in 1969. RG&E is also the owner of a 14% interest in the Nine Mile Point Unit 2 facility operated by NMPC. RG&E's current aggregate inventory of spent nuclear fuel is approximately 340 metric tons of uranium. RG&E executed its statutory contract with DOE in April 1983 and has paid over $50,000,000 into the Nuclear Waste Fund at a rate of approximately $3.4 million per year. RG&E also is obligated to pay into the fund approximately $83,000,000 for spent nuclear fuel generated prior to 1983.

7. Respondents are the Secretary of Energy, the United States Department of Energy, and the United States.

**JURISDICTION AND VENUE**

8. This court has jurisdiction under 42 U.S.C. § 10139(a)(1), which provides for original and exclusive jurisdiction over any civil action under the NWPA in the United States courts of appeals. This court also has authority to grant relief in this action under the All Writs Act (28 U.S.C. § 1651(a)) and the Declaratory Judgment Act (28 U.S.C. § 2201). The government has waived sovereign immunity pursuant to 42 U.S.C. § 10139(a)(1) and the Administrative Procedure Act (5 U.S.C. §§ 702-706).

9. Venue is proper in this court pursuant to 42 U.S.C. § 10139(a)(2), which provides for venue of any proceeding under section 10139 in the United States Court of Appeals for the District of Columbia Circuit.

10. Petitioners have standing to bring this action and are proper parties before this court because they have suffered redressable injury in fact as a result of the respondents' conduct.

**NATURE OF THE ACTION**

11. Petitioners seek review of respondents' actions and failures to act within the meaning of the Nuclear Waste Policy Act. In particular, petitioners seek review of respondents' failure to act under 42 U.S.C. § 10222(a)(4),

requiring the Secretary to evaluate and modify fees collected under the Act, and 42 U.S.C. § 10222(a)(6), requiring the Secretary to establish written terms and conditions under which DOE will provide spent nuclear fuel disposal services. Petitioners also seek declaratory, injunctive, and other affirmative relief to remedy DOE's failure to act in accordance with these sections, including a declaration that respondents' failure to reduce the fee petitioners are required to pay deprives petitioners of property interests protected by the substantive due process and taking clauses of the fifth amendment. Finally, petitioners seek declaratory and injunctive relief to remedy DOE's misuse of the Nuclear Waste Fund.

## REQUIREMENTS OF THE NUCLEAR WASTE POLICY ACT

12. In 1982, Congress enacted the Nuclear Waste Policy Act. The purpose of the NWPA was, among other things, to establish a schedule for the siting, construction and operation of repositories for spent nuclear fuel and high level radioactive waste, and to establish federal responsibility for the disposal of such waste and spent fuel beginning in January 1998. The NWPA established a Nuclear Waste Fund to ensure that the costs of timely disposing of waste and spent fuel in accordance with the NWPA's requirements would be borne by the persons responsible for generating such waste and spent fuel. 42 U.S.C. § 10131.

13. The NWPA required that DOE dispose of spent nuclear fuel beginning no later than January 31, 1998, and thereafter continue disposing of that fuel at levels consistent with the requirements of the Act and the terms and conditions for disposal that DOE was directed to publish. 42 U.S.C. §§ 10131(b)(1) and 10222(a)(6).

14. Section 302(a)(2) of the NWPA, 42 U.S.C. § 10222(a)(2), established a fee, initially set in the amount of 1 mil per kilowatt-hour, for disposal of spent nuclear fuel used to generate electricity sold on or after the date 90 days after January 7, 1983. 42 U.S.C. § 10222(a)(2). Section 302(a)(3) of the Act, 42 U.S.C. § 10222(a)(3), required that the Secretary establish a one-time per-kilogram fee for spent nuclear fuel used to generate electricity prior to the date on which the fee for prospective spent nuclear fuel became effective. 42 U.S.C. § 10222(a)(3).

15. Both the one-time fee and the continuing fees are paid into the "Nuclear Waste Fund" created by the NWPA, which is the source of funds to cover DOE's costs for disposing of the utilities' spent nuclear fuel. 42 U.S.C. §§ 10131(b)(4) and 10222.

16. The Secretary of DOE is allowed to make expenditures from the Nuclear Waste Fund only for purposes of radioactive waste disposal activities. 42 U.S.C. § 10222(d).

17. For purposes of this Petition, the NWPA mandates that DOE take three critical actions to fulfill its

obligations under the Act. First, 42 U.S.C. § 10222(a)(4) requires the Secretary to review annually the fees levied against the utilities and evaluate whether collection of those revenues will provide revenue sufficient to recover costs of radioactive waste disposal activities taken pursuant to the Act. In the event that the Secretary determines that either insufficient or excess revenues are being collected, the Secretary is required to propose an adjustment in the fee to Congress. Under this section, the Secretary's proposal automatically becomes effective if Congress does not reject the proposal within ninety (90) days.

18. Second, 42 U.S.C. § 10222(a)(5) requires the Secretary, acting through contracts, to begin disposing of spent nuclear fuel not later than January 31, 1998. Upon acceptance of the high-level radioactive waste or spent fuel, title to such waste or spent nuclear fuel shall transfer to the Secretary. 42 U.S.C. § 10143.

