# ATTACHMENT 2

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

CONSOLIDATED EDISON COMPANY OF NEW YORK, et al.,

Petitioners,

vs.

DEPARTMENT OF ENERGY, et al.

Respondents.

No.: 98-1358

1999 FEB -4 PM 12: 51
ENVIRONMENT & NATURAL RESOURCES DIVISION
APPELLATE SECTION

**PETITIONERS' RESPONSE IN OPPOSITION**
**TO MOTION TO DISMISS PETITION**

Pursuant to Federal Rule Appellate Procedure 27, Petitioners respectfully submit this response in opposition to Respondents' Motion to Dismiss the Petition filed by Petitioners in this case.

**PRELIMINARY STATEMENT**

Congress passed the Nuclear Waste Policy Act ("NWPA") in 1982, to establish national policy and a program directed at the consolidation of high level nuclear waste including spent nuclear fuel under federal control in centralized repositories. That statute directed the Department of Energy ("DOE"), in exchange for the payment of fees by generators of spent nuclear fuel, to begin disposing of spent nuclear fuel no later than January 31, 1998. DOE's performance of this obligation was the cornerstone of Congress' efforts to set federal policy and address this matter of urgent importance to national security and the health and safety of the nation. See H.R. Rep. No. 97-491, at 28-29.

Congress also imposed other obligations on Respondents. The NWPA obligates the Secretary of Energy annually to review the fees and propose adjustments if excess or insufficient revenues are being collected. 42 U.S.C. § 10222(a)(4) (1994). In addition, the NWPA requires

the Secretary to issue written "criteria setting forth the terms and conditions under which such disposal services shall be made available." 42 U.S.C. § 10222(a)(6).

The Secretary has not met these requirements. Fifteen years and almost fifteen billion dollars in generators' fees, interest and incurred debt obligations later, DOE has repudiated its unconditional statutory obligation to site, construct, and operate a repository and commence disposal of spent nuclear fuel as Congress directed. On January 31, 1998, the date DOE was to begin disposing of spent nuclear fuel, DOE could not even predict with certainty when, where, or if this repository would be built. Nevertheless, DOE continued and continues to extract from Petitioners and other generators over $600,000,000 per year in fees (on top of the existing $7.5 billion nuclear waste fund balance) to fund a "program" which does not comply with the requirements of the NWPA and is of increasingly uncertain nature.

Meanwhile, Petitioners are faced with the problem of planning for, paying for, and operating interim fuel storage facilities never intended under the Act, with no idea how long DOE's intransigence will require them to store this waste. Petitioners have no guidance in these matters because DOE has failed to comply with its obligations to establish criteria for the disposal of the spent nuclear fuel. Consumers, in turn, pay in their power rates for a disposal facility that does not exist even on paper.

On July 31, 1998, Petitioners filed a Petition challenging Respondents' failure to comply with the NWPA's fee collection and expenditure provisions and raising constitutional issues of critical importance to Petitioners regarding DOE's assessment and collection of fees. Petitioners also challenged the failure to establish written terms and conditions including schedule and rate of acceptance for disposal of spent nuclear fuel, and Respondents' misuse of funds deposited in the Nuclear Waste Fund.

Now, rather than face the merits of these claims, DOE moves to dismiss them on grounds that they are barred by claim and issue preclusion. Petitioners, however, do not raise a single issue raised in previous cases. No petitioner has challenged DOE's failure to conduct its annual analysis of the fee as required by Section 302(a)(4) of the NWPA, or the manner in which it conducts those assessments; no petitioner has challenged the legality of DOE's continued collection of fees; no petitioner has challenged DOE's failure to establish, in writing, binding terms and conditions governing the disposal of spent nuclear fuel; and no petitioner has challenged DOE's misuse of the Nuclear Waste Fund in violation of 42 U.S.C. § 10222 and 31 U.S.C. § 1321. Only by quoting selectively from the Petition can Respondents even create the illusion that Petitioners' claims simply repeat those previously at issue in Northern States Power.

