K2

lester, H
Shaibani, S

RECEIVED
2004 OCT 13 P 2:19
CASE PROCESSING UNIT
CIVIL DIVISION

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| BOSTON EDISON COMPANY<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | ) | No. 99-447 C<br>(Judge Lettow) |

**BOSTON EDISON COMPANY'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS BY DEFENDANT UNITED STATES OF AMERICA**

PLEASE TAKE NOTICE that, pursuant to Court of Federal Claims Rule 34, Plaintiff Boston Edison Company ("Boston Edison") hereby request that Defendant United States of America ("Government") produce for inspection and copying the documents described below at the offices of Dickstein Shapiro Morin & Oshinsky, L.L.P., 2101 L. St. NW, Washington, D.C. 20037 or at such place as may be agreed upon by all counsel, within 30 days after service of this notice.

COPY

154 99-447
CB

## GENERAL DEFINITIONS

1. "Communication" means:

a. Any oral statement or utterance of any kind, whether in person, by telephone, by electronic mail, or by any other means of communication, and any gesture intended to convey information, including any nonverbal expressions of assent, denial, doubt, lack of knowledge, or the like; and

b. Any writing, document, or other graphic material of any kind and description, whether inscribed by hand or by mechanical, electronic, microfilm, photographic, or other means, including electronic mail, as well as phonic (such as tape recordings) or visual reproductions of oral communications.

2. "Document" means the original (or any copy when the original is not available) and, unless otherwise stated, any non-identical copy (whether different from the original because of notes made on such copy or otherwise), all drafts, modifications, and amendments thereto, all correspondence transmitting such documents or explaining or commenting upon the contents thereof, and all working or supporting papers of every kind and description, whether inscribed by hand or by mechanical, electronic, magnetic, microfilm, photographic, or other means, as well as phonic (such as tape recordings) or visual reproductions of oral statements, conversations, or events, and including, but not limited to, correspondence, telegrams, notes, minutes, address and telephone directories, agendas, computer or electronic mail (e-mail), internal messages and memoranda, diaries or desk pads, calendars, reports, estimates, invoices, compilations, studies, tables and tabulations, tallies, diagrams, plans, maps, photographs, computer-stored or computer-readable data, bulletins, computer printouts, audited and un-audited financial statements, accounting records, journals, answers to questionnaires, applications, check registers, checks, teletype, receipts,

messages, and any other memorandum, recordation, or communication of any type. The term "Document" includes each and every dissimilar version thereof, including all drafts and versions bearing marginal comments, and also includes the file and folder tabs associated with each original and copy.

3. "Relate(s) to," "relating to," and "referring to" mean to concern, mention, reference, pertain to, reflect, comment upon, discuss, rely upon, relate to, refer to, utilize as input data or source material, support, undermine, critique, or in any manner be connected with the given subject, action, communication, or matter.

4. "Government" means any agency or sub-agency of the Federal Government.

5. "You" and "your" means the United States of America, as well as any agency or sub-agency of the Government responsible for responding to the Document Requests.

**SPECIFIC DEFINITIONS**

6. "DOE" means the Department of Energy, its sub-agencies, affiliates, contractors, consultants, and employees.

7. "NRC" means the Nuclear Regulatory Commission, its sub-agencies, affiliates, contractors, consultants, and employees.

8. "1 mil/kwh fee" means the fee collected by the DOE in accordance with the Nuclear Waste Policy Act of 1982.

9. "Nuclear Waste Program" means the entirety of the DOE's efforts mandated by the Nuclear Waste Policy Act of 1982, including but not limited to activities conduced by the Office of Civilian Radioactive Waste Management.

10. "Nuclear Waste Fund" means the account established by the Nuclear Waste Policy Act of 1982, into which funds are paid by nuclear utilities to pay for the eventual disposal of spent nuclear fuel and high level waste by the DOE.

11. "Standard Contract" means the contract entered into between DOE, on behalf of the United States, and parties owning and/or operating commercial nuclear electric generating facilities which produce spent nuclear fuel.

12. "Fee adequacy report" means the annual report submitted by the Secretary of the DOE to Congress evaluating and addressing the adequacy of fees collected and to be collected from nuclear electric generating facility owners and/or operators for the Nuclear Waste Program.

13. "Temporary fuel storage" means any alternative to the removal and storage of spent nuclear fuel and high level nuclear waste by the federal government, including, but not limited to, dry cask storage facilities.

14. "SNF" means Spent Nuclear Fuel and High-Level Nuclear Waste.

