IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| BOSTON EDISON COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 99-447C |
| | ) | (Judge Lettow) |
| UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S RESPONSE TO PAGES 12 AND 13 OF
"PLAINTIFF BOSTON EDISON COMPANY'S POST-HEARING REPORT"

Defendant, the United States, respectfully submits this response to pages 12 and 13 of "Plaintiff Boston Edison Company's Post-Hearing Report," dated September 10, 2004.

At those pages of its post-hearing report, plaintiff, Boston Edison Company ("Boston"), has represented that, in prior proceedings before the United States Court of Appeals for the District of Columbia Circuit, the United States contended that the D.C. Circuit "lacked jurisdiction to adjudicate NWF [Nuclear Waste Fund] claims," that the United States argued that "the D.C. Circuit's decision in *Northern States*, 128 F.3d 754, had held such claims should be litigated in the Court of Federal Claims," and that the D.C. Circuit agreed with the United States. Pl. Response, at 13 (citing Consolidated Edison Co. of New York v. Department of Energy, No. 98-1358, 1999 WL 325517 (D.C. Cir. Apr. 16, 1999) (unpublished disposition), and "Respondents' Motion To Dismiss Petition" in Consolidated Edison, No. 98-1358 (D.C. Cir.) [hereinafter "Respondents' D.C. Circuit Mtn."], at 8, dated January 19, 1999). Boston asserts that "[i]t is inconsistent and incorrect for the Government to now argue, once NWF claims have in fact been brought in the Court of Federal Claims, that these claims may only be brought before the D.C. Circuit, when it previously argued that such claims could not be raised there either." Id.

As an initial matter, Boston was not a party to the Consolidated Edison petition before the D.C. Circuit and, therefore, has no basis for arguing any kind of res judicata against the Government here.

Nevertheless, with regard to the merits of Boston's position, Boston has completely misstated the Government's arguments in Consolidated Edison.[1] As is clear from the briefing that Boston attached to its September 10, 2004 pleading, the Government did not argue that complaints about the calculation of the Nuclear Waste Fund fee should be presented to this Court. To the contrary, the Government's primary argument in Consolidated Edison was that the petitioners there, "having failed three times [in prior petitions] to obtain leave from [the D.C. Circuit] to escrow their fee payments because of DOE's failure to meet the January 31, 1998, deadline," were barred through claim and issue preclusion from raising new alternative theories based upon the same operative facts to achieve the same relief. Respondents' D.C. Circuit Mtn., at 5, 6-8. Specifically, the Government argued that, even though the petitioners now claimed "the right to have the fee payment reduced or eliminated because of DOE's alleged violation" of the requirement to begin spent nuclear fuel ("SNF") and/or high-level radioactive waste acceptance by January 31, 1998 at a repository, the D.C. Circuit had "already ruled that Section 302(a)(5)(B) [of the NWPA] itself [did] not require DOE to perform the obligation to begin disposal by January 31, 1998," in its decision in Northern States Power Co. v. United States

[1] To ensure that the Court obtains an accurate view of the arguments raised in the Consolidated Edison case, we have attached to this pleading copies of the "Petition For Review" and "Petitioners' Response In Opposition To Motion To Dismiss Petition" filed in the Consolidated Edison case. Copies of "Respondents' Motion To Dismiss Petition" and "Respondents' Reply To Petitioners' Response In Opposition To Motion To Dismiss Petition" from Consolidated Edison were attached as Exhibit 5 to Boston's September 10, 2004 pleading.

Department of Energy, 128 F.3d 754 (D.C. Cir. 1998). Respondents' D.C. Circuit Mtn., at 6-7. The Government further argued that "[p]etitioners could have contended in *Northern States* that other provisions of the NWPA, such as Section 302(a)(4), or the due process or taking clause of the Fifth Amendment, support the claim that petitioners could enforce Section 302(a)(5)(B) through suspension or withholding of their fee payments," but that "[t]heir failure to do so bars litigation of Counts I through III of this petition" under principles of claim and issue preclusion. Repondent's D.C. Circuit Mtn., at 8 (citing Yamaha Corp. of Am. v. United States, 961 F.2d 245, 254 (D.C. Cir. 1992), cert. denied, 506 U.S. 1079 (1993)) (emphasis added). Similarly, in its reply to the petitioners' opposition to the Government's motion to dismiss the petition, the Government explained that "[f]urther claims based on the same nucleus of facts are barred because 'it is the facts surrounding the transaction or occurrence which operate to constitute the cause of action, not the legal theory upon which a litigant relies.'" "Respondents' Reply To Petitioners' Response In Opposition To Motion To Dismiss Petition" in Consolidated Edison, No. 98-1358 (D.C. Cir.) [hereinafter "Respondents' D.C. Circuit Reply"], at 5, dated February 4, 1999 (attached at Exhibit 5 to Boston's September 10, 2004 brief). The Government did not argue that claims regarding the propriety of the fee assessment, or fee amount, would properly be before this Court.

