32. In comparison, DOE's total incurred costs have averaged less than $350 million per year.

33. The present balance of the Nuclear Waste Fund is approximately $7.5 billion dollars.

34. The NWPA clearly contemplated that the Secretary annually would reassess the fee collected in connection with the spending plan required to site, construct and begin operating a repository by January, 31, 1998, and immediately would propose adjustments to the fee as necessary to fund timely accomplishment of DOE's NWPA obligations.

35. As noted in the House Report on the version of the bill passed into law, "[Section 302(a)(5)(B)] makes the Secretary responsible for disposing of high level waste or spent fuel as provided under this subtitle in permanent disposal facilities, beginning not later than January 1998, in return for the payment of fees established by this section." H.R. Rep. No. 97-491, at 59 (1982).

36. DOE was thus under an ongoing obligation to implement an on-time repository construction program, and to collect by January 31, 1998, all program funding necessary to have an operational repository by that date. In addressing the fee payment obligations the utilities were to assume under the NWPA, the Congressional Budget Office noted on April 26, 1982, when the bill was before Congress, that, in order to match program funding with the mandated January 31,

1998, repository operational date, "It is expected that the majority of the costs of this bill will be incurred by the year 2000 when repository construction is expected to be completed and the facility operational." 1982 U.S.C.C.A.N. at 3833, 97th Cong., 2nd Sess. Report of the Congressional Budget Office.

37. The annual Fee Adequacy Reports published by DOE never have proposed an adjustment in the fee. Each year Respondents have stated only that continuation of the 1 mil fee would produce revenues "adequate" to fund the program.

38. Notwithstanding the passage of the January 31, 1998 deadline, and thus the expiration of the time period over which the NWPA required that DOE collect fees sufficient to pay all siting and construction costs of the repository, DOE continues to collect the 1 mil fee (amounting to over $600 million per year) in accordance with the recommendation of the DOE's most recent Fee Adequacy Report. See 1996 Nuclear Waste Fund Fee Adequacy: An Assessment.

39. DOE proposes to continue collection of fees at this rate even though the Act required DOE to adjust the fees annually from 1982 until 1998 to assure that, within that period, sufficient funds would be collected for DOE to site, construct and initiate operation of a repository by January 31, 1998.

40. DOE proposes to continue to collect this amount despite the $7.5 billion existing balance in the Nuclear Waste Fund and an expenditure plan which shows it will spend only about one-half of future yearly receipts over the next twelve years. On May 18, 1998, Secretary Pena wrote to all petitioners identifying DOE's expenditure plan for the nuclear waste disposal program through the year 2010 - the date by which DOE currently estimates repository completion - and beyond. This plan indicates that DOE's expenditures through 2010 will average less than $340 million per year.

41. Moreover, Secretary Pena's May 18 letter demonstrates that the amount of money currently in the fund is, by itself, more than adequate to cover all of DOE's program costs through 2010.

42. DOE thus proposes current fee assessment practices that deviate from the mandatory requirements of the NWPA in at least two important respects: (a) fees would continue to be collected without recognition that DOE was required to collect, between 1982 and 1998, all fees necessary for the siting, construction and initial operation of a repository; and (b) continuation of the existing fee structure would perpetuate systematic and persistent overcollection under which annual fee collections would exceed annual NWPA-compliant waste program expenditures.

**DOE FAILURE TO COMPLY WITH NWPA PERFORMANCE REQUIREMENTS**

43. In addition to their obligation to accept spent nuclear fuel beginning January 31, 1998, under 42 U.S.C. § 10222(a)(5), and their obligation to adjust fees under 42 U.S.C. § 10222(a)(4), respondents are obligated to develop a schedule for the construction and operation of the repository and publish terms and conditions for acceptance of spent nuclear fuel that are in all respects compliant with the requirements of the NWPA. 42 U.S.C. § 10131(b)(1) and 10222(a)(6). Neither DOE nor the Secretary have published such schedule or criteria.

44. In 1995, DOE published the latest of its Annual Priority Ranking and Annual Capacity reports providing what is purported to be only an estimate of the rate of acceptance of spent nuclear fuel DOE intends to achieve for the ten years following first acceptance of that fuel. DOE intentionally failed to distinguish between fuel accepted for temporary storage and permanent emplacement in a repository as required by the NWPA, and also stated that the rates of acceptance identified in the report are not contractual terms and conditions and do not bind DOE.

**DOE'S REPUDIATION OF NWPA OBLIGATIONS**

45. Respondents' failures to meet their statutory obligations to modify the fee and publish terms and conditions for acceptance of spent nuclear fuel are critical

in light of DOE's failure: (a) to begin disposing of spent fuel on January 31, 1998, as required by the NWPA; and (b) to reduce or eliminate fees collected from petitioners while simultaneously refusing to establish a schedule for repository operation, a start date for acceptance of spent nuclear fuel, or a schedule or rate of spent fuel acceptance following commencement of repository operations.

