to a systematic and unreasonable overcollection of fees on the part of DOE and a taking of petitioners' property.

83. DOE's taking of petitioners' property was unauthorized. No statute permits the Executive to deprive the petitioners of property beyond that which would be necessary to fund the nuclear waste disposal program assuming an operational repository consistent with the NWPA's statutory framework. DOE's failure was contrary to the NWPA, its implementing regulations and the statutory contract.

84. Petitioners respectfully request that this court enjoin DOE from further violation of petitioners' constitutional rights. Specifically, petitioners request a declaratory judgment that:

(a) DOE's continued collection of fees at levels in excess of those which would be required if DOE had constructed an operational repository by January 31, 1998, constitutes a violation of the taking clause of the United States Constitution; and

(b) DOE's continued collection of fees greater than those necessary to fund the program taking into account the existing fund balance and DOE's May 18, 1998 expenditure plan constitutes a violation of the taking clause of the United States Constitution.

85. Petitioners further request that the court enter an order preventing DOE from further violating petitioners'

constitutional rights and requiring the Secretary of Energy to propose to Congress a reduction in the fees petitioners are required to pay to zero until such time as the Secretary is able to establish to this court, on notice to petitioners, that additional contributions to the Nuclear Waste Fund are appropriate.

**COUNT IV (Declaratory Judgment Regarding Use of Nuclear Waste Fund)**

86. Petitioners reallege and incorporate by reference paragraphs 1 through 85 of this Petition.

87. Section 302(d) of the NWPA provides that the Secretary "may make expenditures from the Waste Fund . . . only for the purposes of radioactive waste disposal activities" under the Act. 42 U.S.C. § 10222(d).

88. Funds in this Nuclear Waste Fund are not general treasury funds, but rather are funds held in trust pursuant to the NWPA.

89. Use of these funds is limited not only by the language of the NWPA itself, but also by the prohibitions found in 31 U.S.C. 1321 and 1301, governing use of trust fund amounts.

90. Upon information and belief, funds paid into the Nuclear Waste Fund have been used as general treasury funds for purposes other than those authorized by Congress in 42 U.S.C. § 10222(d) of the NWPA.

91. Upon information and belief, the cost of the repository to petitioners will increase as a direct result of respondents' delay in the construction of the repository which is solely the responsibility of respondents.

92. Upon information and belief, DOE is now using, and intends to continue using, the Nuclear Waste Fund to pay costs other than those associated with an NWPA-compliant repository, e.g., a repository which has been sited, constructed and made operational prior to January 31, 1998. Further utilization of the Nuclear Waste Fund to defray these delay costs is in violation of the NWPA.

93. Accordingly, petitioners request that this court enter an order declaring that all monies paid into the Nuclear Waste Fund be maintained in a separate account and that the Secretary of Energy be required to provide an annual accounting of all amounts spent.

94. Further, petitioners request that this court enter an order declaring that any increased costs of disposal resulting from the delay in developing a permanent repository for spent nuclear fuel, including increased costs of construction and operation, be borne by DOE from sources other than the Nuclear Waste Fund and not be used directly or indirectly to justify an increase in payments to that fund.

95. Petitioners request that this court enter an order restraining respondents from:

(a) further misuse of the fund; and

(b) paying from the fund any increased costs that relate to delay in construction or operation of the repository.

**COUNT V (Failure To Establish Schedule, Terms And Conditions For Acceptance Of Spent Nuclear Fuel)**

96. Petitioners reallege and incorporate by reference paragraphs 1 through 95 of this Petition.

97. Sections 111(b)(1) and 302(a)(6) of the NWPA, 42 U.S.C. § 10131(b)(1)) and 42 U.S.C. § 10222(a)(6), require the Secretary to establish in writing a schedule for the construction and operation of a repository for the permanent disposal of spent nuclear fuel, and criteria setting forth the terms and conditions, including the schedule and rate of acceptance, under which DOE is obligated to make spent nuclear fuel disposal services available to the utilities.

98. Under the statutory contract, DOE was required to collect information from utilities regarding the age of the spent nuclear fuel and, using that data, establish a schedule by which DOE would accept spent nuclear fuel following the January 31, 1998 start date.

