fee assessment. (Motion at 12-13.) Respondents again misapprehend the bases of Petitioners' claims under § 302(a)(4).

Petitioners' allegations regarding DOE's calculation, collection and use of the fees are not based on the content of the 1996 or 1998 fee adequacy reports. Rather, Petitioners' challenges are based upon Respondents' persistent overcollection of fees in the face of DOE's failure to begin disposing of spent nuclear fuel by January 31, 1998, its uncertainty with regard to when and how it will begin disposing of Petitioners' fuel, the nuclear waste program expenditure plan DOE published on May 18, 1998, and DOE's July 15, 1998 refusal to reduce Petitioners' fees. Accordingly, because Petitioners' fee challenges were filed within 180 days of DOE's April 30 and July 31, 1998 quarterly fee overcollections, within 180 days of Respondents' failure to begin moving fuel consistent with its unconditional obligation, and within 180 days of DOE's publication of its May 18, 1998 expenditure plan and July 15, 1998 refusal to reduce fees, Petitioners' fee challenges are timely filed.

Even if Petitioners' claims were based on the deficiencies in DOE's 1996 fee adequacy report or DOE's failure to issue a 1997 fee adequacy report, Petitioners' fee challenges nevertheless would be timely filed under the reopening and ripeness doctrines. Accordingly, Respondents' motion should be denied.

**A. Petitioners' Fee Challenges Were Timely Filed Within 180 Days of Petitioners' Notification of the Unlawful Conduct**

1. <u>The Petition was filed within 180 days of January 31, 1998</u>

Petitioners' fee challenges were timely filed within 180 days of January 31, 1998, the date upon which Petitioners first knew that DOE would not heed Congress' mandate to begin disposing of fuel by that date and would not heed this Court's repeated admonitions that DOE had an unconditional obligation to do so. Petitioners had no quarrel with the fees DOE collected

over the prior fifteen years in accordance with the successive annual written assurances of DOE Secretaries that such fees were sufficient to meet program funding needs. Indeed, Petitioners presume in the absence of information to the contrary that the approximately $15 billion collected (half of which remains unspent) will ultimately prove sufficient to fulfill DOE's disposal obligations, albeit not on a timely basis.

At the end of January 1998, however, two things happened: DOE did not begin to dispose of spent nuclear fuel; and DOE collected the accustomed $8 million from Petitioners alone. In May, DOE notified Petitioners of an expected expenditure plan demonstrating DOE's intent to continue collecting twice as much per year as it spends, and suggesting great uncertainty for the program over the next ten years. (Petition ¶ 60.) Based on these facts, Petitioners asked DOE to recommend a reduction in the fee; it refused. (Letter from DOE to Consolidated Edison of 7/15/98.) In other words, despite tremendous future uncertainty, DOE had no intention of modifying its fee collection activities. This is one of the DOE actions Petitioners challenge.

The earliest date on which Petitioners had knowledge of this action was January 31, 1998. Since that date Petitioners alone have been assessed, and have paid under protest, approximately $30 million in fees. This fee has been calculated at the one mil rate. DOE's 1998 fee adequacy report asserts that the one mil rate is in fact sufficient to fund the much more expensive program upon which DOE, by virtue of its failure to commence disposing of spent nuclear fuel in a timely fashion, has embarked. The Act does not require Petitioners to pay for this more expensive program. Because DOE recommended no fee adjustment on January 31, 1998, DOE overcollected on the April and July dates. Petitioners' challenges were clearly filed within 180 days of those dates.

2. The Petition was filed within 180 days of Secretary Pena's letter of May 18, 1998

Petitioners' fee challenges were timely filed within 180 days of May 18, 1998, the date upon which Secretary Pena published the nuclear waste program expenditure plan for amounts to be collected and appropriated going forward. (Petition ¶¶ 40-41.) Secretary Pena's letter revealed to Petitioners that the Nuclear Waste Fund had a balance already sufficient to fund the Nuclear Waste Program through the Year 2010. (Id.) The letter also indicated that, notwithstanding this balance, DOE intended to collect an additional $600 million in fees per year until 2010 but was sufficiently unsure of the form and timing of the required repository that it would not spend sufficient funds to build the repository within the next ten years. Prior to the May 18, 1998 letter, Petitioners knew neither how little DOE intended to progress on the program nor how much it intended to collect from Petitioners and other utilities. Subsequent to receipt of that letter, Petitioners needed less than 90 days to file challenges alleging that "in light of the excess amounts currently in the Nuclear Waste Fund, the waste program expenditure plan announced by Secretary Pena on May 18, 1998, and DOE's inability to state with certainty when, and in what form, it will construct a repository," DOE's continued collection of fees at the one mil rate was arbitrary and capricious, unlawful, and contrary to the Act. (See Petition ¶ 62.) The Petition is timely.

