**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **BOSTON EDISON COMPANY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **No. 99-447C** |
| | ) | **(Judge Lettow)** |
| **UNITED STATES,** | ) | |
| **Defendants.** | ) | |

**PLAINTIFF'S REPLY TO DEFENDANT'S RESPONSE TO PAGES 12 AND 13 OF PLAINTIFF BOSTON EDISON COMPANY'S POST-HEARING REPORT**

Pursuant to the Court's Order dated November 23, 2004, Plaintiff Boston Edison Company ("Boston Edison") respectfully submits this Reply to Defendant's October 26, 2004 Response to Pages 12 and 13 of Plaintiff Boston Edison's September 10, 2004 Post-Hearing Report ("Defendant's Response"). The arguments set forth by Defendant regarding this Court's jurisdiction over Boston Edison's spent nuclear fuel-related claims are completely without merit. Indeed, in light of the SNF litigation history and the Government's misleading references to its earlier positions and related court rulings, we are constrained to conclude that the Government's latest submittals are only intended to confuse the issues before the Court, and further delay reaching the merits of this case.

The issue before this Court is whether Boston Edison's claims involving the Government's Nuclear Waste Fund fee practices and their impact on Boston Edison and the value of Boston Edison's Standard Contract and property rights have properly been lodged in the Court of Federal Claims. The Government has mischaracterized both the nature of the claims and their relevant history in prior SNF litigation, and the

Government now contends that Boston Edison's claims may only be brought in the D.C. Circuit. Defendant's Response, at 6.

Defendant's Response continues the Government's attempt to obfuscate the inconsistency of positions it has taken as to the proper venue for damage claims stemming from DOE's disregard of its obligations imposed by the Nuclear Waste Policy Act of 1982 ("the Act") to dispose of spent nuclear fuel ("SNF") beginning no later than January 31, 1998. Almost three months ago, in its September 10, 2004 Post-Hearing Report, Plaintiff Boston Edison advised the Court of earlier SNF litigation conducted in the U.S. Court of Appeals for the District of Columbia Circuit in which the Government successfully contended that that court lacked jurisdiction to adjudicate SNF claims, including claims as to DOE's Nuclear Waste Fund fee collection practices. Specifically, Boston Edison brought to the Court's attention the prior SNF case of Consolidated Edison Co. of New York, Inc. v. Department of Energy, No. 98-1358, 1999 U.S. App. LEXIS 11040 (D.C. Cir. Apr. 16, 1999). Boston Edison carefully recited the prior litigation history, and concluded that:

> It is inconsistent and incorrect for the Government to now argue, once Nuclear Waste Fund claims have in fact been brought in the Court of Federal Claims, that these claims may only be brought before the D.C. Circuit, when it previously argued that such claims could not be raised there either."

Boston Edison Post-Hearing Report at page 13.

The Government has failed to advise the Court of the relevant portions of the earlier litigation that confirm its positions there and alleviate any doubt that the Court of Appeals for the District of Columbia ruled in 1999 that SNF damage claims such as those asserted by Boston Edison here are in fact properly lodged before this Court. When the Court of Appeals for the D.C. Circuit dismissed the Consolidated Edison

petitions on April 16, 1999, it included the Motion for Leave to File Complaint within the scope of its ruling. As to this and all other elements of the Consolidated Edison litigation, the D.C. Circuit found that "petitioners' arguments are precluded by the court's holding in Northern States Power Co. v. Dep't of Energy, 128 F.3d 754 (D.C. Cir. 1997), and the unpublished order issued May 5, 1998 denying rehearing in that case." 1999 U.S. App. LEXIS 11040, at *2.

The Government has not seen fit to place the Consolidated Edison Motion for Leave to File Complaint before this Court, so Boston Edison does so now as Exhibit 1 hereto. The proposed Complaint which Con Edison and several other utilities sought to file in the D. C. Circuit in 1998 clearly tracked the claims Boston Edison asserts here. The proposed complaint asserted that the Government's conduct constituted a continuing violation of the Act, a breach of the statutory contract, and a violation of the taking and due process clauses of the Fifth Amendment. The proposed complaint asserted that DOE's failure to dispose of SNF also caused reductions in the value of the petitioners' property and assets.

