IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| BOSTON EDISON COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 99-447C |
| | ) | (Judge Lettow) |
| UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S MOTION TO CONSOLIDATE OR, IN THE ALTERNATIVE, FOR ISSUANCE OF A SUMMONS PURSUANT TO RCFC 14(a) AND NOTICE PURSUANT TO RCFC 14(b)

Pursuant to Rules 42 and 42.1 of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States, respectfully requests that the Court consolidate two cases, Boston Edison Co, v. United States, No. 99-447C (Fed. Cl.), and Entergy Nuclear Generation Co. v. United States, No. 03-2626C (Fed. Cl.). Both of these cases are currently pending before the same judge and involve the assignor and assignee of the same contract with the Department of Energy ("DOE"). Consolidation will promote the efficient administration of justice and prevent the potential for inconsistent rulings between the two cases.[1] To the extent that the Court declines to consolidate the Boston Edison and Entergy Nuclear Generation cases, we respectfully request that the Court (1) issue a summons pursuant to RCFC 14(a) to join Entergy Nuclear Generation Company ("ENGC") as a third-party defendant upon a contingent claim in Boston Edison and (2) issue binding notice pursuant to RCFC 14(b) and the Contract Settlement Act, 41 U.S.C. § 114(b), to ENGC in Boston Edison and to Boston Edison Company ("BECO") in Entergy Nuclear Generation.

---

1/ This motion is being filed in both the Boston Edison and Entergy Nuclear Generation cases.

BACKGROUND

BECO was the sole owner and operator of the Pilgrim nuclear electric generating facilities in Plymouth, Massachusetts ("Pilgrim"). BECO Amd. Compl. ¶ 2.[2] On June 17, 1983, BECO and DOE entered into the Standard Contract for Disposal Of Spent Nuclear Fuel And/Or High-Level Radioactive Waste ("Standard Contract"), 10 C.F.R. § 961.11 (1983). BECO Amd. Compl. ¶ 31. The Standard Contract required DOE to begin "[t]he services to be provided by DOE" under the Standard Contract "not later than January 31, 1998." 10 C.F.R. § 961.11, Art. II. Although the Standard Contract provided that the Government will begin its program of accepting spent nuclear fuel ("SNF") from the commercial industry by January 31, 1998, 10 C.F.R. § 961.11, Art. II, the Standard Contract did not specify any mandatory minimum "rate" at which DOE would be required to continue acceptance. Rather, the Standard Contract contained a contractual mechanism by which a queue for SNF acceptance would be developed that would determine the particular time in which DOE would accept SNF from each Standard Contract holder.[3]

BECO sold Pilgrim to ENGC on July 13, 1999. BECO Compl. ¶ 4; ENGC Compl. ¶ 2. As part of the sale, BECO assigned its contract with DOE to ENGC. BECO Amd. Compl. ¶ 4; ENGC Compl. ¶ 2. Just before effecting the assignment of its contract, BECO filed its lawsuit in this Court through its counsel at that time, the law firm of Shaw Pittman LLP, and sought

---

2/ "BECO Amd. Compl. ¶ ___" refers to BECO's amended complaint in Boston Edison, dated January 13, 2004. "ENGC Compl. ¶ ___" refers to ENGC's complaint in Entergy Nuclear Generation, dated November 5, 2003.

3/ All commercial nuclear power reactor owners entered into a Standard Contract with DOE, and the basic terms of each Standard Contract are virtually identical.

