**No. 99-447C**
**(Judge Lettow)**

---

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**BOSTON EDISON COMPANY,**
**Plaintiff,**

**v.**

**THE UNITED STATES,**
**Defendant.**

---

# PLAINTIFF BOSTON EDISON COMPANY'S RESPONSE TO DEFENDANT'S MOTION TO CONSOLIDATE OR, IN THE ALTERNATIVE, FOR ISSUANCE OF A SUMMONS PURSUANT TO RCFC 14(a) AND NOTICE PURSUANT TO RCFC 14(b)

---

**Richard J. Conway**
**DICKSTEIN SHAPIRO MORIN**
**& OSHINSKY LLP**
**2101 L Street, NW**
**Washington, DC 20037**
**Tel: (202) 785-9700**
**Fax: (202) 887-0689**

**Attorney for Plaintiff**

**Of Counsel:**
**Nicholas W. Mattia, Jr.**
**Bradley D. Wine**
**Jeffrey P. Becherer**
**DICKSTEIN SHAPIRO MORIN**
**& OSHINSKY LLP**
**2101 L Street, NW**
**Washington, DC 20037**

**Neven Rabadjija, Esq.**
**Associate General Counsel**
**NSTAR Electric & Gas Corporation**
**800 Boylston Street, 17th Floor**
**Boston, MA 02199-0228**

**April 28, 2005**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..... ii

INTRODUCTION ..... 1

BACKGROUND ..... 3

ARGUMENT ..... 5

I. WHEN DISTINCT ISSUES BETWEEN TWO CASES PREDOMINATE, CONSOLIDATION SHOULD BE DENIED ..... 5

II. THERE IS NO DISCERNABLE SIMILARITY BETWEEN THE ISSUES IN BOSTON EDISON AND ENGC ..... 9

III. THE GOVERNMENT'S BASES FOR SNF CASE CONSOLIDATION HAVE PREVIOUSLY BEEN REJECTED ..... 14

IV. BOSTON EDISON WOULD BE SEVERELY PREJUDICED BY CONSOLIDATION ..... 16

V. THE GOVERNMENT HAS SUCCESSFULLY CONCLUDED OTHER SNF LITIGATION WITHOUT CONSOLIDATION ..... 17

VI. THE GOVERNMENT'S REQUEST FOR A SUMMONS PURSUANT TO RCFC 14(a) AND A NOTICE PURSUANT TO RCFC 14(b) ALSO SHOULD BE DENIED ..... 19

CONCLUSION ..... 21

# TABLE OF AUTHORITIES

Page

Cases:

*Allfirst Bank v. Progress Rail Services Corp.*, 178 F. Supp. 2d 513 (D. Md. 2001) .................... 8

*Applegate v. United States*, 35 Fed. Cl. 406 (1996) .................... 14

*Boston Edison Co. v. United States*, 64 Fed. Cl. 167 (2005) .................... 2, 11, 12, 13

*Boston Edison Co. v. United States*, No. 99-447C (Fed. Cl. filed July 12, 1999) .................... 15

*Cable Belt Conveyors, Inc. v. Alumina Partners of Jamaica*, 669 F. Supp. 577 (S.D.N.Y. 1987) .................... 7

*Cavin v. United States*, 956 F.2d 1131, 1135 (Fed. Cir. 1992) .................... 14

*Cont'l Bank & Trust Co. v. Ol. s. E. D. Platzer*, 304 F. Supp. 228 (S.D. Tex. 1969) .................... 6-7

*Creppel v. United States*, 33 Fed. Cl. 590 (1995) .................... 14

*Del-Rio Drilling Programs, Inc. v. United States*, 17 Ct. Cl. 844 (1989) .................... 19

*Entergy Nuclear Generation Co. v. United States*, 64 Fed. Cl. 336 (2005) .................... 2

*Entergy Nuclear Generation Co. v. United States*, No. 03-2626C (Fed. Cl. filed Nov. 4, 2004) .................... 1

*Entergy Nuclear Indian Point 2, LLC v. United States*, 62 Fed. Cl. 798 (2004) .................... 15

*Entergy Nuclear Indian Point 2, LLC v. United States*, No. 03-2622C (Fed. Cl. filed Nov. 4, 2004) .................... 2

*Entergy Nuclear Indian Point 2, LLC v. United States*, No. 03-2622C (Fed. Cl. filed Nov. 5, 2003) .................... 1

*Exelon Generation Co. LLC v. United States*, No. 04-102C (Fed. Cl. filed Jan. 28, 2004) .................... 17, 18, 19

*Hasman v. G.D. Searle & Co.*, 106 F.R.D. 459 (E.D. Mich. 1985) .................... 6

*Illinois v. United States*, 15 Cl. Ct. 399 (1988) .................... 14

*Indiana Michigan Power Co. v. United States*, No. 98-486C (Fed. Cl. filed May 25, 2004) .................... 16

*Indiana Michigan Power Co. v. United States*, No. 98-486C (Fed. Cl. filed May 21, 2004) .................... 5

*Karuk Tribe v. United States*, 27 Fed. Cl. 429 (1993) .................... 7

*Molever v. Levenson*, 539 F.2d 996 (4th Cir. 1976) .................... 6

*Philadelphia Suburban Corp. v. United States*, 211 Ct. Cl. 354 (1976) .................... 19

*Prudential Ins. Co. of Am. v. Marine Nat'l Exch. Bank*, 55 F.R.D. 436 (E.D. Wis. 1972) .................... 6

