IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| BOSTON EDISON COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 99-447C |
| | ) | (Judge Lettow) |
| UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S REPLY TO BOSTON EDISON COMPANY'S AND ENTERGY NUCLEAR GENERATION COMPANY'S RESPONSES TO DEFENDANT'S MOTION TO CONSOLIDATE OR, IN THE ALTERNATIVE, FOR ISSUANCE OF A SUMMONS PURSUANT TO RCFC 14(a) AND NOTICE PURSUANT TO RCFC 14(b)

Defendant, the United States, respectfully submits this reply to the separate responses that Boston Edison Company ("Boston") and Entergy Nuclear Generation Company ("ENGC") filed to defendant's April 11, 2005 motion to consolidate two cases, Boston Edison Co, v. United States, No. 99-447C (Fed. Cl.), and Entergy Nuclear Generation Co. v. United States, No. 03-2626C (Fed. Cl.). As we explained in our motion to consolidate, both of these cases involve the assignor and assignee of the same contract with the Department of Energy ("DOE") and are currently pending before the same judge. Consolidation will promote the efficient administration of justice and prevent the potential for inconsistent rulings between the two cases.[1] To the extent that the Court declines to consolidate the Boston Edison and Entergy Nuclear Generation cases, we respectfully request that the Court (1) issue a summons pursuant to RCFC 14(a) to join ENGC as a third-party defendant upon a contingent claim in Boston Edison and (2) issue binding notice pursuant to RCFC 14(b) and the Contract Settlement Act, 41 U.S.C. § 114(b), to ENGC in Boston Edison and to Boston Edison Company ("BECO") in Entergy Nuclear Generation.

[1/] This reply brief is being filed in both the Boston Edison and Entergy Nuclear Generation cases.

## DISCUSSION

### I. DESPITE THEIR BEST EFFORTS, ENGC AND BOSTON HAVE FAILED TO ELIMINATE THE DUPLICATIVE AND INTERTWINED NATURE OF THEIR DAMAGES CLAIMS

In opposition to the Government's motion to consolidate, ENGC asserts that its case and Boston's case seek "[n]on-[o]verlapping [d]amages [b]ased [o]n [d]ifferent [t]imeframes." ENGC Opp. 2.[2] Similarly, Boston alleges that "the significant factual and legal distinctions between [its] and ENGC's cases vastly outweigh any similarities." Boston Opp. 7. Yet, as Boston's amended complaint makes clear, the primary issue that the Government will have to litigate in both of these cases is whether ENGC has already been compensated for the costs of extended spent nuclear fuel ("SNF") storage that it now seeks in its complaint to this Court or, alternatively, whether Boston's claims of a diminished sales price are meritless. Boston alleges in its amended complaint that ENGC "drastically . . . reduce[d] [its] price" for the Pilgrim facility "to account for the increased risk associated with the uncertain life expectancy of Pilgrim and the anticipated capital expenses associated with storing SNF indefinitely." Boston Amd. Compl. ¶ 6. Specifically, Boston identified those costs that ENGC allegedly recouped through a reduced purchase price:

> On information and belief, the costs and risks associated with installing a dry cask storage facility at Pilgrim were included in Entergy's valuation, and had the direct effect of reducing the price that Entergy paid for the facility. On information and belief, Entergy also factored into its valuation and reduced the price for Pilgrim to reflect the additional expenses associated with on-site

---

2/ "ENGC Opp. __" refers to ENGC's opposition to the Government's motion to consolidate, which ENGC filed on April 28, 2005. "Boston Opp. __" refers to Boston's April 28, 2005 opposition to that motion. "Boston Amd. Compl. ¶ __" refers to Boston's amended complaint in Docket No. 99-447C (Fed. Cl.).

> storage of SNF, including the continuation of payments into the Nuclear Waste Fund.

Boston Amd. Compl. ¶ 66; see id. ¶ 69 ("[o]n information and belief, Entergy factored into its valuation and reduced the price for Pilgrim to reflect all known and anticipated additional expenses associated with on-site storage of SNF and future Nuclear Waste Fund fees announced by DOE in the 1998 DOE Plan").

