# In the United States Court of Federal Claims

No. 99-447C
No. 03-2626C

(Filed: July 29, 2005)

| | | |
|---|---|---|
| ****************************************** | ) | |
| | ) | Spent nuclear fuel cases; |
| **BOSTON EDISON COMPANY,** | ) | consolidation for a limited |
| | ) | purpose; RCFC 42(a) |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **UNITED STATES,** | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| ****************************************** | | |
| ****************************************** | ) | |
| | ) | |
| **ENTERGY NUCLEAR GENERATION CO.,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **UNITED STATES,** | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| ****************************************** | | |

Richard J. Conway, Dickstein Shapiro Morin & Oshinsky LLP, Washington, D.C., for plaintiff in *Boston Edison Company*. With him were Nicholas W. Mattia, Jr., Bradely D. Wine, and Jeffrey P. Becherer, Dickstein Shapiro Morin & Oshinsky LLP, Washington, D.C., and Neven Rabadjija, Associate General Counsel, NSTAR Electric & Gas Corporation, Boston, MA.

Alex D. Tomaszczuk, Pillsbury Winthrop Shaw Pittman LLP, McLean, VA, for plaintiff in *Entergy Nuclear Generation Co*. With him were Jay E. Silberg, Daniel S. Herzfeld, and Jack Y. Chu, Pillsbury Winthrop Shaw Pitman LLP, Washington, D.C.

Harold D. Lester, Jr., Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant. With him on the briefs were Peter D. Keisler, Assistant Attorney General, and David M. Cohen, Director, Commercial Litigation Branch, and with him at the hearing were Alan J. Lo Re, Senior Trial Counsel, and Joshua E. Gardner, Trial Attorney, Commercial Litigation Branch. Of counsel was Jane K. Taylor, Office of General Counsel, United States Department of Energy, Washington, D.C.

## ORDER

LETTOW, Judge.

Pending before the court in these spent nuclear fuel cases is Defendant's Motion to Consolidate or, in the Alternative, for Issuance of a Summons Pursuant to RCFC 14(a) and Notice Pursuant to RCFC 14(b) ("Def.'s Mot."), filed April 11, 2005. The government seeks to consolidate *Boston Edison Co. v. United States*, No. 99-447C, with *Entergy Nuclear Generation Co. v. United States*, No. 03-2626C, which cases were brought by the seller and buyer, respectively, of Pilgrim Nuclear Power Station ("Pilgrim"). Both plaintiffs oppose consolidation. A joint hearing was held on June 14, 2005 to address the pending motion.

For the reasons set forth below, the government's motion to consolidate is granted in part and denied in part. Consolidation of the cases is ordered for the limited purpose of addressing certain issues that arise in both cases, which issues are identified and delineated in the analysis that follows.

## BACKGROUND

Boston Edison Company ("Boston Edison") entered into a Standard Contract under the Nuclear Waste Policy Act of 1982 ("NWPA"), Pub. L. No. 97-425, § 302, 96 Stat. 2201, 2257-2261 (1983) (codified as amended at 42 U.S.C. § 10222), obligating the Department of Energy ("DOE") to dispose of spent nuclear fuel ("SNF") and high-level radioactive waste generated at Pilgrim. Under the Standard Contract, disposal was to begin no later than January 31, 1998. *See Boston Edison Co. v. United States*, 64 Fed. Cl. 167, 170 (2005). To date, DOE has yet to dispose of any SNF from Pilgrim or from any other nuclear power facility, and disposal is not expected to commence within the foreseeable future. *Id.* Boston Edison sold the Pilgrim facility to Entergy Nuclear Generation Company ("Entergy") on July 13, 1999, assigning its Standard Contract to Entergy as part of the purchase agreement. *See Entergy Nuclear Generation Co. v.*

*United States*, 64 Fed. Cl. 336, 338 (2005).[1] As the parties construe the purchase agreement, Boston Edison retained claims that had accrued as of the closing date, while Entergy acquired any later accruing claims. *Boston Edison*, 64 Fed. Cl. at 170.

