IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| BOSTON EDISON COMPANY,<br><br>Plaintiff,<br><br>v.<br>UNITED STATES,<br><br>Defendant. | ) | |
| ENTERGY NUCLEAR GENERATION CO.,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | ) | No. 99-447C<br>No. 03-2626C<br>(Judge Lettow) |

PROPOSED SCHEDULING ORDER

During the Court's December 20, 2005, hearing in the above-captioned case, the Court requested that the parties convene and provide the Court with a proposed pre-trial scheduling order in the above-captioned matter. Pursuant to that order, the parties submit the following proposed pre-trial order which, with a single exception noted below, they have agreed upon.

July 3, 2006 – Boston Edison expert reports due

October 2, 2006 - Government expert reports due

October 11, 2006 - Entergy expert reports due (if any)[1]

[1] This schedule assumes that Entergy's role will be limited to the issues outlined below. If the Court requires Entergy to prove its damages in this case, then Entergy's expert reports should be due the same date as Boston Edison's.

November 3, 2006 - Rebuttal expert reports

November 3, 2006, through January 12, 2007 - expert depositions

January 12, 2007 - end of discovery

February 5, 2007 - Boston Edison's contentions of fact and law

March 5, 2007 - Meeting of counsel

March 12, 2007 - Defendants contentions of fact and law

March 19, 2007 - Plaintiff Entergy's contentions of fact and law (if any)

April 6, 2007 - Witness and exhibit lists exchanged

Week of April 30, 2007 - Pretrial conference

Week of May 7, 2007 - Trial commences

The only disagreement among the parties regarding this schedule is that the Government believes that to the extent that plaintiff Entergy Nuclear Generation Company ("ENGC") chooses to serve expert reports or contentions of fact or law, it do so at the same time as Boston Edison Company ("BECO"). In the Government's view, and as explained in more detail below, this is consistent with the Court's ruling regarding consolidation for relating to formation of the Standard Contract between the Department of Energy ("DOE") and BECO, contract implementation up to the time of the sale of the Pilgrim Nuclear Power Plant ("Pilgrim facility) from BECO to ENCG and BECO's diminution in value claim against DOE and the Government's attendant offset claim against Entergy. See Boston Edison Co. v. United States, 67 Fed. Cl. 63, 67 (2005).

ENTERGY NUCLEAR GENERATION COMPANY'S POSITION:

Plaintiff ENCG continues to oppose Defendant's (the "Government") position that the rate of acceptance at which the Department of Energy ("DOE") was obligated to

accept spent nuclear fuel ("SNF") from plaintiff utilities under the Standard Contract (the "acceptance rate") is one of the "limited purpose[s]" for which ENGC's case was consolidated with BECO's case. See Id. For reasons explained below, ENGC respectfully submits that any factual or legal findings about the contractual acceptance rate are neither necessary nor relevant to BECO's diminution in value claim against the Government. In this submission, ENGC is not seeking reconsideration of any court rulings, but rather is responding to some of the Court's observations and questions as expressed at the December 20, 2005 status conference.

Although ENGC may undertake at its damages trial to establish the acceptance rate absent breach of the Standard Contract (i.e., in the "but-for world"), no such demonstration is necessary for BECO to prove its diminution in value claim against the Government. Counsel for the Government incorrectly suggested to the Court at the parties' recent status conference that measuring BECO's and ENGC's damages requires "figur[ing] out what were those contractual obligations" that DOE violated, and that "the rate of acceptance was integral to defining those contractual obligations." Transcript of Status Conference at 29 (Dec. 20, 2005).[2] This statement overlooks the basis upon which "diminution in value" actions are brought.

[2] Counsel for the Government also suggested at the status conference that the Court must consider in these cases whether DOE was contractually obligated to accept "[G]reater [T]han Class C waste." Id. at 27. This assertion is incorrect. There has been no waste generated at the Pilgrim plant, since it began operations, that has had to be classified and disposed of as Greater Than Class C ("GTCC") waste. ENGC is also not seeking any damages in its case attributable to the storage or disposal of GTCC waste. ENGC is prepared to submit a declaration affirming both points at such time as this Court may direct. This Court need not rule in either case whether the Standard Contract covers the disposal of GTCC waste, since neither BECO nor ENGC has any pending claims related to GTCC waste. Hence, any ruling on this issue would be purely advisory in nature.

