**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| **BOSTON EDISON COMPANY**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**THE UNITED STATES,**<br><br>**Defendant.** | **No. 99-447C**<br>**No. 03-2626C**<br>**(Judge Charles F. Lettow)** |
| **ENTERGY NUCLEAR GENERATION CO.,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**THE UNITED STATES,**<br><br>**Defendant.** | |

**PLAINTIFF BOSTON EDISON COMPANY'S**
**MOTION FOR A PROTECTIVE ORDER**

Pursuant to Rule 26(c) of the Rules of the United States Court of Federal Claims ("RCFC"), Plaintiff Boston Edison Company ("Boston Edison") hereby moves this Court for a protective order in connection with a notice of deposition issued by Defendant, the United States in this action.[1] As discussed in greater detail below, the Government has noticed the deposition of Nicholas W. Mattia, Jr., counsel at Dickstein Shapiro LLP ("Dickstein Shapiro"), regarding his prior work as a consultant engaged by Boston Edison with respect to Boston Edison's sale of the Pilgrim Nuclear Power Station ("Pilgrim"). Mr. Mattia is a critical member of Dickstein

[1] Pursuant to RCFC 26(c), counsel for Boston Edison hereby certifies that counsel has conferred on multiple occasions with counsel for the Government in an effort to resolve the dispute without court action. Despite these efforts, the parties were unable to resolve their dispute regarding the deposition of Mr. Mattia.

Shapiro's litigation team for Boston Edison in this case, and as such, the Government is required to overcome a significant burden imposed before deposing Mr. Mattia.

Under the test adopted by the United States Court of Federal Claims, the Government must show that: "(1) no other means exist to obtain the information than to depose [Mr. Mattia]; (2) the information sought is relevant and non-privileged; and (3) the information is crucial to the preparation of [the Government's] case." *Sparton Corp. v. United States*, 44 Fed. Cl. 557, 563 (1999) (citing *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986)). The Government cannot meet this burden. As discussed in greater detail below, Mr. Mattia's deposition would cause undue hardship and burden on Boston Edison, and would not yield *any* unique or non-duplicative testimony that could not otherwise be obtained from other witnesses. Accordingly, Boston Edison respectfully requests that this Court grant a protective order barring the Government from deposing Mr. Mattia.

## BACKGROUND

This case involves the Government's breach of the Standard Contract under the Nuclear Waste Policy Act of 1982, Pub. L. No. 97-425, 96 Stat. 2202 (Jan. 7, 1983) and the impact of that breach on Boston Edison's sale of Pilgrim in 1998.[2] Mr. Mattia worked as a consultant for Navigant Consulting, Inc. (formerly Reed Consulting Group) from 1998 to 2001. During this period, one of Mr. Mattia's responsibilities was to serve as a member of the Pilgrim auction team on behalf of Boston Edison. In this capacity, Mr. Mattia functioned as a non-lawyer and worked with numerous Navigant and Boston Edison employees, as well as numerous outside consultants and potential bidders. Subsequent to the sale of Pilgrim, numerous consultants (including Mr. Mattia) left Navigant and formed Concentric Energy Advisors

---

[2] The Court provided an in depth summary of the facts of this case in its February 15, 2005 decision denying the Government's motion for summary judgment. *Boston Edison Company v. United States*, 64 Fed.Cl. 167 (February 15, 2005).

("CEA"). Mr. Mattia became a principal of CEA in 2001, where he remained until becoming affiliated with Dickstein Shapiro in 2003. Since joining Dickstein Shapiro, Mr. Mattia has served as a critical member of the team directly representing Boston Edison as its counsel in this matter, as well as representing several other utilities with other Spent Nuclear Fuel ("SNF") cases currently pending before this Court.

