Nos. 99-447C and 03-2626C
(Judge Lettow)

---

IN THE UNITED STATES COURT OF THE FEDERAL CLAIMS

---

BOSTON EDISON COMPANY,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

ENTERGY NUCLEAR GENERATING COMPANY,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

---

DEFENDANT'S RESPONSE TO BOSTON EDISON COMPANY'S
MOTION FOR A PROTECTIVE ORDER AND CROSS-MOTION TO COMPEL

---

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

HAROLD D. LESTER, JR.
Assistant Director

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

JOSHUA E. GARDNER
SCOTT R. DAMELIN
PATRICK B. BRYAN
SONIA M. ORFIELD
Trial Attorneys
Department of Justice

ALAN J. LO RE
Senior Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 307-0226
Fax: (202) 307-2503

**TABLE OF CONTENTS**

**PAGE(S)**

TABLE OF AUTHORITIES . . . . . ii

INDEX TO APPENDIX . . . . . iii

BACKGROUND . . . . . 1

SUMMARY OF ARGUMENT . . . . . 6

DISCUSSION . . . . . 7

I. GENERALLY, A DEFENDANT IS ENTITLED TO OBTAIN DISCOVERY REGARDING ANY NON-PRIVILEGED MATTER RELEVANT TO ITS DEFENSE . . . . . 7

II. THE THREE-PART TEST ARTICULATED BY THE COURT IN *SHELTON* IS NOT APPLICABLE TO THE GOVERNMENT'S REQUEST TO DEPOSE MR. MATTIA . . . . . 8

A. Boston Edison's Reliance on The *Shelton* Test is Misplaced . . . . . 8

B. The Government's Request To Depose Mr. Mattia Is Not Based Solely Upon The Inclusion Of Mr. Mattia in Boston Edison's Initial Disclosures . . . . . 14

C. Boston Edison's Assertion That Mr. Mattia's Deposition Will Reveal Or Expose Privileged and Protected Information Is Misplaced . . . . . 14

III. EVEN IF THE *SHELTON* TEST IS APPLICABLE TO THE GOVERNMENT'S REQUEST TO DEPOSE MR. MATTIA, THE GOVERNMENT HAS SATISFIED THE THREE-PART TEST . . . . . 17

A. Mr. Mattia May Provide Testimony That Cannot be Obtained By Other Means . . . . . 17

B. The Information Sought From Mr. Mattia Is Relevant And Non-Privileged . . . . . 20

C. The Information Sought From Mr. Mattia Is Crucial To The Preparation Of The Government's Defenses To Boston Edison's Claims . . . . . 20

D. The Deposition of Mr. Mattia Would Not Adversely Affect Boston Edison's Discovery Efforts and Trial Preparations . . . . . 21

CONCLUSION . . . . . 22

## TABLE OF AUTHORITIES

### CASES

**PAGE(S)**

Bogan v. Northwestern Mutual Life Insurance Co.,
152 F.R.D. 9 (S.D.N.Y. 1993) .......... 10, 16, 20

Cipollone v. Liggett Group, Inc.,
785 F.2d 1108 (3rd Cir. 1986) .......... 8

Heat & Control, Inc. v. Hester Industries, Inc.,
785 F.2d 1017 (Fed. Cir. 1986) .......... 8

Hickman v. Taylor,
329 U.S. 495 (1947) .......... 7

International Graphics, Div. of Moore v. United States,
3 Cl. Ct. 715, 717 (1983) .......... 8

Johnston Development Group, Inc. v. Carpenters Local 1578,
130 F.R.D. 348 (D.N.J. 1990) .......... 20

Kaiser v. Mutual Life Insurance Co. of New York,
161 F.R.D. 378 (S.D. Ind. 1994) .......... 10, 20

King-Fisher Co. v. United States,
58 Fed. Cl. 570 (2003) .......... 11, 17

Pamida, Inc. v. E.S. Originals, Inc.,
281 F.3d 726 (8th Cir. 2002) .......... 11, 12

Shelton v. American Motors Corp.,
805 F.2d 1323 (8th Cir. 1986) .......... passim

Sparton Corp. v. United States,
44 Fed. Cl. 557 (1999) .......... passim

Speller v. United States,
14 Cl. Ct. 170, 172 (1988) .......... 8

United States v. Phillip Morris, Inc.,
209 F.R.D. 13 (D.D.C. 2002) .......... 11, 13

## INDEX TO APPENDIX

**PAGE(S)**

1. Letter from Patrick B. Bryan to Richard J. Conway and Bradley D. Wine (Nov. 17, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . ... . . . . . . . . . . . . . . . . . . . . . . A1-A2

2. Boston Edison Company Nuclear Generation Business Unit Divestiture Plan, Reed Consulting Group, Excerpt (Apr. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .A3-A5

3. Affidavit of Nicholas W. Mattia, Jr., Proceeding before the Massachusetts Department of Telecommunications and Energy, Docket No. 98/118/119/126 (Jan. 8, 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A6-A10

4. Biography of Nicholas W. Mattia, Jr., Dickstein Shapiro LLP, available at http://www.dicksteinshapiro.com/mattian/html (Nov. 29, 2006) . . . . . . . . . . . . . . . . . . A11

