# APPENDIX

U.S. Department of Justice

Civil Division

PDK:DMC:HDL:PBBryan
154-99-447

Telephone: (202) 616-8299
Fax: (202) 307-2503

*Washington, D.C. 20530*

November 17, 2006

VIA FACSIMILE AND UNITED STATES MAIL

Richard J. Conway, Esq.
Bradley D. Wine, Esq.
Dickstein Shapiro LLP
1825 Eye Street, N.W.
Washington, DC 20006

Re: *Boston Edison Company v. United States*, No. 99-447C (Fed. Cl.)

Dear Messrs. Conway and Wine:

Pursuant to your request, we write to provide additional information regarding the topics about which the Government plans to depose Mr. Nicholas Mattia as a fact witness in this case. As an initial matter, to be clear, we do not seek testimony from Mr. Mattia relating in any way to Mr. Mattia's legal practice, his services as an attorney with Dickstein Shapiro LLP, including any knowledge that Mr. Mattia may have gained solely through his representation of Boston Edison for purposes of this litigation (which we understand began when Mr. Mattia joined Dickstein Shapiro LLP in 2003), or any activities that may otherwise infringe upon areas protected by the attorney-client and work product privileges. Rather, as the parties agreed previously in connection with the deposition of fact witness John Reed, whom Boston Edison has retained as an expert in this case, we hereby agree to limit the scope of Mr. Mattia's fact deposition to topics that relate solely to his knowledge as a percipient fact witness at the time he served as the auction agent at Reed Consulting Group in connection with the Pilgrim sale during the late 1990s.

In Boston Edison's initial disclosures in this case, dated March 21, 2006, Mr. Mattia is identified as a person with potentially discoverable information regarding the Pilgrim auction process. In this regard, we understand that Mr. Mattia, along with Mr. Reed, was the "officer responsible for the management of the sales process on behalf of Boston Edison with regard to the auctioning of the Pilgrim Nuclear Power Station."[1] See January 8, 1999 Affidavit of

[1] During his fact deposition on October 3-4, 2006, Mr. Reed testified that Mr. Mattia did not act in his capacity as a lawyer while serving as the Reed Consulting auction manager for the Pilgrim divestiture, as Mr. Mattia's role in the auction process did not include the provision of legal services to Boston Edison or any other party. See Reed Deposition Transcript, at 133-34. This fact was corroborated by other deponents in this case with knowledge of the auction of process, including the

Nicholas W. Mattia, Jr., located at BEP038 1367 – BEP038 1371. In particular, as reflected in the organizational chart contained in Reed Consulting's Pilgrim "Divestiture Plan," dated April 1998, Mr. Mattia is identified as having primary responsibility for various phases of the Pilgrim auction, including "Purchase & Sale" matters, taxes, issues relating to wholesale contracts, "NRC" matters, and "closing" related issues. See BEP0 16 0019. Accordingly, we seek testimony from Mr. Mattia concerning his involvement in each of these areas of the sale, including any related communications with representives from Entergy Nuclear Generation Company or any other potential buyers.

Please let us know whether and when Boston Edison will agree to produce Mr. Mattia for a fact deposition subject to the limitations set forth above. Should you have any questions or concerns, please contact us.

Sincerely,

Patrick B. Bryan

PATRICK B. BRYAN
Trial Attorney
Commercial Litigation Branch

cc. Alex D. Tomaszczuk, Esq.
L. Jager Smith, Esq.

current and former Boston Edison employees that have been deposed to date. See, e.g., Geoffrey Lubbock Deposition Transcript, at 86; Marc Potkin Deposition Transcript, at 106-07. Therefore, our examination of Mr. Mattia regarding his personal knowledge at the time of the Pilgrim auction necessarily would not touch upon any privileged legal information.

