# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| **BOSTON EDISON COMPANY**<br>**Plaintiff,**<br>**v.**<br>**THE UNITED STATES,**<br>**Defendant.** | **No. 99-447C**<br>**No. 03-2626C**<br>**(Judge Charles F. Lettow)** |
| **ENTERGY NUCLEAR GENERATION CO.,**<br>**Plaintiff,**<br>**v.**<br>**THE UNITED STATES,**<br>**Defendant.** | |

## PLAINTIFF BOSTON EDISON COMPANY'S REPLY IN FURTHER SUPPORT OF ITS MOTION FOR A PROTECTIVE ORDER

Dated: December 18, 2006

DICKSTEIN SHAPIRO LLP
Richard J. Conway
1825 Eye Street NW
Washington, D.C. 20006
(202) 420-2200

*Counsel of Record for Boston Edison Company*

Of Counsel:
Nicholas W. Mattia, Jr.
Bradley D. Wine
Bernard F. Sheehan
Lisa M. Barbas
DICKSTEIN SHAPIRO LLP
1825 Eye Street NW
Washington, D.C. 20006
(202) 420-2200

Neven Rabadjija, Esq.
Associate General Counsel
NSTAR Electric & Gas Corporation
800 Boylston Street, 17th Floor
Boston, MA 02199-0228

# TABLE OF CONTENTS

I. THE GOVERNMENT AND ENTERGY CANNOT ESTABLISH THE FACTORS NECESSARY TO DEPOSE A MEMBER OF BOSTON EDISON'S LITIGATION TEAM 2

A. The *Shelton* Test Applies Here. ..... 2

B. The Government and Entergy Cannot Demonstrate Adequate Good Cause To Depose Mr. Mattia ..... 5

C. The Government and Entergy Can Obtain Identical Information from Sources Other Than Mr. Mattia. ..... 8

1. The Government's and Entergy's Failure To Obtain the Information They Claim To Need Does Not Establish That Mr. Mattia Possesses That Information. ..... 9

2. The Documents Show That Other Witnesses Possess the Same Information As Mr. Mattia. ..... 10

3. The Government and Entergy Have Failed To Show That They Have Exhausted All Other Possible Sources Of The Information They Claim To Need. ..... 10

D. The Information the Government and Entergy Seek Will Necessarily Run Afoul of the Attorney-Client Privilege and the Work Product Doctrine ..... 12

E. Mr. Mattia Can Offer No "Crucial" Information ..... 12

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Bogan v. Northwestern Mutual Life Insurance Co.*, 152 F.R.D. 9 (S.D.N.Y. 1993).......5, 8

*DeCarlo v. Archie Comic Publications, Inc.*, No. 00 Civ. 2344(LAK), 2000 WL 1297691 (S.D.N.Y. Sept. 14, 2000)....................................................................5

*Johnston Development Group, Inc. v. Carpenters Local Union No. 1578*, 130 F.R.D. 348 (D.N.J. 1990)..........................................................................5, 7, 8

*Kaiser v. Mutual Life Insurance Co. of New York*, 161 F.R.D. 378 (S.D. Ind. 1994).........5

*King-Fisher Co. v. United States*, 58 Fed. Cl. 570 (Fed. Cl. 2003)................................5, 8

*Pamida, Inc v. E.S. Originals, Inc.*, 281 F.3d 726 (8th Cir. 2002) ............................3, 5, 10

*Shelton v. American Motors Corp.*, 805 F.2d 1323 (8th Cir. 1986) .......................... passim

*Sparton Corp. v. United States*, 44 Fed. Cl. 557 (Fed. Cl. 1999) .............................. passim

*United States v. Philip Morris*, 209 F.R.D. 13 (D.D.C. 2002)..................................3, 4, 12

## OTHER

10 Fed. Proc., L. Ed. § 26:264 ...........................................................................6, 7

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **BOSTON EDISON COMPANY**<br>**Plaintiff,**<br>**v.**<br>**THE UNITED STATES,**<br>**Defendant.** | ) | **No. 99-447C**<br>**No. 03-2626C**<br>**(Judge Charles F. Lettow)** |
| **ENTERGY NUCLEAR GENERATION CO.,**<br>**Plaintiff,**<br>**v.**<br>**THE UNITED STATES,**<br>**Defendant.** | ) | |

