**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| BOSTON EDISON COMPANY<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | |
| ENTERGY NUCLEAR GENERATION CO.,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | No. 99-447C<br>No. 03-2626C<br>(Judge Charles F. Lettow) |

**BOSTON EDISON COMPANY'S RULE 30(B)(6) DEPOSITION NOTICE OF DEFENDANT UNITED STATES**

PLEASE TAKE NOTICE that Plaintiff Boston Edison Company, ("Boston Edison"), by and through its attorneys, will take the deposition upon oral examination pursuant to Rule 30(b)(6) of the Rules of the United States Court of Federal Claims of the person(s) designated by Defendant United States ("the Government") as knowledgeable regarding the subject areas listed below. The deposition will take place at the offices of Dickstein Shapiro LLP, 1825 Eye Street NW, Washington, D.C. 20006, or at a place mutually agreed upon by the parties, commencing at 9:00 a.m. on November 22, 2006, or at a date and time mutually agreed upon by the parties, and will continue from day to day until completed.

Pursuant to Rule 30(b)(6), the Government shall designate a person or persons who are most knowledgeable about the topics set forth below. Boston Edison requests that the Government identify in writing the name, position, and employ of the individuals(s) so designated and to set forth the matters on which that person will testify no later than seven (7) days prior to the agreed upon deposition date.

The deposition may be videotaped and will be made before an officer authorized to administer an oath and will be recorded by stenographic means.

**GENERAL DEFINITIONS**

1. "Communication" means:

   (a) Any oral statement or utterance of any kind, whether in person, by telephone, by electronic mail, or by any other means of communication, and any gesture intended to convey information, including any nonverbal expressions of assent, denial, doubt, lack of knowledge, or the like; and

   (b) Any writing, document, or other graphic material of any kind and description, whether inscribed by hand or by mechanical, electronic, microfilm, photographic, or other means, including electronic mail, as well as phonic (such as tape recordings) or visual reproductions of oral communications.

2. "Including" means including, but not limited to.

3. "Information" means all data, facts, or circumstances of any nature, including documents and communications, relating to the given subject matter.

4. "Person" means any natural person, contractor, corporation, partnership, proprietorship, association, venture, Governmental or public entity, or any other form of

organization or legal entity and its officers, directors, employees, consultants, representatives, and agents.

5. "Relate(s) to," "relating to," and "referring to" mean to concern, mention, reference, pertain to, reflect, comment upon, discuss, rely upon, relate to, refer to, utilize as input or source material, support, undermine, critique, or in any manner be connected with the given subject, action, communication, or matter.

## SPECIFIC DEFINITIONS

6. "Government" means any agency or sub-agency of the Federal Government, including the Department of Energy and the Nuclear Regulatory Commission.

7. "DOE" means to the Department of Energy, its sub-agencies, affiliates, contractors, consultants, and employees.

8. "NRC" means the Nuclear Regulatory Commission, its sub-agencies, affiliates, contractors, consultants, and employees.

9. "NWPA" means the Nuclear Waste Policy Act of 1982.

10. "OCRWM" means the Office of Civilian Radioactive Waste Management.

11. "Pilgrim" means the Pilgrim Nuclear Power Station in Plymouth, Massachusetts.

12. "Standard Contract" means the contract entered into between DOE, on behalf of the United States, and parties owning and/or operating commercial nuclear electric generating facilities which produce spent nuclear fuel.

13. "Temporary fuel storage" means any alternative to the removal and storage of spent nuclear fuel and high level nuclear waste by the federal government, including dry cask storage facilities.

14. "SNF" means Spent Nuclear Fuel and High-Level Nuclear Waste.

## DEPOSITION TOPICS

Pursuant to Rule 30(b)(6), the Government shall produce one or more officers, directors, managing agents, or other persons, who are most qualified, knowledgeable and competent to testify as to all matters known or reasonably available to the Government with respect to the following listed subject areas:[1]

1. The Government's understanding of the history and development of the nuclear industry and the NWPA, including:

   (a) Responsibility for the storage, removal, and disposal of spent nuclear fuel.

