# EXHIBIT D

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

Filed Electronically: December 18, 2006

| | | |
|---|---|---|
| DAIRYLAND POWER COOPERATIVE, | ) | |
| | ) | |
| Plaintiff, | ) | No. 04-106C |
| | ) | (Chief Judge Damich) |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

PLAINTIFF DAIRYLAND'S MOTION TO COMPEL DEPOSITIONS

The government has taken the remarkable position that Dairyland is not entitled to take a single deposition in this case, which involves a claim for more than $40 million in damages to date and a variety of important legal and factual issues. The government has taken that "no deposition" position even though Dairyland has sought a total of only four depositions, and even though the government has agreed in other cases to depositions of some of the same individuals that Dairyland wants to depose in this case.

The government's "no deposition" position is completely untenable and should be rejected. For the reasons set forth in this motion, and pursuant to Rule 37, the Court should compel the four depositions that Dairyland seeks and direct the government to cooperate in scheduling these depositions at a mutually convenient time and place.

DISCUSSION

The four depositions Dairyland requested, by letter of November 10, 2006, attachment 1, are of key witnesses Christopher Kouts, David Zabransky and Thomas Pollog, and a Rule 30(b)(6) witness. Mr. Zabransky is the DOE contracting officer under Dairyland's contract (and all other "standard" spent fuel contracts). Mr. Pollog is the contracting officer's technical

representative. Mr. Kouts is the Director of DOE's Office of Waste Management and is thus responsible, according to his testimony at the recent trial in Pacific Gas and Electric Co.'s ("PG&E") spent fuel case, for "management of the standard contracts with utilities and all the activities associated with that, such as testifying in court on certain issues." PG&E trial transcript at 2584:4-7, attachment 2. Dairyland's request, in this important breach of contract case, to depose those three senior contracting officials as well as an appropriate Rule 30(b)(6) witness on selected relevant topics, is as unremarkable – indeed, one would think routine – as the government's flat-out refusal to allow the depositions, absent a Court Order, is untenable and unsupportable.

The sole basis for the government's refusal to agree to depositions of Messrs. Zabransky, Pollog and Kouts, apart from purported scheduling concerns (*i.e.*, potential conflicts with scheduled testimony in other cases), is that those individuals have previously been deposed and testified at trials in other spent fuel cases. *See* Letter from Shultis to Shapiro, Dec. 6, 2006, attachment 3. That government letter did not address Dairyland's request for a Rule 30(b)(6) deposition, as Dairyland had not yet served a list of topics for that deposition. Dairyland has since done so, by letter of December 13, attachment 4. Dairyland is nevertheless moving now, even before the government responds to that December 13 letter, for an Order compelling the Rule 30(b)(6) deposition it seeks, given a) the passage of time, b) the Court's admonition in its Order of December 4 not to unduly delay discovery matters, c) the efficiency of filing one motion to compel all four of the depositions Dairyland seeks, and d) Dairyland's reasonable expectation that the government will continue to refuse any Rule 30 (b)(6) deposition in this case. Of course, if the government agrees to the Rule 30(b)(6) deposition as currently proposed, Dairyland will be pleased to delete that issue from this motion.

The fact that Messrs. Kouts, Zabransky and Pollog have testified previously in other spent fuel cases – the sole reason (other than scheduling issues) that the government asserts for objecting to their depositions in this case – provides no basis for denying Dairyland the opportunity to depose these individuals here. Nor for similar reasons does the Rule 30(b)(6) deposition of DOE witnesses taken in the spent fuel "common discovery" proceeding in 2002, before this case was filed, provide any basis for denying Dairyland the opportunity to conduct a Rule 30(b)(6) deposition in this case.

First, there can be no claim of undue burden to these witnesses, as the Court's Rule 30(d)(2) limits each deposition to seven hours (absent leave) and Dairyland would expect to adhere to that limitation. Unlike the government, Dairyland is paying hourly fees for its counsel, and it has absolutely no incentive either to take depositions that aren't needed or to needlessly prolong those depositions. In addition, the stakes are large. Dairyland has submitted and supported a claim for more than $40 million in damages through June of 2006. And the issues to be resolved in this litigation are likely to control Dairyland's entitlement to recover tens of millions of dollars in additional damages that it will incur in subsequent periods. Furthermore, given that the government's latest estimates are that it will not start to accept spent fuel from utilities until 2020 at the earliest, the government cannot credibly claim that it cannot afford to lose a day from each of these deponents, whose jobs focus on "waste acceptance" from utilities.

