# EXHIBIT C

No. 04-106C
(Chief Judge Damich)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

---

DAIRYLAND POWER COOPERATIVE,

Plaintiff,

v.

UNITED STATES,

Defendant.

---

# DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION TO COMPEL DEPOSITIONS AND CROSS-MOTION FOR A PROTECTIVE ORDER TO PRECLUDE THOSE DEPOSITIONS OR, IN THE ALTERNATIVE, TO RE-INSTITUTE THE COORDINATED DISCOVERY PROCEEDINGS IN THE PENDING SPENT NUCLEAR FUEL CASES

---

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

HAROLD D. LESTER, JR.
Assistant Director

RUSSELL A. SHULTIS
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington D.C. 205230
Tele: (202) 305-7571
Fax: (202) 307-2503

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington D.C. 20585

ALAN LO RE
Senior Trial Counsel

PATRICK B. BRYAN
JOHN C. EKMAN
SONIA ORFIELD
MARIAN E. SULLIVAN
Trial Attorneys

January 12, 2007

Attorneys for Defendant

TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . iii

DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION TO COMPEL DEPOSITIONS AND CROSS-MOTION FOR A PROTECTIVE ORDER TO PRECLUDE THOSE DEPOSITIONS OR, IN THE ALTERNATIVE, TO RE-INSTITUTE THE COORDINATED DISCOVERY PROCEEDINGS IN THE PENDING SPENT NUCLEAR FUEL CASES . . . . . 1

BACKGROUND . . . . . . . . . . 1

SUMMARY OF THE ARGUMENT . . . . . . . . . . 5

ARGUMENT . . . . . . . . . . 6

I. DAIRYLAND HAS FAILED TO ESTABLISH THE NEED TO RE-OPEN THE DEPOSITIONS OF MESSRS. KOUTS, POLLOG, AND ZABRANSKY . . . . . 6

II. DAIRYLAND'S RULE 30(b)(6) DEPOSITION NOTICE IS DUPLICATIVE, UNDULY BURDENSOME, AND SEEKS DISCOVERY ON TOPICS IRRELEVANT TO THE COURT'S CONSIDERATION OF THE CASE . . . . 15

III. TO THE EXTENT THAT THE COURT GRANTS DAIRYLAND'S REQUEST TO ALLOW ADDITIONAL DEPOSITIONS OF GOVERNMENT PERSONNEL OR ADDITIONAL RCFC 30(b)(6) TESTIMONY, THE COURT SHOULD RE-INSTITUTE COORDINATED DISCOVERY PROCEEDINGS FOR ANY FURTHER DISCOVERY THAT ANY SNF PLAINTIFFS REQUIRE FROM THE GOVERNMENT . . . . . . . . . . 23

CONCLUSION . . . . . . . . . . 24

## TABLE OF AUTHORITIES

### CASES

Acme Printing Ink Co. v. Menard, Inc.,
812 F.Supp. 1498 (E.D. Wisc. 1992) . . . . . . . . 7, 8

Alexander v. Federal Bureau of Investigation,
186 F.R.D. 197 (D.D.C. 1999) . . . . . . . . 4, 5

Ballou v. University of Kansas Med. Ctr.,
159 F.R.D. 558 (D. Kan. 1994) . . . . . . . . 5

Bankers Trust Co. v. Rhoades,
108 B.R. 423 (S.D.N.Y. 1989) . . . . . . . . 7, 8

Banks v. Office of the Senate Sergeant-At-Arms,
222 F.R.D. 7 (D.D.C. 2004) . . . . . . . . 16

Cutherbertson v. Excel Indus., Inc.,
179 F.R.D. 599 (D. Kan. 1998) . . . . . . . . 13

Dixon v. CertainTeed Corp.,
164 F.R.D. 685 (D. Kan. 1996) . . . . . . . . 9, 10

Doe v. Lepley,
185 F.R.D. 605 (D. Nev. 1999) . . . . . . . . 5

Exxon Research & Engineering Co. v. United States,
44 Fed. Cl. 597 (1999) . . . . . . . . 16, 20

Hasbro, Inc. v. Serafino,
168 F.R.D. 99 (D. Mass. 1996) . . . . . . . . 5

Hub. v. Sun Valley Co.,
682 F.2d 776 (9th Cir. 1982) . . . . . . . . 7

Independence Park Apartments v. United States,
59 Fed. Cl. 765 (2004) . . . . . . . . 9, 13

In re Independent Serv. Org. Antitrust Litig.,
168 F.R.D. 651 (D. Kan. 1996) . . . . . . . . 16

Indiana Michigan Power Co. v. United States,
422 F.3d 1369 (Fed. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 21

Jade Trading, LLC v. United States,
64 Fed. Cl. 84 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 14

Keck v. Union Bank of Switzerland,
No. 94-civ-4912, 1997 WL 411931 (S.D.N.Y. July 22, 1997) . . . . . . . . . . . . . . . . . . . 14

Lakewood Eng'g & Mfg. Co. v. Lasko Products, Inc.,
No. 01C7867, 2003 WL 1220254 (N.D. Ill. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Martin v. Valley Nat'l Bank of Arizona,
140 F.R.D. 291 (S.D.N.Y. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

McCormick-Morgan, Inc. v. Teledyne Indus., Inc.,
134 F.R.D. 275 (N.D. Cal.), rev'd in other part,
765 F.Supp. 611 (N.D. Cal. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 20

Melhorn v. New Jersey Transit Rail Operations, Inc.,
203 F.R.D. 176 (E.D. Pa. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Micro Motion, Inc. v. Kane Steel Co.,
894 F.2d 1318 (Fed. Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 19

Miller v. Federal Express Corp.,
186 F.R.D. 376 (W.D. Tenn. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Olivieri v. Rodriguez,
122 F.3d 406 (7th Cir. 1997), cert denied 522 U.S. 1110 (1998) . . . . . . . . . . . . . . . . . 23

Pacific Gas & Electric Co. v. United States,
70 Fed. Cl. 758 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Padena Assicurazioni-Societa Aziono v. M/V Caribbean Express I,
No. Civ.A. 97-3855,1999 WL 30966 (E.D. La. Jan. 21, 1999) . . . . . . . . . . . . . . . . . . . . 16

Patterson v. Avery Dennison Corp.,
281 F.3d 676 (7th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Pesterfield v. Sunbeam Corp.,
00 Civ. 104, 2005 WL 1076293 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Prokosch v. Catalina Lighting, Inc.,
193 F.R.D. 633 (D. Minn. 2000) .......................................... 15

Reed v. Bennett,
193 F.R.D. 689 (D. Kan. 2000) .......................................... 15

Sattar v. Motorola, Inc.,
138 F.3d 1164 (7th Cir. 1998) .......................................... 5

System Fuels, Inc. v. United States,
No. 03-2624C (Fed. Cl.) .......................................... 11, 13

Tri-Star Pictures, Inc. v. Unger,
171 F.R.D. 94 (S.D.N.Y. 1997) .......................................... 5

United States Fidelity & Guaranty Co. v. Braspetro Oil Services Co.,
97 Civ. 6124, 2000 WL 1886593 .......................................... 8

United States v. District Council of New York City,
90 Civ. 5722, 1992 WL 208284 (S.D.N.Y. 1992) .......................... 17, 19

Vivid Technologies, Inc. v. American Science & Engineering, Inc.,
200 F.3d 795 (Fed. Cir. 1999) .......................................... 23

**MISCELLANEOUS**

Manual for Complex Litigation §§ 21.422 & 21.451 (1995) .......................... 23

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| DAIRYLAND POWER COOPERATIVE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 04-0106C |
| | ) | (Chief Judge Damich) |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION TO COMPEL DEPOSITIONS AND CROSS-MOTION FOR A PROTECTIVE ORDER TO PRECLUDE THOSE DEPOSITIONS OR, IN THE ALTERNATIVE, TO RE-INSTITUTE THE COORDINATED DISCOVERY PROCEEDINGS IN THE PENDING SPENT NUCLEAR FUEL CASES

Defendant, the United States, respectfully responds to the motion to compel depositions filed by plaintiff, Dairyland Power Cooperative ("Dairyland"). Because Dairyland is simply seeking to repeat extensive depositions that have already been taken, defendant also cross-moves for a protective order to preclude the depositions that Dairyland seeks. If the Court determines that Dairyland is entitled to re-open any of the depositions already conducted, defendant requests that the Court re-institute the coordinated discovery proceedings in the spent nuclear fuel ("SNF") cases pending before the Court so that any further depositions of Government witnesses will occur only once.

BACKGROUND

There are 53 SNF cases pending before 17 judges on the Court. They all involve claims arising from the delay by the Department of Energy ("DOE") in beginning SNF acceptance pursuant to the Standard Contract, 10 C.F.R. § 961.11. Currently, 16 of these cases are in active litigation, and nine cases are currently scheduled commence trial (or expected to commence trial) in 2007 and 2008. The Court has issued final decisions in another six cases. Indiana Michigan

Power Co. v. United States, 60 Fed. Cl. 639 (2004), aff'd, 422 F.3d 1369 (2005); Yankee Atomic Electric Co. v. United States, Connecticut Yankee Atomic Power Co. v. United States, and Maine Yankee Atomic Power Co. v. United States, 73 Fed. Cl. 249 (2006), appeal docketed, Nos. 07-5025, 07-5027 & 07-5026 (Fed. Cir. Dec. 2006); Tennessee Valley Authority v. United States, 69 Fed. Cl. 515 (2005); Pacific Gas & Electric Co. v. United States, 73 Fed. Cl. 333 (2006); and Sacramento Municipal Utility District v. United States, __ Fed. Cl. __, 2006 WL 3490940 (Fed. Cl. Dec. 1, 2006).

To date, counsel for the SNF plaintiffs have conducted depositions of 58 individual fact witnesses over 145 days.[1] In addition, in the coordinated discovery proceedings over which Judge Sypolt presided in 2002, which included all of the then-existing plaintiffs and it which current counsel for Dairyland participated (albeit as counsel for other SNF plaintiffs), the SNF plaintiffs conducted six days of deposition of three Government designees on ten different topics. A. 7-8.[2] The topics upon which these designees were questioned included the purpose, intent, and application of various provisions in the Standard Contract and related documents; the process by which the Government determined a schedule of SNF acceptance; projections regarding the date of the Government's full compliance with the Standard Contract; issues relating to Greater-Than-Class-C radioactive waste; and the development and formation of the Delivery Commitment Schedule process, Annual Capacity Reports, and Acceptance Priority

[1] In addition, the Government has made available to Dairyland more than one million pages of documents on the Government's production website as well as provided access to a substantial database of documents that houses the bulk of the relevant DOE office's files, called the Record Information System ("RIS-Web").

[2] "A. __" refers to the appendix to this response.

Rankings required by the Standard Contract. Id. In addition to these Rule 30(b)(6) depositions, the SNF plaintiffs in the coordinated discovery deposed ten fact witnesses over the course of 28 days. A. 1-4.

While the coordinated discovery proceedings were continuing, counsel for Dairyland was prosecuting the cases of Yankee Atomic Electric Co. v. United States, No. 98-126C (Fed. Cl.), Connecticut Yankee Atomic Power Co. v. United States, No. 98-154C (Fed. Cl.), and Maine Yankee Atomic Power Co. v. United States, No. 98-474C (Fed. Cl.). As part of discovery in the Yankee cases, counsel conducted 44 depositions of Government witnesses over the course of 68 days. A. 1-4. Counsel for Dairyland was also counsel for plaintiff in Pacific Gas & Electric Co. v. United States, Nos. 04-74C & 04-75C (Fed. Cl.) ("PG&E"). During discovery in that case, counsel deposed four individuals over four days. Id.

Messrs. Kouts, Pollog, and Zabransky have sat for deposition on numerous occasions. Mr. Kouts has sat for six days of deposition, Mr. Pollog has sat for 13 days of deposition as either a fact witness or a Rule 30(b)(6) deponent, and Mr. Zabransky has sat for 19 days of deposition as either a fact witness or a Rule 30(b)(6) deponent. A. 5-6. Counsel for Dairyland, while representing these other SNF plaintiffs, conducted 11 of these depositions. Id. In addition to this existing record of deposition testimony, Dairyland also has available to it the trial testimony of Messrs. Kouts, Pollog, and Zabransky from the six trials that have been conducted since trial in Indiana Michigan.[3] As shown by review of the Government's witness lists

[3] At trial in Indiana Michigan, Mr. Kouts was the only Government fact witness to testify, and he testified about DOE's plans for opening a repository in 2010. The decision of the United States Court of Appeals for the Federal Circuit in Indiana Michigan Power Co. v. United States, 422 F.3d 1369 (Fed. Cir. 2005), that the SNF plaintiffs cannot pursue claims for future damages in the cases before the Court alleging partial breach of contract, has rendered testimony

describing these individuals' testimony, A. 9-33, Messrs. Kouts, Pollog, and Zabransky have testified about the same matters in all of these trials – the development of the waste management system and implementation of the Standard Contract. Counsel for Dairyland cross-examined Messrs. Kouts, Pollog, and Zabransky during trial in Yankee and PG&E.

