IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| **BOSTON EDISON COMPANY,**<br>**Plaintiff,**<br><br>**v.**<br><br>**THE UNITED STATES,**<br>**Defendant.** | **No. 99-447C**<br>**No. 03-2626C**<br>**(Judge Charles F. Lettow)** |
| **ENTERGY NUCLEAR GENERATION CO.,**<br>**Plaintiff,**<br><br>**v.**<br><br>**THE UNITED STATES,**<br>**Defendant.** | |

**PLAINTIFF BOSTON EDISON COMPANY'S MOTION IN LIMINE TO EXCLUDE TESTIMONY BY THE GOVERNMENT REGARDING ARTICLE XIV OF THE STANDARD CONTRACT, INCLUDING THE TESTIMONY OF DEFENDANT'S WITNESSES, MR. DAVID ZABRANSKY AND MR. ROBERT MORGAN**


**Richard J. Conway**
**DICKSTEIN SHAPIRO LLP**
**1825 Eye Street, NW**
**Washington, DC 20006-5403**
**Tel: (202) 420-2200**
**Fax: (202) 420-2201**

**Counsel of Record for Boston Edison Company**

**Of Counsel:**
**Bradley D. Wine**
**Nicholas W. Mattia, Jr.**
**Bernard F. Sheehan**
**DICKSTEIN SHAPIRO LLP**
**1825 Eye Street, NW**
**Washington, DC 20006-5403**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ ii

BACKGROUND ........ 2

A. Coordinated Discovery Did Not Address the Assignment Topics ........ 2

B. Mr. Zabransky's Rule 30(b)(6) Deposition ........ 3

1. Mr. Zabransky Relied Primarily on One Conversation with Mr. Morgan.. 3

2. Mr. Zabransky Lacked Personal Knowledge of the Assignment Topics.... 6

C. The Government's Refusal to Produce Mr. Morgan for Deposition ........ 12

D. The Government's Inclusion of Messrs. Zabransky and Morgan On Its Witness List to Testify Regarding the Assignment Topics ........ 13

ARGUMENT ........ 13

I. MR. ZABRANSKY SHOULD BE PRECLUDED FROM TESTIFYING REGARDING THE ASSIGNMENT CLAUSE BECAUSE HE LACKS PERSONAL KNOWLEDGE OF THE TOPICS AND HIS PROFFERED TESTIMONY WOULD THEREFORE CONSTITUTE INADMISSIBLE HEARSAY ........ 13

II. MR. MORGAN SHOULD BE PRECLUDED FROM TESTIFYING REGARDING THE ASSIGNMENT CLAUSE BECAUSE THE UNITED STATES REFUSED TO PRODUCE HIM FOR DEPOSITION BEFORE TRIAL WITH RESPECT TO THE ASSIGNMENT TOPICS ........ 15

III. THE UNITED STATES SHOULD BE PRECLUDED FROM OFFERING ANY TESTIMONY REGARDING THE ASSIGNMENT CLAUSE PURSUANT TO RCFC 37(b)(2)(B) ........ 16

CONCLUSION ........ 19

# TABLE OF AUTHORITIES

Page

Cases:

*Anchor Sav. Bank, F.S.B. v. United States*, 59 Fed. Cl. 126 (2003) ....................18

*Boston Edison Co. v. United States*, 64 Fed. Cl. 167 (2005) ....................18

*Boston Edison Co. v. United States*, 75 Fed. Cl. 557 (2007) ....................2, 3

*Cuyahoga Metropolitan Housing Authority v. United States*, 60 Fed. Cl. 481 (Fed. Cl. 2004) ....................14

*DIJO, Inc. v. Hilton Hotels Corp.*, 351 F.3d 679 (5th Cir. 2003) ....................14

*Fifth Third Bank v. United States,* 71 Fed. Cl. 56 (2006) ....................18

*Landmark Land Co., Inc. v. F.D.I.C.*, 256 F.3d 1365 (Fed. Cir. 2001) ....................18

*Mendenhall v. Cedarapids, Inc.*, 5 F.3d 1557 (Fed.Cir.1993) ....................17

*Oltman v. Miller*, 407 F.2d 376 (7th Cir. 1969) ....................15

*Precision Pine & Timber, Inc. v. United States,* 63 Fed. Cl. 122 (2004) ....................18

*Precision Pine & Timber, Inc. v. United States,* 72 Fed. Cl. 460 (2006) ....................18

*Protection Strategies, Inc. v. United States,* No. 07-125 2007 WL. 1031710 (Fed. Cl. April 2, 2007) ....................15