19. Third, 42 U.S.C. §§ 10131(b)(1) and 10222(a)(6) require the Secretary to establish a schedule for the siting, construction and operation of repositories accepting spent nuclear fuel for disposal, including the publication of written criteria setting forth the terms and conditions under which DOE will make disposal services available to the utilities.

## IMPLEMENTATION OF THE STATUTORY FRAMEWORK

20. In 1983, DOE developed through rulemaking procedures a standard form of contract to administer the fee-collection and program-funding measures mandated by Congress (hereinafter "statutory contract")[1] and thereafter required execution of the contract by nuclear utilities. The statutory contract contained the fee provisions and the date by which DOE was to begin disposing of spent nuclear fuel required by the Act. See 10 C.F.R. Part 961.11.

21. Every one of the nation's utilities owning spent nuclear fuel, including each of the petitioners, executed an individual version of the statutory contract with DOE. See DOE Final Interpretation of Nuclear Waste Acceptance Issues ("Final Interpretation"), 60 Fed. Reg. 21793, 21794 (May 3, 1995).

22. Failure by a utility to execute the contract would subject the utility to denial of any subsequent request for issuance or renewal of a license to operate a nuclear power plant. 42 U.S.C. § 10222(b)(1)(A). Without an operating

---

[1] This court already has determined that the Standard Contract is to be treated as a regulation. Commonwealth Edison v. United States Dept. of Energy, 877 F.2d 1042, 1045 (D.C. Cir. 1989). Unlike many regulations, however, this regulation contains specific terms mandated by Congress as to which petitioners and DOE had no discretion.

license, no utility was or is permitted to operate a nuclear power plant in the United States.

**DOE FAILURE TO COMPLY WITH THE NWPA FUNDING REQUIREMENTS**

23. In 1987, Congress designated the Yucca Mountain site in Nevada as the only candidate site for a permanent repository designed to store high-level radioactive waste and spent nuclear fuel.

24. In 1993, various utilities and state agencies requested DOE to state how it intended to perform its obligation to dispose of spent nuclear fuel consistent with the statutory 1998 deadline. Respondents took the position that they had no legal obligation to dispose of the spent fuel absent an operational repository or other facility.

25. The utilities and states promptly filed petitions for review in this court. These petitions sought a declaration that the NWPA imposed an unconditional obligation on DOE to dispose of spent fuel beginning no later than January 31, 1998, a declaration that DOE's decision not to meet this obligation was contrary to the Act, and declaratory and injunctive relief. See, e.g., Petition of Indiana Michigan Power Company, dated May 30, 1995, at 5-6 (Case No. 95-1279).

26. The court agreed that the NWPA imposed an unconditional obligation on the Secretary to dispose of spent nuclear fuel beginning no later than January 31, 1998.

Indiana Michigan Power Co. v. Department of Energy, 88 F.3d. 1272, 2376-77 (D.C. Cir. 1996) The court further held that repudiation of this duty would destroy the "*quid pro quo*" for the utilities' payment of fees which Congress had created in the NWPA. DOE neither sought rehearing of that decision nor petitioned the Supreme Court for further review.

27. In response to a further utility petition, the court, in Northern States Power Co. v. Department of Energy, 128 F.3d 754 (D.C. Cir. 1997), again confirmed that the NWPA imposed an unconditional obligation to dispose of spent fuel beginning January 31, 1998, and issued a writ of mandamus precluding respondents from excusing their delay in disposing of this fuel on the ground that DOE had not yet constructed a permanent repository and had no authority to provide storage in the interim. 128 F.3d at 761.

28. On January 31, 1998, respondents failed to begin accepting spent nuclear fuel. Despite having conducted activities under the NWPA for more than 20 years, and consuming over $4.5 billion in expenditures from the Nuclear Waste Fund, respondents failed even to complete a determination of site adequacy, much less construct and make operational a repository at the Yucca Mountain location by January 31, 1998. Contrary to the requirements of the NWPA, respondents have neither established a schedule nor

determined a date certain by which a permanent repository will be operational.

29. Respondents also failed to propose a plan for storage of spent nuclear fuel pending completion of a permanent repository, and have established no date by which they will commit to begin disposing of that fuel. Letter from DOE General Counsel to Michigan Attorney General, dated January 13, 1997, at 1 (acknowledging uncertainty as to when DOE will begin disposing of spent fuel); 1996 Nuclear Waste Fund Fee Adequacy: an Assessment, at 6 (assuming waste disposal beginning in 2010).

30. Although DOE did not perform its obligations under the NWPA, its implementing regulations and the statutory contracts, petitioners have complied with their obligations. Since 1983, petitioners, and other nuclear utilities, have paid the fees mandated by the NWPA, its implementing regulations, and the statutory contract. Specifically, petitioners have been paying at a continuing rate of 1 mil per kilowatt-hour.

31. On average, the industry as a whole has paid approximately $550 million each year ($8.7 billion total) at the 1 mil fee. In addition, the cumulative interest generated by investment of unspent fee accumulations has in recent years contributed an average of another $219 million per year ($3.5 billion total) to the Nuclear Waste Fund.