DOE also moves to dismiss the Petition on grounds that Petitioners' claims are untimely. Petitioners' claims, however, are neither too early nor too late. Petitioners filed their Petition within 180 days of each of DOE's failures to act alleged in the Petition and, where appropriate, within 180 days of the point at which DOE's failure to act became unreasonable.

## I. THE PETITION RAISES NEW ISSUES NEVER BROUGHT BEFORE THIS COURT

Respondents allege that Petitioners' claims are barred by issue and claim preclusion. (Respondents' Motion to Dismiss ("Motion") at 6-8.) Specifically, DOE contends that Petitioners' claims are precluded for two reasons: (1) the Court already ruled in Northern States Power that NWPA Section 302(a)(5)(B) does not require performance of DOE's obligation to begin disposal of spent nuclear fuel as of January 31, 1998, and (2) in that case, the Court refused to allow Petitioners and other utilities to escrow the fee. (Motion at 7.) See Northern States Power Co. v. Department of Energy, 128 F.3d 754 (D.C. Cir. 1997), cert. denied, 119 S. Ct. 540 (1998). Respondents' Motion to Dismiss must be denied. The allegations in the Petition

with respect to the fee and the requirement to establish criteria are separate and apart from earlier efforts to force DOE to begin disposing of spent fuel on January 31, 1998.

## A. Petitioners' Claims Are Not Barred By Issue Preclusion

Issue preclusion requires proof of three elements: (a) the issue raised in the current litigation must have been actually contested by the parties and submitted to the court in the previous suit; (b) the issue must have been actually and necessarily determined by a court of competent jurisdiction; and (c) preclusion in the second case must not create an unfairness. Milton S. Kronheim & Co. v. District of Columbia, 91 F.3d 193, 197 (D.C. Cir. 1996) (quoting Otherson v. INS, 711 F.2d 267, 273 (D.C. Cir. 1983)). See also Yamaha Corp. of Amer. v. United States, 961 F.2d 245 (D.C. Cir. 1992); Connors v. Tanoma Mining Co., 953 F.2d 682 (D.C. Cir. 1992).

Petitioners' claims are not barred by this standard. First, contrary to Respondents' assertions, this Court, in Northern States Power, held that DOE had an unconditional obligation to dispose of spent nuclear fuel by January 31, 1998. 128 F.3d at 760. The Court denied Petitioners' request for a move fuel order and an order requiring DOE to escrow fees on grounds that Petitioners did not qualify for the narrow and extraordinary relief of mandamus. Based on the possibility that potentially adequate relief existed under the statutory contract, the Court ruled that the mandamus elements could not be satisfied unless Petitioners and the other utilities first explored potentially adequate contract remedies in the appropriate fora. Later, when asked to enforce the limited mandate issued, the Court held that the requested relief was beyond the scope of the mandate.

Here, Petitioners do not seek the extraordinary relief of mandamus, nor do they seek either a move fuel order or an order requiring escrow. Instead, Petitioners have filed an original action under Section 119 of the NWPA alleging statutory violations of Sections 302(a)(4), (a)(6)

and (d). Petitioners allege that DOE collected fees in violation of the NWPA, failed to recommend adjustments of the fee as required by Section 302(a)(4), failed to establish written criteria including terms and conditions governing disposal of spent nuclear fuel as required by Section 302(a)(6), and misused funds from the Nuclear Waste Fund in violation of 42 U.S.C. § 10222 and 31 U.S.C. § 1321. Petitioners also contend that DOE's persistent overcollection of fees contrary to the requirements of Section 302(a)(4) violates the Substantive Due Process and Takings Clauses of the Constitution. The statutory and constitutional provisions raised by the Petition were neither considered by the Court in Northern States, nor in any way "necessary" to the Court's decision.