## INSTRUCTIONS

1. In responding to the following requests, you are to produce all documents that are in your possession, custody, or control, or that are in the possession, custody, or control of any of your representatives, agents, predecessors-in-interest, successors, subsidiaries, parents, experts, attorneys, or persons consulted concerning any matters relating to the facts or issues involved in this case or any other case related to the Nuclear Waste Policy Act of 1982.

2. Each request for documents and the portions thereof is to be responded to separately, but responses to one request for documents, or portions thereof may be

incorporated by reference in responses to other requests for documents, or portions thereof.

3. If in responding to this Request for Production You discover any ambiguities when construing a request or definition, the response shall set forth the matter deemed ambiguous and the construction used in responding.

4. Whenever in this Request for Production, You are asked to produce a Document which is deemed by You to be properly withheld from production for inspection or copying:

a. If You are withholding the Document under claim of privilege (including, but not limited to, the work product doctrine), please provide the information set forth in Fed. R. Civ. P. 26(b)(5) and Discovery Guidelines 9(c)(ii)(b), including the type of Document, the general subject matter of the Document, the date of the Document, and such other information as is sufficient to identify the Document, including, where appropriate, the author addressee, custodian, and any other recipient of the Document, and where not apparent, the relationship of the author, addressee, custodian, and any other recipient to each other, in a manner that, without revealing the information claimed to be protected, will enable this party to assess, the applicability of the privilege or protection claimed by You;

b. If You are withholding the Document for any reason other than: (1) that it is beyond the scope of discovery, or (2) that a request is unduly burdensome, in addition to the information requested in paragraph 4(a), above, please state the reason for withholding the Document.

5. When a Document contains both privileged and non-privileged material, the non-privileged material must be disclosed to the fullest extent possible without thereby disclosing the privileged material. If a privilege is asserted with regard to part of the material contained in a Document, the party claiming the privilege must clearly indicate the portions as to which the privilege is claimed. When a Document has been redacted or altered in any fashion, identify as to each Document the reason for the redaction or alteration, the date of the redaction or alteration, and the person performing the redaction or alteration. Any redaction must be clearly visible on the redacted Document.

6. If production of any requested Document is objected to on the grounds that production is unduly burdensome, describe the burden or expense of the proposed discovery.

7. All Documents produced pursuant to these requests are to be produced in the form, order and manner in which they are maintained in Your files, or shall be organized and labeled to correspond with the categories in these requests. If the requested Documents are maintained in a file, the file folder is included in the Request for Production.

8. Any Document that bears any marks, including by way of illustration only and without limitation, initials, stamped indicia, comments or notations of any character, that are not a part of the original text or any reproduction thereof, is to be considered a separate Document.

9. Each Document production request is continuing in nature and is to be modified or supplemented to include any additional later discovered responsive information, knowledge, data or documents.

## DOCUMENT REQUESTS

1. Produce all documents relating to the initial establishment of the Nuclear Waste Fund fee at 1 mil/kwh as set forth in 42 U.S.C. § 10222(a)(3).

2. Produce all documents prepared on or before January 7, 1983 projecting or estimating fee collections into the Nuclear Waste Fund, as well as all documents utilized or consulted in preparing such projections or estimates.

3. Produce all SNF repository budget estimates and supporting documents prepared on or before January 7, 1983.

4. Produce all documents relating to why the 1 mil/kwh fee has not been adjusted since its inception, including any and all supporting documentation for the continuance of the 1mil/kwh fee payment level.

5. Produce all documents relating to the budget of the nuclear waste program.

6. Produce all documents relating to monies that have been deposited into the Nuclear Waste Fund.

7. Produce all documents relating to amounts that have been expended from the Nuclear Waste Fund and the nature of the expenditures.

8. Produce all documents regarding how much money remains in the Nuclear Waste Fund.

9. Produce all documents regarding the annual fee adequacy reports submitted to Congress by the DOE.

10. Produce all documents relating to Nuclear Waste Fund fee collection forecasts.

11. Produce all documents relating to life cycle cost projections or cost forecasting for the Yucca Mountain SNF repository project.

12. Produce all documents setting forth and relating to a projected or estimated first operational date for an SNF repository.

13. Produce all documents relating to changes of the first operational date for an SNF repository.

14. Produce all SNF repository construction, licensing, and commissioning scheduling documents.

15. Produce all documents relating to reports or testimony submitted to Congress or any other instrumentality of the United States government which state that the progress of work on an SNF repository either had been or could be "appropriations constrained," or words to that effect.