The Government alternatively argued that, to the extent that the fee challenge was not barred by the D.C. Circuit's prior judgment, "the challenge does not meet the 180-day statute of limitations in Section 119(c)" of the Nuclear Waste Policy Act, 42 U.S.C. § 10139, relating to judicial review of decisions of the Secretary of Energy. Respondents' D.C. Circuit Mtn., at 5, 8-13. Under section 119(c) of the NWPA, a challenge to any final decision or action of the

Secretary of Energy under the NWPA, to any failure of the Secretary to make any decision or take any action required by the NWPA, or to the constitutionality of any decision made or action taken under the NWPA must be filed in one of the United States Courts of Appeals (for the regional circuits or the D.C. Circuit) "not later than the 180th day after the date of the decision or action or failure to act involved, as the case may be," unless the petitioner shows that he did not know of the decision, action, or failure to act and that a "reasonable person" would not have known of it. 42 U.S.C. § 10139(a)(1) & (c). The last DOE fee adequacy assessment had been taken in October 1996, more than 180 days from the filing of the Consolidated Edison petition. Respondents' D.C. Circuit Mtn., at 13. Further, the next fee assessment was not scheduled to be completed until the end of 1998. Id. Accordingly, as the Government informed the D.C. Circuit, "petitioners' attempt to seek review of DOE's implementation of Section 302(a)(4) was filed both too late and too soon." Id.; see Respondents' D.C. Circuit Reply, at 7-10 (discussing 180-day limitations period).[2] Again, the Government's argument assumed that, absent the prior challenges to the fee assessment by the petitioners, the D.C. Circuit would have jurisdiction to

---

[2] With regard to the petitioners' takings and due process claims, the Government further asserted that "[b]oth of these counts are premised on an asserted property interest in the alleged statutory right to have DOE set the fee at a lower level," that "[a] unilateral expectation that an agency will comply with an alleged requirement of a statute . . . does not create a property right in the potential beneficiary of that compliance," Respondents' D.C. Circuit Mtn., at 15 (citing Webb's Fabulous Pharmacies, Inc. v. Beckwith, 449 U.S. 155, 161 (1980)), that the petitioners' takings and due process claims were nothing more than contractual claims that do "not give rise to a due process or taking claim," id., and that the "lack of a cognizable property interest means that neither [the takings nor due process claims] present a colorable constitutional challenge to DOE's actions with the jurisdiction granted by Section 119(a)(1)(C)." Id. at 16. Nowhere in its argument did the Government suggest that, despite the absence of a colorable takings claim, this Court should review the merits of the takings claim.

entertain a fee challenge in the appropriate circumstances. Boston's unsupported description of the Government's arguments to the contrary does not support its cause.

Boston also asserts (at pages 2 and 13 of its September 10, 2004 supplemental brief) that the D.C. Circuit in Consolidated Edison "held that such claims" relating to Nuclear Waste Fund fee collection and expenditure practices "should be pursued in" this Court and that it "relegated litigants contesting DOE's fee assessment practices to" this Court. Yet, the actual court decision, which is attached to Boston's supplemental brief, says no such thing. It merely ordered "that the motion to dismiss be granted," finding that the petitioners' arguments "are precluded by the court's holding in Northern States Power Co. v. Dep't of Energy, 128 F.3d 754 (D.C. Cir. 1997), and the unpublished order issued May 5, 1998, denying rehearing in that case." Presumably, the D.C. Circuit accepted the Government's arguments regarding claim and issue preclusion. Contrary to Boston's suggestion, the D.C. Circuit in Consolidated Edison did not refer the petitioners in that case to this Court to litigate fee assessment issues.

In fact, Boston has failed to mention a D.C. Circuit opinion which appears to conflict with its position that this Court, rather than the United States Court of Appeal for the D.C. Circuit or the various regional circuit courts, possesses jurisdiction to entertain claims regarding the Nuclear Waste Fund fee. In National Association of Regulatory Utility Commissioners v. United States Department of Energy, 851 F.2d 1424 (D.C. Cir. 1988), the D.C. Circuit was considering a challenge to DOE's proposed methodology for allocating the cost of nuclear waste repositories between waste resulting from defense activities and that generated by civilian commercial reactors, ultimately finding that the issue was not ripe for review. However, in its decision, the D.C. Circuit recognized that, pursuant to 42 U.S.C. § 10222(a)(4), the Secretary

must annually evaluate "whether collection of the fee [specified in the statute] will provide sufficient revenues to offset the costs" of the waste disposal program. Id. at 1426. The D.C. Circuit noted that, even though the Secretary had annually issued a "Fee Adequacy Report" each year since 1983, "no generator of HLW/SNF has ever sought judicial review of that conclusion in any of the Secretary's annual Fee Adequacy Reports." Id. In finding that the petitioners' challenge to DOE's cost allocation methodology was not ripe for review, the D.C. Circuit recognized that "some or all of the claims raised today may well prove to be no more than theoretical when petitioners revisit them in the context of a concrete application" in the Fee Adequacy Report; that, "moreover, the opportunity to do so in the 1988 [Fee Adequacy] Report, should they be aggrieved by it, is imminent;" and that the "interests of the court therefore favor postponing review until it is clear that judicial intervention is required, and will be consequential." Id. at 1429; see id. at 1430 (postponing review of procedural challenge because "the effect of the cost allocation methodology on the utilities is currently open to doubt and may well be clarified when the next Fee Adequacy Report issues").

As far as we are aware, neither Boston nor any other past or present Standard Contract holder has ever properly filed a challenge to the Department of Energy's fee adequacy assessments in the D.C. Circuit or any of the regional circuits. Because of the statute of limitations applicable to such petitions, it would be too late for any petitioner to attempt to challenge fee assessments from years ago. Boston's efforts here to recoup fees paid long in the past under a takings theory, even though it has never filed a proper petition in a United States Court of Appeals challenging those fees, are untimely and in the wrong forum.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

s/Stefan Shaibani
STEFAN SHAIBANI
Trial Attorney
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
1100 L Street, N.W.
ATTN: Classification Unit, 8th Floor
Washington, D.C. 20530
Tel: 202-305-7597
Fax: 202-307-2503

October 26, 2004

Attorneys for Defendant