46. Petitioners Consolidated Edison, RG&E, Consumers and Illinois Power separately wrote to the Secretary demanding that the Secretary comply with DOE's statutory obligations under 42 U.S.C. § 10222(a)(4) (fee adjustments) and 42 U.S.C. § 10222(a)(6) (establishment of terms and conditions). These letters highlighted the Secretary's "disregard for DOE's statutory obligations that exist independent of the contracts with the various utilities," and requested assurances of future compliance by July, 1998. See, e.g., Letter from Consolidated Edison to Secretary Pena, dated June 15, 1998, at 1 (Attachment 1).

47. On July 15, 1998, DOE responded to Consolidated Edison and Consumers,[2] asserting that it was not obligated by 42 U.S.C. § 10222(a)(6) to establish schedule for

---

[2] DOE did not respond to the letters from RG&E or Illinois Power.

acceptance of spent nuclear fuel due to delay in opening a disposal facility, and denying that under 42 U.S.C. § 10222(a)(4) it was obligated to collect by January 31, 1998, all funds necessary for the siting, construction and initial operation of a repository. Further, DOE denied that it was required prospectively to match further fee collections with its waste program expenditure plans pursuant to Section 10222(a)(4). See, e.g., Letter from DOE to Consolidated Edison, dated July 15, 1998 (Attachment 2).

48. To date, the Secretary has not fulfilled the obligation under 42 U.S.C. § 10222(a)(4) to propose to Congress the adjustment in fees necessary to bring fee collections into alignment with NWPA requirements or the program expenditures announced in the May 18, 1998 letter.

49. To date, the Secretary has not fulfilled the obligation under 42 U.S.C. §§ 10131(b)(1) and 10222(a)(6) to publish terms and conditions for the acceptance of spent nuclear fuel, because the Secretary has failed to promulgate the schedule for operation of a repository for the permanent emplacement of spent nuclear fuel, the schedule or rate of acceptance of this fuel, and other criteria, terms and conditions relating to the manner in which DOE will make disposal services available to the utilities.

COUNT I (Violation Of Statutory Obligations To Reduce Or Eliminate Fees Collected Under The NWPA)

50. Petitioners reallege and incorporate by reference paragraphs 1 through 49 of this Petition.

51. The Act permits DOE to collect, from petitioners, only those fees necessary to fund a nuclear waste disposal program which complies with the requirements of the Act.

52. Section 302(a)(4) of the NWPA, 42 U.S.C. § 10222(a)(4), explicitly requires that the Secretary review annually the fees levied against the utilities and determine whether collection of those revenues will provide revenue sufficient to recover costs of such a statutorily-compliant program.

53. In the event that the Secretary determines that the amount of fees collected either is in excess of or less than the amount necessary to cover legitimate costs incurred by DOE, the Secretary is required to propose to Congress an adjustment in the fee.

54. The Act required that DOE make adjustments necessary to ensure that DOE collected, by January 31, 1998, fees sufficient to fund the siting, construction, licensing, and initial operation of a repository for disposal of spent nuclear fuel by that date.

55. On information and belief, DOE did, by that date, collect all funds necessary to site, construct, license and initiate operation of the repository in a timely fashion.

56. DOE's failure now to reduce fees to an amount no greater than that which is reasonably necessary to fund the nuclear waste disposal program assuming the present existence of a fully functional repository is a violation of 42 U.S.C. § 10222(a)(4) and constitutes agency action unlawfully withheld.

57. On information and belief, respondents do not know with certainty, and did not know prior to January 31, 1998, either when DOE will construct a repository or the form this facility will take.

58. Respondents can make no rational evaluation of what are excess or inadequate fees as required by 42 U.S.C. § 10222(a)(4) without knowledge of the schedule under which the repository will be completed and the form and location of this repository.

59. Respondents' continued collection of fees under these circumstances is arbitrary and capricious and constitutes a violation of 42 U.S.C. § 10222(a)(4).

60. Respondents have collected more than $12 billion in fees and interest. Over the next ten years, DOE will collect twice the amount each year than it plans to spend. See Letter from Secretary Pena to Consolidated Edison, dated May 18, 1998 (identifying DOE projected Nuclear Waste Fund appropriations).

61. Respondents' continued collection of fees at a constant rate of 1 mil per kilowatt-hour, notwithstanding the

fact that respondents' program expenditure plan shifts a disproportionate quantity of incurred costs to a point fifteen years later than was contemplated in the initial establishment and assessment of the 1 mil fee, also is arbitrary and capricious and contrary to the Act and the statutory contract.

62. Given the existing fund balance, the uncertainty surrounding the form and cost of the required repository, and DOE's intent to incur costs at a slower rate than initially projected, DOE may not lawfully continue to collect the 1 mil fee consistent with the NWPA.

63. Respondents' most recent fee adequacy report fails to reconcile the uncertainty surrounding construction of a repository, the excess amounts currently in the Nuclear Waste Fund, the waste program expenditure plan set forth by the Secretary and the proposed continuation of the 1 mil per kilowatt-hour fee.