99. The Secretary delegated responsibility for establishing this schedule to DOE's Office of Civilian Radioactive Waste Management ("OCRWM"). That office published periodic reports setting forth a hypothetical rate of acceptance of spent nuclear fuel by DOE. The most recent

report published was the 1995 Acceptance Priority Ranking and Annual Capacity Report.

100. DOE has failed to establish either a schedule for operating a repository or terms and conditions governing DOE's rate of acceptance of spent nuclear fuel under the Act.

101. In July 1983, DOE published a Report on Financing the Disposal of Commercial Spent Nuclear Fuel and Processed High-Level Radioactive Waste. This Report comprises DOE's first pronouncement of the terms and conditions for acceptance of spent nuclear fuel made following enactment of the NWPA. It specified a design receipt rate of 6000 metric tons per year.

102. On information and belief this rate of acceptance took into account multiple factors including repository design, rate of production of spent nuclear fuel, and optimization of the transportation resources required for the program.

103. Subsequent reports have published projected rates of approximately 900 metric tons per year for the ten years following first acceptance of spent nuclear fuel. See 1995 Annual Priority Ranking and Annual Capacity Report, at 4.

104. These "projections" do not satisfy the Act's requirement for a "schedule" and "terms and conditions" for spent fuel acceptance because they neither bind nor condition DOE conduct under the statutory scheme Congress established through the NWPA. DOE expressly has disclaimed that its

projections amount to terms and conditions. In its 1995 Annual Priority Ranking and Annual Capacity Report, DOE states that this data "is for planning purposes only . . . ." Id. at 1.

105. DOE's projections subsequent to July 1983 are unreasonable. They attempt to accommodate DOE's unauthorized delay in fulfilling its statutory obligations, and thus violate the Act even if taken as terms and conditions for spent fuel acceptance or as a schedule for repository operation. These projections are based on highly restrictive assumptions applicable only if initial acceptance of spent nuclear fuel were to occur at Monitored Retrievable Storage ("MRS") facilities rather than the permanent repository required by the NWPA. Id. at 4. Moreover, DOE's "projections" bear no rational relationship to the technical capabilities of the permanent repository for which petitioners are paying. See, e.g., 1983 Report on Financing the Disposal of Commercial Spent Nuclear Fuel and Processed High-Level Radioactive Waste, at 11.

106. DOE also has failed to establish other essential terms and conditions required by 42 U.S.C. § 10222(a)(6).

107. The Secretary's failure to establish terms and conditions for the disposal of spent nuclear fuel required by 42 U.S.C. § 10222(a)(6) violates the Act.

108. Accordingly, petitioners request that this court declare DOE in violation of 42 U.S.C. §§ 10131(b)(1) and 10222(a)(6). Petitioners further request that this court require DOE and the Secretary to establish, no later than 60 days following entry of an order in this case, the schedule for repository operation and the terms and conditions, including the rate of acceptance, by which disposal services shall be made available in compliance with the NWPA. Finally, petitioners request that this court retain jurisdiction over this action for purposes of determining whether the terms and conditions established by DOE comply with the NWPA and otherwise enforcing the court's order.

## PRAYER FOR RELIEF

WHEREFORE, petitioners respectfully request that the court enter judgment in favor of the companies, and grant the following relief:

(a) A declaration that respondents are in violation of Sections 111(b)(1), 302(a)(4), and 302(a)(6) of the NWPA. 42 U.S.C. §§ 10131(b)(1), 10222(a)(4) and 10222(a)(6).

(b) A declaration that respondents' decision to require petitioners to continue making payments into the Nuclear Waste Fund at current levels is a violation of the substantive due process and taking clauses

of the fifth amendment to the United States Constitution.

(c) A declaration that, under 42 U.S.C. § 10222(a)(4) and (5), the Secretary was obligated to seek all fee adjustments necessary to ensure collection, by January 31, 1998, of all funds required to site, construct, license and make operational the repository by that date.