3. The Petition was filed within 180 days of DOE's July 15, 1998 letters to utilities

Petitioners' fee challenges were also filed within 180 days of DOE's July 15, 1998 rejection of Petitioners' demand that DOE recommend a reduction in the fee. In response to the May 18, 1998 expenditure plan, several Petitioners wrote to DOE noting that "excess revenues exist in the fund" and demanding, in light of projected expenditures and collections, that the fee be reduced in compliance with Section 302(a)(4) to avoid "a Fund balance even more

disproportionate to appropriations needs." (See. e.g., Petition, Ex. 1.) On July 15, 1998, DOE responded, making no adjustment in the fee and indicating that "the reviews show that no adjustment in the 1 mil/kwh fee is necessary or appropriate." (See. e.g., Petition, Ex. 2.) Petitioners timely filed challenges to DOE's refusal to recommend a reduction of the fee within 16 days of that refusal.

4. The Petition was timely filed within 180 days of the date upon which DOE's failure to publish a 1998 fee adequacy report became unreasonable

Petitioners' fee challenges were timely filed within 180 days of the point at which DOE's failure to publish a 1998 fee adequacy report became unreasonable.[4] Section 302(a)(4) makes no provision for retroactive adjustment of fees accompanied by reimbursement to the utilities of over-collected amounts. Rather, the express function of Section 302(a)(4) of the NWPA is to require *prospective* adjustments to the fees paid into the Nuclear Waste Fund. Any fee adequacy reports DOE publishes after payment by the utilities in the year for which the report is intended thus does not accomplish its sole function and is per se unreasonable. In the instant case, Petitioners were required to make a payment of approximately $8,000,000 into the Nuclear Waste Fund at the end of January 1998. Petitioners also made payments of nearly $8,000,000 to Respondents on April 30, 1998, July 31, 1998, and October 31, 1998 – all before DOE issued the "1998 Fee Adequacy Report" intended to recommend an adjustment to these payments if appropriate. As to each payment DOE collected without having made the requisite fee assessment, DOE's delay in performing the assessment was unreasonable. Petitioners' fee challenges were timely filed within 180 days of these failures.

4 DOE's subsequent attempt to remediate this defect through publication of a fee adequacy report in December 1998 does not affect the status of Petitioners' timely filed Petition, nor make it premature.

**B. Petitioners' Fee Challenges Are Timely Under The Ripeness And Reopening Doctrines**

Even if this Court were to determine that Petitioners' fee challenges are based solely on DOE's flawed 1996 fee adequacy report or DOE's failure to publish a 1997 fee adequacy report, Petitioners' claims would be timely. This Court long has recognized circumstances in which objections to agency regulations are timely, even after the statutory review period has ended. Raton Gas Transmission Co. v. FERC, 852 F.2d 612, 615 (D.C. Cir. 1988). This is so when a claim remains unripe for judicial review throughout the statutory review period, Eagle-Picher Indus., Inc. v. EPA, 759 F.2d 905, 913-14 (D.C. Cir. 1985); Geller v. FCC, 610 F.2d 973 (D.C. Cir. 1979); Functional Music, Inc. v. FCC, 274 F.2d 543 (D.C. Cir. 1958); or when an agency reopens an issue previously resolved by a final agency action. Ohio v. EPA, 838 F.2d 1325, 1328-29 (D.C. Cir. 1988).

Ripeness may arise after a statutory period has run when a recent event or new information "create[s] a challenge that did not previously exist" or when, by precedent, claims are not ripe for review during the statutory period. Eagle-Picher, 759 F.2d at 913-14. Moreover, "the calendar does not run until the agency has decided a question in a manner that reasonably puts aggrieved parties on notice of the rule's content." RCA Global Communications, Inc. v. FCC, 758 F.2d 722, 729 (D.C. Cir. 1985); Functional Music, 274 F.2d at 546 (statutory time limit does not foreclose subsequent examination of further agency action applying rule).