The July 30, 1998 Consolidated Edison petition that was dismissed by the D.C. Circuit in its April 16, 1999 order in deference to Court of Federal Claims jurisdiction also set forth Nuclear Waste Fund claims that track the claims asserted by Boston Edison here. Paragraph 39 asserted that:

> DOE proposes to continue collection of fees at [the 1 mil rate] even though the Act required DOE to adjust the fees annually from 1982 until 1998 to assure that, within that period, sufficient funds would be collected for DOE to site, construct and initiate operation of a repository by January 31, 1998.

Paragraph 42 of the petition alleged that:

> DOE thus proposes current fee assessment practices that deviate from the mandatory requirements of the NWPA in at least two

> important respects: (a) fees would continue to be collected without recognition that DOE was required to collect, between 1982 and 1998, all fees necessary for the siting, construction and initial operation of a repository; and (b) continuation of the existing fee structure would perpetuate systematic and persistent overcollection under which annual fee collections would exceed annual NWPA-complaint waste program expenditures.

All such claims were dismissed by the D.C. Circuit as not cognizable in the Courts of Appeal under Section 119 of the Act (42 U.S.C. § 10139),[1] and utility claimants were instead directed to pursue their Court of Federal Claims remedies, which Boston Edison is now doing.

When the Consolidated Edison utilities sought certiorari from the D.C. Circuit's ruling directing the utilities seek remedies in the U.S. Court of Federal Claims, the Government opposed certiorari. In its February 2000 Brief in Opposition, a copy of which is attached hereto as Exhibit 2, the Government asserted at pages 16-17 that:

> The NWPA's judicial review provision vests the courts of appeals with 'original and exclusive' jurisdiction over specified categories of suits (see 43 U.S.C. 10139(a)(1)(A)-(F)), not over every challenge

---

[1] Section 119(a)(1) of the Act states that:

"Except for review in the Supreme Court of the United States, the United States courts of appeals shall have original and exclusive jurisdiction of any civil action --

(A) for review of any final decision or action of the Secretary, the President, or the Commission under this part;

(B) alleging the failure of the Secretary, the President, or the Commission to make any decision, or take any action, required under this part;

(C) challenging the constitutionality of any decision made, or action taken, under any provision of this part;

(D) for review of any environmental impact statement prepared pursuant to the National Environmental Policy Act of 1969 (42 U.S.C. 4321 et seq.) with respect to any action under this subtitle, or as required under section 10155(c)(1) of this title, or alleging a failure to prepare such statement with respect to any such action;

(E) for review of any environmental assessment prepared under section 10132(b)(1) or 10155(c)(2) of this title; or

(F) for review of any research and development activity under subchapter II of this chapter."

> to DOE's implementation of the nuclear waste program. * * * Any ambiguity in Section 10139(a)(1) should be resolved, moreover, in light of the settled background rule that '[t]he sole remedy for an alleged breach of contract by the federal government is a claim for money damages, [] in the United States Claims Court [now the Court of Federal Claims] under the Tucker Act. . . . * * * In choosing that means of achieving the statutory objectives, Congress must be presumed to have intended that disputes regarding the precise nature of the parties' obligations, and the remedies for any breach thereof, would be resolved in the manner appropriate for contract claims.

This, of course, is precisely what Boston Edison is now doing. The claims lodged here closely track those of the Consolidated Edison litigants, now updated to reflect the passage of time and Boston Edison's exit from the nuclear generation business in 1999 following DOE's failure to commence SNF disposal, under circumstances substantially compromised by DOE's disregard of the Act's requirements. The Government should certainly not be permitted to espouse positions here that are unmistakably at odds with the positions it took when closely analogous claims were pending before the Court of Appeals.