damages for DOE's alleged partial breach of the Standard Contract between BECO and DOE. Subsequently, BECO obtained new counsel from the law firm of Dickstein Shapiro Morin & Oshinsky LLP. On January 13, 2004, after the substitution of counsel, BECO filed an amended complaint in this Court, alleging damages for breach of contract and for a taking of property pursuant to the Fifth Amendment of the United States Constitution. As part of its damages claim, BECO asserts that, because of DOE's delay in beginning SNF acceptance, the value of BECO's ownership interest in Pilgrim was "diminished" and that "this diminished value was reflected in the auction process, and ultimately in the terms and conditions of sale [to ENGC] for an otherwise extremely valuable electric generating asset." BECO Amd. Compl. ¶ 58. It asserts that ENGC "factored into its valuation and reduced the price for Pilgrim to reflect the additional expenses associated with on-site storage of SNF, including the continuation of payments into the Nuclear Waste Fund." BECO Amd. Compl. ¶ 66. As its damages, BECO seeks to recover "(a) diminution of the market value of Pilgrim which caused Boston Edison to realize less value in the sale of the facility than it would have received had DOE met its obligations under [the] [Nuclear Waste Policy Act ("NWPA")] and the Standard Contract; and (b) increased costs incurred by Boston Edison to store and maintain SNF, and other related costs." BECO Amd. Compl. ¶ 59.

On November 5, 2003, ENGC, BECO's assignee, filed its own complaint in this Court, seeking to recover "significant damages" allegedly caused by DOE's delay in beginning SNF acceptance. ENGC Compl. ¶ 1. These damages include the costs that ENGC allegedly incurred to provide for "extended on-site storage" of SNF as a result of the breach. ENGC Compl. ¶ 21. ENGC also claimed that it had, and continues to incur, damages, "including but not limited to

regulatory costs associated with efforts to ensure sufficient on-site storage capacity or alternative off-site storage capacity to permit continued operation of its nuclear plant." Id.

## DISCUSSION

### I. CONSOLIDATION IS APPROPRIATE UNDER THE CIRCUMSTANCES BECAUSE BOTH CASES INVOLVE MULTIPLE COMMON FACTUAL AND LEGAL ISSUES, AND, IN THE ABSENCE OF CONSOLIDATION, THERE IS A SUBSTANTIAL RISK OF INCONSISTENT JUDGMENTS BETWEEN THE CASES

#### A. Standards For Consolidation

Motions to consolidate are governed by RCFC 42, which provides that, when actions involve a common question of law or fact, the Court may consolidate the actions:

> When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all matters in issue in the actions; it may order all the actions consolidated; and it may make any such orders concerning proceedings therein as may tend to avoid unnecessary costs or delays.

In determining whether consolidation is appropriate, the Court must weigh the interest of judicial economy against the potential for delay, confusion, and prejudice that may result from consolidation. See Karuk Tribe of California v. United States, 27 Fed. Cl. 429, 433 (1993). Indeed, "[o]ne of the primary objectives of consolidation is to prevent separate actions from producing conflicting results, which can occur when both cases require judicial determinations of the same facts." Id. (quoting Bank of Montreal v. Eagle Assocs., 117 F.R.D. 530, 532 (S.D.N.Y. 1987); see Cable Belt Conveyors, Inc. v. Alumina Partners of Jamaica, 669 F. Supp. 577, 581 (S.D.N.Y. 1987) (consolidation was appropriate where different factual findings between the two cases could result in inconsistent damages awards).

Courts have held that, where two plaintiffs have sued the same defendant, alleging the same misconduct, and answered with the same defenses, the two cases share "common issues of law and fact," justifying consolidation. Harris v. L&L Wings, Inc., 132 F.3d 978, 981 n.2 (4th Cir. 1997); see Allfirst Bank v. Progress Rail Serv. Corp., 178 F. Supp. 2d 513, 520 (D. Md. 2001) (where the parties are the same, the claims and defenses are identical, and the same contract must be construed in each case, that consolidation is appropriate).

The decision whether to consolidate two cases is within the discretion of the Court. Karuk Tribe, 27 Fed. Cl. at 433; see Entergy Nuclear Indian Point 2, LLC v. United States, 62 Fed. Cl. 798, 802 (2004). Moreover, the Court may order consolidation despite the opposition of the parties. See St. Bernard Gen. Hosp., Inc. v. Hospital Serv. Assoc., 712 F.2d 978, 989 (5th Cir. 1983); see Entergy Nuclear Indian, 62 Fed. Cl. at 802. "The court should take the positions of the parties into account in its analysis but need not accord the parties' views dispositive weight." Entergy Nuclear Indian, 62 Fed. Cl. at 802.