*Pub. Water Supply Dist. No. 3 v. United States*, 135 F. Supp. 887 (Ct. Cl. 1955) .................... 14

*Shump v. Balka*, 574 F.2d 1341 (10th Cir. 1978) .................... 6

Page

*Smith v. United States*, 28 Fed. Cl. 430, 436 (1993) .......... 14

*St. Bernard General Hospital, Inc. v. Hospital Service Ass'n of New Orleans, Inc.*, 712 F.2d 978 (5th Cir. 1983) .......... 8

*Sys. Fuels, Inc. v. United States*, No. 03-2623C (Fed. Cl. filed Apr. 20, 2005) .......... 14

*TVA v. United States*, No. 01-249C (Fed. Cl. filed June 2, 2004) .......... 16

*United States v. Dow*, 357 U.S. 17 (1958) .......... 14

*Uram v. United States*, 216 Ct. Cl. 418 (1978) .......... 20

*Yankee Atomic Elec. Co. v. United States*, No. 98-126C (Fed. Cl. filed Jan. 30, 2004) ... 2, 9, 15

*Yankee Atomic Elec. Co. v. United States*, No. 98-126C (Fed. Cl. filed Apr. 16, 2003) .......... 2

Statutes:

31 U.S.C. § 3727 .......... 15

42 U.S.C. §§ 10101 *et seq* .......... 1

Federal Rules:

Fed. R. Civ. P. 42(a) .......... 6

R. Ct. Fed. Cl. 14 .......... 1, 3, 20

R. Ct. Fed. Cl. 14(a) .......... 3, 19

R. Ct. Fed. Cl. 14(b) .......... 3, 19

Miscellaneous:

9 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2383 .......... 7

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **BOSTON EDISON COMPANY,** <br> **Plaintiff,** <br> **v.** <br> **UNITED STATES OF AMERICA,** <br> **Defendant.** | ) | **No. 99-447C (J. Lettow)** |

**PLAINTIFF BOSTON EDISON COMPANY'S RESPONSE TO DEFENDANT'S MOTION TO CONSOLIDATE OR, IN THE ALTERNATIVE, FOR ISSUANCE OF A SUMMONS PURSUANT TO RCFC 14(a) AND NOTICE PURSUANT TO RCFC 14(b)**

## INTRODUCTION

Plaintiff Boston Edison Company ("Boston Edison") opposes the Government's Motion to Consolidate this case with *Entergy Nuclear Generation Co. v. United States*, No. 03-2626C (Fed. Cl. filed 2003) and its alternative motion to seek joinder of parties in each of their respective cases pursuant to Rule 14 of the Rules of the Court of Federal Claims ("RCFC").[1] Boston Edison and Entergy Nuclear Generation Co. ("ENGC") are plaintiffs in among the more than sixty (60) cases currently pending in this Court arising from the Department of Energy's complete failure to comply with the requirements of the Nuclear Waste Policy Act of 1982, 42 U.S.C. §§ 10101 *et seq.* ("NWPA" or "the Act"), and related contracts, to commence disposal of spent nuclear fuel ("SNF") by January 1998 from more than 100 nuclear electric power plants. Although the Government has

[1]This Opposition is being concurrently filed in *Entergy Nuclear Generation Co. v. United States*, No. 03-2626C (Fed. Cl.).

sought SNF case consolidation over the objection of numerous plaintiffs in more than twenty of these cases, none of these requests has been granted.

This Court has on multiple occasions rejected the Government's arguments to stay, consolidate, or coordinate treatment of SNF cases.[2] In the particular instance of these two cases, the legal issues involved could not be more different, and the factual issues could not be more distinct. Far from conserving judicial resources or promoting the efficient administration of justice, consolidation of the cases would have exactly the opposite effect, requiring both Boston Edison and ENGC to litigate issues that are irrelevant to their respective cases. Moreover, Boston Edison's and ENGC's cases are in distinctly different procedural postures, the Government's claim to the contrary notwithstanding. In particular, the Court has entered partial summary judgment with respect to liability for ENGC, while Boston Edison's liability claim has yet to be resolved. *Entergy Nuclear Generation Co. v. United States*, 64 Fed. Cl. 336 (2005) (plaintiff's motion for partial summary judgment granted); *Boston Edison Co. v. United States*, 64 Fed. Cl. 167 (2005) (plaintiff's motion for partial summary judgment denied). Boston Edison and ENGC therefore will be pursuing significantly different issues during the course of discovery.

Moreover, consolidation would force Boston Edison to litigate issues that have nothing to do with the merits of its case, issues that are much more complex, issues that are dependent on events that have not yet occurred and may not occur for years to come (if ever), and issues that will take much longer to litigate at much greater (and unnecessary) expense to Boston Edison. The fair and efficient administration of justice

---

[2] *See, e.g., Yankee Atomic Elec. Co. v. United States*, No. 98-126C (Fed. Cl. filed Apr. 16, 2003); *Yankee Atomic Elec. Co. v. United States*, No. 98-126C (Fed. Cl. filed Jan. 30, 2004); *Entergy Nuclear Indian Point 2, LLC v. United States*, No 03-2622C (Fed. Cl. filed Nov. 4, 2004).

clearly supports allowing the Boston Edison and ENGC matters to proceed on independent and unconsolidated tracks. Accordingly, Boston Edison respectfully requests that the Court deny the Government's Motion with respect to consolidation.