Accordingly, Boston alleges that ENGC, as part of its purchase price, has already compensated itself for the capital expenses for which ENGC, in its own complaint, is now seeking reimbursement from the Government. Neither Boston nor ENGC explains in its opposition to the Government's motion to consolidate any basis upon which the United States should be obligated to pay both Boston's claim and ENGC's claim, both of which are premised upon the same capital expenses.[3] To the contrary, "[j]oining the claims . . . preserves the policies of the Anti-Assignment Acts by avoiding potential double recovery and preserving the government's defenses against [both Boston and ENGC]." Rochester Gas & Elec. Co. v. United States, No. 04-118C, slip op. at 15 (Fed. Cl. May 12, 2005).[4]

---

3/ ENGC asserts that "the fact that ENGC currently operates Pilgrim with the same prospective risks that [Boston] faced hardly constitutes 'compensation' (as the Government uses the term) for the Government's breach of the Standard Contract, regardless of the price that ENGC paid for the plant." ENGC Opp. 6. ENGC is complaining only that it disagrees with the legal theory upon which Boston is seeking to recover damages. As evidenced by the Government's motion for summary judgment upon Boston's diminished value claim, we agree that Boston's claim lacks merit. However, in its decision dated February 15, 2005, the Court ordered that Boston would be permitted to pursue that claim. Accordingly, regardless of ENGC's views regarding the merits of Boston's claim, ENGC's assertions are irrelevant to whether Boston's legal theory implicates ENGC's recovery and the duplicative nature of Boston's and ENGC's damages claims.

4/ Boston asserts that its takings claim "provides an additional, unique reason to reject consolidation," arguing that the taking is somehow completely separate from its breach of

ENGC complains that, because it omitted any allegations "regarding the circumstances surrounding its purchase of Pilgrim from [Boston]," it has somehow insulated itself from any allegations that it has already compensated itself for extended storage costs through a reduced purchase price. ENGC Opp. 4. Yet, Boston has clearly and plainly made this issue a pivotal one not only in its case, but also in ENGC's case. If, in fact, the Court were to allow Boston to recover on its diminished value claim, the Court will have to have found, at least implicitly, that ENGC reduced its purchase price to compensate itself for the same extended storage costs that ENGC is now claiming in its litigation. The Court could not consistently allow both Boston and ENGC to recover the full amount of their claims without exposing the Government to a double liability based upon the same set of costs. Even though ENGC, through creative pleading, has attempted to exclude from this case any argument about the transaction through which it purchase Boston's facility and contract, the Government, in response to the Court's February 15, 2005 decision allowing Boston to pursue its diminished value claim, has no choice but affirmatively to raise that issue in ENGC's case. ENGC's mere failure to mention the issue in its complaint cannot somehow eliminate the issue from the case.

ENGC also complains that consolidation of its case with Boston's case "would unnecessarily increase ENGC's litigation costs by requiring its participation in a trial (i.e., [Boston's]) on issues that are irrelevant to its damages." ENGC Opp. 7. However, by necessity, ENGC will have to be involved in any trial relating to Boston's diminished value claim. As

---

contract diminished value claim. Even if that assertion were true, Boston has not withdrawn its contractual diminished value claim, which comprises a substantial portion of its case. Further, as explained in previous briefing, Boston's takings claim is wholly dependent upon an obligation by DOE to accept Boston's SNF beginning no later than January 31, 1998, an obligation created solely by contract that does not give rise to a takings claim.

evidenced by the portions of Boston's amended complaint identified above, Boston's diminished value claim is wholly dependent upon whether ENGC reduced the amount of money that it paid for Boston's facility and contract because of DOE's partial breach. Only ENGC witnesses can know the reasons that ENGC paid the amount of money that it paid for Boston's facility. ENGC's desire to extract itself completely from Boston's diminished value claim is simply impossible.[5]

## II. THIS COURT'S PREVIOUS DENIAL OF THE GOVERNMENT'S REQUEST TO CONSOLIDATE ALL THEN-PENDING SNF CASES IS IRRELEVANT TO ITS REQUEST TO CONSOLIDATE TWO CASES INVOLVING THE SAME SINGLE CONTRACT

ENGC asserts that the reasons which the Government "has proffered in support of consolidation are not unique to this case, but merely repeat the same arguments that it has unsuccessfully put forward in its prior efforts to consolidate all of the [SNF] damages cases." ENGC Opp. 1; see id. at 7-9. Similarly, Boston claims that "[t]his Court on multiple occasions rejected the Government's arguments to stay, consolidate, or coordinate treatment of SNF cases." Boston Opp. 2; see id. at 14-15. Boston and ENGC are correct that, in prior proceedings, the Government unsuccessfully requested that the Court consolidate all of the SNF cases then pending before the Court. Yet, in responding to the current consolidation motion, the plaintiffs ignore that the pending motion deals only with a request to consolidate two cases that deal with the same precise Standard Contract. ENGC's suggestion that it is unimportant whether the Court decides that the SNF acceptance rate to be read into ENGC's contract differs from the rate to be

[5] Further, for the reasons specified in our motion, the Government will be severely prejudiced if these two cases are not consolidated. Neither Boston nor ENGC addresses the prejudice to the Government if the Court does not consolidate these cases.