*Boston Edison* and *Entergy* thus involve the same contract at the same facility. Boston Edison filed its original complaint on July 12, 1999, one day before the sale of the Pilgrim facility. *See Boston Edison*, 64 Fed. Cl. at 173. In its amended complaint, Boston Edison alleges a partial breach of contract, a breach of the implied duty of good faith and fair dealing, and an uncompensated taking. *Id.* at 170. Boston Edison alleges damages principally measured by the diminution in value of Pilgrim at the time of sale, by expenses incurred in storing SNF prior to the sale, and by the loss attributable to its inability to purchase an earlier disposal time in the SNF queue as allowed under Article V.E. of the Standard Contract. *Id.* The diminution-in-value claim is succinctly described by Boston Edison's allegations that "Pilgrim's value was significantly diminished" by DOE's breach, and that Boston Edison "realized significantly less value in the sale" because the number of bidders was reduced and because "potential buyers . . . reduce[d] their price in order to account for the increased risk" of nuclear power plant ownership resulting from DOE's breach. Boston Edison Amended Complaint ("Am. Compl.") ¶ 6. Entergy filed suit on November 5, 2003, also alleging a partial breach of the contract, a breach of the implied covenant of good faith and fair dealing, and an uncompensated taking. *Entergy*, 64 Fed. Cl. at 338. In its suit, Entergy seeks damages resulting from the ongoing partial breach between July 13, 1999 (the date Entergy purchased Pilgrim from Boston Edison) and the end of Entergy's most recently completed fiscal year prior to trial, retaining the right to bring subsequent actions to collect damages for future periods. *Id.* at 345-46.

In a notice submitted by Entergy contemporaneously with the filing of its complaint, Entergy advised that Boston Edison's case was directly related to its suit. This notice complied with Rule 40.2(a) of the Rules of the Court of Federal Claims ("RCFC"). At the time, Entergy's counsel commented that Boston Edison's case and Entergy's newly filed action "may benefit" from consolidation. *See* Joint Status Report in *Entergy* at 1 (Feb. 20, 2004) (quoting Notice of Directly-Related Case at 2 (Nov. 5, 2003)). From the outset of Entergy's case through the present, the two suits have proceeded "in parallel, side by side" before the same judge. Hr'g Tr.

---

[1]While contract rights against the government generally cannot be assigned without specific permission, the Standard Contract was assignable, as authorized by Section 302(b)(3) of the NWPA, as amended, 42 U.S.C. § 10222(b)(3), which provides in pertinent part that "[t]he rights and duties of a party to a contract entered into under this section may be assignable with transfer of title to the spent nuclear fuel or high-level radioactive waste involved." *See also* Standard Contract for Disposal of Spent Nuclear Fuel and/or High-Level Radioactive Waste, art. XIV (codified at 10 C.F.R. § 961.11); *Rochester Gas & Elec. Corp. v. United States*, 65 Fed. Cl. 431 (2005) (holding that the express authorization in 42 U.S.C. § 10222(b)(3) allowing assignments of Standard Contracts supersedes the Assignment of Contracts Act, 41 U.S.C. § 15, and the Assignment of Claims Act, 31 U.S.C. § 3727).

at 15 (Mar. 18, 2004) (hearing in *Entergy* with counsel for Boston Edison also present).[2] Thus far, in *Boston Edison* the court has denied the government's motions to dismiss and for summary judgment on liability, and it has also denied Boston Edison's motion for partial summary judgment on liability. *See Boston Edison*, 64 Fed. Cl. at 170. In *Entergy*, the court has denied the government's motion for partial summary judgment on liability and has granted Entergy's cross-motion. *See Entergy*, 64 Fed. Cl. at 338. Both plaintiffs as well as the government are beginning pre-trial discovery. *See* Hr'g Tr. at 13 (June 14, 2005). The parties have represented that Entergy's case will require more discovery and will likely take longer to prepare for trial than Boston Edison's case. *See id.* at 27-28.

## DISCUSSION

Motions to consolidate are governed by RCFC 42, which provides in part that:

> When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delays.