In BECO's case, the Court's determination of whether and how much the bids for the Pilgrim facility were reduced in 1999 because of the Government's breach must be focused on the particular sales transaction between BECO and ENGC. Because neither ENGC nor BECO knew in 1999 what the acceptance rate would be once DOE actually began to perform, a determination *today* (or at trial in 2007) of the contractual acceptance rate sheds no light on the extent to which DOE's nonperformance lowered the price at which Pilgrim was sold *in 1999* (if at all). The Court's determination of the contractual acceptance rate has no bearing on, and cannot inform, the Court's inquiry into how much less, if any, the parties valued Pilgrim in 1999. The contractual acceptance term is thus irrelevant to a diminution in value claim.[3]

Even if it were the case that the prospective buyers of Pilgrim made assumptions about the acceptance rate at the time they were considering the purchase, the Court would need to determine whether these prospective buyers lowered their bids for the plant based on *their own understanding* of when and how (or whether) DOE would ultimately

[3] Even assuming *arguendo* that a determination of the contractual acceptance rate is necessary to establish BECO's damages, the Court need not determine a rate that applies to ENGC as well. As ENGC explained in its brief in opposition to consolidation of its case with BECO's, the Government has advanced an illusory fear throughout the SNF litigation that "inconsistent decisions" by this Court regarding the appropriate acceptance rate would impose inconsistent performance obligations upon DOE when it begins SNF acceptance, because the plaintiff utilities would allegedly apply collateral estoppel in a manner that would require DOE to perform in an impossible manner. Plaintiff's Response To Defendant's Motion To Consolidate Or, In The Alternative, For Issuance Of A Summons Pursuant To FCFC 14(a) And Notice Pursuant To RCFC 14(b) at 7-9 (Apr. 28, 2005). However, an all-encompassing SNF acceptance schedule that applies to multiple utilities – even where the same plant is involved – is not a prerequisite to the award of damages in any individual case. The calculation of damages in the SNF cases does not require a complex, interrelated master "schedule" as the Government suggests, but merely proof to a "reasonable certainty" of a plaintiff's costs attributable to the Government's breach. Id. at 8 (citing Energy Capital Corp. v. United States, 302 F.3d 1314, 1325 (Fed. Cir. 2002)).

perform its contractual obligations. A finding in this regard is conceptually and factually distinct from any ruling the Court may render for ENGC on the acceptance rate as a "missing term" of the Standard Contract that must be supplied under the Restatement (Second) of Contracts § 204, as this Court did in Indiana Michigan Power Co. v. United States, 57 Fed. Cl. 88, 96 (2003).

ENGC accepts the pre-trial schedule proposed by the parties herein, noting that ENGC continues to seek the right to submit an expert report and contentions of fact and law after BECO and the Government have submitted theirs. ENGC still cannot yet discern whether it will need to prepare any of these submissions for the Court in BECO's case until BECO's legal theories and the Government's defenses (including any setoff claims) are more concretely formed and disclosed.

BOSTON EDISON COMPANY'S POSITION:

Plaintiff BECO concurs in the conclusions articulated by ENGC above for the reasons stated by BECO during the December 20, 2005 hearing. In particular, BECO agrees that ENGC's role in this litigation is, by its very nature, limited, and that accordingly, requiring ENGC to file an expert report (if any) concurrently with BECO could impose an undue burden on both plaintiffs. Accordingly, BECO respectfully requests that the Court adopt the schedule as proposed and agreed upon by ENGC and BECO.

GOVERNMENT'S POSITION:

Notwithstanding its assertions to the contrary, ENCG's statements amount to nothing more than a veiled request for the Court to reconsider its decision to consolidate this matter for purposes of contract formation, contract implementation up to the time of

the sale of the Pilgrim facility and BECO's diminution in value claim against DOE and the Government's attendant offset claim against ENCG. The Court has now twice stated its reasons for that decision in very clear terms: once in its July 29, 2005 Order regarding defendant's motion to consolidate, and again during the Court's December 20, 2005 hearing on this matter. In addition to being an improperly pled motion for reconsideration, which the Court should not consider, ENGC's request is without merit.

ENCG begins its request for reconsideration with the premise that unlike ENCG, which must prove the rate of acceptance that DOE was obligated to satisfy under the Standard Contract, "no such demonstration is necessary for BECO to prove its diminution in value claim against the Government." This assertion is nonsense. As we pointed out during the Court's December 20, 2005 hearing, the only way for the Court to measure BECO's damages in this matter is to determine what performance DOE was obligated to satisfy without the breach and measure it against the costs, if any, that BECO incurred as a result of that breach. As the Court has noted, BECO is requesting an award of damages for the alleged diminution of value of the Pilgrim facility and storage costs associated with SNF. See Boston Edison Co. v. United States, 64 Fed. Cl. 167, 184 (2005). To properly measure those alleged damages, the Court must compare the costs that BECO incurred in the actual world against what BECO would have incurred in the but-for world. Without a baseline derived from determining DOE's contractual obligations under the Standard Contract, there would be no way for the Court to derive damages, if any, in this case.[4] Indeed, the Court need look no further than the parties'