The Government's interest in Mr. Mattia's role in this case was first raised during a status conference before the Court on December 20, 2005.[3] Responding to Boston Edison's concerns regarding Navigant's role as a consultant to the Government in this litigation (***see*** Exhibit A at 74-75), counsel for the Government took issue with Mr. Mattia's involvement as counsel for Boston Edison. ***Id.*** Several months later, on September 18, 2006, Boston Edison sent a letter to the Government revisiting its concerns regarding the role of Navigant, Boston Edison's former auction agent, as a litigation consultant for the Government.[4] The Government responded by letter dated September 27, 2006 and once again raised Mr. Mattia's role in this litigation.[5] The September 27, 2006 letter is the first indication of the Government's intention to depose Mr. Mattia. ***Id.*** Subsequently, Boston Edison explained to the Government in writing and in person the inherent risks that accompany the deposition of its counsel, including the possible infringement upon the attorney-client privilege or attorney work product.[6] Boston Edison has also explained that this risk, and the accompanying burden on Boston Edison to

[3] A true and correct copy of the transcript of that proceeding is attached hereto as Exhibit A.

[4] A true and correct copy of the September 18, 2006 letter is attached hereto as Exhibit B.

[5] A true and correct copy of the September 27, 2006 letter is attached hereto as Exhibit C. Although the Government informed Boston Edison in its letter that it was "investigating whether any conflict of interest existed" as a result of Navigant's prior engagement for Boston Edison and its current engagement as a consultant for the Government in this matter, it is still unclear whether such a conflict exists. Boston Edison reserves its rights to challenge Navigant's role as a consultant to the Government in this matter.

[6] A true and correct copy of Boston Edison's September 29, 2006 letter is attached hereto as Exhibit D.

prepare, produce, and defend Mr. Mattia, is unnecessary given that his testimony would be essentially duplicative of the witnesses Boston Edison has already produced or will soon produce. On November 17, 2006, counsel for the Government indicated that it intended to depose Mr. Mattia regarding "the time he served as the auction agent at Reed Consulting Group in connection with the Pilgrim sale during the late 1990s."[7] Once again, the Government failed to demonstrate why the information it seeks from Mr. Mattia cannot be obtained from other witnesses.

For example, the Government has already deposed, for two days, John Reed, the Chairman and Chief Executive Officer of CEA, and Mr. Mattia's direct supervisor during the Pilgrim auction. At his deposition, the Government was able to depose Mr. Reed regarding the scope of Mr. Mattia's work while at CEA. At no time did Mr. Reed indicate that Mr. Mattia was the exclusive source of relevant information, nor did Mr. Reed testify that he could not remember information that could otherwise only be obtained from Mr. Mattia. The Government has also deposed Geoffrey Lubbock, the Vice President, Financial Strategic Planning at NSTAR, Boston Edison's parent company. Mr. Lubbock was Mr. Mattia's client contact and another individual to whom Mr. Mattia reported with respect to the auction. Like Mr. Reed, Mr. Lubbock gave no indication that Mr. Mattia was the exclusive source of knowledge regarding aspects of the auction, nor did he testify that he could not remember information that could otherwise only be obtained from Mr. Mattia. Similar lines of questioning have been pursued by the Government with Marc Potkin, a former Boston Edison employee; Charlie Lewis, a former employee of Amergen (an unsuccessful bidder for Pilgrim); and Rod Knight, one of Boston Edison's decommissioning consultants. No witness to date has indicated that Mr. Mattia is the exclusive source of any facts whatsoever.

[7] A true and correct copy of the Government's November 17, 2006 letter is attached hereto as Exhibit E.

In addition to the depositions taken to date, the Government is currently scheduled to depose at least ten additional witnesses regarding the Pilgrim auction over the course of the next month and a half. Given the ongoing nature of discovery in this matter, it is impossible for the Government to suggest that the information it seeks to obtain from Mr. Mattia cannot be obtained from any other source. Instead, the Government continues to press for Mr. Mattia's deposition, insisting that it is entitled to yet another fact deposition in addition to the many fact witnesses already deposed and the many that will be produced in the coming months. As explained below, such cumulative discovery efforts are disfavored by this Court, particularly when the deposition being sought is of a party's legal counsel. Accordingly, Boston Edison respectfully requests that the Court enter a protective order precluding the Government from deposing Mr. Mattia in this matter.