5. Boston Edison Co. Rule 26 Initial Disclosures, Excerpt (Mar. 31, 2006) . . . . . . .A12-A22

6. Deposition Transcript of John J. Reed, Boston Edison Co. v. United States, No. 99-447C, and Entergy Nuclear Generation Co. v. United States, No. 03-2626C, Excerpts (Oct. 3-4, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A23-A48

7. Deposition Transcript of Lisa Quilici, Boston Edison Co. v. United States, No. 99-447C, and Entergy Nuclear Generation Co. v. United States, No. 03-2626C, Excerpts (Nov. 29, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A49-A60

8. Deposition Transcript of Geoffrey O. Lubbock, Boston Edison Co. v. United States, No. 99-447C, and Entergy Nuclear Generation Co. v. United States, No. 03-2626C, Excerpts (Oct. 5, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A61-A72

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| BOSTON EDISON COMPANY,<br>Plaintiff,<br>v.<br>UNITED STATES,<br>Defendant. | |
| ENTERGY NUCLEAR GENERATION CO.,<br>Plaintiff,<br>v.<br>UNITED STATES OF AMERICA,<br>Defendant. | No. 99-447C<br>No. 03-2626C<br>(Judge Lettow) |

DEFENDANT'S RESPONSE TO PLAINTIFF BOSTON EDISON COMPANY'S MOTION FOR A PROTECTIVE ORDER AND CROSS-MOTION TO COMPEL

Defendant, the United States, respectfully responds to the motion for a protective order that plaintiff, Boston Edison Company ("Boston Edison"), filed on November 20, 2006, and cross moves to compel Nicholas Mattia's fact deposition.

## BACKGROUND

Boston Edison's damages claim centers on its sale of the Pilgrim Nuclear Power Station ("Pilgrim") to Entergy on July 13, 1999, following a competititve auction and bidding process conducted by the Reed Consulting Group on behalf of Boston Edison. Boston Edison filed its original complaint in this case on July 12, 1999, one day prior to the closing date for its sale of Pilgrim, and five years later, filed an amended complaint. In its amended complaint, filed

January 13, 2004, Boston Edison alleges three counts against the Government. First, it claims that the Government committed a partial breach of the Standard Contract by failing to begin performance of its obligations under the Standard Contract by January 31, 1998. Am. Compl. ¶¶ 72-75.[1] Second, Boston Edison claims that the Government breached its implied covenant of good faith and fair dealing by "failing to take appropriate action to meet its contractual commitment to begin accepting Boston Edison's [spent nuclear fuel] for disposal by January 31, 1998." Id. ¶¶ 76-79. Third, Boston Edison alleges that the requirement that it store SNF on its property constitutes an uncompensated taking. Id. ¶¶ 80-84. Boston Edison claims that, as a result of the Government's partial breach of the Standard Contract and the breach of the implied covenant of good faith and fair dealing, as well as its takings claim, the value of the Pilgrim plant was diminished. Id. ¶¶ 60, 75, 79, 83.

Boston Edison alleges, in support of its diminution in value claim, that "Pilgrim's value was significantly diminished when it became apparent that DOE would not begin accepting and removing [spent nuclear fuel] by January 31, 1998," and that Boston Edison "realized significantly less value in the sale of Pilgrim" because the number of bidders was reduced and because the bidders reduced "their price in order to account for the increased risk associated with the uncertain life expectancy and the anticipated capital expenses associated with storing [spent nuclear fuel] indefinitely." Am. Compl. ¶ 6. Boston Edison further claims that the Government's "breach of the Standard Contract severely diminished the market value of Boston

---

[1] "Am. Compl. ¶ __" refers to the amended complaint that Boston Edison filed on January 13, 2004. "Pl. Mot. __" refers to Boston Edison Motion for a Protective Order. "Reed Tr. __" refers to the deposition transcript of John Reed. "Quilici Tr. __" refers to the deposition transcript of Lisa Quilici. "Lubbock Tr. __" refers to the deposition transcript of Geoffrey Lubbock. "A__" refers to the appendix to this response and cross-motion.

Edison's nuclear facilities as reflected in the purchase price and other terms of the sales transaction, including the requirement to excessively fund the decommissioning trust accounts" and that "Boston Edison also incurred additional pre-closing costs and other damages associated with interim storage of [spent nuclear fuel]." Am. Compl. ¶ 75.

As part of the process to sell the Pilgrim plant, as well as Boston Edison's entire nuclear generating business unit, Boston Edison engaged the services of the Reed Consulting Group[2] to work as part of the Pilgrim auction team. Pl. Mot. 2; A25-A27, A28 (Reed Tr. 68:3-70:13; 122:19-22). From 1998 to 2001, a period of time encompassing the Pilgrim auction and sale, Mr. Mattia worked for Reed Consulting in a non-legal capacity on the Pilgrim matter. Pl. Mot. 2. Reed Consulting, upon behalf of Boston Edison, functioned as a central and integral actor in the auction and sale process between Boston Edison and the bidders for Pilgrim, which included marketing Boston Edison's nuclear assets, engaging bidders through two phases of the auction process, and working with Boston Edison and Entergy to close the Pilgrim sale and complete the Purchase and Sale Agreement between Boston Edison and Entergy. Am. Compl. ¶¶ 50-55; A25-A27, A28 ( Reed Tr. 68:3-70:13; 122:19-22).