PENGAD 800-631-6989
EXHIBIT SFL
Reed 2
10-3-06

Boston Edison

# Boston Edison Company

## Nuclear Generation Business Unit

## Divestiture Plan



April 1998

REED
CONSULTING GROUP

# TABLE OF CONTENTS


| | | |
|---|---|---|
| Chapter 1 | Overview | 1-1 |
| Chapter 2 | Divestiture Process | 2-1 |
| Chapter 3 | Proposed Commercial Terms of Sale | 3-1 |


Appendices:


A. Project Management Structure
B. Marketing Key Results Area Team
C. Early Interest Letter
D. Initial Target Market of Potential Buyers
E. Confidentiality Agreement

***Appendix A***
***Pilgrim Nuclear Power Station***
***Project Management Structure***



**COMMONWEALTH OF MASSACHUSETTS**
**DEPARTMENT OF TELECOMMUNICATIONS AND ENERGY**

| | | |
|---|---|---|
| **BOSTON EDISON COMPANY** | ) | D.T.E. 98/118/119/126 |

**AFFIDAVIT OF NICHOLAS W. MATTIA, JR.**

1 My name is Nicholas W Mattia, Jr , Esq I am Vice President of Reed Consulting Group ("REED") I am the responsible officer at REED for the preparation and development of data responses in these matters Along with John J Reed, I was the Reed officer responsible for the management of the sales processes on behalf of Boston Edison with regard to the auctioning of the Pilgrim Nuclear Power Station As such I am familiar with the information and details provided, and in particular the need to maintain the confidentiality of certain information developed during those processes

2 The purpose of this Affidavit is to support Boston Edison Company's Motion for Protective Order which is being filed herewith Based upon my experience with competitive auctions for the sale of major facilities, such as those included in the divestiture of Boston Edison's PNPS, it is absolutely essential that competitively sensitive information associated with the auction process be protected from public disclosure (1) in order to comply with the necessary and reasonable commercial expectations of bidders, (2) in order to facilitate the successful completion of a

3 For both seller and potential buyers, the maintenance of confidentiality for certain information is absolutely necessary in order not to adversely affect the competitive position of such party before, during and after the auction process Such information most clearly includes the amount of bids and the names of bidders, but also extends to the seller's evaluation process for bids which may reveal amounts or the relative levels thereof. and the terms and conditions requested by particular parties, which in many cases are intimately related to the amounts Also, sophisticated bidders are particularly concerned about their questions of the seller, which in many cases they believe will reveal aspects of their competitive strategies in seeking to value assets they may acquire This is the case even after the auction process is completed, if some or all of the bidders may be competitors in subsequent auction processes for similar assets and also in terms of their future strategies for operating those assets in a newly opened competitive market This is particularly true with respect to the sale of nuclear facilities because of the relatively few number of potential parties interested in obtaining and operating nuclear generating plants

From the seller's standpoint confidentiality is clearly necessary in order to have healthy competition From my experience all recent competitive auctions of generating units, including that of New England Power, Central Maine Power, Commonwealth Electric and Eastern Utilities, have been conducted pursuant to executed confidentiality agreements involving affected parties In the instant case, each qualified bidder was required to execute a confidentiality agreement prior to being provided access to bid materials Were the expectation of confidentiality not upheld, I expect that the robustness

of competitive bidding would have been lessened, and a number of potential bidders would have been deterred from participating

4 Completion of the current divestiture process still requires regulatory approval from the Department and other regulatory agencies as well as completion of other necessary closing conditions as set forth in the Purchase and Sale Agreement Should for any reason closing not occur, the assets have to be rebid The release of information concerning bids and bidders in the initial auction process would severely prejudice those bidders who had participated in the initial process and would deter other bidders who once again would fear, with reason, that the confidential details of their bids and competitive strategies would be released Such a lessening of competition would be a direct harm to Boston Edison's customers who would likely see a diminution of the benefits of the sale for them

5 The release of confidential information in this proceeding could very well have a negative effect on other divestiture processes coming before the Department At an initial level, failure of the Department to take appropriate action to protect the confidentiality of information in Boston Edison's divestiture process would simply deter many potential participants from bidding at all in other divestiture processes subject to the Department's review and thus subjecting their competitive information to inevitable public disclosure On a second level, bidders who had seen the release of their bids and other competitive information and strategies would be significantly disadvantaged should they choose to bid in other divestiture processes. Since it is reasonable to expect that

some or all of the bidders for Boston Edison's nuclear asset would also be potential bidders for other New England generation assets, this could seriously reduce the potential pool of bidders interested in such assets and thus reduce the eventual prices that would be realized for those other assets.