**PLAINTIFF BOSTON EDISON COMPANY'S REPLY[1]**
**<u>IN FURTHER SUPPORT OF ITS MOTION FOR A PROTECTIVE ORDER</u>**

Boston Edison Company's ("Boston Edison") Motion for a Protective Order ("Motion") is premised upon the notion that the deposition of a party's litigation counsel should only be allowed in limited circumstances, none of which are present in this litigation. This Court's precedent, the law governing protective orders pursuant to Rule 26, and the widely-accepted *Shelton* test[2] recognize this principle and impose upon the Government a burden that it

[1] Though the Government's response brief was titled both an "Opposition" and "Cross-Motion," no "motion" was filed in support of the Government's purported motion to compel. Boston Edison submits that such dual briefing is unnecessary, and respectfully requests that this reply also be considered an opposition to the Government's cross-motion, if necessary.

[2] *Shelton v. American Motors Corp.*, 805 F.2d 1323 (8th Cir. 1986).

has failed to meet. For its part, Defendant,[3] the United States, continues to press for a deposition of Nicholas W. Mattia, Jr., litigation counsel for Plaintiff, Boston Edison, as though he were just another fact witness. The Government began demanding Mr. Mattia's deposition before a single deposition had been taken in this matter, well before the Government could have possibly determined whether the information being sought from him was available from other, less obtrusive sources. To date, the Government has refused to even try to exhaust the many resources available to it before imposing this serious burden upon Boston Edison.

The Government's noticed deposition of Mr. Mattia is burdensome, harassing, and unnecessary. Under the *Shelton* test adopted by this Court,[4] which tracks the Rule 26 standard for a protective order, this deposition is inappropriate, in particular because the Government cannot show any need to impose such a significant burden on Boston Edison. Boston Edison therefore respectfully submits that its Motion should be granted and that a protective order be entered which precludes the deposition of Mr. Mattia.

## I. THE GOVERNMENT AND ENTERGY CANNOT ESTABLISH THE FACTORS NECESSARY TO DEPOSE A MEMBER OF BOSTON EDISON'S LITIGATION TEAM

### A. The *Shelton* Test Applies Here.

Contrary to the Government's and Entergy's assertions, the *Shelton* test is not dependent upon a counsel's pre-litigation role, but rather, simply recognizes the inherent conflict, burden, and inconvenience associated with deposing a party's current litigation counsel. Indeed, the Government's own characterization of the *Shelton* test shows that it should be

[3] Plaintiff Entergy Nuclear Generation Company ("Entergy") also submitted a brief opposing Boston Edison's motion for a protective order. It is Boston Edison's position that Entergy has no standing with respect to this motion, since Entergy was not a party to, nor did it join in, Mr. Mattia's deposition notice. What is more, Entergy did not participate in the pre-motion attempts between Boston Edison and the Government to resolve this matter.

[4] *Sparton Corp. v. United States*, 44 Fed. Cl. 557 (Fed. Cl. 1999).

applied to the Government's efforts to depose Mr. Mattia. The Government insists that the *Shelton* test applies when "the trial and/or litigation counsel is being deposed and when such questioning would expose litigation strategy in the pending case." (Defendant's Response to Boston Edison Company's Motion for a Protective Order and Cross-Motion to Compel, dated December 7, 2006 ("Deft's Resp.") at 11, emphasis in original). Boston Edison agrees. As discussed in greater detail below, both considerations are implicated here.

Mr. Mattia is presently serving as an active member of the SNF litigation team for Boston Edison, a fact that neither the Government or Entergy disputes. In addition, questioning of Mr. Mattia will necessarily "expose litigation strategy in the pending case." (Deft's Resp. at 11.) As more fully explained below, Mr. Mattia would be required to mentally segregate his knowledge of facts between legal and non-legal duties. He would also have to testify regarding the facts surrounding the current legal positions of his client, without revealing or attempting to undermine or support those legal positions. The Government's self-serving and conclusory insistence that its questioning will not impose upon litigation strategy does not render the *Shelton* test inapplicable. That argument is merely a challenge to the second *Shelton* factor, addressed below, which considers the impact of the attorney-client privilege and the work product doctrine on the requested deposition.