   (b) The purpose of the NWPA.

   (c) The history of the NWPA.

   (d) The requirements of the NWPA.

2. The Standard Contract, including:

   (a) The purpose of the Standard Contract.

   (b) Formulation of the terms of the Standard Contract.

   (c) Comments received during the "notice and comment" period for the Standard Contract.

   (d) The terms and requirements of the Standard Contract.

   (e) The expectations of the parties at the time of contracting.

   (f) The relationship of the Standard Contract to the renewal of the operating licenses of nuclear plant operators and utilities.

---

[1] Each listed subject area shall be construed independently and no listed subject area shall limit the scope of any other listed subject area.

(g) The intent of the parties at the time of contracting regarding future on-site storage of SNF.

3. The process by which the Government determined a schedule of accepting SNF, including:

(a) The Acceptance Priority Rankings.

(b) The Annual Capacity Reports.

(c) The Delivery Commitment Schedule process.

(d) The rate of acceptance of SNF by the Government.

4. Boston Edison's performance under the Standard Contract.

5. The Government's performance under the Standard Contract, including:

(a) The projected or estimated first operational date for an SNF repository.

(b) Any changes to the projected first operational date for an SNF repository.

(c) Options for interim storage including a monitored retrievable storage facility ("MRS") or a private fuel storage facility.

6. The Government's understanding of the costs or potential costs to the nuclear power industry, and to Pilgrim in particular, of alternative means of temporary fuel storage associated with the DOE's failure to begin accepting SNF as of January 31, 1998.

7. The Government's estimated potential liability related to the delayed acceptance of SNF under the Standard Contract, including the Government's potential liability to Boston Edison.

8. The Government's knowledge, oversight, and approval of the sale of Pilgrim from Boston Edison to Entergy and any related regulatory activities, including:

(a) The Government's understanding of the provisions of the Pilgrim Purchase and Sale Agreement, including the provisions that provided for retention by Boston Edison of claims related to the Standard Contract.

(b) The transfer from Boston Edison to Entergy of the Standard Contract.

(c) The transfer from Boston Edison to Entergy of decommissioning funds related to Pilgrim.

(d) The Requests for Additional Information ("RAIs") made by the NRC in connection with the December 21, 1998, application for transfer of the Pilgrim operating license.

(e) The Safety Evaluation by the Office of Nuclear Reactor Regulation – Proposed Transfer of Operating License and Materials License for Pilgrim Nuclear Power Station to Entergy Nuclear Generation Company, dated April 29, 1999, Bates Nos. ENGC/BECO DOE 1st RFP-21-19047 – 19065, including the comments and conclusions therein relating to decommissioning.

Date: November 7, 2006

Respectfully submitted,

Richard J. Conway
DICKSTEIN SHAPIRO LLP
1825 Eye Street NW
Washington, D.C. 20006
(202) 420-2200

**Counsel of Record for Boston Edison Company**



DSMDB-2167730v01

Of Counsel:

Nicholas W. Mattia, Jr.
Bradley D. Wine
Bernard F. Sheehan
Lisa M. Barbas
DICKSTEIN SHAPIRO LLP
1825 Eye Street NW
Washington, D.C. 20006
(202) 420-2200

Neven Rabadjija, Esq.
Associate General Counsel
NSTAR Electric & Gas Corporation
800 Boylston Street
17th Floor
Boston, MA 02199-0228

## CERTIFICATE OF SERVICE

I hereby certify that on November 7, 2006, I caused to be served by hand messenger and overnight delivery "Boston Edison Company's Rule 30(b)(6) Deposition Notice of Defendant United States," addressed as follows:

Alan J. Lo Re
Senior Trial Counsel
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
1100 L Street, N.W.
Washington, D.C. 20530
Attn: Classification Unit, 8th Floor

Alex D. Tomaszczuk
Pillsbury Winthrop Shaw Pittman LLP
725 South Figueroa Street
Suite 2800
Los Angeles, CA 90017