Second, there obviously can be no claim that these individuals have previously answered questions about the facts of Dairyland's claim, as they were never asked questions in the context of Dairyland's claim. Dairyland's complaint was filed in 2004, and its initial disclosures were submitted just earlier this year. Dairyland had no opportunity to participate at all in any of the prior depositions of these deponents. The fact that Dairyland's counsel participated in some

prior depositions of these individuals is utterly irrelevant. The significance of a deposition stems from the issues addressed in the questioning, not from the identity of counsel asking the questions.

And while it is true that the DOE contracts in all these cases are essentially the same, it is equally true that the claims of individual spent fuel plaintiffs vary greatly – as do the facts that individual Judges of this Court have found important in resolving those varied damages claims – depending upon the particular damages elements that individual spent fuel plaintiffs are claiming and other particular facts in the individual cases. These significant variations among the cases are reflected in the Court's opinions to date. *Compare, e.g., Yankee Atomic Elec. Co. v. United States*, 73 Fed. Cl. 249 (2006) *with Pacific Gas & Elec. Co.*, 73 Fed. Cl. 333 (2006). Moreover, the government has had particular interactions with individual utilities, including Dairyland.

Third, subsequent to prior depositions of these government witnesses, both the substance of their testimony and the topics about which they claim to be able to testify *have changed.* Relatedly, subsequent to their previous testimony, additional decisions of this Court in spent fuel cases have highlighted new and different issues, and Dairyland is entitled to question these individuals about those issues. For these reasons alone, the Court should allow new depositions in this case. Otherwise, despite the availability of prior transcripts, Dairyland can't know what these witnesses will say in *this* case about issues material to Dairyland's claims.

The need for new depositions is vividly illustrated by the PG&E trial testimony of Mr. Kouts. There, when counsel for PG&E (the undersigned) attempted to impeach Mr. Kouts with the differing answers he gave at his 1999 deposition, Mr. Kouts blithely informed counsel that although those answers may have been true when given, they were no longer true, as Mr. Kouts

had assumed additional responsibilities since 1999 and also had studied up on topics he then knew nothing about:

> Q. Do you remember having your deposition taken in the Yankee Atomic case?
>
> A. I remember giving a deposition in that case, yes I do.
>
> Q. Let me hand you a transcript of that deposition. The date is June 4, 1999. If you would take a look, Mr. Kouts, at page 91 of this transcript. Starting on page excuse me, line 21 at the bottom, are you there?
>
> A. Yes.
>
> Q. You testified truthfully at this deposition, correct?
>
> A. To my knowledge, yes.
>
> Q. And you were under oath?
>
> A. Yes.
>
> Q. You were asked the following question and gave the following answer: "Turning your attention back to Exhibit 3, which is the 1995 ACR and table of that, which is on page four, the acceptance rates in these two documents are different, . . . . *Which one of these receipt rates is going to be binding on the utilities*, or which one of these receipt rates can utilities count on once the Department begins accepting spent fuel for disposal?"
>
> A. Right.
>
> Q. And your answer: *"I don't know that I'm the one to answer that question. I really don't know. I couldn't tell you.*" Is that your testimony?
>
> A. That's correct.
>
> Q. Okay. And the agreements that DOE has with utilities through the standard contract is not an area of your expertise, is that correct?
>
> A. At that time, it was not.
>
> Q. Okay.

. . . .

Q. Do you recall telling me at that deposition, or testifying at that deposition that only a lawyer would know if receipt rates and ACRs or APRs are binding?

[objection]

Q. *Mr. Kouts, you don't know if receipt rates in ACRs and APRs are binding, right, only a lawyer would know that*?

A. *At that time, that was my understanding yes.*

Q. *Is that your understanding today*?

A. *No, it's not*.

Q. Okay. So your understanding has been obtained, your understanding about the contractual obligations has been obtained since June 4, 1999, is that correct?

A. I've learned more about the issue, yes, that's correct.

**Q. Your understanding, whatever understandings you have about DOE's contractual obligations under the standard contract, you have obtained since June 4, 1999, correct?**

**A. That's correct.**

PG&E trial transcript 2741:15-2745:15, attachment 5 (emphasis and bold added).

Dairyland is entitled to depose Mr. Kouts to find out just what he has learned since that 1999 deposition.

Likewise regarding Messrs. Zabransky and Pollog, Dairyland is entitled to know how they will testify today, in this case, in the context of Dairyland particular damages claims. As with Mr. Kouts, it would not be reasonable or fair to require Dairyland to rely on prior depositions of these key contracting officials. Not only was Dairyland not a participant in any of those prior depositions, but the April 2002 depositions of Messrs. Zabransky and Pollog from the "common discovery" proceeding are more than four years old, and neither those depositions nor

the depositions (or trial testimony) these men gave in other spent fuel cases involved any questions about the facts of this case or any questions posed in the context of Dairyland's particular claims.