Despite the extensive amount of prior deposition and trial testimony that is available to Dairyland, on November 10, 2006, Dairyland's counsel requested new depositions of Messrs. Kouts, Pollog, and Zabransky, and indicated that Dairyland would like to conduct a Rule 30(b)(6) deposition. Pl. Mtn. Attch. 1. In response to Dairyland's request, by letter dated December 6, 2006, counsel for the Government indicated to Dairyland that, "absent an explanation as to why the existing exhaustive record of deposition testimony is not sufficient to meet Dairyland's trial preparation requirements," the Government could not agree to further depositions of these individuals. Pl. Mtn. Attch. 2. The Government took no position on Dairyland's request for a Rule 30(b)(6) deposition because Dairyland had not provided the list of topics upon which it intended to depose the Government.

By letter dated December 12, 2006, counsel for Dairyland provided to the Government "a list of topics" for the Rule 30(b)(6) deposition Dairyland wanted to conduct. Pl. Mtn. Attch. 4. On December 18, 2006, prior to receiving any response from the Government regarding its proposed list and without issuing an actual deposition notice, Dairyland filed its motion to compel this deposition.[4] As will be discussed below, many of the proposed topics are identical

---

regarding DOE's future plans for opening a repository unnecessary and irrelevant.

[4] Arguably, Dairyland did not "consult[] in good faith" with the Government "to resolve the matters in dispute" regarding its request to conduct a further Rule 30(b)(6) deposition, as required by paragraph 10 of Appendix A to this Court's rules. While the Government does not

or virtually identical to the RCFC 30(b)(6) topics upon which counsel for Dairyland deposed the Government during the coordinated discovery.

## SUMMARY OF THE ARGUMENT

Through its motion to compel, Dairyland seeks to require the Government to make three Government fact witnesses – Messrs. Kouts, Pollog, and Zabransky – return for depositions that will essentially duplicate depositions that have already been taken in the SNF cases pending

---

dispute that it objects to the topics proposed by Dairyland because those topics simply duplicate discovery to which Dairyland has access or that Dairyland seeks to obtain by other means, Dairyland's decision to file a motion to compel based upon a proposed list of topics clearly does not meet the requirement to meet and confer prior to the filing of such a motion. Moreover, the timing of the filing, six days after providing the proposed list of topics, fails to meet the Court's requirement that the parties attempt to resolve problems prior to bringing them to the Court for resolution.

Appendix A to the Court's rules requires a party moving to compel discovery to state that "the party has in good faith conferred or attempted to confer to resolve the matters in dispute." RCFC, Appendix A, ¶10. "The entire purpose of the meet-and-confer rule is to force litigants to attempt to resolve, or [at] least narrow, the disputed issues to prevent the unnecessary waste of time and effort on any given motion." Alexander v. Federal Bureau of Investigation, 186 F.R.D. 197, 199 (D.D.C. 1999) (interpreting local district court rule); see Hasbro, Inc. v. Serafino, 168 F.R.D. 99, 101 (D. Mass. 1996) (construing analogous Fed. R. Civ. P. 37(a)(2)(A)). Moreover, courts "will not condone a violation [of the meet-and-confer requirement] simply because the potential for compromise appears bleak," because "[d]isagreement . . . is an obvious precursor to negotiated compromise, and thus, is a necessary component of the meet-and-confer prerequisite to bringing a motion to compel." Tri-Star Pictures, Inc. v. Unger, 171 F.R.D. 94, 99, 100 (S.D.N.Y. 1997). These requirements exist because, as the one district court stated, "[i]t is not up to the Court to expend its energies when the parties have not sufficiently expended their own." Hasbro, 168 F.R.D. at 101. When a party moving to compel does not attempt to resolve the disputes short of judicial intervention, courts do not hesitate to deny the motion upon this ground. E.g., Sattar v. Motorola, Inc., 138 F.3d 1164, 1171-72 (7th Cir. 1998) (affirming denial of motion to compel for failure to confer); Alexander, 186 F.R.D. at 199 (denying motion to compel for failure to confer); Doe v. Lepley, 185 F.R.D. 605, 606 (D. Nev. 1999) (failure to "make a sincere effort to personally consult" with opposing counsel constitutes grounds for denying motion); Tri-Star Pictures, 171 F.R.D. at 99-100 (denying motion to compel for failure to confer in good faith); Hasbro, 168 F.R.D. at 101-02 (same); Ballou v. University of Kansas Med. Ctr., 159 F.R.D. 558, 560 (D. Kan. 1994).

before the Court. Although Dairyland was not a party to those previous depositions, the Court should deem those depositions to have been conducted in this case because those depositions were taken in cases involving the same subject matter -- DOE's delay in beginning performance of the Standard Contract, 10 C.F.R. § 961.11 -- and were conducted by Dairyland's counsel or counsel for other SNF plaintiffs. If those depositions are available for use as if originally taken in Dairyland's case, Dairyland should be required to establish good cause for the re-opening of those depositions, which it has failed to do.

Similarly, with its proposed list of RCFC 30(b)(6) topics, Dairyland seeks to duplicate testimony that has already been obtained in RCFC 30(b)(6) or fact witness depositions in other SNF cases. However, these depositions are available for use by Dairyland as if originally taken in this case, and there is no need to repeat them. Other topics on Dairyland's list seek information that Dairyland has sought by other discovery means, is irrelevant to the Court's consideration of damages, or seeks testimony regarding legal conclusions that are within the province of the Court. For all these reasons, Dairyland's motion to compel a RCFC 30(b)(6) deposition to ask questions about its proposed list of topics should be denied.

## ARGUMENT

### I. DAIRYLAND HAS FAILED TO ESTABLISH THE NEED TO RE-OPEN THE DEPOSITIONS OF MESSRS. KOUTS, POLLOG OR ZABRANSKY

Dairyland seeks to conduct yet another deposition of three Government employees – Messrs. Kouts, Pollog, and Zabransky. Because the existing depositions of these employees can be used by Dairyland as if they had been taken by Dairyland, the Court should consider Dairyland's motion to be one to re-open those existing depositions. Because Dairyland has failed to identify the new information that has been produced since the existing depositions or

demonstrate any other "good cause," the Court should deny Dairyland's motion to compel and enter a protective order to preclude the conduct of these depositions.

Rule 32(a)(4) of the Rules of this Court provides the circumstances in which depositions taken in prior proceedings may be treated as if they have been taken in a subsequent proceeding:

> [W]hen an action has been brought in any court of the United States or of any state and another action involving the same subject matter is afterward brought between the same parties or their representatives or successors in interest, all depositions duly filed in the formation action may be used in the latter as if originally taken therefor. A deposition previously taken may also be used as permitted by the Federal Rules of Evidence.

RCFC 32(a)(4). In determining whether two cases involve the "same subject matter," courts have required only that there be "a substantial identity of issues." Hub. v. Sun Valley Co., 682 F.2d 776, 778 (9th Cir. 1982); Acme Printing Ink Co. v. Menard, Inc., 812 F.Supp. 1498, 1524 (E.D. Wisc. 1992). "The standard used by courts to determine the use of prior depositions against different parties under Rule 32(a)(4) is whether the party-opponent in the prior case had the same motive and opportunity to cross-examine the deponent as the present opponent." Bankers Trust Co. v. Rhoades, 108 B.R. 423, 430 (S.D.N.Y. 1989) (citations omitted). A determination that depositions taken in prior cases can be used in a case, pursuant to Rule 30(a)(4), "has a tremendous impact on the type of discovery" that a party needs to pursue in a case. Pesterfield v. Sunbeam Corp., No. 00 Civ. 104, 2005 WL 1076293 at *3 (E.D. Tenn. May 6, 2005) (ordering that plaintiff could either use the prior depositions or re-depose the individuals).

Clearly, Dairyland's case involves the same subject matter as all the other SNF cases pending before the Court – a claim for partial breach arising from DOE's delay in performance

of the Standard Contract, 10 C.F.R. § 961.11. Dairyland admits that the "DOE contracts in all these cases are essentially the same." Pl. Mtn. at 4. The question hinges upon whether there are sufficient common interests between Dairyland and the other SNF plaintiffs to reach the determination that Dairyland's suit has been brought by the same representatives as the prior suits or successors-in-interest. Dairyland's counsel, representing four other utility plaintiffs, has conducted depositions of Messrs. Kouts, Pollog, and Zabransky in Yankee and PG&E. Given the common representation between the plaintiffs in these cases and Dairyland, the depositions conducted in these cases should be considered taken in Dairyland's case. Pesterfield, 2005 WL 1076293, at *2 (common defense counsel in all prior cases satisfied the requirements of Rule 30(a)(4). The depositions taken by counsel for the other SNF plaintiffs should also qualify because counsel for the other utility plaintiffs had "the same motive and opportunity to cross-examine the deponent" as Dairyland's counsel because the plaintiffs' claims in all those cases are for the same types of damages arising from DOE's delay in performing the Standard Contract. Bankers Trust Co., 108 B.R. at 430.

Only if the Court determines that the depositions previously conducted cannot be used "as if originally taken" in Dairyland's case would Dairyland be entitled to its new seven-hour deposition of Messrs. Kouts, Pollog, and Zabransky, without restrictions to topics that have not been the subject of previous depositions. In the event, the existing record of depositions of these three individuals previously taken in any other case should be held unavailable for any purpose for Dairyland. See Acme Printing, 812 F.Supp. at 1524-5 (denying motion to use depositions, upon finding that parties did not have the "same motive to cross-examine"); United States Fidelity & Guaranty Co. v. Braspetro Oil Services Co., No. 97 Civ. 6124, 2000 WL 1886593, at

*2 (finding that parties did not share a "common motivation" in conducting prior depositions). Moreover, if Dairyland contends that the depositions of Messrs. Kouts, Pollog, and Zabransky should not been deemed "as if originally taken" in this case because of the lack of common interests with the other SNF plaintiffs, all of the other depositions conducted in other SNF cases, beyond Messrs. Kouts, Pollog, and Zabransky, would similarly have to be rendered unavailable for use here because Dairyland was not a party to these depositions either.

If the Court deems that the existing record of depositions may be used "as if originally taken" in Dairyland's case, Dairyland should be required to show what new information has been provided since the prior conduct of these existing depositions that justifies re-opening them. Under this Court's rules, [a] party must obtain leave of the court, which shall be granted to the extent consistent with the principles stated in RCFC 26(b)(2), . . . if, without written stipulation of the parties, the person to be examined already has been deposed in the case. RCFC 30(a)(2); see Independence Park Apartments v. United States, 59 Fed. Cl. 765, 769 (2004) ("RCFC 30(a)(2)(B) expressly requires that a party seeking to depose an individual more than once must obtain leave from the Court to do so."). In Federal courts, "[t]he re-opening of depositions is disfavored as a general rule." Miller v. Federal Express Corp., 186 F.R.D. 376, 389 (W.D. Tenn. 1999). "Absent some showing of a need or good reason for doing so, the court will generally not require a deponent to appear for a second deposition.'" Dixon v. CertainTeed Corp., 164 F.R.D. 685, 690 (D. Kan. 1996) (citation omitted); see Melhorn v. New Jersey Transit Rail Operations, Inc., 203 F.R.D. 176, 180 (E.D. Pa. 2001) ("Absent some showing of need or good reason for doing so, a deponent should not be required to appear for a second deposition."); Lakewood Eng'g & Mfg. Co. v. Lasko Products, Inc., No. 01C7867, 2003 WL 1220254, at *8 (N.D. Ill.

2003) (burden is on the party requesting to re-depose a deponent to make a "clear showing of substantial need" to justify re-opening).