*United States v. Catalano*, 491 F.2d 268 (2d Cir. 1974) ....................17

*United States v. Coiro*, 922 F.2d 1008 (2d Cir.1991) ....................17

*United States v. Consolidated Laundries Corp.*, 291 F.2d 563 (2d Cir. 1961) ....................15

*United States v. Davis*, 792 F.2d 1299 (5th Cir. 1986) ....................13

Federal Rules:

Fed. R. Evid. 402 ....................1, 17

Fed. R. Evid. 403 ....................1, 17

Fed. R. Evid. 602 ....................*Passim*

Fed. R. Evid. 701 ....................1, 14

Fed. R. Evid. 801 ....................................................................................................................1
Fed. R. Evid. 802 ........................................................................................................1, 14, 15

RCFC Rule 16 ........................................................................................................................1
RCFC Rule 30 ............................................................................................................ *Passim*
RCFC Rule 37 .................................................................................................................1, 2, 16

<u>Other Sources</u>:

Restatement (Second) Contracts, § 351 .................................................................................18
11 Corbin on Contracts, § 1009 .............................................................................................18

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **BOSTON EDISON COMPANY,**<br>**Plaintiff,**<br><br>**v.**<br><br>**THE UNITED STATES,**<br>**Defendant.** | ) | |
| **ENTERGY NUCLEAR GENERATION CO.,**<br>**Plaintiff,**<br><br>**v.**<br><br>**THE UNITED STATES,**<br>**Defendant.** | ) | **No. 99-447C**<br>**No. 03-2626C**<br>**(Judge Charles F. Lettow)** |

**PLAINTIFF BOSTON EDISON COMPANY'S MOTION IN LIMINE TO EXCLUDE TESTIMONY BY THE GOVERNMENT REGARDING ARTICLE XIV OF THE STANDARD CONTRACT, INCLUDING THE TESTIMONY OF DEFENDANT'S WITNESSES, MR. DAVID ZABRANSKY AND MR. ROBERT MORGAN**

Pursuant to Rules 16, 30, and 37 of the Rules of the Court of Federal Claims ("RCFC") and Rules 402, 403, 602, 701, 801, and 802 of the Federal Rules of Evidence, Plaintiff Boston Edison Company ("Boston Edison") hereby moves this Court to preclude any testimony from the United States' and Entergy Nuclear Generation Company's ("Entergy") proposed witnesses, including, but not limited to, David Zabransky and Robert Morgan, regarding the drafting, history, intent, or purpose of Article XIV of the Standard Contract ("the Assignment Clause"). As described in greater detail below, Mr. Zabransky, the Government's Rule 30(b)(6) designee regarding the Assignment Clause, lacks any personal knowledge regarding that topic and, at deposition, simply recounted information gleaned from a conversation he had with Mr. Morgan in preparation for his deposition. Accordingly, any testimony Mr. Zabransky might offer at trial

would constitute prohibited hearsay. The Government's proffered testimony regarding the Assignment Clause does not comply with either Rule 30(b)(6) or with this Court's order dated February 26, 2007. Consequently, pursuant to RCFC 37(b)(2)(B), the Government should be prohibited from offering testimony at trial regarding the Assignment Clause. For his part, Mr. Morgan should not be permitted to testify at trial regarding the Assignment Clause, because the Government refused to produce him for deposition on those topics, despite Boston Edison's multiple requests for such a deposition.

Accordingly, Boston Edison respectfully requests that Messrs. Morgan, Zabransky, or any other witness designated by the Government, be precluded from testifying regarding the Assignment Clause in this matter. In the alternative, Boston Edison respectfully requests that, should the Court allow Mr. Morgan's testimony regarding the Assignment Clause, Boston Edison should be permitted to depose Mr. Morgan on those topics before trial at the Government's expense.

## BACKGROUND[1]

### A. Coordinated Discovery Did Not Address the Assignment Topics

In 2001 and 2002, the parties to several spent nuclear fuel ("SNF") cases "agreed to pursue coordinated discovery through which the plaintiffs jointly sought to obtain documents from the government and to depose witnesses related to the Standard Contract and the Department of Energy's ("DOE") steps to develop repositories for spent nuclear fuel." *Boston Edison Co. v. United States*, 75 Fed. Cl. 557, 564 (2007). The group of coordinated plaintiffs took the depositions of Mr. Robert Morgan and Mr. David Zabransky, but the "assignment

[1] On February 26, 2007, the Court issued an order compelling the Government to produce Rule 30(b)(6) deponents on a number of topics pertinent to Boston Edison's claims, including the Assignment Topics. The Court's February 26, 2007 decision contains a thorough recitation of the background facts pertaining to this dispute.

provision of the Standard Contract was not put at issue in the previously pending motions that circumscribed the prior discovery." *Id.* at 567.[2]

Thus, Boston Edison sought a deposition from the United States pursuant to RCFC 30(b)(6), regarding the Assignment Clause and other topics.[3] *Id.* at 564. The Government refused to produce such a witness and forced Boston Edison to seek this Court's intervention. *Id.* This Court granted Boston Edison's motion to compel and ordered the Government to produce a witness to testify pursuant to RCFC 30(b)(6) regarding the Assignment Clause and several other topics. *Id.* at 563-70.