DOE relies on only one of Petitioners' claims for its issue preclusion argument. Respondents claim that the Northern States petitioners' request for escrow of funds is the same as Petitioners' current request for a determination that continued collection of fees is unlawful. These claims, however, are plainly different. The Northern States petitioners requested that their fee payments, a monetary *quid pro quo* for DOE's removal of spent nuclear fuel, be held in escrow until DOE performed its obligations. 128 F.3d at 757. They made no claim that the amount or collection of the fee was unlawful, and raised no challenge to DOE's failure to appropriately assess the adequacy of the fee. By contrast, Petitioners here raise claims alleging persistent overcollection of fees, failure to appropriately analyze the fees necessary to fund the program mandated by Congress, statutory assignment of underfunding risk, and misuse of the fees collected. The allegations in the Petition are tied to the failure to begin disposing of spent fuel on January 31, 1998 only to the extent that this failure and its aftermath revealed broader concerns (e.g., fee concerns) about the national nuclear waste program mandated by Congress.

**B. Petitioners' Claims Are Not Barred By Claim Preclusion**

To bar relief under claim preclusion, the Court must find that: (a) there was a judgment on the merits in a prior litigation involving the claims being raised; (b) the parties were identical or in privity with each other; and (c) the issues being raised were the same cause of action or arose out of the same "nucleus of facts" as the claims in the prior suit. Page v. United States, 729 F.2d 818, 820 (D.C. Cir. 1984).

The Petition is not barred by claim preclusion for the same reasons it is not barred by issue preclusion. The prior litigation did not involve allegations of collections of fees in violation of § 302(a)(4), nor did it involve allegations that DOE had misused the Nuclear Waste Fund. The prior litigation did not challenge whether DOE had established in writing the criteria for disposal as required by § 302(a)(6). The only "facts" at issue were DOE's unconditional obligation to move fuel beginning January 31, 1998 and the scope of relief this Court would grant on a petition to enforce its prior mandate.

This Petition implicates a set of facts involving DOE's calculation, collection and use of fees. Likewise, the facts surrounding DOE's obligation to establish criteria for disposal, including specific disposal dates, schedules, rates of acceptance and other terms and conditions that DOE has refused to establish have nothing in common with the facts surrounding Petitioners' right to a mandamus order directing DOE to begin disposing of spent nuclear fuel.

Petitioners have not previously litigated their current claims, nor has any court ruled on these issues. Petitioners are not precluded from raising them here. Norfolk & Western Ry. v. United States, 768 F.2d 373, 377-78 (D.C. Cir. 1985).

## II. THIS COURT HAS SUBJECT MATTER JURISDICTION OVER THE ISSUES IN THE PETITION

### A. This Court Has Subject Matter Jurisdiction Over Petitioners' Fee Claims

Respondents contend that this Court has no subject matter jurisdiction over Petitioners because Congress did not require DOE to collect by January 31, 1998, all the fees necessary to begin repository operations by that date. Respondents' argument, however, is based on a selective reading of the fee allegations in the Petition. (Motion at 13-14.)

Petitioners set forth at least four different bases for the claim that Respondents have violated their obligations to annually review, and if necessary recommend an adjustment in, the fee. First, Petitioners contend that DOE's continued collection at the current rate is arbitrary and capricious in light of the tremendous uncertainty regarding when and how ultimate disposal, and interim measures, will take place. (Petition ¶¶ 57-59.) Second, the Petition alleges that the NWPA required DOE to collect only those revenues sufficient to cover costs of a statutorily compliant program. (Petition ¶¶ 51-52.) Third, the Petition challenges DOE's failure to adjust the fee in light of the announced plan to shift a disproportionate quantity of incurred costs to a date at least fifteen years in the future. (Id. ¶¶ 61-62.) Fourth, the Petition alleges that the Act required DOE to collect, by January 31, 1998, the funds necessary to initiate operation of the repository by that date and that future collection of anything more than amounts necessary to fund the nuclear waste disposal program, assuming the present existence of a fully functioning repository, violates the Act. (Id. ¶¶ 54-56.) The Petition thus raises both the statutory obligations regarding the fee and DOE's conduct in analyzing the appropriate fee. In addition, Count IV alleges misuse of the Nuclear Waste Fund.