16. Produce all documents (beginning in 1983 through the present) which project or estimate that an operational date for an SNF repository could be later than January 31, 1998.

17. Produce all documents relating to projected or estimated costs to be incurred after an SNF repository were to initially become operational.

18. Produce all documents relating to reviews or audits of the DOE nuclear waste program conducted by the Government Accountability Office ("GAO").

19. Produce all documents relating to the implementation of nuclear waste program recommendations made by the GAO.

20. Produce all documents relating to communications between DOE and NRC as to the possible or actual treatment of SNF storage and disposal costs.

21. Produce all documents relating to the transfer of nuclear power plant operating licenses pursuant to 10 C.F.R. § 50.80 that discuss pre-transfer or post-transfer

accumulated nuclear power plant decommissioning funds for purposes of post-retirement SNF storage and disposal.

22. Produce all documents relating to former Secretary of Energy Frederico Pena's May 18, 1998 letter to Boston Edison as well as all documents relating to similar letters sent to other Standard Contract holders ("Pena Letters") regarding the proposed modifications to the Standard Contract and the continued collection of the 1 mil/kwh fee.

23. With respect to the Pena Letters, produce all documents relating to the referenced proposed modifications of the Standard Contract including any modifications to the payment of fees into the Nuclear Waste Fund.

24. With respect to that portion of the Attachment to the Pena Letters entitled "Settlement Proposal Details," produce all documents relating to the representation that the proposed settlement could provide between $2.8 to $5.0 billion in financial relief to Standard Contract holders.

25. With respect to that portion of the Attachment to the Pena Letters entitled "Estimate of Current Payment Factor -- To Be Used in Assessing Value of Settlement Offer," produce all documents relating to the estimated amounts or payment factors, including but not limited to all documents relating to the methods utilized and assumptions made for purposes of estimating such amounts as well as payment factors.

26. Produce all documents relating to SNF pool capacity or "all full" dates for nuclear plants covered by a Standard Contract.

27. Produce all documents developed or provided by another federal agency that were relied upon by DOE for purposes of developing repository program budgets or construction schedules.

28. Produce all documents relating to the costs or potential costs to the nuclear power industry of alternative means of temporary spent fuel storage associated with the DOE's failure to begin accepting SNF as of January 31, 1998.

29. Produce all documents prepared by DOE relating to the duration or level of potential or actual future DOE funding requirements associated with the Nuclear Waste Program.

30. Produce all documents prepared by DOE relating to the duration or level of potential or actual future Standard Contract holder funding.

31. Produce all documents prepared by DOE relating to the DOE requirements associated with future nuclear power industry funding.

32. Produce all DOE and NRC documents relating to those provisions of the Pilgrim Purchase and Sale Agreement which provided for retention by Boston Edison of Standard Contract claims.

33. Produce all DOE documents relating to the July 13, 1999 letter sent by Boston Edison to DOE.

34. Produce all NRC documents prepared on or before July 13, 1999 relating to anticipated or estimated SNF storage costs or SNF storage capacity at Pilgrim.

35. Produce all documents relating to Requests for Additional Information ("RAIs") made by the NRC in connection with the December 21, 1998 application for transfer of the Pilgrim operating license, together with all RAI responses submitted by any party to the NRC and all documents relating to such RAI responses.

Date: October 7, 2004

Respectfully submitted,

Richard J. Conway
DICKSTEIN SHAPIRO MORIN
& OSHINSKY LLP
2101 L Street, NW
Washington, DC 20037
(202) 785-9700
*Counsel of Record for*
*Boston Edison Company*

Of Counsel: David M. Nadler
Nicholas W. Mattia, Jr.
Bradley D. Wine
Jeffery P. Becherer
DICKSTEIN SHAPIRO MORIN
& OSHINSKY LLP
2101 L Street, NW
Washington, DC 20037
(202) 785-9700

Neven Rabadjija, Esq.
Associate General Counsel
NSTAR Electric & Gas Corporation
800 Boylston Street
17th Floor
Boston, MA 02199-0228

CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing Boston Edison Company's First Request for Production of Documents by Defendant United States of America has been served by first class mail, postage prepaid, this 7th day of October, 2004, upon:

Stefan Shaibani, Esquire
Commercial Litigation Branch
Civil Division
Department of Justice
Classification Unit – 8th Floor
1100 L Street, NW
Washington, DC 20530

Jane K. Taylor, Esquire
Office of the General Counsel
U.S. Department of Energy
1000 Independence Avenue, SW
Washington, DC 20585

Jeffery P. Becherer