64. In light of the excess amounts currently in the Nuclear Waste Fund, the waste program expenditure plan announced by Secretary Pena on May 18, 1998, and DOE's inability to state with certainty when, and in what form, it will construct a repository, the Secretary's failure to propose a reduction in fee assessments to Congress is a violation of 42 U.S.C. § 10222(a)(4) of the NWPA and constitutes agency action unlawfully withheld. DOE already has substantial amounts in excess of what it will spend

through 2010 and should be precluded from any collection that further increases this excess.

65. As a direct and proximate result of the Secretary's failure to comply with the statutory obligation to adjust the fee, petitioners have been or will be required to pay fees in excess of what DOE lawfully may require payments into the Nuclear Waste Fund.

66. Accordingly, petitioners request that this court declare DOE in violation of 42 U.S.C. § 10222(a)(4).

67. Further, petitioners request that this court declare that under 42 U.S.C. §§ 10222(a)(4) and (5), the Secretary was obligated to seek any fee adjustments necessary to ensure collection, by January 31, 1998, of all funds required to site, construct, license and initiate operation of the repository by January 31, 1998.

68. Petitioners further request that this court declare that, under 42 U.S.C. §§ 10222(4) and (5), the Secretary currently is obligated to seek a fee reduction to an amount no more than necessary to fund a nuclear waste disposal program assuming existence of a fully operational repository from January 31, 1998, going forward.

69. Petitioners further request that the court declare DOE's most recent Fee Adequacy Report dated October 1996 contrary to 42 U.S.C. § 10222(a)(4) for failure to reconcile future proposed fees with the existing fund balance, the

expenditure plan through 2010, and respondents' uncertainty regarding when and in what form the repository will be built.

70. Finally, petitioners request that this court enter an order requiring the Secretary to propose to Congress, under 42 U.S.C. § 10222(a)(4) of the NWPA, a reduction in fees to a level not in excess of that which would be appropriate had DOE sited, constructed and initiated operation of fully functional repository for the permanent disposal of spent nuclear fuel by January 31, 1998, as required by the NWPA.

**COUNT II (Deprivation Of Substantive Due Process)**

71. Petitioners reallege and incorporate by reference paragraphs 1 through 70 of this Petition.

72. Petitioners' right, after January 31, 1998, to make payments into the Nuclear Waste Fund at a level no greater than would be necessary to fund the nuclear waste disposal program had DOE constructed an operational spent nuclear fuel repository by January 31, 1998, is a property interest protected by the substantive due process clause of the fifth amendment to the United States Constitution. See U.S. Const. Amend. V.

73. Petitioners' right to make payments into the NWF at a level no greater than would be required if the existing fund balance and DOE's May 18, 1998 expenditure plan were fully recognized is a property interest protected by the

substantive due process clause of the fifth amendment to the United States Constitution. See U.S. Const. Amend. V.

74. Respondents' refusal to adjust fees and its insistence that petitioners continue fee payments at existing levels results in a systematic and unreasonable overcollection of fees on the part of DOE and deprives petitioners of their protected property interests.

75. The actions of respondents are Executive actions not rationally related to the accomplishment of a legitimate government objective and, in fact, are contrary to the NWPA and its implementing regulations, and the statutory contracts.

76. Accordingly, respondents' conduct constitutes a denial of petitioners' substantive due process rights.

77. Petitioners respectfully request that this court enjoin DOE from further violation of petitioners' constitutional rights. Specifically, petitioners request a declaratory judgment that:

(a) DOE's continued collection of fees at levels in excess of those which would be required had DOE constructed an operational repository by January 31, 1998, constitutes a violation of petitioners' substantive due process rights; and

(b) DOE's continued collection of fees greater than those necessary to fund the program taking into account the existing fund balance and DOE's May 18,

1998 expenditure plan constitutes a violation of petitioners' substantive due process rights.

78. Petitioners further request that this court enter an order preventing DOE from further violating petitioners' constitutional rights and requiring the Secretary of Energy to propose to Congress a reduction in the fees petitioners are required to pay to zero until such time as the Secretary is able to establish to this court that additional payments into the Nuclear Waste Fund are appropriate.

**COUNT III (Taking)**

79. Petitioners reallege and incorporate by reference paragraphs 1 through 78 of this Petition.

80. Petitioners' right, after January 31, 1998, to make payments into the Nuclear Waste Fund at a level no greater than would be necessary to fund the nuclear waste disposal program had DOE constructed an operational spent nuclear fuel repository is a property interest within the meaning of the fifth amendment taking clause. See U.S. Const. Amend. V.

81. Petitioners' right to make payments at a level no greater than would be required if the existing fund balance and DOE's May 18, 1998 expenditure plan were fully recognized is a property interest within the meaning of the fifth amendment taking clause. See U.S. Const. Amend. V.

82. Respondents' refusal to adjust fees and requirement that petitioners continue payments at existing levels amount