(d) A declaration that DOE's most recent Fee Adequacy Report dated October 1996 is contrary to 42 U.S.C. § 10222(a)(4) for failure to reconcile future proposed fees with the existing fund balance and the announced expenditure plan through 2010.

(e) An order declaring that any increased costs of disposal resulting from the delay in developing a permanent repository for spent nuclear fuel, including increased costs of construction and operation, be borne by DOE and not be used to increase payments by petitioners to the Nuclear Waste Fund.

(f) An order requiring the Secretary of Energy to propose to Congress a fee reduction to an amount no more than necessary to fund the nuclear waste disposal program assuming the present existence of an operational repository consistent with the NWPA's statutory framework, or alternatively, a

reduction of the fee to zero until such time as the Secretary is able to establish, on notice to petitioners, that additional contributions to the Nuclear Waste Fund are appropriate.

(g) An order declaring that all monies paid into the Nuclear Waste Fund be maintained in a separate account and that the Secretary of Energy be required to provide an annual accounting of all amounts spent.

(h) An order prohibiting respondents from (a) further misuse of the fund; and (b) paying any increased costs that relate to delay in construction of the repository from the fund.

(i) An order requiring respondents to establish, no later than 60 days following entry of an order in this case, the schedule for repository operation and the terms and conditions, including rate of acceptance, under which disposal services shall be made available in compliance with the Act.

(j) A determination that the court will retain jurisdiction over this action for purposes of assessing whether DOE's prospective fee assessment practices, its schedule for repository operation, and its established terms and conditions for spent fuel acceptance for permanent disposal at a repository comply with the NWPA, and enforcing

DOE's compliance with such NWPA requirements as may be approved by the court.

(k) Such other and further relief as the court deems just.

Respectfully submitted,

Tami Lyn Azorsky*
David A. Churchill
Stephen E. Ruscus
MCKENNA & CUNEO, L.L.P.
1900 K Street, N.W.
Washington, DC 20006
202-496-7500

Attorneys for

Consolidated Edison Company of New York, Inc.

Consumers Energy f/k/a Consumers Power Company

Illinois Power Company

Pacific Gas and Electric Company

Rochester Gas and Electric Corporation

*Counsel of Record

Dated: July 30, 1998

Of Counsel:

C. Stanley Dees, Esq.
Herbert L. Fenster, Esq.
John Bonello, Esq.
Suzanne Karbarz, Esq.

MCKENNA & CUNEO, L.L.P.
1900 K Street, N.W.

Washington, DC 20006
202-496-7500

1

Neil S. "Buzz" Carns
Senior Vice President

Consolidated Edison Company of New York, Inc.
Indian Point Station
Broadway & Bleakley Avenue, Buchanan, NY 10511
Telephone (914) 734-5713

June 15, 1998

The Honorable Federico Pena
Secretary of Energy
United States Department of Energy
1000 Independence Avenue, S.W.
Washington, D.C. 20585

Dear Mr. Secretary:

On June 2, 1998, the Nuclear Energy Institute advised you that the industry was united in rejecting your May 18, 1998-proposal to address the Department of Energy's failure to accept spent nuclear fuel ("SNF") as required by the Nuclear Waste Policy Act of 1982, as amended ("NWPA"). In addition to the shortcomings in DOE's proposal that were raised by the industry as a whole, Consolidated Edison Company of New York, Inc. is concerned that the May 18 proposal demonstrates disregard for DOE's statutory obligations that exist independent of the contracts with the various utilities. This letter seeks your specific commitment to comply with these statutory requirements as they apply to SNF now in the possession of Con Edison.

First, § 302(a)(6) of the NWPA requires the Secretary to "establish in writing criteria setting forth the terms and conditions under which SNF disposal services shall be made available." 42 U.S.C. § 10222(a)(6). No such criteria currently exist. DOE has failed to comply with the January 31, 1998 deadline to begin accepting SNF on grounds that the proposed repository is not yet available, but has offered no alternative plan. Commercial nuclear utilities at this time do not know when or at what rate DOE will accept spent nuclear fuel. Con Edison's specific requirements include acceptance by DOE of SNF from our facility commencing in 1999. Con Edison seeks, no later than July 10, 1998, the issuance of written criteria for disposal services which set forth the terms and conditions, including the schedule, under which DOE will accept SNF.