Even if this Court required Petitioners to rely upon DOE's 1996 fee adequacy report and its failure to issue a 1997 report, Petitioners' fee challenges would be timely filed under the ripeness doctrine. DOE's failure to begin disposing of spent nuclear fuel by January 31, 1998, created a basis for challenging DOE's failure to promulgate the 1997 fee adequacy report which did not exist prior to that time. DOE's failure to begin disposing of Petitioners' fuel created a

statutory imperative that DOE recommend a reduction in the fee. When Petitioners demanded this adjustment, the Secretary flatly refused. (Letter of 7/15/98.) In light of Congress' mandate that DOE begin moving the fuel by January 31, 1998, and this Court's repeated admonishments that DOE's duty was unconditional, DOE's failure to move the fuel was unforeseeable. Petitioners filed their fee challenges within 180 days of DOE's failure to begin moving fuel. Accordingly, Petitioners' fee challenges are timely.

Similarly, an agency may reopen a statutory time period "when the agency . . . by some new promulgation creates the opportunity for renewed comment and objection." Ohio v. EPA, 838 F.2d at 1328. A "reopening" exists where an agency proposes changes to rules or policies, requests comments on new provisions while explaining unchanged portions, or responds to a comment regarding a previously decided issue. Id. In determining whether a matter has been reopened, courts consider "all relevant proposals and reactions of the agency to determine whether an issue was in fact reopened." Public Citizen v. NRC, 901 F.2d 147, 150 (D.C. Cir. 1990) (citing Ohio v. EPA, 838 F.2d. at 1328); Edison Elec. Ins. v. EPA, 996 F.2d 326, 332 (D.C. Cir. 1993) (agency reopened statutory review period when it solicited comments on existing regulations and tendered "alternative approaches").

In the instant case, DOE "reopened" the statutory period for challenging the fee by acknowledging the economic impact of its failure to begin disposing of spent nuclear fuel by January 31, 1998. In the May 18, 1998 letter, Secretary Pena requested Petitioners' participation in a negotiated restructuring of the statutory contract, invited input from Petitioners regarding mitigation of the consequences of DOE's default, and suggested modification of the contract's

fee payment provisions.[5] Petitioners filed their fee challenges within 180 days of DOE's reopening of any statutory review period associated with DOE's 1996 fee adequacy report or failure to publish a report in 1997. Accordingly, Petitioners' claims are timely.

## IV. PETITIONERS' CHALLENGE OF DOE'S FAILURE TO PUBLISH WRITTEN TERMS AND CONDITIONS IS TIMELY

Respondents contend that DOE promulgated the 1983 Standard Contract and the 1995 Annual Priority Ranking & Annual Capacity Report to implement the mandate in Section 302(a)(6). Respondents claim that, as a result, Petitioners' assertion that DOE failed to promulgate binding terms and conditions is barred because it was filed more that 180 days from publication of both the statutory contract and the 1995 Annual Priority Ranking & Annual Capacity Report. (Motion at 17-18.) Such "terms and conditions," however, even if formerly compliant with the NWPA, at best remained in effect only until January 31, 1998, when DOE failed to commence disposing of spent nuclear fuel pursuant to the program Congress had required. Since that time, Petitioners have been faced with the problem of planning for, paying for, and operating interim fuel storage facilities never intended under the Act, with no idea how long DOE's default will require them to store this waste. Petitioners have no guidance on what plans they should make because DOE has failed to comply with the NWPA's requirement to establish criteria, including a schedule, for the disposal of their spent nuclear fuel.

On June 15, 1998, Consolidated Edison and other utilities wrote to Secretary Pena demanding that DOE establish, in writing, criteria setting forth the terms and conditions under which spent nuclear fuel disposal services would now be made available. (Letter from

---

5 DOE of course did not propose to recommend a reduction in the fee. The agency merely proposed to delay some portion of the fees to be paid, with accrued interest, when the repository finally opens.

Consolidated Edison to Sec. Pena of 6/15/98.) Consolidated Edison's letter stated that as a result of DOE's failure to perform beginning January 31, 1998, no valid terms and conditions "currently exist." The utility also stated that DOE had proposed no alternate plan, and requested that DOE issue terms and conditions no later than July 10, 1998.