Consolidated Edison demonstrates two things: (1) claims closely tracking those brought by Boston Edison here were brought before the D.C. Circuit in 1998 and rejected by that court for lack of jurisdiction, and (2) the rationale of the D.C. Circuit's decision in that case and others like it is that the Court of Federal Claims is the appropriate forum for adjudication of such claims. Consolidated Edison is just one example of the D.C. Circuit's denial of jurisdiction, in favor of the Court of Federal Claims' jurisdiction, over claims involving DOE's failure to abide by the terms of the Act and the Standard Contract. In its one-page opinion, the D.C. Circuit dismisses the petition based on the court's holding in Northern States Power Co. v. Department of Energy, 128 F.3d 754 (D.C. Cir. 1997) ("Northern I"), and the unpublished order issued May 5, 1998, Northern States Power Co. v. United States Department of Energy, No. 98-

1070, 1998 U.S. App. LEXIS 12919 (D.C. Cir. May 5, 1998) denying rehearing in that case (collectively, "Northern I & II"). A fair reading of Northern I & II, along with other D.C. Circuit decisions that also cite to Northern I & II as a basis for dismissal, clearly establishes that SNF claims implicating DOE's fee assessment practices are to be brought in the Court of Federal Claims.

In Northern I, the D.C. Circuit clearly held that SNF plaintiffs must pursue other remedies outside the D.C. Circuit. The court asserted limited jurisdiction in that case under the rubric that a "federal appellate court has the authority, through the process of mandamus to correct any misconception of its mandate by a lower court or administrative agency subject to its authority." Northern I, 128 F.3d at 759 (citing Office of Consumers' Counsel v. FERC, 826 F.2d 1136, 1140 (D.C. Cir. 1987)). On this ground, the court issued a narrow writ of mandamus precluding DOE from excusing its delay under the Standard Contract. Id. at 760. Aside from this limited ruling, the D.C. Circuit stated repeatedly in its decision that it would not grant petitioners' broad request for a writ of mandamus because an adequate remedy at law was available to the plaintiffs. Id. at 756, 759, 761. Northern I sets forth the D.C. Circuit's decision to require SNF plaintiffs to pursue these remedies, including suits for breach of contract, before the Court of Federal Claims.

It bears emphasis that in the Northern I proceeding which led to the D.C. Circuit's ruling reported at 128 F.3d 754 (D.C. Cir. 1997), the petitioners specifically sought relief pertaining to DOE's Nuclear Waste Fund fee collection practices. Because breach had not yet occurred (until January 31, 1998), and because the court there found that as of 1997 "the Standard Contract between DOE and the utilities provides a potentially adequate remedy," the Court of Appeals did not issue the writ of

mandamus as requested, but did preclude the Government from contending that its failure to commence SNF disposal by the Act's 1998 deadline was an "unavoidable delay" under the terminology of the Standard Contract. 128 F.3d at 756.

When the Government protested that the Court of Appeals' exercise of Section 119 authority under the Act was intruding upon the jurisdiction of the Court of Federal Claims, the D.C. Circuit disagreed. In its unpublished May 5, 1998 Order denying the Government's rehearing motion, attached hereto as Exhibit 3, the D.C. Circuit explained that it was not itself directly or indirectly asserting Tucker Act jurisdiction:

> The DOE petitions for rehearing, suggesting that this Court has erroneously designated itself as the proper forum for adjudication of disputes arising under the Standard Contract. . . . [W]e did not; we merely prohibited the DOE from implementing an interpretation that would place it in violation of its duty under the NWPA to assume an unconditional obligation to begin disposal by January 31, 1998.

Unwilling to accept the Court of Appeals' limited characterization of Section 119 jurisdiction in deference to the Tucker Act jurisdiction of the Court of Federal Claims, the Government sought certiorari in the United States Supreme Court, see September 1998 certiorari petition attached hereto as Exhibit 4. In its petition, the Government asserted that:

> The court's [Northern States Power] decision intrudes upon the jurisdiction of the Court of Federal Claims -- the tribunal vested with exclusive authority to adjudicate contract claims against the United States.

(Petition at page 14).