### B. BECO And ENGC's Cases Satisfy The Criteria For Consolidation

#### 1. BECO And ENGC's Cases Share Common Issues Of Fact And Law

It is beyond dispute that ENGC's and BECO's cases share common issues of fact and law. Indeed, these two cases involve the very same contract, the same nuclear power facility, and the same alleged breach of contract. As noted above, BECO originally held the Standard Contract at issue in this case, but assigned that contract to ENGC on July 13, 1999. Now, both BECO and ENGC are suing the Government for damages allegedly resulting from the same partial breach of that single contract.

BECO and ENGC may claim that their individual damages theories are different and distinct and that, therefore, the Court should not consolidate the two cases. Any such assertion would be untrue. In its complaint, BECO asserts that ENGC's recognition that significant on-site SNF storage costs would be imminently necessary at Pilgrim lowered the perceived value of the asset. Id. ¶¶ 63-67. BECO alleges that, "[o]n information and belief, Entergy factored into its valuation and reduced the price for Pilgrim to reflect all known and anticipated additional expenses associated with on-site storage of SNF and future Nuclear Waste Fund fees announced by DOE in the 1998 DOE Plan." Id. ¶ 69. BECO then asserts that it should recover the diminished value that it received upon its sale of Pilgrim as damages in this case.

Conversely, ENGC is seeking to recover as damages in its litigation all of the costs that it allegedly incurred and will incur in storing SNF as a result of DOE's delays. That is, even though (according to BECO) ENGC has received compensation from BECO – in the form of a reduced purchase price – for DOE's delay in beginning SNF acceptance and was allegedly able to compensate itself, at least in part, for continuing additional SNF storage costs through that reduced purchase price, ENGC is seeking to recover all of those same costs from DOE in its litigation. As a result, BECO and ENGC are both claiming extensive damages from the United States based upon conflicting theories of recovery. If both plaintiffs' claims were granted, the United States would pay damages twice for the same partial breach of contract under the same Standard Contract, based upon inconsistent theories of recovery. That type of double liability would be inappropriate, and the possibility of that result is eliminated if these cases are consolidated.

Even if BECO or ENGC could validly assert that their cases are somehow not seeking inconsistent or duplicative damages recoveries, the fact that the plaintiffs assert different legal theories based upon the same facts does not justify the denial of a motion to consolidate. See Farrell v. American Flyers Airline Corp., 42 F.R.D. 341, 342 (S.D.N.Y. 1967). In Mylan Pharmaceuticals Inc. v. Henney, 94 F. Supp. 2d 36 (D.D.C. 2000), rev'd on other grounds sub nom. Pharmachemie B.V. v. Barr Laboratories, Inc., 276 F.3d 627 (D.C. Cir. 2002), two generic drug manufacturers brought separate lawsuits challenging the Food and Drug Administration's ("FDA") exclusivity determination in favor of another generic drug manufacturer. One manufacturer sought to enjoin the FDA from imposing an "indefinite delay" on the effective date of a particular drug, while the other manufacturer, in addition to seeking to enjoin the FDA, also sought entitlement to an exclusivity incentive for marketing its drug. The FDA sought to consolidate the two drug manufacturers' cases into a single lawsuit, and the manufacturer's opposed the consolidation motion upon the grounds that they demanded different forms of relief. The court rejected this argument, concluding that consolidation was appropriate and noting that "plaintiffs' request for different forms of relief does not vitiate the propriety of consolidation, but rather, consolidation is proper to any or all matters in issue which are common." Id. at 44 (emphasis in original).