The Government's request for the issuance of a summons pursuant to RCFC 14(a) and notice pursuant to RCFC 14(b) should also be denied. The Government's present use of Rule 14 is nothing more than an indirect attempt to achieve consolidation through an improper use of the Court's joinder rules. The joinder of parties pursuant to RCFC 14 is appropriate when a plaintiff or the Government seek to join a party that is not already before the Court. That is simply not the case with respect to Boston Edison and ENGC. Accordingly, Boston Edison respectfully requests that the Court deny the Government's Motion with respect to RCFC 14(a) and (b) as well.

## BACKGROUND

Boston Edison was the sole owner and operator of the Pilgrim Nuclear Power Station in Plymouth, Massachusetts ("Pilgrim") until the sale of that facility on July 13, 1999. Am. Compl. ¶¶ 2, 4. The NWPA obligated the Department of Energy ("DOE") to enter into a standard contract with each of the nation's commercial nuclear power plant owners, including Boston Edison, requiring DOE to commence the acceptance and permanent disposal of the SNF from these nuclear facilities by January 31, 1998, in return for payments of substantial fees by the owners into a Nuclear Waste Fund created by the NWPA. Boston Edison and DOE executed the Standard Contract on June 17, 1983 ("Standard Contract"). *Id.* at ¶ 31.

Despite collecting in excess of $19 *billion* directly and through earned interest from the nation's nuclear utilities, and more than $89 million from Boston Edison alone, DOE did not commence SNF disposal by the statutory deadline mandated by the

NWPA, and to this day is unable to say when – if ever – such disposal will actually begin. On July 13, 1999 more than a year-and-a-half after DOE repudiated its SNF disposal obligations, Boston Edison sold Pilgrim to ENGC. As part of the sales transaction for Pilgrim, Boston Edison assigned its DOE Standard Contract (which was then in breach) to ENGC, specifically reserving all claims against DOE related to breaches of the Standard Contract up to the closing date of the sale. In particular, Boston Edison retained "any claims of [Boston Edison] related or pertaining to the Department of Energy's defaults under the DOE Standard Contract accrued as of the Closing Date, whether relating to periods prior to or following the closing date." Purchase and Sale Agreement at ¶2.2(g). Boston Edison informed the Government of the claims reservation language and the assignment of the Boston Edison Standard Contract on the terms specified by letter on July 13, 1999.

As a direct and proximate result of DOE's failure to perform its statutory and contractual obligations, Boston Edison suffered significant damages. These damages fall into the following general categories. First, Boston Edison suffered significant diminution in the value of (i) Boston Edison's Standard Contract (in which it had already invested more than $89 million), and (ii) the Pilgrim nuclear assets with which the contract was inextricably linked, causing Boston Edison to realize significantly less value in the sale of Pilgrim than would have been the case had DOE met its obligations under the NWPA and the Standard Contract. Additionally, as a result of DOE's unconstitutional taking and breach of the Standard Contract, Boston Edison suffered damages relating to DOE's unauthorized and unlawful fee collection practices occurring prior to the sale of Pilgrim.

Boston Edison has pled damages that were caused both by breaches of its Standard Contract, as well as its entitlement to just compensation arising from the Government's unconstitutional taking of its property occurring up to the date of the sale of the plant. These can be readily measured by the difference between the value Boston Edison received when it assigned its Standard Contract and other nuclear assets, and what it would have received had DOE not breached the Standard Contract and engaged in violations of the NWPA. ENGC, on the other hand, seeks to recover for future costs incurred after the sale of the facility because of the Government's ongoing breach of the contract. ENGC evidently seeks to measure its damages based on future events related to the starting date when DOE actually begins to accept SNF for disposal, and the pace with which disposal occurs. These issues are discussed more fully in *Indiana Michigan Power Co. v. United States*, No. 98-486C (Fed. Cl. filed May 21, 2004) (Hodges, J.), the first post-trial opinion in an SNF case to be issued by this Court.

## ARGUMENT

### I. WHEN DISTINCT ISSUES BETWEEN TWO CASES PREDOMINATE, CONSOLIDATION SHOULD BE DENIED

In SNF cases, requests by the Government for consolidation, stays, and coordinated treatment have been repeatedly denied because the individual circumstances of each particular plaintiff are different and require separate treatment. In the particular instance of the Boston Edison and ENGC claims, and as discussed in more detail in Section II, *below*, the dissimilarities between these particular two claims are more distinct, more numerous, and more significant than most other SNF cases. This is because Boston Edison's damages are fixed and can be determined from the dates of the Government's acts complained of and the date in 1999 when its Standard Contract losses and damages were liquidated. ENGC's claims, on the other hand, are

more in line with those in other SNF cases brought by current nuclear plant owner/operators saddled with ongoing SNF custody and management responsibilities and are unliquidated and dependent on mostly future events.

When applying Federal Rule of Civil Procedure 42(a) to particular cases, the threshold inquiry is whether common questions of law or fact exist that warrant consolidation of the actions. *See Hasman v. G.D. Searle & Co.*, 106 F.R.D. 459, 460 (E.D. Mich. 1985) (where the court denied defendant's motion to consolidate because cases involved predominantly individual issues). Although the Government here asserts that there are such common questions, the only alleged common "issues" the Government is able to point to relate to its standard list of forward-looking issues such as rate and timing of SNF acceptance, the status of Greater Than Class C radioactive waste ("GTCC"), and canistering of SNF. Motion at 10. But those issues are manifestly not part of Boston Edison's case, as discussed in greater detail in Section II, *below*.