read into Boston's contract, ENGC Opp. 7-8, is nonsensical. Boston and ENGC are the assignor and assignee of the same contract. "It is well-established that an assignee stands in the shoes of the assignor, and that by assignment the assignee could acquire no greater rights than its assignor." National City Bank of Evansville v. United States, 143 Ct. Cl. 154, 163, 163 F. Supp. 846, 852 (1958). See, e.g., Smith v. Tobacco By-Products & Chemical Corp., 243 F.2d 188, 191 (C.C.P.A. 1957); General Casualty Co. of Am. v. United States, 130 Ct. Cl. 520, 526, 127 F. Supp. 805, 808, cert. denied, 349 U.S. 938 (1955); Modern Industrial Bank v. United States, 101 Ct. Cl. 808, 820 (1944). Accordingly, ENGC and Boston cannot have different rights and obligations, or different contract terms and requirements, when any rights and obligations were created through the same contract. Given that only one contract is at issue in both Boston's and ENGC's cases, the terms of that single contract must be interpreted and applied identically.

Further, although ENGC claims that it may not be necessary to decide the SNF acceptance rate issue in Boston's case, ENGC does not explain the manner in which the Court could decide the amount by which ENGC reduced its purchase price to compensate itself for extended storage costs resulting from DOE's delay unless, as a precursor to that determination, the Court determined what anticipated costs were actually incremental to any delay. To make that determination, the Court will have to identify what DOE's obligations to accept SNF from Boston were, including when DOE was obligated to accept specific Boston SNF, and what incremental costs that would not be anticipated absent DOE's delay would be created through the delay. Without making that determination, the Court would have no basis upon which to make any kind of determination regarding the anticipated extended storage costs that ENGC would expect to pay upon purchasing the Boston facility. Further, without identifying those costs, the

Court could not begin to analyze whether, and the amount by which, ENGC reduced its purchase price for the Boston facility. ENGC's assertions that the Court can simply estimate Boston's diminished value without conducting any in-depth analysis of Boston's contract or anticipated activities in the "but for" world are wholly unsupported.

III. ENGC AND BOSTON HAVE NOT IDENTIFIED ANY BASIS FOR PRECLUDING ACTION UNDER RCFC 14(b) AND 41 U.S.C. § 114(b)

The Government's request for issuance of notice under RCFC 14(b) and 41 U.S.C. § 114(b) is appropriate. ENGC does not expressly address the Government's request for issuance of notice under RCFC 14(b), as permitted by 41 U.S.C. § 114(b), although it asserts that it objects to it.[6] ENGC Opp. 9; see Boston Opp. 19-20. Under 41 U.S.C. § 114(b), the Court may notify any party having a possible interest in any pending suit or proceeding to appear and assert or defend its interests.[7] Should a notified party fail to appear, "any and all claims or interests in claims of any such person against the United States, in respect to the subject matter of such suit or proceeding, shall forever be barred." 41 U.S.C. § 114(b). Notice is appropriate where third

---

6/ In its opposition, ENGC addresses the Government's request for issuance of a summons under RCFC 14(a), but does not explain its opposition to the Government's request for notice pursuant to RCFC 14(b). See ENGC Opp. 9-10. Because it is unclear whether, under Southern California Edison Co. v. United States, 226 F.3d 1349 (Fed. Cir. 2000), ENGC's filing of its complaint in this Court would permit the United States to invoke RCFC 14(a)'s rule regarding a summons relating to a contingent claim, and because consolidation of Boston's and ENGC's cases is the simplest method of eliminating the possibility of duplicative recoveries by Boston and ENGC, we will not pursue our request for issuance of a summons under RCFC 14(a) at this time. However, to the extent that the Court denies consolidation of these two cases, we reserve our right to renew this request. Further, to the extent that the cases are not consolidated, the Court should issue notice in the Boston case to ENGC pursuant to RCFC 14(b).

7/ To the extent that ENGC asserts that section 114(b) only applies to "erroneously paid" parties, ENGC Opp. 10, section 114(b) refers to the Government's right to request notice to those with "interests" in others' claims, not merely those to whom the United States has made erroneous payments. See 41 U.S.C. § 114(b).

parties "hav[e] possible interests [in] any suit or proceeding of any nature." 41 U.S.C. § 114(b). "The rationale behind the issuance of a notice is the prevention of numerous proceedings and determinations on an identical set of facts." Philadelphia Suburban Corp. v. United States, 211 Ct. Cl. 354, 355 (1976). "Thus it is in furtherance of the conservation of judicial time and effort that the [Court] determines that notice shall issue where interest is apparent." Id. "Should a noticed person decline to appear . . . he cannot be forced so to do, though he may nevertheless be bound, in a later suit in another court, by certain determinations of this court." Uram v. United States, 216 Ct. Cl 418, 420 (1978). Although Boston alleges that RCFC 14(b), and apparently 41 U.S.C. § 114(b), "certainly do not apply . . . to concurrent litigants," Boston Opp. 19, Boston cites no support for this assertion, and section 114(b) of Title 41 contains no such limitation.