RCFC 42(a). "The court has a broad discretion to determine whether consolidation is appropriate." *Cienega Gardens v. United States*, 62 Fed. Cl. 28, 32 (2004) (citing *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990); *Skirvin v. Mesta*, 141 F.2d 668, 672-73 (10th Cir. 1944)). In determining whether consolidation is appropriate, the court must weigh the risks of prejudice and possible confusion against "the risk of inconsistent adjudication of common factual and legal issues, the burden on parties, witnesses, and available judicial resources posed by multiple lawsuits, the length of time required to conclude multiple suits as against a single one, and the relative expense to all concerned of the single-trial, multiple-trial alternatives." *Cienega*, 62 Fed. Cl. at 31 (quoting *Johnson*, 899 F.2d at 1285; *Arnold v. Eastern Air Lines, Inc.*, 681 F.2d 186, 193 (4th Cir. 1982)); *see also Manhattan Constr. Co. v. United* States, __ Fed. Cl. __, 2005 WL 1654877, at *1 (July 14, 2005); *Karuk Tribe of California v. United States*, 27 Fed. Cl. 429, 433 (1993). "The court should take the positions of the parties into account in its analysis but need not accord the parties' views dispositive weight." *Entergy Nuclear Indian Point 2, LLC v. United States*, 62 Fed. Cl. 798, 802 (2004) (citing *Cienega*, 62 Fed. Cl. at 32).

---

[2]After a parallel hearing in *Boston Edison* on March 16, 2004, two days prior to the hearing in *Entergy*, the court entered an order that, among other things, provided that "[t]he Court will defer consideration of whether to consolidate this case [*Boston Edison*] with *Entergy Nuclear Generation Co. v. United States*, No. 03-2626C, pending resolution of jurisdictional issues." Order of March 16, 2004 in *Boston Edison*, ¶ 10. Those jurisdictional issues were addressed and resolved in connection with the decisions reported as *Boston Edison*, 64 Fed. Cl. 167, and *Entergy*, 64 Fed. Cl. 336.

From the outset, these cases were likely candidates for some degree of consolidation. The cases share some mixed questions of law and fact in common because they each rest on the particular Standard Contract that concerns the Pilgrim nuclear power facility. The government represents that it intends to raise identical legal defenses against both plaintiffs' claims for damages for storing SNF. *See* Def.'s Mot. at 9-10. The government also urges that the assignment of the Standard Contract must be construed identically in both cases. *Id*. at 8. The parties do not disagree in this respect. In that vein, "[i]t is well established that an assignee stands in the shoes of the assignor, and that by assignment the assignee could acquire no greater rights than its assignor." *See, e.g.*, *National City Bank of Evansville v. United States*, 163 F. Supp. 846, 852 (Ct. Cl. 1958); *Smith v. Tobacco By-Products & Chem. Corp.*, 243 F.2d 188, 191 (C.C.P.A. 1957).

The government also argues that consolidation will avoid the risk of inconsistent judgments that might produce a double recovery, Def.'s Mot. at 6, and that efficiency and judicial economy would be served by avoiding duplicative efforts regarding Boston Edison's diminution-in-value claim. *Id.* at 8-10. The government contends that any diminution in value for the sale of Pilgrim recovered in *Boston Edison* would amount to a judicial determination that Entergy paid a reduced sale price for Pilgrim, and in that circumstance the government suggests it would seek an offset against Entergy for any such damages recovered by Boston Edison. *Id.* at 6. Boston Edison counters that double recovery can be avoided by holding trial in its case before Entergy's, and then carrying forward into the *Entergy* case any results and arguments that might bear on that case. *See* Plaintiff Boston Edison Company's Response to Defendant's Motion ("Boston Edison's Resp.") at 10. This option would require the extra time and effort of addressing the diminution-in-value claim twice. In addition, Entergy's officials would almost certainly be required to participate in discovery as third parties to the *Boston Edison* case, and the converse would be true for the *Entergy* case which likely would have a later trial date. Although counsel for Boston Edison suggests the possibility of coordinating discovery efforts in lieu of consolidation, *see* Hr'g Tr. at 24-25 (June 14, 2005), consolidation would avoid difficulties in obtaining discovery from either plaintiff as a third party in the other plaintiff's case.