[4] ENGC's position appears to be contradicted by BECO, which stated in its insert to the December 2, 2005, Joint Preliminary Status report that "Entergy should not be

complaints to see their inherent agreement with this principle. As we also pointed out during the December 20, 2005 hearing, BECO and ENCG both point to DOE's breach of its obligations under the Standard Contract as the cause of their respective damages. See BECO Amended Compl ¶ 59; ENCG Compl ¶ 21. To determine those damages, the Court must determine the nature and extent of DOE's contractual obligations.[5] That includes issues such as the rate of acceptance that would have met those obligations.[6]

Because both BECO and ENCG concede, as they must, that their suits arise from the same transaction entered into on the same date, it is only logical to try the issue of contract formation in one hearing in the above-captioned matter.[7] Similarly, because ENCG did not become a party to the Standard Contract until after it purchased the

---

required to demonstrate what a 'but for' world would have looked like absent the Government's breach . . . ." JPSR at 2.

[5] ENCG also argues that determining an acceptance rate in this matter "sheds no light" on Boston Edison's damage claim "[b]ecause neither ENGC nor BECO knew in 1999 what the acceptance rate would be once DOE actually began to perform . . . ." This argument misses the point that, to measure damages for either BECO or ENCG, the Court must determine DOE's contractual obligations under the Standard Contract at the time of contract formation, and how DOE could have performed in the but-for world. Contract performance beginning after January 31, 1998, the date required under the Standard Contract, as discussed by ENCG, is irrelevant to that determination. Further, despite ENCG's assertions to the contrary, BECO's and ENCG's subjective understanding of what they allege to have thought DOE's performance obligations were cannot form the basis of a damages award against the United States. Any damages award must be tied to DOE's breach of actual contract requirements.

[6] As the Court has also noted, BECO further asserts damages based upon a lower value of exchange rights under the Standard Contract. See Boston Edison Co., at 64 Fed. Cl. 184. Obviously, DOE's rate of acceptance of SNF under the Standard Contract would directly effect the value of those rights.

[7] Contrary to ENCG's suggestion, the Government's concern is not only that trying the issue of the rate of acceptance may lead to "inconsistent" rulings. Instead, as the Court pointed out during the December 20, 2005 hearing, trying the rate of acceptance twice is unnecessary and indeed improper because the Court's determination of the rate of acceptance in the above-captioned matter will have a *res judicata* affect in any subsequent trial involving ENCG's alleged damages. Transcript of Status Conference at 54 (Dec. 20, 2005).

Pilgrim facility from BECO, the issue of contract implementation should also be tried in the above-captioned matter. Finally, because any recovery to BECO must be offset by duplicative claims brought by ENCG, to the extent possible, the Court should determine those offsets in this matter. Accordingly, the Court should deny ENCG's request that the Court reconsider its July 29, 2005 Order regarding consolidation.[8]

Respectfully submitted,

s/ Richard J. Conway
RICHARD J. CONWAY
Dickstein Shapiro Morin & Orshinsky LLP
2101 L Street, N.W.
Washington, D.C. 20037
Tel: 202-828-2235
Fax: 202-887-0689

Counsel for Plaintiff Boston Edison Company

s/ Alex D. Tomaszczuk
ALEX D. TOMASZCZUK
Pillsbury Winthrop Shaw Pittman LLP
1650 Tysons Blvd
McLean, VA 22102

Counsel for Plaintiff Entergy Nuclear Generation Company

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director

s/ Alan J. Lo Re
ALAN J. LO RE
Senior Trial Counsel
Department of Justice
Civil Division
Commercial Litigation Branch
1100 L Street, N.W.
ATTN: Classification Unit, 8th Floor
Washington, D.C. 20530
Tel: 202-307-0226
Fax: 202-307-2503

[8] ENCG's assertion that it has not included the storage of GTCC as damages because the Pilgrim Plant has not generated any GTCC, and thus the Court need not address whether DOE is contractually bound to accept GTCC under the Standard Contract, is also incorrect. Because DOE believes the Standard Contract does not obligate it to accept GTCC, DOE is not currently planning to accept that material under the Standard Contract's oldest fuel first ("OFF") acceptance queue. Therefore, regardless of whether the Pilgrim Plant possesses GTCC, this Court must make a determination regarding DOE's obligation to accept such material because the requirement to accept GTCC would require DOE to place that material on the OFF queue which could affect the acceptance queue for SNF stored at the Pilgrim Plant.

OF COUNSEL:
JOSHUA E. GARDNER
Trial Attorney
Civil Division
Department of Justice
1100 L Street, NW
Washington, D.C. 20530

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

January 12, 2006

Counsel for Defendant

CERTIFICATE OF FILING

I hereby certify that on this 12th day of January, 2006, a copy of foregoing "PROPOSED SCHEDULING ORDER" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Alan J. Lo Re