## ARGUMENT

### I. THE GOVERNMENT CANNOT ESTABLISH THE FACTORS NECESSARY TO DEPOSE BOSTON EDISON'S COUNSEL

This Court has the discretion to limit or preclude pretrial discovery if it determines that "justice requires ... [the] protect[ion of] a party or person from annoyance, embarrassment, oppression, or undue burden or expense ..." RCFC 26(c). A party seeking to shield itself must show "good cause" for a protective order, and this Court has recognized that "'good cause' is implicit when a party seeks to preclude its own attorney's deposition testimony." *Sparton*, 44 Fed. Cl. at 561 (citations omitted). Boston Edison has made such a showing.

To overcome "good cause," the party seeking the deposition must show "both the propriety and need for the deposition." *Id.* (citations omitted). This Court has adopted the Eighth Circuit's test for establishing "propriety and need" when the deposition of a party's

attorney is sought. *Id.* at 563 (citing *Shelton*).[8] Here, every factor of that test weighs in favor of a protective order. First, the information the Government seeks is available, and will be made available, from several "other means," *id,* and therefore, there is no need to depose Mr. Mattia. Second, Mr. Mattia's deposition will necessarily involve privileged information and information prepared in anticipation of litigation. *Id.* Third, the Government cannot show that the information Mr. Mattia possesses is even non-duplicative, much less "crucial to the preparation of [its] case." *Id.* There is simply no reason to impose upon Boston Edison the burden and risk of producing its counsel.

---

[8] *See also, e.g.*, *Chesher v. Allen*, 122 Fed. Appx. 184, 188 (6th Cir. 2005); *Theriot v. Parish of Jefferson*, 185 F.3d 477, 491 (5th Cir. 1999); *Boughton v. Cotter Corp.*, 65 F.3d 823, 829-31 (10th Cir. 1995); *Nocal, Inc. v. Sabercat Ventures, Inc.*, No. C 04-0240 PJH(JL), 2004 WL 3174427, at *2-*3 (N.D. Cal. Nov. 15, 2004); *Stalling v. Union Pac. R.R. Co.*, No. 01 C 1056, 2004 WL 783056, at *3 (N.D. Ill. Jan. 23, 2004); *Smith v. United States*, 193 F.R.D. 201, 214-16 (D. Del. 2000); *Corp. for Pub. Broad. v. Am. Auto. Centennial Comm'n*, No. 1:97CV01810, 1999 WL 1815561, at *1-*2 (D.D.C. Feb. 2, 1999); *In the Matter of Certain Ammonium Octamolybdate Isomers*, USITC Inv. No. 337-TA-477, Order No. 14, 2003 WL 255738 (U.S.I.T.C. Jan. 3, 2003); *In the Matter of Hoechst Marion Roussel, Inc.*, Docket No. 9293, 2000 WL 33944050 (F.T.C. Nov. 8, 2000); *United States v. Nw. Airlines, Inc.*, OCAHO Case No. 90200336, 3 OCAHO 452, 1992 WL 535608, at *2-*3 (O.C.A.H.O. Sept. 10, 1992).

In addition, a leading treatise has noted the significant reasons for disallowing such depositions:

> [T]here nevertheless are practical consequences that the court must consider in determining whether to permit such depositions; in particular, whether the testimony of the attorney of record will ultimately require the attorney to remove himself or herself as counsel, thereby unduly prejudicing the client's case. . . . In addition to disrupting the adversarial system, such depositions have a tendency to lower the standards of the profession, unduly add to the cost and time spent in litigation, personally burden the attorney in question, and create a chilling effect between the attorney and client. . . . Furthermore, to permit an attorney on one side to become the inquisitor of an attorney on the other side carries a strong risk of friction between the attorneys.