Along with John J. Reed,[3] the president and chief executive officer of Reed Consulting at the time of the Pilgrim auction and sale, and an expert witness for Boston Edison in this case,

---

2/ In 1997, Navigant Consulting, Inc., acquired the Reed Consulting Group. The majority of the documentation produced to the Government concerning the Pilgrim auction and sale references Reed Consulting, not Navigant.

3/ Since 2002, Mr. Reed has served as Chairman and Chief Executive Officer of Concentric Energy Advisors, Inc. From 1997 to 2002, Mr. Reed work for Navigant Consulting, Inc., and was the President of Reed Consulting Group, Inc. in 1997 and 1998. Mr. Reed was Chairman, President and Chief Executive Officer of Reed Consulting Group from 1988 to 1997. Navigant acquired Reed Consulting Group in 1997.

Mr. Mattia was the "Reed [Consulting] officer responsible for the management of the sales processes on behalf of Boston Edison with regard to the auctioning of the Pilgrim Nuclear Power Station" and was the "responsible officer at [Reed Consulting] for the preparation and development of data responses" in proceedings before the Massachusetts Department of Telecommunications and Energy concerning Boston Edison's divestiture of the Pilgrim plant. A6-A10 (Affidavit of Nicholas W. Mattia, Jr., Proceeding Before the Massachusetts Department of Telecommunications and Energy Concerning Boston Edison Company, Docket. No. 98-118/119/126) (Jan. 8, 1999).

In 2003, Mr. Mattia joined the law firm of Dickstein Shapiro LLP. Pl. Mot. 3. Richard Conway of Dickstein Shapiro is currently counsel of record for Boston Edison in this case,[4] and Mr. Mattia is identified as "of counsel" on Boston Edison's Amended Complaint and other court filings. Mr. Mattia's biography, posted on the Dickstein Shapiro LLP website, states, in part, that "[h]e was responsible for the first successful commercial divestiture via public auction of a nuclear power facility in the United States." A11 (Biography of Nicholas W. Mattia, Jr., *available at* http://www.dicksteinshapiro.com/mattian/html (last visited Nov. 29, 2006). The divestiture referenced in Mr. Mattia's biography is Boston Edison's sale of its nuclear generation business unit, including the Pilgrim plant.

In its motion for a protective order, Boston Edison described Mr. Mattia's involvement in the Pilgrim sale, as a member of the Pilgrim auction team working upon behalf of Boston Edison, as follows: "Mr. Mattia functioned as a non-lawyer and worked with numerous Navigant and Boston Edison employees, as well as numerous outside consultants and potential bidders."

---

4/ Originally, Alex D. Tomaszczuk of Shaw Pittman LLP was counsel of record.

Pl. Mot. 2; A (Reed Tr. 133:18-134:1). The Government's review of the documents that Boston Edison, Entergy and AmerGen (an unsuccessful final bidder for Pilgrim) produced during the discovery process reveals that Mr. Mattia's name appears approximately 495 times in 190 documents. In its RCFC 26 Initial Disclosures, served on the Government on March 31, 2006, Boston Edison identified Mr. Mattia as an individual who "may have discoverable information" regarding the Pilgrim auction and sale as a result of his work as Boston Edison's auction agent. A12, A21 (Pl. Initial Disclosures, at 10).

In an expert report submitted upon behalf of Boston Edison, Mr. Reed concluded that DOE's breach caused an increase in Pilgrim's projected decommissioning funding requirements, which forced Boston Edison to increase the decommissioning trust fund that it transferred to Entergy as part of the sale. Based upon the discovery taken to date, it is clear that Mr. Mattia was directly involved in efforts to complete the Purchase and Sale Agreement between the parties and close the transaction, including decommissioning funding issues, as a result of his work upon behalf of Boston Edison. As other witnesses have been unable to recall or remember certain details regarding the decommissioning trust fund and the basis for the level of decommissioning funding transferred to Entergy at the time of the sale, a deposition of Mr. Mattia would permit the Government to question a fact witness about this central issue to Boston Edison's damages claim. A33-A35 (Reed Tr. 130:18-132:18); A3-A5 (Boston Edison Co. Nuclear Generation Business Unit Divestiture Plan, Reed Consulting, Apr. 1998).

## SUMMARY OF ARGUMENT

In its motion, Boston Edison seeks to preclude the Government from deposing Nicholas Mattia, an attorney who, although currently employed by the law firm representing Boston Edison, previously worked as a non-legal consultant on Boston Edison's auction and sale of the Pilgrim Nuclear Power Station ("Pilgrim") to Entergy Nuclear Generation Company ("Entergy"). The Pilgrim auction and sale is the central issue to Boston Edison's "diminished value" damages claim. Boston Edison's motion fails to address completely the underlying factual background and legal precedent relevant to the requested deposition of Mr. Mattia, and the motion should be denied.

Based upon Boston Edison's own initial disclosures and discovery taken by the Government in this case, we believe that Mr. Mattia possesses relevant factual information related to the Pilgrim auction and sale, including the critical issue of the terms and conditions of the Purchase and Sale Agreement between the parties and the elements and level of funding of the decommissioning trust fund transferred to Entergy as part of the sale. It is undisputed that Mr. Mattia obtained factual information concerning the Pilgrim auction and sale as a direct result of his work as a consultant to Boston Edison and had a significant role in the process. It is undisputed that Mr. Mattia's work on behalf of Boston Edison was in a non-legal capacity as a consultant and that he was not working or acting as an attorney. In its initial disclosures, Boston Edison itself identified Mr. Mattia as having relevant knowledge and that has been confirmed by numerous other witnesses. It is undisputed that other deponents have been unable to explain certain aspects of the Pilgrim sale.