Signed, under the pains and penalties of perjury, this 8th day of January, 1999

Nicholas W Mattia, Jr.

COMMONWEALTH OF MASSACHUSETTS
DEPARTMENT OF TELECOMMUNICATINS AND ENERGY

| | | |
|---|---|---|
| Boston Edison Company | ) ) ) | DTE 98-118/98/119/98/126 |

**CERTIFICATE OF SERVICE**

I hereby certify that I have this day served the foregoing Boston Edison Company Motion for Protective Order and responses to certain information requests upon all parties in this proceeding in accordance with the requirements of 220 CMR 1.05(1) and 106(6)(c) (Department's Rules of Practice and Procedure).

Dated this 8th day of January, 1999.

William S Stowe



BEP038 1371

BEP0381371

**DICKSTEIN**SHAPIRO LLP

| *Experience Innovation*

SEARCH



# Nicholas W. Mattia, Jr.

**Counsel**
1825 Eye Street NW
Washington, DC
20006-5403
T: (202) 420-3035

mattian@dicksteinshapiro.com

Download V-Card

Extended Bio

Nicholas W. Mattia, Jr., rejoined Dickstein Shapiro LLP in 2003. Mr. Mattia is counsel for the Firm, and has more than 30 years of experience in the fields of energy and regulatory law. He focuses his practice on state regulatory and transactional energy issues, including those of importance to electric distribution, natural gas, power generation, and energy services companies. In recent years, he has specialized in the area of asset divestitures, both as an attorney and as a consultant. In particular, he was responsible for the first successful commercial divestiture via public auction of a nuclear power facility in the United States. Subsequently, he was involved on behalf of buyers and sellers in the divestiture of more than a dozen nuclear generation facilities throughout the U.S. Northeast. His clients have included Boston Edison Company, Consolidated Edison Company of New York, Atlantic City Electric Company, Delmarva Power and Light Company, Florida Power and Light Company, New Jersey Natural Gas Company, New Jersey Resources Corporation, NUI Corporation, AGL Resources, Canal Electric Company, and Entergy Nuclear Generation Company. In addition, he has represented a number of the nation's leading energy services companies in state regulatory proceedings involving industry restructuring throughout the country.

**Related Practices**

- Corporate & Finance
- Energy

**Bar Admissions**

District of Columbia
New Jersey

**Education**

Boston College, A.B., 1969
Seton Hall University School of Law, J.D., 1973

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| BOSTON EDISON COMPANY<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | |
| ENTERGY NUCLEAR GENERATION CO.,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | No. 99-447C<br>No. 03-2626C<br>(Judge Charles F. Lettow) |

FILE COPY

## PLAINTIFF BOSTON EDISON COMPANY'S RULE 26 INITIAL DISCLOSURES

Pursuant to Rule 26 of the Rules of the United States Court of Federal Claims ("RCFC"), plaintiff Boston Edison Company ("Plaintiff," "BECO," or "Company") provides the following Initial Disclosures:

## PRELIMINARY STATEMENT

Preliminarily, Plaintiff states as follows:

1. By providing these Initial Disclosures, Plaintiff does not waive or intend to waive: (a) any objections as to the competency, relevancy, materiality, privilege, or admissibility as evidence, for any purpose, of any documents or information produced pursuant to these initial disclosures; (b) the right on any ground to the use of the

documents or information produced pursuant to these Initial Disclosures at any hearing, trial, or other point during the litigation; (c) the right to object on any ground at any time to a demand for further response to these Initial Disclosures; and (d) the right at any time to revise, correct, add to, supplement, or clarify any of the disclosures contained herein.

2. The information and documents supplied herein are for use in this litigation and for no other purpose.

3. By responding that it will produce documents or information, Plaintiff does not assert that it has responsive documents or information or that such documents or information exist, only that it will conduct a reasonable search and produce responsive, non-objectionable, non-privileged documents or information. No objection made herein, or lack thereof, is an admission by Plaintiff as to the existence or non-existence of any documents or information.