The Government incorrectly argues that an attorney's *prior* status as a lawyer or a non-lawyer with respect to the facts at issue determines the application of the *Shelton* test. (Deft's Resp. at 8-13.) But, as the cases the Government relies on make clear,[5] it is the prospective deponent's current status as litigation counsel that is relevant. *See, e.g.*, *United States v. Philip Morris*, 209 F.R.D. 13, 19 (D.D.C. 2002) (allowing deposition of defendant's in-

[5] All the cases the Government relies on are from courts other than the Court of Federal Claims or the Federal Circuit. The Government can point to no case in this jurisdiction that rejects, or even criticizes, *Shelton* or *Sparton.*

house counsel in part because attorneys were not currently "trial counsel"); *Pamida, Inc v. E.S. Originals, Inc*., 281 F.3d 726, 730-31 (8th Cir. 2002) (permitting deposition of attorney despite prior status as litigation counsel). Mr. Mattia's current status as a member of BECO's trial team is not in dispute, nor is Boston Edison attempting to preclude the Government from discovering relevant facts by opposing its efforts to depose Mr. Mattia. To the contrary, Boston Edison has made available, and will continue to make available, witnesses who possess the same or superior knowledge as Mr. Mattia. The Government's insistence that "Mr. Mattia *may* provide testimony that cannot be obtained by other means" (Deft's Resp. at 17) is not adequate to satisfy the *Shelton* requirements. Indeed, as discussed in greater detail below and as evidenced by the materials appended to the Government's Opposition, the Government and Entergy either already possess, or have identified other sources for the information that would purportedly be obtained from Mr. Mattia.

The Government also mistakenly equates the facts in *Philip Morris* with the facts here. In *Philip Morris*, not only were the requested deponents not trial counsel, but the court had made a specific finding that the defendant, at the time of the relevant facts at issue, "knowingly assigned substantial, non-legal, non-litigation responsibilities" to the requested deponents, in a concerted effort to shield non-privileged information by involving attorneys. 209 F.R.D at 17. No such finding is requested or warranted in the present case. Boston Edison has been more than forthcoming, as evidenced by, among other things, the steady stream of witnesses that Boston Edison has provided and continues to provide for deposition by the Government. Boston Edison does not seek to shield any information from the Government's discovery efforts – it simply asks that the Government be required to show that the same information is not available from other, less burdensome sources before requiring the deposition of Mr. Mattia.

The other cases cited by the Government are similarly inapposite and further demonstrate that Mr. Mattia should be treated as a witness of last resort. For example, in *Johnston Development Group, Inc. v. Carpenters Local Union No. 1578*, 130 F.R.D. 348, 354 (D.N.J. 1990) (Deft's Resp. at 20), the court found that "equivalent information" could not be obtained from any witness other than plaintiff's counsel – a showing that the Government has admittedly failed to make in its Opposition. The same was true in *Pamida*, where the court noted that the information sought was "uniquely known" by litigation counsel and no one else. 281 F.3d at 731 (Deft's Resp. at 11, 12.). In *Bogan v. Northwestern Mutual Life Ins. Co.*, 152 F.R.D. 9, 14 (S.D.N.Y. 1993) (Deft's Resp. at 10, 16, 20), the court upheld a magistrate's decision to permit an attorney's deposition based on "fact-intensive" issues – which are not described in the opinion – because the magistrate's decision was not "clearly erroneous or contrary to law." And *Kaiser v. Mutual Life Insurance Co. of New York*, 161 F.R.D. 378 (S.D. Ind. 1994) (Deft's Resp. at 10, 20) is among the minority of district courts that have rejected *Shelton* altogether. None of these decisions advance the Government's position. Trial counsel can be deposed if the *Shelton* factors are met, *see, e.g.*, *King-Fisher Co. v. United States*, 58 Fed. Cl. 570 (2003), but that is not the case here.