L. Jager Smith, Jr.
Wise Carter Child & Caraway, P.A.
Suite 600
Heritage Building
401 East Capitol Street
Jackson, MS 39201

Richard J. Conway

42

U.S. Department of Justice

Civil Division

FILE COPY

PDK:DMC:HDL:PBBryan
154-99-447

Telephone: (202) 616-8299
Fax: (202) 307-2503

*Washington, D.C. 20530*

November 17, 2006

VIA FACSIMILE AND UNITED STATES MAIL

Richard J. Conway, Esq.
Dickstein Shapiro LLP
1825 Eye Street, N.W.
Washington, DC 20006

Re: *Boston Edison Company v. United States*, No. 99-447C (Fed. Cl.)

Dear Mr. Conway:

We write regarding the Rule 30(b)(6) deposition notice that your client, Boston Edison Company ("Boston Edison"), served upon the Government on November 7, 2006, in this case. As we discussed this week with your colleague, Brad Wine, the Government, as an initial matter, would be unable to produce a Rule 30(b)(6) designee on the date identified in Boston Edison's notice, November 22, 2006, as such date falls upon the eve of the Thanksgiving holiday. Further, we would need substantial time even to attempt to response to that notice, as the topics contained in Boston Edison's notice implicate various agencies and relate broadly to a wide array of matters, ranging from the Government's historical knowledge of "the development of the nuclear industry" to the extent of the Nuclear Regulatory Commission's involvement with respect to Boston Edison's "application for transfer of the Pilgrim operating license" from Boston Edison to Entergy Nuclear Generation Company.

Notwithstanding these efforts, we object to Boston Edison's recent deposition notice on numerous legal grounds. First, because the Government previously produced three separate witnesses in response to the Rule 30(b)(6) deposition notices that Boston Edison served upon the Government in 2002 during the coordinated discovery proceedings, Boston Edison's most recent Rule 30(b)(6) notice is invalid pursuant to Rule 30(a)(2)(B), as Boston Edison failed to obtain leave of court prior to service.[1] In addition, the substantive topics contained in Boston Edison's

[1] Of particular concern, during a conference call on November 15, 2006, Boston Edison's counsel claimed unawareness of the fact that Boston Edison had taken prior Rule 30(b)(6) deposition testimony from the Government in this litigation during coordinated discovery. Although we understand that Boston Edison replaced counsel during this litigation, that decision by Boston Edison does not justify placing upon the Government the burden of educating new counsel about the history of this litigation or of responding to duplicative discovery. Boston Edison itself should have undertaken

most notice are overly broad, irrelevant, seek information protected by the work product privilege, encompass areas that seek legal (rather than factual) information, and are otherwise far from the narrowly-tailored specificity required in seeking a Rule 30(b)(6) deposition.

The Government's Prior Rule 30(b)(6) Depositions

Boston Edison, along with other utility-company plaintiffs, was a party to the coordinated discovery phase of this litigation. During coordinated discovery, Boston Edison's counsel served Rule 30(b)(6) deposition notices upon the Government in February, March, and April 2002. The topics in these notices related to, among other areas, the drafting history of the Standard Contract, the intent of the parties at the time of contracting, and the process by which the Government determined a schedule of spent nuclear fuel ("SNF") acceptance. The Government produced three witnesses whom were designated to testify concerning the topics contained in these notices: Thomas Polloq, who testified on February 19, April 11-12, and May 14, 2002; Susan Klein, who testified on April 24-25, 2002; and David Zabransky, who testified on April 26, 2002. Boston Edison, through its counsel, was present at these prior Rule 30(b)(6) depositions. In fact, Boston Edison's counsel conducted the primary examination of several of these depositions.