As for the Rule 30(b)(6) deposition that Dairyland seeks, the Court should also allow that for similar reasons. Although a Rule 30(b)(6) deposition was included in the "common discovery" process in early 2002, the Rule 30(b)(6) questioning was sharply limited by the presiding Discovery Judge, Judge Sypolt. Specifically, Judge Sypolt directed that discovery taken at that time should be limited to developing facts necessary to respond to the government's then-pending summary judgment motions on the rate of acceptance and GTCC waste issues. *See* Order of February 1, 2002 at 2, attachment 6 ("[T[he scope of discovery shall be limited by RCFC 56(g) factors, *i.e.* to discovering facts essential to justify plaintiff's opposition to the dispositive motions."). Based on that directive, the plaintiffs participating in that proceeding did not pursue the list of more than twenty Rule 30(b)(6) topics they had originally proposed; rather, as ordered by Judge Sypolt, plaintiffs limited the Rule 30(b)(6) questioning to only ten topics pertaining to the government's pending motions. *See* Order of March 5, 2002 at 2, attachment 7. More fundamentally, Dairyland did not and could not participate in that prior deposition because it was taken nearly two years before this case was filed.

Given those severe limitations on the Rule 30(b)(6) deposition plaintiffs took in the "common discovery" proceeding in 2002, and given the passage of time and development of facts and issues that have taken place (and the issuance of numerous decisions in spent fuel cases) during the four years since the "common discovery" proceeding ended, Dairyland should be allowed – as the Court's Rules expressly contemplate – to take a Rule 30(b)(6) deposition to

ascertain the government's position and contentions on various material disputed issues relevant to this case.

Importantly, the Court should reject any artificial limit on the scope of questioning at the depositions Dairyland seeks. In other spent fuel cases, the government has argued that plaintiffs should only be allowed to ask government witnesses "new" questions not addressed in prior testimony, or about facts arising subsequent to their prior testimonies. Such limitations are not only artificial, they are extremely burdensome, they invite needless bickering over where the line should be drawn, and they ultimately are both unworkable and simply unnecessary. These three key DOE officials (Messrs. Kouts, Zabransky and Pollog) have testified at every spent fuel damages trial to date and have given depositions in those cases and in numerous other cases not yet ready for trial. It would take many days – perhaps longer – for Dairyland's counsel just to read those transcripts and familiarize himself with what topics have been covered in that imposing testimonial record. And assuming counsel could even remember all the topics covered previously, an artificial limit on the depositions in this case would inevitably lead to discussion, and then argument, over whether questions Dairyland's counsel poses are or are not within the allowed scope of questioning. Such arguments about the permissible scope of questioning could consume the entire deposition.

There is no need for an artificial limit on these depositions, or the needless and avoidable inefficiencies such a limit would create. Under the Court's Rules Dairyland is limited to a single day of seven hours, and as noted above Dairyland has no incentive to take needless depositions or prolong questioning unduly. The most efficient way to proceed, by far, is to let Dairyland ask these witnesses one day's worth of questioning, unfettered by artificial limits, so that everyone on both sides of the case can get on with other tasks.

Finally, in order to avoid the need for duplicative depositions in the other spent fuel case pending before this Judge, *Energy Northwest v. United States*, No. 04-10C, Dairyland's counsel has coordinated with Energy Northwest's counsel. Energy Northwest desires to take the deposition of Mr. Kouts, and Energy Northwest and Dairyland are willing to conduct these depositions on a joint basis, provided the Court allows an additional three hours for Energy Northwest's additional questioning, only if needed, so that Energy Northwest may ask some additional or case-specific questions of Mr. Kouts following Dairyland's questioning during the initial seven hours provided for the Court's Rules.

CONCLUSION

For these reasons, the Court should grant this motion to compel depositions and direct the government to cooperate in scheduling the four depositions requested here at a mutually convenient time and place during the first two weeks of February. If schedules of the witnesses do not permit the depositions to occur in that time frame, Dairyland would be willing to conduct one or more of these depositions later in February (with leave of Court) even though the Court's Order of May 1, 2006 states that fact discovery should be concluded by February 16, 2006.

Respectfully submitted,

Dated: December 18, 2006

s/ Jerry Stouck
Jerry Stouck
Greenberg Traurig, LLP
800 Connecticut Avenue, NW
Suite 500
Washington, DC 20006
(202) 331-3173
(202) 261-4751
Counsel for Plaintiff
Pacific Gas & Electric Company

Of Counsel:

Robert L. Shapiro
Greenberg Traurig, LLP