Good cause is often the production of documents or other discovery after the conduct of the original deposition. See, e.g., Dixon, 164 F.R.D. at 692 (production after first deposition of document containing statement by witness warranted second depositions); Miller, 186 F.R.D. at 389 ("Although the re-opening of depositions is disfavored as a general rule, existing case law, as well as common sense, supports allowing redeposal where a party fails to disclose relevant information in its Rule 26(a) disclosure which it later reveals only after an intervening deposition has occurred."). The issue of whether to re-open a deposition is committed to the sound discretion of the Court. Jade Trading, LLC v. United States, 64 Fed. Cl. 84, 86 (2006) (citing Dixon, 164 F.R.D. at 690). Dairyland has failed to demonstrate what new information has been provided since the conduct of these depositions that necessitates the reopening of these depositions. Dairyland contends that these three witnesses have not answered questions about "the facts of Dairyland's claim" and that its claims are different than other SNF plaintiffs. Pl. Mtn. at 3-4. However, "the facts of Dairyland's claim" are not new facts or information that the Government has made available since the conduct of the previous depositions. Dairyland's claims, as the Government currently understands them, appear to be no different than those presented by the other SNF plaintiffs with cases pending before the Court or those previously represented by Dairyland's counsel. In sum, Dairyland is seeking to recover the damages that it alleges that it has incurred as a result of DOE's delay in beginning the acceptance of SNF from Dairyland and other SNF plaintiffs. The terms of the contract at issue are the same and the Government's obligations flowing from that contract are the same for all plaintiffs. In addition,

to the extent that the individual elements of Dairyland's claim are different than those brought by other SNF plaintiffs, Messrs. Kouts, Pollog, and Zabransky will not know anything about those claims or how they are different from the claims presented by other utility plaintiffs. Messrs. Kouts, Pollog, and Zabransky have never testified about the damages claims of individual plaintiffs because that is outside the scope of their knowledge and expertise and better left to the Government's experts. Testimony about Dairyland's claims falls within the province of Dairyland's witnesses and the Government's experts. In the previous depositions, Messrs. Kouts, Pollog, and Zabransky have been thoroughly questioned about the subject matter that is the focus of their testimony at trial – DOE's efforts to implement the terms of the Standard Contract and the development of the program. This testimony is not utility-specific because, as Dairyland admits, the terms of the Standard Contract are the same for every plaintiff. More importantly, this testimony about events that occurred prior to 1998 has not changed since these witnesses have been deposed.

Dairyland also contends that the new depositions are necessary because "both the substance of their testimony and the topics about which they claim they claim to be able to testify have changed." Pl. Mtn. at 4. As shown by a review of the attached Government's witness lists, the Government's descriptions of Messrs. Kouts, Pollog, and Zabransky's testimony in the cases that have proceeded to trial have not changed. A. 9-33. For example, the description of Mr. Pollog's testimony has consistently read:

> Mr. Pollog will testify about the implementation of the Standard Contract, including acceptance rates, priority for shutdown reactors, the ACR issue resolution process conducted with industry representatives, the issuance and content of the ACRs, the issuance and content of the APRs, delivery commitment schedules, schedule negotiations, exchanges, the fact that the Yucca Mountain

> repository is not being designed to accept "greater-than-class-c" radioactive waste and other relevant matters. Mr. Pollog will also testify about the DOE database built upon the RW-859 data submitted by the utilities and used to develop fuel acceptance allocations.

See, e.g., A. 13. To the extent that the substance of the testimony provided by any of these witnesses has changed, that allegation is best addressed at trial through the traditional avenues of impeachment. In any event, Dairyland has not established its allegation to be true, instead relying upon pure attorney conjecture. This unsupported allegation does not provide the basis for a new deposition regarding the same information.[5]

Dairyland provides an excerpt of a portion of Mr. Kouts' testimony in PG&E for support for its contention that the testimony of these individuals has changed. Pl. Mtn. 5-6. In the actual testimony, Mr. Kouts explains that he has learned more regarding the Government's "contractual obligations" since he assumed his position as Director, Office of Systems Analysis and Strategy Development. However, this acknowledgment by Mr. Kouts does not provide the basis for deposing Mr. Kouts for two reasons. First, as the description of Mr. Kouts' testimony in PG&E shows, the substance of Mr. Kouts' testimony concerns "DOE's plans to accept spent nuclear fuel at a repository and a Monitored Retrievable Storage facility, issues relating to the disposal of GTCC, the reasons for the delays in the Yucca Mountain project, and DOE's ability to accept utility spent nuclear fuel, budgetary issues, and other relevant matters." A. 25. Second, the

[5] If inconsistent testimony provided a reason to re-open a deposition, it would create a dilemma for counsel and the witness when the witness is asked the same question at trial as has been asked in two separate depositions. If the statements between the two depositions are inconsistent, counsel has created a situation in which he can impeach the witness regardless of the actual testimony at trial. Discovery is not intended to be about gamesmanship.

Government's contractual obligations are matters to be decided by the Court. Mr. Kouts' understanding of these obligations, whenever gained, does not change that fact.

Dairyland also claims that decisions of the Court have "highlighted new and different issues," but does not identify what those issues are. Given that Messrs. Kouts, Pollog, and Zabransky's testimony has been the same in all of the cases that have gone to trial, Dairyland has not established that the testimony of these individuals is different. Instead, it appears that Dairyland's counsel seeks to re-open the depositions of these individuals and ask about the same subject matter, if there are no limitations, hoping to obtain a better deposition than he or counsel for the other utility plaintiffs already have obtained. Presumably, it is just this type of abuse that RCFC 30(a)(2) was intended to prevent. See Cutherbertson v. Excel Indus., Inc., 179 F.R.D. 599, 606 (D. Kan. 1998) (pursuant to Rule 30(a)(2), "[s]cheduling a second deposition of the same person without a showing of good reason will generally support a finding of annoyance and undue burden or expense.") (citation omitted).

Finally, Dairyland seeks to minimize the burden to these individuals and the Government arising from having to prepare for and attend yet another deposition. While a single deposition of seven hours per individual should not be a burden, this would be the seventh day of deposition for Mr. Kouts, the 14th day deposition for Mr. Pollog, and the 20th day of deposition for Mr. Zabransky. Moreover, all three of these individuals are expected to testify in the upcoming trials scheduled in System Fuels, Inc. v. United States, No. 03-2624C (Fed. Cl.) (Jan. 16-22, 2006); System Fuels, Inc. v. United States, No. 03-2623C (Fed. Cl.) (Feb.12-23, 2006); Wisconsin Electric Power Co. v. United States, No. 00-697(Fed. Cl.) (Mar. 27-Apr. 20, 2007); and Boston Edison Co. v. United States, No. 99-447C (Fed. Cl.)(May 7-18, 2007) (which has been

consolidated for a limited purpose with Entergy Nuclear Generating Co. v. United States, No. 03-2626C (Fed. Cl.), prior to their expected testimony at trial in this case in October 2007).

Dairyland's assertion that its counsel should not be required to review the existing depositions in preparation for new or re-opened depositions simply is not credible. Pl. Mtn. at 8. In a case in which Dairyland's current claims are approximately $40 million, we find it difficult to believe that counsel for Dairyland will not be very familiar with the entirety of the Government witnesses testimony prior to the conduct of any new deposition. Counsel would not be fulfilling his duty to his client if he were not versed in the prior testimony of these witnesses so that he could conduct a better deposition. Therefore, without any limitations regarding covering information that could have been asked before, Dairyland's counsel will have the benefit of an existing record of testimony from which to prepare for an unfettered deposition. Moreover, while Dairyland complains about the need to review the existing record if such limitations were imposed, Dairyland does not state that it does not intend to rely upon that existing record at trial. So, Dairyland is seeking to take an unfettered deposition and simply add to the existing depositions for these three witnesses.

As we have demonstrated, the burden and expense of the additional depositions outweigh their likely benefit, the depositions sought are cumulative of depositions that have already been taken, and Dairyland has full use of these depositions. See Jade Trading, 64 Fed. Cl. at 86-87 (citing RCFC 26(b)(2)); Keck v. Union Bank of Switzerland, No. 94-Civ-4912, 1997 WL 411931, at *1 (S.D.N.Y. July 22, 1997) (same). For these reasons, the Government requests that the Court enter a protective order to preclude the conduct of additional depositions of Messrs. Kouts, Pollog, and Zabransky. To the extent that it permits Dairyland to take new depositions, it

should issue an order (1) barring Dairyland from relying on any past depositions of these individuals in this cases, and (2) barring the depositions from being distributed to the other SNF plaintiffs.

## II. DAIRYLAND'S RULE 30(b)(6) DEPOSITION NOTICE IS DUPLICATIVE, UNDULY BURDENSOME, AND SEEKS DISCOVERY ON TOPICS IRRELEVANT TO THE COURT'S CONSIDERATION OF THE CASE

With its list of proposed topics, Dairyland seeks to conduct another RCFC 30(b)(6) deposition that will duplicate RCFC 30(b)(6) and fact depositions that have already been taken. In addition, Dairyland seeks to conduct a RCFC 30(b)(6) deposition on subjects that are also the subject of its other discovery requests or are irrelevant to the issues to be decided by the Court. For these reasons, the Government requests that the Court enter a protective order to preclude the conduct of the RCFC 30(b)(6) deposition that Dairyland seeks.

Pursuant to RCFC 30(b)(6), a party may in his notice of deposition name as the deponent a Government agency, but "must describe with reasonable particularity the matters on which examination is requested." RCFC 30(b)(6) (emphasis added). The responding party "must make a conscientious good-faith endeavor to designate the persons having knowledge of the matters sought by [the interrogator] and to prepare those persons in order that they can answer fully, completely, unevasively, the question posed by [the interrogator] as to the relevant subject matters." Prokosch v. Catalina Lighting, Inc., 193 F.R.D. 633, 638 (D. Minn. 2000). For the rule to function effectively, however, the requesting party "must take care to designate, with painstaking specificity, the particular subject areas that are intended to be questioned, and that are relevant to the issues in dispute." Id. (emphasis added). "An overbroad Rule 30(b)(6) notice

subjects the noticed party to an impossible task." Reed v. Bennett, 193 F.R.D. 689, 692 (D. Kan. 2000).

Courts have not hesitated to quash Rule 30(b)(6) notices that fail to meet the requirement of "reasonable particularity." See, e.g., Martin v. Valley Nat'l Bank of Arizona, 140 F.R.D. 291, 315 (S.D.N.Y. 1991) (inquiry into "the Department's review of all other ESOP-financed buyouts through the present" termed "plainly overbroad or otherwise beyond the scope of discovery"); Padena Assicurazioni-Societa Aziono v. M/V Caribbean Express I, No. Civ.A. 97-3855, 1999 WL 30966, at *2 (E.D. La. Jan. 21, 1999) ("[t]he subject notices refer only to the 'causes of the loss or damage to the cargo as described in the Complaint,' a description that is insufficiently particularized"). Indeed, as the United States Court of Appeals for the Federal Circuit has held, "[e]ven if relevant, discovery is not permitted where no need is shown, or compliance would be unduly burdensome, or where the harm to the person from whom discovery is sought outweighs the need of the person seeking discovery of the information." Micro Motion, Inc. v. Kane Steel Co., 894 F.2d 1318, 1323 (Fed. Cir. 1990) (emphasis in original).

Courts also have quashed wide-ranging Rule 30(b)(6) notices because such discovery is duplicative of existing discovery or could be obtained more efficiently through the review of documents and the depositions of individual witnesses. E.g., Banks v. Office of the Senate Sergeant-At-Arms, 222 F.R.D. 7, 19 (D.D.C. 2004) (quashing Rule 30(b)(6) notice and ordering plaintiff, with new notice, to certify that it would not "ask questions that duplicate questions previously asked of other witnesses or seek information that [it already had] by virtue of responses to other discovery devices."); In re Independent Serv. Org. Antitrust Litig., 168 F.R.D. 651, 654 (D. Kan. 1996) (plaintiff failed to convince court that "the factual information it seeks

[through 30(b)(6) deposition could not] be discovered by other less problematic means, or that it is not already available in the voluminous discovery already conducted" in the case and another case); Exxon Research & Engineering Co. v. United States, 44 Fed. Cl. 597, 602 (1999) (holding that the party seeking a Rule 30(b)(6) deposition should first pursue contention interrogatories before the Court would consider the possibility of a Rule 30(b)(6) deposition.); McCormick-Morgan, Inc. v. Teledyne Indus., Inc., 134 F.R.D. 275, 285-87 (N.D. Cal.), rev'd in other part, 765 F.Supp. 611 (N.D. Cal. 1991) (ordering party to pursue discovery through use of contention interrogatories rather than Rule 30(b)(6) deposition); see also United States v. District Council of New York City, 90 Civ. 5722, 1992 WL 208284, at *15 (S.D.N.Y. 1992) (quashing Rule 30(b)(6) notice because, "[w]hile the District Court certainly has the right to discover factual information . . . those facts have not been concealed by the Government. They are available in the documents provided and through depositions of fact witnesses who were named as having relevant information.").

The Court should enter a protective order to preclude the conduct of another RCFC 30(b)(6) deposition by Dairyland because Dairyland clearly seeks to obtain information that is easily obtained elsewhere in the existing record of deposition and documents produced in the SNF cases pending before the Court. As discussed above, pursuant to RCFC 30(a)(4), these depositions should be deemed as if originally taken by Dairyland. Six of the topics on Dairyland's proposed list are exactly the same as the topics for which the Government has already provided a RCFC 30(b)(6) deponent. Compare Pl. Mtn. Attach. 4 (Topics 1, 3, 4, 5, 10 and 11) and A. 7 (Topics 2, 3, 4, 6, 8 and 9). Mr. Pollog, Ms. Klein, and Mr. Zabransky testified on these topics in depositions, the transcripts of which are available to Dairyland. Dairyland, in

its motion to compel, has not provided any explanation as to why the existing testimony on these same topics is insufficient for its purposes. Further, Topic 8, "how DOE's rate and schedule for acceptance is determined under the Standard Contract," was covered in the previous testimony on topics 2, 3, and 4 in the previous RCFC 30(b)(6) depositions.