### B. Mr. Zabransky's Rule 30(b)(6) Deposition

#### 1. Mr. Zabransky Relied Primarily on One Conversation with Mr. Morgan.

More than a month after the Court's February 26, 2007 Order, and after several scheduling delays, the Government produced David Zabransky on April 5, 2007 (the close of discovery) as its designated witness regarding the deposition topics related to the Assignment Clause and other areas of examination.[4] At his deposition, Mr. Zabransky informed Boston Edison that his preparation to testify regarding the Assignment Clause included a review of a limited universe of documents provided to him by counsel and conversations with four individuals who were employed by the Government at the time the Standard Contract was drafted.[5] Ultimately, Mr. Zabransky testified that the totality of his testimony and knowledge

[2] Article XIV of the Standard Contract provides that "[t]he rights and duties of the Purchaser may be assignable with transfer of title to the SNF and/or HLW involved; provided, however, that notice of any such transfer shall be made to DOE within ninety (90) days of transfer."

[3] Those topics are specifically set forth in the Court's opinion, and in Boston Edison's brief requesting leave to take the Rule 30(b)(6) deposition. *Boston Edison Co. v. United States*, 75 Fed. Cl. 557, 565 (2007); Boston Edison Company's December 1, 2006 Motion for Leave to Take a Rule 30(b)(6) Deposition, at 3-5 (Docket No. 255).

[4] A true and accurate copy of Mr. Zabransky's deposition transcript ("Zabransky Tr.") is attached hereto as Exhibit A.

[5] *Id.*, 12:8-12:11.

regarding the Assignment Clause was based on his conversations with one of those individuals – Mr. Robert Morgan.[6] When asked to expound upon the basis of the Government's position regarding the Assignment Clause, Mr. Zabransky identified Mr. Morgan as the sole source of that information. For example:

> Q. Is it fair to say you had to go to Mr. Morgan and ask him questions in order to be able to testify here today?
>
> A. I went to Mr. Morgan and others to ask them questions.
>
> * * *
>
> Q. It's fair to say, though, that you identified him as well as three other individuals as information or individuals that you needed to speak to in order to be competent to testify here today, correct?
>
> A. With respect to the formulation, yes.
>
> *Id.*, 54:6-55:3.
>
> * * *
>
> THE WITNESS: No. Mr. Morgan had the greatest depth of discussion about this topic. The other three fellows didn't have recollection at all about discussing the assignment provision.
>
> *Id.*, 61:20-62:2.
>
> * * *
>
> Q. When DOE signed the standard contract in 1983, did it anticipate that nuclear plants could be sold from one party to another?
>
> A. All I can respond to is in my discussions with the director at the time, which was Mr. Morgan, he did not – he stated it was not something he considered.
>
> Q. Aside from Mr. Morgan's personal recollection and that statement, what is the Department of Energy's position regarding whether or not a utility could anticipate – whether or not the Department of Energy anticipated the nuclear plant could be sold from one party to another?
>
> MR. GARDNER: Objection. Asked and answered.

[6] *See, e.g., id.*, 94:4-94:12.

THE WITNESS: I'm not aware of any other departmental position on that.

*Id.*, 62:14-63:10.

* * *

THE WITNESS: Again, as I stated, Mr. Morgan worked for the secretary. Mr. Morgan was given his responsibility. He was in charge of formulating the contract and then execute it.

93:5-93:9.

* * *

THE WITNESS: Mr. Morgan was in charge of formulating the contract. He was the best party to know what DOE's expectations were at the time of the contract.

BY MR. WINE:

Q. Okay. And you are relying on your conversation with him in order to testify here today?

A. Yes.

*Id.*, 94:4-94:12.

* * *

Q. Okay. Is DOE aware of any reason in 1983 why a utility such as Boston Edison could not sell its plant?

MR. GARDNER: Objection. Lack of foundation. Objection. Calls for speculation. You can answer if you can.

THE WITNESS: Again, I have told you that the state of my knowledge is that at that time it was not something DOE considered as something being discussed or considered when they entered into the contract.