Respondents cannot credibly contend that Congress authorized DOE to collect limitless fees from Petitioners, without regard to whether the activities these fees are funding comply with

the Act. The gravamen of the Petition is that Respondents are collecting fees (Counts I, II, III) and spending the fees collected (Count IV) in violation of the Act. This Court has jurisdiction over these allegations under 42 U.S.C. § 10139 (original and exclusive jurisdiction over any civil action "for review of any final decision or action" or "alleging the failure of the Secretary, the President, or the Commission to make any decision, or take any action" the NWPA requires).

Respondents' reliance on Nevada v. Watkins is similarly misplaced. Nevada v. Watkins simply reiterates the rule that judicial review is unavailable when a statute commits particular action to agency discretion or provides no meaningful standard against which to judge the agency's exercise of discretion. 914 F.2d 1545, 1563-64 (9th Cir. 1990). Such precedent is only applicable if, as Respondents believe, Congress has granted DOE unlimited discretion to charge Petitioners limitless fees and equal discretion as to when, if ever, it chooses to begin disposing of spent nuclear fuel. The NWPA does not; it includes an "unconditional obligation" to begin disposing of spent nuclear fuel by January 31, 1998.

Contrary to Respondents' view, this Court already has determined that the judicial review provisions of Section 10139 are in fact applicable to actions and failures to act under Section 302.[1] See Indiana Michigan, 88 F.3d at 1275 (review of agency action for consistency with the requirements of Section 302). Moreover, Section 302 provides specific standards against which this Court can assess DOE's failures to recommend a reduction in the fee. Section 302(a)(4) provides that the Secretary:

---

[1] Were this otherwise, and were Congress to have granted DOE unfettered discretion to collect fees regardless of costs and without a corresponding obligation to provide disposal services, collection of such fees would amount to an illegal exaction and an unconstitutional tax under Article I of the Constitution. See United States Shoe Corp. v. United States, 114 F.3d 1564, 1572-74 (Fed. Cir. 1997).

> shall annually review the amount of the fees . . . to evaluate whether collection of the fee will provide sufficient revenues to offset the costs as defined in subsection (d) . . . In the event the Secretary determines that either insufficient or excess revenues are being collected . . . the Secretary shall propose an adjustment to the fee.

42 U.S.C. § 10222(a)(4). Subsection (d) in turn provides that the Secretary may "make expenditures [incur costs] . . . only for purposes of radioactive waste disposal activities" including the siting, construction, licensing and operation of facilities, both interim and permanent, "under this chapter." 42 U.S.C. § 10222(d) (emphasis added). Commencement of operation of facilities for disposing of spent nuclear fuel is governed in turn by Section 302(a)(5)(B), which is "under this chapter." Id. The NWPA thus provides direction to the agency and provides a standard for review.

Finally, Respondents' assertions that Petitioners' interpretation of the statute is "incorrect" go to the merits of the Petition, and hence provide no basis for a jurisdictional motion to dismiss.[2] When jurisdictional facts are inextricably intertwined with the merits of a case, the court should not decide the merits issues prematurely but should defer the related jurisdictional determinations until the merits are heard. Herbert v. National Academy of Sciences, 974 F.2d 192, 198 (D.C. Cir. 1992) ("if [jurisdictional facts] are inextricably intertwined with the merits of the case, [court] should usually defer its jurisdictional decision until the merits are heard") (citing Land v. Dollar, 330 U.S. 731 (1947)); Garcia v. Copenhaver, Bell & Assocs., 104 F.3d 1256,

2 Respondents similarly seek to avoid a decision on the merits of Petitioners' allegations of Nuclear Waste Fund misuse by seeking to have these claims "dismissed" before they can truly be heard on grounds that Petitioners' interpretation of the applicable statutory provisions is incorrect. Contrary to Respondents' representations, these allegations are comprised of two parts. First, Petitioners allege that DOE is using the waste fund to pay for the costs of its own delay in violation of 42 U.S.C. § 10222(d). In addition, Petitioners allege that Respondents are using waste fund dollars for general treasury purposes in violation of 31 U.S.C. § 1321.