DOE also has not complied with § 302(a)(4) of the NWPA. Section 302(a)(4) requires the Secretary to conduct an annual review of the amount of the fees utilities are required to pay into the Nuclear Waste Fund. 42 U.S.C. § 10222(a)(4). If excess revenues exist in the Fund, the Secretary is obligated to propose an adjustment to the fee. Id. The attachment to your May 18 proposal demonstrates that excess revenues exist in the fund. Based on DOE's own projections, the Fund currently contains significantly more than the estimated program costs through 2010. Continued collection of fees at the current rate

would create a Fund balance even more disproportionate to appropriations needs. Consistent with its statutory obligations DOE may not continue to collect fees when such a significant excess exists. DOE should therefore immediately propose to Congress a downward adjustment of the fee to zero.

Con Edison, like other utilities required to continue holding spent nuclear fuel, must find a near-term mechanism to address both the continued presence of SNF on our property and the appropriateness of fees already paid and to be paid into the Nuclear Waste Fund. DOE, for its part, should immediately comply with the pertinent statutory requirements. We will expect to receive assurances of DOE's compliance no later than July 10, 1998. We will be constrained to treat failure by DOE to establish terms, conditions and schedule for acceptance of Con Edison's SNF, or to reconcile fee assessments with program expenditures, as violations of the NWPA.

Very truly yours,

2

**Department of Energy**
Washington, DC 20585

July 15, 1998

Mr. Neil S. Carns
Consolidated Edison Company
of New York, Inc.
Indian Point Station
Broadway & Bleakley Avenue
Buchanan, N.Y. 10511

Dear Mr. Carns:

This responds to your June 15, 1998 letter to former Secretary Peña, in which you requested compliance with certain requirements of the Nuclear Waste Policy Act of 1982 as they apply to the spent nuclear fuel now in the possession of your company.

You express the concern that the Department has not yet established in writing criteria setting forth the terms and conditions under which spent nuclear fuel disposal services shall be made available and ask that the Department issue such criteria, including a schedule for spent nuclear fuel acceptance by the Department.

In 1983, the Department published the final rule promulgating the Standard Contract for Disposal of Spent Nuclear Fuel and/or High-Level Radioactive Waste, 10 CFR Part 961, which established in writing the terms and conditions under which nuclear fuel disposal services will be made available. Article IV of the Standard Contract provides that, beginning on April 1, 1991, the Department shall issue an annual acceptance priority ranking for receipt of spent fuel, and beginning not later than July 1, 1987, the Department shall issue an annual capacity report for planning purposes. The Department has issued Acceptance Priority Rankings in December 1991, May 1992, and March 1995 and Annual Capacity Reports in June 1987, June 1988, December 1990, December 1991, May 1993, and March 1995. These documents form the basis for the schedule in the Delivery Commitment Schedules annexed to individual Standard Contracts pursuant to Article V.B. of the Standard Contract. Due to the delay in opening a disposal facility, the Department has been unable to finalize the schedules.

You also express the concern that the Department has not yet conducted an annual review of the amount of the fees utilities are required to pay into the Nuclear Waste Fund. In July 1984, February 1985, March 1986, June 1987, November 1990, and October 1996, the Department completed reviews of the adequacy of the fees utilities are required to pay into the Nuclear Waste Fund. We plan to release another review by the end of this year. To date, the reviews show that no adjustment in the 1 mill/kwh fee is necessary or appropriate.

I am sorry that you have concluded that former Secretary Peña's offer is not of interest to your company. As the Department has indicated on several occasions, we stand ready to explore with individual utilities contract amendments to address any hardships that may be experienced as a result of the Department's delay. If you would like to pursue such discussions and address the concerns raised in your letter, please have your staff contact Mr. David Zabransky of the Office of Civilian Radioactive Waste Management at (202) 586-9198 to arrange for a meeting.

Sincerely,

Ronald A. Milner

for Lake H. Barrett, Acting Director
Office of Civilian Radioactive
Waste Management