On July 15, 1998, DOE responded, asserting that the statutory contract, which identified January 31, 1998 (six months earlier) as the scheduled start date, coupled with the 1995 Annual Priority Ranking & Annual Capacity Report, remained the written criteria establishing terms and conditions including schedule. Under the contract, schedules have never been confirmed. And, DOE had already missed the scheduled start date. Petitioners filed their challenges regarding DOE's failure to establish binding terms and conditions within 180 days both of DOE's violation of the earlier terms and conditions and of their receipt of DOE's July 15, 1998 letter. Accordingly, Petitioners' challenges were timely filed.

Even if this Court were to determine that DOE previously issued NWPA-compliant written terms and conditions, Petitioners' challenges would be timely. As noted above, this Court has long recognized exceptions under the reopening and ripeness doctrines by which objections to agency actions may be timely, even after the statutory review period has ended. Raton Gas Transmission Co., 852 F.2d at 615; Eagle-Picher, 759 F.2d 905; Geller, 610 F.2d 973; Functional Music, 274 F.2d 543; Ohio v. EPA, 838 F.2d at 1328-29.

Petitioners' challenges regarding DOE's failure to establish terms and conditions would be timely under the ripeness doctrine. DOE's failure to begin disposing of spent nuclear fuel by January 31, 1998, created a new challenge to DOE's terms and conditions which did not exist as long as DOE, at its election, could have complied with Congress' and this Court's directives. DOE's failure to begin disposing of Petitioners' fuel created a statutory imperative that terms and

conditions, including schedule and rate of acceptance again be established. When Petitioners demanded that DOE establish these criteria, DOE refused. (Letter of 7/15/98.) In light of Congress' mandate that DOE begin moving the fuel by January 31, 1998, and this Court's repeated admonishments that DOE's duty was unconditional, DOE's failure to move the fuel was unforeseeable. Petitioners filed their challenges to DOE's failure within 180 days of DOE's failure to begin moving fuel. Accordingly, Petitioners' challenges are timely.

In the instant case, DOE also "reopened" the statutory period for challenging its failure to establish terms and conditions when it admitted that, due to its delay, it was unable to finalize schedules, and invited Consolidated Edison and other petitioners to pursue discussions with DOE regarding amendment of the statutory contract. (Id.) Petitioners filed their challenges to DOE's failure to establish terms and conditions within 180 days of DOE's reopening of the statutory review period. Accordingly, Petitioners' claims are timely.

## CONCLUSION

For the reasons stated above, the Department of Energy's Motion to Dismiss should be denied.

Respectfully submitted,

Tami Lyn Azorsky*
David A. Churchill
Stephen E. Ruscus
MCKENNA & CUNEO, L.L.P.
1900 K Street, N.W.
Washington, D.C. 20006
202-496-7500

Attorneys for
Consolidated Edison Company of New York, Inc.
Consumers Energy f/k/a Consumers Power
Company, Illinois Power Company, Pacific Gas and
Electric Company, and Rochester Gas and Electric
Corporation

Dated: January 29, 1999

*Counsel of Record

Of Counsel:

C. Stanley Dees, Esq.
Herbert L. Fenster, Esq.
MCKENNA & CUNEO, L.L.P.
1900 K Street, N.W.
Washington, D.C. 20006
202-496-7500

Brent L. Brandenburg, Esq.
Arunas T. Udrys, Esq.
Jeffrey R. Clark, Esq.
Christopher J. Warner, Esq.
Leah Manning Stetzner, Esq.

CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of January, 1999, a true copy of the foregoing was served by first-class mail on:

John Bryson, Esq.
Department of Justice
Environmental and Natural Resources Division
Appellate Section
601 D Street, N.W., Floor 8th
Washington, D.C. 20004

## CERTIFICATE OF FILING

I hereby certify that, on this 23rd day of November, 2004, a copy of the foregoing "DEFENDANT'S RESPONSE TO PAGES 12 AND 13 OF 'PLAINTIFF BOSTON EDISON COMPANY'S POST-HEARING REPORT'" was filed electronically, in accordance with this Court's order dated November 23, 2004. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Harold D. Lester, Jr.