With this understanding of <u>Northern I & II</u>, when the D.C. Circuit cited to <u>Northern I & II</u> as a basis for denying the petition in <u>Consolidated Edison</u> there can be no doubt that the court intended petitioners to initially exhaust contractual remedies

before the Court of Federal Claims.[2] The D.C. Circuit's holding in Consolidated Edison is further supported by subsequent cases citing Northern I & II as a basis for denying jurisdiction. See N. States Power Co. v. Dep't of Energy, Nos. 97-1064 et al., 1998 U.S. App. LEXIS 20702, at *1 (D.C. Cir. July 2, 1998) (petitions denied on holding of Northern I ". . . because Standard Contract holders must seek remedies available under the contract in other fora"); Ariz. Pub. Serv. Co. v. Dep't of Energy, No. 98-1346, 1999 U.S. App. LEXIS 11035, at *1-*2 (D. C. Cir. April 16, 1999) (petitions for review dismissed as "[p]etitioners have conceded that they have potentially adequate remedies available in other fora, and are bound by the holding of the court in [Northern I]"); Wisc. Elec. Power Co. v. Dep't of Energy, 211 F.3d 646, 648 (D.C. Cir. 2000) ("The Court of Federal Claims, not this court, is the proper forum for adjudicating contract disputes." (citing Northern II, 1998 U.S. App. LEXIS 12919, at *4)). Accordingly, jurisdiction in this Court over Boston Edison's Amended Complaint is proper.

In addition to contesting the D.C. Circuit's refusal of jurisdiction in these cases, Defendant raises National Association of Regulatory Utility Commissioners v. Department of Energy, 851 F.2d 1424 (D.C. Cir. 1988) ("NARUC"), to support its assertion that Boston Edison's challenge to fee assessments "are untimely and in the wrong forum." Defendant's Response, at 6. The Government's NARUC arguments merely represent an attempt to show some instance where the D.C. Circuit heard a case remotely involving Nuclear Waste Fund fees. However, NARUC is based on an entirely different set of facts as the case at bar. NARUC did not involve assertions that DOE's fee assessment authority has expired, that DOE is attempting to shift SNF

[2] Given the Government's certiorari petition there can be no doubt whatsoever that Defendant knew the D.C. Circuit's reliance on the holding in Northern I & II was based on deference to contract and related remedies, not preclusion doctrines or statute of limitations as is currently argued in Defendant's Response.

disposal delay costs to claimants, or that DOE is improperly attempting to pre-collect its damage liability in these SNF cases via fee assessments intended to continue through at least 2020. See Boston Edison's Amended Complaint at paragraph 43.

Indeed, when another utility sought to raise SNF fee claims in the U.S. Court of Appeals for the D.C. Circuit in a recent case similar to Boston Edison's, that claim was flatly rejected. See Wisconsin Electric, 211 F.3d at 648 ("Nor do we have jurisdiction to consider Wisconsin Electric's petition pursuant to the NWPA, 42 U.S.C. § 10139(a)(1)."). The plaintiffs in Wisconsin Electric were seeking (1) a declaration that DOE must provide both monetary and non-monetary relief for failing to meet the January 31, 1998 deadline, and (2) an order directing DOE to comply with the court's mandates in Northern I & II.

Based on the holding in Northern I & II, and the cases applying and relying upon that decision, the Court of Federal Claims has been conclusively determined to be the only proper forum to adjudicate Boston Edison's claims. Defendant should not be able to escape liability for want of jurisdiction in both the D.C. Circuit and this Court. That the Government would now attempt to achieve such a result by mischaracterizing prior final and binding court rulings as to where SNF litigation should be brought is most regrettable indeed.

Dated: December 7, 2004

Respectfully submitted,

/s/ Richard J. Conway

Richard J. Conway
DICKSTEIN SHAPIRO MORIN
& OSHINSKY LLP
2101 L Street, NW
Washington, DC 20037-1526
(202) 785-9700

*Counsel of Record for*
*Boston Edison Company*

Of Counsel: David M. Nadler
Nicholas W. Mattia, Jr.
Bradley D. Wine
DICKSTEIN SHAPIRO MORIN
& OSHINSKY LLP
2101 L Street, NW
Washington, DC 20037
(202) 785-9700

Neven Rabadjija, Associate General Counsel
NSTAR Electric & Gas Corporation
800 Boylston Street, 17th Floor
Boston, Massachusetts 02199-0228
(617) 424-2223

CERTIFICATE OF SERVICE

I hereby certify that on December 7, 2004, a copy of the foregoing Plaintiff's Reply to Defendant's Response to Pages 12 and 13 of "Plaintiff Boston Edison Company's Post-Hearing Report," was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Bradley Wine