Similarly, in Karuk Tribe of California v. United States, 27 Fed. Cl. 429, 431 (1993), an Indian tribe and individual members of another Indian tribe each sued the Government, alleging a taking of a particular Indian reservation. The Court granted the Government's motion for consolidation, explaining as follows:

> Here, the plaintiffs in each case allege the same government acts created property interests in the same land, and both allege Fifth Amendment takings arising out of the enactment of the Settlement Act. These are common questions of mixed law and fact. It is true that the court will have to hear different evidence to decide factually whether each plaintiff had a vested right in the former Hoopa Valley Reservation, but these individual issues do not predominate over the common issues. There is no reason to believe that the individual issues will cause undue delay and prejudice. Because both cases present the same legal questions and arise out of substantially the same facts, this court grants defendant's motion to consolidate.

Id. at 433 (citations omitted).

Here, not only do these two cases share the exact same factual basis, but they share many of the same issues of law. For example, the Court will have to determine the scope and validity of BECO's assignment of the Standard Contract to ENGC. Although contractors typically are prohibited by statute from assigning contracts or claims against the Government to a third party, see 31 U.S.C. § 3727 & 41 U.S.C. § 15 (2004), the NWPA, 41 U.S.C. §§ 10101-10270, contains a specific assignment provision providing that "[t]he rights and duties of a party to a contract entered into under this section may be assignable with transfer of title to the spent nuclear fuel or high-level radioactive waste involved." 42 U.S.C. § 10222(b)(3). Depending upon the Court's decision upon an assignment issue in Rochester Gas & Electric Co. v. United States, No. 04-118C (Fed. Cl.), the Court may have to determine the scope and validity of this assignment and, specifically, will have to determine which claims, if any, belong to BECO and which claims, if any, belong to ENGC.

Moreover, by defining the meaning of the statutory assignment provision (which was incorporated into the Standard Contract), and by defining the scope of the assignment, the Court

will be able to ensure that the two plaintiffs' damages claims do not overlap; that no duplicative damages recovery occurs; that the two plaintiffs do not prevail (to the Government's prejudice) upon conflicting interpretations of the Government's obligations under the single contract at issue here; and that any "diminution in value" award to BECO, which BECO seeks in its complaint, is somehow accounted for and offset against any award to ENGC, which, if it received its own damages award, would be the ultimate beneficiary of that temporary "diminution in value."

The factual overlap between the two cases is demonstrated in part by the fact that many of the witnesses in both cases will be the same. For example, with respect to BECO's diminution in value claim, it is highly likely that it will be necessary to depose ENGC employees to determine whether the Government's breach played any role in the price that ENGC ultimately paid for the utility. Moreover, if discovery in the other SNF cases is any indication, it is probable that the Government witnesses will be the same in both cases. The Government's witnesses will have no knowledge concerning BECO and ENGC's specific damages. However, Government witnesses have been deposed in the other SNF cases upon issues such as rate and schedule of acceptance, and the status of Greater Than Class C radioactive waste ("GTCC"). Consequently, not only is there a factual overlap between the two cases, but it also is anticipated that many of the witnesses will be the same in both cases.

Moreover, many of the legal defenses raised by the Government apply with equal force to both BECO and ENGC. For example, as noted above, both BECO and ENGC are claiming damages for the costs associated with storing SNF. However, whether either of the plaintiffs have incurred damages associated with the cost of storing SNF turns in part upon the determination of the rate and schedule of SNF acceptance. Absent consolidation, there is the

potential that the Court could determine different rates of acceptance, even though the same contract is at issue in two cases, leading to inconsistent judgments in the two cases.