When cases involve some common issues, but individual legal and/or factual issues predominate, consolidation also should be denied. *See Shump v. Balka*, 574 F.2d 1341 (10th Cir. 1978) (court denied motions for consolidation because parties sought different types of damages); *see also Molever v. Levenson*, 539 F.2d 996 (4th Cir. 1976) (court reversed the lower court's decision to consolidate because the claims stated four separate causes of action). Consolidation is not justified nor required simply because the actions include some common questions of fact or law. *See Prudential Ins. Co. of Am. v. Marine Nat'l Exch. Bank*, 55 F.R.D. 436, 437 (E.D. Wis. 1972) (denying defendant's motion for consolidation, the court observed that "the fact that a common question of law exists does not alone justify consolidation in the absence of other factors which would promote 'trial convenience and economy in administration.'"); *see also Cont'l*

*Bank & Trust Co. v. Ol. s. E. D. Platzer*, 304 F. Supp. 228, 229 (S.D. Tex. 1969) (holding the mere presence of a common question of law or fact does not require consolidation); 9 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2383, at 439-40 (same).

The Government has failed to put forward any rational basis for consolidation of the present cases. Indeed, the significant factual and legal distinctions between Boston Edison's and ENGC's cases vastly outweigh any similarities. The cases cited by the Government's Motion speak only to consolidation in instances where substantially identical facts are involved. They do not suggest that cases with as few substantive legal similarities as Boston Edison and ENGC should be consolidated. For instance, while the courts in *Karuk Tribe v. United States*, 27 Fed. Cl. 429 (1993), and *Cable Belt Conveyors, Inc. v. Alumina Partners of Jamaica*, 669 F. Supp. 577 (S.D.N.Y. 1987), ultimately consolidated the cases involved, both of those cases presented such scenarios as claimants asserting entitlement to the same physical property, or where the factual issues giving rise to both disputes were found to be "identical." Motion at 4, 5, 7.

*Karuk* and *Cable Belt* are clearly not germane to the claims of Boston Edison and ENGC since: (1) the Government's failure to commence SNF disposal is not disputed; (2) the elements of damages as sought by Boston Edison and ENGC are vastly different and clearly distinguishable, as to both substance and time, from one another; (3) the Government's standard rate of acceptance-type defenses may or may not pertain to the ENGC case, but certainly not to Boston Edison's; (4) there are no competing claims for the same or finite dollars in the Judgment Fund; and (5) the two cases are in two distinct procedural postures. For all of these reasons, Boston Edison's claims are both legally and factually distinct from those of ENGC.

The Government also cites *Allfirst Bank v. Progress Rail Services Corp.*, 178 F. Supp. 2d 513 (D. Md. 2001), for the proposition that consolidation is appropriate when two plaintiffs sue the same defendant. Motion at 5. The Court in *Allfirst*, however, consolidated the cases only after finding that the suits were "mirror image[s]" of one another. 178 F. Supp. 2d at 520. Once again, even if this Court were to find some factual similarities between these two cases, they are not sufficiently similar to warrant consolidation. Indeed, the Government's arguments would require the consolidation of *every* SNF case being heard by the Court, a request that has been consistently and repeatedly rejected as being inconsistent with the fair and efficient administration of justice.

Finally, the Government cites *St. Bernard General Hospital, Inc. v. Hospital Service Ass'n of New Orleans, Inc.*, 712 F.2d 978 (5th Cir. 1983), for the principle that the Court may consolidate cases in face of opposition from one of the parties. Motion at 5. Yet the Government's Motion fails to note that *St. Bernard* ultimately *affirmed* the lower court's *denial* of the plaintiff's motion to consolidate, primarily because the cases were at different stages of preparedness for trial. Similarly, Boston Edison asks this Court to deny consolidation for the independent reason that the large and voluminous issues to be determined in ENGC would unavoidably forestall the development of Boston Edison's case were the cases consolidated. As discussed in Section IV, *below*, consolidating Boston Edison's and ENGC's cases would cause Boston Edison to face an indeterminable amount of delay, incur the expense of litigating issues that are not related to Boston Edison's damages theories, and otherwise overly complicate Boston Edison's straightforward claims.

## II. THERE IS NO DISCERNABLE SIMILARITY BETWEEN THE ISSUES IN BOSTON EDISON AND ENGC

While the standard contracts in all the SNF cases are virtually identical, this fact alone does not support consolidation. Indeed, if it did, the Government would have been successful in its multiple failed attempts to consolidate all SNF cases.[3] Likewise, with respect to Boston Edison and ENGC, the factual overlap between the two cases (i.e. the contract and the facility) is vastly outweighed by the myriad of issues distinguishing the two cases. A compelling rationale weighing against consolidation is the absolute distinction between the damages (and the proofs required thereof) being sought by a seller of a nuclear facility (such as Boston Edison), whose damages are clearly known and measurable as of the date of sale, and those being sought by a buyer (such as ENGC) whose measure of damages is based on events that will not occur until some time after the date of sale. Cases involving the same nuclear facility necessarily become quite different over different time periods due to such complex factors as the changing circumstances of DOE's communications with Standard Contract holders, the status of its waste program, court rulings as to permissible uses of the Nuclear Waste Fund, the Nuclear Regulatory Commission licensing status of the nuclear facility, and the remaining space available in the nuclear facility's spent fuel pool.