ENGC asserts that it would not be "bound by any adverse judgment" in Boston because it "could not actually appeal such a judgment," citing Penda Corp. v. United States, 44 F.3d 967 (Fed. Cir. 1994). ENGC Opp. 11. ENGC has misinterpreted Penda. In that case, a nominal third-party defendant – Cadillac Inc. – attempted to appeal a judgment from this Court that found that the United States used Penda's patented invention without a license or lawful right. Penda, 44 F.3d at 968. Cadillac was the Government's indemnitor and had received notice of the action following the Government's request pursuant to RCFC 14(a)(1). Id. Although Cadillac joined the action as a third-party defendant, id. at 969, the Federal Circuit dismissed Cadillac's appeal for lack of standing. Id. at 973. The Government, against whom a judgment was issued, did not appeal the lower court's ruling. Id. at 969. The lower court did not issue a judgment against

Cadillac. Id. at 970.[8] The Federal Circuit determined that Cadillac lacked standing to appeal a judgment that had not issued against it, despite the fact it was a third-party defendant in the case. Id. at 971.

One of Cadillac's arguments as to why it had standing to appeal was based upon the possibility that the Government or Penda would attempt to assert issue preclusion against Cadillac in a subsequent proceeding. Id. at 972. The Federal Circuit rejected that argument. First, the Federal Circuit held that the Government could not assert issue preclusion against Cadillac because Cadillac and the Government were not adversarial parties before this Court. Id. at 972. Second, the Court found that Penda could not assert issue preclusion against Cadillac because Cadillac was only a nominal defendant, and the litigation concerned an obligation other than Cadillac's. Id. Last, neither the Government nor Penda could assert issue preclusion against Cadillac because Cadillac could not obtain review of the judgment because it lacked standing, and issue preclusion cannot be asserted against a party which lacks a right to appeal the judgment. Id. at 973.

The Penda case is entirely distinguishable from the cases before this Court. First, Penda does not stand for the proposition that ENGC appears to suggest – namely, that notice pursuant to RCFC 14 cannot bind third parties. The Federal Circuit did not determine that RCFC 14 notice recipients can never be bound. In Penda, the issue was a third party defendant's standing to maintain an appeal, absent the United States. Penda makes no mention of the ability of a court to

[8] This Court lacked jurisdiction to determine Cadillac's contractual obligations to indemnify the Government. Id.

issue binding notice to non-parties pursuant to 41 U.S.C. § 114(b) and RCFC 14. Penda focuses on completely different issues.

Second, and importantly, should a noticed entity not appear, the Government would have no need to rely upon the common law doctrine of issue preclusion to bar future litigation by that entity. Rather, the Government would rely upon the statutory rights granted it under 41 U.S.C. § 114(b). To the extent that section 114(b) conflicts with the common law doctrine of issue preclusion, the statute's language should supercede the common law. "Statutes which invade the common law . . . are to be read with a presumption favoring retention of long-established and familiar principles, except when a statutory purpose to the contrary is evident." United States v. Texas, 507 U.S. 529, 534 (1993). Section 114(b) evidences a clear intent to bind non-parties irrespective of their ability to appeal a judgment, or any other prerequisite for common law issue preclusion to apply. The Government wishes to enforce its statutory, not common law, right to prevent future litigation by a non-plaintiff utility which receives notice of this litigation but chooses not to appear. Accordingly, to the extent that the Court declines to consolidate the ENGC and Boston cases, it should provide notice in Boston under RCFC 14(b) and 41 U.S.C. § 114(b) to ENGC.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Harold D. Lester, Jr
HAROLD D. LESTER, JR.
Assistant Director

s/ Alan J. Lo Re
ALAN J. LO RE
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 305-7562
Fax: (202) 307-2503

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

May 16, 2005

Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify that on May 16, 2005, a copy of the foregoing "DEFENDANT'S REPLY TO BOSTON EDISON COMPANY'S AND ENTERGY NUCLEAR GENERATION COMPANY'S RESPONSES TO DEFENDANT'S MOTION TO CONSOLIDATE OR, IN THE ALTERNATIVE, FOR ISSUANCE OF A SUMMONS PURSUANT TO RCFC 14(a) AND NOTICE PURSUANT TO RCFC 14(b)" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Harold D. Lester, Jr.