The possibility of an overlapping recovery deserves serious consideration. "One of the primary objectives of consolidation is to prevent separate actions from producing conflicting results." *Bank of Montreal v. Eagle Assocs.*, 117 F.R.D. 530, 533 (S.D.N.Y. 1987) (citations omitted). The diminution-in-value claim is of most importance in this respect. Entergy notes that it makes no allegations of diminished value in its case, *see* Plaintiff's Response to Defendant's Motion ("Entergy Resp.") at 4, and Boston Edison argues that the government is wrong in asserting a dollar-for-dollar correlation between any diminution in value awarded to Boston Edison and any offset against Entergy's damages. *See* Boston Edison Resp. at 10 n.4. Yet neither the likelihood of success of the government's offset argument nor the fact that the government, rather than the plaintiff, raises the issue in *Entergy* bears directly on the relevant inquiry here, which is whether judicial economy would be achieved through consolidating a single issue which otherwise may well be twice litigated in two cases.

Both plaintiffs resist consolidation for any purpose chiefly on the ground that they are pursuing different damage theories and that consolidation of trial on those different theories would lead to confusion and delay rather than efficiency. *See* Boston Edison Resp. at 5-14; Entergy Resp. at 2-7. This concern has merit, especially when coupled with the fact that Boston Edison's case is likely to be ready for trial considerably sooner than Entergy's case. *See* Hr'g Tr. at 37, 46-47 (June 14, 2005).

One other option remains that has not been urged by any of the parties. The court could elect to limit consolidation only to those issues that are undeniably common to both cases and will have to be addressed by all parties fairly early in the discovery proceedings. These issues include those concerning contract formation and implementation up through the date of Pilgrim's sale as well as Boston Edison's diminution-in-value claim and the government's attendant offset claim against Entergy. It makes little difference that the posture of Boston Edison and Entergy may well differ respecting some of those issues. Identical claims for relief are not a prerequisite for consolidation. *See Mylan Pharms. Inc. v. Henney*, 94 F. Supp.2d 36, 44 (D.D.C. 2000) ("The plaintiffs' requests for different forms of relief do not vitiate the propriety of consolidation, but rather, consolidation is proper to *any or all* matters in issue which are common.") (emphasis in original) (citations omitted), *rev'd on other grounds sub nom. Pharmachemie B.V. v. Barr Labs., Inc.*, 276 F.3d 627 (D.C. Cir. 2002). Consolidation for a limited purpose would ease the path of discovery for, and trial of, similar issues and would enable each party to be heard effectively on those matters that concern them. It would also reduce the likelihood of inconsistent judgments while enabling Boston Edison's case to proceed to trial on a more rapid schedule than that for Entergy's claims. The disadvantages of consolidation for a limited purpose are apparent. First, discovery and trial in each of the cases would be somewhat more complicated merely because an additional party's perspective would have to be taken into account. Second, two separate trials would still be necessary even though some issues in the second case would not have to be retried because they would have been resolved in the first case.

In summation, no answer to the question of consolidation of these cases is wholly free from countervailing considerations. However, on balance, the court concludes that consolidation for a limited purpose, *i.e.*, to address the particular issues that might affect each case, offers the best prospect of avoiding inconsistent judgments, of making the most efficient use of the parties' and the court's resources, and of ensuring that each party is heard effectively at an appropriate time and not prejudiced by the proceedings.[3]

## CONCLUSION

The government's motion to consolidate *Boston Edison,* No. 99-447C*,* and *Entergy,* No. 03-2626C, is GRANTED IN PART and DENIED IN PART. The cases are consolidated for the

---

[3]Because of the court's disposition of the motion to consolidate, it is not necessary to address the government's alternative motion for issuance of a summons pursuant to RCFC 14(a) and notice pursuant to RCFC 14(b).

limited purpose of addressing issues concerning (1) contract formation, (2) contract implementation through the date of sale of the Pilgrim Nuclear Power Station, and (3) Boston Edison Company's diminution-in-value claim and the government's attendant offset claim against Entergy. In other respects, consolidation is denied. The captions of both cases shall be used. Until judgment is rendered in the *Boston Edison* case, that case will be shown first in the caption. Thereafter, the *Entergy* case will take precedence. At the appropriate time, judgments will be issued under Rule 54(b) in each case, to insure that judgment in one case is not unduly delayed by the progression of the other.

It is so ORDERED.

s/ Charles F. Lettow
Charles F. Lettow
Judge