10 Fed. Proc., L. Ed. § 26:264, comment (2006) (footnotes omitted).

**A. The Government Can Obtain Identical Information from Sources Other Than Mr. Mattia.**

In *Sparton*, this Court granted a protective order barring the deposition of a party's attorney because, in part, the plaintiff, the party seeking the deposition, had not satisfied the first prong of the *Shelton* test: that the information was not otherwise available. *Sparton*, 44 Fed. Cl. at 563. The plaintiff failed to show that the attorney's deposition was "the *only* means" of obtaining the needed information. *Id.* (emphasis in original). It was not enough for the plaintiff to allege that the attorney had "all the information" the plaintiff sought, or even that there was "no better deponent" with respect to the topics in question. *Id.* Notably, the court found the first prong of the *Shelton* test unsatisfied because the plaintiff had "not demonstrated that an adequate effort was made to obtain the information it seeks from alternate sources before seeking to depose" the opposing party's attorney. *Id.* The court explained that the plaintiff had "not demonstrated that the information sought was not available from other potential witnesses who were not directly involved in counseling parties to this litigation. The failure to show that other avenues of discovery have been exhausted necessarily detracts from [the plaintiff's] argument that the information sought is not available elsewhere." *Id.*

The Government makes the same failure here. Boston Edison has produced and will produce several witnesses who are not its counsel and who are capable of providing the same information Mr. Mattia possesses. As the information being sought is clearly "available elsewhere," the Government cannot establish even the first prong of this test, and a protective order is appropriate. *Contrast King-Fisher Co. v. United States*, 58 Fed. Cl. 570, 571-72 (2003) (denying motion for protective order where attorney admitted in open court that he alone possessed the relevant information; ordering attorney's deposition). The remaining *Shelton* factors similarly illustrates that the Government is incapable of satisfying its burden.

### B. The Information the Government Seeks Will Necessarily Run Afoul of the Attorney-Client Privilege and the Work Product Doctrine

The Government's assertion that it seeks only non-privileged information is belied by its insistence upon deposing duplicative witnesses. While the Government will doubtless argue that its questions can be neatly limited to Mr. Mattia's non-legal consulting for Boston Edison, in reality, those facts are inseparable from Boston Edison's trial strategy and communications with Dickstein Shapiro. As Boston Edison's litigation counsel, Mr. Mattia is well aware of the impact that his characterizations of past facts will have on his client's current case. He must undertake the near-impossible task of answering the Government's questions without jeopardizing his client's trial strategy and the confidentiality of his subsequent communications.

Moreover, the disruption that will result from the Government's deposition of Mr. Mattia will have a materially negative impact on Boston Edison's discovery and trial preparation efforts. Mr. Mattia is actively involved in numerous aspects of Boston Edison's case, including deposition preparation, review of documents, preparation of experts and rebuttal expert reports, the examination of witnesses, and other trial preparation activities. To the extent the Government were permitted to pursue his deposition, Mr. Mattia would be required to alter substantially his ongoing activities in order to adequately prepare for and attend his deposition. Such prejudice to a litigant is one of the policy considerations behind the judicial rule disfavoring the deposition of a litigant's attorney.

Additionally, with nearly ten years having passed since his work as a consultant for Boston Edison, Mr. Mattia cannot reasonably be expected to segregate which facts he learned as a result of his consulting relationship with Boston Edison and which facts he has learned through his extensive discovery activities, trial preparations, and attorney-client communications in which he has engaged since becoming counsel to Boston Edison in this litigation. That process would be incredibly burdensome, if not impossible, and is completely unnecessary. The

Government's insistence upon Mr. Mattia's deposition threatens to compromise both Boston Edison's communications with Dickstein Shapiro and Dickstein Shapiro's ongoing discovery efforts and preparations for trial. Mr. Mattia should not be asked to assume this risk in light of the fact that there are several witnesses who can relay the same facts without endangering the attorney-client privilege or running afoul of the attorney work product doctrine. The Government should not be permitted to needlessly burden Boston Edison in this manner.