The Government's deposition of Mr. Mattia will focus on, and be limited to, Mr. Mattia's direct factual involvement in the Pilgrim auction and sale. The Government represented to Boston Edison that it will not seek, and has no intention of seeking, privileged or protected information regarding Boston Edison's litigation strategy in this case. In an effort to avoid involving the Court, the Government explained in a letter to counsel for Boston Edison that "[t]o be clear, we do not seek testimony from Mr. Mattia relating in any way to Mr. Mattia's legal practice, his services as an attorney with Dickstein Shapiro LLP, including any knowledge that Mr. Mattia may have gained solely through his representation of Boston Edison for purposes of this litigation [ ], or any activities that may otherwise infringe upon areas protected by the attorney-client and work product privileges." A1-A2 (Ltr. to Richard Conway and Bradley Wine from Patrick Bryan, dated Nov. 17, 2006). In response to our letter, Boston Edison filed this motion. The denial of the Government's request to depose Mr. Mattia will result in a substantial and material prejudice to the Government. We request that the Court deny Boston Edison's motion for protective order and order Mr. Mattia to appear for a deposition.

## DISCUSSION

### I. GENERALLY, A DEFENDANT IS ENTITLED TO OBTAIN DISCOVERY REGARDING ANY NON-PRIVILEGED MATTER RELEVANT TO ITS DEFENSE

RCFC 26(b)(1) states that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." There is no question that the discovery rules "are to be accorded a broad and liberal treatment. . . . Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation. To that end, either party may compel the other to disgorge whatever facts he had in his possession." Hickman v.

Taylor, 329 U.S. 495, 507 (1947). The test for relevance is very broad. Heat & Control, Inc. v. Hester Industries, Inc., 785 F.2d 1017, 1024 (Fed. Cir. 1986); Speller v. United States, 14 Cl. Ct. 170, 172 (1988). In short, the rules are designed to avoid trial by surprise and to permit a party to develop its best case. Moreover, the Court is obliged to pay particular attention to the mandate "to secure the just, speedy and inexpensive determination of every action." RCFC 1; International Graphics, Div. of Moore v. United States, 3 Cl. Ct. 715, 717 (1983).

## II. THE THREE-PART TEST ARTICULATED BY THE COURT IN *SHELTON* IS NOT APPLICABLE TO THE GOVERNMENT'S REQUEST TO DEPOSE MR. MATTIA

### A. Boston Edison's Reliance on The *Shelton* Test is Misplaced

Boston Edison, as the party seeking the protective order to preclude its attorney's deposition, bears the burden under RCFC 26(c) of demonstrating good cause to preclude or limit the testimony. Cipollone v. Liggett Group, Inc., 785 F.2d 1108, 1121 (3rd Cir. 1986) ("Rule 26(c) places the burden of persuasion on the party seeking the protective order. To overcome the presumption [in favor of discovery], the party seeking the protective order must show good cause by demonstrating particular need for protection."); Sparton Corp. v. United States, 44 Fed. Cl. 557, 561 (1999) Boston Edison claims that it has shown "good cause" to prevent the deposition of Mr. Mattia and that it is the Government's burden to justify a deposition under the three-part test set forth by the United States Court of Appeals for the Eighth Circuit in Shelton v. American Motors Corp., 805 F.2d 1323 (8th Cir. 1986). Boston Edison's objections to the requested deposition of Mr. Mattia and its effort to shift the burden of proof are misplaced and its motion for protective order should be denied.

Contrary to Boston Edison's motion, the three-part test set forth in Shelton is not applicable to the Government's requested deposition of Mr. Mattia. The Shelton case, along with Sparton Corp. v. United States, 44 Fed. Cl. 557 (1999), are the primary cases that Boston Edison cites in support of its motion for protective order. Both cases involved requests to depose attorneys representing a party in the litigation at issue concerning matters directly related to the legal work performed by those attorneys in the litigation. Neither Shelton nor Sparton addressed the issue of a deposition of an attorney currently representing a party in litigation who was a fact witness (not acting in any legal capacity) to events underlying the claims at issue in the litigation.

A review of the concerns underlying the courts' rulings in Shelton and Sparton show that the concerns about deposing attorneys implicated in those cases, and thus critical to those courts' rationale in barring the requested depositions, are simply not present in this case. In Shelton, the plaintiffs commenced litigation against an automobile manufacturer concerning a rollover accident. The plaintiff's attorney noticed and deposed the defendant's attorney to determine whether the defendant possessed documents concerning testing done on the vehicle at issue. Defense counsel objected to numerous questions on the grounds that the questions concerned the open and continuing litigation between the parties, citing both attorney-client and attorney work product protections. Shelton, 805 F.2d at 1325-27. Plaintiff's counsel admitted that he asked the questions to determine whether the defendant had truthfully complied with his document requests and interrogatories and, further, was not seeking to discover information uniquely possessed by opposing counsel and central to the litigation. Id. at 1327-28. The court in Shelton held that requiring the attorney to answer the questions posed to her regarding the existence of

certain documents would require her to reveal her mental processes and that the answers would have revealed the attorney's litigation strategy. Id. at 1329-30.