4. The identification of a document or documents shall not be construed as an admission by Plaintiff of the competency, relevancy, reasonableness, materiality, discoverability, authenticity, or admissibility of the documents or information contained therein. Plaintiff reserves its right to challenge the competence, relevance, reasonableness, materiality, authenticity, and admissibility at trial or at any subsequent proceeding of this or any other action of any documents provided in response to these Initial Disclosures.

5. The disclosures made herein are based on Plaintiff's investigation to date of those sources within its control where they reasonably believe responsive documents or information exist. Plaintiff continues to search diligently for additional responsive data, much of which is in the hands of third-parties.

6. Without obligating itself to do so (except as required by the RCFC), Plaintiff reserves the right to amend or supplement these disclosures with additional information or documents that may become available.

7. The disclosure of information pursuant to these Initial Disclosures shall not be construed as a waiver of the confidentiality of any such information.

## INITIAL DISCLOSURES

A. Name, address and telephone number of individuals likely to have discoverable information that Plaintiff may use to support its claims or defenses, unless solely for the purpose of impeachment:

**RESPONSE:**

| CURRENT COMPANY EMPLOYEES | | |
|---|---|---|
| **Name** | **Address & Telephone No.** | **Potential Discoverable Info.** |
| Donald Anastasia | c/o Neven Rabadjija<br>Associate General Counsel<br>NSTAR Electric & Gas Corporation<br>800 Boylston Street<br>17th Floor<br>Boston, MA 02199-0228<br>617/424-2223 (phone)<br>617/424-2733 (fax) | Company Assistant Treasurer who may have discoverable information regarding property tax and insurance aspects of the sale of Pilgrim Nuclear Power Station ("Nuclear Station"). |
| William J. DiCroce | c/o Neven Rabadjija<br>Associate General Counsel<br>NSTAR Electric & Gas Corporation<br>800 Boylston Street<br>17th Floor<br>Boston, MA 02199-0228<br>617/424-2223 (phone)<br>617/424-2733 (fax) | Company subsidiary President and Chief Operating Officer, and former Nuclear Station senior manager who may have discoverable information regarding historical operations and maintenance of the Nuclear Station. |

| | | |
|---|---|---|
| Douglas S. Horan, Esq. | c/o Neven Rabadjija<br>Associate General Counsel<br>NSTAR Electric & Gas Corporation<br>800 Boylston Street<br>17th Floor<br>Boston, MA 02199-0228<br>617/424-2223 (phone)<br>617/424-2733 (fax) | Company General Counsel who may have discoverable information, to the extent not privileged, regarding legal and regulatory matters involving the Nuclear Station. |
| James J. Judge | c/o Neven Rabadjija<br>Associate General Counsel<br>NSTAR Electric & Gas Corporation<br>800 Boylston Street<br>17th Floor<br>Boston, MA 02199-0228<br>617/424-2223 (phone)<br>617/424-2733 (fax) | Company Chief Financial Officer who may have relevant information regarding the evaluation of the sale of the Nuclear Station. |
| Geoffrey O. Lubbock | c/o Neven Rabadjija<br>Associate General Counsel<br>NSTAR Electric & Gas Corporation<br>800 Boylston Street<br>17th Floor<br>Boston, MA 02199-0228<br>617/424-2223 (phone)<br>617/424-2733 (fax) | Company Vice President and executive in charge of auction process who may have discoverable information regarding the auction process, regulatory considerations, and financial valuations. |
| Timothy R. Manning | c/o Neven Rabadjija<br>Associate General Counsel<br>NSTAR Electric & Gas Corporation<br>800 Boylston Street<br>17th Floor<br>Boston, MA 02199-0228<br>617/424-2223 (phone)<br>617/424-2733 (fax) | Company Senior Vice President and executive who may have relevant information regarding labor and employment issues in the context of the sale of the Nuclear Station. |
| Neven Rabadjija, Esq. | NSTAR Electric & Gas Corporation<br>800 Boylston Street<br>17th Floor<br>Boston, MA 02199-0228<br>617/424-2223 (phone)<br>617/424-2733 (fax) | Associate General Counsel in charge of regulatory matters who may have discoverable information, to the extent not privileged, regarding the facilities and legal and regulatory matters involving the sale of the Nuclear Station. |