### B. The Government and Entergy Cannot Demonstrate Adequate Good Cause To Depose Mr. Mattia

Under either the *Shelton* analysis or the Rule 26 standard for a protective order, this Court has the discretion to limit or preclude pretrial discovery if it determines that "justice requires . . . [the] protect[ion of] a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . ." RCFC 26(c); *Sparton*, 44 Fed. Cl. 557, 561 (Fed. Cl. 1999); *see also, e.g., DeCarlo v. Archie Comic Publications, Inc.*, No. 00 Civ. 2344(LAK), 2000 WL 1297691 (S.D.N.Y. Sept. 14, 2000) (declining to apply *Shelton* test but entering protective order barring deposition of trial counsel). Boston Edison respectfully submits that justice requires that

a protective order be entered in the present case. This Court has recognized that "'good cause' is implicit when a party seeks to preclude its own attorney's deposition testimony." *Sparton*, 44 Fed. Cl. at 561 (citations omitted). *Sparton* did not limit the presumption of "good cause" to only trial counsel who had formerly acted as attorneys. Even if it had, there are many factors that establish "good cause" for a protective order here. A leading treatise has noted that depositions of a party's litigation counsel "have a tendency to lower the standards of the profession," particularly when less intrusive means of discovery are available. *See* 10 Fed. Proc., L. Ed. § 26:264, comment (2006). In addition, Mr. Mattia's deposition would impose several unnecessary and excessive burdens upon Boston Edison. *See id*.

First, if the Government and Entergy are permitted to take Mr. Mattia's deposition, they could also demand him as a trial witness, which the Government acknowledges.[6] (Deft's Resp. at 14.) The Government has no answer to Boston Edison's concerns regarding this serious potential burden. This danger, even if it is not realized, carries a second additional hardship: a potential "chilling effect" on communications between attorney and client. Boston Edison will be discouraged from confiding in an attorney that could be called as a trial witness, essentially losing a member of its trial team. 10 Fed. Proc., L. Ed § 26:264, comment. Third, Boston Edison has noted the increased cost and time that Boston Edison will be forced to incur preparing and defending its counsel at deposition, which involves much more cost and time than defending the deposition of an individual who is not litigation counsel. As more fully explained below, Boston Edison should not be burdened with this deposition unless the Government can show it is truly a last resort, which the Government and Entergy have failed to do. *Id.*

[6] The Government contends that Boston Edison's promise not to call Mr. Mattia as a trial witness is "simply irrelevant" because Boston Edison "cites no precedent." (Deft's Resp. at 14.) Boston Edison advanced this offer to assure the Government and this Court that there is no danger of unfair surprise, and as a good-faith effort to minimize any imagined need for Mr. Mattia's deposition.

Fourth, the personal burden to Mr. Mattia cannot be ignored. He must undertake the impossible task of segregating his recollection of facts, communications, and evidence in a manner that would allow him to recall what information he learned as counsel to Boston Edison and what information was obtained contemporaneously with the facts of this case. In other words, Mr. Mattia would be asked to engage in the Herculean task of determining whether his recollection of events is connected to his time as a non-attorney consultant – events which occurred nearly nine years ago – or in connection with his duties as Boston Edison's counsel. The Government's pat response to this concern – that Boston Edison can simply make privilege objections – hardly addresses the serious burdens placed on Mr. Mattia and Boston Edison, or the risk of divulging privileged or protected information.

Fifth, Boston Edison will be further burdened by the loss of Mr. Mattia's time spent preparing for and attending his deposition. The Government's statement that it will "endeavor reasonably to accommodate Mr. Mattia's schedule" (Deft's Resp. at 21) does nothing to reduce this burden. Finally, "to permit an attorney on one side to become the inquisitor of an attorney on the other side carries a strong risk of friction between the attorneys." 10 Fed. Proc., L. Ed. § 26:264, comment. The deposition of trial counsel could "inject an unproductive dynamic into the litigation, perhaps poisoning the necessary chemistry between professionals. The court is well-advised to assess this risk if the deposition is otherwise justified, for the discovery may extract a dear price from the healthy adversary process upon which our system places such heavy reliance." *Johnston*, 130 F.R.D. at 353. While counsel for Boston Edison, Entergy, and the Government have enjoyed a cordial and professional relationship heretofore, the Government's and Entergy's insistence that Mr. Mattia be deposed severely endangers that relationship. Certainly, Boston Edison can, and has, shown "good cause" that Mr. Mattia should not be deposed.