Boston Edison's Failure to Comply With Rule 30(a)(2)(B)

In the Court of Federal Claims, as in the Federal district courts, a party "must obtain leave of court" to depose a person or entity that already has been deposed during the litigation. RCFC 30(a)(2)(B). Accordingly, a Rule 30(b)(6) deposition notice directed to an organization that already has been deposed in a case pursuant to Rule 30(b)(6) is invalid if the noticing party fails to seek leave of court prior to the service of the new deposition notice. See, e.g., Ameristar Jet Charter, Inc. v. Signal Composites, Inc., 244 F.3d 189, 192 (1st Cir. 2001) (Rule 30(b)(6) deposition notice quashed for failure to comply with Rule 30(a)(2)(B)); Innomed Labs, LLC v. Alza Corp., 211 F.R.D. 237, 240 (S.D.N.Y. 2002) (denying motion to compel Rule 30(b)(6) deposition for failure to comply with requirements of Rule 30(a)(2)(B)); In re Sulfuric Acid Antitrust Litig., No. 03 C 4576, 2005 WL 1994105, at *2 (N.D. Ill. Aug. 19, 2005) (successive Rule 30(b)(6) deposition notices that were issued without leave of court are invalid pursuant to Rule 30(a)(2)(B)).

In determining whether to grant a party's request to re-open a deposition pursuant to Rule 30(a)(2)(B), courts examine whether: (1) the discovery sought is cumulative or can be obtained more conveniently from some other source; (2) the party seeking the discovery has already had a full opportunity to obtain the information; and (3) the burden and expense of the proposed discovery outweigh its likely benefit. See Ameristar, 244 F.3d at 192; Keck v. Union Bank of Switzerland, No. 94-Civ-4912, 1997 WL 411931, at *1 (S.D.N.Y. July 22, 1997); Hurley v. JARC Builders, Inc., 164 F.R.D. 39, 40 (E.D. Pa. 1995). Courts often grant leave to re-open depositions only upon a showing that there is new information that was not available at the time

appropriate efforts when hiring new counsel.

of the original deposition. See, e.g., Miller v. Federal Express Corp., 186 F.R.D. 376, 389 (W.D. Tenn. 1999) ("Although the re-opening of depositions is disfavored as a general rule, existing case law, as well as common sense, supports allowing redeposal where a party fails to disclose relevant information in its Rule 26(a) disclosure which it later reveals only after an intervening deposition has occurred."). Further, when supplemental depositions are allowed, the requesting party is only allowed a supplemental deposition that is very limited in scope. See, e.g., Jade Trading, LLC v. United States, 64 Fed. Cl. 85, 87 (2005); Dixon v. Certainteed Corp., 164 F.R.D. 685, 692 (D. Kan. 1996).

Here, Boston Edison violated Rule 30(a)(2)(B) because Boston Edison did not seek leave from the Court prior to the service of its Rule 30(b)(6) deposition notice upon the Government on November 7, 2006, even though Boston Edison previously deposed the Government pursuant to Rule 30(b)(6) on various occasions during the coordinated discovery process. This failure alone renders Boston Edison's notice void, and therefore, the Government is not required to respond to the notice pursuant to Rule 30(a)(2)(B). See Ameristar, 244 F.3d at 192; Innomed Labs, 211 F.R.D. at 240; In re Sulfuric Acid Antitrust Litig., 2005 WL 1994105, at *2 (N.D. Ill. Aug. 19, 2005).

Nonetheless, even if Boston Edison had sought the appropriate leave of the Court, Boston Edison's notice would still be invalid. As a party to the coordinated discovery proceedings, Boston Edison was able previously to depose the Government pursuant to Rule 30(b)(6). Nevertheless, Boston Edison has not identified any new information that the Government recently made available that requires the re-opening of the Rule 30(b)(6) deposition or any area about which you could not have asked questions previously. Indeed, in the prior Rule 30(b)(6) depositions, the Government already provided testimony relating to many of the topics in Boston Edison's November 7, 2006 notice, including, among others, Topics Nos. 2(a), 2(b), 2(c), 2(d), 2(e), 2(g), and 3. Hence, absent an explanation by Boston Edison regarding the new information that can only be obtained now from the Government, we will oppose Boston Edison's attempts to re-open the Government's Rule 30(b)(6) deposition.