Four other topics on Dairyland's list have been the subject of numerous depositions of fact witnesses. (Topics 2, 6, 7, 8, and 14). For example, in topic 2, Dairyland seeks to inquire into the "purpose and role of instructions DOE has issued for completing DCSs, including the instructions issued in 1991 and 2004."[6] Messrs. Pollog and Zabransky, as well as other Government witnesses, have been asked about these instructions repeatedly in depositions. Moreover, Messrs. Pollog and Zabransky have testified about these instructions at trial, including trials in which counsel for Dairyland represented the plaintiffs (Yankee Atomic and PG&E). Similarly, with regard to topic 14, Mr. Zabransky and others have provided testimony about DOE's plans for the scheduling and acceptance of failed fuel, to the extent that those plans are known prior to the submission of the license application for the repository. The Government referenced some of this testimony in response to Dairyland's interrogatory (No. 13) on the same subject. During that trial testimony, counsel for Dairyland cross-examined Mr. Zabransky. Topic 13 also seeks the same information covered by interrogatories 12 and 13.

---

[6] The Government has consistently maintained that the DCS instructions issued in 2004 are not relevant to the matters to be decided by the Court because they were issued after January 31, 1998, and, therefore, do not assist the Court in determining DOE's obligations to utilities, beginning in January 1998. However, we have made Messrs. Pollog and Zabransky available to testify about these instructions in depositions since they were issued, and Messrs. Pollog and Zabransky have been asked about these instructions at trial, during cross-examination, over the Government's objection. This deposition and trial testimony is available to counsel for Dairyland.

In topics 6 and 7, Dairyland seeks information regarding the "purpose and intent" of DOE in entering into the Standard Contracts, and "DOE's understanding of the utilities' purpose and intent." The Government objects to these topics for two reasons: 1) the topics seek testimony upon legal matters to be decided by the Court; and 2) the underlying factual information has been already obtained in repeated depositions. For example, Mr. Morgan, the first acting director of the office that was to become the Office of Civilian Radioactive Waste Management ("OCRWM"), has been deposed about his activities and the activities of the office in promulgating the Standard Contract in three separate depositions that were conducted over four days. Counsel for Dairyland conducted one of these depositions. Deposition of Mr. Robert Morgan, in Yankee Atomic, June 25, 2002. In addition, Messrs. Lawrence and Rosselli, two other DOE employees associated with the early development of the Standard Contract, were deposed in the coordinated discovery proceedings. Accordingly, with these depositions, Dairyland already has access to the deposition testimony of the percipient fact witnesses regarding these factual matters. Dairyland cannot justify the burden of undertaking new preparations for duplicative testimony when the existing deposition record is satisfactory. Micro Motion, Inc., 894 F.2d at 1323. Similarly, with regard to Topics 8 and 9, numerous fact witnesses have provided testimony regarding the activities that were undertaken to implement the schedule provisions of the contract. The fact that the information Dairyland seeks is available in the existing deposition record provides a proper basis for granting the Government's motion for a protective order to preclude the depositions. District Council of New York City, 1992 WL 208284, at *15.

Dairyland's list also contains topics which duplicate contention interrogatories that Dairyland has propounded.[7] With Topics 16, 17, and 18, Dairyland seeks testimony regarding the "reasonableness or unreasonableness" of expenditures or activities undertaken by Dairyland purportedly to address DOE's delay, the cost of which Dairyland seeks as damages. With interrogatories 9, 14, and 15, Dairyland seeks the Government's position regarding whether these same activities were "unreasonable." The fact that Dairyland has sought this same information sought by Topics 16-18 in contention interrogatories should preclude a RCFC 30(b)(6) deposition on these same topics. See Exxon Research, 44 Fed. Cl. at 602; McCormick-Morgan, 134 F.R.D. at 286.[8] Moreover, these topics are objectionable because, as we stated in response to those contention interrogatories, Dairyland seeks to have the Government make certain legal conclusions regarding the "reasonableness" of these activities, which ultimately is a decision for the Court. Finally, as we noted in response to the interrogatories, the Government simply does not have enough knowledge about the activities that Dairyland has undertaken properly to prepare a witness regarding these activities. Further, it is unlikely that Government personnel will ever have enough knowledge to testify about these matters. When the Government's discovery is complete, the Government's experts, rather than Government fact personnel, are likely to provide the Government's only testimony regarding any aspect of the

[7] The Government's response to these contention interrogatories is the subject of Dairyland's other pending motion to compel. Motion to Compel Discovery Responses, filed December 28, 2006.

[8] Topics 12, 15, and 16 on Dairyland's list also duplicate Dairyland's interrogatories (Nos. 6 and 7), but the Government objects to these topics as irrelevant.

"reasonableness" of these activities. Similarly, with Topics 14 and 20, Dairyland seeks the same information as it sought with interrogatories 12, 13 and 18.

Dairyland's proposed list of RCFC 30(b)(6) topics is also flawed because Dairyland seeks discovery into matters that are irrelevant to the Court's consideration of damages. Specifically, Topics 12, 13, 15, and 16 concern DOE's plans for activities in the future and, as noted in response to interrogatories 6 and 7, this information is not relevant to the determination of damages arising from DOE's delay in accepting spent nuclear fuel beginning in 1998. In accordance with the United States Court of Appeals for the Federal Circuit's decision in Indiana Michigan Power Co. v. United States, 422 F.3d 1369 (Fed. Cir. 2005), future damages are not recoverable in a partial breach of contract case. See Pacific Gas & Electric Co. v. United States, 70 Fed. Cl. 758, 763 (2006) (interpreting Indiana Michigan's preclusion on future damages). Information regarding the "schedule on which DOE plans to remove Dairyland's spent fuel" and the "date on which DOE currently plans to complete picking up spent fuel from Dairyland's site" is irrelevant to the determination of damages that were incurred prior to the filing of Dairyland's complaint. Moreover, any information regarding DOE's plans for the future does not aid in the Court's determination regarding what DOE was obligated to do beginning in 1998. Finally, DOE's current expectation regarding the "earliest date" that it will begin accepting spent fuel can be obtained from statements of DOE officials to Congress and others. Until that date is closer, any information regarding schedules for acceptance and the date by which DOE will start and complete acceptance of SNF from Dairyland remains only in the planning stage and is speculative.

In its motion to compel, Dairyland provides no explanation as to why it should be allowed to obtain, through another RCFC 30(b)(6) deposition, discovery that it has sought through other means or that has been made available to it from other SNF cases. Instead, Dairyland argues that it should be allowed to conduct the deposition because Judge Sypolt, in governing the coordinated discovery, limited discovery to those topics necessary to respond to the Government's pending motions for summary judgment regarding the scope of the Government's obligations. However, with those motions, the Government sought to have the Court determine the Government's obligations to all of the SNF plaintiffs beginning in 1998. In the depositions conducted during the coordinated discovery proceedings, the utility plaintiffs had an opportunity to conduct full and fair discovery into all aspects of the Government's position with regard to its obligations. Moreover, within this purportedly "limited scope," RCFC 30(b)(6) depositions were conducted on six of the same topics that Dairyland has identified (Topics 1, 3, 4, 5, 10, and 11) and fact testimony was obtained on five other topics (Topics 2, 6, 7, 8, and 14). Although Dairyland was not a party to those depositions, its counsel was involved in many of them, and Dairyland certainly can make use of them for its trial preparation purposes. RCFC 32(a)(4) ("when an action has been brought in any court of the United States or of any state and another action involving the same subject matter is afterward brought between the same parties or their representatives or successors in interest, all depositions lawfully taken and duly filed in the former action may be used in the latter as if originally taken therefor."). Moreover, the information that Dairyland seeks with these Topics 1-8, 10-11, and 14 is not specific to Dairyland's claims. Therefore, there is no need for counsel for Dairyland to conduct a new deposition regarding these topics.

RCFC 26(c) provides that the Court may issue a protective order that provides "that the disclosure or discovery not be had," or "that the discovery may be had only by the method of discovery other than that selected by the party seeking the discovery." RCFC 26(c)(1) & (3). Because the information that Dairyland seeks through its proposed RCFC 30(b)(6) list of topics is duplicative of discovery that has already been obtained or that Dairyland itself seeks to obtain by other means, the Government requests that the Court enter a protective order precluding the RCFC 30(b)(6) deposition that Dairyland seeks.

## III. TO THE EXTENT THAT THE COURT GRANTS DAIRYLAND'S REQUEST TO ALLOW ADDITIONAL DEPOSITIONS OF GOVERNMENT PERSONNEL OR ADDITIONAL RCFC 30(b)(6) TESTIMONY, THE COURT SHOULD RE-INSTITUTE COORDINATED DISCOVERY PROCEEDINGS FOR ANY FURTHER DISCOVERY THAT ANY SNF PLAINTIFFS REQUIRE FROM THE GOVERNMENT

The Court's rules of procedure give it "broad powers of case management, including the power to limit discovery to relevant subject matter and to adjust discovery as appropriate to each phase of litigation." Vivid Technologies, Inc. v. American Science & Engineering, Inc., 200 F.3d 795, 803-04 (Fed. Cir. 1999) (citing Fed. R. Civ. P. 16(b), ©); 26(b); 42(b)); see Olivieri v. Rodriguez, 122 F.3d 406, 409 (7th Cir. 1997) ("[a] district judge's discretion in supervising pretrial discovery is broad"), cert. denied, 522 U.S. 1110 (1998). "Pretrial discovery is time-consuming and expensive; it protracts and complicates litigation and judges are to be commended rather than criticized for keeping tight reins on it." Olivieri, 122 F.3d at 409. Public officials "should not have to spent their time giving depositions in cases . . . unless there is some reason to believe that the deposition will produce or lead to admissible evidence." Id. at 409-10. Rule 26(b)(2) of the Federal Rules of Civil Procedure, which the Court has adopted, "empowers district courts to limit the scope of discovery if 'the discovery sought is unreasonably

cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive." Patterson v. Avery Dennison Corp., 281 F.3d 676, 681 (7th Cir. 2002) (quoting Fed. R. Civ. P. 26(b)(2)); see Manual for Complex Litigation §§ 21.422 & 21.451 (1995) (encouraging parties and courts to devise methods "to facilitate the orderly and cost-effective acquisition of relevant information and materials," with a balancing of "efficiency and economy against the parties' need to develop an adequate record for summary judgment or trial" and avoidance of cumulative depositions).

To the extent that the Court grants Dairyland's request for additional depositions, the Court should order that the coordinated discovery proceedings be re-instituted so that the Government will not repeatedly have to make the same witnesses available over and over again for a repetitive depositions upon the same topics. Without coordination, which would limit the number of hours that any potential deponent would have to sit for deposition and the number of times that the deponent would have to appear, the Government's witnesses will continue to be subject to repetitive and time-consuming depositions in numerous cases over a course of the next several years as the remaining 53 pending cases proceed through discovery and to trial. The coordinated proceedings would require that the plaintiffs join together to take only one deposition of any Government witness, particularly as they relate to basic contract formation and performance issues that are common to all of the SNF cases. The Government and the utility plaintiffs in the previous coordinated discovery operated under a set of procedures governing these depositions that the Government respectfully seeks to have implemented again.