BY MR. WINE:

Q. Something that DOE considered or something Mr. Morgan considered?

MR. GARDNER: Objection to the extent -- objection. Form. Leave it at that.

THE WITNESS: Again, Mr. Morgan was responsible for developing the contract and executed them. He reported to the secretary. On this topic, he spoke for DOE.

*Id.*, 95:19-96:16.

Other examples of Mr. Zabransky's near-complete reliance on Mr. Morgan for his testimony can be found at pages 13:13-16:14, 24:6-24:8, 26:8-26:29:4, 31:12-31:15, 50:12-51:8, 114:3-114:6, 119:6-120:15, of Exhibit A.

**2. Mr. Zabransky Lacked Personal Knowledge of the Assignment Topics.**

Not only did Mr. Zabransky rely on his conversation with Mr. Morgan, Mr. Zabransky's testimony also repeatedly indicated that he had no personal knowledge regarding the Assignment Topics, for which he was produced.[7]

Q. Is it fair to say if you hadn't spoken to any of those four individuals, you would not be able to testify completely and accurately here today?

A. That's correct.

Zabransky Tr., 54:19-55:8.

* * *

Q. What I asked you is in 1983 was DOE aware of statutes or regulations that prohibited or precluded the sale of a nuclear plant from one to another? . . .

THE WITNESS: Yes. What I am saying is I have no knowledge of what DOE was aware on that issue.

BY MR. WINE:

Q. Who would be the best source of information for that? . . .

---

[7] By this argument, Boston Edison does not intend to argue that a witness without personal knowledge cannot be educated and serve as a party's representative designee pursuant to RCFC 30(b)(6). However, Fed. R. Evid. 602 does not allow fact witnesses at trial to testify regarding matters about which they have no personal knowledge. To the extent that the Government and Entergy have identified Mr. Zabransky to testify regarding the Assignment Topics, Fed. R. Evid. 602 precludes such testimony.

THE WITNESS: And I can't answer that. I don't know Mr. Morgan wrote this. All I can tell you is he told me he didn't consider that issue.

*Id.*, 104:3-105:7.

Moreover, when Mr. Zabransky was asked for crucial information about the assignment provision of the Standard Contract, he could not answer, often because he failed to ask Mr. Morgan questions that would permit him to answer the questions propounded by counsel for Boston Edison. For example:

Q. I think you testified that Mr. Morgan endeavored to have some conversations with staff members in Congress about the purpose of this provision and other provisions of the standard contract; is that correct?

A. That's correct.

Q. And did Mr. Morgan specifically ask members of staff in the House and Senate about the sale of nuclear power plants? . . .

THE WITNESS: I had no discussion with Mr. Morgan about that specific question.

BY MR. WINE:

Q. Didn't ask him the question?

A. No.

Q. Why not?

A. I didn't think of asking that question. His discussion was that they had – he had no recollection of any discussions on this topic at all.

*Id.*, 57:5-59:15.

* * *

Q. Did you review any of Mr. Morgan's work papers or any other files that he maintained at that time?

MR. GARDNER: Objection. Form.

THE WITNESS: No.

BY MR. WINE:

Q. Did you ask for them?

A. No.

*Id.*, 70:15-70:22.

* * *

THE WITNESS: I saw no documents. I'm not sure any exist.

BY MR. WINE:

Q. Did you ask for any? Did you ask if any existed?

A. No, I did not.

Q. Okay. Do you know sitting here today whether any exist?

A. I don't know that any exist. Mr. Morgan who worked on it told me he never contemplated it.

*Id.*, 72:20-73:8.

* * *

Q. And roughly what time period did that conversation take place?

A. Two weeks ago.

Q. Did you ask Mr. Morgan whether he was aware in 1983 of any reason why a utility could not sell its plants from one party to another?

MR. GARDNER: Objection. Asked and answered.

THE WITNESS: No. Like I told you earlier, I think the discussion was along the lines of it wasn't something he had considered at the time.

BY MR. WINE:

Q. But you didn't ask him the other question I just asked you?

A. Did not.

*Id.*, 94:4-95:18.

* * *

Q. . . . Sitting here today, you can't point me to any document maintained by DOE analyzing potential sales of nuclear power plants within the industry?

MR. GARDNER: Objection. Assumes facts not in evidence. Lack of foundation.

THE WITNESS: And I presume you mean from 1983?

BY MR. WINE:

Q. Yes.

A. And the answer is no.

Q. Did you ask for any such documents?

A. I did not.

Q. Did you ask if they ever existed?

A. Again, I asked the gentleman in charge of this effort who developed the contract. He said he never considered it. I presume at that point there were no documents.