1261 (11th Cir. 1997). Likewise, a decision on even an otherwise proper motion to dismiss for lack of jurisdiction "may be improper before the plaintiff has had a chance to discover the facts necessary to establish jurisdiction." Herbert v National Academy of Sciences, 974 F.2d at 198 (citing Collins v. New York Central System, 327 F.2d 880 (D.C. Cir. 1963)).

Petitioners' right to relief in the instant case depends on their ability to prove that Respondents are collecting and expending fees in violation of the NWPA. Petitioners have alleged DOE's failure to act as the NWPA requires. DOE's conclusory assertion that the statute does not create such duties cannot provide a sufficient basis for dismissal. The obligations of Respondents under the statute and whether Respondents complied with those obligations should be resolved on the merits.

**B. This Court Has Subject Matter Jurisdiction Over Petitioners' Constitutional Claims**

Respondents allege that this Court has no jurisdiction over Petitioners' constitutional claims because Petitioners are incorrect that Congress required DOE to have collected by January 31, 1998, all the fees necessary to begin repository operations by that date. As discussed above, however, the statute supports Petitioners' allegations. Respondents' disagreement with the manner in which Petitioners interpret the NWPA is a subject to be considered on the merits; it is not the basis for a motion to dismiss.

Respondents may not dismiss Petitioners' constitutional claims on grounds that Petitioners had only a unilateral expectation regarding Respondents' obligations. A property interest in a government program exists when an individual has a "legitimate claim of entitlement" to government performance. Board of Regents v. Roth, 408 U.S. 564, 577 (1972).

Finally, Respondents argue that Petitioners' constitutional claims are in reality only contract claims that as a matter of law cannot implicate either the Fifth Amendment Due Process

or Takings Clauses. To the contrary, Petitioners' constitutional claims allege that Section 302(a)(4) created a protected property interest in paying into the Nuclear Waste Fund only what the statute authorizes. Respondents cannot credibly contend that they are free to collect limitless amounts for any purpose; either the statute limits what Respondents may collect or the statute itself is unconstitutional. However, even if Petitioners' constitutional claims did arise entirely from violation of contractual rights, Respondents' argument would be unavailing. Under well-established precedent, the Fifth Amendment protects "[r]ights against the United States arising out of a contract." Lynch v. United States, 292 U.S. 571, 579 (1934); Great Lakes Higher Educ. Corp. v. Cavazos, 911 F.2d 10 (7th Cir. 1990).[3] Thus, Petitioners' constitutional claims are proper claims before this Court.

## III. PETITIONERS' CHALLENGE OF DOE'S FAILURE TO RECOMMEND A FEE ADJUSTMENT IS TIMELY

Respondents allege that Petitioners' challenges to the Secretary's failure to recommend an adjustment in the fee are untimely. Specifically, Respondents allege that the Petitioners' fee challenges are too late because they were filed more than 180 days after DOE issued its October 1996 fee assessment and too early because they were filed before DOE issued its December 1998

---

[3] The cases Respondents cite for the proposition that contract rights do not give rise to constitutional claims are inapposite. (Resp't Opp'n at 15-16.) All of these cases involve breach of contract by the government acting solely in its capacity as contracting party and are thus unavailing. DOE's programmatic failure to perform the cornerstone of Congress' national nuclear waste disposal policy cannot be analogized to simple breach of contract cases. Moreover, the government's long term program for handling spent nuclear fuel disposal exhibits the "permanence" which courts have held creates a property interest in rights arising out of public contracts. See Rite Aid v. Houstoun, 998 F. Supp. 522, 530 (E.D. Pa. 1997); see also (Mot. For Leave at 14 (term of contract is from execution of contract to disposal of spent nuclear fuel; no termination authorized)).