Similarly, it is anticipated that the Government will assert as a defense that the Standard Contract does not cover the disposal of GTCC and, consequently, that any costs associated with SNF storage would have been incurred anyway. Similarly, because DOE is not necessarily obligated to accept failed fuel under the same schedule as standard SNF, see 10 C.F.R. § 961.11, Art. VI.A.2(b), the plaintiffs cannot recover as damages costs that they would have incurred for storing failed fuel regardless of DOE's breach. Similarly, another likely defense that the Government will raise involves the canistering of the SNF. Under the Standard Contract, fuel that has been canistered may be removed from the approved acceptance schedule for standard SNF and characterized as non-standard fuel, see 10 C.F.R. § 961.11, Art. VI.A.2(b) & App. E, which could affect the schedule upon which DOE was obligated to accept BECO/ENGC's SNF. Again, different assumptions and findings by different judges would create a risk of inconsistent judgments. All of these issues directly affect both the SNF storage activities in which the contract holder would have to engage regardless of DOE's delay in beginning SNF acceptance. Accordingly, whether the claim is one for additional on-site storage costs or for the effect upon sales price resulting from the potential future need to incur additional on-site storage costs, the issues in these cases are highly duplicative and require a consistent resolution. Therefore, based upon the numerous common issues of fact and law, consolidation of these two cases would greatly promote judicial efficiency.

2. Neither BECO Nor ENGC Would Be Prejudiced By Consolidation

Not only would consolidation promote judicial efficiency under the circumstances, but consolidation would not prejudice either BECO or ENGC. Both cases are in the same phase of pretrial procedure, and there is little, if any, risk of delay in either case should they be consolidated. The Court issued its decision upon the Government's dispositive motion in Boston Edison on February 15, 2005, and it issued its decision upon the parties' motions in Entergy Nuclear Generation on March 3, 2005. In response to a prior motion to consolidate two other SNF cases, this Court found that "[t]he strongest factor weighing against consolidation at this juncture is the divergent procedural posture of the cases." Entergy Nuclear Indian, 62 Fed. Cl. at 803. However, in BECO's and ENGC's cases, the current posture of the cases is identical. Accordingly, the Court's concerns in considering the Government's consolidation motion in Entergy Nuclear Indian are not present here.

Moreover, consolidation of these two cases would not result in any confusion. Indeed, consolidation would minimize potential confusion by allowing consideration of the entire factual background of this contract in a single proceeding. As mentioned above, it is anticipated that many of the same witnesses would be utilized in both cases. In fact, most of the discovery relating to BECO's diminished value claim – that is, its claim that ENGC paid less than it would have paid had DOE not breached the contract – will involve ENGC, including records regarding ENGC's belief as to whether it was paying a reduced price for BECO's facility as a result of DOE's breach. Therefore, there would be little, if any, prejudice to either BECO or ENGC if consolidation is granted.

3. The Government Will Be Heavily Prejudiced If The Two Cases Are Not Consolidated

In fact, if consolidation is not granted, the Government would be prejudiced, as it would force the Government to expend significant judicial resources trying separately two substantially similar cases with identical facts and conflicting damages theories and to risk the possibility of inconsistent judgments based upon two cases that share the same factual predicate and the same legal issues. It would require the Government to attempt to take third-party discovery from ENGC in BECO's case and from BECO in ENGC's case. It would require the Government to attempt to account for BECO's diminished value arguments in presenting its evidence in ENGC's case and ENGC's apparent denial that it paid a reduced price for BECO's assets in BECO's case. The Government should not have to risk the possibility of inconsistent and duplicative damages awards. Under these circumstances, consolidation of these two cases is appropriate.

II. IF THE COURT DECLINES TO CONSOLIDATE THESE CASES, THE COURT SHOULD ISSUE A SUMMONS TO JOIN ENGC AS A THIRD-PARTY DEFENDANT IN BECO'S CASE AND, FURTHER, SHOULD ISSUE RCFC 14(b) NOTICES TO ENGC AND BECO