Given these distinctions, the Government has also recognized that any concern regarding overlapping or duplicative claims could be resolved by trying Boston Edison (and other sellers' claims) before addressing buyers' claims (including ENGC's).

[3] Chief Judge Damich has already denied consolidation of SNF cases based on the rationale that the Government intends to raise the same defenses in different cases, rejecting the Government's argument that multiple proceedings create a potential for variant rulings. *See, e.g., Yankee Atomic Elec. Co. v. United States*, No. 98-126C (Fed. Cl. filed Jan. 30, 2004).

Specifically, as the Government recently argued in a motion filed before Judge Christine Miller in the *Delmarva* matter,

> If, in fact, plaintiff is entitled to recover its 'diminished value' damages from the United States, it appears that the United States should, as part of any judgment in favor of [buyer] in [buyer's] lawsuit . . . be entitled to account for the reduced price that PSEG paid in that sale. . . . to eliminate the possibility that the United States could be found liable to two different sets of plaintiffs for the same damages.

Defendant's Motion for Leave to Defer Seeking Joinder of Third Parties in *Atl. City Elec. Co. v. United States*, No. 04-0036C, (Fed. Cl., filed Apr. 6, 2005), and in *Delmarva Power & Light Company v. United States*, No. 04-0034C (Fed. Cl., filed Apr. 6, 2005).[4] The ordering of sellers' and buyers' claims, *not consolidation*, is the proper way to address the Government's concerns, as its above-quoted motion recognizes. As such, the Government cannot credibly assert in this proceeding that Boston Edison and ENGC have legitimate overlapping or duplicative claims.

To the extent that any similarities exist among SNF claimants, it is due to the fact that the consequences of DOE's delays in commencing SNF disposal have occurred "horizontally" by year, rather than "vertically" by plant. This dynamic of the SNF cases is evidenced by one of the central features of the DOE's nuclear waste program, namely that Standard Contract holders with established SNF disposal rights in a particular year

---

[4] The Government incorrectly characterizes Boston Edison's claim as seeking a dollar-for-dollar correlation between the diminished value the Pilgrim facility suffered as a direct and proximate result of the Government's failure to dispose of Boston Edison's SNF and the discounted benefit ENGC received as a result thereof. To the contrary, the Government's breach had a direct impact on the entire nuclear industry and the Pilgrim auction process in particular, drastically reducing the number of bidders that participated in the auction. Amended Complaint ¶¶ 49-60. "[I]nitially ten prospective purchasers were interested in pursuing due diligence about Pilgrim, but, after diligence, only two submitted bids." *Boston Edison*, 64 Fed.Cl. at 182. Accordingly, the measure of Boston Edison's diminished value damages is *not* how much ENGC lowered its bid, but rather, the value Pilgrim would have garnered in a fully competitive auction but for the Government's breach.

for SNF from their facility's nuclear reactor would have the economic opportunity to exchange queue positions for disposal rights for significant value with other contract holders in a more exigent SNF disposal situation. Thus, the impact of the Government's failure to remove SNF no later than January 31, 1998 as required by the NWPA and the Standard Contract necessarily had different impacts on individual owners at different periods of time for each affected nuclear facility. This is certainly the case with respect to Boston Edison's and ENGC's claims as they relate to Pilgrim. As such, it follows that consolidation is inappropriate in this case.

Furthermore, once the issue of liability is determined these cases will deal almost exclusively with damages. As discussed in greater detail below, the damages of Boston Edison and ENGC are so distinct from one another that any effort to consolidate the two cases would confuse – not resolve – these critical distinctions. As a result of these critical differences, Boston Edison and ENGC will pursue different discovery issues regarding damages accordingly. Consolidation would therefore prejudice both Boston Edison and ENGC and would be inappropriate before the conclusion of discovery regarding damages.

Pursuant to its Amended Complaint, Boston Edison seeks recovery of damages for breaches and takings occurring prior to the assignment of its Standard Contract rights and other nuclear assets, while ENGC's damages occur from and after the date of assignment. As this Court recognized at an earlier hearing in this matter, separate parties may assert distinct damages claims based on the Government's continuing breach of the same Standard Contract: "[The selling and purchasing utility] could both rely on the same contract as a basis for damage claims, just for different periods. I think that's what they're trying to do." *See* Hearing Transcript, dated Mar. 16, 2004, at 27.

Elaborating further on the distinct nature of Boston Edison's damages claim, the Court noted

> In the present case, the government has not completed its repository, and it has failed in its disposal duties. As a result, the value of Boston Edison's property allegedly dropped. The option of getting another contractor to repair the damage is unavailable to Boston Edison because there is no other approved provider of disposal services in this highly regulated industry. Diminution in value is left as the appropriate damage assessment.

*Boston Edison*, 64 Fed. Cl. at 183. As this recent decision recognizes, the damages sought by Boston Edison are personal in nature and cannot therefore overlap with those claimed by ENGC.

Any common issues between these distinct claims are merely incidental to the necessarily different issues that are fundamental to the Court's ultimate damages determinations. ENGC seeks recovery for future SNF management costs that will be incurred at the Pilgrim facility in light of the indeterminate time and circumstances of DOE's future performance. There are no assertions as to these matters in Boston Edison's Complaint. Instead, Boston Edison seeks damages for the injury to its Standard Contract rights and its nuclear enterprise, including lost profits and diminished value, caused by the DOE breach and its fee-collection practices. Since these injuries occurred upon the sale of those assets in 1999, the actual future DOE performance at the core of ENGC's case is simply not relevant to Boston Edison.