### C. Mr. Mattia Can Offer No Unique or "Crucial" Information

The argument that a witness' testimony may "bolster" a party's case "or otherwise support its claims" is "insufficient" to satisfy the third prong of the *Shelton* test. *Sparton*, 44 Fed. Cl. at 568. "[T]hat rationale is insufficient to permit invasion of an attorney's preparation of a client's case." *Id.* (citing *Hickman v. Taylor*, 329 U.S. 495, 495 (1947)). As explained above, several other witnesses are better suited than Mr. Mattia to serve as sources of the information sought. The availability of other witnesses makes Mr. Mattia's deposition at best, futile and duplicative. Thus, the Government can hardly establish, as it must, that Mr. Mattia's deposition will provide "crucial" information. This too is an independent basis upon which to grant Boston Edison a protective order.

### D. Mr. Mattia's Inclusion in Boston Edison's Rule 26 Disclosures Do Not Alter The Court's Analysis

The Government's sole basis for arguing its right to depose Mr. Mattia is Boston Edison's inclusion of Mr. Mattia in its Rule 26 initial disclosures. *See* Exhibit C at 1-2 and Exhibit E at 1. Indeed, the Government states that Boston Edison identified Mr. Mattia "as a key percipient fact witness" in its disclosures. *Id.* This is simply not true. Rather, Mr. Mattia, along with numerous other individuals (including former outside counsel for Boston Edison during the Pilgrim sale), was simply identified as one of many individuals with knowledge regarding the facts underlying this matter. At no time has Boston Edison indicated that it will call Mr. Mattia

as a witness. It will not. Rather, Mr. Mattia was listed in the interest of full disclosure and in furtherance of Boston Edison's efforts to fully comply with its obligations pursuant to Rule 26.

It is clear that the listing of an individual on a Rule 26 disclosure does not waive the right to the attorney-client privilege, work product doctrine, or any other protection, nor does it establish a right to depose any individual listed. 1 Paul Lisnek & Michael Kaufman, Depositions: Procedure, Strategy & Technique § 6 (3d ed. 2006); *see also* RCFC 26(b)(1) (permitting discovery of all non-privileged material); RCFC 26(b)(2) (providing for limitation of discovery if "the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient [or] less burdensome," if "the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought" or if "the burden and expense of the proposed discovery outweighs its likely benefit"). The Government can point to no authority holding that the inclusion of an attorney on a Rule 26 disclosure in any way alters the *Shelton* test as adopted by this Court. Since the Government cannot meet the *Shelton* test, its reference to Boston Edison's disclosures is irrelevant.

## CONCLUSION

For the reasons stated above, Boston Edison respectfully requests that the Court grant it a protective order barring the Government from deposing Boston Edison's counsel, Mr. Mattia, and for such other and further relief as the Court deems proper.

Date: November 20, 2006

Respectfully submitted,

s/ Richard J. Conway
Richard J. Conway
DICKSTEIN SHAPIRO LLP
1825 Eye Street NW
Washington, D.C. 20006
(202) 420-2200

*Counsel of Record for Boston Edison Company*

Of Counsel:

Nicholas W. Mattia, Jr.
Bradley D. Wine
Bernard F. Sheehan
Lisa M. Barbas
DICKSTEIN SHAPIRO LLP
1825 Eye Street NW
Washington, D.C. 20006
(202) 420-2200

Neven Rabadjija, Esq.
Associate General Counsel
NSTAR Electric & Gas Corporation
800 Boylston Street
17th Floor
Boston, MA 02199-0228

**NOTICE OF ELECTRONIC FILING**

I hereby certify that on November 16, 2006, a copy of the foregoing "Plaintiff Boston Edison Company's Motion for a Protective Order" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.