In Sparton, the Court addressed a party's request to depose a Government attorney who had handled an administrative claim against the Navy for alleged patent infringement. The plaintiff commenced litigation against the Government, and the Navy later formally denied the claim after a failed settlement negotiations. The Court, applying the Shelton test, granted the defendant's motion for protective order to bar the deposition of the attorney who handled the underlying administrative claim. Sparton, 44 Fed. Cl. at 559-60. The Court found that the attorney to be deposed obtained his knowledge through his handling of the administrative claim and subsequent litigation, not as an individual involved in the underlying facts at issue:

> [T]he parties concede that Mr. Allahut does not have independent or first hand knowledge of the facts, nor has he been directly involved in the events giving rise to the alleged patent infringement. Rather, any information Mr. Allahut might have would have been conveyed to him by his client, the Navy, or learned in the course of investigating the alleged patent infringement in preparation for litigation upon the issues presented in [the underlying claim].

Id. at 562 (citation omitted).

Boston Edison has failed to establish that the test in Shelton must be met by the Government to depose Mr. Mattia. In fact, other courts have recognized that the Shelton test is not implicated for depositions of attorneys in situations where the attorneys took part in relevant events that preceded the litigation and the attorney-client privilege is not implicated. See Bogan v. Northwestern Mut. Life Ins. Co., 152 F.R.D. 9, 14 (S.D.N.Y. 1993); Kaiser v. Mut. Life Ins. Co. of New York, 161 F.R.D. 378, 382 (S.D. Ind. 1994) (concluded that "[e]ven cases in the

Shelton line recognize that, if an attorney is a witness of or actor in prelitigation conduct, he may be deposed the same as any other witness.”).

As one court explained in granting plaintiff’s request to depose a number of defendant’s in-house legal counsel about factual matters central to the litigation and not involving litigation strategy and privileged and protected information, the argument that Boston Edison is making is both a misrepresentation of Shelton and contrary to the Federal Rules of Civil Procedure:

> The present dispute centers on whether Plaintiff needs to satisfy, before taking the deposition at issue, the three criteria identified by the Eighth Circuit [in Shelton]. Defendants contend that the three criteria apply to any attempt to depose an attorney, without regard to the subject matter of the deposition or the attorney’s role in the pending litigation. This is not only a misinterpretation of the holding in Shelton and the subsequent case law re-affirming that holding, but is contrary to the language and philosophy of the Federal Rules of Civil Procedure.[5]

United States v. Phillip Morris, Inc., 209 F.R.D. 13, 16 (D.D.C. 2002). This is precisely what Boston Edison is attempting by its motion.

Indeed, when the Eighth Circuit revisited the issue raised in Shelton in Pamida, Inc. v. E.S. Originals, Inc., 281 F.3d 726 (8th Cir. 2002), the court made clear that the Shelton three-part test applies to limit the deposition questions of attorneys only when the trial and/or litigation counsel is being deposed and when such questioning would expose litigation strategy in the pending case. Pamida, 281 F.3d at 730-31. In Pamida, defense counsel sought to depose plaintiff’s attorneys who were representing the plaintiff in the instant litigation, but who might have possessed “relevant information uniquely known by [plaintiff’s] attorneys about prior

---

[5] The United States Court of Appeals for the Federal Circuit has not adopted the three-part test articulated in Shelton. Only two United States Court of Federal Claims cases have cited Shelton: Sparton Corp. v. United States, 44 Fed. Cl. 557 (1999), and King-Fisher Co. v. United States, 58 Fed. Cl. 570 (2003).

terminated litigation, the substance of which is central to the pending case." Id. at 731. The Eighth Circuit clarified and effectively limited its ruling in Shelton:

> But Shelton was not intended to provide heightened protection to attorneys who represented a client in a completed case and then also happened to represent that same client in a pending case where the information known only by the attorneys regarding the prior concluded case was crucial . . . . Therefore, the Shelton test applies only to the instant case, not to the concluded case. [Defendant] need not satisfy Shelton to depose the [plaintiff's] attorneys regarding information involving the concluded patent infringement case.

Id., at 730-31.

In this case, the Government's requested deposition of Mr. Mattia does not implicate the Shelton test and differs in several critical ways from deposition addressed in Shelton. First, and most significantly, it is undisputed that Mr. Mattia worked as a non-attorney consultant upon behalf of Boston Edison concerning the Pilgrim auction and sale, approximately four years prior to his employment with Dickstein Shapiro. Mr. Mattia's involvement in one of the central issues to this case – Boston Edison's auction and sale of the Pilgrim plant to Entergy in the 1998-1999 time frame, and the circumstances and substantive agreement between the seller and buyer – concern non-legal, non-litigation responsibilities that occurred well before Mr. Mattia's involvement as a member of Boston Edison's litigation team. Boston Edison has made no showing or assertion that testimony from witnesses concerning the facts surrounding the Boston Edison auction and sale of Pilgrim to Entergy, to which the Government is clearly entitled under the Federal Rules of Civil Procedure, is subject to attorney-client privilege or work product protections.

Second, in direct contrast to Shelton, the Government is not seeking to depose Mr. Mattia about Boston Edison's defenses or litigation strategies related to this case. The Government previously represented to counsel for Boston Edison, and reiterates the representation in this response, that it is seeking testimony concerning non-privileged, pre-litigation factual matters unrelated to Boston Edison's litigation strategy in this case. The requested deposition of Mr. Mattia is based upon and tied directly to his work for Reed Consulting and his role in the divestiture, auction, and sale of Pilgrim.