| | | |
|---|---|---|
| Henry V. Oheim, Jr., P.E. | c/o Neven Rabadjija<br>Associate General Counsel<br>NSTAR Electric & Gas Corporation<br>800 Boylston Street<br>17th Floor<br>Boston, MA 02199-0228<br>617/424-2223 (phone)<br>617/424-2733 (fax) | Company Project Manager and former Nuclear Station senior manager who may have discoverable information regarding historical operations at the Nuclear Station. |
| Emilie O'Neil | c/o Neven Rabadjija<br>Associate General Counsel<br>NSTAR Electric & Gas Corporation<br>800 Boylston Street<br>17th Floor<br>Boston, MA 02199-0228<br>617/424-2223 (phone)<br>617/424-2733 (fax) | Company Director of Corporate Finance and Cash Management, who may have discoverable information regarding financial aspects of the sale and subsequent securitization. |
| Bryant Robinson | c/o Neven Rabadjija<br>Associate General Counsel<br>NSTAR Electric & Gas Corporation<br>800 Boylston Street<br>17th Floor<br>Boston, MA 02199-0228<br>617/424-2223 (phone)<br>617/424-2733 (fax) | Company senior regulatory analyst who may have discoverable information regarding accounting and regulatory treatment of the decommissioning funds and other costs associated with the operation and sale of the Nuclear Station. |
| Paul D. Vaitkus | c/o Neven Rabadjija<br>Associate General Counsel<br>NSTAR Electric & Gas Corporation<br>800 Boylston Street<br>17th Floor<br>Boston, MA 02199-0228<br>617/424-2223 (phone)<br>617/424-2733 (fax) | Company Vice President and executive who may have relevant information regarding the relationship of the sale of the Nuclear Station and the Company's wholesale energy customers |
| Robert J. Weafer | c/o Neven Rabadjija<br>Associate General Counsel<br>NSTAR Electric & Gas Corporation<br>800 Boylston Street<br>17th Floor<br>Boston, MA 02199-0228<br>617/424-2223 (phone)<br>617/424-2733 (fax) | Company Vice President and Controller who may have discoverable information regarding various accounting and financial considerations arising from the operation and sale of the Nuclear Station. |

| FORMER COMPANY EMPLOYEES | | |
|---|---|---|
| Name | Address & Telephone No. | Potential Discoverable Info. |
| Admiral George Davis | As a former BECO employee, contacts should be directed to:<br><br>Richard J. Conway<br>DICKSTEIN SHAPIRO MORIN & OSHINSKY LLP<br>2101 L Street, N.W.<br>Washington, D.C. 20037<br>(202) 785-9700 | Former Company nuclear executive who may have relevant information, to the extent not privileged, regarding the Nuclear Station operation at that time. |
| John Fulton, Esq. | As a former BECO employee, contacts should be directed to:<br><br>Richard J. Conway<br>DICKSTEIN SHAPIRO MORIN & OSHINSKY LLP<br>2101 L Street, N.W.<br>Washington, D.C. 20037<br>(202) 785-9700 | Former in-house counsel in charge of nuclear matters who may have discoverable information, to the extent not privileged, regarding the facilities, the decision to sell the facilities, and similar information. |
| Carl Gustin | As a former BECO employee, contacts should be directed to:<br><br>Richard J. Conway<br>DICKSTEIN SHAPIRO MORIN & OSHINSKY LLP<br>2101 L Street, N.W.<br>Washington, D.C. 20037<br>(202) 785-9700 | Former Company executive who may have relevant information regarding public relations matters arising out of the sale of the Nuclear Station. |
| Ronald Ledgett | As a former BECO employee, contacts should be directed to:<br><br>Richard J. Conway<br>DICKSTEIN SHAPIRO MORIN & OSHINSKY LLP<br>2101 L Street, N.W.<br>Washington, D.C. 20037<br>(202) 785-9700 | Former Company executive who may have relevant information regarding operational matters for the Nuclear Station |
| Charles Minott | As a former BECO employee, contacts | Former Company manager who may have relevant information |