To overcome "good cause," the Government and Entergy must show "both the propriety and need for the deposition." *Sparton*, 44 Fed. Cl. at 561 (citations omitted). This Court has adopted the *Shelton* test[7] to aid it in determining whether a party specifically requesting the deposition of litigation counsel has shown "propriety and need." *Id.* at 562-63. But even if the Government and Entergy were correct, and *Shelton* did not apply, the Government would still have to show "propriety and need" pursuant to Rule 26. *See, e.g.*, *Bogan*, 152 F.R.D. at 14; *Johnston*, 130 F.R.D. at 353. Regardless of how the test is applied, Mr. Mattia's deposition is not proper, nor can the Government or Entergy credibly show that Mr. Mattia's deposition is necessary.

### C. The Government and Entergy Can Obtain Identical Information from Sources Other Than Mr. Mattia.

The Government and Entergy simply have no need to take Mr. Mattia's deposition. Neither party can point to any discoverable information Mr. Mattia solely possesses (or even could know). Indeed, the Government's and Entergy's deposition of witnesses who do not share Mr. Mattia's critical privilege and work product concerns are likely to be far more fruitful than Mr. Mattia's deposition would be. Instead, the Government asserts that it is entitled to know whether Mr. Mattia's testimony contradicts or bolsters that of other witnesses. That is not sufficient "need" to overcome the "good cause" shown by Boston Edison. The Government admits that it merely seeks to "discover facts that *may* contradict, call into question, clarify, and/or confirm facts previously obtained" as well as look for some unspecified "new" facts that

[7] The Government notes that the Federal Circuit has "not adopted" the *Shelton* test. (Deft's Resp. at 11 n.5.) In fact, counsel could locate no decision on this point that has yet been issued by the Federal Circuit. *But see King-Fisher Co. v. United States*, 58 Fed. Cl. 570 (2003) (applying *Shelton* test to deposition of trial counsel); *Sparton Corp. v. United States*, 44 Fed. Cl. 557 (1999) (same). The Government can point to no case in this Court or in the Federal Circuit that rejects or refuses to apply the *Shelton* test when the deposition of trial counsel is at issue.

may support its defenses. (Deft's Resp. at 19, emphasis added.) The deposition of a party's counsel requires a substantially greater showing.

### 1. The Government's and Entergy's Failure To Obtain the Information They Claim To Need Does Not Establish That Mr. Mattia Possesses That Information.

The Government's and Entergy's failure to obtain information from witnesses it has deposed to date does not, in and of itself, entitle it to take Mr. Mattia's deposition. Boston Edison, citing the *Shelton* test, informed the Government of its opposition to the Mattia deposition before the Government had taken a single deposition. (Plaintiff Boston Edison's Motion for a Protective Order, dated November 20, 2006, Exhibit D (Sept. 29, 2006, letter from B. Wine to A. Lo Re)). Rather than develop a record which demonstrates a sound basis for deposing Mr. Mattia (a record which Boston Edison respectfully suggests cannot be established, given the facts of this case), the Government and Entergy have elected to elicit only general and cursory information regarding Mr. Mattia's involvement in the sale of the Pilgrim facility. Not a single witness has testified that Mr. Mattia possesses unique or superior knowledge regarding discoverable facts, nor has the Government or Entergy sought to elicit such testimony. Entergy admits as much in its brief.[8] (Plaintiff Entergy Nuclear Generation Company's Response to Boston Edison Company's Motion for a Protective Order, dated December 7, 2006, at 3.) In short, Boston Edison and Mr. Mattia should not be penalized for the Government's and Entergy's failures to develop a record that would overcome Boston Edison's present request for a protective order.