## The Topics Contained In Boston Edison's Notice Are Improper

Pursuant to Rule 30(b)(6), a party may in his notice of deposition name as the deponent a government agency, but "must describe with reasonable particularity the matters on which examination is requested." RCFC 30(b)(6) (emphasis added). "The responding party 'must make a conscientious good-faith endeavor to designate the persons having knowledge of the matters sought by [the interrogator] and to prepare those persons in order that they can answer fully, completely, unevasively, the question posed by [the interrogator] as to the relevant subject matters.'" Prokosch v. Catalina Lighting, Inc., 193 F.R.D. 633, 638 (D. Minn. 2000). For the Rule to function effectively, however, the requesting party "must take care to designate, with painstaking specificity, the particular subject areas that are intended to be questioned, and that are relevant to the issues in dispute." Id. (emphasis added). "An overbroad Rule 30(b)(6) notice subjects the noticed party to an impossible task." Reed v. Bennett, 193 F.R.D. 689, 692 (D. Kan. 2000).

Accordingly, courts have not hesitated to quash Rule 30(b)(6) notices that fail to meet the requirement of "reasonable particularity." See, e.g., Martin v. Valley Nat'l Bank of Arizona, 140 F.R.D. 291, 315 (S.D.N.Y. 1991) (inquiry into "the Department's review of all other ESOP-financed buyouts through the present" termed "plainly overbroad or otherwise beyond the scope of discovery"); Padena Assicurazioni-Societa Aziono v. M/V Caribbean Express I, No. Civ.A. 97-3855, 1999 WL 30966, at *2 (E.D. La. Jan. 21, 1999) ("[t]he subject notices refer only to the 'causes of the loss or damage to the cargo as described in the Complaint,' a description that is insufficiently particularized"). Indeed, as the United States Court of Appeals for the Federal Circuit has held, "[e]ven if relevant, discovery is not permitted where no need is shown, or compliance would be unduly burdensome, or where the harm to the person from whom discovery is sought outweighs the need of the person seeking discovery of the information." Micro Motion, Inc. v. Kane Steel Co., 894 F.2d 1318, 1323 (Fed. Cir. 1990) (emphasis in original).

The topics in Boston Edison's November 7, 2006 notice are so overly broad and unduly burdensome that it would be virtually impossible for the Government to satisfy its obligations to prepare one witness, or even multiple witnesses, to respond to every conceivable question that Boston Edison might ask. For example, among other broad areas of inquiry, Boston Edison's notice seeks testimony concerning "[t]he Government's understanding of the history and development of the nuclear industry and the [Nuclear Waste Policy Act]," "the Standard Contract," "[t]he rate of acceptance of SNF by the Government," "[t]he Government's performance under the Standard Contract, " and the Government's "knowledge, oversight and approval" of the sale of Pilgrim from Boston Edison to Entergy. In essence, Boston Edison seeks an open-ended and apparently limitless deposition touching upon any aspect of this case and the Government's SNF program generally. Such a deposition would be overbroad, incredibly burdensome to the Government, and violative of the purposes of Rule 30(b)(6).

Further, many of the topics at issue seek legal, rather than factual, information. For example, Boston Edison seeks testimony relating to the Government's interpretation of the Pilgrim purchase and sale agreement into which Boston Edison and Entergy entered, including "the provisions that provided for retention by Boston Edison of claims related to the Standard Contract." Such areas of legal inquiry are not the appropriate subject of a Rule 30(b)(6) deposition. On a similar note, with respect to Boston Edison's inquiries relating to the "Government's estimated potential liability" to Boston Edison and the nuclear industry generally arising from Department of Energy's delay in performance under the Standard Contract, such topics are improper, as they pertain to information that is legal, rather than factual, in nature, and otherwise seek information that is protected from disclosure by the work product privilege.