## CONCLUSION

For the foregoing reasons, defendant respectfully requests that the Court deny Dairyland's motion to compel depositions and enter a protective order to preclude these depositions.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director

s/Russell A. Shultis
RUSSELL A. SHULTIS
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington D.C. 205230
Tele: (202) 305-7571
Fax: (202) 307-2503

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

ALAN LO RE
Senior Trial Counsel

PATRICK B. BRYAN
JOHN C. EKMAN
SONIA ORFIELD
MARIAN E. SULLIVAN
Trial Attorneys
Department of Justice

January 12, 2007

Attorneys for Defendant

# APPENDIX

## INDEX TO THE APPENDIX


| Document | Page |
| --- | --- |
| List of Individuals Deposed By SNF Plaintiffs | 1 |
| List of Depositions of Messrs. Kouts, Pollog, and Zabransky | 5 |
| List of Topics for RCFC 30(b)(6) Depositions Conducted in Coordinated Discovery Proceedings | 7 |
| Excerpts from Government's Witness Lists in Yankee Atomic Electric Co. v. United States, No. 98-126C (Fed. Cl.), Sacramento Municipal Utility District v. United States, No. 98-488C (Fed. Cl.), Tennessee Valley Authority v. United States, No. 01-249C (Fed. Cl.), Southern Nuclear Operating Co. v. United States, No. 98-614C (Fed. Cl.), Pacific Gas & Electric Co. v. United States, Nos. 04-74C & 04-75C (Fed. Cl.), System Fuels, Inc. v. United States, No. 03-2624C (Fed. Cl.), and Northern States Power Co. v. United States, No. 98-484C (Fed. Cl.) | 9 |

## Fact Depositions Taken By Plaintiffs

| Last Name: | First Name: | Depo Date: | Plaintiff: | Vol: | Depo taken by: | 30(B)(6): | Expert: |
|---|---|---|---|---|---|---|---|
| Arthur, III | W. John | 9/22/2005 | PG&E | 1 | Plaintiff | No | No |
| Bajwa | Christopher | 2/18/2004 | ComEd | 1 | Plaintiff | No | No |
| Bajwa | Christopher | 5/17/2002 | Yankee | 1 | Plaintiff | No | No |
| Barrett | Lake | 4/22/2002 | CoDisc. | 1 | Plaintiff | No | No |
| Barrett | Lake | 4/23/2002 | CoDisc. | 2 | Plaintiff | No | No |
| Barrett | Lake | 4/26/2002 | CoDisc. | 3 | Plaintiff | No | No |
| Barrett | Lake | 5/8/2002 | CoDisc. | 4 | Plaintiff | No | No |
| Barrett | Lake | 5/10/2002 | CoDisc. | 5 | Plaintiff | No | No |
| Barrett | Lake | 5/14/2002 | Yankee | 1 | Plaintiff | No | No |
| Barrett | Lake | 5/15/2002 | Yankee | 2 | Plaintiff | No | No |
| Benz | Edward | 5/10/2002 | Yankee | 1 | Plaintiff | No | No |
| Benz | Edward | 12/15/2003 | IM | 1 | Plaintiff | No | No |
| Bernero | Robert | 1/24/2003 | Yankee | 1 | Plaintiff | No | No |
| Brownstein | Alan | 4/9/2002 | CoDisc. | 1 | Plaintiff | No | No |
| Brownstein | Alan | 4/10/2002 | CoDisc. | 2 | Plaintiff | No | No |
| Brownstein | Alan | 4/11/2002 | CoDisc. | 3 | Plaintiff | No | No |
| Brownstein. | Alan | 5/23/2002 | Yankee | 1 | Plaintiff | No | No |
| Brownstein | Alan | 6/14/2002 | Yankee | 2 | Plaintiff | No | No |
| Bubar | Patrice | 5/20/2004 | Yankee | 1 | Plaintiff | No | No |
| Burgoyne | Robert | 7/8/2004 | SMUD | 1 | Plaintiff | No | No |
| Campbell | Robert | 1/29/2003 | Yankee | 3 | Plaintiff | No | No |
| Campbell | Robert | 6/13/2002 | Yankee | 1 | Plaintiff | No | No |
| Campbell | Robert | 6/14/2002 | Yankee | 2 | Plaintiff | No | No |
| Campbell | Robert | 5/6/2004 | Yankee | 4 | Plaintiff | No | No |
| Carlson | James | 2/12/2004 | ComEd | 1 | Plaintiff | No | No |
| Carlson | James | 4/23/2004 | Yankee | 1 | Plaintiff | No | No |
| Cavanaugh | James | 9/17/2002 | Yankee | 2 | Plaintiff | No | No |
| Cavanaugh | James | 7/2/2002 | Yankee | 1 | Plaintiff | No | No |
| Cole | Billy | 3/12/2002 | CoDisc. | 1 | Plaintiff | No | No |
| Cole | Billy | 6/5/2002 | Yankee | 2 | Plaintiff | No | No |
| Cole | Billy | 3/13/2002 | CoDisc. | 2 | Plaintiff | No | No |
| Cole | Billy | 6/4/2002 | Yankee | 1 | Plaintiff | No | No |
| Coleman | Joseph | 9/10/2002 | Yankee | 1 | Plaintiff | No | No |
| Croote | Tammy | 12/1/2006 | WEPCO | 1 | Plaintiff | No | No |
| Dreyfus | Daniel | 5/15/2002 | Yankee | 1 | Plaintiff | No | No |
| Fiore | James | 6/20/2002 | Yankee | 1 | Plaintiff | No | No |
| Garrish | Theodore | 9/23/2005 | PG&E | 1 | Plaintiff | No | No |
| Greeves | John | 2/4/2003 | Yankee | 1 | Plaintiff | No | No |
| Grumbly | Thomas | 5/28/2002 | Yankee | 1 | Plaintiff | No | No |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Head | Charles | 6/6/2002 | Yankee | 1 | Plaintiff | No | No |
| Head | Charles | 6/7/2002 | Yankee | 2 | Plaintiff | No | No |
| Hoffman | Stephen | 2/23/2004 | IM | 1 | Plaintiff | No | No |
| Huizenga | David | 9/13/2002 | Yankee | 1 | Plaintiff | No | No |
| Huizenga | David | 4/30/2004 | Yankee | 1 | Plaintiff | No | No |
| Isaacs | Thomas | 5/24/2002 | Yankee | 1 | Plaintiff | No | No |
| Kennedy | James | 5/11/2004 | Yankee | 2 | Plaintiff | No | No |
| Kennedy | James | 2/5/2003 | Yankee | 1 | Plaintiff | No | No |
| Klein | Susan | 4/25/2002 | CoDisc. | 2 | Plaintiff | Yes | No |
| Klein | Susan | 4/24/2002 | CoDisc. | 1 | Plaintiff | Yes | No |
| Klein | Keith | 5/22/2002 | Yankee | 1 | Plaintiff | No | No |
| Knoll | William | 1/4/2005 | SMUD | 1 | Plaintiff | No | No |
| Kouts | Christopher | 10/11/2006 | SFI/MS | 1 | Plaintiff | No | No |
| Kouts | Christopher | 1/30/2004 | IM & ComEd | 1 | Plaintiff | No | No |
| Kouts | Christopher | 4/11/2005 | SoNuc & SCE&G | 1 | Plaintiff | Yes | No |
| Kouts | Christopher | 6/4/1999 | Yankee | 1 | Plaintiff | No | No |
| Kouts | Christopher | 3/12/2004 | ComEd | 1 | Plaintiff | Yes | No |
| Kouts | Christopher | 2/19/2004 | IM & ComEd | 2 | Plaintiff | No | No |
| Langstaff | David | 11/4/2004 | SMUD | 1 | Plaintiff | No | No |
| Lawrence | Michael | 5/21/2002 | CoDisc. | 2 | Plaintiff | No | No |
| Lawrence | Michael | 5/20/2002 | CoDisc. | 1 | Plaintiff | No | No |
| Lemeshewsky | William | 5/23/2002 | Yankee | 2 | Plaintiff | No | No |
| Lemeshewsky | William | 5/21/2002 | Yankee | 1 | Plaintiff | No | No |
| Leotta | Richard | 4/20/1999 | Yankee | 1 | Plaintiff | No | No |
| McDuffie | Patrick | 3/18/2002 | CoDisc. | 1 | Plaintiff | No | No |
| McDuffie | Patrick | 3/19/2002 | CoDisc. | 2 | Plaintiff | No | No |
| McDuffie | Patrick | 6/26/2002 | Yankee | 1 | Plaintiff | No | No |
| McKee | Robert | 5/23/2002 | Yankee | 1 | Plaintiff | No | No |
| McLeod | Barrie | 6/13/2002 | Yankee | 1 | Plaintiff | No | No |
| Milner | Ronald | 5/1/2002 | CoDisc. | 1 | Plaintiff | No | No |
| Milner | Ronald | 5/3/2002 | CoDisc. | 3 | Plaintiff | No | No |
| Milner | Ronald | 5/7/2002 | CoDisc. | 4 | Plaintiff | No | No |
| Milner | Ronald | 5/7/2002 | Yankee | 1 | Plaintiff | No | No |
| Milner | Ronald | 5/8/2002 | Yankee | 2 | Plaintiff | No | No |
| Milner | Ronald | 5/2/2002 | CoDisc. | 2 | Plaintiff | No | No |
| Morgan | Robert | 3/21/2002 | CoDisc. | 1 | Plaintiff | No | No |
| Morgan | Robert | 3/22/2002 | CoDisc. | 2 | Plaintiff | No | No |
| Morgan | Robert | 6/25/2002 | Yankee | 1 | Plaintiff | No | No |
| Morgan | Robert | 11/15/2006 | NoSt | 1 | Plaintiff | No | No |
| Newman | Darrell | 4/17/2002 | Yankee | 1 | Plaintiff | No | No |
| O'Connor | Steve | 6/18/2002 | Yankee | 1 | Plaintiff | No | No |
| O'Connor | Steve | 2/18/2004 | ComEd | 1 | Plaintiff | No | No |
| Picha, Jr. | Kenneth | 7/7/2004 | SMUD | 1 | Plaintiff | No | No |
| Plummer | Terry | 6/3/2002 | Yankee | 1 | Plaintiff | No | No |
| Plummer | Terry | 6/4/2002 | Yankee | 2 | Plaintiff | No | No |

Case 1:04-cv-00106-EJD Document 56-2 Filed 01/12/2007 Page 3 of 34

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Pollog | Thomas | 2/24/2004 | ComEd | 1 | Plaintiff | No | No |
| Pollog | Thomas | 10/12/2006 | SFI/MS | 1 | Plaintiff | No | No |
| Pollog | Thomas | 11/1/2005 | PG&E | 1 | Plaintiff | No | No |
| Pollog | Thomas | 2/25/2004 | ComEd | 1 | Plaintiff | Yes | No |
| Pollog | Thomas | 2/25/2004 | ComEd | 2 | Plaintiff | No | No |
| Pollog | Thomas | 4/12/2002 | CoDisc. | 2 | Plaintiff | Yes | No |
| Pollog | Thomas | 2/19/2002 | CoDisc. | 1 | Plaintiff | Yes | No |
| Pollog | Thomas | 12/17/2003 | IM | 1 | Plaintiff | No | No |
| Pollog | Thomas | 4/11/2002 | CoDisc. | 1 | Plaintiff | Yes | No |
| Pollog | Thomas | 5/14/2002 | CoDisc. | 1 | Plaintiff | Yes | No |
| Pollog | Thomas | 5/15/2002 | Yankee | 1 | Plaintiff | Yes | No |
| Pollog | Thomas | 5/16/2002 | Yankee | 2 | Plaintiff | Yes | No |
| Pollog | Thomas | 5/22/2002 | Yankee | 3 | Plaintiff | Yes | No |
| Rabideau | Peter | 12/14/2006 | WEPCO | 1 | Plaintiff | No | No |
| Rives | Frank | 12/21/2006 | BECO, ENGC | 1 | Plaintiff | Yes | No |
| Rosselli | Robert | 4/15/2002 | CoDisc. | 1 | Plaintiff | No | No |
| Rosselli | Robert | 4/16/2002 | Yankee | 1 | Plaintiff | No | No |
| Rosselli | Robert | 4/16/2002 | CoDisc. | 2 | Plaintiff | No | No |
| Rushe | Ben | 5/17/2002 | Yankee | 2 | Plaintiff | No | No |
| Rushe | Ben | 5/16/2002 | Yankee | 1 | Plaintiff | No | No |
| Slater | Nancy | 4/22/1999 | Yankee | 2 | Plaintiff | No | No |
| Slater | Nancy | 4/21/1999 | Yankee | 1 | Plaintiff | No | No |
| Slater-Thomson | Nancy | 6/13/2002 | Yankee | 1 | Plaintiff | No | No |
| Stuart | Leroy | 7/1/2004 | SMUD | 1 | Plaintiff | No | No |
| Teer | Bill | 6/20/2002 | Yankee | 1 | Plaintiff | No | No |
| Tomasoni | Beth | 5/31/2002 | Yankee | 1 | Plaintiff | No | No |
| Trebules | Victor | 4/18/2002 | Yankee | 1 | Plaintiff | No | No |
| Trebules | Victor | 4/19/2002 | Yankee | 2 | Plaintiff | No | No |
| Trebules | Victor | 4/18/2002 | CoDisc. | 2 | Plaintiff | No | No |
| Trebules | Victor | 4/17/2002 | CoDisc. | 1 | Plaintiff | No | No |
| Wells | Robert | 4/8/1999 | Yankee | 1 | Plaintiff | No | No |
| Williams | Jeffrey | 12/12/2003 | IM | 1 | Plaintiff | No | No |
| Williams | Jeffrey | 1/22/2004 | ComEd | 1 | Plaintiff | No | No |
| Williams | Jeffrey | 6/12/2002 | Yankee | 2 | Plaintiff | No | No |
| Williams | Jeffrey | 6/11/2002 | Yankee | 1 | Plaintiff | No | No |
| Williams | Jeffrey | 11/18/2004 | SMUD | 1 | Plaintiff | No | No |
| Williamson | Douglas | 6/11/2002 | Yankee | 1 | Plaintiff | No | No |
| Wood | Thomas | 5/8/2002 | Yankee | 1 | Plaintiff | No | No |
| Young | Francis | 5/14/2004 | Yankee | 1 | Plaintiff | No | No |
| Zabransky | David | 1/29/2004 | IM & ComEd | 2 | Plaintiff | No | No |
| Zabransky | David | 2/10/1999 | Yankee | 1 | Plaintiff | Yes | No |
| Zabransky | David | 4/17/2002 | CoDisc. | 1 | Plaintiff | No | No |
| Zabransky | David | 4/12/2005 | SoNuc | 1 | Plaintiff | Yes | No |
| Zabransky | David | 4/18/2002 | CoDisc. | 2 | Plaintiff | No | No |
| Zabransky | David | 4/19/2002 | CoDisc. | 3 | Plaintiff | No | No |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Zabransky | David | 4/26/2002 | CoDisc. | 1 | Plaintiff | Yes | No |
| Zabransky | David | 6/5/2002 | Yankee | 1 | Plaintiff | No | No |
| Zabransky | David | 10/11/2006 | SFI/MS | 1 | Plaintiff | No | No |
| Zabransky | David | 1/28/2004 | IM & ComEd | 1 | Plaintiff | No | No |
| Zabransky | David | 6/1/2006 | PG&E | 1 | Plaintiff | No | No |
| Zabransky | David | 2/26/2004 | IM & ComEd | 3 | Plaintiff | No | No |
| Zabransky | David | 2/26/2004 | IM & ComEd | 1 | Plaintiff | Yes | No |
| Zabransky | David | 2/27/2004 | IM & ComEd | 2 | Plaintiff | Yes | No |
| Zabransky | David | 5/4/2004 | Yankee | 1 | Plaintiff | No | No |
| Zabransky | David | 10/20/2005 | WEPCO | 1 | Plaintiff | No | No |
| Zabransky | David | 10/21/2005 | WEPCO | 2 | Plaintiff | No | No |
| Zabransky | David | 11/1/2005 | PG&E | 1 | Plaintiff | No | No |
| Zabransky | David | 6/6/2002 | Yankee | 2 | Plaintiff | No | No |