Q. Did you ever ask Mr. Morgan specifically if he was aware of such documents?

A. No.

Q. Did you ask Mr. Morgan whether he had any conversations with the Nuclear Regulatory Commission in 1983 regarding the mechanics of the standard contract and in particular, the assignment provision?

MR. GARDNER: Objection. Vague. Objection. Beyond the scope of the 30(b)(6) deposition. Objection. Form.

You can answer.

THE WITNESS: We did not discuss that, no.

*Id.*, 98:2-99:11.

In essence, the Government offered Mr. Zabransky as a "surrogate" for Mr. Morgan, the individual whom the DOE identified as having the best understanding of, involvement with, and recollection of the Assignment Clause. In so doing, the Government prevented Boston Edison

from effectively probing the Government's knowledge on this subject, despite the Court's order, issued in response to Boston Edison's motion to compel, that the Government produce a witness or witnesses capable of engaging in such an examination.

Unable to answer Boston Edison's questions regarding the Government's institutional knowledge regarding the Assignment Clause, Mr. Zabransky ultimately testified – *as the Government's 30(b)(6) witness* – that the Government was taking *no position at all* with respect to the clause.

> Q. Mr. Zabransky, does the government have a position as to whether or not the assignment provision of the standard contract prohibits the sale of a nuclear power plant from one party to another?
>
> MR. GARDNER: Object to the extent it calls for a legal conclusion.
>
> THE WITNESS: I don't believe the government has a position like that, no.
>
> *Id.*, 79:21-80:7.
>
> * * *
>
> Q. So when DOE printed this contract, provided to utilities including Boston Edison to sign, what did it understand the rights and duties articulated in the assignment clause to mean?
>
> MR. GARDNER: I object to the extent it calls for a legal conclusion. You can answer to the extent you can.
>
> THE WITNESS: Again, with a caveat that we are talking about what DOE thought when it entered into the contract, I found nothing to let me answer the question with a affirmative answer.
>
> BY MR. WINE:
>
> Q. So you have no idea sitting here today. DOE has no understanding what rights and duties this clause refers to?
>
> MR. GARDNER: At the time of contract formation?
>
> MR. WINE: Yes.

MR. GARDNER: You can answer.

THE WITNESS: And my discussions with those involved led me to no information to that extent.

*Id.*, 195:13-196:15.

* * *

Q. . . . I want to know and I am entitled to know what DOE's position is regarding this clause, Mr. Zabransky.

MR. GARDNER: Objection. Calls for a legal conclusion.

THE WITNESS: With respect to DOE's position as of 1983, when the contract was promulgated?

BY MR. WINE:

Q. Uh-huh.

A. I have answered to the best of my ability as I found nobody who could give me any further information on this provision.

*Id.*, 201:18-202:8.

* * *

Q. What was DOE's position in 1983 as to what duties were transferred?

MR. GARDNER: Objection. Calls for a legal conclusion.

THE WITNESS: At this point, based upon what I was able to ascertain from those involved, I have no information on that.

BY MR. WINE:

Q. DOE has no position on that?

MR. GARDNER: As of 1983?

BY MR. WINE:

Q. Yes. The purpose of your deposition here today. DOE has no position?

A. I was able to obtain no information on that topic.

> Q. So DOE has no position?
>
> A. Yes.
>
> Q. And DOE has no position as to which rights purchasers may assign as to transfer of title of SNF and high-level waste under this contract?
>
> MR. GARDNER: Objection. Asked and answered. It calls for a legal conclusion. Answer again.
>
> THE WITNESS: From what I could ascertain from Mr. Morgan, no.
>
> *Id.*, 208:12-209:15.

Thus, not only did the Government proffer a witness who was incapable of fully testifying on the subject matter for which he was designated, the Government ultimately reverted to the position that it "had no position" regarding the Assignment Clause. In essence, Boston Edison was placed in the same position it was in prior to the Court's order – with no information regarding the Government's position on the Assignment Clause.

**C. The Government's Refusal to Produce Mr. Morgan for Deposition**

Given Mr. Zabransky's (at best) incomplete ability to testify regarding Government's positions with respect to the Assignment Clause, Boston Edison immediately voiced its objection regarding the Government's failure to produce a fully prepared Rule 30(b)(6) witness, both during the deposition itself and by letter, sent later that same day.[8] In that letter, Boston Edison requested that the Government produce Mr. Morgan for deposition before trial. In its response, the Government flatly refused to produce Mr. Morgan and asserted that Boston Edison could not object to Mr. Zabransky's testimony because fact discovery had ended.[9] Once again, Boston Edison requested that the Government reconsider its position with respect to Mr. Morgan and

[8] Ex. A at 212:17-231:14; a true and accurate copy of Boston Edison's April 5, 2007 letter is attached hereto as Exhibit B.