If the Court declines to consolidate BECO's and ENGC's cases, defendant respectfully requests that, pursuant to RCFC 14(a), the Court to issue a summons to join ENGC as a third-party defendant in Boston Edison. The summons is for the purpose of answering the contingent claim of the United States for the recovery of any monies that may be paid by the United States to BECO with respect to the transaction or matter which constitutes the subject matter of the pending suit against the United States. Specifically, to the extent that the United States is required to pay any money to BECO upon its claim that ENGC, as a means of compensating itself for the additional on-site storage costs it might incur because of DOE's

alleged breach, paid a diminished price for Pilgrim, the United States should be able to recoup that money against any damages award that the United States is required to pay to ENGC upon ENGC's claims for the costs of additional on-site storage.[4]

In addition, defendant respectfully requests that the Court issue notice to ENGC in the Boston Edison case, and to BECO in the Entergy Nuclear Generation case, pursuant to RCFC 14(b) and the Contract Settlement Act, 41 U.S.C. § 114(b). Under 41 U.S.C. § 114(b), the Court may notify any party having a possible interest in any pending suit or proceeding to appear and assert or defend its interests. Should a notified party fail to appear, "any and all claims or interests in claims of any such person against the United States, in respect to the subject matter of such suit or proceeding, shall forever be barred." 41 U.S.C. § 114(b); see Del-Rio Drilling Programs, Inc. v. United States, 17 Cl. Ct. 844, 849 (1989) ("third parties who fail to appear may nonetheless be bound in a later suit in another court by certain determinations made in this court without the third party's presence"). Notice is appropriate where third parties "hav[e] possible interests [in] any suit or proceeding of any nature." 41 U.S.C. § 114(b). "The rationale behind the issuance of a notice is the prevention of numerous proceedings and determinations on an identical set of facts." Philadelphia Suburban Corp. v. United States, 211 Ct. Cl. 354, 355 (1976). "Thus it is in furtherance of the conservation of judicial time and effort that the [Court] determines that notice shall issue where interest is apparent." Id. "Should a noticed person

---

[4] Because consideration of our request to join ENGC as a third-party defendant in the Boston Edison case will be unnecessary if the Court consolidates BECO's and ENGC's cases, we respectfully request that the Court defer until 10 days after a decision on this motion the Government's obligation pursuant to RCFC 14(a)(2) to provide "an appropriate pleading setting forth the claim or contingent claim which it is asserting against such third person." If the Court grants the Government's motion to consolidate, the work necessary to create such a pleading will be unnecessary.

decline to appear . . . he cannot be forced so to do, though he may nevertheless be bound, in a later suit in another court, by certain determinations of this court." Uram v. United States, 216 Ct. Cl 418, 420 (1978). Here, for the reasons previously explained, both BECO and ENGC will involve numerous factual issues that are either identical or will substantially overlap. Issuance of notice pursuant to RCFC 14(b) and the Contract Settlement Act will reduce the likelihood of the need for duplicative fact-finding proceedings and the possibility of conflicting factual findings.

## CONCLUSION

For the foregoing reasons, we respectfully request that the Court grant the Government's motion to consolidate the Boston Edison and Entergy Nuclear cases. If the Court declines to consolidate these cases, we respectfully request that the Court in Boston Edison issue a summons to ENGC, that the Court in Boston Edison issue notice pursuant to RCFC 14(b) and the Contract Settlement Act to ENGC, and that the Court in Entergy Nuclear Generation issue notice pursuant to RCFC 14(b) and the Contract Settlement Act to BECO.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Harold D. Lester, Jr
HAROLD D. LESTER, JR.
Assistant Director

s/ Alan J. Lo Re
ALAN J. LO RE
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 305-7562
Fax: (202) 307-2503

Attorneys for Defendant

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585
Washington, D.C. 20585

April 11, 2005

CERTIFICATE OF FILING

I hereby certify that on April 11, 2005, a copy of the foregoing "DEFENDANT'S MOTION TO CONSOLIDATE OR, IN THE ALTERNATIVE, FOR ISSUANCE OF A SUMMONS PURSUANT TO RCFC 14(a) AND NOTICE PURSUANT TO RCFC 14(b)" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Harold D. Lester, Jr.