As a seller of a nuclear facility, Boston Edison's damages are readily ascertainable as of the closing date of the sales transaction. Boston Edison's breach damages include a claim for diminished value that is generally the difference between the value Boston Edison received when it assigned its Standard Contract and its other nuclear assets, as distinguished from what it would have received had the DOE

adhered to its statutory and contractual obligations. By contrast, ENGC, as the current owner of Pilgrim, is necessarily dealing with ongoing issues linked to DOE's actual future performance, its future mitigation costs, and associated damages resulting from DOE's breach.

Because Boston Edison is a post-default assignor of Standard Contract rights, as opposed to an existing contract holder, its case will involve much different proofs than ENGC's case.[5] Since Boston Edison divested its nuclear assets, it is not concerned with (and does not seek damages based upon) DOE's actual future performance and the attendant rate of acceptance issues. This Court's opinion denying the Government's Motion to Dismiss makes it quite clear that Boston Edison's diminished value claim does not depend on a determination of when SNF moves from the Pilgrim site. *Boston Edison*, 64 Fed. Cl. at 182-84. Thus, the resources being allocated by the Government to the rate of acceptance issues in ENGC's case (and most of the other SNF cases) will not need to be diverted to, or duplicated in Boston Edison's case, because those issues are not relevant to Boston Edison's liability or damages theories. Since such allegations are absent from ENGC's case, Boston Edison's damages theories cannot be viewed as common, let alone similar enough to warrant consolidation.

There also need not be any concern as to an overlap between the two cases concerning the issue of Greater than Class C Waste ("GTCC"). This, like the issue of

---

[5] Boston Edison is unaware of any relevance that the rate of acceptance issue, as raised by the Government in ENGC's case, will have on Boston Edison's theories of liability or damages. As the rate of acceptance is not relevant to Boston Edison's claim of lost contract rights and diminished value, there is no basis to conclude that the Boston Edison and ENGC cases are substantially similar, or that their outcomes would result in inconsistent rulings by the Court. In fact, there is nothing intrinsically conflicting or duplicative about allocation of pre-sale and post-sale damages between a buyer and a seller in the context of a continuing failure to perform, since the two claims are temporally distinct.

rate of acceptance, is irrelevant because Boston Edison does not claim damages for GTCC.

Moreover, Boston Edison's takings claim provides an additional, unique reason to reject consolidation. To establish a prohibited taking, a claimant must demonstrate that it was the owner of property and that some portion of the property was taken for a public purpose. *Pub. Water Supply Dist. No. 3 v. United States*, 135 F. Supp. 887, 890 (Ct. Cl. 1955). Further, Boston Edison, as the owner of the property at the time of the taking, retained as a matter of law the right to bring a claim for an uncompensated taking in violation of the Fifth Amendment to the Constitution. *Id.* (to establish prohibited taking, claimant must demonstrate that it was owner of property and that some portion of property was taken for public purpose); *see also United States v. Dow*, 357 U.S. 17, 20 (1958) (Assignment of Claims Act prohibits voluntary transfer of takings claims); slip op. and order at 8, (Fed. Cl., Apr. 20, 2005) in *Sys. Fuels, Inc. v. United States*, No. 03-2623C, citing *Cavin v. United States*, 956 F.2d 1131, 1135 (Fed. Cir. 1992); *Applegate v. United States*, 35 Fed. Cl. 406, 419 (1996) (same); *Smith v. United States*, 28 Fed. Cl. 430, 436 (1993), *Illinois v. United States*, 15 Cl. Ct. 399, 410 (1988) ("For a party to allege that its property right has been taken, it must have owned the property a the time that the alleged taking occurred."); *Creppel v. United States*, 33 Fed. Cl. 590, 599-600 (1995) (same). In short, these claims are personal to Boston Edison and not transferable. 31 U.S.C. § 3727. As such, there are no "overlapping" or "common" issues between the claims being asserted by Boston Edison and ENGC.

## III. THE GOVERNMENT'S BASES FOR SNF CASE CONSOLIDATION HAVE PREVIOUSLY BEEN REJECTED

Chief Judge Damich has already denied consolidation of SNF cases based on the rationale that the Government intends to raise the same defenses in different cases,

rejecting the Government's argument that multiple proceedings create a potential for variant rulings. *See, e.g., Yankee Atomic Elec. Co. v United States*, No. 98-126C (Fed. Cl. filed Jan. 30, 2004). Further, perhaps one of the most recent opinions on consolidation was this Court's November 4, 2004 decision in *Entergy Nuclear Indian Point 2, LLC v. United States*, 62 Fed. Cl. 798 (2004). Similar to this case, the two cases before the Court for consolidation involved claims brought by two plaintiffs, the buyer and seller in one transaction involving the same nuclear facility. On the issue of consolidation, the Court held that consolidation should be denied due to, among other factors, the risk of prejudice by the delays that would result from consolidation. *Id.* at 803.

Although the Government has sought consolidation over the objection of SNF plaintiffs in more than twenty of these cases, none of these requests has been granted.[6] The fair and efficient administration of justice requires that the Boston Edison and ENGC cases also proceed independently.