Third, the primary rationale underlying the Eighth Circuit's decision in Shelton – to prevent counsel from invading the mental processes and obtaining the litigation strategies of his opposing counsel through the use of depositions –is not raised by the facts and circumstances of this case. As the court in Phillip Morris stated, "[t]he animating concern of Shelton is that discovery rules must not be used – or abused – to 'enable a learned profession to perform its functions . . . on wits borrowed from the adversary.'" Phillip Morris, 209 F.R.D. at 17-18 (citing Shelton, 805 F.2d at 1327 (quoting Hickman v. Taylor, 329 U.S. 495, 516 (1947) (Jackson, J., concurring))). The facts of this case are dissimilar to those of Shelton, where "counsel was attempting to confirm compliance with discovery he had propounded to opposing trial counsel and seeking to obtain a preview of his opponent's litigation strategy." Phillip Morris, 209 F.R.D. at 18. Those same concerns are not at issue in the Government's requested deposition of Mr. Mattia. The Shelton test is not applicable to the Government's request to depose Mr. Mattia and, because Boston Edison has failed to established any other basis to oppose the Government's request, its motion for protective order should be denied.

B. The Government's Request To Depose Mr. Mattia Is Not Based Solely Upon The Inclusion Of Mr. Mattia in Boston Edison's Initial Disclosures

Boston Edison also incorrectly argues that the "Government's sole basis for arguing its right to depose Mr. Mattia is Boston Edison's inclusion of Mr. Mattia in its Rule 26 initial disclosures." Pl. Mot. 9. Boston Edison is incorrect. Rather, the Government's basis is founded upon both the documents produced to date and the depositions taken. Boston Edison's Initial Disclosures simply confirm what discovery to date has already revealed: that Mr. Mattia had a significant role in the central issues in this case. Boston Edison's statement that it will not call Mr. Mattia as a witness at trial is simply irrelevant to the issue. Pl. Mot. 9-10. Boston Edison cites no precedent to support its assertion that its intention regarding Mr. Mattia as a trial witness is relevant to the Government's request to depose Mr. Mattia. Based upon the discovery in this case, and the development of the Government's defense to Boston Edison's claims, the Government possibly may decide to call Mr. Mattia as a witness in its case-in-chief. The Government should be permitted to take Mr. Mattia's deposition to determine his factual knowledge concerning the percipient facts of this case and fully develop the factual record in this matter.

C. Boston Edison's Assertion That Mr. Mattia's Deposition Will Reveal Or Expose Privileged and Protected Information Is Misplaced

Boston Edison's claim that "Mr. Mattia's deposition will necessarily involve privileged information and information prepared in anticipation of litigation," and that the facts of Mr. Mattia's non-legal consulting for Boston Edison "are inseparable from Boston Edison's trial strategy and communications with Dickstein Shapiro," simply lack merit. Pl. Mot. 6, 8-9. First, any concerns that Boston Edison now raises concerning Mr. Mattia's current involvement as

counsel for Boston Edison are of its own doing. Dickstein Shapiro decided to hire Mr. Mattia after the case was filed against the Government and cannot effectively limit discovery by its hiring decisions. Dickstein Shapiro chose to include Mr. Mattia as part of its litigation team representing Boston Edison with the knowledge of his direct involvement in the Pilgrim auction and sale.[6]

Second, Boston Edison further claims that Mr. Mattia cannot separate facts that he learned while working on the Pilgrim auction and sale from the information that he learned since the start of his engagement as litigation counsel upon behalf of Boston Edison. Plaintiff's assertion lacks any support in the record and is contradicted by the arrangements that the parties previously made regarding discovery taken to date. As stated above, Mr. Mattia worked with Reed Consulting in the late 1990's time frame upon behalf of Boston Edison. The president and chief executive officer of Reed Consulting at the time of the Pilgrim sale, John Reed, was retained by Boston Edison as an expert witness in this case. Mr. Reed submitted an expert report in this case, dated July 13, 2006, assessing and quantifying Boston Edison's damages allegedly caused by DOE's delay in performance under the Standard Contract.

As a result of discussions with Boston Edison's counsel and in connection with the continuing discovery schedule, the Government deposed Mr. Reed as a fact witness concerning his involvement with Reed Consulting and that company's role in the Pilgrim auction and sale. The parties agreed to conduct a separate deposition of Mr. Reed concerning his expert opinions in this case, which are based in part on Mr. Reed's recent discussions with various individuals

6/ On July 12, 1999, Shaw Pittman filed Boston Edison's initial complaint. On January 13, 2004, Dickstein Shapiro filed a motion to substitute counsel and filed a motion for leave to file Boston Edison's amended complaint. Dickstein Shapiro hired Mr. Mattia before Richard Conway of Dickstein Shapiro became counsel in this case.

(many of whom have been retained by Boston Edison as consultants to this litigation), his review of documents produced during the discovery process in this case, and the review of the expert reports issued by three other expert witnesses retained by Boston Edison, all of which were produced in 2006. These documents and expert reports prepared by other experts address, in large part, the auction and sale of Pilgrim, decommissioning of the Pilgrim plant, Department of Energy performance under the Standard Contract, and the sales of non-nuclear generating plants.