| | | |
|---|---|---|
| | should be directed to:<br><br>Richard J. Conway<br>DICKSTEIN SHAPIRO MORIN<br>& OSHINSKY LLP<br>2101 L Street, N.W.<br>Washington, D.C. 20037<br>(202) 785-9700 | regarding decommissioning and spent fuel matters arising out of the sale of the Nuclear Station. |
| Joseph Passaggio | As a former BECO employee, contacts should be directed to:<br><br>Richard J. Conway<br>DICKSTEIN SHAPIRO MORIN<br>& OSHINSKY LLP<br>2101 L Street, N.W.<br>Washington, D.C. 20037<br>(202) 785-9700 | Former Company employee who may have relevant information regarding state and federal tax matters arising out of the sale of the Nuclear Station. |
| John Piascik | As a former BECO employee, contacts should be directed to:<br><br>Richard J. Conway<br>DICKSTEIN SHAPIRO MORIN<br>& OSHINSKY LLP<br>2101 L Street, N.W.<br>Washington, D.C. 20037<br>(202) 785-9700 | Former Company Nuclear Fuel Administrator responsible for managing and maintaining Nuclear Station records. May have relevant information regarding nuclear fuel procurement and disposition. |
| Marc Potkin | As a former BECO employee, contacts should be directed to:<br><br>Richard J. Conway<br>DICKSTEIN SHAPIRO MORIN<br>& OSHINSKY LLP<br>2101 L Street, N.W.<br>Washington, D.C. 20037<br>(202) 785-9700 | Former Company manager who may have discoverable knowledge regarding the auction process and Nuclear Station operations and finance. |
| Glenn Roundy | As a former BECO employee, contacts should be directed to:<br><br>Richard J. Conway<br>DICKSTEIN SHAPIRO MORIN | Former Company financial analyst who may have discoverable information regarding various financial and accounting matters relative to the operation and sale of the Nuclear Station. |

| | | |
|---|---|---|
| | & OSHINSKY LLP<br>2101 L Street, N.W.<br>Washington, D.C. 20037<br>(202) 785-9700 | |
| William S. Stowe, Esq. | As a former BECO employee, contacts should be directed to:<br><br>Richard J. Conway<br>DICKSTEIN SHAPIRO MORIN<br>& OSHINSKY LLP<br>2101 L Street, N.W.<br>Washington, D.C. 20037<br>(202) 785-9700 | Former in-house counsel who may have discoverable information, to the extent not privileged, regarding the facilities, regulatory matters or transactions at issue. |
| David Tarantino | As a former BECO employee, contacts should be directed to:<br><br>Richard J. Conway<br>DICKSTEIN SHAPIRO MORIN<br>& OSHINSKY LLP<br>2101 L Street, N.W.<br>Washington, D.C. 20037<br>(202) 785-9700 | Former Company official who may have relevant information regarding local community considerations arising out of the sale of the Nuclear Station. |

| **EXTERNAL LEGAL COUNSEL** | | |
|---|---|---|
| **Firm & Individual Lawyer** | **Address & Telephone No.** | **Scope of Representation** |
| Pillsbury Winthrop Shaw Pittman (formerly, Shaw Pittman Potts & Trowbridge)<br><br>Jay Silberg, Esq. | As former BECO counsel, contacts should be directed to:<br><br>Richard J. Conway<br>DICKSTEIN SHAPIRO MORIN<br>& OSHINSKY LLP<br>2101 L Street, N.W.<br>Washington, D.C. 20037<br>(202) 785-9700 | Outside counsel who may have discoverable information, to the extent not privileged, regarding NRC matters. |