---

[8] Entergy was also present at the depositions that have been taken to date, and Entergy, too, failed to establish a basis to depose Mr. Mattia.

**2. The Documents Show That Other Witnesses Possess the Same Information As Mr. Mattia.**

The Government cannot point to a single topic or category of document that lists Mr. Mattia as the sole source of any information. The very documents the Government attaches to its motion illustrate this, as does the language the Government uses in its brief to describe Mr. Mattia's role. For example, on the organizational chart attached as page 5 of the Government's Appendix, for every area under which Mr. Mattia is listed, there is at least one other person the Government can depose or has deposed, and in some cases as many as three. The same is doubtless true of the numerous "documents that were prepared by [Mr. Mattia] or that reference his name" (Deft's Resp. at 21) that the Government attempts to rely on but does not attach or describe in any detail. In its brief, the Government states that Mr. Mattia had "involvement" in the relevant facts; that he was "among the people most involved" in the transaction; that he was "a 'staff member involved in the bid evaluation process'"' that he was "a member of the . . . project team"; and that he "may possess knowledge . . . regarding facts relevant to this case." (Deft's Resp. at 12, 17, 18.) Not once does the Government indicate a single area of exclusive knowledge on Mr. Mattia's part. Such a failure is dispositive pursuant to the *Shelton* test.

**3. The Government and Entergy Have Failed To Show That They Have Exhausted All Other Possible Sources Of The Information They Claim To Need.**

In *Sparton*, this Court reasoned that the plaintiff's "failure to show that other avenues of discovery have been exhausted necessarily detracts from [the plaintiff's] argument that the information sought is not available elsewhere." 44 Fed. Cl. at 563 (citations omitted). The same is true here. The Government and Entergy have yet to pursue other avenues of discovery, and therefore, they cannot possibly know whether the information Mr. Mattia knows is available elsewhere. This situation is the opposite of that found in *Pamida*, where "deposing opposing counsel [was found to be] not only be the most expedient approach, but the only realistically

available approach." 281 F.3d at 731. Whether viewed as the first prong of the *Shelton* test or the general discovery requirement to show "necessity," the Government's and Entergy's arguments to depose Mr. Mattia fail. At the very least, the Government and Entergy should be required to depose, in a thorough and appropriate manner, the many witnesses Boston Edison has agreed to provide before demanding Mr. Mattia's deposition.

Similarly, the Government's and Entergy's failure to exhaust or refresh the recollection of the witnesses it has deposed to date should not be used as a foundation to take Mr. Mattia's deposition. The Government complains that "many witnesses deposed to date could not recall certain details concerning the Pilgrim auction and sale" (Deft's Resp. at 18) even though the Government and Entergy have taken four days of deposition testimony from Messrs. John Reed and Geoffery Lubbock, the individuals responsible for the Pilgrim sale and the direct supervisors of Mr. Mattia. The Government's grievance with the recollection of these individuals fails to recognize that the Government made little or no effort to refresh the recollections of the witnesses it deposed. In addition to Mr. Lubbock, Boston Edison has produced additional fact witnesses, many of whom were at the same meetings, copied on the same documents, and who could have given the Government the same information it claims to need from Mr. Mattia had these witnesses been questioned properly. The Government should not be permitted to shift the burden of its incomplete depositions to Boston Edison by making Boston Edison produce one of its lawyers to testify regarding the same subject matter. Had the Government and Entergy more wisely used their deposition time with other witnesses, this motion might have been avoided.[9]

[9] The Government and Entergy have several witnesses yet to depose. Thus, their purported "need" for Mr. Mattia's deposition is pure speculation. The Government and Entergy cannot insist that they have "exhausted" their resources when it has a host of witnesses left to depose. The Government has also requested that Boston Edison produce a Rule 30(b)(6) witness(es). The deposition of Boston Edison, not its trial counsel, is the appropriate time for the Government and Entergy to fill in any gaps in the information they claim to need.