Finally, in addition to the above objections, we also question the relevance of the subject matters about which Boston Edison now seeks to depose the Government. For example, inquiry relating to "Boston Edison's performance under the Standard Contract" is not relevant in this case, as Boston Edison's performance under the Standard Contract is not in dispute. Therefore, any deposition testimony from the Government's designees concerning this subject area would not lead to probative evidence. We further object to the topics relating to the "Government's performance under the Standard Contract," including "[t]he projected or estimated first

operational date for an SNF repository, "[a]ny changes to the projected first operational date for an SNF repository," and "[o]ptions for interim storage including a monitored retrievable storage." Such topics, which relate to the future performance of the Government, are simply not relevant to Boston Edison's damages claim against the Government. See Indiana Michigan Power Co. v. United States, 422 F.3d 1369, 1376 (Fed. Cir. 2005) (plaintiff may not recover damages for anticipated future nonperformance in a claim for damages arising from the partial breach of a contract).

For the above reasons, the Government respectfully requests that Boston Edison withdraw its Rule 30(b)(6) deposition notice, dated November 7, 2006, as soon as possible. Please let us know your client's position in this regard no later than November 21, 2006. In any event, we will not make a witness available to respond to this Rule 30(b)(6) notice on November 22, 2006.

We appreciate your prompt attention to this matter.

Sincerely,

Patrick B. Bryan

PATRICK B. BRYAN
Trial Attorney
Commercial Litigation Branch

cc. Alex D. Tomaszczuk, Esq.
L. Jager Smith, Esq.

**U.S. Department of Justice**

Civil Division

FILE COPY

PDK:DMC:HDL:PBBryan
154-99-447

Telephone: (202) 616-8299
Fax: (202) 307-2503

*Washington, D.C. 20530*

November 30, 2006

VIA FACSIMILE AND UNITED STATES MAIL

Richard J. Conway, Esq.
Dickstein Shapiro LLP
1825 Eye Street, N.W.
Washington, DC 20006

Re: *Boston Edison Company v. United States*, No. 99-447C (Fed. Cl.)

Dear Mr. Conway:

We write in response to your November 20, 2006 letter regarding the Rule 30(b)(6) deposition notice that Boston Edison Company ("Boston Edison") served upon the Government on November 7, 2006. As an initial matter, we are hopeful that the parties can resolve amicably the disputes concerning the subject deposition notice, and we are thus amenable to any efforts by Boston Edison to limit the breadth of the topics contained therein. In that regard, in your November 20, 2006 letter, you requested that the Government designate portions of its prior Rule 30(b)(6) deposition testimony that we believe satisfy particular topics in Boston Edison's November 7, 2006 deposition notice. Notwithstanding our willingness to work cooperatively with you, it is improper for Boston Edison to impose upon the Government the burden of identifying the areas of duplicative testimony that Boston Edison already obtained when it deposed the Government's three Rule 30(b)(6) designees during earlier phases of this litigation.

In an effort to resolve our disputes amicably, however, we invite Boston Edison to identify those portions of the Government's prior Rule 30(b)(6) depositions from this case that Boston Edison deems responsive to the November 7, 2006 deposition notice. Upon receiving this information from Boston Edison, we will consider designating any prior responsive testimony that Boston Edison identifies. With respect to any remaining topics in Boston Edison's notice, we reiterate the specific objections raised in our November 17, 2006 letter.

Should you have questions or concerns with respect to the foregoing, please do not hesitate to contact us. We invite Boston Edison to participate in a "meet and confer" with us in the near future aimed at resolving any disputes regarding this issue.

Sincerely,

Patrick B. Bryan

PATRICK B. BRYAN
Trial Attorney
Commercial Litigation Branch

cc: Alex D. Tomaszczuk, Esq.
L. Jager Smith, Jr., Esq.

CERTIFICATE OF FILING

I hereby certify that on this 22th day of December 2006, a copy of the foregoing "DEFENDANT'S RESPONSE TO PLAINTIFF BOSTON EDISON COMPANY'S MOTION FOR LEAVE TO TAKE A RULE 30(b)(6) DEPOSITION AND CROSS-MOTION TO COMPEL" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Patrick B. Bryan