| Deponent | Case | Date | Reporter |
|---|---|---|---|
| Kouts, Christopher | Yankee | 06/04/99 | Alderson Reporting Company |
| Kouts, Christopher | Indiana Michigan & Commonwealth Edison | 01/30/04 | Capital Reporting Company |
| Kouts, Christopher | Indiana Michigan & Commonwealth Edison | 02/19/04 | Capital Reporting Company |
| Kouts, Christopher | Commonwealth Edison | 03/12/04 | Esquire Deposition Services |
| Kouts, Christopher | Southern Nuclear & SCE&G | 04/11/05 | L.A.D. Reporting Company |
| Kouts, Christopher | SFI/Mississippi | 10/11/06 | Alderson Reporting Company |
| Pollog, Thomas | Coordinated Discovery | 02/19/02 | Alderson Reporting Company |
| Pollog, Thomas | Coordinated Discovery | 04/11/02 | Alderson Reporting Company |
| Pollog, Thomas | Coordinated Discovery | 04/12/02 | Alderson Reporting Company |
| Pollog, Thomas | Coordinated Discovery | 05/14/02 | Alderson Reporting Company |
| Pollog, Thomas | Yankee | 05/15/02 | Alderson Reporting Company |
| Pollog, Thomas | Yankee | 05/16/02 | Alderson Reporting Company |
| Pollog, Thomas | Yankee | 05/22/02 | Alderson Reporting Company |
| Pollog, Thomas | Indiana Michigan | 12/17/03 | Capital Reporting Company |
| Pollog, Thomas | Commonwealth Edison | 02/24/04 | Esquire Deposition Services |
| Pollog, Thomas | Commonwealth Edison | 02/25/04 | Esquire Deposition Services |
| Pollog, Thomas | Commonwealth Edison | 02/25/04 | Esquire Deposition Services |
| Pollog, Thomas | Pacific Gas & Electric | 11/01/05 | Capital Reporting Company |
| Pollog, Thomas | SFI/Mississippi | 10/12/06 | Alderson Reporting Company |
| Zabransky, David | Yankee | 02/10/99 | Atkinson-Baker, Inc. |
| Zabransky, David | Coordinated Discovery | 04/17/02 | L.A.D. Reporting Company |
| Zabransky, David | Coordinated Discovery | 04/18/02 | L.A.D. Reporting Company |
| Zabransky, David | Coordinated Discovery | 04/19/02 | L.A.D. Reporting Company |
| Zabransky, David | Coordinated Discovery | 04/26/02 | L.A.D. Reporting Company |
| Zabransky, David | Yankee | 06/05/02 | Alderson Reporting Company |

| | | | |
|---|---|---|---|
| Zabransky, David | Yankee | 06/06/02 | Alderson Reporting Company |
| Zabransky, David | Indiana Michigan & Commonwealth Edison | 01/28/04 | Capital Reporting Company |
| Zabransky, David | Indiana Michigan & Commonwealth Edison | 01/29/04 | Capital Reporting Company |
| Zabransky, David | Indiana Michigan & Commonwealth Edison | 02/26/04 | Capital Reporting Company |
| Zabransky, David | Indiana Michigan & Commonwealth Edison | 02/26/04 | Capital Reporting Company |
| Zabransky, David | Indiana Michigan & Commonwealth Edison | 02/27/04 | Capital Reporting Company |
| Zabransky, David | Yankee | 05/04/04 | Overnight Reporting Service |
| Zabransky, David | Southern Nuclear | 04/12/05 | L.A.D. Reporting Company |
| Zabransky, David | Wisconsin Electric | 10/20/05 | Miller Reporting Company |
| Zabransky, David | Wisconsin Electric | 10/21/05 | Miller Reporting Company |
| Zabransky, David | Pacific Gas & Electric | 11/01/05 | Capital Reporting Company |
| Zabransky, David | Pacific Gas & Electric | 06/01/06 | Capital Reporting Company |
| Zabransky, David | SFI/Mississippi | 10/11/06 | Alderson Reporting Company |

Rule 30(b)(6)

1. The rate of acceptance in estimates made by DOE from 1982 to 1987 in the areas of program cost, waste acceptance, transportation planning, and receiving capacity of the program and the basis for those estimates, as set forth in the following documents: (list to be provided).

2. The role and purpose of the Delivery Commitment Schedules ("DCS") and Final Delivery Schedules in the performance of the Standard Contract.

3. DOE's responses to DCS forms submitted by the utility plaintiffs, including DOE's decision to stop approving such DCS forms.

4. The purpose of Annual Capacity Reports and Acceptance Priority Rankings developed pursuant to the Standard Contracts and the basis for the acceptance rates contained therein.

5. DOE's consideration of its obligation to accept Greater-Than-Class-C waste.

6. The rate(s) of acceptance that DOE planned to use under the Standard Contract before DOE determined that it would not begin accepting SNF in a permanent repository in 1998.

7. The date that DOE currently believes that it will begin accepting fuel under the Standard Contract and the acceptance rate that DOE is planning to use once acceptance begins.

8. The role and purpose of the exchange provision in the performance of the Standard Contract.

9. The role and purpose of the provision on priority for shutdown reactors in the performance of the Standard Contract.

10. DOE's criteria for approving, and any use of, the exchange provision in the performance of the Standard Contract.

Document #: 1172972 v.2



EXHIBIT
Zabransky 72
4/26/02 JVC

EXHIBIT

1. The rate of acceptance in estimates made by DOE from 1982 to 1987 in the areas of program cost, waste acceptance, transportation planning, and receiving capacity of the program and the basis for those estimates, as set forth in the following documents:

   A. 1985 Mission Plan (and all published drafts) including:

      i. December 1983 Draft
      ii. January 1984 Draft
      iii. April 1984 Draft

   B. Report on Financing the Disposal of Commercial Spent Nuclear Fuel and Processed High-Level Radioactive Waste (June 1983)

   C. Proceedings of the 1983 Civilian Radioactive Waste Management Information Meeting (February 1984)

   D. Fee Adequacy Assessment Report (March 1986)

   E. 1987 Annual Capacity Report

   F. Monitored Retrievable Storage; Submission to Congress (March 1987):

      i. The MRS Proposal
      ii. The Environmental Assessment
      iii. The Program Plan

2. The role and purpose of the Delivery Commitment Schedules ("DCS") and Final Delivery Schedules in the performance of the Standard Contract.

4. The purpose of Annual Capacity Reports and Acceptance Priority Rankings developed pursuant to the Standard Contracts and the basis for the acceptance rates contained therein.

6. The rate(s) of acceptance that DOE planned to use under the Standard Contract before DOE determined that it would not begin accepting SNF in a permanent repository in 1998.

Case 1:04-cv-00106-EJD Document 56-2 Filed 01/12/2007 Page 9 of 34

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

YANKEE ATOMIC ELECTRIC COMPANY

Plaintiff,

v.

UNITED STATES OF AMERICA,

Defendant.

No. 98-126C
(Senior Judge Merow)

**DEFENDANT'S WITNESS LIST**

Pursuant to the Court's pretrial order issued November 4, 1998, as amended by subsequent orders, defendant submits the following list of witnesses. This list does not contain witnesses that the defendant may choose to use for impeachment. Defendant reserves the right to amend this list as described in the Court's rules. Defendant also reserves the right to call all witnesses listed on plaintiff's witness list.

**Fact Witnesses**

Government, Contractor or former Government employees

1. Christopher S. Bajwa
   Thermal Engineer
   Nuclear Regulatory Commission
   One White Flint North
   11555 Rockville Pike
   Rockville, Maryland 20852-2738

Mr. Bajwa will testify concerning the licensing process and requirements for fuel storage and transportation.

8. David Huizenga
Associate Assistant Deputy Administrator
Office of International Nuclear Safety and Cooperation
United States Department of Energy
1000 Independence Ave., S.W.
Washington D.C. 20585

Mr. Huizenga, former Deputy Assistant Secretary, Office of Environmental Management, will testify regarding the development of DOE's plans to accept "greater-than-class-C" low-level radioactive waste from commercial utilities pursuant to the Low Level Radioactive Waste Policy Act Amendments of 1985 that occurred during his tenure and other relevant matters.

9. Thomas H. Isaacs
Lawrence Livermore National Labs
7000 East Avenue
Lawrence Livermore, CA

Mr. Isaacs will provide testimony regarding the implementation of the Nuclear Waste Policy Act ("NWPA") and the 1987 Amendments to the NWPA, including the issuance and content of the 1985 Mission Plan and 1987 Mission Plan Amendment, and the issuance and content of the ACRs, and the technical, legal, and political obstacles to the implementation of the NWPA, and other relevant matters.

10. Christopher Kouts
Director
Office of Systems Analysis and Strategy Development
Office of Civilian Radioactive Waste Management
United States Department of Energy
RW-20E
1000 Independence Ave., SW
Washington, DC 20585

Mr. Kouts will testify about DOE's plans to begin waste acceptance in 2010, the fact that the Yucca Mountain repository is not being designed to accept "greater-than-class-c" low-level radioactive waste and other relevant matters.

11. Michael Lawrence
105605 N. Harrington Road
West Richland, Washington 99353

Mr. Lawrence, former Director of the Nuclear Waste Policy Act Project Office, will testify about the early implementation of the NWPA and the 1987 Amendments to the NWPA, including the issuance and content of the 1985 Mission Plan and 1987 Mission Plan Amendment, the issuance and content of the ACRs, the technical, legal, and political obstacles to the implementation of the NWPA, and the formation of the Standard Contract, including the intention of the parties concerning the rate of acceptance, priority for shutdown reactors, the delivery commitment schedule process as well as other relevant matters.

12. Pat McDuffie
1840 Monserrat Way
Vista, CA 92083

Mr. McDuffie, based upon his experience as a contractor for DOE, will provide testimony concerning the implementation of the Standard Contract, including the ACR issue resolution process conducted with industry representatives and the technical and legal basis for acceptance rates contained in the ACRs/APRs, and other relevant matters.

13. Ronald Milner
Chief Operating Officer
Office of Civilian Radioactive Waste Management
United States Department of Energy
RW-2
1000 Independence Ave., SW
Washington, DC 20585

Case 1:04-cv-00106-EJD Document 56-2 Filed 01/12/2007 Page 12 of 34

Mr. Milner will testify about the implementation of the Standard Contract, including acceptance rates, priority for shutdown reactors, the ACR issue resolution process conducted with industry representatives, the issuance and content of the ACRs, the issuance and content of the APRs, delivery commitment schedules, schedule negotiations, exchanges, the fact that the Yucca Mountain repository is not being designed to accept "greater-than-class-c" low-level radioactive waste, and other relevant matters.

14. Robert L. Morgan
3001 NW Colonial Drive
Bend, OR 97701-5447

– Mr. Morgan, former Director of the Nuclear Waste Policy Act Project Office, will provide testimony concerning the early implementation of the NWPA and the formation of the Standard Contract, including the intention of the parties concerning the rate of acceptance, priority for shutdown reactors, the delivery commitment schedule process, and other relevant matters.