[9] A true and accurate copy of the Government's April 11, 2007 letter is attached hereto as Exhibit C.

reserved its rights to pursue the matter with the Court.[10] The Government failed to respond to Boston Edison's request.

### D. The Government's Inclusion of Messrs. Zabransky and Morgan On Its Witness List to Testify Regarding the Assignment Topics

The Government's final witness list filed on April 30, 2007, states that Mr. Zabransky will testify regarding, among other things, "the Department of Energy's implementation of and, to the extent that parol evidence upon the point is appropriate, understanding of the assignment provision of the Standard Contract."[11] The Government also lists Mr. Morgan, stating that he will testify "concerning the early implementation of the [Nuclear Waste Policy Act], the formation of the Standard Contract, and other relevant matters."[12] Although Mr. Morgan is not expressly identified as a witness regarding the Assignment Clause, such subject matter may be included within the Government's description of his proffered testimony.

## <u>ARGUMENT</u>

### I. MR. ZABRANSKY SHOULD BE PRECLUDED FROM TESTIFYING REGARDING THE ASSIGNMENT CLAUSE BECAUSE HE LACKS PERSONAL KNOWLEDGE OF THE TOPICS AND HIS PROFFERED TESTIMONY WOULD THEREFORE CONSTITUTE INADMISSIBLE HEARSAY

Rule 602 of the Federal Rules of Evidence states that a witness "may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." By his own admission, Mr. Zabransky personally knew nothing about the Assignment Clause, and his deposition testimony was based solely on the knowledge of others. "Rule 602 clearly places on the proponent of the testimony the initial burden of showing

---

[10] A true and accurate copy of Boston Edison's April 17, 2007 letter is attached hereto as Exhibit D.

[11] Defendant's Final Witness List, dated April 30, 2007, at 3 (Docket No. 287).

[12] *Id.* at 2. To the extent that Entergy's witness list also includes Messrs. Zabransky and Morgan to testify regarding the Assignment Topics, Boston Edison also requests that Entergy be precluded from doing so.

that it represents the witness' personal knowledge." *United States v. Davis*, 792 F.2d 1299, 1304 (5th Cir. 1986). As demonstrated above, the Government is unable to make any such showing under any circumstances.

In addition, to the extent that the Government plans to offer Mr. Zabransky's testimony as the opinion of a fact witness with respect to the Government's knowledge at the time of contracting or the foreseeability of Boston Edison's damages, the Government would be unable to show that Mr. Zabransky's opinions are "rationally based on the perception of the witness." Fed. R. Evid. 701; *see also Cuyahoga Metropolitan Housing Authority v. United States*, 60 Fed. Cl. 481, 482 (Fed. Cl. 2004) (excluding witness declaration as inadequate under Rule 701 where witness relied on members of staff, rather than own personal knowledge, in formulation of opinions); *DIJO, Inc. v. Hilton Hotels Corp.*, 351 F.3d 679, 686 (5th Cir. 2003) (excluding witness's testimony under Fed. R. Evid. 701 because witness lacked first-hand personal knowledge). To the contrary, Mr. Zabransky readily and repeatedly admitted that his testimony regarding the Assignment Clause was based exclusively on the perceptions of others.

Mr. Zabransky is also precluded by the rule against hearsay from testifying regarding the conversations he had with those individuals he mentioned at his deposition.[13] The Federal Rules of Evidence define hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). Hearsay is not admissible at trial, because of its recognized unreliability. Fed. R.

[13] Even if the statements by Mr. Morgan and the other three individuals were to fall into some hearsay exception (which they do not), Mr. Zabransky would not have any personal knowledge of the truth of the statements themselves, only that they were said. "This rule does not govern the situation of a witness who testifies to a hearsay statement as such , if he has personal knowledge of the making of the statement. . . . This rule would, however, prevent him from testifying to the subject matter of the hearsay statement, as he has no personal knowledge of it." Fed. R. Evid. 602, advisory committee notes (1972).

Evid. 802; *see, e.g., Oltman v. Miller*, 407 F.2d 376 (7th Cir. 1969); *United States v. Consolidated Laundries Corp.*, 291 F.2d 563 (2d Cir. 1961).

Mr. Zabransky repeatedly and unambiguously stated that his testimony was based on the perception of others. Specifically, as described in detail above, Mr. Zabransky relied almost exclusively on his conversation with Mr. Morgan for his testimony regarding the Assignment Clause. The only information that Mr. Zabransky can offer at trial is a recounting of the statements Mr. Morgan made, not in court, but over the telephone to Mr. Zabransky. Those out-of-court statements would be offered by Mr. Zabransky for the truth of what they assert: namely, the Government's expectations or intent (or lack thereof) at the time of contracting. Such testimony is squarely prohibited by the rule against hearsay because of its inherent unreliability.