[6] Order on Motion for Miscellaneous Relief, filed on Jan. 30, 2004 in: *Yankee Atomic v. United States*, No. 98-0126J; *Connecticut Yankee v. United States*, No. 98-0154J; *Maine Yankee Atomic v. United States*, No. 98-0474J; *Florida Power v. United States*, No. 98-0483; *Northern States v. United States*, No. 98-0484; *Duke Power v. United States*, No. 98-0485; *Indiana Michigan v. United States*, No. 98-0486R; *Sacramento Municipal v. United States*, No. 98-0488S; *Southern Nuclear v. United States*, No. 98-0614J; *Commonwealth Edison v. United States*, No. 98-0621E; *Boston Edison Co. v. United States*, No. 99-0447C; *GPU Nuclear, Inc. v. United States*, No. 00-0440C; *Wisconsin Electric v. United States*, No. 00-0697J; *Power Authority v. United States*, No. 00-0703E; *Omaha Public Power v. United States*, No. 01-0115L; *Nebraska Public v. United States*, No. 01-0116D; *Tennessee Valley v. United States*, No 01-0249C; *PSEG Nuclear, L.L.C. v. United States*, No. 01-0551D; *Vermont Yankee v. United States*, 02-0898R; *Detroit Edison v. United States*, NO 02-0926M; *Consumers Energy v. United States*, No. 02-1894E; Order on Motion to Reassign, filed Nov. 4, 2004 in *Entergy Nuclear Indian Point 2, LLC v. United States*, No. 03-2622C; Order to Reassign, filed Nov. 4, 2004 in *Consolidated Edison Co. of New York, Inc. v. United States*, No. 04-0033C.

## IV. BOSTON EDISON WOULD BE SEVERELY PREJUDICED BY CONSOLIDATION

Beyond the lack of any legal justification for consolidating Boston Edison's and ENGC's claims, consolidation would cause extreme prejudice to Boston Edison's attempts to seek redress from the Government. Consolidating the cases would severely disadvantage Boston Edison by placing it in the queue behind numerous other SNF cases, effectively holding Boston Edison's case hostage to the final resolution of a myriad of forward-looking issues that do not relate to or form the basis for its claims.

Consolidation would thus make the resolution of Boston Edison's claims beholden to the timetable of more than sixty (60) other SNF cases including ENGC's. Boston Edison's discovery and claims are historically based and set as of 1999, whereas other SNF cases are necessarily forward-looking, deal with more complex legal issues, and require evidence regarding DOE's future actions.[7]

Boston Edison's case, in stark contrast, presents essentially no intractable factual issues and will not require a large amount of discovery. As such, it will be ready to go to trial much sooner than other SNF cases. However, were the cases to be consolidated, Boston Edison would instead be forced to stand by while distinct and unrelated issues

[7] Two of the SNF decisions that have been issued to date portray just how perplexing and difficult from a case management perspective these forward-looking issues surrounding the Government's future SNF performance will be. While varying in their specific provisions, both *Indiana Michigan Power Co. v. United States*, No. 98-486C (Fed. Cl. filed May 25, 2004) (Hodges, J.) and *TVA v. United States*, No. 01-249C (Fed. Cl. filed June 2, 2004) (Lettow, J.) specifically contemplate prolonged litigation potentially lasting for *decades*. Under both decisions the Standard Contract holders' cases will be held open pending proof that future specific costs are incurred and demonstrations of causation, and their linkage with the then-current status of the DOE repository program. These seemingly endless judicial revisitations of SNF status will presumably continue until all SNF has left each plaintiffs' nuclear facility sites. While such arrangements might be suitable for plaintiffs who are continuing to contend with ongoing SNF management, it would be wholly inappropriate to require a claimant whose damages were incurred years ago (and are no longer continuing) to await such an indeterminate and interminable fate.

are litigated, as discussed above, incurring significant unnecessary legal fees and the consequences of interminable delays. Because Boston Edison is not entitled to pre-judgment interest on its breach claim, every day of delay – made that much longer through consolidation – could become a windfall to the Government and a compounding of the injuries Boston Edison has sustained as a result of the Government's actions and inactions. Accordingly, consolidation is inappropriate in this case and the Government's Motion should be denied.

## V. THE GOVERNMENT HAS SUCCESSFULLY CONCLUDED OTHER SNF LITIGATION WITHOUT CONSOLIDATION

The consolidation urged by the Government here is particularly remarkable given its actions in *Exelon Generation Co. LLC v. United States*, No. 04-102C (Fed. Cl. filed Jan. 28, 2004). The Government asserts here that absent consolidation, the Government would "risk the possibility of inconsistent judgments based upon two cases that share the same factual predicate and the same legal issues." Motion at 12. According to the Government, double recovery might occur because the post-breach assignee of the Pilgrim Standard Contract may have received compensation from Boston Edison in the form of a reduced purchase price. *Id.* at 6. From all this, the Government contends that "double liability" is imminent without consolidation.

The Government's concerns, however, neither triggered an effort to consolidate nor adversely affected or frustrated the August 5, 2004 settlement of *Exelon* and related cases. Among the claims settled by the Government in *Exelon* are assertions of damages associated with dry cask storage costs at the Peach Bottom nuclear plant acquired in part by Exelon in October 2000. *Exelon* was brought subsequent to cases initiated by Atlantic City Electric Company ("Atlantic City") and Delmarva Power and Light Company ("Delmarva"), utilities that until 2000 and 2001 (several years after the

Government's failure to dispose of SNF) had ownership interests in the Peach Bottom nuclear plants.