In his fact deposition, Mr. Reed was able to separate out and testify about factual information obtained as result of his direct, personal involvement in the Pilgrim sale in 1998-1999, despite the work that he performed as an expert witness in this litigation related to and concerning that same auction and sale process. Boston Edison has failed to establish that Mr. Mattia cannot testify concerning the Pilgrim auction and sale without revealing attorney-client and attorney work product protected information obtained since his employment with Dickstein Shapiro, or that he cannot testify about his non-litigation work at Pilgrim without revealing the plaintiff's litigation strategies. If questions posed to Mr. Mattia implicate privileged or protected matters, his counsel can interpose the proper objections at that time. Bogan v. Northwester Mut. Life Ins. Co., 152 F.R.D. 9, 14 (S.D.N.Y. 1993) ("If questions put at the deposition relate to privileged matters, a proper objection may be interposed at that time.").

## III. EVEN IF THE *SHELTON* TEST IS APPLICABLE TO THE GOVERNMENT'S REQUEST TO DEPOSE MR. MATTIA, THE GOVERNMENT HAS SATISFIED THE THREE-PART TEST

### A. Mr. Mattia May Provide Testimony That Cannot be Obtained By Other Means

Even if the three-part test articulated in Shelton is the proper standard upon which to review the Government's request to depose Mr. Mattia, the Government has satisfied the test, and the Court should order the deposition of Mr. Mattia. As previously stated, other judges of this court have adopted a three-part test that a party seeking to depose an attorney must satisfy before the Court will allow that deposition to proceed:

> [An attorney deposition] would be appropriate and necessary if Sparton could demonstrate that (1) no other means exist to obtain the information than to depose [the attorney]; (2) the information sought is relevant and non-privileged; and (3) the information is crucial to the preparation of Sparton's case.

Sparton, 44 Fed. Cl. at 563 (citing Shelton, 805 F.2d at 1327-28); see King-Fisher Co. v. United States, 58 Fed. Cl. 570, 571 (2003). Even if this test were applied in this case, the Government has satisfied the three prongs of the test.

In his deposition, Mr. Reed stated that Mr. Mattia was a "staff member involved in the bid evaluation process" and was among the group of Reed Consulting personnel "supporting the negotiations" with Entergy. A44-A45 (Reed. Tr. 308:24-309:23). Mr. Reed also testified that Mr. Mattia was a member of the Reed Consulting project team for the Pilgrim auction and was involved with such issues as drafting terms of the Purchase and Sale Agreement between Boston Edison and Entergy. A33-A34 (Reed. Tr. 130:3-131:22); A5 (Boston Edison Co. Divestiture Plan). Mr. Reed testified that Mr. Mattia, along with Boston Edison's in-house counsel, was the

lead for the "pursuit of regulatory approvals and satisfaction of all closing conditions to actually be able to close on a sale." A40 (Reed. Tr. 138:1-10); A21 (Pl. Initial Disclosures).

Mr. Mattia may possess knowledge concerning, and may provide testimony regarding, facts relevant to this case. Contrary to Boston's Edison's unsupported claims, many witnesses deposed to date could not recall certain details concerning the Pilgrim auction and sale. Mr. Reed himself could not recall many details of the Pilgrim auction. For example, Mr. Reed testified that Reed Consulting assigned a "bidder representative" to each bidder for Pilgrim and that the bidder representative handled all communications between Boston Edison, Reed Consulting, and the bidder. Mr. Reed could not recall the bidder representative for either Entergy or AmerGen (the losing bidder for Pilgrim). A38-A40 (Reed Tr. 136:4-7; 137:11-138:1).

Lisa Quilici, a former Vice President of the Reed Consulting Group and Managing Director of Navigant Consulting, is currently a Vice President with Concentric Energy Advisors, Mr. Reed's company. Ms. Quilici was retained by Boston Edison as a consultant in this case. A22 (Pl. Initial Disclosures). At her deposition, Ms. Quilici stated that, for the Pilgrim sale, "I believe Nick Mattia was the point person for Navigant in supporting Boston Edison's closing of the transaction for Pilgrim" and that she believed that Mr. Mattia "had day-to-day responsibility for whatever level of involvement the firm [Reed/Navigant] had in the closing activities for Pilgrim." A51-A52 (Quilici Tr. 81:5-82:2). Ms. Quilici described closing activities to include "completing all of the steps necessary to actually transfer ownership of the plant," including regulatory and corporate matters. A52, A58 (Quilici Tr. 82:11-19; 100:10-13). Ms. Quilici, when shown Boston Edison's Initial Disclosures and questioned about the list of personnel from

Navigant identified in the disclosures who may possess knowledgeable about the Pilgrim sale, stated that Mr. Mattia was among the people most involved in the Pilgrim transaction. A53-A57 (Quilici Tr. 93:13-97:2).[7]

Geoffrey Lubbock, Vice President, Financial Strategic Planning at NSTAR, Boston Edison's parent company, testified that Mr. Mattia worked upon behalf of Boston Edison on the Pilgrim sale and that he had "dealings specifically with Mr. Mattia during the divestiture process," but that he only had a "general recollection" of Mr. Mattia's involvement. A63-A70 (Lubbock Tr. 85:20-88:3; 182:4-185:7). Mr. Lubbock could not "state specifically" the work and services that Mr. Mattia performed. A63-A66 (Lubbock Tr. 85:20-88:2. Mr. Lubbock further testified that he thought Mr. Mattia regularly attended weekly team meetings of the Boston Edison and Reed Consulting personnel involved in the auction process and that Mr. Reed "was sometimes there, sometimes not there. [Mr. Reed] had other deals that he was doing." A67-A70 (Lubbock Tr. 182:4-185:7).