| | | |
|---|---|---|
| Bruder, Gentile & Marcoux<br><br>Carmen Gentile, Esq.<br>James McGrew, Esq. | As former BECO counsel, contacts should be directed to:<br><br>Richard J. Conway<br>DICKSTEIN SHAPIRO MORIN<br>& OSHINSKY LLP<br>2101 L Street, N.W.<br>Washington, D.C. 20037<br>(202) 785-9700 | Outside counsel who may have discoverable information, to the extent not privileged, regarding FERC matters. |
| Ropes & Gray<br><br>David A. Fine, Esq.<br>Bryan A. Supran, Esq. (no longer with firm).<br>Scott C. Goebel, Esq. | As former BECO counsel, contacts should be directed to:<br><br>Richard J. Conway<br>DICKSTEIN SHAPIRO MORIN<br>& OSHINSKY LLP<br>2101 L Street, N.W.<br>Washington, D.C. 20037<br>(202) 785-9700 | Outside counsel who may have discoverable information, to the extent not privileged, regarding corporate and transactional matters. |
| Miller & Chevalier<br><br>F. Brook Voght, Esq.<br>(deceased) | As former BECO counsel, contacts should be directed to:<br><br>Richard J. Conway<br>DICKSTEIN SHAPIRO MORIN<br>& OSHINSKY LLP<br>2101 L Street, N.W.<br>Washington, D.C. 20037<br>(202) 785-9700 | Outside counsel who may have discoverable information, to the extent not privileged, regarding Internal Revenue Service tax matters. |

| BECO AGENTS OR CONSULTANTS | |
|---|---|
| **Firm** | **Individual Consultants** |
| Navigant Consulting, Inc. (formerly Reed Consulting Group) | The following individuals were formerly employed by Navigant Consulting, Inc., Boston Edison's auction agent with respect to the sale of the Nuclear Station and may have discoverable information, to the extent not privileged, regarding the auction: J. Reed, (now with Concentric Energy Advisors), L. Quilici (now with Concentric Energy Advisors), N. Mattia (counsel with Dickstein Shapiro Morin & Oshinsky LLP), Natalie Cameron, Cristina Colello, John Dalton, Michael Roach, Mary Lynn Spada, Arthur Strang, Becky Yang.<br><br>As former agents of BECO, contacts should be directed to:<br>Richard J. Conway<br>DICKSTEIN SHAPIRO MORIN<br>& OSHINSKY LLP<br>2101 L Street, N.W.<br>Washington, D.C. 20037<br>(202) 785-9700 |
| The Northbridge Group | The Northbridge Group was retained by Boston Edison to provide consulting services in connection with the auction of the Nuclear Station and may have discoverable information, to the extent not privilege, regarding the auction: Michael Schnitzer and David Segal<br><br>As former agents of BECO, contacts should be directed to:<br>Richard J. Conway<br>DICKSTEIN SHAPIRO MORIN<br>& OSHINSKY LLP<br>2101 L Street, N.W.<br>Washington, D.C. 20037<br>(202) 785-9700 |

| BUYER REPRESENTATIVES | |
|---|---|
| **Buyer** | **Individual Representatives** |
| Entergy Nuclear Generation Company LLC<br>1340 Echelon Parkway<br>P.O. Box 31995<br>Jackson, MS 39286-1995 | Steve Downes, Joseph Henderson, Donald Hintz, Randy Hutchison, Dan Keuter, Tom LaGuardia, Michael Meisner, Carolyn Shanks, Connie Wells, Jerry Yelverton |

| DSMO RETAINED EXPERTS AND/OR CONSULTANTS WHO MAY ALSO HAVE FACTUAL INFORMATION | | |
|---|---|---|
| **Firm or Individual** | **Address** | **Description of Information** |
| David Benson | As a retained expert and/or consultant of BECO, contacts should be directed to: Richard J. Conway DICKSTEIN SHAPIRO MORIN & OSHINSKY LLP 2101 L Street, N.W. Washington, D.C. 20037 (202) 785-9700 | Consultant who may have discoverable information regarding nuclear asset acquisitions. |
| Concentric Energy Advisors John Reed Robert Hevert Lisa Quilici | As retained experts and/or consultants of BECO, contacts should be directed to: Richard J. Conway DICKSTEIN SHAPIRO MORIN & OSHINSKY LLP 2101 L Street, N.W. Washington, D.C. 20037 (202) 785-9700 | Consultants who may have discoverable information regarding the Nuclear Station auction and/or economic valuation and market comparable analysis. |
| Robert Denton Consultant | As a retained expert and/or consultant of BECO, contacts should be directed to: Richard J. Conway DICKSTEIN SHAPIRO MORIN & OSHINSKY LLP 2101 L Street, N.W. Washington, D.C. 20037 (202) 785-9700 | Consultant who may have discoverable information regarding nuclear asset acquisitions. |