**D. The Information the Government and Entergy Seek Will Necessarily Run Afoul of the Attorney-Client Privilege and the Work Product Doctrine**

Boston Edison has noted the difficulty Mr. Mattia will have segregating information he learned as a consultant from information he learned since undertaking his representation of Boston Edison. Much of the information overlaps and includes information then unknown to Mr. Mattia as a consultant, but now crucial to Boston Edison's litigation strategy. The Government's suggestion that Boston Edison treat Mr. Mattia's deposition as it treated Mr. Reed's is hardly persuasive, nor does it mean that Mr. Mattia's real concerns and difficulties lack "support in the record." (Deft's Resp. at 15-16.) As a testifying expert, Mr. Reed's work on this matter was performed knowing that he would be deposed both in that capacity and in his capacity as a fact witness. Boston Edison retained Mr. Mattia, on the other hand, knowing that the bar regarding the deposition of a litigant's counsel was a high one, and that several other witnesses could offer the same information.

The Government states that it will attempt to be "reasonable" in its infringements upon Mr. Mattia's time, but by doing so, admits that it wants to impose this unnecessary burden on Boston Edison. (Deft's Resp. at 21-22.) There is no reason to take Mr. Mattia away from this case for what will unquestionably be a burdensome, contentious, and difficult deposition that will necessarily involve a myriad of privilege and work product issues.

**E. Mr. Mattia Can Offer No "Crucial" Information**

Given the many witnesses that Boston Edison has produced and will produce, it can hardly be said to be attempting to "shield" any information by retaining Mr. Mattia as counsel, unlike the situation in *Philip Morris*. *Sparton* made clear that mere speculation that a witness' testimony may "bolster" a party's case "or otherwise support its claims" is "insufficient" to satisfy the third prong of the *Shelton* test. *Sparton*, 44 Fed. Cl. at 568. In other words, such assertions cannot show the "need" the Government must show to overcome the "good cause"

Boston Edison has raised in support of a protective order. Yet the Government engages in just that type of speculation here. It states that it wants to "discover facts that *may* contradict, call into question, clarify, and/or confirm facts previously obtained . . . ." (Deft's Resp. at 19, emphasis added.)

The Government specifically identifies just two pieces of information it purportedly could not obtain from any other source. It states that "Mr. Lubbock could not 'state specifically' the work and services that Mr. Mattia performed." (Deft's Resp. at 19.) The Government also states that "Mr. Reed could not recall the bidder representative for either Entergy or AmerGen (the losing bidder for Pilgrim.)" (Deft's Resp. at 18.) This information is hardly "crucial," and was more directly available from Entergy and Amergen witnesses, although the Government chose not to ask for this information when those witnesses were deposed. Such information could also easily be obtained by reviewing the documents produced in this case, serving interrogatories on Boston Edison, or asking questions at Boston Edison's upcoming Rule 30(b)(6) deposition. Deposing counsel for this type of information is unnecessary.

## CONCLUSION

For the reasons stated above, Boston Edison respectfully requests that the Court grant it a protective order barring the Government from deposing Boston Edison's counsel, Mr. Mattia, and for such other and further relief as the Court deems proper.

Date: December 18, 2006

Respectfully submitted,

s/ Richard J. Conway______________________
Richard J. Conway
DICKSTEIN SHAPIRO LLP
1825 Eye Street NW
Washington, D.C. 20006
(202) 420-2200

*Counsel of Record for Boston Edison Company*

Of Counsel:

Nicholas W. Mattia, Jr.
Bradley D. Wine
Bernard F. Sheehan
Lisa M. Barbas
DICKSTEIN SHAPIRO LLP
1825 Eye Street NW
Washington, D.C. 20006
(202) 420-2200

Neven Rabadjija, Esq.
Associate General Counsel
NSTAR Electric & Gas Corporation
800 Boylston Street
17th Floor
Boston, MA 02199-0228

**NOTICE OF ELECTRONIC FILING**

I hereby certify that on December 18, 2006, a copy of the foregoing "Plaintiff Boston Edison Company's Reply in Further Support of its Motion for a Protective Order" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Bradley D. Wine
Bradley D. Wine