15. Stephen C. O'Connor
Project Manager
United States Nuclear Regulatory Commission
One White Flint North
11555 Rockville Pike
Rockville, Maryland 20852-2738

Mr. O'Connor will provide testimony concerning the licensing process and requirements for fuel storage and transportation.

16. Tom Pollog
Office of Civilian Radioactive Waste Management
United States Department of Energy
RW-20E
1000 Independence Ave., SW
Washington, DC 20585

Case 1:04-cv-00106-EJD Document 56-2 Filed 01/12/2007 Page 13 of 34

Mr. Pollog will testify about the implementation of the Standard Contract, including acceptance rates, priority for shutdown reactors, the ACR issue resolution process conducted with industry representatives, the issuance and content of the ACRs, the issuance and content of the APRs, delivery commitment schedules, schedule negotiations, exchanges, the fact that the Yucca Mountain repository is not being designed to accept "greater-than-class-c" low-level radioactive waste and other relevant matters. Mr. Pollog will also testify about the DOE database built upon the RW-859 data submitted by the utilities and used to develop fuel acceptance allocations.

17. Robert Rosselli
2631 Thoroughbroad Way
Richland, Washington 99352

Mr. Rosselli will provide testimony concerning the early implementation of the NWPA and the formation of the Standard Contract, including the intention of the parties concerning the rate of acceptance, the delivery commitment schedule process, and other relevant matters.

18. Benard Rusche
10 Chicorana Rd
West Columbia, SC 29169-7402

Mr. Rusche, former Director of the Office of Civilian Radioactive Waste Management, will provide testimony about the implementation of the NWPA and the 1987 Amendments to the NWPA, including the issuance and content of the 1985 Mission Plan and 1987 Mission Plan Amendment, the issuance and content of the ACRs, and the technical, legal, and political obstacles to the implementation of the NWPA, as well as other relevant matters.

Case 1:04-cv-00106-EJD Document 56-2 Filed 01/12/2007 Page 14 of 34

Mr. Trebules will testify about the implementation of the NWPA and the 1987 Amendments to the NWPA, including the issuance and content of the 1985 Mission Plan and 1987 Mission Plan Amendment, the issuance and content of the ACRs, and the technical, legal, and political obstacles to the implementation of the NWPA, as well as other relevant matters.

22. David Zabransky
Office of Civilian Radioactive Waste Management
United States Department of Energy
RW-20E
1000 Independence Ave., SW
Washington, DC 20585

Mr. Zabransky will testify about the Government's implementation of the Standard Contract, including acceptance rates, priority for shutdown reactors, the ACR issue resolution process conducted with industry representatives, the issuance and content of the ACRs, the issuance and content of the APRs, delivery commitment schedules, schedule negotiations, exchanges, the fact that the Yucca Mountain repository is not being designed to accept "greater-than-class-c" low-level radioactive waste, and other relevant matters. Mr. Zabransky may also testify about his knowledge of issues concerning the Standard Contract discussed by the utility industry and DOE based upon his experience in the nuclear utility industry prior to his employment with DOE.

23. Member of Office of Nuclear Security and Incident Response
United States Nuclear Regulatory Commission
One White Flint North
11555 Rockville Pike
Rockville, Maryland 20852-2738

This individual will testify about the regulatory requirements relating to the security staffing and security hardware necessary for the storage of SNF or GTCC radioactive waste.

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| SACRAMENTO MUNICIPAL UTILITY DISTRICT, Plaintiff, | ) | |
| v. | ) | No.98-488 C (Judge Braden) |
| UNITED STATES OF AMERICA Defendant. | ) | |

DEFENDANT'S WITNESS LIST

Pursuant to the Court's amended scheduling order and ¶15 of Appendix A of the Rules of the Court of Federal Claims, defendant, The United States, respectfully sets forth a list of witnesses defendant expects to call at trial and witnesses defendant may call if the need arises. Defendant reserves the right to modify the list as permitted by the Court as trial preparation continues. In addition, defendant reserves the right to call any witness appearing upon plaintiff's February 17, 2005 witness list. Finally, the enclosed list does not include witnesses defendant may call for impeachment.

**Witnesses Defendant Expects to Present:**

Government Employees

1. Thomas Pollog

Mr. Pollog is expected to testify regarding the implementation of the Standard Contract between SMUD and DOE regarding the acceptance and disposal of spent nuclear fuel ("Standard Contract"), and fuel acceptance issues.

Estimated Time For Direct: 2-4 hours

2. David Zabransky

Mr. Zabransky is expected to testify regarding the implementation of the Standard Contract, fuel acceptance issues, and Yucca Mountain design and capabilities. In addition, Mr. Zabransky may testify about his knowledge of issues concerning the Standard Contract discussed by the utility industry and DOE based upon his experience in the nuclear utility industry prior to his employment with DOE.

Estimated Time For Direct: 4-6 hours

3. Christopher Kouts

Mr. Kouts is expected to testify regarding DOE's plans to accept spent nuclear waste including delays in those plans, and Yucca Mountain design and capabilities.

Estimated Time For Direct: 1-2 hours

4. Jeffery Williams

Mr. Williams is expected to testify regarding DOE's involvement in the Cooperative Agreement between SMUD and DOE for the development of a dual purpose dry storage system and a dry transfer system.

Estimated Time For Direct: 1-2 hours

5. David Langstaff

Mr. Langstaff is expected to testify regarding DOE's involvement in the Cooperative Agreement between SMUD and DOE for the development of a dual purpose dry storage system and a dry transfer system.

Estimated Time For Direct: 1-2 hours

6. Will Knoll

Mr. Knoll is expected to testify regarding the United States Navy's decision to transfer its spent nuclear fuel to dry storage and the considerations surrounding that process.

Estimated Time For Direct: 1 hour

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| TENNESSEE VALLEY AUTHORITY,<br>Plaintiff,<br>v.<br>UNITED STATES,<br>Defendant. | No. 01-249 C<br>(Judge Lettow) |

DEFENDANT'S FINAL WITNESS LIST

Pursuant to the Court's amended scheduling order and paragraph 15 of Appendix A of the Rules of the Court of Federal Claims, defendant, the United States, respectfully sets forth a list of witnesses that defendant expects to call at trial and witnesses that defendant may call if the need arises. Defendant reserves the right to modify the list as permitted by the Court as trial preparation continues. In addition, defendant reserves the right to call any witness appearing upon plaintiff's witness list. Finally, the following list does not include witnesses that defendant may call for impeachment.

**Witnesses That Defendant Expects to Present:**

**Government Employees**

1. Thomas Pollog

Mr. Pollog is expected to testify regarding the performance of the Standard Contract between TVA and DOE regarding the acceptance and disposal of spent nuclear fuel ("Standard Contract"); the DOE Spent Fuel Discharge Projections Model and the SNF acceptance allocations and schedule produced by that model; and other related matters.

Estimated Time For Direct: 1-2 hours

2. David Zabransky

Mr. Zabransky is expected to testify regarding the performance of the Standard Contract, fuel acceptance issues, and Yucca Mountain design and capabilities; his knowledge of issues concerning the Standard Contract discussed by the utility industry and DOE based upon his experience in the nuclear utility industry prior to his employment with DOE; and other related matters.

Estimated Time For Direct: 1-3 hours

3. Christopher Kouts

Mr. Kouts is expected to testify regarding DOE's plans to accept spent nuclear waste in a repository and a Monitored Retrievable Storage facility; plans for the anticipated Yucca Mountain design and capabilities; the reasons for delays in the Yucca Mountain project and the Department's ability to accept utility spent nuclear fuel; budgetary issues; and other related matters.

Estimated Time For Direct: 1-2 hours

**TVA Personnel (Present and Former)**

1. Thomas Hayslett

Mr. Hayslett is expected to testify regarding Tennessee Valley Authority's ("TVA's") management of its spent fuel storage; the development of TVA's damages claim in this matter; the allocation rates for TVA, and the manner in which considerations relating to TVA's management affected the development of the claim.

Estimated Time For Direct: 1 hour

2. Don Hutson

Mr. Hutson is expected to testify regarding TVA's management of its spent fuel storage, delivery commitment schedules, and allocation rates for TVA.

Estimated Time For Direct: 1-2 hours

3. George M. Holton

Mr. Holton is expected to testify regarding TVA's management of its spent fuel storage

Case 1:04-cv-00106-EJD Document 56-2 Filed 01/12/2007 Page 19 of 34

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| SOUTHERN NUCLEAR OPERATING, COMPANY, ALABAMA POWER COMPANY, and GEORGIA POWER COMPANY, | ) | |
| Plaintiffs, | ) | |
| v. | ) | No. 98-614C (Senior Judge Merow) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

**DEFENDANT'S WITNESS LIST**

Pursuant to the Court's pretrial order issued April 5, 2005, as amended by subsequent orders, and paragraph 13(b) of Appendix A to the Rules of the Court of Federal Claims, defendant provides the following list of witnesses. This list does not contain witnesses that the defendant may choose to use for impeachment. Defendant reserves the right to amend this list as described in the Court's rules. Defendant also reserves the right to call all witnesses listed on the witness list provided by plaintiffs, Alabama Power Company, Georgia Power Company, and Southern Nuclear Operating Company ("plaintiffs").

**FACT WITNESSES**

Robert Berryhill
245 Norwick Forest Drive
Alabaster, Alabama 35007

Mr. Berryhill will testify about spent fuel management issues and other relevant matters.

David W. Bland
Trivas, Inc.
1001 Yeager Parkway
Pelham, Alabama 35124

Mr. Bland will testify about spent fuel management issues and other relevant matters.

Ronald Cocherell
Nuclear Fuel Services Manager
Southern Nuclear Operating Company
42 Inverness Center Parkway
Birmingham, Alabama 35242

Mr. Cocherell will testify about the administration of the Standard Contracts for plaintiffs, plaintiffs' participation in the Private Fuel Storage ("PFS") initiative, spent fuel management issues and other relevant matters.

Richard Fennell
Senior Engineer
Nuclear Fuel Services
Southern Nuclear Operating Company
42 Inverness Center Parkway
Birmingham, Alabama 35242

Mr. Fennell will testify about the administration of the Standard Contracts for plaintiffs, spent fuel management issues and other relevant matters.

Bruce Hunt
Manager, Nuclear Fuel
Southern Nuclear Operating Company
42 Inverness Center Parkway
Birmingham, Alabama 35242

Mr. Hunt will testify about the formation of the Standard Contract, the administration of the Standard Contracts for plaintiffs, spent fuel management issues and other relevant matters.

Christopher Kouts
Director
Office of Systems Analysis and Strategy Development
Office of Civilian Radioactive Waste Management
United States Department of Energy
RW-20E
1000 Independence Ave., SW
Washington, DC 20585

Mr. Kouts will testify about the Department of Energy's ("DOE") plans to accept spent nuclear fuel at a repository and a Monitored Retrievable Storage facility, DOE's plans for the anticipated Yucca Mountain design and capabilities, the reasons for the delays in the Yucca Mountain project and DOE's ability to accept utility spent nuclear fuel, budgetary issues and other relevant matters.

Eric Lewis
Project Manager
Holtec International, Inc.
555 Lincoln Drive West
Marlton, New Jersey 08053

Mr. Lewis will testify about projects and analyses that Holtec has performed related to spent fuel management at plaintiffs' facilities.

Louis P. Long
Vice President
Southern Nuclear Operating Company
40 Inverness Center Parkway
Birmingham, Alabama 35242

Mr. Long will testify about plaintiffs' decision to participate in the PFS initiative, spent fuel management issues and other relevant matters.

Ronald Milner
Chief Operating Officer
Office of Civilian Radioactive Waste Management
United States Department of Energy
RW-2
1000 Independence Ave., SW
Washington, DC 20585

Case 1:04-cv-00106-EJD Document 56-2 Filed 01/12/2007 Page 22 of 34

Mr. Milner will testify about the implementation of the Standard Contract, including acceptance rates, the ACR issue resolution process conducted with industry representatives, the issuance and content of the ACRs, the issuance and content of the APRs, delivery commitment schedules, schedule negotiations and other relevant matters.

Robert L. Morgan
P. O. Box 2584
Monument, Colorado 80132

Mr. Morgan, former Director of the Nuclear Waste Policy Act Project Office, will testify about the early implementation of the NWPA and the formation of the Standard Contract and other relevant matters.

Tom Pollog
Office of Civilian Radioactive Waste Management
United States Department of Energy
RW-20E
1000 Independence Ave., SW
Washington, DC 20585

Mr. Pollog will testify about the implementation of the Standard Contract, including acceptance rates, the ACR issue resolution process conducted with industry representatives, the issuance and content of the ACRs, the issuance and content of the APRs, delivery commitment schedules, schedule negotiations and other relevant matters. Mr. Pollog will also testify about the DOE database built upon the RW-859 data submitted by the utilities and used to develop fuel acceptance allocations.

John Reynolds
2017 Bridgelake Drive
Birmingham, Alabama 35244

Mr. Reynolds will testify about spent fuel management issues, including the activities of the Hatch Spent Fuel Task Force, and other relevant matters.