The type of testimony the Government proposes to offer through Mr. Zabransky is precluded by the Federal Rules of Evidence precisely because of the very difficulties encountered by Boston Edison at Mr. Zabransky's deposition. The knowledge and statements of the original declarant, Mr. Morgan, cannot be explored or cross-examined, because his testimony is being delivered through someone else. *See, e.g., Protection Strategies, Inc. v. United States*, No. 07-125 C, 2007 WL 1031710, at *6 (Fed. Cl. April 2, 2007) (striking declaration in entirety, and portion of hearing testimony, because both only "relayed the contents" of a conversation with another person). Accordingly, Boston Edison respectfully requests that Mr. Zabransky not be permitted to testify regarding the Assignment Clause at trial.

## II. MR. MORGAN SHOULD BE PRECLUDED FROM TESTIFYING REGARDING THE ASSIGNMENT CLAUSE BECAUSE THE UNITED STATES REFUSED TO PRODUCE HIM FOR DEPOSITION BEFORE TRIAL WITH RESPECT TO THE ASSIGNMENT TOPICS

Because the Government has flatly refused to produce Mr. Morgan for deposition before trial on the Assignment Clause, the Government should not be permitted to provide testimony from him on those topics at trial. As the Court found in its February 26, 2007 order, Mr.

Morgan's testimony during coordinated discovery did not include the Assignment Topics. Allowing Mr. Morgan to testify after the Government prevented his earlier examination would be highly prejudicial to Boston Edison. Even if Boston Edison were given the opportunity to depose Mr. Morgan regarding the Assignment Clause, that requirement, added to the significant responsibilities of preparing for the upcoming trial, would cause serious prejudice and burden to Boston Edison, as it would require Boston Edison to divert its resources from trial preparation to discovery pursuits long after the discovery period in this matter has closed. Alternatively, to the extent that the Court permits the Government or Entergy to offer such testimony through Mr. Morgan, Boston Edison respectfully requests that it be permitted to depose Mr. Morgan, and that such deposition be taken at Boston Edison's convenience and at the Government's expense in a manner consistent with RCFC 37(b)(2) ("the court shall require the party failing to obey the order or the attorney advising that party or both to pay the reasonable expenses, including attorney's fees, caused by the failure . . .").

## III. THE UNITED STATES SHOULD BE PRECLUDED FROM OFFERING ANY TESTIMONY REGARDING THE ASSIGNMENT CLAUSE PURSUANT TO RCFC 37(b)(2)(B)

As described in detail above, the Government failed to offer any concrete positions at deposition regarding the Assignment Clause in direct violation of this Court's February 26, 2007 order. In fact, the Government ultimately took the position that it "had no position" regarding the intent, purpose, meaning, or function of the Assignment Clause at the time of contracting. The Government should not now be permitted to offer such positions through trial witness testimony. To the contrary, the Government's conscious decision to refrain from taking a position *precludes* the Government from taking *any* position at trial. To the extent that the Government wishes to offer any testimony at trial regarding the Assignment Clause, it should be precluded from doing so pursuant to RCFC 37(b)(2)(B), which provides that violation of a court

order compelling discovery may result in "an order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence." The Government's willful disobedience of the Court's February 26, 2007 order should result in just such a sanction.

Moreover, the Government's vague testimony that sales of plants was "not something they were considering" or "didn't even think about" does not answer the ultimate question of whether Boston Edison's damages were reasonably foreseeable by the Government. Zabransky Tr., 52:8, 56:17, 209:3-209:4. Such irrelevant evidence can, and should, be excluded, at this Court's discretion, pursuant to Fed. R. Evid. 402.[14] "The degree of relevancy required for admissibility is one that generally is determined in the discretion of the trial court." *United States v. Catalano*, 491 F.2d 268, 273 (2d Cir. 1974). In any event, the Government's vague statements cannot rebut the strong showing Boston Edison has already made regarding foreseeability of damages in this case.[15] Any contention from the Government that Boston

[14] To the extent this Court finds such generalities relevant, they should still be excluded in the interests of efficiency, under Rule 403. Fed. R. Evid. 403 ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."); *see also Mendenhall v. Cedarapids, Inc.*, 5 F.3d 1557, 1568-69 (Fed.Cir.1993) (stating that the proper standard of review for a "court's decision to exclude evidence under [Federal Rule of Evidence] 403[is] an abuse of discretion standard"); *United States v. Coiro*, 922 F.2d 1008, 1015 (2d Cir.1991) (stating that a trial court's decision on the admissibility of evidence pursuant Federal Rule of Evidence 403 "may not be set aside unless there is a showing that the court abused its discretion, or acted arbitrarily or irrationally").