Atlantic City's and Delmarva's complaints assert the same diminished value of Standard Contract rights and nuclear assets that triggered the supposed concerns about double liability expressed in the Government's Motion to Consolidate. Nonetheless, and despite the same factual circumstances of "a reduced purchase price . . . for DOE's delay in beginning SNF acceptance," Motion at 6, the settlement provides Exelon with $54,218,880 in settlement of claims related to the Peach Bottom plant and the opportunity to recoup tens of millions of dollars in future damages resulting from the Government's failure to perform.

The Government quite obviously determined that it could finally conclude *Exelon* without consolidation, despite the continuing pendency of complaints by Peach Bottom owners at the time of the Government's failure to dispose of SNF. It is thus particularly disingenuous for the Government to suggest here that consolidation should be required for Boston Edison's and ENGC's claims.

The threat of potential double liability which is advanced here as a significant reason for consolidation has indisputably not been a factor frustrating or adversely affecting the successful resolution of post-default buyer's claim asserted by Exelon. Consistency with the course which has actually been pursued by the Government in *Exelon* compels the conclusion that the grounds for consolidation advanced by the Government here should be rejected.

## VI. THE GOVERNMENT'S REQUEST FOR A SUMMONS PURSUANT TO RCFC 14(a) AND A NOTICE PURSUANT TO RCFC 14(b) ALSO SHOULD BE DENIED

The Court should also deny the Government's request for a summons pursuant to RCFC 14(a) [8] and a notice pursuant to RCFC 14(b). The Government's request is nothing more than the misuse of the Rules pertaining to joinder in a back-door attempt to consolidate ENGC and Boston Edison's cases. Research to date by Boston Edison has been unable to identify a *single* case where the Court invoked RCFC 14 to join two litigants concurrently pursuing claims in separate lawsuits. The cases cited by the Government certainly do not apply RCFC 14 to concurrent litigants. In fact, in each of the cases cited by the Government, a third party that was not involved in any litigation surrounding the incident in question was joined in the underlying litigation in an effort to protect either the interests of the Government or the plaintiff. *See Del-Rio Drilling Programs, Inc. v. United States*, 17 Ct. Cl. 844 (1989) (effort to join third parties with interests in federal oil and gas leases); *Philadelphia Suburban Corp. v. United States*, 211 Ct. Cl. 354 (1976) (effort to join oil company that may have had a contractual relationship with the plaintiff); *Uram v. United States*, 216 Ct. Cl. 418 (1978) (effort to join a film distribution company that provided copyrighted material to the Government).

---

[8] By its own admission, the Government's request is premature at best. RCFC 14(a)(2) requires that:

> The motion for a summons shall be accompanied by an appropriate pleading setting forth the claim or contingent claim which it is asserting against such third person.

The Government recognizes that its RCFC 14(a) request is deficient when, in Footnote 4, it acknowledges that it has not drafted a proper pleading because a ruling to grant consolidation would eliminate the need for such a pleading. The Government's desire to avoid unnecessary work does not mean the Court should grant the Government's request. The lack of a proper pleading leaves Boston Edison without a claim to which it can respond. As such, the Court should deny the Government's request.

In the present case, however, both Boston Edison and ENGC are already plaintiffs in litigation against the Government. Both plaintiffs are aware of their potential interests and have asserted claims against the Government to protect those interests. For the reasons stated above, consolidation is improper and adequate safeguards exist to protect the Government from having to pay inconsistent recoveries (i.e., that Boston Edison and ENGC are both pending before the same judge and that the cases could be ordered in a fashion that prevents such a result). The Government should not be allowed to have another bite at the proverbial "consolidation apple" through the misuse of RCFC 14. To be sure, the reasons the Government has articulated to justify joinder are merely recycled arguments made earlier in its Motion to Consolidate. The Court should reject those arguments in the context of RCFC 14 just as it should reject them in the context of the Government's Motion to Consolidate.

## CONCLUSION

For all of the foregoing reasons, Boston Edison respectfully requests that the Court deny the Government's Motion to Consolidate or, in the Alternative, for Issuance of a Summons Pursuant to RCFC 14(a) and Notice Pursuant to RCFC 14(b).

Date: April 28, 2005

Respectfully submitted,

By: /s Richard J. Conway

Richard J. Conway
Dickstein Shapiro Morin
& Oshinsky LLP
2101 L Street, NW
Washington, DC 20037-1526
(202) 785-9700

*Counsel of Record for*
*Boston Edison Company*

Of Counsel:

Nicholas W. Mattia, Jr.
Bradley D. Wine
Jeffery P. Becherer
Dickstein Shapiro Morin
& Oshinsky LLP
2101 L Street, NW
Washington, DC 20037
(202) 785-9700

Neven Rabadjija, Esq.
Associate General Counsel
NSTAR Electric & Gas
Corporation
800 Boylston Street
17th Floor
Boston, MA 02199-0228

**CERTIFICATE OF ELECTRONIC FILING**

I hereby certify that on April 28, 2005 a copy of the foregoing "Plaintiff Boston Edison Company's Response to Defendant's Motion to Consolidate or, in the Alternative, for Issuance of a Summons Pursuant to RCFC 14(a) and Notice Pursuant to RCFC 14(b)" was filed electronically. I understand that the notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Richard J. Conway
Richard J. Conway
DICKSTEIN SHAPIRO MORIN
& OSHINSKY LLP
2101 L Street, NW
Washington, DC 20037
(202) 785-9700

*Counsel of Record for*
*Boston Edison Company*