Boston Edison's repeated assertions that Mr. Mattia is not the "exclusive source" of facts misses the point of the requested deposition and is an insufficient basis to deny the Government the opportunity to depose Mr. Mattia. The Government seeks to depose Mr. Mattia in an effort to discover facts that may contradict, call into question, clarify, and/or confirm facts previously obtained during the discovery process and to obtain new, additional information concerning the Pilgrim auction and sale process that support the Government's defenses.

---

7/ At the close of her deposition, after a short break in which Ms. Quilici and counsel from Dickstein Shapiro left the room, and in response to questions from plaintiff's counsel, Mr. Quilici stated that, because her involvement in the Pilgrim transaction was limited, she did not have any "personal knowledge" of whether Mr. Mattia had any "extensive or significant" involvement in the Pilgrim transaction. A59-A60 (Quilici Tr. 211:2-212:6).

B. The Information Sought From Mr. Mattia Is Relevant And Non-Privileged

The fact that Mr. Mattia may currently possess privileged and protected information regarding Boston Edison's case should not prevent his deposition. Appropriate objections may be asserted if questions implicate privileged or protected information. Numerous courts have determined that "[Shelton] does not bar such depositions where attorneys take part in significant pre-events and the attorney-client privilege does not apply to the testimony sought." Bogan v. Northwestern Mut. Life Ins. Co., 152 F.R.D. 9, 14 (S.D.N.Y. 1993); see Kaiser v. Mut. Life Ins. Co. of New York, 161 F.R.D. 378, 382 (S.D. Ind. 1994) ("Even cases in the Shelton line recognize that, if an attorney is a witness of or actor in prelitigation conduct, he may be deposed the same as any other witness."); Johnston Dev. Group, Inc. v. Carpenters Local 1578, 130 F.R.D. 348, 352 (D.N.J. 1990) (deposition of attorney may be necessary and appropriate where the attorney may be a fact witness). In upholding the determinations of a magistrate judge, the court in Bogan found that "[c]ounsel whose depositions is sought concededly participated in disputed pre-litigation events which at least relate to issues raised in this litigation. If questions put at the deposition relate to privileged matters, a proper objection may be interposed at that time." Bogan, 152 F.R.D. at 14. Here, there can be little dispute that Mr. Mattia possesses relevant, non-privileged information.

C. The Information Sought From Mr. Mattia Is Crucial To The Preparation Of The Government's Defenses To Boston Edison's Claims

As previously discussed, Boston Edison's auction and sale of Pilgrim is the central issue underlying the "diminished value" claim. Reed Consulting, including Mr. Mattia, played a central role in the Pilgrim auction and sale, working directly with Boston Edison, as well as with

the successful and unsuccessful bidders for Pilgrim. As established above, Mr. Mattia was actively involved in Reed Consulting's work upon behalf of Boston Edison and was identified by himself and others as one of the people most responsible for the auction and sale.

Again, contrary to Boston Edison's unsupported assertion, Mr. Mattia's testimony may establish facts that clarify, contradict, or explain the testimony of other deponents, as well as provide testimony regarding additional facts. In addition, Mr. Mattia's deposition would permit the Government an opportunity to question Mr. Mattia about documents that were prepared by him or that reference his name. Boston Edison's blanket and unsupported assertion that "several other witnesses are better suited than Mr. Mattia to serve as sources of the information sought," Pl. Mot. 9, fails to overcome the Government's need to obtain critical information from Mr. Mattia regarding the Pilgrim auction and sale.

### D. The Deposition of Mr. Mattia Would Not Adversely Affect Boston Edison's Discovery Efforts and Trial Preparations

Boston Edison also complains that the Government's deposition of Mr. Mattia would adversely affect Boston Edison's trial preparations by taking Mr. Mattia away from discovery and trial preparation related activities to prepare for and attend his deposition. Pl. Mot., 8-9. First, given Mr. Mattia's involvement in the Pilgrim auction and sale and the inclusion of Mr. Mattia on the initial disclosures, counsel was on notice that the Government could seek to depose Mr. Mattia. Second, any interruption of Mr. Mattia's work on pre-trial discovery and trial preparation matters will be limited. As previously stated, the Government's deposition of Mr. Mattia will focus on factual matters concerning a defined period of time related to a specific matter. As we have throughout the discovery process with regard to witnesses and schedules, the Government will endeavor reasonably to accommodate Mr. Mattia's schedule. Even with the

deposition of Mr. Mattia, counsel for Boston Edison will be able to complete the necessary discovery in the case and to prepare for trial scheduled for May 2006.

## CONCLUSION

For the foregoing reasons, defendant respectfully requests that the Court deny the motion for protective order and order Mr. Mattia to appear for a deposition at a mutually agreeable date, time, and location.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director

s/ Alan J. Lo Re by Scott R. Damelin
ALAN J. LO RE
Senior Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 307-0226
Fax: (202) 307-2503

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

JOSHUA E. GARDNER
SCOTT R. DAMELIN
PATRICK B. BRYAN
SONIA M. ORFIELD
Trial Attorneys
Department of Justice

December 7, 2006

Attorneys for Defendant