Victor Trebules
Office of Civilian Radioactive Waste Management
United States Department of Energy
RW-30
1000 Independence Ave., SW
Washington, DC 20585

Mr. Trebules will testify about the implementation of the NWPA and the 1987 Amendments to the NWPA, including the issuance and content of the 1985 Mission Plan and 1987 Mission Plan Amendment, the technical, legal, and political obstacles to the implementation of the NWPA and other relevant matters.

David Zabransky
Office of Civilian Radioactive Waste Management
United States Department of Energy
RW-20E
1000 Independence Ave., SW
Washington, DC 20585

Mr. Zabransky will testify about the Government's implementation of the Standard Contract, including acceptance rates, the ACR issue resolution process conducted with industry representatives, the issuance and content of the ACRs, the issuance and content of the APRs, delivery commitment schedules, schedule negotiations and other relevant matters. Mr. Zabransky may also testify about his knowledge of issues concerning the Standard Contract discussed by the utility industry and DOE based upon his experience in the nuclear utility industry prior to his employment with DOE.

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

PACIFIC GAS & ELECTRIC COMPANY,

Plaintiff,

v.

UNITED STATES,

Defendant.

No. 04-0074C into which has been consolidated No. 04-0075C (Judge Hewitt)

DEFENDANT'S REVISED WITNESS LIST

Pursuant to the Court's pretrial order entered May 20, 2006, and paragraph 13(b) of Appendix A to the Rules of the Court of Federal Claims, defendant provides the following list of witnesses. This list does not contain witnesses that the defendant may choose to use for impeachment. Defendant reserves the right to identify additional witnesses for authentication of documents based upon the objections ultimately asserted by plaintiff in response to the exhibit lists served in this case. Defendant also reserves the right to amend this list as described in the Court's rules or based upon the Court's rulings upon motions *in limine* filed by plaintiff, Pacific Gas & Electric Company ("PG&E"). Defendant reserves the right to call all witnesses listed on the witness list provided by PG&E.

**FACT WITNESSES**

**Government Employees (Present and Former)**

1. Patrice Bubar
Office of Environmental Management
United States Department of Energy
1000 Independence Ave., S.W.
Washington D.C. 20585

Ms. Bubar may be called to testify regarding the development of plans of the Department

of Energy ("DOE") to accept "greater-than-class-C" radioactive waste ("GTCC") from commercial utilities pursuant to the Low Level Radioactive Waste Policy Amendments Act of 1985 that occurred during her tenure and other relevant matters.

2. David Huizenga
Assistant Deputy Administrator for International Material Protection and Cooperation
Office of International Nuclear Safety and Cooperation
United States Department of Energy
1000 Independence Ave., S.W.
Washington D.C. 20585

Mr. Huizenga, former Deputy Assistant Secretary, Office of Environmental Management, may be called to testify regarding the development of DOE's plans to accept GTCC from commercial utilities pursuant to the Low Level Radioactive Waste Policy Act Amendments of 1985 that occurred during his tenure and other relevant matters.

3. Christopher Kouts
Director
Office of Systems Analysis and Strategy Development
Office of Civilian Radioactive Waste Management
United States Department of Energy
RW-20E
1000 Independence Ave., SW
Washington, DC 20585

Mr. Kouts is expected to testify concerning DOE's plans to accept spent nuclear fuel at a repository and a Monitored Retrievable Storage facility, issues relating to the disposal of GTCC, the reasons for the delays in the Yucca Mountain project, and DOE's ability to accept utility spent nuclear fuel, budgetary issues, and other relevant matters.

4. Ronald Milner
Chief Operating Officer
Office of Civilian Radioactive Waste Management
United States Department of Energy
RW-2
1000 Independence Ave., SW
Washington, DC 20585

Mr. Milner is expected to testify concerning the implementation of the Standard Contract, including acceptance rates, the Annual Capacity Report ("ACR") issue resolution process conducted with industry representatives, the issuance and content of the ACRs, the issuance and content of the Acceptance Priority Ranking ("APR"), delivery commitment schedules, schedule negotiations, and other relevant matters.

5. Robert L. Morgan
P. O. Box 2584
Monument, Colorado 80132

Mr. Morgan, former Director of the Nuclear Waste Policy Act ("NWPA") Project Office, is expected to testify concerning the early implementation of the NWPA, the formation of the Standard Contract, and other relevant matters.

6. Thomas Pollog
Office of Civilian Radioactive Waste Management
United States Department of Energy
Room RW-20E
1000 Independence Ave., SW
Washington, DC 20585

Mr. Pollog is expected to testify concerning the implementation of the Standard Contract, including acceptance rates, the ACR issue resolution process conducted with industry representatives, the issuance and content of the ACRs, the issuance and content of the APR, delivery commitment schedules, schedule negotiations, and other relevant matters. Mr. Pollog is also expected to testify concerning the DOE database built upon the Form RW-859 data

submitted by the utilities and used to develop fuel acceptance allocations.

7. Francis Young
Nuclear Regulatory Commission
Senior Transportation Program Manager
Office of Nuclear Security and incident Response
Rockville, MD 20852

Mr. Young may be called to testify about the management of GTCC by nuclear utilities.

8. David Zabransky
Office of Civilian Radioactive Waste Management
United States Department of Energy
Room RW-20E
1000 Independence Ave., SW
Washington, DC 20585

Mr. Zabransky is expected to testify concerning the Government's implementation of the Standard Contract, including acceptance rates, the ACR issue resolution process conducted with industry representatives, the issuance and content of the ACRs, the issuance and content of the APRs, delivery commitment schedules, schedule negotiations, and other relevant matters. Mr. Zabransky is also expected to testify concerning his knowledge of issues concerning the Standard Contract based upon his experience in the nuclear utility industry prior to his employment with DOE.

**PG&E Employees (Present and Former)**

1. Lloyd Cluff
Pacific Gas & Electric Company
77 Beale Street
San Francisco, CA 94105

Mr. Cluff is expected to testify concerning work performed by PG&E's Geosciences Department related to the Humboldt Bay SAFSTOR, the Humboldt Bay and Diablo Canyon dry storage projects, and other relevant matters.

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

SYSTEM FUELS, INC., on its own behalf and as agent for SYSTEM ENERGY RESOURCES, INC. and SOUTH MISSISSIPPI ELECTRIC POWER ASSOCIATION,

Plaintiff,

v.

UNITED STATES OF AMERICA,

Defendant.

No. 03-2624C
(Judge Braden)

**DEFENDANT'S FINAL WITNESS LIST**

Pursuant to the Court's pretrial scheduling order entered February 27, 2006, and paragraph 13(b) of Appendix A to the Rules of the Court of Federal Claims, defendant, the United States, provides the following list of trial witnesses. This list does not contain witnesses that the defendant may choose to use for impeachment. Defendant reserves the right to identify additional witnesses for authentication of documents based upon the objections ultimately asserted by plaintiff, System Fuels, Inc., on its own behalf and as agent for System Energy Resources, Inc. and South Mississippi Electric Power Association ("SFI Mississippi"), in response to the exhibit lists served in this case. Defendant also reserves the right to amend this list as described in the Court's rules or based upon the Court's rulings upon motions *in limine* filed by SFI Mississippi. Defendant reserves the right to call all witnesses listed on the witness list provided by SFI Mississippi.

**Witnesses That Defendant Expects to Present:**

**Government Employees**

1. **Thomas Pollog**

Mr. Pollog is expected to testify regarding the performance of the Standard Contract between TVA and DOE regarding the acceptance and disposal of spent nuclear fuel ("Standard Contract"); the DOE Spent Fuel Discharge Projections Model and the SNF acceptance allocations and schedule produced by that model; and other related matters.

Estimated Time For Direct: 1 hour

2. **David Zabransky**

Mr. Zabransky is expected to testify regarding the performance of the Standard Contract, fuel acceptance issues, and Yucca Mountain design and capabilities; his knowledge of issues concerning the Standard Contract discussed by the utility industry and DOE based upon his experience in the nuclear utility industry prior to his employment with DOE; and other related matters.

Estimated Time For Direct: 1-2 hours

3. **Christopher Kouts**

Mr. Kouts is expected to testify regarding DOE's plans to accept spent nuclear waste in a repository and a Monitored Retrievable Storage facility; plans for the anticipated Yucca Mountain design and capabilities; the reasons for delays in the Yucca Mountain project and the

Department's ability to accept utility spent nuclear fuel; budgetary issues; and other related matters.

Estimated Time For Direct: 1-2 hours

4. **Ronald Milner**

Mr. Milner, former Chief Operating Officer for DOE's Office of Civilian Radioactive Waste Management ("OCRWM"), is expected to testify concerning the implementation of the Standard Contract, including acceptance rates, the Annual Capacity Report ("ACR") issue resolution process conducted with industry representatives, the issuance and content of the ACRs, the issuance and content of the Acceptance Priority Ranking ("APR"), delivery commitment schedules, schedule negotiations, and other relevant matters.

Estimated Time for Direct: 1-2 hours

5. **Robert L. Morgan**

Mr. Morgan, former Director of the Nuclear Waste Policy Act Project Office, may testify regarding the formation and implementation of the NWPA, the Standard Contract, and fuel acceptance issues. He may also provide testimony necessary to authenticate certain documents.

Estimated Time For Direct: 1-2 hours

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| NORTHERN STATES POWER COMPANY<br>Plaintiff,<br>v.<br>UNITED STATES OF AMERICA,<br>Defendant. | No. 098-484C<br>(Senior Judge Wiese) |

**DEFENDANT'S FINAL WITNESS LIST**

Pursuant to the Court's pretrial scheduling order entered September 14, 2005, and paragraph 13(b) of Appendix A to the Rules of the Court of Federal Claims ("RCFC"), defendant, the United States, provides the following final list of trial witnesses. This list does not list witnesses that the defendant may choose to use for impeachment. Defendant reserves the right to identify additional witnesses for authentication of documents based upon the objections ultimately asserted by plaintiff, Northern States Power Company ("NSP"), in response to the exhibit lists served in this case. Defendant also reserves the right to amend this list as described in the Court's rules. Defendant reserves the right to call all witnesses listed on the witness list provided by NSP.

**Witnesses That Defendant Expects to Present:**

**Government Employees**

1. **Thomas Pollog**

Mr. Pollog is expected to testify concerning the implementation of the Standard Contract, including acceptance rates, the Annual Capacity Report ("ACR") issue resolution process conducted with industry representatives, the issuance and content of the ACRs, the issuance and content of the Acceptance Priority Ranking ("APR"), delivery commitment schedules, schedule negotiations, and other relevant matters. Mr. Pollog is also expected to testify concerning the Department of Energy ("DOE") database built upon the Form RW-859 data submitted by the utilities and used to develop fuel acceptance allocations.

Estimated Time For Direct: 1-2 hours

2. **David Zabransky**

Mr. Zabransky is expected to testify concerning the Government's implementation of the Standard Contract, including acceptance rates, the ACR issue resolution process conducted with industry representatives, the issuance and content of the ACRs, the issuance and content of the APRs, delivery commitment schedules, schedule negotiations, and other relevant matters. Mr. Zabransky is also expected to testify concerning his knowledge of issues concerning the Standard Contract based upon his experience in the nuclear utility industry prior to his employment with DOE.

Estimated Time For Direct: 1-2 hours

3. **Christopher Kouts**

Mr. Kouts is expected to testify concerning the plans by DOE to accept spent nuclear fuel at a geological repository and a Monitored Retrievable Storage facility, the reasons for the delays in the Yucca Mountain project, DOE's ability to accept utility spent nuclear fuel ("SNF"), budgetary issues, and other relevant matters.

Estimated Time For Direct: 1-2 hours

4. **Ronald Milner**

Mr. Milner, former Chief Operating Officer for DOE's Office of Civilian Radioactive Waste Management, is expected to testify concerning the implementation of the Standard Contract, including acceptance rates, the ACR issue resolution process conducted with industry representatives, the issuance and content of the ACRs, the issuance and content of the APR, delivery commitment schedules, schedule negotiations, and other relevant matters.

Estimated Time for Direct: 1-2 hours

5. **Robert L. Morgan**

Mr. Morgan, former Director of DOE's Nuclear Waste Policy Act ("NWPA") Project Office, is expected to testify concerning the early implementation of the NWPA, the formation of the Standard Contract, and other relevant matters.

Estimated Time For Direct: 1-2 hours

CERTIFICATE OF FILING

I hereby certify that on this 12th day of January, 2007, a copy of foregoing "DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION TO COMPEL DEPOSITIONS AND CROSS-MOTION FOR A PROTECTIVE ORDER TO PRECLUDE THOSE DEPOSITIONS OR, IN THE ALTERNATIVE, TO RE-INSTITUTE THE COORDINATED DISCOVERY PROCEEDINGS IN THE PENDING SPENT NUCLEAR FUEL CASES," was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Marian E. Sullivan