[15] Indeed, this Court has already noted that the foreseeability of Boston Edison's diminution in value claim is strongly supported by two key documents in this case: the Standard Contract and the Nuclear Waste Policy Act. This Court stated specifically:

> That sale of nuclear facilities was contemplated by Congress and by DOE is shown by the existence of the assignment provision of the NWPA, 42 U.S.C. § 10222(b)(3), and by Article XIV of the Standard Contract . . . It is a fair inference that failure to implement the Standard Contract might engender a diminution in the value obtained from a sale. Such a diminution resulting from DOE's breach of its obligations under the Standard Contract was thus a foreseeable damage.

Edison's damages should be deemed unforeseeable, because they were not in fact *actually* foreseen or contemplated by the Government, incorrectly states the standard for foreseeability of damages.

The Federal Circuit explained the basic elements necessary to show foreseeability in *Landmark Land Co., Inc. v. F.D.I.C.*, 256 F.3d 1365 (Fed. Cir. 2001), a case in the *Winstar* line of cases relating to federal savings and loans. "To establish foreseeability, plaintiff must show that the resulting loss was foreseeable because it followed from the breach either a) in the ordinary course of events; or b) as a result of special circumstances beyond the ordinary course of events that the party in breach had reason to know"' *Id.* at 1378 (citing Restatement (Second) of Contracts, § 351(2) (internal quotation marks omitted).

In addition, damages need only be "reasonably foreseeable," not actually and literally predicted. In other words:

> The existing rule requires only reason to foresee**,** not actual foresight. It does not require that the defendant should have had the resulting injury actually in contemplation or should have promised either impliedly or expressly to pay therefor in case of breach. It is erroneous, therefore, to refuse damages for an injury merely because its possibility was not in fact in the contemplation of the parties at the time they made the contract.

11 Corbin on Contracts § 1009 (1964) (cited in *Precision Pine & Timber, Inc. v. United States*, 72 Fed. Cl. 460, 475 (2006), also citing *Fifth Third Bank v. United States*, 71 Fed. Cl. 56, 86 (2006); *Precision Pine & Timber, Inc. v. United States*, 63 Fed. Cl. 122, 130 (2004); *Anchor Sav. Bank, F.S.B. v. United States*, 59 Fed. Cl. 126, 143-44 (2003)). Thus, the party seeking damages "need not show that a particular type of breach was foreseeable, but must prove that the general type and magnitude of damages were foreseeable." *Precision Pine*, 72 Fed. Cl. at 475.

---

*Boston Edison Co. v. United States*, 64 Fed Cl. 167, 183-84 (2005).

The Government's statements that it simply "hadn't thought of" the type of damages Boston Edison claims fails to adequately address the proper legal standard. Moreover, these types of statements, provided at a Rule 30(b)(6) deposition, are tantamount to the Government's taking no position at all on this issue. Accordingly, Boston Edison requests that the Government be precluded from doing so at trial.

**CONCLUSION**

For the reasons identified above, Boston Edison respectfully requests that the Court preclude the Government from offering testimony at trial regarding the assignment provision of the Standard Contract, including, but not limited to, prohibiting the testimony of Messrs. Zabransky and Morgan. Should the Court see fit to deny this request, Boston Edison respectfully requests, in the alternative, that it be granted the opportunity to examine Mr. Morgan regarding the assignment provision of the Standard Contract at a deposition before trial, scheduled at Boston Edison's convenience and at the Government's expense.

Dated: May 4, 2007

Respectfully submitted,

By: s/ Richard J. Conway
Richard J. Conway
DICKSTEIN SHAPIRO LLP
1825 Eye Street, NW
Washington, DC 20006-5403
Tel: (202) 420-2200
Fax: (202) 420-2201

Counsel of Record for Boston Edison Company

Of Counsel:
Bradley D. Wine
Nicholas W. Mattia, Jr.
Bernard F. Sheehan
DICKSTEIN SHAPIRO LLP
1825 Eye Street, NW
Washington, DC 20006-5403

**CERTIFICATE OF ELECTRONIC FILING**

I hereby certify that on May 4, 2007, a copy of the foregoing "Plaintiff Boston Edison Company's Motion In Limine To Exclude Testimony by the Government Regarding Article XIV of the Standard Contract, Including the Testimony of Defendant's Witnesses, Mr. Robert Morgan and Mr. David Zabransky" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Bradley Wine