# EXHIBIT A

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

BOSTON EDISON COMPANY : No. 99-447C
Plaintiff : No. 03-2626C
vs. :
THE UNITED STATES :
Defendant :
___________________________

ENTERGY NUCLEAR :
GENERATION CO., :
Plaintiff :
vs. :
THE UNITED STATES :
Defendant :

Deposition of David Zabransky
Washington, D.C.
April 5, 2007

Reported by: Bonnie L. Russo
JOB NO. 180239





April 5, 2007
9:00 a.m.

Deposition of David Zabransky held at:

U.S. Department of Justice
1100 L Street, N.W.
Washington, D.C.

Pursuant to notice, before Bonnie L. Russo,
Notary Public





APPEARANCES:

For the Plaintiff Boston Edison Company
BRADLEY D. WINE, Esq.
ERIN L. WEBB, Esq.
DICKSTEIN SHAPIRO, LLP
1825 Eye Street, N.W.
Washington, D.C. 20006
202-420-2235

For the Defendants
JOSHUA GARDNER, Esq.
PATRICK BRYAN, Esq.
UNITED STATES DEPARTMENT OF JUSTICE
1100 L Street, N.W.
Washington, D.C. 20530
202-307-0226





C O N T E N T S


EXAMINATION OF DAVID ZABRANSKY PAGE
BY MR. WINE 5, 215
BY MR. GARDNER 214

EXHIBITS
1 Plaintiff Boston Edison Company's Motion for Leave to take a Rule 30(b)(6) Deposition 40
2 Contract 42
3 Notice of Proposed Rulemaking on Standard Contract 84
4 Fax/Letter dated 7-13-99 146
5 Westlaw Cases 176


(Exhibits included with transcript.)

P-R-O-C-E-E-D-I-N-G-S

DAVID ZABRANSKY,

being first duly sworn, to tell the truth, the whole truth and nothing but the truth, testified as follows:

EXAMINATION BY COUNSEL FOR THE PLAINTIFF

BOSTON EDISON COMPANY

BY MR. WINE:

Q. Mr. Zabransky, good morning. We met in the hall just a minute ago, but for purposes of the record allow me to introduce myself. My name is Brad Wine. With me is my colleague, Erin Webb. We are with the law firm of Dickstein Shapiro and we represent Boston Edison in this matter.

Appreciate your time today and you are here for a limited purpose today, and that is to testify as a 30(b)(6) designee on behalf of the government for a set of seven, as I count them, limited topics.

Is that consistent with your understanding?





A. Generally, I believe so, yes.

Q. Okay. I'm going to dispense with a good number of the instructions that I would ordinarily give a witnesses. As I understand, you have gone through this exercise multiple times before in spent nuclear fuel cases, correct?

A. Yes.

Q. But I will -- there are a couple of items that I will for purposes of Bonnie and for our record make sure just to remind you of, you will need to give audible answers that the reporter can record. No head shakes or nods. We will try to refrain from "uh-huhs" and "uh-uhs" because those can be interpreted in multiple ways subsequent to today's deposition.

But most importantly, if you don't understand any of the questions that -- or if you don't understand some of the questions I ask you, please ask me to restate them. I will be happy to do so. I want to make sure we have a clear reflection of your understanding, the





government's understanding of my questions and appropriate responses thereto.

I will typically take a break about every hour or so. If you need to take a break before then, for any purposes whatsoever, feel free to ask. The only thing I ask you is that if there is a question pending you answer my question before we take a break and go off the record.

Let me see if there is anything else preliminarily that I want to make sure we are clear on before I move forward.

Are there any -- is there any reason you can't testify fully and honestly here today? Any kinds of medications you are on or anything like that?

A. No.

Q. I take it you are represented by counsel today?

A. I guess so. Yes.

Q. That's Mr. Gardner and Mr. Bryan, correct?





A. That's correct.

Q. Now, let's get a little bit of the background information out of the way.

Can you give me a rough estimate of the number of times in the SNF matters that you have given deposition testimony before today?

A. I don't really know. More than a dozen, I guess.

Q. And you have also testified at trial in the SNF matters as well?

A. That's correct.

Q. I have reviewed some of your deposition testimony and you have given an extensive background of your work history, so I don't want to belabor that. But I just ask that you kind of give me your current title and work responsibilities, then we will try to work back a little bit so we avoid some duplication.

A. Okay. Currently I am a nuclear industry specialist, nuclear utility specialist -- I'm not sure of the exact title -- in the Office of Civilian Radioactive

Waste Management, DOE.
Q. What are your responsibilities in that position?
A. I work in the waste management office and do a number of technical things with -- relating to spent fuel acceptance and design of spent fuel containers. And also act as contracting officer for the standard contract.
Q. Okay. With respect to the latter point that you raise, the position as contracting officer, is that for a set number of utilities or is that for all standard contracts?
A. For all the contracts.
Q. Okay. Now, how long have you been in that position?
A. Which position?
Q. The position you just described to me.
A. I have been a nuclear utilities specialist since I came to DOE.





Q. Okay. Give me -- what is your official title at DOE presently?
A. I believe like I said, nuclear utility specialist and nuclear industry specialist.
Q. Okay. And that was the position that you held when you gave your prior deposition particularly in coordinated discovery in 2002?
A. Yes.
Q. Do you have a staff in that position?
A. No, we don't. We just work for Mr. Kouts and we have a group of people that work together.
Q. And how many people work together in your group?
A. Eight and Mr. Kouts I believe is the right number.
Q. You are a direct report to Mr. Kouts?
A. That's correct.





Q. Anything else about your job responsibilities that has changed since you gave your deposition on June 5, 2002 in the coordinated discovery process?
A. June 5th, 2002. I'm not sure exactly when I became contracting officer. Might have been in July 2002.
Q. I want to make this other point by way of just kind of ground rules for today. None of this is meant to be a memory test. If at any time you can't remember, feel free to let me know that and we will see if we can do our best to refresh your recollection.
But I don't want to seem as if today we are quizzing you about anything. I just want to get the government's position on certain key issues related to this litigation.
As I said earlier, this is a 30(b)(6) deposition. Your testimony is not just personal as to you but with respect to the government's position on key issues related to this case. And so in order to get an





understanding of the testimony that you are going to offer, I would like to get some information about you about how you prepared for today's deposition.
Can you describe to me the preparations you undertook to be deposed here today?
A. I had some meetings with counsel and some discussions with counsel and some former DOE employees. And I reviewed some documents that I was shown by counsel.
Q. Let's start first with meetings with counsel. And when we talk about this area of your preparations, I do not want to obtain from you the substance of conversations you had with counsel. We deem those to be privilege, as I know your counsel does as well. And so we don't want to get into the substance of those communications.
But tell me, if you will, when did you meet with counsel?
A. I don't know the exact dates. Over

the last several weeks.
Q. Okay. And have there been several meetings?
A. I believe there were two or three meetings.
Q. And which counsel did you meet with?
A. Mr. Bryan, Mr. Gardner, Mr. Lo Re.
Q. And how many -- how long were these meetings?
A. One was a couple hours. Another was just a phone conversation so. Another was just maybe an hour or so.
Q. Now, you mentioned that you had conversations with former DOE employees. Who was that?
A. Former and current, I guess.
Q. Okay.
A. Mr. Morgan, Mr. Rosselli, Mr. Lawrence, Mr. Cavanaugh.
Q. Why don't we take those in turn.
When did you speak with Mr. Morgan?
A. I don't know the exact date. A





couple of weeks ago.
Q. Did you have an in-phone or in-person conversation with Mr. Morgan?
A. That was over the phone.
Q. And describe for me the substance of your conversation with Mr. Morgan.
A. With counsel we discussed the issues related to this deposition.
Q. Okay. And in particular, what did you discuss with Mr. Morgan?
A. His recollection as to the circumstances around the promulgation of the standard contract.
Q. Any specific aspect of the standard contract that you discussed with Mr. Morgan?
A. Specifically we discussed the assignment provisions.
Q. What did Mr. Morgan inform you about the assignment provisions of the contract?
A. Mr. Morgan informed me that he had very little recollection about that being a major item of discussion during the formulation





of the contract.
Q. Okay. Did he have any recollection of any discussion regarding the assignment of provisions of the standard contract?
A. I don't believe so.
Q. Did you have any discussion with Mr. Morgan regarding, let's see here, the intent of the parties at the time of the contract in regard to future on-site storage of spent nuclear fuel?
A. I don't recall that was an item we discussed.
Q. Did you have any discussions with Mr. Morgan regarding his understanding of cost or potential cost to the nuclear industry regarding alternative means of temporary fuel storage associated with DOE's failure to begin acceptance of SNF on January 31, 1998?
A. I don't recall that we discussed that.
Q. Likewise, did you have any conversation with Mr. Morgan regarding the





government's estimated potential liability related to the delayed acceptance of SNF under the standard contract?
A. Not that I recall, no.
Q. Any other conversations with Mr. Morgan regarding your deposition testimony here today that we haven't previously covered?
A. Not that I recall.
Q. Were there any documents that you discussed with Mr. Morgan --
A. No.
Q. -- besides the standard contract itself?
A. Not that I recall.
Q. What about Mr. Rosselli? When did you speak with Mr. Rosselli?
A. I am trying to think -- that was probably a couple of days after that, after Mr. Morgan.
Q. Was that by phone as well?
A. Yes, it was.
Q. Okay. What was the substance of

your conversation with Mr. Rosselli?
A. It was very similar to the discussion with Mr. Morgan.
Q. Primarily on the assignment provision?
A. That's correct.
Q. What was Mr. Rosselli's recollection of the assignment provision?
A. It was very similar to Mr. Morgan's, that it was not an issue that anyone focused on. It was in the contract because it was in the act, and there wasn't a lot of discussion about it.
Q. Any discussions other than the assignment provision of the standard contract with Mr. Rosselli?
A. Not that I recall, no.
Q. Okay. Any discussions of any documents other than the standard contract with Mr. Rosselli?
A. No.
Q. How about Mr. Lawrence?





A. That was the same day we talked to Mr. Morgan, so I'm not sure what day that was.
Q. Okay. Also by phone?
A. No. He was in town.
Q. Is Mr. Lawrence a current employee of the Department of Energy?
A. No.
Q. Retired?
A. I believe he is retired from the department. He works for Patel P and L now.
Q. P and L? Who elected to contract these individuals, first of all? How did you choose these four people to call or talk with?
A. Counsel provided names of people to talk to. These are the fellows that were involved with the original promulgation of the contract.
Q. So did you ever work with Mr. Lawrence when he was a DOE employee?
A. No.
Q. What was the substance of your conversation with Mr. Lawrence?





A. It was very similar to the ones with Mr. Rosselli and Mr. Morgan. It was an assignment provision of the contract and DOE's thoughts at the time of the drafting of the contract with respect to the assignment provision.
Q. Did he have any better recollection of the assignment provision than Mr. Rosselli or Mr. Morgan?
A. No.
Q. Aside from the assignment provision, did you discuss any other aspects of the standard contract with Mr. Lawrence?
A. I don't recall that we talked about anything outside really the scope of the assignment of provisions.
Q. No discussions with Mr. Lawrence regarding the intent of the parties at the time of contract regarding future on-site storage of SNF?
A. No.
Q. No discussions with Mr. Lawrence





regarding the government's understanding of the cost or potential costs to the nuclear industry regarding alternative means of temporary fuel storage associated with DOE's failure to begin accepting SNF on January 31, 1998?
A. No.
Q. Likewise any discussions with Mr. Lawrence regarding estimated potential liability regarding delayed acceptance?
A. No.
Q. Okay. Do you know where Mr. Lawrence lives now?
A. No. I believe it's probably in Washington State since he works in Washington State.
Q. You said he was in town. Do you understand why he was visiting Washington, D.C. when you met with him?
A. No, I do not.
Q. Did you discuss any documents with Mr. Lawrence other than the standard contract?
A. Not that I recall.

Q. Were there any documents shown to Mr. Lawrence during this meeting, do you recall?
A. Not that I recall.
Q. What about Mr. Cavanaugh?
A. I had a phone conversation with Mr. Cavanaugh sometime after the other conversations.
Q. And this was likewise an individual identified by counsel to contact?
A. He was one of the four individuals that were part of the original drafting team, yes.
Q. Okay. Is Mr. Cavanaugh currently employed by the Department of Energy?
A. He is employed by the National Nuclear Security Administration which is a part of the DOE.
Q. Describe for me the substance of your conversation with Mr. Cavanaugh.
A. It was focused just like the others on the development of the assignment provision





of the contract.
Q. Any documents discussed with Mr. Cavanaugh with the standard contract?
A. No.
Q. What did Mr. Cavanaugh tell you about the assignment provisions of the standard contract?
A. Very similar to the others. That it was a provision that was because it was required by the act and there wasn't a lot of thought put to it. It was basically out of the act.
Q. Any of these individuals tell you how they understood that provision of the standard contract to work or to operate?
MR. GARDNER: Objection. Vague.
THE WITNESS: No. We didn't talk about that specifics.
BY MR. WINE:
Q. Discussions were limited solely to the genesis of the clause?
A. Yes.





Q. Okay. I neglected to ask you if Mr. Rosselli is a current employee of the Department of Energy or if he is retired.
A. I believe he is retired.
Q. Do you know where Mr. Rosselli resides?
A. No, I don't.
Q. Do you know if he is working for anyone other than -- or anyone else or if he is just in full retirement?
A. I have no idea.
Q. Was this your first interaction with these four individuals?
A. No. I talked to Mike Lawrence over the years about different issues but unrelated to this topic. And I have worked with Jay Cavanaugh before.
Q. Now, you had mentioned when I asked you --
A. I met Mr. Morgan before at different trials.
Q. Funny how paths cross in the context





of litigation.
Now, you mentioned as part of your preparation you reviewed documents. Tell me which documents you reviewed.
A. I looked at the final version of the dry cask storage study. And I reviewed Mr. Morgan's testimony in the Northern States power case. And beyond that there were different documents that counsel and I discussed. I don't recall specific documents at this point.
Q. You have identified three classes of documents. Let's take them in order.
The dry cask storage study. Describe for me why you reviewed that document.
A. It was a study that was done by DOE in '89 at the direction of Congress to determine the costs or evaluate cost of alternative on-site storage mechanisms or approaches.
Q. What did you learn from your review of that document?

A. That DOE wrote a report that looked at the potential costs of different types of storage, utility sites.
Q. And which 30(b)(6) topic did you review that in conjunction with?
A. I am not sure.
Q. Can you generally classify what subject matter, what purpose you reviewed that for in relation to today's testimony?
A. I believe there was a discussion of a topic along the DOE's understanding of on-site storage costs. I'm not sure that that document, though, is directly related to DOE's delay. It's just DOE's study of on-site storage costs.
Q. And this was a report created in 1989?
A. I believe the final version was in '89. It was created as a result of direction in the '87 amendments.
Q. Now, you say that you also reviewed Mr. Morgan's testimony in the Northern States





case. Why did you review that -- well, before we move on to Mr. Morgan's testimony, the dry cask storage study from 1989 that you reviewed, is that a document that you chose to look at or were you instructed to review that by counsel?
A. It was one that I was aware of, and counsel agreed I should look at it.
Q. All right. Now let's move to Mr. Morgan's testimony. Why did you review Mr. Morgan's testimony in Northern States?
A. I was asked to by counsel.
Q. Did you read the entirety of the testimony?
A. I believe I did.
Q. Was this his trial testimony or the deposition he gave in the Northern States case?
A. I believe it was his trial testimony.
Q. And what in particular about Mr. Morgan's testimony in Northern States were you reviewing with respect to the topics you have been identified as a 30(b)(6)





representative on behalf of the government?
A. His recollection of the development of the standard contract.
Q. Okay. Any aspects with respect to assignment of the standard contract that he testified to?
A. No mention.
Q. How about the intent of the standard -- of the parties with respect to future on-site storage of SNF? Did you review anything with respect to that in his testimony?
A. There were discussions in his testimony about his expectations on that topic, yes.
Q. What were his specific expectations that you reviewed in his testimony?
A. I believe his testimony -- again, his testimony speaks best for itself. But my recollection is his expectation was that even had DOE begun performing in 1998, utilities would still have required some amount of on-site storage.





Q. Did you read any other statements by Mr. Morgan from the early 1980s in your preparation for today's testimony?
A. Not that I recall.
Q. Any comments or statements that he made to industry groups?
A. Outside of what was in his testimony, no.
Q. Likewise anything in his testimony in Northern States regarding the intent of the NWPA and the requirements of the Department of Energy pursuant to the end of NWPA?
A. I believe his testimony discusses his views on the intent of the NWPA.
Q. Discussions with respect to qualitative obligations of DOE?
MR. GARDNER: Objection. Vague.
THE WITNESS: Again, his testimony speaks best for itself. I'm not sure that it serves a purpose for me to try to recall his testimony from memory, but he does speak in his testimony about his beliefs as to what DOE's

obligations were which was to begin in 1998 and the fact that there was no firm -- there was no rate or schedule contained in the contract nor in the NWPA.

BY MR. WINE:

Q. Do you recall him testifying about -- strike that. We'll look at his testimony later.

Now, the third class of documents that you mentioned earlier were various documents provided by counsel. You recall you gave that testimony --

A. Yes.

Q. -- this morning?

And you have no recollection of what those documents were?

A. They were different drafts and studies that were prepared by various contractors. I don't recall the specifics right now. We just went over things very quickly.

Q. Drafts and studies prepared by





contractors on behalf of the DOE?

A. They were DOE contractors. It's not always clear that they were doing things at the direction of DOE.

Q. Okay. And what were the subject of these drafts and studies?

A. Generally they were subjects with respect to storage costs.

Q. And these are storage costs for on-site storage?

A. Yes. And for some interim storage. I think they work both ways.

Q. Do you know if those documents have been produced in the context of this litigation?

A. I don't know.

Q. Do they have a Bates number on them, do you recall?

A. I believe most of them did, yes.

Q. Okay. Aside from drafts and studies prepared by contractors, were there any other documents that were provided to you by counsel?





A. Again, there were various documents. We spent maybe 30, 40 minutes going over a stack of thing. I don't think we focused on specifics for any length of time.

Q. Okay. Did you review the legislative history of the NWPA in preparing for your testimony here today?

A. No.

Q. Did you review expert reports that have been authored in this litigation?

A. No.

Q. Besides Mr. Morgan's trial testimony in Northern States, did you review any other deposition -- any other transcripts?

A. No.

Q. Aside from the four individuals that you identified, did you have any other meetings or discussions with individuals regarding today's deposition?

A. No.

Q. Did you do anything else to prepare for your deposition here today that we haven't





covered already?

A. No.

Q. Now, we talked a bit about assignment. And again, this is not a memory test. But what I would like to do is get your understanding sitting here today as to what areas you're here designated on and to testify about on behalf of the United States government.

Can you provide me with that information?

MR. GARDNER: I will actually object that it does call for a memory test. If you want to show him the 30(b)(6) notice and can look at it and identify for you what topics he is prepared to talk about.

MR. WINE: You can answer my question to the best of your ability.

THE WITNESS: I don't have the ability to do that. I didn't focus on memorizing the list.

BY MR. WINE:

Q. You understand that you are going to give testimony about the assignment provision of the standard contract, correct?
A. I guess so, yes.
Q. Is it also your understanding that you are going to provide testimony on behalf of the government regarding the intent of the parties at the time of contract regarding future on-site storage of spent nuclear fuel?
MR. GARDNER: I will lodge an objection. Mr. Zabransky will talk about DOE's understanding. He is not here to talk about any other instrumentality of the government's understanding.
THE WITNESS: And I guess if that's one of the topics on the list, I'm prepared to talk about it. I don't recollect what was on the list per se.
BY MR. WINE:
Q. Okay. Another topic you have been designated for, Mr. Zabransky, is Topic 5 of the 30(b)(6) topics that Boston Edison





propounded to the government, and that is the government's understanding of the costs or potential costs of the nuclear power industry and to Pilgrim in particular of alternative means of temporary fuel storage associated with the DOE's failure to begin accepting SNF as of January 31, 1998.
Is that consistent with your understanding of what you are here to testify today about?
MR. GARDNER: I just will object to the extent that the court's order limited the scope of that 30(b)(6) topic.
MR. WINE: Let's see.
MR. GARDNER: I believe it limited it to Pilgrim as of 1999.
BY MR. WINE:
Q. It did -- Mr. Gardner is correct. It does label -- limit it as to time, July 13, 1999, when Boston Edison sold the Pilgrim Plant. But I don't believe that the topic is limited just to any analysis that DOE or the





government prepared with respect to Boston Edison.
MR. WINE: Is that consistent with your understanding, Mr. Gardner?
MR. GARDNER: That is. I'm sorry. If you have the deposition topic to present to Mr. Zabransky, I could probably be more efficient. I believe the Topic 6 limits it to Pilgrim in July 1999. I believe you are right about 2 G, I believe it is, 2 H.
BY MR. WINE:
Q. And with respect to 5, Topic No. 5 contained in the deposition 30(b)(6) notice to the government, it's with respect to the government's understanding, not just DOE's understanding of the cost or potential cost of the nuclear power industry.
Is that consistent with your understand, Mr. Zabransky?
MR. GARDNER: Are you asking him if that's consistent with what you propounded?
MR. WINE: And what he is here to





testify about.
MR. GARDNER: Then I will object. We made Mr. Uleck from the NRC available on that same topic and he testified as such as to the NRC's understanding.
MR. WINE: With respect to No. 5?
MR. GARDNER: I believe No. 5.
MR. WINE: Let's look at Pat's letter.
MR. GARDNER: I'm sorry. It might just be 2 H.
MR. WINE: Yeah.
And It's my understanding Mr. Uleck was designated at his deposition for 2 H, but then when he was asked questions about 2 H, a decision was made at that deposition to designate Mr. Zabransky on that topic.
MR. GARDNER: No. No. I think what happened was Mr. Uleck expressed the NRC's understanding that they had no understanding because that's not something they do, but we indicated that Mr. Zabransky could talk about

DOE's understanding.

MR. WINE: Understood. Okay. I appreciate it. I just want to make sure what we are going to ask him questions about.

MR. GARDNER: It's confusing. I know.

BY MR. WINE:

Q. And then the final topic I will ask you questions about, Mr. Zabransky, is the government's estimated potential liability related to the delayed acceptance of SNF under the standard contract including the government's potential liability to Boston Edison.

And I believe there is an area where Mr. Gardner had previously discussed that has been limited to any analysis of Boston Edison -- liability owing to Boston Edison.

Is that consistent with your understanding of what you are here to testify about today?

MR. GARDNER: Through July of 1999,





correct.

MR. WINE: July 1999.

THE WITNESS: With the clarification, then, on the issue of spent fuel storage costs in general is DOE's understanding.

BY MR. WINE:

Q. As opposed to other agencies?

A. That's right.

Q. Okay. And point of fact, you have not discussed these topics with anyone other than either current or former DOE officials, correct?

A. That's correct.

Q. Now, I should ask you, you are not being compensated for your appearance here today, are you?

A. No. Other than my normal compensation.

Q. Have you ever spoken with anyone from Entergy or any of their attorneys regarding this litigation?





A. This litigation?

Q. Yes.

A. No. Not that I'm aware of.

Q. Do you have an understanding of what this litigation in the Boston Edison case is about?

A. Very cursory. I mean I haven't focused on it at all.

Q. What is your understanding of the litigation?

A. I believe it's called one of the diminished value cases. I'm not sure that's even correct, but that's the extent of my knowledge.

Q. I would now like to ask you some specific questions about the 30(b)(6) topics for which you have been designated. And the topics that I'm going to ask you questions about now are Topics 2 B, 2 D, and 2 E.

For purposes of the record, and I apologize that I can't hand it -- well, you know what, it's been modified -- it's been





since modified by way of the court order, but what I am going to do is give you a document that contains at least I think a pretty accurate description of those.

(Deposition Exhibit No. 1 was marked for identification.)

BY MR. WINE:

Q. If you will turn -- Mr. Zabransky, you have just been handed a document that has been marked Zabransky Exhibit 1 for purposes of your deposition here today. The document is "Boston Edison's Motion for Leave to Take a 30(b)(6) Deposition."

And if you will turn to page 4 of that document, you will see enumerated on that page a list of topics that are related to today's testimony and where they have been narrowed by court order, either your counsel or I will so advise you. And I'm sure that will become hopefully abundantly clear as we move through the topics.

But again, what I would like to ask

you questions about for the time being are 2 B, 2 D, and 2 E.

MR. WINE: And for the record, that is the standard contract entered into between the Department of Energy on behalf of the United States and Boston Edison Company dated June 17, 1983, including. And B is the formulation of the terms of the standard contract.

And on this subject the court has limited my examination of you to the formulation of the terms of the standard contract related to the assignment provision. And I will limit my questions to you solely to that aspect of the contract.

2 D is the terms and requirements of the standard contract except for the provision on priority for shutdown reactors, which is part of the April 18, 2002 notice served on the government as part of coordinated discovery.

And like 2 B, 2 D has been narrowed to the assignment provision. And 2 E, which is





the provision of the standard contract which permitted Boston Edison to assign its rights and duties pursuant to the standard contract.

And since all three of those topics really are cumulative and kind of overlap each other, the examination that I'm going to engage in with you now is focused on all three of those topics. We will try to do them all three at the same time.

Now, in order to facilitate this discussion, let's go ahead and give you a copy of the standard contract between the Department of Energy and Boston Edison Company.

We'll mark that as an exhibit as well.

(Deposition Exhibit No. 2 was marked for identification.)

BY MR. WINE:

Q. Mr. Zabransky, you have just been handed a document that has been marked Zabransky Exhibit 2 for purposes of today's deposition.





MR. WINE: For the record, it is the standard contract between the Department of Energy, Contract No. DE-CR 01-83 NE 44368 and Boston Edison dated June 17, 1983. The document that I provided you has been Bates stamped ENGC\BECO DOE 1ST RFP-12-2 through 12-62.

BY MR. WINE:

Q. I ask you to review that document, Mr. Zabransky. And when you have done that, if you could tell me if you are familiar with this document?

MR. GARDNER: I note there appears to be some handwriting on Bates labeled page DOE 1ST RFP-12-8 that would not be part of the original standard contract. It's page 7 of the contract.

THE WITNESS: That's right.

Okay.

BY MR. WINE:

Q. You have had a chance to review the document, Mr. Zabransky?





A. Yes.

Q. Have you seen this document before?

A. This particular copy, no.

Q. Okay. Aside from this copy of the document, are you familiar with this contract?

A. It seems to be one of the standard contracts. I'm not sure I am familiar with the Boston Edison contract specifically.

Q. As a contracting officer for DOE responsible for the standard contract, was one of your jobs to become familiar with various standard contracts entered into between the Department of Energy and various utilities?

A. Generally, yes.

Q. And was the Boston Edison contract one of the ones that you reviewed in order to become familiar with those contracts?

A. I don't recall if I reviewed this one. I'm sure I did, but I don't recall.

Q. With the exception of the handwritten notation in the margins on page 8 of the contract identified by counsel, does

this appear to be a fair and accurate representation of the standard contract entered into between the Department of Energy and Boston Edison?

A. It appears to be.

Q. Okay. Now, much of the examination that I would like to pursue with you now is going to be focused on Article 14 of the contract on page 26. If you could turn to that page which is Bates labeled 12-27. This is what we have been referring to as the "assignment provision."

You have reviewed this provision of the contract in preparation for today's deposition, correct?

A. That's correct.

Q. Now, what is the government's understanding as to why this provision was included in the standard contract?

A. Again, from my discussions with those who were here at the time or there at the time, it was included in the contract because





the NWP required that an assignment provision be put in the contract.

Q. All right. And describe for me how this provision of the contract operates.

MR. GARDNER: Object to the extent it calls for legal conclusion.

BY MR. WINE:

Q. You can answer.

MR. GARDNER: I also object it's vague.

THE WITNESS: How does it operate? It operates as okay. I mean how does it operate?

BY MR. WINE:

Q. You are the contracting officer, Mr. Zabransky, currently over the Department of Energy for the standard contract. You have to have an understanding of this contract, correct?

A. Yes.

Q. And its terms and provisions?

A. Yes.





Q. As the standard contract contracting officer, how does Article 14, the assignment provision of the standard contract, operate?

MR. GARDNER: Same objections. It's vague and it calls for a legal conclusion.

You can answer.

THE WITNESS: I mean again, the assignment provision was put in to allow a purchaser to assign or transfer -- rights and duties with the transfer of title for the SNF.

So the provision tells him how to do that.

BY MR. WINE:

Q. Okay. It's fair to say as the contracting officer responsible for the standard contract over the Department of Energy, you have to have a pretty good understanding of how this thing worked, correct?

MR. GARDNER: Objection. Vague.

Which "thing"?

BY MR. WINE:





Q. The standard contract?

A. Yes.

Q. And its clauses?

A. Yes.

Q. And if a utility calls you up and says they're selling or want to assign their standard contract, do you advise them how to do that?

A. Generally, no.

Q. Have you ever had to deal with this provision of the standard contract before as a contracting officer?

A. Yes.

Q. When?

A. Over the years people have assigned portions by assigning fuel to other people. So I have received notices to that effect.

Q. Do you understand what the function of this provision of the standard contract is?

MR. GARDNER: Objection. Vague.

THE WITNESS: Again, are you asking me as a function -- what function is that

allows the purchaser who may assign his rights
and duties transfer of the SNF.
BY MR. WINE:
Q. Okay. In what situations would that
occur?
A. It would occur, and again, in the
context of what has happened since '83 or in
the context of '83?
Q. Context of '83.
A. In '83 speaking to those who were
involved, it would have in their minds occurred
if somebody was going to send this fuel out to
be reprocessed.
Q. Explain to me what you mean by that.
A. Again, it says that the assignment
is not of the reactor. It's of the fuel. So
that if a utility was going to send fuel off to
the reprocessing facility to have it
reprocessed under contract, whoever received it
would have the rights to have that high-level
waste disposed of.
Q. And in 1983 it's your understanding





that reprocessing of spent nuclear fuel was
permissible in the United States?
MR. GARDNER: Objection.
Mischaracterizes Mr. Zabransky's testimony.
THE WITNESS: I believe by then it
was. Mr. Reagan overrode the prior Ford
prohibition. But whether it was possible or
not, it was something that they contemplated
could be done again. And the contract was
written to allow for it.
BY MR. WINE:
Q. Did DOE endeavor to take any steps
to determine why Congress included or mandated
the inclusion of an assignment provision in the
standard contract?
A. I believe that Mr. Morgan in my
discussions with him said they tried to figure
out why certain things were in the NWPA and
were unsuccessful ferreting out why this was in
there.
Q. What endeavors did Mr. Morgan
describe to you to do that?





A. My discussions with him, he
discussed having conversations with members of
Congress and with staffers. And there was
no -- as I recall, there was no -- there were
differences in the Senate and the House version
and ambiguities. And there was no conference
report, so there was no clear insight as to why
this provision was there.
Q. Now, you asked me earlier when I
asked you questions about the function or the
mechanics of this provision whether I was
asking you about 1983 or later.
Is there a time in which DOE's
understanding of the function of this article
of the standard contract changed?
A. I don't think it changed. It's just
that circumstances changed between '83 when the
contract was formulated and what has happened
today that the gentleman forming the contract
didn't consider.
Q. What is that?
A. I think the sale of nuclear power





plants.
Q. So it's the position of the
Department of Energy that in 1983 no one within
the Department of Energy foresaw the sale of
nuclear power plants?
A. Based upon the discussions I had
with the individuals involved, that was not
something they were considering at the time.
Q. Okay. What about any other -- are
you aware of any documents that articulate the
position as to the understanding of DOE
regarding the functioning of this provision in
the standard contract in 1983?
MR. GARDNER: I will object as
vague.
THE WITNESS: Other than what is in
the administrative record, I'm not aware of any
documents.
BY MR. WINE:
Q. Okay. What is in the administrative
record on this provision?
A. I don't believe there is anything in

the record on this provision.
Q. So you can't point me to any documents that articulate or expound about the position that you have just taken here today regarding the function of the assignment provision of the contract?
A. No. Other than discussions with those involved, no.
Q. Okay. Is it your position that you're the best source of information on behalf of the government for the assignment provision -- the function and the purpose of the assignment provision in the standard contract?
MR. GARDNER: Objection. Calls for speculation.
You can answer if you can.
THE WITNESS: I can't answer that question.
BY MR. WINE:
Q. Is Mr. Morgan a better authority on this subject than you are?





MR. GARDNER: Objection. Calls for speculation.
THE WITNESS: I don't know. I don't know.
BY MR. WINE:
Q. Is it fair to say you had to go to Mr. Morgan and ask him questions in order to be able to testify here today?
A. I went to Mr. Morgan and others to ask them questions.
Q. What about Mr. Rosselli? Is he in a better position to provide information on this subject matter than you are?
MR. GARDNER: Objection. Calls for speculation.
THE WITNESS: I can't answer that. I don't know.
BY MR. WINE:
Q. It's fair to say, though, that you identified him as well as three other individuals as information or individuals that you needed to speak to in order to be competent





to testify here today, correct?
A. With respect to the formulation, yes.
Q. Is it fair to say if you hadn't spoken to any of those four individuals, you would not be able to testify completely and accurately here today?
A. That's correct.
Q. Okay. Describe for me a bit more the position of the Department of Energy as to the time of contracting in 1983 the circumstances under which the assignment provision was intended to be utilized.
MR. GARDNER: Objection. Asked and answered.
You can answer it again.
THE WITNESS: Well, again, as I answered earlier, I mean there was not much thought. The part of -- the gentleman I spoke to didn't really think about this provision. All they could postulate was it was they said a reprocessing issue, and they were not quite





sure what the useful purposes this provision would have.
BY MR. WINE:
Q. Did they specifically exclude the possibility of the sale of a utility?
A. I think we had a discussion that they didn't even think of that at the time.
Q. Did they take the position that at the time -- strike that.
Did any of the gentlemen that you spoke to take the position that the sale of a nuclear plant in 1983 was not permissible?
A. No. I think you mischaracterize what I said. They didn't --
Q. I'm not trying to characterize anything.
A. They didn't even think about that.
Q. Okay. Were they aware of Congress considered that in developing the NWPA?
MR. GARDNER: Objection. Calls for speculation.
THE WITNESS: As I said earlier,

they -- my understanding from my discussions was they had no discussion they had with Congress illuminated why this was here.

BY MR. WINE:

Q. I think you testified that Mr. Morgan endeavored to have some conversations with staff members in Congress about the purpose of this provision and other provisions of the standard contract; is that correct?

A. That's correct.

Q. And did Mr. Morgan specifically ask members of staff in the House and Senate about the sale of nuclear power plants?

MR. GARDNER: I'm going to now object. We are now beyond the scope of the 30(b)(6). Judge Lettow expressly excluded Topic 1 from inquiry which is the government's understanding of the history and development of the nuclear industry. The impact of the Nuclear Policy Act on the industry.

To the extent you are now asking





about Mr. Morgan's conversations with members of Congress to understand the NWPA, that topic was disallowed by the court.

BY MR. WINE:

Q. No. I am talking specifically about Topics 2 B, the formulation terms of the standards contracts; 2 D, the terms and requirements of the standard contracts; and 2 E, the provision of the standard contract which permitted Boston Edison to assign its rights and duties pursuant to the standard contract.

MR. GARDNER: I know you purport to ask that question, but, in fact, you are asking about the development of the passage of the NWPA by asking about Mr. Morgan's conversations with members of Congress about the intentions of the NWPA.

MR. WINE: Are you going to instruct the witness not to answer my questions?

MR. GARDNER: No. I object it's beyond the scope.





MR. WINE: Answer my question, Mr. Zabransky. And if you need it read back, I can ask Bonnie to do that.

THE WITNESS: Please read it back.

(The record was read as requested.)

THE WITNESS: I had no discussion with Mr. Morgan about that specific question.

BY MR. WINE:

Q. Didn't ask him the question?

A. No.

Q. Why not?

A. I didn't think of asking that question. His discussion was that they had -- he had no recollection of any discussions on this topic at all.

Q. What did Mr. Rosselli, Mr. Lawrence or Mr. Cavanaugh say about the potential sale of the nuclear plant in 19 -- the knowledge of DOE regarding the potential sale of a nuclear plant in 1983?

A. They had no statements on that issue.





Q. Okay. Did you ask them?

A. My discussions with them were as to why this provision was there and what it was there for. And they had very little input or insight as to why it was there other than it was in the act, so no.

Q. And in asking them what -- why it was there and what it was there for, did you ask them specifically any questions about the sale of a nuclear power plant?

A. Did not ask them those questions, no.

Q. Okay. Did you ask Mr. Morgan any questions about the sale of the nuclear power plant?

A. I believe during discussions it was discussed that that was not something contemplated by him in '83, yes.

Q. Is Mr. Morgan the only individual that you spoke with who articulated that position?

A. I believe that's the only area it

came up, right.

Q. How did it come up in the context of your conversation with Mr. Morgan?

A. I don't recall.

Q. Did you specifically pose a question to him about the sale of a nuclear power plant?

A. I don't know if it came up as a result of a question or in discussion as to what had happened versus what was going on in his mind in '83.

Q. And that's because Mr. Morgan brought it up in your conversation with him that you discussed that, but neither Mr. Rosselli, Mr. Lawrence or Mr. Cavanaugh raised the subject of the sale of a nuclear power plant in their conversation with you?

MR. GARDNER: Objection. Mischaracterizes Mr. Zabransky's previous answer.

THE WITNESS: No. Mr. Morgan had the greatest depth of discussion about this topic. The other three fellows didn't have





recollection at all about discussing the assignment provision.

BY MR. WINE:

Q. Now, I believe, and it's not my intent to characterize your testimony. So if I inaccurately characterize what you have previously testified to, please correct me.

But I believe you previously testified that when the standard contract was promulgated and signed in 1983 that it did not -- that the Department of Energy did not anticipate that nuclear plants -- strike that. Let me ask you a different way.

When DOE signed the standard contract in 1983, did it anticipate that nuclear plants could be sold from one party to another?

A. All I can respond to is in my discussions with the director at the time, which was Mr. Morgan, he did not -- he stated it was not something he considered.

Q. Aside from Mr. Morgan's personal





recollection and that statement, what is the Department of Energy's position regarding whether or not a utility could anticipate -- whether or not the Department of Energy anticipated the nuclear plant could be sold from one party to another?

MR. GARDNER: Objection. Asked and answered.

THE WITNESS: I'm not aware of any other departmental position on that.

BY MR. WINE:

Q. Did you engage in a review of documents to determine whether, other than Mr. Morgan's statement to you, the Department of Energy had a position on that?

A. No.

Q. Why not?

A. I'm not aware of any such documents.

Q. Did you ask the government for such documents? Did you ask the Department of Justice for such documents?

A. I'm not aware of any documents other





than this is related to the contract and the discussions were related to the formulation of the contract.

Q. Do you know why Mr. Morgan was unable to conceive the possibility of a nuclear plant being sold from one party to another in 1983?

MR. GARDNER: Objection. Calls for speculation.

THE WITNESS: And again, I think to clarify, I said he said it wasn't something he considered.

That's all I can say. I don't know what he thought or speculated.

BY MR. WINE:

Q. Do you understand you are here to testify on behalf of the Department of Energy, correct?

A. That's correct.

Q. And provide the institutional knowledge of the entire department with respect to the topics that you have been designated

for, correct?

A. Correct.

Q. Okay. Is there any reason sitting here today why the Department of Energy could not have anticipated or planned for the sale of a nuclear plant from one party to another at the time of drafting the standard contract?

MR. GARDNER: Objection. Vague. Objection. Form. Objection. Calls for speculation.

If you can possibly answer that question, feel free.

THE WITNESS: I don't know. I mean there are many things that -- I can't answer why someone couldn't have planned for something they hadn't thought of.

BY MR. WINE:

Q. So the Department of Energy, the entire Department of Energy responsible for regulating the energy industry in the United States at that time in 1983 had made no plans for, never thought of or anticipated the





potential sale of a nuclear plower plant from one party to another?

MR. GARDNER: Objection. Mischaracterizes Mr. Zabransky's testimony. Objection to the fact that the Department of Energy regulates the energy industry I would object to.

If you can answer that question.

THE WITNESS: Again, the department doesn't regulate the nuclear industry.

BY MR. WINE:

Q. The NRC does, correct?

A. That's correct.

Q. The NRC is a subagency or subentity within the Department of Energy?

A. No.

Q. It's an independent agency?

A. Yes.

Q. So the Department of Energy has no knowledge -- aside from my characterization of regulation of the nuclear industry, is it your position here today that in 1983 the Department





of Energy simply didn't think about whether or not a utility could sell a plant from one party to another?

A. My position is that with respect to development of the standard contract, those individuals involved with that, no one identified that that was something they considered.

Q. Okay. But I asked you a slightly different question.

I understand with respect to the development of the standard contract. I am asking at the same time, 1983, anyone within the Department of Energy, institution, individuals or whatnot, consider, plan for, think of the sale of a plant from one party to another, nuclear power plant?

MR. GARDNER: I have a couple of objections. You continue to ask questions outside the formulation of the standard contract. You are now beyond the scope of the 30(b)(6) deposition.





If you continue asking him whether anyone in 1983 at DOE had any foresight into sales of nuclear power plants, I will object because it calls for speculation. You are asking him for DOE's position.

With those objections, Mr. Zabransky, if you can answer the question.

THE WITNESS: I don't have any information on that topic.

BY MR. WINE:

Q. Why not?

MR. GARDNER: Objection. Beyond the scope of the 30(b)(6) deposition.

BY MR. WINE:

Q. Well, Topic 2 F for which you have been designated for which we will get to in a minute, also asks you to testify regarding the expectations of the government at the time the standard contract was signed, but only insofar as the parties' expectations in 1983 concern the assignment provision.

So I am getting to the expectation

of the parties not in the drafting or formulation of the contract, but what DOE expected at this time in 1983.

A. And with respect to those involved with signing the contract, I have expressed that position.

Q. Okay. But you have not endeavored to find out anything other than the four people you talked to?

A. I have not checked with people who are not responsible for the signing of the contract.

Q. Anyone else within the Department of Energy then at the time regarding issues pertaining to the administration of the standard contract let's say, for example?

MR. GARDNER: Objection. Form. Objection. Vague.

THE WITNESS: Clarify what you said.

BY MR. WINE:

Q. Why did you limit your review or your preparation for today to those people





responsible for signing this standard contract?

MR. GARDNER: Objection to the extent it mischaracterizes Mr. Zabransky's preparation for this deposition.

You can answer.

THE WITNESS: They were the individuals that were responsible for developing the contract and executing it. They were the ones who understand what the department's position was.

I believe Mr. Morgan at that time reported to the secretary. He expressed the department's position.

BY MR. WINE:

Q. Did you review any of Mr. Morgan's work papers or any other files that he maintained at that time?

MR. GARDNER: Objection. Form.

THE WITNESS: No.

BY MR. WINE:

Q. Did you ask for them?

A. No.





Q. Did you ask for any documents that dealt specifically with these topics for which you have been designated?

MR. GARDNER: Objection. Vague.

Are you just limiting that question to Question 2 B, D, and E?

MR. WINE: No.

MR. GARDNER: So any of the topics?

BY MR. WINE:

Q. Any of the topics you've been designated on? The seven topics you have been designated on?

A. I believe, like I told you earlier, I asked for the dry cask storage study because I knew it existed. With respect to the others, the administrative record was reviewed, nothing was found. And we talked to the individuals involved.

Q. Okay. So your review of documents was limited to the documents that you had personal knowledge of?

MR. GARDNER: Objection.





Mischaracterizes Mr. Zabransky's previous answer.

THE WITNESS: Those are the ones I asked about. I couldn't ask for things I had no knowledge of. Counsel provided me with other documents they found that were responsible.

BY MR. WINE:

Q. Did they provide you with any documents discussing or analyzing the sale of nuclear power -- the contemplation of the sale of nuclear power plants in 1983 from one party to another?

MR. GARDNER: Objection. Assumes facts not in evidence. Objection. Lack of foundation.

You are assuming the existence of which. You may as well ask the direct question.

THE WITNESS: I saw no documents. I'm not sure any exist.

BY MR. WINE:

Q. Did you ask for any? Did you ask if any existed?

A. No, I did not.

Q. Okay. Do you know sitting here today whether any exist?

A. I don't know that any exist. Mr. Morgan who worked on it told me he never contemplated it.

Q. Why isn't Mr. Morgan testifying here today?

MR. GARDNER: Objection. Calls for speculation.

THE WITNESS: You have to ask counsel.

BY MR. WINE:

Q. Okay. Maybe I will.

Other than the sale of a nuclear plant, how would a purchaser transfer title to SNF or high-level waste?

MR. GARDNER: Objection to the extent it calls for a legal conclusion. Objection. Outside the scope of the 30(b)(6)



4/5/2007 Zabransky, David

deposition.

THE WITNESS: I think I gave you an example earlier.

BY MR. WINE:

Q. Describe for me in further detail the example that you gave me earlier.

MR. GARDNER: Same objections.

THE WITNESS: A purchaser could contract with a third party for reprocessing and transfer title that way. Could theoretically contract with a third party for storage and long-term disposal and transfer title that way.

But it specifically allows the transfer of title to the fuel, not with the reactor.

BY MR. WINE:

Q. The facilities that -- say reprocessing facility in the first scenario, the hypothetical you provided, were you aware or are you aware sitting here today of any facilities so available in 1983?



4/5/2007 Zabransky, David

MR. GARDNER: Objection. Beyond the scope of the 30(b)(6) deposition.

THE WITNESS: I don't know the current state in '83, what the state of Agnes was or what West Valley was. West Valley was shut down at that point in time.

BY MR. WINE:

Q. Did the NWPA permit the transfer of waste for purposes of reprocessing?

MR. GARDNER: Objection. Beyond the scope. Mr. Zabransky is not here to talk about the Nuclear Waste Policy Act.

THE WITNESS: I don't know what that does. The contract permits it.

BY MR. WINE:

Q. The contract permits it, but -- and you never assessed what the statute does?

MR. GARDNER: Objection. Beyond the scope of the 30(b)(6) deposition.

THE WITNESS: No, I did not.

BY MR. WINE:

Q. Have you ever looked at whether or



4/5/2007 Zabransky, David

not the statute -- political statutory provisions permit the reprocessing of spent nuclear fuel?

MR. GARDNER: Objection. Beyond the scope of the 30(b)(6) deposition. Object to the extent it calls for a legal conclusion.

THE WITNESS: I believe that the NWPA provides guidance with respect to how one would handle reprocessing spent fuel.

BY MR. WINE:

Q. What is that guidance as you understand it?

MR. GARDNER: Objection. Beyond the scope of the 30(b)(6) deposition. Objection. Calls for a legal conclusion.

THE WITNESS: The NWPA provides guidance as to how to calculate the equivalent amount of SNM or MTU of intact fuel or high-level waste resulting from reprocessing.

BY MR. WINE:

Q. In the drafting process of the standard contract, are you aware of alternative

wordings proposed to the Department of Energy regarding Article 14?

MR. GARDNER: Objection. Assumes facts not in evidence. Objection. Lack of foundation.

BY MR. WINE:

Q. Then let's stop. Let's start with a foundation.

You are familiar with the process by which the standard contract was promulgated, correct?

A. The notice of comment rule making?

Q. Correct.

A. Yes.

Q. Describe for me that process.

A. My understanding is that the department published a draft contract in February of 1983 and received comment. In response to the comment, published a final contract in April of 1983.

Q. In preparing for today's deposition, did you review the notice and comment record





for the standard contract?

A. I did not review the record entirely, no.

Q. What part of the record did you review?

A. Other than the general terms of it, I didn't go back and review the administrative record at this time.

Q. What do you mean by the general terms of it?

A. The dates I just provided.

Q. And so sitting here today you are unable to -- are you able to provide me with any testimony regarding comments offered by industry or the public regarding the assignment provision of the standard contract?

A. My recollection after discussion with counsel that review of the record that counsel performed showed there was no discussion of that.

Q. You didn't review that record, correct?





A. I did not.

Q. You relied on counsel to review the record for you, correct?

A. That's correct.

Q. What specifically were you advised regarding the record?

A. My recollection is that there was no discussion of this provision in the contract, in the discussions of utilities.

Q. And what is the basis of your recollection?

A. It's a recollection.

Q. What is the basis of it?

A. I believe -- discussions I had with counsel. I believe that's the discussion I had.

MR. WINE: Why don't we go off the record and take a break.

(A short recess was taken.)

BY MR. WINE:

Q. Mr. Zabransky, does the government have a position as to whether or not the





assignment provision of the standard contract prohibits the sale of a nuclear power plant from one party to another?

MR. GARDNER: Object to the extent it calls for a legal conclusion.

THE WITNESS: I don't believe the government has a position like that, no.

BY MR. WINE:

Q. Okay. Are you aware of any other provision of the standard contract that prohibits the sale of a nuclear power plant from one party to another?

MR. GARDNER: Object to the extent it calls for a legal conclusion. Also beyond the scope of the 30 (b)(6) deposition.

THE WITNESS: I'm not aware of any provision like that.

BY MR. WINE:

Q. In the DOE's efforts to have better understanding as to what the purpose of Article 4 of the standard contract was, are you aware of any conversations between DOE

officials and NRC officials?
MR. GARDNER: I'm going to object. Beyond the scope of the 30(b)(6) deposition.
THE WITNESS: And I think can you clarify?
BY MR. WINE:
Q. Well, with respect to the assignment provision of the standard contract and understanding what it permitted and what it didn't permit, and specifically whether it permitted or contemplated the sale of a plant from one party to another, did DOE have any conversations with the Nuclear Regulatory Commission to obtain such an understanding?
A. In 1983?
Q. Correct.
A. I'm not aware of any conversations.
Q. How about any subsequent to 1983?
MR. GARDNER: Objection. Beyond the scope of the 30(b)(6) deposition.
THE WITNESS: I don't know what DOE has done since 1983 on this topic.





BY MR. WINE:
Q. You didn't endeavor to do any -- prepare for any testimony today post 1983?
MR. GARDNER: Objection. Beyond the scope of the 30(b)(6) deposition.
THE WITNESS: My preparation was focused on the formulation of the contract provisions.
BY MR. WINE:
Q. Aside from the discussions that you testified to earlier that Mr. Morgan engaged in with Congressional staff, did DOE have any communication with other outside parties regarding the formulation of the assignment provision in 1983?
MR. GARDNER: Objection. Vague.
THE WITNESS: I mean besides the notice and comment rule making where the entire contract was put out for comment, and again, my understanding is that the administrative record contains nothing on that provision from a give-and-take prospective, no, I wasn't aware





of any discussions.
BY MR. WINE:
Q. Just so I am clear for the record, the basis of your understanding of administrative record is based on what you were told by counsel?
MR. GARDNER: Object to the extent it mischaracterizes Mr. Zabransky's previous testimony.
THE WITNESS: Like I said earlier, I did not review the administrative record which is several inches thick at this point in time. Binder yea thick. I didn't review every document in there. I relied on counsel to have reviewed that and bring to my attention relevant comments.
BY MR. WINE:
Q. So you relied on counsel for your understanding what the administrative contains or does not contain, correct?
A. And reviewed things that they thought might be relevant, yes.





Q. So you relied on counsel for that position, correct?
A. Yes.
Q. Okay. So you are unaware sitting here today of any comments by industry regarding the standard contract provisions regarding assignment?
A. It's my understanding that there were none.
Q. That no utilities ask any questions about it at all?
A. Not about the assignment provision per se, no.
MR. WINE: Okay. Let's look at Document 8.
(Deposition Exhibit No. 3 was marked for identification.)
BY MR. WINE:
Q. Mr. Zabransky, you have been handed a document that has been marked as Zabransky Exhibit 3 for purposes of today's deposition.
MR. WINE: I will describe it for

the record. It's a March 4, 1983 letter to Robert Morgan on Cincinnati Gas and Electric Company letterhead, Re: Notice of proposed rule making on standard contract for disposal of spent nuclear and/or high-level radioactive waste, 48 fed reg 5458, February 4, 1983.

BY MR. WINE:

Q. Mr. Zabransky, I ask you to review the document and tell me if you are familiar with it?

MR. GARDNER: I would note there are no Bates on this document. Has it been produced in discovery?

MR. WINE: I believe it's part of the administrative record.

MR. GARDNER: That's not my question. Has this document been produced in discovery?

MR. WINE: I believe it's located on the government's database.

MR. GARDNER: And I would ask Mr. Zabransky to take your time and read the





entire document.

THE WITNESS: Okay.

BY MR. WINE:

Q. Mr. Zabransky, have you ever reviewed this document before?

A. No. I don't recall.

Q. Okay. I would like you to look at page 3 of the document. The bottom of the page.

The bottom paragraph that begins "In Subpart A" on page 3 of Cincinnati Gas and Electric's letter to you it reads -- to the Department of Energy, rather.

"In Subpart A 961.3, definitions have been provided for generator, owner, and purchaser. Inclusion of these terms in the contract Subpart B would further clarify responsibilities and the benefits of purchasers. This would especially define those circumstances in which the fuel title does not belong to the generator. Using these additional terms would also clarify assignment





responsibilities. Specific suggestions of the appropriate use of the terms are made in the detailed comments which follow."

Does the government have a position as to whether or not it received this comment or other comments requesting clarification of the assignment provision of the standard contract?

MR. GARDNER: Objection. Mischaracterizes Exhibit 3.

THE WITNESS: Again, I have no position. If this is the administrative record, I presume it's in there.

BY MR. WINE:

Q. Are you aware of other comments like this from utilities requesting to clarify the assignment responsibilities within the standard contract?

A. I am not.

Q. Is that because you didn't review the administrative record prior to today -- with respect to this issue prior to today's





deposition?

A. As I told you earlier, I did not personally review the record, no.

Q. And it's fair to say that that is not one of the documents that counsel provided you in your preparation, correct?

A. I have not seen this before.

Q. Okay. You can put that document aside.

Aside from the standard contract itself, did the government create any documents regarding the formulation of the assignment provision of the standard contract?

MR. GARDNER: Objection. Vague.

THE WITNESS: I'm not aware of any other documents, no.

BY MR. WINE:

Q. Did you ask for such documents?

A. I asked for anything that was relevant and I was provided no other information.

Q. Let me come at it a different way.

Did you ask if such documents existed?
MR. GARDNER: Objection. Vague.
THE WITNESS: I did not ask about specific documents in which I had no knowledge.
BY MR. WINE:
Q. Let me ask you a different question.
Did you ever ask the Department of Justice or anyone else within the government or any -- well, let's take it in part.
In preparation for today's deposition, did you ask counsel whether there were documents regarding the formulation of the assignment provision?
A. I did ask counsel to provide me with documents that they thought were relevant to this topic, yes.
Q. All topics? All documents from the Department of Energy on the topic?
A. I don't think I parsed it.
Q. The ones that they felt were most relevant?





A. Were relevant to this topic, yes.
Q. Okay. And you relied on them to filter that information?
A. Yes.
Q. Okay. Did you select Mr. Morgan to speak to in preparation for today's deposition or was he provided to you by counsel?
A. As I think I mentioned earlier that counsel provided a list of who I should talk to. But I was aware that Mr. Morgan was in charge of formulating the contract, so I asked to talk to him, yes.
Q. Were there any other individuals listed that you didn't talk to?
MR. GARDNER: Objection. Vague.
THE WITNESS: I gave you a list of people, so no one was listed that I didn't talk to.
BY MR. WINE:
Q. So you spoke to everyone identified by counsel as someone you should speak to in preparation for today's deposition?





MR. GARDNER: Objection. Mischaracterizes Mr. Zabransky's previous testimony.
THE WITNESS: I think I actually identified Mr. Cavanaugh to them.
BY MR. WINE:
Q. Okay. Is there anyone else identified, either by you or by counsel, that you did not speak to in preparation for today?
A. No.
Q. Everyone identified you spoke with?
A. Yes.
Q. Let's talk now about Topic 2 F. If you need to, feel free to refer to Exhibit 1.
2 F is the standard contract entered into between the Department of Energy on behalf of the United States and Boston Edison Company dated June 17, 1983 including the expectations of the parties at the time of contracting.
And again, this is limited to the 1983 time period and concerning the assignment provision.





When the Department of Energy signed this standard contract with Boston Edison, was it aware that a utility such as Boston Edison might in the future sell its nuclear -- its nuclear power plant?
MR. GARDNER: Objection. Asked and answered.
THE WITNESS: I think I have answered earlier that in talking to Mr. Morgan who had that lead responsibility for the contracts, he stated it wasn't something he had considered.
BY MR. WINE:
Q. And aside from Mr. Morgan, you are not capable of testifying whether anyone -- whether the institution, the Department of Energy, had any knowledge at the time of contracting as to whether or not a utility such as Boston Edison might sell to another entity its nuclear power plant?
MR. GARDNER: Objection. Mischaracterizes Mr. Zabransky's previous

testimony.

BY MR. WINE:

Q. Please correct me.

MR. GARDNER: You can answer.

THE WITNESS: Again, as I stated, Mr. Morgan worked for the secretary. Mr. Morgan was given his responsibility. He was in charge of formulating the contract and then execute it. There is 20,000-something people at the Department of Energy. I don't know what each of those might have said. They have no responsibility for this topic.

BY MR. WINE:

Q. All right. And you are responsible for all of them testifying here today and the institution and having reviewed the documents associated with this topic for today. And so I guess -- let me pick apart your answer just a little bit.

Mr. Morgan on this topic is the best source of information regarding DOE's knowledge in 1983 regarding whether or not a utility





could sell its plant from one party to another?

MR. GARDNER: Objection. Calls for speculation.

THE WITNESS: Mr. Morgan was in charge of formulating the contract. He was the best party to know what DOE's expectations were at the time of the contract.

BY MR. WINE:

Q. Okay. And you are relying on your conversation with him in order to testify here today?

A. Yes.

Q. Did you take any notes of that conversation with Mr. Morgan?

A. No.

Q. Committed it all to memory?

A. Yes.

Q. Where did that conversation take place? It was a phone conversation?

A. Yes.

Q. Where was Mr. Morgan at the time, do you know?





A. No.

Q. And roughly what time period did that conversation take place?

A. Two weeks ago.

Q. Did you ask Mr. Morgan whether he was aware in 1983 of any reason why a utility could not sell its plants from one party to another?

MR. GARDNER: Objection. Asked and answered.

THE WITNESS: No. Like I told you earlier, I think the discussion was along the lines of it wasn't something he had considered at the time.

BY MR. WINE:

Q. But you didn't ask him the other question I just asked you?

A. Did not.

Q. Okay. Is DOE aware of any reason in 1983 why a utility such as Boston Edison could not sell its plant?

MR. GARDNER: Objection. Lack of





foundation. Objection. Calls for speculation.

You can answer if you can.

THE WITNESS: Again, I have told you that the state of my knowledge is that at that time it was not something DOE considered as something being discussed or considered when they entered into the contract.

BY MR. WINE:

Q. Something that DOE considered or something Mr. Morgan considered?

MR. GARDNER: Objection to the extent -- objection. Form. Leave it at that.

THE WITNESS: Again, Mr. Morgan was responsible for developing the contract and executed them. He reported to the secretary. On this topic, he spoke for DOE.

BY MR. WINE:

Q. Would it have been reasonable in 1983 for the Department of Energy to believe that Boston Edison or any utility could sell its plant in the future subject to government approval?

MR. GARDNER: Objection. Vague. Objection. Beyond the scope of the 30(b)(6) deposition. Objection. Form.

You can answer if you can.

THE WITNESS: I can't speak to what might have been reasonable back in '83.

BY MR. WINE:

Q. Why not?

MR. GARDNER: Same objections.

THE WITNESS: I don't know how you can answer a question about what could be reasonable 25, 30 years out.

BY MR. WINE:

Q. You need to be talking to the person that was there, don't you?

MR. GARDNER: No. Objection. Beyond the scope. Objection. Form. Objection. Vague.

You can answer if you can.

THE WITNESS: Even if people were there it doesn't mean they thought of it.

BY MR. WINE:





Q. Right. Yeah. That's true.

Sitting here today, you can't point me to any document maintained by DOE analyzing potential sales of nuclear power plants within the industry?

MR. GARDNER: Objection. Assumes facts not in evidence. Lack of foundation.

THE WITNESS: And I presume you mean from 1983?

BY MR. WINE:

Q. Yes.

A. And the answer is no.

Q. Did you ask for any such documents?

A. I did not.

Q. Did you ask if they ever existed?

A. Again, I asked the gentleman in charge of this effort who developed the contract. He said he never considered it. I presume at that point there were no documents.

Q. Did you ever ask Mr. Morgan specifically if he was aware of such documents?

A. No.





Q. Did you ask Mr. Morgan whether he had any conversations with the Nuclear Regulatory Commission in 1983 regarding the mechanics of the standard contract and in particular, the assignment provision?

MR. GARDNER: Objection. Vague. Objection. Beyond the scope of the 30(b)(6) deposition. Objection. Form.

You can answer.

THE WITNESS: We did not discuss that, no.

BY MR. WINE:

Q. Okay. And you don't know if the NRC has a position with respect to the interpretation of the assignment clause?

MR. GARDNER: Objection. Beyond the scope of the 30(b)(6) deposition. Objection. Lack of foundation.

THE WITNESS: And I have not talked to the NRC. I have no idea.

MR. WINE: Just for purposes of the record, make sure I have a clear understanding





too.

It's not the government's position that Mr. Uleck was designated to talk about the NRC's position regarding any of the topics that I am discussing here today with Mr. Zabransky, do you?

MR. GARDNER: Which topics? Be specific.

MR. WINE: The topics for which you designated Mr. Zabransky which by my account are 2 B, D, E, F. Put aside for the time being 2 H, because that's an odd one. 5 and 6.

MR. GARDNER: Are for Mr. Zabransky, that's correct. Topic 2 G, however, was addressed by Mr. Uleck about the relationship of the standard contract and the operating license. Mr. Connelly did ask questions about that topic.

MR. WINE: But Mr. Uleck was not designated on the topics that I articulated?

MR. GARDNER: That's correct. 2 B, 2 D, 2 E, 2 F. Putting aside 2 H for a second.

5 and 6. That's correct. With the limitations imposed by the trial court.

BY MR. WINE:

Q. When did DOE first become aware of the use of the assignment provision, Article 14, for purposes of the sale of nuclear power plants?

MR. GARDNER: Objection. Beyond the scope of the 30(b)(6) deposition.

You can answer.

THE WITNESS: I believe that Boston Edison was the first sale.

BY MR. WINE:

Q. Do you know who was involved on the Department of Energy with respect to the mechanics of the assignment provision to facilitate the assignment between Boston Edison and Entergy?

MR. GARDNER: Objection. Beyond the scope of the 30(b)(6) deposition.

THE WITNESS: I'm not quite sure what you are asking me.





BY MR. WINE:

Q. Okay. In the context of the sale of Pilgrim Plant, how did the assignment provision operate with respect to the transfer of the standard contract or the assignment of the standard contract from Boston Edison to Entergy? The DOE's prospective?

MR. GARDNER: Objection. Vague.

THE WITNESS: I believe -- my recollection is they sent a letter to the contracting officer.

BY MR. WINE:

Q. Who was that?

A. At the time, I'm not sure who it was.

Q. And do you know what happened after that letter was received from the Department of Energy?

A. I don't recall. I mean eventually I received a copy of it for our files, but to my knowledge, nothing else really happened.

Q. Any documents created within the





Department of Energy regarding the use of the assignment provision for purposes of the sale of a nuclear plant?

A. Not that I am aware of, no.

Q. Any conversations take place regarding the use of the assignment provision for the purpose of the sale of a plant such as Pilgrim?

A. I believe the letter was provided to counsel at that point in time, but I'm not sure any conversation took place.

Q. In 1983 was DOE aware of any statutes or regulations that precluded utilities such as Boston Edison from selling its plant from one utility to another?

MR. GARDNER: Objection. Beyond the scope of the 30(b)(6) deposition. Objection. Calls for a legal conclusion.

THE WITNESS: And I guess at this point I would say I'm not aware of any discussion about that issue at DOE.

BY MR. WINE:





Q. That is not quite what I asked you, though.

What I asked you is in 1983 was DOE aware of statutes or regulations that prohibited or precluded the sale of a nuclear plant from one to another?

MR. GARDNER: Objection. Beyond the scope of the 30 (b)(6) deposition. Objection. Calls for a legal conclusion.

You can answer these things.

THE WITNESS: Yes. What I am saying is I have no knowledge of what DOE was aware on that issue.

BY MR. WINE:

Q. Who would be the best source of information for that?

MR. GARDNER: Objection. Calls for speculation. Objection. Beyond the scope of the 30(b)(6) deposition.

THE WITNESS: And I have no idea.

BY MR. WINE:

Q. Robert Morgan?

MR. GARDNER: Objection. Calls for speculation. Objection beyond the scope of the 30(b)(6) deposition notice.

THE WITNESS: And I can't answer that. I don't know Mr. Morgan wrote this. All I can tell you is he told me he didn't consider that issue.

BY MR. WINE:

Q. Let's take a look for a minute at Topic 2 H regarding the intent of Boston Edison and the Department of Energy at the time of contract regarding future on-site storage of spent nuclear fuel.

When the government signed the standard contract with Boston Edison -- Department of Energy signed the standard contract with Boston Edison, was it aware that utilities were storing SNF on site?

A. Yes.

Q. Okay. What was the government's understanding of how Boston Edison was storing waste at the Pilgrim Plant?





MR. GARDNER: In 1983?

MR. WINE: In 1983.

MR. GARDNER: Objection. Lack of foundation.

You can answer if you know.

THE WITNESS: I mean to the extent that I know that Pilgrim had no dry storage, at that point in time presume it was all in the pool. But I would -- I didn't look at records that would confirm that, but that's my understanding.

BY MR. WINE:

Q. Okay. How did you come to that understanding?

A. At '83, then the dry storage was -- I don't know anybody had done dry storage yet, so everything was still pool storage.

Q. Okay. And what was DOE's position regarding the need for Boston Edison for future on-site storage of spent nuclear fuel subsequent to the execution of the standard contract?





MR. GARDNER: Objection. Lack of foundation.

THE WITNESS: I mean I have no information as to what the government thought specifically about Boston Edison's future storage needs.

BY MR. WINE:

Q. Why not?

A. I didn't research that.

Q. Why didn't you research that?

A. It didn't seem to be something that was needed to be researched.

Q. Looking at Topic 2 H as it's described on the document before you today, Exhibit 1, is that still your position?

A. Regarding future on-site storage of SNF?

Q. Yes. For Pilgrim.

A. For Pilgrim? Mine doesn't say for Pilgrim.

MR. GARDNER: I will object it mischaracterizes 2 H. 2 H does not appear to





be referencing Pilgrim.

MR. WINE: But when you were speaking earlier, Counsel, you did notice that the topic had been modified and narrowed by the court's order of February 26, 2007. And I assume you provided your witness with that information, correct?

MR. GARDNER: Actually, Topic 6 is limited to January 13, 1999, and Pilgrim Topic H appears to have no limitation whatsoever. I can pull out Judge Lettow's order here.

On page 16 of his order, "Boston Edison may conduct depositions under Court of Federal Claims Rule 30(b)(6) regarding the subtopics, one of which is 2 H."

And there is no limitation there with respect to Pilgrim at all.

MR. WINE: 2 H actually does say the parties understand. And it specifically references Boston Edison.

MR. GARDNER: It actually says "The

intent of the parties at the time of the contract regarding future on-site storage of SNF."

It does not by its own text limit it to on-site storage of SNF at the Pilgrim site. The government has not interpreted it that way, and Mr. Zabransky has not prepared in such a manner to answer a question that would be contrary to the plain language of your notice of deposition.

MR. WINE: Well, it does say "the standard contract between Boston Edison Company," which only owned one nuclear power plant at the time.

BY MR. WINE:

Q. That is consistent with your understanding, Mr. Zabransky, correct?

MR. GARDNER: Objection. Lack of foundation.

You can answer if you know.

THE WITNESS: I believe at the nuclear power plants.





BY MR. WINE:

Q. And the United States, that specific contract signed June 17, 1983, and the intent of the parties, meaning Boston Edison and DOE at the time of contract regarding future on-site storage of SNF.

And so you did not specifically prepare regarding specific understandings with respect to Boston Edison's nuclear utility, nuclear power plant?

A. No.

Q. Okay. Is it fair to say that one of the purposes of the standard contract was to avoid future on-site or at reactor storage of SNF subsequent to January 31, 1998?

MR. GARDNER: Objection. Calls for a legal conclusion. Objection. Calls for speculation. Objection. Covered in previous 30(b)(6) depositions in coordinate discovery.

BY MR. WINE:

Q. You can answer.

A. That's not my understand.





Q. What's your understanding?

A. With respect to?

Q. The purpose of the standard contract and future on-site storage of spent nuclear fuel.

MR. GARDNER: Same objection.

THE WITNESS: I don't believe there is anything in the standard contract that deals with future on-site storage other than the fact that the purchaser should be responsible for outside storage costs.

MR. GARDNER: Objection. Beyond the scope. Objection. Beyond the scope of the 30(b)(6) deposition. Objection. Previously covered in coordinated discovery.

BY MR. WINE:

Q. Is that the position of DOE sitting here today?

MR. GARDNER: You can answer.

THE WITNESS: That?

BY MR. WINE:

Q. That utilities are indefinitely





responsible for the on-site storage of spent nuclear fuel?

MR. GARDNER: Mischaracterizes Mr. Zabransky's previous testimony.

THE WITNESS: You asked me what the contract says. That's what the contract says. Beyond that, other issues --

BY MR. WINE:

Q. I am asking you about the intent of the parties at the time of contracting.

MR. GARDNER: Mr. Zabransky was in the middle of a previous answer.

You can finish your answer.

THE WITNESS: Again, the contracts assumed that -- does nothing to stipulate who should be responsible for storage after 1998.

BY MR. WINE:

Q. In 1983 was it the intent of DOE that utilities would be indefinitely responsible for the on-site storage of SNF?

MR. GARDNER: Objection. Covered previously by other 30(b)(6) depositions in

coordinated discovery. Objection. Beyond the scope of this 30(b)(6) deposition.

MR. WINE: Counsel, 2 H says "The intent of the parties at the time of contracting regarding future on-site storage of SNF."

Is it your position that the question I have asked is outside the scope of that topic?

MR. GARDNER: You have asked whether it was the intent to indefinitely hold responsible utilities for future on-site storage. I see that being beyond the scope of the question you asked or the deposition topic.

MR. WINE: You can answer.

THE WITNESS: Again, it was the intent to begin acceptance in 1998, but no rate was stipulated in the contract. And that was to be determined later.

So the contract itself in 1983, I'm not aware of DOE's -- DOE expected there would be additional on-site storage, and DOE expected





that in cases the utilities were responsible.

BY MR. WINE:

Q. Okay. What investigation did you do with respect to preparing for answering this specific topic?

A. I reviewed Mr. Morgan's testimony.

Q. And I want to be very clear. I don't want to ask you about rate of acceptance which I agree with counsel. That has been covered by previous witnesses in coordinated discovery, and Judge Lettow was clear about us not asking rate of acceptance questions.

But I do think that Judge Lettow did allow us to ask what DOE's intent was in 1983 regarding future on-site storage of SNF. So with respect to that topic, in 1983 subsequent to the execution of the standard contract, what did DOE intend regarding Boston Edison's on-site storage of its SNF?

MR. GARDNER: Did you say subsequent to contract formation?

MR. WISE: No. At the time of





contract formation.

THE WITNESS: With respect to Boston Edison specifically, I think I told you earlier I did not review that.

BY MR. WINE:

Q. I believe you previously testified in response to one of my prior questions that the government intended to begin picking up spent nuclear fuel on January 31, 1998, correct?

A. In the aggregate, yes.

Q. And that was the government's position at the time of contract in 1983?

A. That was what the contract said, yes.

Q. And that was a byproduct of the NWPA as well?

MR. GARDNER: Objection. Vague. Objection. Calls for legal conclusion.

You can answer.

THE WITNESS: The act does contain a date, yes.





BY MR. WINE:

Q. Beginning on January 31, 1998, was it DOE's intent at the time of contracting that DOE would begin removal of SNF from on-site or at reactor storage?

MR. GARDNER: Objection. Vague.

THE WITNESS: What do you mean? I don't quite understand what you're saying.

BY MR. WINE:

Q. Describe for me your understanding of what would begin happening on January 31, 1998 from DOE's understanding at the time of contracting.

MR. GARDNER: Objection. Vague.

What would begin happening?

MR. WINE: Yes.

BY MR. WINE:

Q. How would the contract work?

MR. GARDNER: Objection. Calls for a legal conclusion.

THE WITNESS: The general expectation is that beginning in 1998, DOE

would begin accepting spent fuel on a fuel first basis.
BY MR. WINE:
Q. Are you familiar with Mr. Morgan's prior comments to industry that it would begin collecting in 1998 such that future on-site storage would not be required after that date?
A. I'm familiar with the fact that he stated that as a program goal after the contract was signed, but not as a contract term.
Q. Okay. Do you understand that it was his statement that that goal was consistent with the intent of the NWPA?
A. I believe his testimony that I reviewed says that, yes.
Q. Do you disagree with that?
A. I believe that was a goal, yes.
Q. So I just want to make sure I understand this correctly.
DOE's understanding sitting here today was that the intent of DOE at the time of





contract formation in 1983 was that contract performance would take place in such a manner that future on-site storage would not be required?
MR. GARDNER: Objection. Mischaracterizes Mr. Zabransky's previous testimony.
THE WITNESS: No, I didn't say that. I said that that was Mr. Morgan's programatic goal. Mr. Morgan was also quite clear in saying it was not part of the contract.
BY MR. WINE:
Q. When did that stop being the goal of DOE?
MR. GARDNER: Objection. Vague. Objection. Lack of foundation. Objection. Beyond the scope of the 30(b)(6) deposition.
THE WITNESS: I can't speak to that point.
BY MR. WINE:
Q. Why not?
A. I didn't prepare to figure out when





that stopped being the goal.
Q. Was that the goal in 1983?
A. It was --
MR. GARDNER: Objection. Asked and answered.
THE WITNESS: As I said, reviewing Mr. Morgan's testimony, it was a programatic goal.
BY MR. WINE:
Q. Okay. How is that different than the intent of DOE at the time of contracting?
MR. GARDNER: Objection. Calls for a legal conclusion. Objection. Mischaracterizes Mr. Zabransky's previous testimony.
THE WITNESS: Reviewing Mr. Morgan's testimony and listening to Mr. Morgan in other situations, it was a goal programatically. It was not something he was willing to put in the contract.
BY MR. WINE:
Q. Is this another situation where you





are relying on Mr. Morgan's statements in order to testify here today --
A. Correct.
Q. -- for DOE's position --
A. That's correct.
Q. -- in 1983?
A. Uh-huh.
Q. Okay. Did you have any talks with Mr. Morgan when you spoke with him by phone regarding this topic particularly?
A. No, I did not.
Q. Why not?
A. We had reviewed his testimony. He has spoken to us many times and didn't need to spend time with him on this on the phone.
Q. Is it fair to say that DOE intended at the time of contracting that the need for additional on-site storage for Boston Edison at the Pilgrim Plant would cease as of January 31, 1998?
MR. GARDNER: Objection. Beyond the scope of the 30(b)(6) deposition. Objection.

Asked and answered.
THE WITNESS: And again, I think what I told you was that specifically with respect to contracting that was not included in the contract. As a programatic goal, the intent was, as Mr. Morgan expressed in his testimony, to eliminate the need for on-site storage in the aggregate.
It didn't mean that some utilities wouldn't have to add on-site storage, but others wouldn't have to.
BY MR. WINE:
Q. Did DOE believe in 1983 that as a direct result of the signing of the standard contract Boston Edison would have to build on-site storage?
MR. GARDNER: Of assigning the standard contract?
MR. WINE: No. Signing. Signing.
THE WITNESS: Again, I did not review anything in our discussions that would let me understand or let me know what DOE





thought specifically about Boston Edison.
BY MR. WINE:
Q. Why not?
A. It was not how this was interpreted.
Q. By you or by counsel?
A. I rely upon counsel to interpret stuff for me.
Q. Did you ask for specific information regarding Boston Edison?
A. It was not --
MR. GARDNER: Are we talking just about 2 H here?
MR. WINE: Right now, yes.
MR. GARDNER: Okay.
THE WITNESS: And the answer is no.
BY MR. WINE:
Q. And why didn't you?
MR. GARDNER: Objection. Asked and answered.
THE WITNESS: It was not how counsel interpreted this topic for me to testify to.
BY MR. WINE:





Q. Let's look at Topic 5 right now.
Topic 5 relates to the government's understanding of the costs incurred by nuclear utilities for temporary fuel storage as a result of DOE's failure to be in acceptance of SNF on January 31, 1998.
The court limited this topic to the government's understanding of the costs associated with temporary fuel storage up to July 13, 1999, which is the date when Boston Edison sold its plant -- sold its Pilgrim Plant, rather, to Entergy.
And I believe you stated earlier that the standard contract specifies a performance date of January 31, 1998, correct?
A. That's correct.
Q. And that Section 10222 A 5 B of the NWPA also has that date in it as well.
Is that your understanding?
MR. GARDNER: Objection. Beyond the scope of the 30(b)(6) deposition.
THE WITNESS: It's in the act. I'm





not sure that's the right section, but it's in the act.
BY MR. WINE:
Q. Would you prefer to look at a copy of the act?
A. No. I know it's in the act.
Q. And did the government begin acceptance of SNF from any plant on that date?
MR. GARDNER: I'm going to object. This is beyond the scope of the 30(b)(6) deposition. Judge Lettow expressly precluded questions on the date of DOE performance. This is beyond the scope.
You can answer.
THE WITNESS: No.
BY MR. WINE:
Q. Okay. What was the government's understanding of what would happen to SNF if it failed to begin performance on January 31, 1998?
A. It would continue to be stored at reactor sites.

Q. And how would that take place? How would reactor sites store their SNF?
A. Safely.
Q. Specifically how, Mr. Zabransky?
A. I can't speak to that. It depends on the reactor site.
Q. Give me your options. Exhaust your knowledge on this, Mr. Zabransky.
MR. GARDNER: So we are clear here, the options that were available as of 1983?
MR. WINE: No. As of 1998 when DOE was supposed to pick up spent nuclear fuel but didn't.
Go ahead and answer, Mr. Zabransky.
THE WITNESS: They could have transshipped. They could have reracked pools. They could have consolidated. They could have added dry storage.
BY MR. WINE:
Q. What were the options available to Boston Edison?
MR. GARDNER: I'm going to object.





It is beyond the scope of Topic 5, which is not limited to Boston Edison.
BY MR. WINE:
Q. But Boston Edison is part of that universe, correct, of utilities?
A. Yes. They are part of the universe.
Q. It also says in Topic 5 "The government's understanding of the cost or potential cost to the nuclear power industry and to Pilgrim in particular."
You see that on Exhibit 1?
A. Yes. I see that.
Q. What did you do to prepare for Topic No. 5 with regard to Pilgrim in particular?
A. I looked for a document that might deal with Pilgrim in particular and found none.
Q. Where did you look?
A. In the systems that we have. I'm not aware of any documents. I am aware of documents that looked at the cost storage, as I alluded to earlier. They were generic in nature.





With respect to documents that look at particular sites, to my knowledge, those are developed at DOE at the direction of counsel and have only been utilized at the direction of counsel.
Q. Let's pick apart all the information you have provided me.
You said you performed particular searches for documents related to Pilgrim, correct?
A. I looked at documents related to storage costs.
Q. Tell me what you did specifically with respect to Pilgrim.
MR. GARDNER: All I would say is to the extent that calls for the divulgence of either attorney work product or attorney-client confidences, I ask you to consider that before you answer the question and identify such.
THE WITNESS: Again, to the extent that DOE had estimates or potential costs of storage to the nuclear power industry, the





documents that I found and that counsel also searched were generic in nature.
BY MR. WINE:
Q. But that's not the question I asked you.
I want to know what specific searches you performed for documents relating to Pilgrim. We are not -- in order to be cognizant of counsel's concern -- I will not ask you about the substance of any documents you may or may not have found yet. I just want to know about the searches you performed regarding Pilgrim.
A. I looked at files I know exist that look at the potential cost to utilities for storage costs, and Pilgrim is one of those utilities included in those files.
Q. Where are those files?
A. They are electronic files that exist in the systems of DOE.
Q. And those are documents that you have access to in the ordinary course of

performing your duties as a DOE employee or is that a litigation database?
A. It's a limited access database that we use for counsel.
Q. Developed as part of this litigation?
A. Yes.
Q. Okay. And describe to me the specific queries regarding Pilgrim that you inputted into that system.
A. The system has a listing for every utility. Not much query.
Q. So you specifically searched Pilgrim?
A. And there is an entry for Pilgrim. And for Boston Edison is included in that database.
Q. You searched that entry in that database for Pilgrim?
A. Yes.
Q. What did you find?
MR. GARDNER: I will now object to





the extent that database was prepared in anticipation of litigation. Anything within that database we would assert privilege over.
MR. WINE: I don't want to know the contents of the documents. I want to know what you found specifically with respect to Pilgrim. Don't tell me about the contents of the documents yet.
BY MR. WINE:
Q. Did you -- tell me, I found one document. I found a hundred documents. What did you find?
A. There is a database that contains an estimate of the government's potential liability.
Q. Okay. And with respect to specifically Pilgrim?
A. That's a line on the database.
Q. What other documents pertaining to Pilgrim in an analysis of Pilgrim specifically did you search for?
A. I'm not aware of any other ones.





Counsel searched the systems we have too and found none. So I found nothing else that referenced directly to Pilgrim.
Q. Besides clicking in on the one database you described, Pilgrim, and looking at the line item of the estimate prepared in the context of this litigation, potential liability for Pilgrim, what other searches did you specifically perform for Pilgrim documents?
A. I did not search the RIS web. I believe counsels did the RIS web search for any documents we may have had.
Q. Describe what your understanding of what the RIS web site is.
A. That's the site of all the electronic -- all the documents we have in our possession.
Q. Which counsel of yours did you rely on to search that web site?
A. The DOJ had that looked at along with the other document discovery to see if anything was related to this.





Q. Specifically whom within DOJ did you ask to do that search?
MR. GARDNER: Objection. Mischaracterizes Mr. Zabransky's previous testimony that he asked anyone to do that search.
THE WITNESS: I didn't ask. Counsel said there was nothing that they found in the documents relevant.
BY MR. WINE:
Q. Who? Who said that?
A. I don't know if it was Mr. Gardner or Mr. Bryan, but nothing was brought to my attention that responded to Pilgrim per se other than the analysis that I knew that was done in the litigation context.
Q. How did you satisfy yourself about the sufficiency of the search that was performed on your behalf?
A. I am not aware of anything that has been done on this. I am generally aware of what has been done. I'm not aware of anything

that has been done on Boston Edison.

So it complied -- or it was consistent with what I thought they would find.

Q. Okay. Are you aware of everything that may have been done within the Department of Energy specifically with respect to Pilgrim anytime from 1983 until 1999? Personal knowledge?

MR. GARDNER: Objection. Form.

THE WITNESS: Let's also look at this. This is failure to be in accepting spent fuel as of June 31, 1998. And that topic was not really looked at until the mid '90s.

BY MR. WINE:

Q. Right. And so you were there that entire time?

A. I was there that entire time.

Q. When did you start looking at that issue?

A. With respect to?

Q. The impact of DOE's failure to begin accepting spent fuel on January 31, 1998.





A. I believe at the direction of counsel we started looking at that after we first got sued in 1995.

Q. None before then?

A. Not really.

Q. For the Boston Edison plant particularly, Pilgrim, did DOE understand that Boston Edison would incur a storage cost for spent nuclear fuel if the government failed to accept SNF for the Pilgrim Plant beginning on January 31, 1998?

A. I guess I am not prepared to say that -- I don't have the personal recollection right now of whether or not all those costs would have been related to DOE's nonperformance or not.

Q. Who would?

A. I would have to review other records. I don't know.

Q. What other records are there?

A. I described to you earlier this database that was done for counsel.





Q. Okay. So in order to answer the question I just asked you, you would need to go look at that?

A. Yes.

Q. Why didn't you look at it specifically before today's deposition?

MR. GARDNER: Objection. Mischaracterizes Mr. Zabransky's previous testimony. I think he said he did look at the database.

THE WITNESS: I looked at it. I don't recall the numbers that were in there for Boston Edison, but those all related to work that was done for counsel to estimate the government's liability.

BY MR. WINE:

Q. And we are not talking about the RIS web database right now. You are talking about the --

A. Yes. I am not talking about the RIS web database.

Q. What is the name of the other





database that was prepared at the request of counsel?

A. There is no name.

Q. How do you -- when you want someone to go do a search for you or when -- have no name for it?

A. It's a spreadsheet.

Q. And you prepared the spreadsheet?

A. It's prepared by many people. Contractors and us worked on it, yes.

Q. Who else besides you?

A. Myself, Mr. Pollock, Ed Bends, Connie Barton, and in the past perhaps Mr. Miltier worked on it. Others who have since retired but --

Q. Which contractors worked on this database?

A. Everyone except Mr. Pollock and myself are contractors.

Q. Did you receive requests from Congress for this information?

MR. GARDNER: I object. Beyond the

scope of the 30(b)(6) deposition. Objection. Relevance.

THE WITNESS: Yes.

BY MR. WINE:

Q. Have you ever provided the information contained in the database to Congress?

MR. GARDNER: Same objection.

You can answer.

THE WITNESS: No.

BY MR. WINE:

Q. Is the basis similar to the one that you are articulating here that was prepared on the advice of counsel?

MR. GARDNER: Is your question why haven't they provided it to Congress?

MR. WINE: Yes.

MR. GARDNER: Objection. Calls for speculation. Lack of foundation. Beyond the 30(b)(6) deposition. Objection. Relevance.

THE WITNESS: Again, the discussion with counsel --





MR. GARDNER: I will now object. Calls for divulgence of attorney-client privilege.

BY MR. WINE:

Q. I don't want you to give me what your discussions with counsel were. I simply asked you is the reason you didn't provide it to Congress the same reason you are not providing input -- the substance to me, which I understand, that was created at the advice of counsel in contemplation and in the process of litigation?

A. It wasn't provided to Congress at the advice of counsel.

Q. Okay. So what would you need to do in order to obtain an understanding on the part of the Department of Energy as to what Boston Edison would have been specifically required to do as a result of the government's failure to begin acceptance of spent nuclear fuel on January 31, 1998?

MR. GARDNER: Objection to the





extent that it requires the divulgence of attorney-client privilege or attorney work product.

But to the extent you can answer that question without divulging that information, please.

THE WITNESS: I think I would need to divulge to you what we developed for counsel which is saying we think this is what is going to happen given these circumstances and given these interpretations.

BY MR. WINE:

Q. Without giving me the substance of what your conclusions were, the analysis that you performed in order to come to that conclusion, did you have such an understanding in July of 1999?

MR. GARDNER: Understanding of what?

MR. WINE: Liabilities incurred by Boston Edison at the Pilgrim Plant.

THE WITNESS: That's -- we are getting to No. 5 or No. 6?





BY MR. WINE:

Q. Right now I am asking about No. 5.

A. No. 5 has nothing to do with liabilities.

Q. Okay. Perhaps -- the government's understanding of the costs associated with temporary fuel storage. Was the government looking at that in 1999 for Boston Edison at Pilgrim Plant?

MR. GARDNER: I will just make the same objection to the extent it calls for the divulgence of attorney work product or the divulgence of the attorney -- client --

MR. WINE: Whether the analysis was ever even happening? That's privileged and subject to nondisclosure and nondiscovery?

MR. GARDNER: To the extent that the analysis was done at the direction of counsel, yes. I think Mr. Zabransky has already answered the question. That such analysis was conducted. I don't know how much further you can go on this.

MR. WINE: I just want to understand when the analysis was done.
THE WITNESS: I think I told you earlier that beginning in '95 when we got sued, we started doing analysis for counsel that tried to look at potential government exposure.
BY MR. WINE:
Q. And that included Boston Edison?
A. That included all contractors.
Q. Included Boston Edison?
A. Included all contract holders.
Q. Yes or no?
A. Yes. I said yes.
Q. Thank you.
Does the government have an understanding that any cost associated with dry fuel storage at the Pilgrim Plant is the direct result of the government's failure to begin accepting SNF on January 31, 1998?
MR. GARDNER: Objection. Calls for a legal conclusion.
THE WITNESS: And again, you asked





me exactly that any of the costs?
MR. WINE: No. That's not what I asked you.
Bonnie, can you read back the question.
(The record was read as requested.)
MR. GARDNER: Objection. Calls for a legal conclusion.
THE WITNESS: I guess like I told you earlier --
MR. GARDNER: I also object it's vague. Cost incurred as of what date?
MR. WINE: Go ahead and answer.
THE WITNESS: At direction of counsel, we developed an estimate of what we believed the government's liability is as a direct result of the delay in performance.
BY MR. WINE:
Q. Sitting here today, are you aware of the spent nuclear fuel storage options available to Boston Edison in July of 1999?
A. No.





Q. Would you be able to obtain that information?
A. I would assume I would get it from Boston Edison.
Q. How would you go ahead and get that information from Boston Edison regarding the spent fuel storage options available to it in July '99?
A. I don't know who else would know what options they have besides this.
Q. Is that information typically available to the government as a result of its oversight involvement with utilities?
MR. GARDNER: Objection to the extent it mischaracterizes what DOE's functions are with respect to oversight of utilities.
THE WITNESS: Again, the government may have numerical information, but that doesn't mean it is aware of what the options available to the utility might be.
BY MR. WINE:
Q. I think you testified earlier that





as a result of your involvement in these areas, you are aware that Boston Edison was utilizing wet storage for the management handling of its spent fuel in the '80s and '90s?
A. No. I did not testify to that.
Q. What is your understanding?
A. My testimony was as of '83, they were using wet storage.
Q. Okay. Do you have any understanding of what they were using in 1999?
A. No.
Q. Do you have any understanding as to whether or not Boston Edison had a dry storage facility on its site in 1999?
A. I don't know.
Q. And the only way you would be able to obtain that information is by asking Boston Edison?
A. And reviewing perhaps NRC records.
Q. Is that information available to you typically?
A. If I went to the public web sites,

yes.

Q. Okay. And you could have done that in preparation for today's testimony?

A. I could have.

Q. And you did not?

A. I did not.

Q. Okay. Why did you elect not to look at specific NRC information regarding the Pilgrim Plant in preparation for today's testimony?

MR. GARDNER: Objection. Form. Objection to the extent it suggests Mr. Zabransky has some obligation to do that.

THE WITNESS: Because it also -- it doesn't mean that that would be the full list of all the options they had. That was the one they chose, whatever they may have chose.

I can't speak to what options they discarded. Only they can speak to that.

BY MR. WINE:

Q. All right. You are aware that Boston Edison sold its Pilgrim Plant in 1999,





correct?

A. I'm aware of that, yes.

Q. Do you know to whom they sold that plant?

A. I believe to Entergy.

Q. Did you have any involvement with DOE with respect to the paperwork associated with the transfer of assignment of the standard contract from Boston Edison to Entergy?

MR. GARDNER: Objection. Vague.

If you understand what he means by "paperwork," you can answer.

THE WITNESS: Other than the fact they sent the letter and we changed names as to mailing lists, there was not much work done.

(Deposition Exhibit No. 4 was marked for identification.)

BY MR. WINE:

Q. Mr. Zabransky, you have been handed a document marked Zabransky Exhibit 4 for purposes of your testimony today. It is a letter dated July 13, 1999 on Boston Edison





letterhead. Bates labeled ENGC/BECO DOE 1ST RFP-12-63 through 12-65.

I ask you to review the document and tell me if you are familiar with it?

A. I don't have a 65.

Oh, 65 is the first page.

MR. GARDNER: I'm sorry. It's in backward order.

THE WITNESS: Am I familiar with it? I don't recall it, but apparently Frank Rives faxed this to me.

BY MR. WINE:

Q. Did Frank Rives fax it to you or did you fax it to Frank Rives?

A. I guess Tom faxed it to Frank Rives. That's not my handwriting so.

Q. Tom who?

A. Mr. Pollock might have done that. It could be his handwriting. But it wasn't -- I guess someone faxed it to Frank.

Q. Under your name?

A. It looks that way.





Q. Okay. With respect to the paperwork, for lack of a better term, that I asked you about earlier regarding the assignment of the standard contract, is this your understanding of the material received by the Department of Energy regarding the assignment of the contract from Boston Edison to Entergy?

A. Yes. My understanding was that it looks like it was received sometime in the contracting offices in July of '99, and some point later on we received it and changed our mailing lists.

Q. Just for purposes of getting the record here, I will ask you a question -- couple of questions.

Again, with regarding the government's understanding of the costs associated with temporary fuel storage up to July 13, 1999, it's fair to say that the quantification, the dollar amount associated with that is a dollar amount you prepared and

provided to counsel at the request of counsel?
MR. GARDNER: Objection. Mischaracterizes Mr. Zabransky's previous testimony. Provides this information to counsel.
THE WITNESS: Again, I don't think that I ever said we gave them a number as of July 13, 1999.
BY MR. WINE:
Q. Right. But that database was being maintained from '95 through to the present, correct?
A. It was updated periodically to reflect the department's potential liability estimates for bookkeeping purposes.
Q. How was it used for bookkeeping purposes?
A. It's required for us to estimate potential liabilities and it's used to estimate liability.
Q. That's not a requirement as a result of litigation, correct?





MR. GARDNER: Objection to the extent -- a couple of objections.
Beyond the scope of the 30(b)(6). Objection. Lack of foundation. Objection. Calls for a legal conclusion.
To the extent you can answer.
THE WITNESS: If there was no litigation, we wouldn't be estimating liabilities.
BY MR. WINE:
Q. I want to get further into what these bookkeeping purposes are. Is this for purposes of budgeting?
A. No.
Q. What is the bookkeeping purpose?
A. It's financial statements.
Q. To whom?
A. To the government, I guess.
Q. So you utilized this database in providing financial statements to Congress as to potential future liabilities of the agency?
A. Only on the aggregate level, yes.





Q. Now, by "the aggregate level," do you mean for all spent nuclear fuel liability?
A. Yes.
Q. Was that information provided in 1999 to Congress?
A. I don't know when it was provided to Congress. It was -- at 1999, I don't know that we had done that yet for the auditors. It might have been done at that point in time.
It's always been the financial statements. Whenever we -- the auditors asked for it we provided it. This database was developed for counsel for the purpose of working the litigation. And the outfall of that is an overall number provided to the auditors.
MR. GARDNER: We have been going an hour. Do you want a break?
MR. WINE: Sure. That's fine.
(A short recess was taken.)
BY MR. WINE:
Q. I would like to ask you a bit more





information, Mr. Zabransky, on the government's understanding of costs associated with temporary fuel storage at various plants. And do I understand correctly that the -- all the information that the government possesses and that you understand to be the case was obtained and compiled at the request of counsel starting in 1995?
A. Correct.
Q. I would like to get some information, however. Not as to the substance or conclusions of that database, the analysis that you performed. But how that database is populated. How you go about retaining information regarding utilities, in particular with respect to Pilgrim.
What information did you or DOE compile in order to determine the cost associated with temporary fuel storage of a given utility up to July 13, 1999?
MR. GARDNER: I will object and I instruct Mr. Zabransky not to answer. That

does call for work product. How that analysis is put together is work product.

I will instruct you not to answer.

BY MR. WINE: How the analysis is put together is work product.

Well, let's make a record.

BY MR. WINE:

Q. Does the database reflect site-specific characteristics? And I would like to ask you generally and with respect to Pilgrim in particular.

MR. GARDNER: I will object and I will instruct you not to answer. It calls for work product.

How that database is put together was made at the instruction of counsel.

BY MR. WINE:

Q. And did you -- did the Department of Energy specifically look at the then current means of storage of spent nuclear fuel by a given utility?

MR. GARDNER: In what year?





BY MR. WINE:

Q. In any year. '95 through '99?

MR. GARDNER: Just so we understand the question, is your question do they look at specific utilities' characteristics year by year in populating its database.

MR. WINE: No.

You can read back the question, Bonnie.

(The record was read as requested.)

MR. GARDNER: Same objection. Instruct the witness not to answer. Calls for attorney work product.

THE WITNESS: Can I have a discussion with you?

MR. GARDNER: Sure. Absolutely.

Let's go off the record.

(A short recess was taken.)

MR. GARDNER: We are back on the record.

Mr. Zabransky and I just went off the record so he could explain to me what





information he is comfortable talking about that he does not believe is protected by a privilege or other sort of protections like attorney-client.

And he is prepared to tell you what he can tell you that is not privileged. And maybe we can go at it that way. He can explain what he can tell you or you can try to ask questions.

It may be more efficient to just have him tell you what he can tell you.

BY MR. WINE:

Q. Why don't you go ahead and tell me what you are comfortable discussing with respect to this source?

A. Again, as a talked to counsel is that we have told this to Congress in a very general level is what we do is we use publicly available information to determine what we think specific sites will need when we use internal estimates as to what we think allocations would have been which I won't go





further on.

And then we use cost estimates that we develop based upon information either from public sources or from what we know from our settlements to estimate costs of storage at specific sites. And that's available at an aggregate level.

Q. I appreciate, Mr. Zabransky, you providing me with that insight.

There was one area that I wasn't quite clear what you meant, and I want to be very careful because it was one of the areas that you didn't want to go into greater detail on for the reason I think I understand.

You had said "what allocations would have been." What did you mean by that? Again, without giving me the substance of the analysis or what may be contained in the database, what did you mean by that?

A. We basically develop what we believe would have happened, as we call it in the but-for world, saying this is what would have

happened in 1998 had we performed.
Q. Okay. And DOE is capable and has performed that analysis on a per utility basis for each individual nuclear plant?
MR. GARDNER: Object to the extent it mischaracterizes Mr. Zabransky's previous testimony.
THE WITNESS: The analysis has to look at all the individual utility plants. I didn't mean to infer that we do a specific investigation of the geography of each plant, and its seismic conditions to say this one costs X and this one costs Y. We don't do that.
BY MR. WINE:
Q. When you say "publicly available sources," is that NRC filings? What does that constitute? What does that consist of?
A. It may be NRC filings. It may be press clippings. It may be whatever we find.
Q. Okay. And is that information that DOE goes out and obtains or is DOE directed by





counsel as to what to look at in performing that material, performing that analysis?
A. Counsel asked us to look at relevant information that we think could be available and again, primarily I think the reliance as to there is many public sources. If utilities want to tell us, we will take their information. But we generally just try to glean what is publicly available and use that as one of the inputs.
Q. Insofar as a utility like Boston Edison provides a damages analysis, either by expert report or by other means, is that information reviewed and/or reflected or inputted in the database?
A. I don't think that's the way we have worked.
Q. And to be certain, you have never reviewed the -- any of the expert reports provided by Boston Edison in this litigation, correct?
A. I don't believe I have.





Q. And not the expert report of Bill Manion on decommissioning?
A. Don't believe so.
Q. Do you know Mr. Manion?
A. I know Bill.
Q. You worked together in the past?
MR. GARDNER: Objection. Beyond the scope of the 30(b)(6) deposition.
You can answer it.
THE WITNESS: Yes.
BY MR. WINE:
Q. John Reed's expert report?
A. Who?
Q. John Reed. Concentric Energy Advisors?
MR. GARDNER: He is asking if you read the report.
THE WITNESS: I don't believe I have.
BY MR. WINE:
Q. Okay. And you are familiar based on your prior cases with Eileen Supko and the





expert testimony she has offered on rate of acceptance issues?
MR. GARDNER: Objection. Beyond the scope of the 30(b)(6) deposition.
You can answer.
THE WITNESS: From prior cases I know Eileen, yes.
BY MR. WINE:
Q. By July 13, 1999, had the government prepared or formulated an understanding of the cost associated with fuel storage at Pilgrim beyond that date, i.e., future projections of costs associated with spent fuel storage or is it just on an as year incurred and previous year basis?
MR. GARDNER: I object it's beyond the scope. And specially Judge Lettow limited to understandings as of July 13, 1999. Both Topic 5 and Topic 6.
BY MR. WINE:
Q. Right. And what I am asking you is the analysis that had been performed up to July

13, 1999 as to the costs associated with temporary fuel storage by Boston Edison.

Was that for future dates or just for past and then incurred costs?

A. I am trying to figure out how to answer this.

The liability estimate we prepare for counsel looks at the government's potential total liability.

Q. So it includes future dates as well? It projects into the future?

A. It projects until we believe there is no longer any liability.

Q. In the government's analysis of Boston, the cost incurred by Boston Edison associated with temporary fuel storage up to July 13, 1999, did DOE make any assessments or judgments as to anything unique about Boston Edison that distinguished it from our utilities with respect to its spent nuclear fuel costs?

MR. GARDNER: I object. Vague.

THE WITNESS: I need to clarify.





There is no estimate that says the cost through this date is X. There is nothing that we perform that says this is the cost through July 13, 1999. And there is no way of calculating that methodology we use.

BY MR. WINE:

Q. Right. But you were performing this analysis from '95 to the present?

A. (Witness nods head.)

Q. And you were performing it in 1999, correct?

A. Yes.

Q. So there is basically four years that you were looking at Boston Edison in particular relevant for this deposition, correct?

MR. GARDNER: Objection. Mischaracterizes Mr. Zabransky's previous testimony.

You can answer.

THE WITNESS: What I said was we did this analysis that looked at the government's





potential total liability over that period of time. But there is no way the analysis lets one parse out, and this is the cost through this point in time.

BY MR. WINE:

Q. Right. I understand.

A. So I can't answer the question as to their cost through July 13, 1999.

Q. And I don't want to know a dollar figure or Boston Edison's cost. But I want to know a bit more about your analysis and the analysis that DOE has performed or its understanding of the costs relative to Boston Edison and the Pilgrim Plant, the time you started analyzing such cost until July 13, 1999.

Do you understand that's the general parameters I am working in?

A. To clarify, that means it has nothing to do with the cost through July 13?

Q. Right.

So in doing that exercise for that





four-year period of time that is relevant for purposes of today's exercise, did the government -- was there anything unique about the Pilgrim Plant in its SNF storage options or requirements that the government became aware of in performing that analysis?

MR. GARDNER: I object. Vague as to what you mean by "unique."

You can answer.

THE WITNESS: And I guess I can answer without going too far is that I don't believe that anything would have been unique about Pilgrim.

BY MR. WINE:

Q. Okay. In formulating this analysis, I want to get a better understanding of the degree of granularity of the kind of publicly available information that you may or may not have looked at, the Department of Energy may or may not have looked at.

For example, did the Department of Energy consider property tax assessments by a

particular jurisdiction that may be levied against an interim storage facility?

MR. GARDNER: Now, I will lodge an objection and instruct Mr. Zabransky not to answer.

Now we are getting to work product as to the specific sources of information used to calculate liability. I think we are comfortable allowing Mr. Zabransky to talk in generalities as DOE has spoken to Congress in generalities as to how the liability estimate works.

But when we start getting down to the details, that information has never been disclosed. And we will continue to assert privileges and work product over such information.

THE WITNESS: I can say the items included and to the extent they were included were at the direction and discussion with counsel.

MR. WINE: Go a few more minutes and





then take a break for lunch.

BY MR. WINE:

Q. Was it the government's understanding that Boston Edison would incur SNF storage costs between July 13, 1998 and July 13, 1999?

A. I don't know. I don't know how much they would incur.

Q. I didn't ask you for a dollar amount.

That they would incur such costs?

MR. GARDNER: So we are clear, incur storage costs related to DOE's delay?

MR. WINE: No. Incur -- start at the high level first.

BY MR. WINE:

Q. Incur SNF storage costs between January 31, 1998 and July 13, 1999?

A. To the extent they had spent fuel, there was some finite amount of storage costs.

Q. Okay. And is the government aware of any kind of planning required by Boston





Edison for future SNF storage options in the wake of the government's failure to collect SNF on January 31, 1998?

MR. GARDNER: Objection. Lack of foundation. Objection. Assumes facts not in evidence. Objection. Beyond the scope of the 30(b)(6) deposition.

You can answer.

THE WITNESS: Planning between January 31, 1998 and July 13, 1999?

BY MR. WINE:

Q. Sure.

A. I'm not aware of any.

Q. How about any planning that Boston Edison was required to undertake prior to July 13, 1999?

MR. GARDNER: Objection. Lack of foundation.

BY MR. WINE:

Q. Anytime before January 31, 1998?

A. I'm not aware of what plan they would have done. I don't know what they've





done.

Q. What about utilities generally?

A. I would presume a company utility plans on a regular basis for future generations.

Q. Try to minimize the cost they may incur?

MR. GARDNER: Objection. Beyond the scope of the 30(b)(6) deposition. Objection. Calls for speculation. Objection. Lack of foundation.

THE WITNESS: I'm sure they make the plans consistent with what they think is what makes sense to them.

BY MR. WINE:

Q. That's what you did when you worked at private utilities, correct?

MR. GARDNER: Objection. Beyond scope of the 30(b)(6) deposition.

THE WITNESS: Yes.

BY MR. WINE:

Q. And DOE would expect in the 1998,

1999 time frame that a utility would act in a prudent fashion in the management of its spent nuclear fuel obligations, correct?

MR. GARDNER: Objection. Beyond the scope of the 30(b)(6) deposition. Assumes facts not in evidence that DOE has any expectations as to how a utility would operate.

Answer if you can.

THE WITNESS: Again, I have no reason to understand how they would act in that time frame.

BY MR. WINE:

Q. Did the government have an understanding that a utility would act other than in a reasonable and prudent fashion in the handling of its cost associated with temporary fuel storage up to and including July 13, 1999?

MR. GARDNER: I'm going to object. Beyond the scope of the 30(b)(6) deposition. Objection. Calls for speculation. Objection. Lack of foundation.

To the extent you can answer how





utilities would or would not act or how DOE would expect them to act, you can answer.

THE WITNESS: Again, I can't answer for DOE, but I can say we have no knowledge of utilities in the past that have had things disallowed from rate cases because of imprudent actions, so I can't speak to how a specific utility would have acted.

BY MR. WINE:

Q. Why can't you speak for DOE on that?

MR. GARDNER: I will object because it's beyond the scope of the 30(b)(6) deposition. That's exactly why he can't speak to it.

MR. WINE: Topic 5 is the government's understanding of cost associated with temporary fuel storage up to July 13, 1999. And I asked him whether DOE had an understanding as to whether or not a utility would act in other than a prudent and reasonable fashion in dealing with those costs associated with temporary fuel storage.





MR. GARDNER: And I completely agree that is the question you asked, and that is what the 30(b)(6) deposition says. That question has nothing to do with the government's understanding of the costs incurred.

Whether those costs were reasonably incurred, unreasonably incurred, prudently incurred, I think you are going beyond the scope here. If you want to ask Mr. Zabransky questions in his personal capacity, you can notice his deposition for that purpose but --

MR. WINE: Are you offering him as a fact witness?

MR. GARDNER: No, not at all.

MR. WINE: Okay. You are not offering him as a fact witness?

MR. GARDNER: No. He is here to speak on behalf of DOE --

MR. WINE: You mentioned what I can notice him for and I want to know --

MR. GARDNER: I said you could have.





I'm not saying we would have agreed to it. In fact, you know Mr. Zabransky has been deposed on numerous occasions.

MR. WINE: I do. I am familiar with his testimony.

Why don't we take a break. I have to make a determination as to whether or not on the issues pertaining particularly to Topic 5 and others whether we want to seek some kind of word with the court as to whether we are able to get into the topics that we noticed and that we have asked questions but the witness has been instructed not to answer pursuant to the instructions of counsel on work product basis.

Why don't we take an hour to break for lunch and come back. We will --

(A short recess was taken.)

BY MR. WINE:

Q. Mr. Zabransky, let's close the loop on the topics, and then I have some brief housekeeping work. And then I think I can certainly get you out of here in time for your

meeting.
Topic 6 on which you have been designated pertains to the government's estimated liabilities particularly to Boston Edison due to the government's failure to accept SNF. And then that topic is limited to July 13, 1999 and with respect to the Pilgrim Plant exclusively.
I assume, perhaps unfairly based on your prior testimony with respect on Topic 5, that the analysis performed reviewed with respect to this topic was secured through the database that you had previously testified on Topic 5 developed in the mid 1990s; is that correct?
A. Yes.
Q. So with respect to specific estimates pertaining to Pilgrim, that was an exercise you engaged in at the advice and request of counsel?
A. Correct.
Q. Okay. At any time did the





government consider in this analysis what impact the breach or the government's -- strike the word "breach."
The government's failure to collect spent nuclear fuel by January 31, 1998 would have on Boston Edison's sale of its Pilgrim Plant in 1999?
MR. GARDNER: I will object and instruct the witness not to answer the question to the extent that any analysis they did would have been at the direction of counsel.
Now, if you can answer the question without divulging attorney-client confidences or disclosing work product, meaning work done at the direction of counsel, then you may answer.
THE WITNESS: And to the extent of what we considered or didn't consider, that was discussed and included at the direction of counsel.
MR. GARDNER: Then I will instruct you not to answer.





MR. WINE: I understand your position.
BY MR. WINE:
Q. Likewise, any calculations, the content of the analysis that you performed or any conclusions that you drew therefrom was done in coordination with and in consultation with counsel?
A. Correct.
Q. So you are going to follow your counsel's advice and decline to answer any questions that I may propound to you today on those subjects?
A. If my lawyer advises me, I will follow his advice.
Q. Okay. I understand your position.
Let's go back a bit. And with respect to the assignment topics that we began today with, particularly 2 B, D, and E. You talk about the Department of Energy's views on the terms and requirements of the standard contract as they relate to the assignment





provision.
What efforts did you undertake to determine what other government agencies may have thought with respect to that topic?
A. My efforts were focused on the Department of Energy's views with respect to those issues related to the assignment provision and the promulgation of the contract.
Q. Why did you limit yourself strictly to the Department of Energy's views?
A. That was the guidance I was provided by counsel.
Q. Okay. Did you review Judge Lettow's decision offered on February 26, 2007 regarding the scope of today's deposition?
A. I reviewed it. I had it explained to me by counsel.
Q. But you didn't receive a copy?
A. I'm sure I received a copy.
MR. WINE: Let's mark that as an exhibit.
(Deposition Exhibit No. 5 was marked

for identification.)

BY MR. WINE:

Q. Mr. Zabransky, you have been handed a document marked Zabransky Exhibit 5 for purposes of today's deposition. And I will describe it for the record and ask you to review it.

It is the opinion issued by the court on February 26, 2007 in this matter. And it appears in published form at 2007 WL 610885.

I will ask you to review that briefly, and then I'm going asking you some questions about the document.

MR. GARDNER: May I make a suggestion just for the record to expedite this.

Do you want him to read the portion about the Mattia deposition?

MR. WINE: No. I don't.

You can actually focus, and I apologize because this is the first time like Mr. Gardner I have seen the Westlaw version of





this document.

BY MR. WINE:

Q. Focus on page 9, and I'm going to ask you specifically with respect to Topic 2, the paragraph that begins 2 C. And Topic 2 E.

A. 2 C and 2 E.

Q. You see where that is on page 9?

A. I do.

Q. You can focus just again on those two paragraphs ending on the top right-hand column, page 9.

A. Okay.

Q. Judge Lettow specifically says that in -- on page 9 of the decision, Topic 2 D has a parallel to Topic 2 B and that Boston Edison seeks to gather information on the government's views of the terms and requirements of the standard contract.

And then the decision goes on to limit the deposition that I am taking of you here today regarding the assignment provision on the standard contract. And similarly on





Topic 2 E, the judge references "Boston Edison wishes to exam governmental witnesses as to the assignment provision of the standard contract."

And again, as I have said earlier today, we view Topics 2 B, D, and E as somewhat if not totally interrelated to one another as narrowed by the court. And in each instance as they are described here in the court's opinion, the court references the fact that we, Boston Edison, seeks the government's view or governmental witnesses on these topics.

I will tell you furthermore for the record that you are the sole government witness that has been designated by the Department of Justice on these topics. And so what I want to delve into a bit further with you, and perhaps counsel can interject as he sees fit, is to why you limited your review of material and your discussions with individuals solely to DOE and did not talk to any other governmental agencies, representatives, review any other documents that were not strictly from the DOE?





MR. GARDNER: Before you answer that, just since we are making a record, the very first sentence of Topic 2 C on page 9 says "Topic 2 C relates to the comments DOE received during the notice and common period from the standard contract."

If you go up to the next column on page 9, correlatively Topic 2 F focuses on expectations of Boston Edison and DOE at the time the two parties signed the standard contract in 1983.

MR. WINE: Right. And I am talking about 2 B, D, E --

MR. GARDNER: I understand.

MR. WINE: -- for purposes of this deposition.

MR. GARDNER: And in fact, if you look at the notice of deposition, it says "No. 2, standard contract entered into between the Department of Energy on behalf of the United States and Boston Edison Company," dated June 17, 1983.

So if we are making a record, let's make a record. But I don't think Mr. Zabransky is in a position to interpret the court's order.

BY MR. WINE:

Q. Is it fair to say, Mr. Zabransky, you did not discuss with any witness outside the Department of Energy any issues pertaining to the formulation of the assignment provision within the standard contract?

A. That's correct.

Q. You spoke to no representatives of Congressional staff that were involved in this process in the 1983, 1982 time period?

MR. GARDNER: Objection. Vague as to "this process."

If you understand, you can answer.

BY MR. WINE:

Q. Do you understand my question or do you need me to clarify, Mr. Zabransky?

A. Can you clarify.

Q. Did you talk to any members of





Congressional staff regarding Congress's inclusion of an assignment provision in the NWPA?

A. I did not.

Q. Why did you not do that?

MR. GARDNER: Objection. Beyond the scope of the 30(b)(6) deposition topics.

You can answer.

THE WITNESS: It wasn't -- counsel wasn't deemed necessary to prepare for the deposition.

BY MR. WINE:

Q. Because counsel for the government instructed you to limit yourself solely to the Department of Energy?

MR. GARDNER: Objection. Mischaracterizes Mr. Zabransky's previous testimony.

You can answer.

THE WITNESS: The interpretation was these were DOE's views.

BY MR. WINE:





Q. And did counsel for the Department of Justice instruct you to focus solely on the Department of Energy?

MR. GARDNER: I object to the extent it calls for attorney-client communications. I will instruct the witness not to answer.

BY MR. WINE:

Q. Okay. Did counsel for the Department of Justice provide you with any access to individuals at the NRC or any other agencies to prepare for your deposition here today?

A. No.

Q. I believe you testified earlier that the NRC is the agency primarily responsible for regulating and overseeing the nuclear industry; is that correct?

A. That's what I said, yes.

Q. Would it therefore be fair to say that the NRC may have information that is relevant to the topics for which you have been designated as a witness here today?





MR. GARDNER: Objection. Vague. Calls for speculation. Objection. Lack of foundation.

I will leave it at that.

THE WITNESS: I have no reason to believe the NRC has anything to do with the contracts based upon my experience over the last ten years.

BY MR. WINE:

Q. How about the assignment of rights and/or claims -- of rights under the standard contract -- NRC? You don't have any reason to believe NRC would have any information about that?

MR. GARDNER: Objection. Calls for speculation. Objection. Lack of foundation.

THE WITNESS: And based upon what I have learned from working with them over the last 20 years, I don't think they have concerned themselves with that.

BY MR. WINE:

Q. Do you know who Bob Wood is?

A. No.
Q. Never worked with him over at the NRC?
A. No.
Q. Don't know whether he has any views on the assignment provision of the standard contract?
MR. GARDNER: Objection. Calls for speculation. Lack of foundation. Objection. Relevance.
THE WITNESS: Don't know the man.
BY MR. WINE:
Q. Okay. I asked you a series of questions regarding foreseeability of the sale of a nuclear power plant in the 1983 time period, particularly as it relates to the assignment provision of the standard contract.
What is your view as to whether or not the NRC would have relevant information regarding such subject matter?
MR. GARDNER: Objection. Lack of foundation. Objection. Calls for speculation.





You can answer if you can.
THE WITNESS: I have no view.
BY MR. WINE:
Q. Whatsoever?
A. Whatsoever.
Q. Do you know whether the NRC licenses nuclear power plants or not?
MR. GARDNER: Objection. Beyond the scope of the 30(b)(6) notice of deposition.
You can answer.
And lack of foundation.
THE WITNESS: License of the power plants, yes.
BY MR. WINE:
Q. They have -- the license process has -- is the license process implicated in any way, shape or form during the sale of a nuclear power plant?
MR. GARDNER: Objection. Lack of foundation. Calls for speculation. Beyond the scope of the 30(b)(6) notice.
You can answer if you can.





THE WITNESS: From a personal knowledge? Yes, I presume you have to go to the NRC and transfer a license. But I don't know that process.
BY MR. WINE:
Q. What is DOE's knowledge of the interplay between the agency and the NRC with respect to the assignment, or the sale of a plant from one owner to another?
MR. GARDNER: Objection. Assumes facts not in evidence. Assumes that there is interplay between two agencies.
BY MR. WINE:
Q. Tell me. Is there?
A. I have seen none since I was at the DOE.
Q. Do you know if anyone within the NRC has any views as to the terms and requirements of the standard contract with particular reference to the assignment of -- the assignment provision contained therein?
MR. GARDNER: Objection. Calls for





speculation. Lack of foundation.
Are you asking about at any time any employee at the NRC has any views of the standard contract?
MR. WINE: Yes.
MR. GARDNER: Objection. Overbroad.
Answer if you can.
THE WITNESS: I can't answer. I don't know.
BY MR. WINE:
Q. You don't know also because you didn't endeavor to find out, did you?
A. No, I did not.
Q. You made no effort at all to find out what other agency within the United States government knows with respect to the assignment of the standard contract, correct?
MR. GARDNER: Objection. Assumes facts not in evidence.
BY MR. WINE:
Q. Correct?
A. I think I already said I limited our

discussions to what DOE thought.
Q. And made no effort whatsoever to look outside the Department of Energy, correct?
MR. GARDNER: Objection. Asked and answered. Objection. Argumentative.
He has answered your question five times.
BY MR. WINE:
Q. Answer it again.
A. I think I said I limited our discussions to what DOE thought.
Q. Now, let's see. Let's turn to the standard contract. It was marked previously as Exhibit 2; is that correct?
A. Sure.
Q. Turn to page 26. Article 14, the assignment provision of the standard contract reads "The rights and duties of the purchaser may be assignable with transfer of title to the SNF and/or HLW involved, provided, however, that notice of any such transfer shall be made





to DOE within 90 days of transfer."
I want to walk through with you the contents of this clause, Mr. Zabransky.
What do you understand "purchaser" to mean within the clause of this contract?
A. As defined in the contract, purchaser, I think it's defined in the beginning of the contract.
MR. GARDNER: Object. Best evidence objection to the extent it calls for a legal conclusion.
You can answer.
BY MR. WINE:
Q. What is your understanding what purchaser means?
A. Purchaser is -- my understanding is, again, the utility, the entity that signed the contract and has the high-level waste.
Q. And in this instance, that would be Boston Edison, correct?
A. In this contract, it's Boston Edison.





Q. So when we see purchaser in Article 14 of the contract, purchaser here is synonymous was Boston Edison, correct?
A. I believe it is.
Q. Okay. Now, the clause begins "The rights and duties."
Can you tell me what rights and duties this refers to?
MR. GARDNER: Object to the extent it calls for a legal conclusion.
THE WITNESS: Again, simplistically without going into legal conclusions, the rights are to ultimately have the fuel disposed of and the duties are to meet the other terms of the contract to pay all the fees.
BY MR. WINE:
Q. Okay. So all of the rights of the standard contract?
MR. GARDNER: Objection. Legal conclusion. Objection. Vague.
BY MR. WINE:
Q. Does it enumerate specific rights?





Delineate any differences in some rights versus others? Or does it talk about all rights?
MR. GARDNER: Objection. Compound. Calls for a legal conclusion.
You can answer.
THE WITNESS: Again, I don't have a legal analysis of this. I think that in this case, it says rights and duties. That's what it says. I would have to consult with counsel for further discussion.
BY MR. WINE:
Q. As a contracting officer of the United States government Department of Energy, you have no understanding of what the term the "rights and duties" contained in this article of the contract means?
MR. GARDNER: Objection. Mischaracterizes Mr. Zabransky's previous testimony. Objection. Calls for a legal conclusion.
THE WITNESS: Again, if I was faced with that question, I would consult with

counsel.

BY MR. WINE:

Q. Okay. Well, you're charged here today with giving your understanding of the this clause on behalf of the Department of Energy. Do you need to consult with counsel and go out in the hall and determine what rights and duties means to come in and answer my questions?

And if so, go ahead and do it.

MR. GARDNER: You don't have to obey that instruction at all.

If you have an understanding, Mr. Zabransky, of what the rights and duties mean, you can answer that question. To the extent it calls for a legal conclusion, that is the objection we made.

THE WITNESS: Again, my understanding is limited to my personal understanding at this point with this provision and whether it's all the rights and duties or a subset would require further discussion with





counsel.

BY MR. WINE:

Q. Did you talk to Mr. Morgan about what rights and duties were contemplated by the assignment provision within the standard contract when you talked to him?

A. We talked about the provision, and as I think I recall testifying earlier, he had very little recollection of it.

Q. Of the provision itself?

A. Of the provision itself.

Q. Did you provide him with a copy of the contract so he could look at the provision specifically?

A. I did not.

Q. Did you ask counsel to do that?

A. I don't know if counsel did or didn't. I presume they did.

Q. And I want to be very clear here.

The purpose of today's deposition isn't to get your personal understanding as to this clause or what any particular complaints





of this clause means. You are here sitting today as the sole representative of the Department of Energy to tell me what this clause means.

So I want to be very clear. You understand that to be the case, correct, Mr. Zabransky?

A. It was DOE's understanding at the time the contract was entered into, yes.

Q. What? What was DOE's understanding?

A. I am here to tell you about what DOE was thinking when they created this contract.

Q. So when DOE printed this contract, provided to utilities including Boston Edison to sign, what did it understand the rights and duties articulated in the assignment clause to mean?

MR. GARDNER: I object to the extent it calls for a legal conclusion.

You can answer to the extent you can.

THE WITNESS: Again, with a caveat





that we are talking about what DOE thought when it entered into the contract, I found nothing to let me answer the question with a affirmative answer.

BY MR. WINE:

Q. So you have no idea sitting here today. DOE has no understanding what rights and duties this clause refers to?

MR. GARDNER: At the time of contract formation?

MR. WINE: Yes.

MR. GARDNER: You can answer.

THE WITNESS: And my discussions with those involved led me to no information to that extent.

BY MR. WINE:

Q. Okay. And so DOE promulgated publishing the federal register ultimately took comments on and published a final contract which it then executed containing a provision which you're unable to describe to me what it means?

MR. GARDNER: Objection. Argumentative. Objection. Compound.

Mr. Zabransky told you it's from the Nuclear Waste Policy Act.

MR. WINE: Now I would like to hear from him as opposed to counsel.

MR. GARDNER: Objection. He answered your question five times.

THE WITNESS: Again, in my discussions with you earlier today was and my discussions with Mr. Morgan and the others, they took this language out of the Nuclear Waste Policy Act and they put it in the contract.

BY MR. WINE:

Q. Let me drill down even further about your conversation with Mr. Morgan. I wish he was here so I could ask him.

Did you ever say, Mr. Morgan, Bob, when the assignment clause says the rights and duties of the purchaser, what does that mean or what did we mean in 1983?





Did you ask him that question?

MR. GARDNER: Objection. Asked and answered.

Do it again.

THE WITNESS: And again, as I answered you earlier, when I asked Mr. Morgan what he remembered of this provision and why it was there, he had little recollection other than it was in the act and they put it in the contract.

BY MR. WINE:

Q. You didn't specifically, however, read him this provision and ask him specific questions about its content, did you?

MR. GARDNER: Objection. Asked and answered.

THE WITNESS: I believe we asked him why it was there and what he remembers about why it was put in and any discussion about it. And he had no recollection.

BY MR. WINE:

Q. But that's not what I asked you.





I asked you did you specifically read the assignment provision to Mr. Morgan and ask him specific questions about the terms contained within Article 14?

A. And my answer is once he told me he had no recollection of this provision other than the fact it was in the act, it didn't make a lot of sense to continue to ask him detailed questions about it.

Q. So based on that, there is no one that Boston Edison can go to today to determine what rights and duties of the purchaser means from the Department of Energy.

Is that your position?

A. From the standpoint of 1983's development of the contract, I found nobody.

Q. Based on his personal experience as you described it here to me today, is it fair to say that Mr. Morgan has more personal experience regarding this contract and the contents thereof than you do?

MR. GARDNER: Objection. Asked and





answered multiple times now. Objection. Calls for speculation.

THE WITNESS: With respect to the promulgation of the contract?

BY MR. WINE:

Q. Uh-huh.

A. Absolutely.

Q. And as far as sitting here, you on behalf of the Department of Energy looking at this clause here today, you can't point me to anything within this clause that limits rights or duties of a purchaser for purposes of assignment, can you?

MR. GARDNER: Objection. Calls for a legal conclusion.

BY MR. WINE:

Q. Can you point me to anything within this clause?

MR. GARDNER: Objection. The document speaks for itself.

THE WITNESS: The clause is what the clause is.

BY MR. WINE:

Q. Do you think the clause is pretty clear or is it ambiguous?

MR. GARDNER: Objection. Calls for a legal conclusion. The document speaks for itself.

THE WITNESS: The clause is the clause. Obviously since we are having all these questions, it must be, in your opinion, ambiguous but --

BY MR. WINE:

Q. No. I want DOE's -- not opinion. I want DOE's testimony as to whether or not this clause is ambiguous. I don't want your personal belief or understanding. And I don't want you to parrot to me what you believe my personal belief is.

I want to know and I am entitled to know what DOE's position is regarding this clause, Mr. Zabransky.

MR. GARDNER: Objection. Calls for a legal conclusion.





THE WITNESS: With respect to DOE's position as of 1983, when the contract was promulgated?

BY MR. WINE:

Q. Uh-huh.

A. I have answered to the best of my ability as I found nobody who could give me any further information on this provision.

Q. Okay. With respect to duties of the purchaser being assignable to a third party or someone other than the purchaser, tell me how that portion of this clause works.

MR. GARDNER: Objection. Vague.

THE WITNESS: I'm not sure what you are asking me and what context.

BY MR. WINE:

Q. Well, at the time of drafting. How did the assignment of duties of the purchaser work?

If I was a purchaser -- I'm Boston Edison and I assigned my duties under the standard contract to a reprocessing center, as





you mentioned earlier, how would that work?

What duties would the reprocessing center have?

MR. GARDNER: Objection. Vague. Calls for a legal opinion. Objection. Calls for speculation.

THE WITNESS: Again, you are asking me about those issues at the time of contract formulation?

BY MR. WINE:

Q. 1983. How did this work?

MR. GARDNER: Same objections.

THE WITNESS: And I will give you the same response I've been giving you is that my discussions with those involved with the contract formulation no one had any recollection of this specific provision other than the fact it was put in the contract because it was under the Nuclear Waste Policy Act.

BY MR. WINE:

Q. You had mentioned the potential of a





reprocessing facility is one of the things Mr. Morgan mentioned this assignment clause may relate to.

Please, clarify how I characterized your prior testimony with respect to assignment to a reprocessing-related facility earlier.

MR. GARDNER: Objection. Form. Objection. Vague.

I don't even understand the question.

THE WITNESS: You asked me, I think, was what kind of things could people have been thinking of. And in our discussions, one of the things that was discussed was well, if they wanted to reprocess materials, this would allow them to reprocess materials.

BY MR. WINE:

Q. So you could assign your rights and duties to a reprocessor, correct? If I was a purchaser of a plant under that scenario?

MR. GARDNER: Objection. Calls for a legal conclusion. Objection. Hypothetical.

Objection. Calls for speculation.

THE WITNESS: Again, you have added in as purchaser of plant. That was not part of the discussion.

BY MR. WINE:

Q. Did I say -- if I said purchaser of plant, I'm sorry. But the clause says purchaser.

A. You didn't say that.

Q. Then let me clarify.

I'm Boston Edison. You mentioned reprocessing facility as one of the ways that this assignment clause could work. That I could assign my spent nuclear fuel to a reprocessing facility, correct?

A. That's what Mr. Morgan mentioned was a potential, yes.

Q. Had you thought about that possibility before you talked to Mr. Morgan?

A. Yes.

Q. And in what context had you thought about that?





MR. GARDNER: Objection. Beyond the scope of the 30(b)(6) deposition. Objection. Relevance.

THE WITNESS: I mean -- what do you mean, in what scope?

BY MR. WINE:

Q. You said that this wasn't uniquely from Mr. Morgan. You had thought about this yourself as well.

A. Not in 1983.

Q. Okay. When did you think about it?

A. Much later than that.

Q. When?

A. I don't know.

MR. GARDNER: Objection. Relevance.

BY MR. WINE:

Q. Okay. So assume Boston Edison assigned or transfers title of SNF to -- or high-level waste to a reprocessing center. As I read this clause, would the reprocessing center have the duty to pay fees under the contract?





MR. GARDNER: Objection. Calls for a legal conclusion. Objection. Hypothetical. Objection. Beyond the scope of the 30(b)(6) notice of deposition.

You can answer.

THE WITNESS: Again, without speaking -- again, I'm confused now as to what time frame we are talking about.

BY MR. WINE:

Q. 1983.

A. And whose opinion we're talking about.

Q. No. Not talking about anybody's opinion. We're talking about DOE's position in 1983 when it provided this contract to utilities including Boston Edison to sign and enter into.

A. In that case, again, the answer I have given you is no one had any great recollection of this provision in any detail. So I have no information to give you on that.

Q. I think we focused before on rights,





whether it was all or some of the rights under the standard contract that were assignable with transfer of title SNF or high-level waste.

What about duties? Which duties would transfer?

MR. GARDNER: Objection. Calls for a legal conclusion.

THE WITNESS: And you are asking me again what was in the minds of the drafters in 1983?

BY MR. WINE:

Q. What was DOE's position in 1983 as to what duties were transferred?

MR. GARDNER: Objection. Calls for a legal conclusion.

THE WITNESS: At this point, based upon what I was able to ascertain from those involved, I have no information on that.

BY MR. WINE:

Q. DOE has no position on that?

MR. GARDNER: As of 1983?

BY MR. WINE:

Q. Yes. The purpose of your deposition here today. DOE has no position?
A. I was able to obtain no information on that topic.
Q. So DOE has no position?
A. Yes.
Q. And DOE has no position as to which rights purchasers may assign as to transfer of title of SNF and high-level waste under this contract?
MR. GARDNER: Objection. Asked and answered. It calls for a legal conclusion. Answer again.
THE WITNESS: From what I could ascertain from Mr. Morgan, no.
BY MR. WINE:
Q. I think you previously testified that the first time you thought about this clause in the context of the sale of the plant was in the context of the Boston Edison sale to Entergy.
Is that an accurate statement of





your prior testimony?
MR. GARDNER: Objection. Mischaracterizes Mr. Zabransky's previous testimony.
THE WITNESS: To the extent that was the first sale, I think that is the first time, yes.
BY MR. WINE:
Q. Are you aware of any objection by the Department of Energy to the use of this clause for purposes of the sale of the plant by Boston Edison to Entergy?
A. I'm not aware of any, no.
Q. Anyone write anything that said they are using the clause the wrong way?
A. Not that I'm aware of, no.
Q. Anyone write back to Boston Edison or Entergy and say you are not allowed to transfer the contract pursuant to Article 14 of the contract?
A. Not that I am aware of, no.
Q. You are aware that Boston Edison and





Entergy invoked Article 14 in the paperwork they provided the Department of Energy, correct?
A. I'm aware of the notice they gave us. I didn't read it in great detail.
Q. Do you want to look at it to assuage yourself?
A. Looks like assumed Article 14.
Q. And again, the Department of Energy took no position with respect to this assignment?
MR. GARDNER: Objection. Mischaracterizes Mr. Zabransky's testimony.
THE WITNESS: I'm aware of no correspondence or no writings to that effect.
BY MR. WINE:
Q. Okay. Were there any meetings or other kinds of conversations regarding the use of Article 14 for these purposes that you participated in or aware of?
A. Can you be more clear? For these purposes?





Q. For purposes of the sale of a plant, Pilgrim Plant?
A. Pilgrim Plant? Not that I participated in.
Q. Okay. Did you make any effort to determine whether that was the case in preparation for your testimony here today?
A. Knowing everybody was involved at the time, I'm not aware of any meetings. So I don't think there were any meetings.
Q. Okay. Phone calls?
A. Other than the fact that I recalled the notice came in and it was provided to our office eventually and to others.
MR. WINE: Give me five minutes.
(A short recess was taken.)
MR. WINE: Mr. Zabransky, at this time I do not have any further questions for you. However, I will state for the record that Boston Edison is going to reserve its rights to either recall you with respect to areas that we were not satisfied either as to your

preparation or as to the extent of the testimony that you offered and/or to reserve the right to seek testimony from other government witnesses who are in a better position to answer the questions that Boston Edison has been given the right to ask the government pursuant to the court's order.

So I am going to leave open for purposes of the transcript your deposition testimony here today and just make the record that we reserve our rights to seek appropriate relief from the court and hope to resolve the matter in direct dealings with the Department of Justice.

MR. GARDNER: For the record, we would object to holding the record open. We believe Mr. Zabransky has satisfied his obligations as consistent with Rule 30(b)(6) notice and the court's order limiting the scope of it. We certainly object to calling other government witnesses. Today is the last day of discovery. And we do reserve the right to read





and sign obviously.

But now, having said that, Mr. Zabransky, I have a few questions for you.

EXAMINATION BY COUNSEL FOR DEFENDANT

BY MR. GARDNER:

Q. I just want to make sure for the record we have this clear.

Did you review any parts of the administrative record in preparation for your deposition today?

A. Yes, I did.

Q. Just so we have an understanding, how big is the administrative record in this case, if you know?

A. I recall from what I seen it's a binder about four or five, six inches thick.

Q. Okay. And you reviewed parts of that administrative record in preparation for your deposition today?

A. Yes.

Q. And Mr. Wine asked you some questions about whether you spoke to the NRC





about the standard contract. And I just had a foundational question for you.

Mr. Zabransky, what role does the NRC have with respect to the administration of the standard contract?

A. My experience has been since I have been at DOE since '94, they have no role.

MR. GARDNER: I have no further questions.

FURTHER EXAMINATION BY COUNSEL FOR PLAINTIFF BOSTON EDISON COMPANY

BY MR. WINE:

Q. One quick follow-up by way of Mr. Gardner's question.

What portions of the administrative record did you review in preparation for your testimony here today, Mr. Zabransky?

A. We reviewed many of the -- a lot of letters that came from utilities commenting on the contract that counsel had identified as being somewhat responsive to the topics of the





deposition.

Q. And I take it that the Exhibit 1, one of the comments that was provided to the Department of Energy during the notice and comment period was not one of the letters that you looked at based on your prior testimony?

A. You mean the --

Q. Cincinnati, Exhibit 3?

A. That was not one that was identified, no.

Q. And is it fair to say that portions of the administrative record that you did review were ones that were flagged or otherwise identified by counsel?

A. Yes.

Q. And that you performed no analysis to the administrative record on your own?

MR. GARDNER: Objection. Vague as to "analysis."

BY MR. WINE:

Q. You provided no review of the administrative record on your own?

A. I did not review the record in totality. I reviewed sections that were given to me by counsel.

MR. WINE: No further questions.

(Whereupon, the proceeding was concluded at 1:56 p.m.)





ACKNOWLEDGMENT OF DEPONENT

I, DAVID ZABRANSKY, do hereby acknowledge I have read and examined the foregoing pages of testimony, and the same is a true, correct and complete transcription of the testimony given by me, and any changes or corrections, if any, appear in the attached errata sheet signed by me.

___________ ________________________________

Date DAVID ZABRANSKY





CERTIFICATE OF NOTARY PUBLIC

I, Bonnie L. Russo, the officer before whom the foregoing deposition was taken, do hereby certify that the witness whose testimony appears in the foregoing deposition was duly sworn by me; that the testimony of said witness was taken by me in shorthand and thereafter reduced to computerized transcription under my direction; that said deposition is a true record of the testimony given by said witness; that I am neither counsel for, related to, nor employed by any of the parties to the action in which this deposition was taken; and further, that I am not a relative or employee of any attorney or counsel employed by the parties hereto, nor financially or otherwise interested in the outcome of the action.

____________________________

Notary Public in and for

the District of Columbia

My Commission expires: May 14, 2010





Mr. Joshua Gardner
1100 L Street, N.W.
Room 12070
Washington, D.C. 20530

IN RE: Boston Edison vs. U.S.

Dear Mr. Gardner:

Enclosed please find your copy of the deposition of DAVID ZABRANSKY along with the original signature page. As agreed, you will be responsible for contacting the witness regarding reading and signing the transcript.

Within 30 days of receipt, please forward errata sheet and original signature page signed to opposing counsel.

If you would like to change this procedure or if you have any questions, please do not hesitate to call.

Thank you.

Yours,

Bonnie L. Russo
Reporter/Notary

DEPOSITION ERRATA SHEET

CASE CAPTION: Boston Edison vs. U.S.
DEPONENT: David Zabransky
DEPOSITION DATE: April 5, 2007

I have read the entire transcript of my Deposition taken in the captioned matter or the same has been read to me. I request that the changes noted on the following errata sheet be entered upon the record for the reasons indicated. I have signed my name to the Errata Sheet and the appropriate Certificate and authorize you to attach both to the original transcript.

PAGE/LINE CHANGE REASON

___________________________________________
___________________________________________
___________________________________________
___________________________________________
___________________________________________
___________________________________________
___________________________________________
___________________________________________
___________________________________________
___________________________________________
___________________________________________
___________________________________________
___________________________________________
___________________________________________
___________________________________________
___________________________________________
___________________________________________
___________________________________________
___________________________________________
___________________________________________
___________________________________________

SIGNATURE_____________________DATE_________
David Zabransky

0

**01** [43:3]
**0183** [43:3]
**01-83** [43:3]
**03** [1:]
**032626c** [1:]
**03-2626c** [1:]

1

**1** [4:8] [40:5,10] [57:18] [91:14] [107:15] [126:11] [216:2]
**1:56** [217:6]
**10222** [123:17]
**1100** [2:14] [3:15] [220:]
**12** [43:6,7,15] [45:10] [147:2]
**12070** [220:2]
**1227** [45:10]
**12-27** [45:10]
**1262** [43:7]
**12-62** [43:7]
**1265** [147:2]
**12-65** [147:2]
**13** [4:14] [34:19] [108:9] [123:10] [146:22] [148:20] [149:8] [152:20] [160:9,18] [161:1,17] [162:4] [163:8,15,20] [166:5,6,18] [167:10,16] [169:17] [170:17] [173:7]
**14** [45:8] [47:2] [77:2] [101:6] [189:17] [191:2] [199:4] [210:19] [211:1,8,19] [219:21]
**146** [4:14]
**16** [108:13]
**17** [41:7] [43:4] [91:18] [110:3] [180:22]
**176** [4:15]
**18** [41:19]
**180239** [1:22]
**1825** [3:6]
**19** [59:18]
**1980s** [28:2]
**1982** [181:14]
**1983** [41:7] [43:4] [49:22] [51:12] [52:3,13] [55:11] [56:12] [59:20] [62:10,15] [64:7] [65:21] [66:22] [67:13] [68:2,20] [69:3] [72:12] [74:22] [77:18,20] [81:15,18,22] [82:3,15] [85:1,6] [91:18,21] [93:22] [95:6,20] [96:19] [98:9] [99:3] [103:12] [104:3] [106:1,2] [110:3] [112:18] [113:20] [114:14,16] [115:13] [118:1] [119:2] [120:6] [121:13] [125:10] [133:7] [180:11,22] [181:14] [185:15] [197:22] [202:2] [203:11] [206:10] [207:10,15] [208:10,12,21]
**1983s** [199:15]
**1989** [25:17] [26:3]
**1990s** [173:14]
**1995** [134:3] [152:8]
**1998** [15:18] [20:5] [27:20] [29:1] [34:7] [110:15] [112:16] [113:17] [115:9] [116:2,12,22] [117:6] [120:20] [123:6,15] [124:20] [125:11] [133:12,22] [134:11] [138:21] [141:19] [157:1] [166:5,18] [167:3,10,20] [168:22] [174:5]
**1999** [34:16,20] [35:9] [37:22] [38:2] [108:9] [123:10] [133:7] [139:17] [140:8] [142:21] [144:10,14] [145:22] [146:22] [148:20] [149:8] [151:5,7] [152:20] [160:9,18] [161:1,17] [162:4,10] [163:8,16] [166:6,18] [167:10,16] [169:1,17] [170:18] [173:7] [174:7]
**1st** [43:6,15] [147:2]

2

**2** [4:11] [35:10] [36:11,15,16] [39:19] [41:1,2,16,21,22] [42:16,21] [58:6,7,9] [68:15] [71:6] [91:13,15] [100:11,12,14,21,22] [105:10] [107:13,22] [108:16,19] [113:3] [122:12] [175:19] [178:4,5,6,14,15] [179:1,5] [180:3,4,8,13,19] [189:15]
**20** [184:19]
**20,000** [93:9]
**20,000something** [93:9]
**20,000-something** [93:9]
**20006** [3:7]
**2002** [10:9] [11:3,5,7] [41:19]
**2007** [1:15] [2:6] [108:5] [176:14] [177:9,10] [:]
**2010** [219:21]
**202** [3:8,17]
**2023070226** [3:17]
**202-307-0226** [3:17]
**2024202235** [3:8]
**202-420-2235** [3:8]
**20530** [3:16] [220:]
**214** [4:4]
**215** [4:3]
**25** [97:12]
**26** [45:9] [108:5] [176:14] [177:9] [189:17]

3

**3** [4:12] [84:16,21] [86:8,11] [87:10] [216:8]
**30** [4:10] [5:18] [11:19] [25:4] [26:22] [31:2] [32:14] [33:22] [34:13] [35:13] [39:16] [40:13] [57:17] [67:22] [68:13] [73:22] [75:2,19] [76:5,14] [80:15] [81:3,20] [82:5] [97:2,12] [99:7,17] [101:9,20] [103:17] [104:8,19] [105:3] [108:15] [110:19] [111:14] [112:22] [113:2] [118:17] [120:22] [123:21] [124:10] [137:1,20] [150:3] [159:8] [160:4] [167:7] [168:9,19] [169:5,19] [170:12] [171:3] [182:7] [186:9,21] [206:2] [207:3] [213:18] [220:12]
**307** [3:17]
**31** [15:18] [20:5] [34:7] [110:15] [115:9] [116:2,11] [120:19] [123:6,15] [124:19] [133:12,22] [134:11] [138:21] [141:19] [166:18] [167:3,10,20] [174:5]

4

**4** [4:14] [40:14] [80:21] [85:1,6] [146:16,20]
**40** [4:8] [31:2]
**42** [4:11]
**420** [3:8]
**44368** [43:3]
**48** [85:6]

5

**5** [1:15] [2:6] [4:3,15] [11:3] [33:21] [35:12] [36:6,7] [100:12] [101:1] [123:1,2,17] [126:1,7,14] [139:22] [140:2,3] [160:19] [170:15] [172:8] [173:10,14] [176:22] [177:4] [:]
**5458** [85:6]
**5th** [11:5]

6

**6** [4:10] [5:18] [11:19] [25:4] [26:22] [32:14] [33:22] [34:13] [35:8,13] [39:16] [40:13] [57:17] [67:22] [68:13] [73:22] [75:2,19] [76:5,14] [80:15] [81:3,20] [82:5] [97:2] [99:7,17] [100:12] [101:1,9,20] [103:17] [104:8,19] [105:3] [108:8,15] [110:19] [111:14] [112:22] [113:2] [118:17] [120:22] [123:21] [124:10] [137:1,20] [139:22] [150:3] [159:8] [160:4,19] [167:7] [168:9,19] [169:5,19] [170:12] [171:3] [173:2] [182:7] [186:9,21] [206:2] [207:3] [213:18]
**610885** [177:10]
**65** [147:5,6]

7

**7** [4:14] [43:16]
**71399** [4:14]
**7-13-99** [4:14]

8

**8** [44:21] [84:15]
**80s** [144:4]
**83** [49:7,8,9,10] [51:17] [60:18] [61:10] [75:4] [97:6] [106:15] [144:7]
**84** [4:12]
**87** [25:20]
**89** [24:17] [25:19]

9

**9** [178:3,7,11,14] [180:3,8]
**9:00** [2:7]
**90** [190:1]
**90s** [133:13] [144:4]
**94** [215:7]
**95** [141:4] [149:11] [154:2] [162:8]
**961.3** [86:14]
**99** [1:4] [143:8] [148:11] [154:2]
**99447c** [1:4]
**99-447c** [1:4]

A

**a.m** [2:7]
**ability** [32:18,20] [202:7]
**able** [54:8] [55:6] [78:13] [143:1] [144:16] [172:10] [208:17] [209:3]
**absolutely** [154:16] [200:7]
**abundantly** [40:20]
**accept** [134:10] [173:6]
**acceptance** [9:6] [15:18] [16:2] [20:9] [37:11] [113:17] [114:8,12] [123:5] [124:8] [138:20] [160:2]
**accepting** [20:5] [34:6] [117:1] [133:11,22] [141:19]
**access** [128:22] [129:3] [183:10]
**account** [100:10]
**accurate** [40:4] [45:1] [209:22]
**accurately** [55:7]
**acknowledge** [218:2]
**acknowledgment** [218:1]
**act** [9:7] [17:12] [22:10,12] [57:21] [60:6] [75:12] [115:21] [123:22] [124:2,5,6] [169:1,10,14] [170:1,2,20] [197:4,13] [198:9] [199:7] [203:20]
**acted** [170:8]
**action** [219:12,17]
**actions** [170:7]

**actually** [32:12] [91:4] [108:8,19,22] [177:20]
**add** [121:10]
**added** [125:18] [205:2]
**additional** [86:22] [113:22] [120:18]
**addressed** [100:15]
**administration** [21:17] [69:15] [215:4]
**administrative** [52:17,20] [71:16] [78:7] [82:20] [83:5,11,19] [85:15] [87:12,21] [214:9,13,18] [215:15] [216:12,17,22]
**advice** [137:14] [138:10,14] [173:19] [175:11,15]
**advise** [40:19] [48:7]
**advised** [79:5]
**advises** [175:14]
**advisors** [159:15]
**affirmative** [196:4]
**again** [27:17] [28:18] [31:1] [32:4] [40:22] [45:20] [47:7] [48:21] [49:6,15] [50:9] [55:16,17] [64:10] [66:9] [82:19] [87:11] [91:20] [93:5] [96:3,13] [98:16] [112:14] [113:16] [121:2,20] [127:20] [137:21] [141:22] [143:17] [148:17] [149:6] [155:16] [156:16] [158:5] [169:9] [170:3] [178:9] [179:4] [189:10] [190:17] [191:11] [192:6,21] [193:18] [195:22] [197:9] [198:4,5] [203:7] [205:2] [207:6,7,18] [208:9] [209:13] [211:9]
**against** [165:2]
**agencies** [38:8] [176:3] [179:21] [183:11] [187:12]
**agency** [66:17] [150:21] [183:15] [187:7] [188:15]
**aggregate** [115:11] [121:8] [150:22] [151:1] [156:7]
**agnes** [75:4]
**ago** [5:10] [14:1] [95:4]
**agree** [114:9] [171:1]
**agreed** [26:7] [172:1] [220:10]
**ahead** [42:11] [125:14] [142:13] [143:5] [155:13] [193:10]
**allocations** [155:22] [156:15]
**allow** [5:11] [47:8] [50:10] [114:14] [204:15]
**allowed** [210:18]
**allowing** [165:9]
**allows** [49:1] [74:14]
**alluded** [126:21]
**along** [25:11] [95:12] [131:20] [220:]
**already** [32:1] [140:19] [188:22]
**alternative** [15:16] [20:3] [24:19] [34:4] [76:22]
**always** [30:3] [151:10]
**am** [8:19] [16:17] [25:6] [40:2] [44:7] [58:5] [67:12] [68:22] [83:3] [87:19] [100:5] [103:4] [104:11] [112:9] [126:19] [132:20,21] [134:12] [135:20] [140:2] [147:9] [160:21] [161:5] [163:18] [172:4] [178:20] [180:12] [195:11] [201:18] [210:21] [213:8] [219:11,14]
**ambiguities** [51:6]
**ambiguous** [201:3,10,14]
**amendments** [25:20]
**amount** [27:21] [76:18] [148:21,22] [166:10,20]
**analysis** [34:22] [37:17] [130:20] [132:15] [139:14] [140:14,18,20] [141:2,5] [152:12] [153:1,4] [156:17] [157:3,8] [158:2,12] [160:22] [161:14] [162:8,22] [163:2,11,12] [164:6,15] [173:11] [174:1,10] [175:5] [192:7] [216:16,19]
**analyzing** [72:10] [98:3] [163:15]
**and/or** [85:5] [158:14] [184:11] [189:21] [213:2]
**answer** [7:7] [32:17] [46:8] [47:6] [53:17,18] [54:16] [55:16] [58:20] [59:1] [61:19] [65:11,14] [66:8] [68:7] [70:5] [72:2] [93:4,18] [96:2] [97:4,11,19] [98:12] [99:9] [101:10] [104:10] [105:4] [106:5] [109:8,20] [110:21] [111:19] [112:12,13] [113:15] [115:20] [122:15] [124:14] [125:14] [127:19] [135:1] [137:9] [139:4] [142:13] [146:12] [150:6] [152:22] [153:3,13] [154:12] [159:9] [160:5] [161:6] [162:20] [163:7] [164:9,11] [165:5] [167:8] [169:8,22] [170:2,3] [172:13] [174:9,12,16,22] [175:11] [180:1] [181:17] [182:8,19] [183:6] [186:1,10,22] [188:7,8] [189:10] [190:12] [192:5] [193:8,15] [195:20] [196:3,4,12] [199:5] [207:5,18] [209:13] [213:5]
**answered** [55:15,18] [63:8] [92:7,9] [95:10] [119:5] [121:1] [122:19] [140:20] [189:6,7] [197:8] [198:3,6,16] [200:1] [202:6] [209:12]
**answering** [114:4]
**answers** [6:12]
**anticipate** [62:12,15] [63:3]
**anticipated** [63:5] [65:5,22]
**anticipation** [130:2]
**anybody** [106:16]
**anybodys** [207:13]
**anyone** [17:10] [23:9] [38:11,20] [67:13] [68:2] [69:13] [89:9] [91:7] [92:15] [132:5] [187:17] [210:14,17]
**anything** [7:10,16] [11:1,15] [19:15] [27:11] [28:9] [31:21] [52:22] [56:16] [69:8] [88:19] [111:8] [121:21] [130:2] [131:22] [132:20,22] [161:18] [164:3,12] [184:6] [200:11,17] [210:14]
**anytime** [133:7] [167:20]
**apart** [93:18] [127:6]
**apologize** [39:21] [177:21]
**apparently** [147:10]
**appear** [45:1] [107:22] [218:7]
**appearance** [38:16]
**appearances** [3:1]
**appears** [43:13] [45:5] [108:10] [177:10] [219:5]
**appreciate** [5:16] [37:3] [156:8]
**approaches** [24:20]
**appropriate** [7:2] [87:2] [213:11] [:6]
**approval** [96:22]
**april** [1:15] [2:6] [41:19] [77:20] [:]
**area** [12:13] [37:15] [60:22] [156:10]
**areas** [32:7] [144:1] [156:12] [212:21]
**argumentative** [189:6] [197:2]
**around** [14:12]
**article** [45:8] [47:2] [51:14] [77:2] [80:21] [101:5] [189:17] [191:1] [192:15] [199:4] [210:19] [211:1,8,19]
**articulate** [52:10] [53:3]
**articulated** [60:20] [100:20] [195:16]
**articulating** [137:13]
**ascertain** [208:17] [209:15]
**aside** [19:11] [30:20] [31:16] [44:4] [62:22] [66:20] [82:10] [88:9,10] [92:14] [100:11,22]
**ask** [6:20] [7:6] [8:15] [23:1] [37:4,8] [38:15] [39:15,18] [40:22] [43:9] [54:7,10] [57:12] [58:14] [59:3,9] [60:1,9,11,13] [62:13] [63:19,20] [67:19] [70:21] [71:1] [72:4,18] [73:1,13] [84:10] [85:8,21] [88:18] [89:1,4,7,8,12,15] [95:5,16] [98:13,15,20] [99:1] [100:17] [114:8,14] [122:8] [127:18] [128:10] [132:2,7] [147:3] [148:15] [151:22] [153:10] [155:8] [166:9] [171:10] [177:6,11] [178:4] [194:16] [197:18] [198:1,13] [199:3,8] [213:6]
**asked** [23:18] [26:11] [36:15] [51:9,10] [55:14] [63:7] [67:9] [71:14] [72:4] [88:19] [90:11] [92:6] [95:9,17] [98:16] [104:1,3] [112:5] [113:8,10,14] [119:4] [121:1] [122:18] [128:4] [132:5] [135:2] [138:7] [141:22] [142:3] [148:3] [151:11] [158:3] [170:18] [171:2] [172:12] [185:13] [189:5] [198:2,6,15,17,22] [199:1,22] [204:11] [209:11] [214:21]
**asking** [35:20] [48:21] [51:12] [57:22] [58:14,16] [59:12] [60:7] [67:13] [68:1,5] [101:22] [112:9] [114:12] [140:2] [144:17] [159:16] [160:21] [177:12] [188:2] [202:15] [203:7] [208:8]
**asks** [68:17]
**aspect** [14:14] [41:15]
**aspects** [19:12] [27:4]
**assert** [130:3] [165:15]
**assessed** [75:17]
**assessments** [161:17] [164:22]
**assign** [42:2] [47:9] [48:6] [49:1] [58:10] [204:18] [205:14] [209:8]
**assignable** [189:20] [202:10] [208:2]
**assigned** [48:15] [202:21] [206:18]
**assigning** [48:16] [121:17]
**assignment** [14:17,19] [15:3] [17:4,8,15] [19:3,5,8,11,16] [21:22] [22:6] [27:5] [32:4] [33:2] [41:13,22] [45:12] [46:1] [47:2,8] [49:15] [50:14] [53:5,11,13] [55:12] [62:2] [68:21] [78:15] [80:1] [81:7] [82:14] [84:7,12] [86:22] [87:7,17] [88:12] [89:14] [91:21] [99:5,15] [101:5,16,17] [102:3,5] [103:2,6] [146:8] [148:4,7] [175:18,22] [176:7] [178:21] [179:3] [181:9] [182:2] [184:10] [185:6,17] [187:8,20,21] [188:16] [189:18] [194:5] [195:16] [197:20] [199:2] [200:13] [202:18] [204:2,5] [205:13] [211:11]
**associated** [15:17] [20:4] [34:5] [93:17] [123:9] [140:6] [141:16] [146:7] [148:19,21] [152:2,19] [160:11,13] [161:1,16] [169:16] [170:16,22]
**assuage** [211:6]
**assume** [108:6] [143:3]

[173:9] [206:17]
**assumed** [112:15] [211:8]
**assumes** [72:14] [77:3] [98:6] [167:5] [169:5] [187:10,11] [188:18]
**assuming** [72:17]
**attach** [:]
**attached** [218:7]
**attention** [83:15] [132:14]
**attorney** [127:17] [138:2] [139:2] [140:12,13] [154:13] [155:4] [174:13] [183:5] [219:15]
**attorneyclient** [127:17] [138:2] [139:2] [155:4] [174:13] [183:5]
**attorney-client** [127:17] [138:2] [139:2] [155:4] [174:13] [183:5]
**attorneys** [38:21]
**audible** [6:12]
**auditors** [151:8,11,16]
**authored** [31:10]
**authority** [53:21]
**authorize** [:]
**available** [36:3] [74:22] [125:10,20] [142:21] [143:7,12,20] [144:20] [155:19] [156:6] [157:16] [158:4,9] [164:18]
**avoid** [8:18] [110:14]
**aware** [26:6] [39:3] [52:10,17] [56:18] [63:9,18,22] [74:20,21] [76:22] [80:9,16,22] [81:17] [82:22] [87:15] [88:15] [90:10] [92:3] [95:6,19] [98:21] [101:4] [103:4,12,20] [104:4,12] [105:17] [113:21] [126:19] [130:22] [132:20,21,22] [133:4] [142:19] [143:19] [144:2] [145:21] [146:2] [164:5] [166:21] [167:13,21] [210:9,13,16,21,22] [211:4,14,20] [212:9]

B

**back** [8:18] [59:2,4] [78:7] [97:6] [142:4] [154:8,19] [172:16] [175:17] [210:17]
**background** [8:3,14]
**backward** [147:8]
**barton** [136:13]
**based** [52:6] [83:5] [156:3] [159:21] [173:9] [184:7,17] [199:10,17] [208:16] [216:6]
**basically** [22:11] [156:20] [162:13]
**basis** [79:10,13] [83:4] [117:2] [137:12] [157:3] [160:15] [168:4] [172:14]
**bates** [30:17] [43:5,14] [45:10] [85:12] [147:1]
**became** [11:6] [164:5]
**become** [40:20] [44:11,17] [101:4]
**began** [175:18]
**begin** [15:17] [20:4] [29:1] [34:6] [113:17] [115:8] [116:4,11,15] [117:1,5] [124:7,19] [133:21] [138:20] [141:18]
**beginning** [116:2,22] [134:10] [141:4] [190:8]
**begins** [86:10] [178:5] [191:5]
**begun** [27:20]
**behalf** [5:18] [27:1] [30:1] [32:8] [33:6] [41:5] [53:10] [64:17] [91:16] [132:19] [171:19] [180:20] [193:5] [200:9]
**belabor** [8:15]
**belief** [201:15,17]
**beliefs** [28:22]
**believe** [6:1] [10:3,18] [13:4] [15:5] [18:9] [20:13] [23:4] [25:10,18] [26:14,17] [27:17] [28:13] [30:19] [34:15,21] [35:8,9,10] [36:7] [37:15] [39:11] [50:5,16] [52:22] [60:16,22] [62:4,8] [70:11] [71:13] [76:7] [79:14,15] [80:6] [85:14,19] [96:19] [101:11] [102:9] [103:9] [109:21] [111:7] [115:6] [117:15,18] [121:13] [123:13] [131:11] [134:1] [146:5] [155:2] [156:20] [158:22] [159:3,18] [161:12] [164:12] [183:14] [184:6,13] [191:4] [198:17] [201:16] [213:17]
**believed** [142:16]
**belong** [86:21]
**bends** [136:12]
**benefits** [86:18]
**besides** [16:12] [31:12] [82:17] [131:4] [136:11] [143:10]
**best** [11:13] [27:18] [28:19] [32:18] [53:10] [93:20] [94:6] [104:15] [190:9] [202:6]
**better** [19:7] [53:21] [54:12] [80:19] [148:2] [164:16] [213:4]
**beyond** [24:8] [57:16] [58:22] [67:21] [68:12] [75:1,10,18] [76:4,13] [80:14] [81:3,19] [82:4] [97:2,17] [99:7,16] [101:8,19] [103:16] [104:7,18] [105:2] [111:12,13] [112:7] [113:1,13] [118:17] [120:21] [123:20] [124:10,13] [126:1] [136:22] [137:19] [150:3] [159:7] [160:3,12,16] [167:6] [168:8,18] [169:4,19] [170:12] [171:9] [182:6] [186:8,20] [206:1] [207:3]
**big** [214:13]
**bill** [159:1,5]
**binder** [83:13] [214:16]
**bit** [8:2,18] [32:3] [55:9] [93:19] [151:22] [163:11] [175:17] [179:16]
**bob** [184:22] [197:19]
**bonnie** [1:21] [2:21] [6:10] [59:3] [142:4] [154:9] [219:2] [220:20]
**bookkeeping** [149:15,16] [150:12,15]
**boston** [1:4] [3:2] [4:8] [5:7,14] [33:22] [34:20] [35:1] [37:13,17,18] [39:5] [40:12] [41:6] [42:2,13] [43:4] [44:8,15] [45:4] [58:10] [91:17] [92:2,3,19] [95:20] [96:20] [101:11,17] [102:6] [103:14] [105:10,15,17,21] [106:19] [107:5] [108:13,21] [109:12] [110:4,9] [114:18] [115:2] [120:18] [121:15] [122:1,9] [123:10] [125:21] [126:2,4] [129:16] [133:1] [134:6,8] [135:13] [138:17] [139:20] [140:8] [141:8,10] [142:21] [143:4,6] [144:2,13,17] [145:22] [146:9,22] [148:7] [158:11,20] [161:2,15,18] [162:14] [163:10,13] [166:4,22] [167:14] [173:4] [174:6] [178:15] [179:1,9] [180:9,21] [190:20,21] [191:3] [195:14] [199:11] [202:20] [205:11] [206:17] [207:16] [209:20] [210:12,17,22] [212:20] [213:5] [215:11] [220:6] [:]
**bottom** [86:8,10]
**brad** [5:12]
**bradley** [3:3]
**breach** [174:2,3]
**break** [7:3,4,8] [79:18] [151:18] [166:1] [172:6,15]
**brief** [172:20]
**briefly** [177:12]
**bring** [83:15]
**brought** [61:12] [132:13]
**bryan** [3:13] [7:21] [13:7] [132:13]
**budgeting** [150:13]
**build** [121:15]
**butfor** [156:22]
**but-for** [156:22]
**byproduct** [115:16]

C

**calculate** [76:17] [165:8]
**calculating** [162:4]
**calculations** [175:4]
**call** [18:13] [32:13] [153:1] [156:21] [220:15]
**called** [39:11]
**calling** [213:20]
**calls** [46:6] [47:5] [48:5] [53:15] [54:1,14] [56:20] [64:8] [65:9] [68:4] [73:11,21] [76:6,15] [80:5,14] [94:2] [96:1] [103:18] [104:9,17] [105:1] [110:16,17] [115:19] [116:19] [119:12] [127:16] [137:18] [138:2] [140:11] [141:20] [142:7] [150:5] [153:13] [154:12] [168:10] [169:20] [183:5] [184:2,15] [185:8,22] [186:20] [187:22] [190:10] [191:10] [192:4,19] [193:16] [195:19] [200:1,14] [201:4,21] [203:5] [204:21] [205:1] [207:1] [208:6,14] [209:12] [212:11]
**cant** [7:14] [11:11] [39:21] [53:2,18] [54:16] [65:14] [97:5] [98:2] [105:4] [118:18] [125:5] [145:18] [163:7] [170:3,7,10,13] [188:8] [200:10]
**capable** [92:15] [157:2]
**capacity** [171:11]
**caption** [:]
**captioned** [:]
**careful** [156:12]
**case** [11:22] [24:8] [26:1,16] [39:5] [152:6] [192:8] [195:6] [207:18] [212:6] [214:14] [:]
**cases** [4:15] [6:6] [39:12] [114:1] [159:22] [160:6] [170:6]
**cask** [24:6,14] [26:3] [71:14]
**cavanaugh** [13:19] [21:5,7,14,20] [22:3,5] [23:17] [59:17] [61:14] [91:5]
**caveat** [195:22]
**cease** [120:19]
**center** [202:22] [203:3] [206:19,21]
**certain** [11:17] [50:18] [158:18]
**certainly** [172:22] [213:20]
**certificate** [219:1] [:6]
**certify** [219:4]
**chance** [43:21]
**change** [220:14] [:]
**changed** [11:2] [51:15,16,17] [146:14] [148:12]
**changes** [218:6] [:]
**characteristics** [153:9] [154:5]
**characterization** [66:20]
**characterize** [56:15] [62:5,6]
**characterized** [204:4]
**charge** [90:11] [93:8] [94:5] [98:17]
**charged** [193:3]
**checked** [69:10]
**choose** [18:13]
**chose** [26:4] [145:17]
**cincinnati** [85:2] [86:11]

[216:8]
**circumstances** [14:12] [51:17] [55:12] [86:20] [139:10]
**civilian** [8:22]
**claims** [1:2] [108:15] [184:11]
**clarification** [38:4] [87:6]
**clarify** [64:11] [69:19] [81:5] [86:17,22] [87:16] [161:22] [163:19] [181:20,21] [204:4] [205:10]
**class** [29:9]
**classes** [24:12]
**classify** [25:7]
**clause** [22:21] [99:15] [190:3,5] [191:5] [193:5] [194:22] [195:1,4,16] [196:8] [197:20] [200:10,11,18,21,22] [201:2,7,8,14,20] [202:12] [204:2] [205:7,13] [206:20] [209:19] [210:11,15]
**clauses** [48:3]
**clear** [6:22] [7:12] [30:3] [40:20] [51:7] [83:3] [99:22] [114:7,11] [118:10] [125:9] [156:11] [166:12] [194:19] [195:5] [201:3] [211:21] [214:7]
**clicking** [131:4]
**client** [140:13]
**clippings** [157:20]
**close** [172:19]
**co** [1:]
**cognizant** [128:9]
**colleague** [5:12]
**collect** [167:2] [174:4]
**collecting** [117:6]
**columbia** [219:20]
**column** [178:11] [180:7]
**comfortable** [155:1,14] [165:9]
**comment** [77:12,18,19,22] [82:18,19] [87:5] [216:5]
**commenting** [215:20]
**comments** [28:5] [78:14] [83:16] [84:5] [87:3,6,15] [117:5] [180:4] [196:19] [216:3]
**commission** [81:14] [99:3] [219:21]
**committed** [94:16]
**common** [180:5]
**communication** [82:13]
**communications** [12:19] [183:5]
**company** [1:4] [3:2] [5:7] [41:6] [42:13] [85:3] [91:17] [109:13] [168:3] [180:21] [215:11]
**companys** [4:8]
**compensated** [38:16]
**compensation** [38:19]
**competent** [54:22]
**compile** [152:18]
**compiled** [152:7]
**complaints** [194:22]
**complete** [218:5]
**completely** [55:6] [171:1]
**complied** [133:2]
**compound** [192:3] [197:2]
**computerized** [219:8]
**conceive** [64:5]
**concentric** [159:14]
**concern** [68:20] [128:9]
**concerned** [184:20]
**concerning** [91:21]
**concluded** [217:6]
**conclusion** [46:6] [47:5] [73:21] [76:6,15] [80:5,14] [103:18] [104:9] [110:17] [115:19] [116:20] [119:13] [139:16] [141:21] [142:8] [150:5] [190:11] [191:10,20] [192:4,20] [193:16] [195:19] [200:15] [201:5,22] [204:22] [207:2] [208:7,15] [209:12]
**conclusions** [139:14] [152:12] [175:6] [191:12]
**conditions** [157:12]
**conduct** [108:14]
**conducted** [140:21]
**conference** [51:6]
**confidences** [127:18] [174:13]
**confirm** [106:10]
**confused** [207:7]
**confusing** [37:5]
**congress** [24:17] [50:13] [51:3] [56:18] [57:3,7] [58:2,17] [136:21] [137:7,16] [138:8,13] [150:20] [151:5,7] [155:17] [165:10]
**congressional** [82:12] [181:13] [182:1]
**congresss** [182:1]
**conjunction** [25:5]
**connelly** [100:17]
**connie** [136:13]
**consider** [51:20] [67:15] [105:6] [127:18] [164:22] [174:1,18]
**considered** [56:19] [62:21] [64:12] [67:8] [92:12] [95:13] [96:5,6,9,10] [98:18] [174:18]
**considering** [52:8]
**consist** [157:18]
**consistent** [5:21] [34:8] [35:3,18,21] [37:19] [109:16] [117:13] [133:3] [168:13] [213:18]
**consolidated** [125:17]
**constitute** [157:18]
**consult** [192:9,22] [193:6]
**consultation** [175:7]
**contact** [21:10]
**contacting** [220:]
**contain** [83:20] [115:21]
**contained** [29:3] [35:13] [137:6] [156:18] [187:21] [192:15] [199:4]
**containers** [9:7]
**containing** [196:20]
**contains** [40:3] [82:21] [83:19] [130:13]
**contemplated** [50:8] [60:18] [73:8] [81:11] [194:4]
**contemplation** [72:11] [138:11]
**content** [175:5] [198:14]
**contents** [130:5,7] [190:3] [199:21]
**context** [23:22] [30:14] [49:7,8,9] [61:2] [102:2] [131:7] [132:16] [202:15] [205:21] [209:19,20]
**continue** [67:19] [68:1] [124:21] [165:15] [199:8]
**contract** [4:11,13] [9:9] [14:13,15,19] [15:1,4,9] [16:3,12] [17:11,15,19] [18:11,17] [19:3,5,13,19] [20:21] [22:1,3,7,15] [27:3,5] [29:3] [33:3,8] [37:12] [41:4,9,13,15,17] [42:1,3,12] [43:2,3,16,17] [44:5,8,10,15,22] [45:2,9,14,19,22] [46:2,4,17,18] [47:1,3,16] [48:1,7,11,19] [49:19] [50:9,15] [51:15,18,19] [52:13] [53:6,14] [57:9] [58:9,12] [62:9,15] [64:1,3] [65:7] [67:5,12,21] [68:19] [69:2,5,12,16] [70:1,8] [74:9,11] [75:14,16] [76:22] [77:10,17,20] [78:1,16] [79:8] [80:1,10,21] [81:8] [82:7,19] [84:6] [85:4] [86:17] [87:8,18] [88:10,13] [90:11] [91:15] [92:2] [93:8] [94:5,7] [96:7,14] [98:18] [99:4] [100:16] [102:5,6] [105:12,15,17] [106:22] [109:2,12] [110:3,5,13] [111:3,8] [112:6] [113:18,20] [114:17,21] [115:1,13,14] [116:18] [117:10] [118:1,11] [119:20] [121:5,15,18] [123:14] [141:11] [146:9] [148:4,7] [175:22] [176:8] [178:18,22] [179:3] [180:6,11,19] [181:10] [184:12] [185:7,17] [187:19] [188:4,17] [189:14,18] [190:5,6,8,18,21] [191:2,15,18] [192:16] [194:6,13] [195:9,12,13] [196:2,10,19] [197:14] [198:10] [199:16,20] [200:4] [202:2,22] [203:8,16,18] [206:22] [207:15] [208:2] [209:10] [210:19,20] [215:1,5,21]
**contracting** [9:8,12] [11:6] [44:9] [46:15] [47:1,15] [48:12] [55:11] [91:19] [92:18] [102:11] [112:10] [113:5] [116:3,13] [119:11] [120:17] [121:4] [148:11] [192:12]
**contractors** [29:19] [30:1,2,21] [136:10,16,19] [141:9]
**contracts** [9:14,15] [44:7,12,17] [58:7,8] [92:11] [112:14] [184:7]
**contrary** [109:9]
**conversation** [13:11] [14:3,6] [15:22] [17:1] [18:22] [21:6,20] [61:3,12,16] [94:10,14,18,19] [95:3] [103:11] [197:17]
**conversations** [12:15] [13:14] [16:5] [21:8] [51:2] [57:7] [58:1,16] [80:22] [81:13,17] [99:2] [103:5] [211:18]
**coordinate** [110:19]
**coordinated** [10:8] [11:4] [41:20] [111:15] [113:1] [114:10]
**coordination** [175:7]
**copy** [42:11] [44:3,4] [102:20] [124:4] [176:18,19] [194:12] [220:9]
**correct** [6:7] [7:22] [8:1,11] [10:22] [17:6] [33:3] [34:18] [38:1,13,14] [39:13] [45:15,16] [46:19] [47:19] [55:1,8] [57:10,11] [62:7] [64:18,19] [65:1,2] [66:12,13] [77:11,13] [78:22] [79:3,4] [81:16] [83:20] [84:2] [88:6] [93:3] [100:14,21] [101:1] [108:7] [109:17] [115:10] [120:3,5] [123:15,16] [126:5] [127:10] [146:1] [149:12,22] [152:9] [158:21] [162:11,16] [168:17] [169:3] [173:15,21] [175:9] [181:11] [183:17] [188:17,21] [189:4,15] [190:20] [191:3] [195:6] [204:19] [205:15] [211:3] [218:4]
**corrections** [218:6]
**correctly** [117:20] [152:4]
**correlatively** [180:8]
**correspondence** [211:15]
**cost** [15:14,15] [20:2] [24:18] [35:16] [126:8,9,20] [128:15] [134:8] [141:16] [142:12] [152:18] [156:2] [160:11] [161:15] [162:1,3] [163:3,8,10,15,20] [168:6] [169:16] [170:16]
**costs** [20:2] [24:18] [25:2,12,15] [30:8,9] [34:2,3] [38:5] [111:11] [123:3,8] [127:12,21] [128:16] [134:14] [140:6] [142:1] [148:18] [152:2] [156:5] [157:13] [160:13] [161:1,4,20] [163:13] [166:5,11,13,17,20] [170:21] [171:5,7]
**couldnt** [65:15] [72:4]

**counsel** [5:6] [7:19] [12:8,9,11,13,16,17,21] [13:6] [14:7] [18:14] [21:10] [24:9] [26:5,7,11] [29:11] [30:22] [40:18] [44:22] [72:5] [73:14] [78:18,19] [79:2,15] [83:6,14,18] [84:1] [88:5] [89:12,15] [90:7,9,21] [91:8] [103:10] [108:3] [113:3] [114:9] [122:5,6,20] [127:4,5] [128:1] [129:4] [131:1,18] [132:7] [134:2,22] [135:14] [136:2] [137:14,22] [138:6,11,14] [139:8] [140:18] [141:5] [142:15] [149:1,5] [151:13] [152:7] [153:16] [155:16] [158:1,3] [161:8] [165:21] [172:14] [173:20] [174:11,15,20] [175:8] [176:12,17] [179:17] [182:9,13] [183:1,8] [192:9] [193:1,6] [194:1,16,17] [197:6] [214:4] [215:10,21] [216:14] [217:3] [219:11,15] [220:13]
**counsels** [128:9] [131:11] [175:11]
**count** [5:20]
**couple** [6:9] [13:10] [14:1] [16:18] [67:18] [148:16] [150:2]
**course** [128:22]
**court** [1:2] [40:1,18] [41:10] [58:3] [101:2] [108:14] [123:7] [172:10] [177:9] [179:7,9] [213:12]
**courts** [34:12] [108:5] [179:8] [181:3] [213:7,19]
**covered** [16:7] [32:1] [110:18] [111:15] [112:21] [114:10]
**create** [88:11]
**created** [25:16,19] [102:22] [138:10] [195:12]
**cross** [23:22]
**cumulative** [42:5]
**current** [8:16] [13:16] [18:5] [23:2] [38:12] [75:4] [153:19]
**currently** [8:19] [21:14] [46:16]
**cursory** [39:7]

D

**d.c** [1:14] [2:15] [3:7,16] [20:17] [220:]
**damages** [158:12]
**database** [85:20] [129:2,3,17,19] [130:1,3,13,18] [131:5] [134:22] [135:10,18,21] [136:1,17] [137:6] [149:10] [150:19] [151:12] [152:12,13] [153:8,15] [154:6] [156:18] [158:15] [173:13]
**date** [13:22] [115:22] [117:7] [123:10,15,18] [124:8,12] [142:12] [160:12] [162:2] [218:10] [:]
**dated** [4:14] [41:6] [43:4] [91:18] [146:22] [180:21]
**dates** [12:22] [78:11] [161:3,10]
**david** [1:13] [2:10] [4:2] [5:2] [218:2,10] [220:] [:2,19]
**day** [18:1,2] [213:21]
**days** [16:18] [190:1] [220:12]
**de** [43:3]
**deal** [48:10] [126:16]
**dealing** [170:21]
**dealings** [213:13]
**deals** [111:8]
**dealt** [71:2]
**dear** [220:8]
**decision** [36:16] [176:14] [178:14,19]
**decline** [175:11]
**decommissioning** [159:2]
**decr** [43:3]
**de-cr** [43:3]
**deem** [12:16]
**deemed** [182:10]
**defendant** [1:6,] [214:4]
**defendants** [3:11]
**define** [86:19]
**defined** [190:6,7]
**definitions** [86:14]
**degree** [164:17]
**delay** [25:14] [142:17] [166:13]
**delayed** [16:2] [20:9] [37:11]
**delineate** [192:1]
**delve** [179:16]
**department** [2:13] [3:14] [18:6,10] [21:15] [23:3] [28:11] [41:5] [42:12] [43:2] [44:13] [45:3] [46:16] [47:16] [52:3,4] [55:10] [62:11] [63:2,4,14,20] [64:17,21] [65:4,18,19] [66:5,9,15,19,22] [67:14] [69:13] [77:1,17] [86:13] [89:8,19] [91:16] [92:1,16] [93:10] [96:19] [101:15] [102:17] [103:1] [105:11,16] [133:5] [138:17] [148:6] [153:18] [164:19,21] [175:20] [176:6,10] [179:14] [180:20] [181:8] [182:15] [183:1,3,9] [189:3] [192:13] [193:5] [195:3] [199:13] [200:9] [210:10] [211:2,9] [213:13] [216:4]
**departmental** [63:10]
**departments** [70:10,13] [149:14]
**depends** [125:5]
**deponent** [218:1] [:2]
**deposed** [12:6] [172:2]
**deposition** [1:13] [2:10] [4:10] [6:16] [8:6,13] [10:8] [11:3,19] [12:4] [14:8] [16:6] [26:16] [31:14,19,22] [35:6,13] [36:14,16] [40:5,11,13] [42:16,22] [45:15] [67:22] [68:13] [70:4] [74:1] [75:2,19] [76:5,14] [77:21] [80:15] [81:3,20] [82:5] [84:16,21] [88:1] [89:12] [90:6,22] [97:3] [99:8,17] [101:9,20] [103:17] [104:8,19] [105:3] [109:10] [111:14] [113:2,14] [118:17] [120:22] [123:21] [124:11] [135:6] [137:1,20] [146:16] [159:8] [160:4] [162:15] [167:7] [168:9,19] [169:5,19] [170:13] [171:3,12] [176:15,22] [177:5,18] [178:20] [180:16,18] [182:7,11] [183:11] [186:9] [194:20] [206:2] [207:4] [209:1] [213:9] [214:10,19] [216:1] [219:3,5,9,13] [220:] [:1,,]
**depositions** [108:14] [110:19] [112:22]
**depth** [61:21]
**describe** [12:5] [14:5] [21:19] [24:15] [46:3] [50:22] [55:9] [74:5] [77:15] [84:22] [116:10] [129:8] [131:13] [177:6] [196:21]
**described** [9:19] [107:14] [131:5] [134:21] [179:8] [199:18]
**description** [40:4]
**design** [9:7]
**designate** [36:17]
**designated** [32:7] [33:21] [36:14] [39:17] [64:22] [68:16] [71:3,11,12] [100:3,10,20] [173:3] [179:14] [183:22]
**designee** [5:18]
**detail** [74:5] [156:13] [207:20] [211:5]
**detailed** [87:3] [199:8]
**details** [165:14]
**determination** [172:7]
**determine** [24:18] [50:13] [63:13] [152:18] [155:19] [176:3] [193:7] [199:11] [212:6]
**determined** [113:19]
**develop** [156:3,20]
**developed** [98:17] [127:3] [129:5] [139:8] [142:15] [151:13] [173:14]
**developing** [56:19] [70:8] [96:14]
**development** [21:22] [27:2] [57:19] [58:15] [67:5,12] [199:16]
**dickstein** [3:5] [5:14]
**didnt** [22:17] [32:20] [51:20] [55:20] [56:7,14,17] [59:9,12] [61:22] [67:1] [78:7,21] [81:10] [82:2] [83:13] [87:20] [90:14,17] [95:16] [105:6] [106:9] [107:9,10,11] [118:8,22] [120:14] [121:9] [122:17] [125:13] [132:7] [135:5] [138:7] [156:13] [157:10] [166:9] [174:18] [176:18] [188:12] [194:18] [198:12] [199:7] [205:9] [211:5]
**differences** [51:5] [192:1]
**different** [23:15,20] [24:9] [25:2] [29:17] [62:13] [67:10] [88:22] [89:7] [119:10]
**diminished** [39:12]
**direct** [10:20] [72:18] [121:14] [141:17] [142:17] [213:13]
**directed** [157:22]
**direction** [24:17] [25:19] [30:4] [127:3,5] [134:1] [140:18] [142:14] [165:20] [174:11,15,19] [219:9]
**directly** [25:13] [131:3]
**director** [62:19]
**disagree** [117:17]
**disallowed** [58:3] [170:6]
**discarded** [145:19]
**disclosed** [165:15]
**disclosing** [174:14]
**discovery** [10:9] [11:4] [41:20] [85:13,18] [110:19] [111:15] [113:1] [114:11] [131:21] [213:22]
**discuss** [14:10] [19:12] [20:20] [99:10] [181:7]
**discussed** [14:7,15,16] [15:12,19] [16:10] [22:2] [24:10] [37:16] [38:11] [51:2] [60:17] [61:13] [96:6] [174:19] [204:14]
**discusses** [28:13]
**discussing** [62:1] [72:10] [100:5] [155:14]
**discussion** [14:22] [15:3,6] [17:3,12] [25:10] [42:11] [56:6] [57:2] [59:6,13] [61:8,21] [78:17,20] [79:8,15] [95:12] [103:21] [137:21] [154:15] [165:20] [192:10] [193:22] [198:19] [205:4]
**discussions** [12:9] [15:13] [17:14,18] [19:17,22] [20:7] [22:20] [27:12] [28:15] [31:18] [45:20] [50:17] [51:1] [52:6] [53:7] [57:1] [59:14] [60:2,16] [62:19] [64:2] [79:9,14] [82:10] [83:1] [121:21] [138:6] [179:19] [189:1,12] [196:13] [197:10,11] [203:15] [204:13]
**dispense** [6:2]
**disposal** [74:12] [85:4]
**disposed** [49:21] [191:13]
**distinguished** [161:19]

**district** [219:20]
**divulge** [139:8]
**divulgence** [127:16] [138:2] [139:1] [140:12,13]
**divulging** [139:5] [174:13]
**document** [24:15,22] [25:13] [26:4] [40:2,9,11,15] [42:20] [43:5,9,12,22] [44:2,5] [83:14] [84:15,20] [85:9,12,17] [86:1,5,8] [88:8] [98:3] [107:14] [126:15] [130:11] [131:21] [146:20] [147:3] [177:4,13] [178:1] [200:20] [201:5]
**documents** [12:10] [16:9] [17:19] [20:20] [21:1] [22:2] [24:3,4,9,10,13] [29:9,11,16] [30:13,22] [31:1] [52:10,18] [53:3] [63:13,18,20,21,22] [71:1,19,20] [72:6,10,20] [88:5,11,16,18] [89:1,5,13,16,18] [93:16] [98:13,19,21] [102:22] [126:19,20] [127:1,9,11] [128:1,7,10,21] [130:5,8,11,19] [131:9,12,16] [132:9] [179:22]
**doe** [9:1,22] [10:2] [12:10] [13:14] [18:19] [21:18] [24:16] [25:1] [27:20] [28:16] [30:1,2,4] [34:22] [38:12] [43:6,15] [44:9] [50:12] [52:11] [59:19] [62:14] [68:2] [69:2] [80:22] [81:12,21] [82:12] [95:19] [96:5,9,16] [98:3] [101:4] [103:12,21] [104:3,12] [110:4] [111:17] [112:18] [113:21,22] [114:18] [116:4,22] [117:22] [118:14] [119:11] [120:16] [121:13,22] [124:12] [125:11] [127:3,21] [128:20] [129:1] [134:7] [146:7] [147:2] [152:17] [157:2,22] [161:17] [163:12] [165:10] [168:22] [169:6] [170:1,4,10,18] [171:19] [179:19,22] [180:4,9] [187:16] [189:1,12] [190:1] [195:11,13] [196:1,7,17] [208:20] [209:2,5,7] [215:7]
**doesnt** [66:10] [97:21] [107:19] [143:19] [145:15]
**doing** [30:3] [141:5] [163:22]
**doj** [131:20] [132:1]
**dollar** [148:21,22] [163:9] [166:9]
**done** [24:16] [43:10] [50:9] [81:22] [106:16] [132:16,21,22] [133:1,5] [134:22] [135:14] [140:18] [141:2] [145:2] [146:15] [147:18] [151:8,9] [167:22] [168:1] [174:14] [175:7]
**dont** [6:17,19] [8:7,15] [10:13] [11:14] [12:18,22] [13:20,22] [15:5,11,19] [19:14] [23:7] [24:10] [29:19] [30:16] [31:3] [32:19] [33:17] [34:21] [44:18,19] [51:16] [52:22] [54:3,17] [61:4,7] [64:13] [65:13] [68:8] [73:6] [75:3,13] [79:17] [80:6] [81:21] [86:6] [89:20] [93:10] [97:10,15] [99:13] [102:19] [105:5] [106:16] [111:7] [114:8] [116:8] [130:4,7] [132:12] [134:13,19] [135:12] [138:5] [140:21] [143:9] [144:15] [147:5,10] [149:6] [151:6,7] [155:13] [157:13] [158:16,22] [159:3,18] [163:9] [164:11] [166:7] [167:22] [172:6,15] [177:19] [181:2] [184:12,19] [185:5,11] [187:3] [188:9,11] [192:6] [193:11] [194:17] [201:14,15] [204:9] [206:14] [212:10]
**down** [75:6] [165:13] [197:16]
**dozen** [8:8]
**draft** [77:17]
**drafters** [208:9]
**drafting** [19:4] [21:12] [65:7] [69:1] [76:21] [202:17]
**drafts** [29:17,22] [30:6,20]
**drew** [175:6]
**drill** [197:16]
**dry** [24:6,14] [26:2] [71:14] [106:7,15,16] [125:18] [141:16] [144:13]
**due** [173:5]
**duly** [5:3] [219:5]
**duplication** [8:18]
**during** [14:22] [21:2] [60:16] [180:5] [186:17] [216:4]
**duties** [42:3] [47:10] [49:2] [58:11] [129:1] [189:19] [191:6,8,14] [192:8,15] [193:8,14,21] [194:4] [195:16] [196:8] [197:21] [199:12] [200:12] [202:9,18,21] [203:2] [204:19] [208:4,13]
**duty** [206:21]

E

**earlier** [11:18] [29:10] [51:9] [55:18] [56:22] [71:13] [74:3,6] [82:11] [83:10] [88:2] [90:8] [92:9] [95:12] [108:3] [115:3] [123:13] [126:21] [134:21] [141:4] [142:10] [143:22] [148:3] [179:4] [183:14] [194:8] [197:10] [198:6] [203:1] [204:6]
**early** [28:2]
**ed** [136:12]
**edison** [1:4] [3:2] [4:8] [5:7,15] [33:22] [34:20] [35:2] [37:14,18] [39:5] [41:6] [42:2,13] [43:4] [44:8,15] [45:4] [58:10] [91:17] [92:2,3,19] [95:20] [96:20] [101:12,17] [102:6] [103:14] [105:10,15,17,21] [106:19] [108:14,21] [109:12] [110:4] [115:3] [120:18] [121:15] [122:1,9] [123:11] [125:21] [126:2,4] [129:16] [133:1] [134:6,8] [135:13] [138:18] [139:20] [140:8] [141:8,10] [142:21] [143:4,6] [144:2,13,18] [145:22] [146:9,22] [148:7] [158:12,20] [161:2,15,19] [162:14] [163:14] [166:4] [167:1,15] [173:5] [178:15] [179:1,10] [180:9,21] [190:20,22] [191:3] [195:14] [199:11] [202:21] [205:11] [206:17] [207:16] [209:20] [210:12,17,22] [212:20] [213:6] [215:11] [220:6] [:]
**edisons** [40:12] [107:5] [110:9] [114:18] [163:10] [174:6]
**effect** [48:17] [211:15]
**efficient** [35:8] [155:10]
**effort** [98:17] [188:14] [189:2] [212:5]
**efforts** [80:19] [176:2,5]
**eight** [10:18]
**eileen** [159:22] [160:7]
**either** [38:12] [40:18] [91:8] [127:17] [156:3] [158:12] [212:21,22]
**elect** [145:7]
**elected** [18:11]
**electric** [85:2]
**electrics** [86:12]
**electronic** [128:19] [131:16]
**eliminate** [121:7]
**else** [7:10] [11:1] [23:9] [31:21] [69:13] [89:9] [91:7] [102:21] [131:2] [136:11] [143:9]
**employed** [21:15,16] [219:12,15]
**employee** [18:5,19] [23:2] [129:1] [188:3] [219:14]
**employees** [12:10] [13:14]
**enclosed** [220:9]
**end** [28:12]
**endeavor** [50:12] [82:2] [188:12]
**endeavored** [57:6] [69:7]
**endeavors** [50:21]
**ending** [178:10]
**energy** [18:6] [21:15] [23:3] [28:12] [41:5] [42:13] [43:3] [44:13] [45:3] [46:17] [47:17] [52:3,4] [55:10] [62:11] [63:4,15] [64:17] [65:4,18,19,20] [66:6,15,19] [67:1,14] [69:14] [77:1] [86:13] [89:19] [91:16] [92:1,17] [93:10] [96:19] [101:15] [102:18] [103:1] [105:11,16] [133:6] [138:17] [148:6] [153:19] [159:14] [164:19,22] [180:20] [181:8] [182:15] [183:3] [189:3] [192:13] [193:6] [195:3] [199:13] [200:9] [210:10] [211:2,9] [216:4]
**energys** [63:2] [175:20] [176:6,10]
**engage** [42:6] [63:12]
**engaged** [82:11] [173:19]
**engc/beco** [147:2]
**engc\beco** [43:6]
**enter** [207:17]
**entered** [41:4] [44:12] [45:2] [91:15] [96:7] [180:19] [195:9] [196:2] [:5]
**entergy** [1:7] [38:21] [101:18] [102:7] [123:12] [146:5,9] [148:8] [209:21] [210:12,18] [211:1]
**entire** [64:21] [65:19] [82:18] [86:1] [133:16,17] [:3]
**entirely** [78:3]
**entirety** [26:12]
**entitled** [201:18]
**entity** [92:19] [190:17]
**entry** [129:15,18]
**enumerate** [191:22]
**enumerated** [40:15]
**equivalent** [76:17]
**erin** [3:4] [5:13]
**errata** [218:7] [220:] [:1,,]
**especially** [86:19]
**esq** [3:3,4,12,13]
**estimate** [8:4] [130:14] [131:6] [135:14] [142:15] [149:18,19] [156:5] [161:7] [162:1] [165:11]
**estimated** [16:1] [20:8] [37:10] [173:4]
**estimates** [127:21] [149:15] [155:21] [156:2] [173:18]
**estimating** [150:8]
**evaluate** [24:18]
**even** [27:19] [39:13] [56:7,17] [97:20] [140:15] [197:16] [204:9]
**eventually** [102:19] [212:14]
**ever** [18:18] [38:20] [48:10] [75:22] [86:4] [89:8] [98:15,20] [137:5] [140:15] [149:7] [197:19]
**every** [7:4] [83:13] [129:11]
**everybody** [212:8]
**everyone** [90:20] [91:11] [136:18]
**everything** [106:17] [133:4]
**evidence** [72:15] [77:4] [98:7] [167:6] [169:6] [187:11] [188:19] [190:9]
**exact** [8:21] [12:22] [13:22]

**exactly** [11:6] [142:1] [170:13]
**exam** [179:2]
**examination** [4:2] [5:6] [41:11] [42:6] [45:6] [214:4] [215:10]
**examined** [218:3]
**example** [69:16] [74:3,6] [164:21]
**except** [41:17] [136:18]
**exception** [44:20]
**exclude** [56:4]
**excluded** [57:17]
**exclusively** [173:8]
**execute** [93:9]
**executed** [96:15] [196:20]
**executing** [70:8]
**execution** [106:21] [114:17]
**exercise** [6:5] [163:22] [164:2] [173:19]
**exhaust** [125:7]
**exhibit** [40:5,10] [42:14,16,21] [84:16,21] [87:10] [91:14] [107:15] [126:11] [146:16,20] [176:21,22] [177:4] [189:15] [216:2,8]
**exhibits** [4:7,17]
**exist** [72:21] [73:5,6] [128:14,19]
**existed** [71:15] [73:2] [89:2] [98:15]
**existence** [72:17]
**expect** [168:22] [170:2]
**expectation** [27:19] [68:22] [116:22]
**expectations** [27:13,15] [68:18,20] [91:18] [94:6] [169:7] [180:9]
**expected** [69:3] [113:21,22]
**expedite** [177:15]
**experience** [184:7] [199:17,20] [215:6]
**expert** [31:9] [158:13,19] [159:1,12] [160:1]
**expires** [219:21]
**explain** [49:14] [154:22] [155:7]
**explained** [176:16]
**exposure** [141:6]
**expound** [53:3]
**expressed** [36:19] [69:5] [70:12] [121:6]
**expressly** [57:17] [124:11]
**extensive** [8:14]
**extent** [34:12] [39:13] [46:5] [57:22] [70:3] [73:21] [76:6] [80:4,13] [83:7] [96:12] [106:6] [127:16,20] [130:1] [139:1,4] [140:11,17] [143:15] [145:12] [150:2,6] [157:5] [165:19] [166:19] [169:22] [174:10,17] [183:4] [190:10] [191:9] [193:16] [195:18,20] [196:15] [210:5] [213:1]
**eye** [3:6]

F

**faced** [192:21]
**facilitate** [42:10] [101:17]
**facilities** [74:18,22]
**facility** [49:18] [74:19] [144:14] [165:2] [204:1,6] [205:12,15]
**fact** [29:2] [38:10] [58:14] [66:5] [111:9] [117:8] [146:13] [171:14,17] [172:2] [179:9] [180:17] [199:7] [203:18] [212:12]
**facts** [72:15] [77:4] [98:7] [167:5] [169:6] [187:11] [188:19]
**failed** [124:19] [134:9]
**failure** [15:17] [20:4] [34:6] [123:5] [133:11,21] [138:19] [141:18] [167:2] [173:5] [174:4]
**fair** [45:1] [47:14] [54:6,19] [55:4] [88:4] [110:12] [120:16] [148:20] [181:6] [183:19] [199:18] [216:11]
**familiar** [43:11] [44:5,7,11,17] [77:9] [85:9] [117:4,8] [147:4,9] [159:21] [172:4]
**far** [164:11] [200:8]
**fashion** [169:2,15] [170:21]
**fax** [147:13,14]
**fax/letter** [4:14]
**faxed** [147:11,15,20]
**february** [77:18] [85:6] [108:5] [176:14] [177:9]
**fed** [85:6]
**federal** [1:2] [108:15] [196:18]
**feel** [7:5] [11:11] [65:12] [91:14]
**fees** [191:15] [206:21]
**fellows** [18:15] [61:22]
**felt** [89:21]
**ferreting** [50:19]
**few** [165:22] [214:3]
**figure** [50:17] [118:22] [161:5] [163:10]
**files** [70:16] [102:20] [128:14,17,18,19]
**filings** [157:17,19]
**filter** [90:3]
**final** [24:5] [25:18] [37:8] [77:19] [196:19]
**financial** [150:16,20] [151:10]
**financially** [219:16]
**find** [69:8] [129:21] [130:12] [133:3] [157:20] [188:12,14] [220:9]
**fine** [151:19]
**finish** [112:13]
**finite** [166:20]
**firm** [5:13] [29:2]
**first** [5:3] [12:12] [18:12] [23:12] [74:19] [101:4,12] [117:2] [134:3] [147:6] [166:15] [177:21] [180:3] [209:18] [210:6]
**fit** [179:17]
**five** [189:7] [197:8] [212:15] [214:16]
**flagged** [216:13]
**focus** [32:20] [177:20] [178:3,9] [183:2]
**focused** [17:10] [21:21] [31:3] [39:8] [42:7] [45:8] [82:7] [176:5] [207:22]
**focuses** [180:8]
**follow** [87:3] [175:10,15] [215:13]
**following** [:]
**follows** [5:5]
**followup** [215:13]
**follow-up** [215:13]
**ford** [50:6]
**foregoing** [218:3] [219:3,5]
**foresaw** [52:4]
**foreseeability** [185:14]
**foresight** [68:2]
**form** [65:9] [69:17] [70:18] [96:12] [97:3,17] [99:8] [133:9] [145:11] [177:10] [186:17] [204:7]
**formation** [114:21] [115:1] [118:1] [196:10]
**former** [12:9] [13:14,16] [38:12]
**forming** [51:19]
**formulated** [51:18] [160:10]
**formulating** [90:11] [93:8] [94:5] [164:15]
**formulation** [14:22] [41:8,12] [55:2] [58:6] [64:2] [67:20] [69:2] [82:7,14] [88:12] [89:13] [181:9] [203:9,16]
**forward** [7:12] [220:12]
**found** [71:17] [72:6] [126:16] [128:1,11] [130:6,10,11] [131:2] [132:8] [196:2] [199:16] [202:7]
**foundation** [72:16] [77:5,8] [96:1] [98:7] [99:18] [106:4] [107:2] [109:19] [118:16] [137:19] [150:4] [167:5,18] [168:11] [169:21] [184:3,16] [185:9,22] [186:11,20] [188:1]
**foundational** [215:2]
**four** [18:13] [21:11] [23:13] [31:16] [55:5] [69:8] [162:13] [164:1] [214:16]
**fouryear** [164:1]
**four-year** [164:1]
**frame** [169:1,11] [207:8]
**frank** [147:10,13,14,15,20]
**free** [7:6] [11:11] [65:12] [91:14]
**fuel** [6:6] [9:6,7] [15:10,16] [20:3] [33:9] [34:5] [38:4] [48:16] [49:12,16,17] [50:1] [74:15] [76:3,9,18] [86:20] [105:13] [106:20] [111:5] [112:2] [115:9] [117:1] [123:4,9] [125:12] [133:12,22] [134:9] [138:20] [140:7] [141:17] [142:20] [143:7] [144:4] [148:19] [151:2] [152:3,19] [153:20] [160:11,13] [161:2,16,20] [166:19] [169:3,17] [170:17,22] [174:5] [191:13] [205:14]
**full** [23:10] [145:15]
**fully** [7:14]
**function** [48:18,22] [51:10,14] [53:5,12]
**functioning** [52:12]
**functions** [143:15]
**funny** [23:22]
**further** [74:5] [86:17] [140:21] [150:11] [156:1] [179:16] [192:10] [193:22] [197:16] [202:8] [212:18] [215:8,10] [217:4] [219:13]
**furthermore** [179:12]
**future** [15:9] [19:19] [27:10] [33:9] [92:4] [96:21] [105:12] [106:19] [107:5,16] [109:2] [110:5,14] [111:4,9] [113:5,12] [114:15] [117:6] [118:3] [150:21] [160:12] [161:3,10,11] [167:1] [168:4]

G

**gardner** [3:12] [4:4] [7:21] [13:7] [22:16] [28:17] [32:12] [33:10] [34:11,15,18] [35:4,5,20] [36:2,7,10,18] [37:5,16,22] [43:13] [46:5,9] [47:4,20] [48:20] [50:3] [52:14] [53:15] [54:1,14] [55:14] [56:20] [57:15] [58:13,21] [61:17] [63:7] [64:8] [65:8] [66:3] [67:18] [68:12] [69:17] [70:2,18] [71:4,8,22] [72:14] [73:11,20] [74:7] [75:1,10,18] [76:4,13] [77:3] [80:4,13] [81:2,19] [82:4,16] [83:7] [85:11,16,21] [87:9] [88:14] [89:3] [90:15] [91:1] [92:6,21] [93:4] [94:2] [95:9,22] [96:11] [97:1,9,16] [98:6] [99:6,16] [100:7,13,21] [101:8,19] [102:8] [103:16] [104:7,17] [105:1] [106:1,3] [107:1,21] [108:8,22] [109:18] [110:16] [111:6,12,19] [112:3,11,21] [113:10] [114:20] [115:18] [116:6,14,19] [118:5,15] [119:4,12] [120:21] [121:17] [122:11,14,18] [123:20] [124:9] [125:9,22] [127:15] [129:22] [132:3,12] [133:9] [135:7] [136:22] [137:8,15,18] [138:1,22] [139:18] [140:10,17] [141:20] [142:7,11] [143:14] [145:11]

[146:10] [147:7] [149:2] [150:1] [151:17] [152:21] [153:12,22] [154:3,11,16,19] [157:5] [159:7,16] [160:3,16] [161:21] [162:17] [164:7] [165:3] [166:12] [167:4,17] [168:8,18] [169:4,18] [170:11] [171:1,15,18,22] [174:8,21] [177:14,22] [180:1,14,17] [181:15] [182:6,16] [183:4] [184:1,15] [185:8,21] [186:8,19] [187:10,22] [188:6,18] [189:5] [190:9] [191:9,19] [192:3,17] [193:11] [195:18] [196:9,12] [197:1,7] [198:2 ,15] [199:22] [200:14,19] [201:4,21] [202:13] [203:4 ,12] [204:7,21] [206:1,15] [207:1] [208:6,14,21] [209:11] [210:2] [211:12] [213:15] [214:5] [215:8] [216:18] [220:1,8]
**gardners** [215:14]
**gas** [85:2] [86:11]
**gather** [178:16]
**gave** [10:7] [11:3] [26:16] [29:12] [74:2,6] [90:16] [149:7] [211:4]
**general** [38:5] [78:6,9] [116:21] [155:18] [163:17]
**generalities** [165:10,11]
**generally** [6:1] [25:7] [30:7] [44:14] [48:9] [132:21] [153:10] [158:8] [168:2]
**generation** [1:]
**generations** [168:5]
**generator** [86:15,21]
**generic** [126:21] [128:2]
**genesis** [22:21]
**gentleman** [51:19] [55:19] [98:16]
**gentlemen** [56:10]
**geography** [157:11]
**getting** [68:22] [139:22] [148:14] [165:6,13]
**give** [6:4,12] [8:4,16] [10:1] [33:2] [40:2] [42:11] [82:22] [125:7] [138:5] [202:7] [203:13] [207:21] [212:15]
**giveandtake** [82:22]
**give-and-take** [82:22]
**given** [8:6,13] [93:7] [139:10] [152:20] [153:21] [207:19] [213:6] [217:2] [218:5] [219:10]
**giving** [139:13] [156:17] [193:4] [203:14]
**glean** [158:9]
**go** [7:8] [42:11] [54:6] [78:7] [79:17] [125:14] [135:2] [136:5] [140:22] [142:13] [143:5] [152:14] [154:17] [155:7,13,22] [156:13] [165:22] [175:17] [180:7] [187:2] [193:7,10] [199:11]
**goal** [117:9,13,18] [118:10,13] [119:1,2,8,18] [121:5]
**goes** [157:22] [178:19]
**going** [6:2] [12:2] [31:2] [33:1,6] [37:4] [39:18] [40:2] [42:6] [45:8] [49:12,17] [57:15] [58:19] [61:9] [81:2] [124:9] [125:22] [139:9] [151:17] [164:11] [169:18] [171:9] [175:10] [177:12] [178:3] [191:12] [212:20] [213:8]
**gone** [6:5]
**good** [5:9] [6:3] [47:17]
**government** [5:19] [27:1] [32:9] [33:7] [34:1] [35:1,14] [41:20] [53:11] [63:19] [68:18] [79:21] [80:7] [87:4] [88:11] [89:9] [96:21] [105:14] [107:4] [109:6] [115:8] [124:7] [134:9] [140:7] [141:6,15] [143:12 ,17] [150:18] [152:5] [160:9] [164:3,5] [166:21] [169:13] [174:1] [176:3] [179:13] [182:13] [188:16] [192:13] [213:4,7,21]
**governmental** [179:2,11,20]
**governments** [7:1] [11:16,21] [16:1] [20:1] [33:13] [34:2] [35:15] [37:10,13] [45:17] [57:18] [85:20] [100:2] [105:20] [115:12] [123:2,8] [124:17] [126:8] [130:14] [135:15] [138:19] [140:5] [141:18] [142:16] [148:18] [152:1] [161:8,14] [162:22] [166:3] [167:2] [170:16] [171:5] [173:3,5] [174:2,4] [178:16] [179:10]
**granularity** [164:17]
**great** [207:19] [211:5]
**greater** [156:13]
**greatest** [61:21]
**ground** [11:9]
**group** [10:14,17]
**groups** [28:6]
**guess** [7:20] [8:8] [13:16] [33:4,15] [93:18] [103:19] [134:12] [142:9] [147:15,20] [150:18] [164:10]
**guidance** [76:8,11,17] [176:11]

H

**hadnt** [55:4] [65:16]
**hall** [5:10] [193:7]
**hand** [39:21]
**handed** [40:9] [42:20] [84:19] [146:19] [177:3]
**handle** [76:9]
**handling** [144:3] [169:16]
**handwriting** [43:14] [147:16 ,19]
**handwritten** [44:21]
**happen** [124:18] [139:10]
**happened** [36:19] [49:7] [51:18] [61:9] [102:16,21] [156:21] [157:1]
**happening** [116:11,15] [140:15]
**happy** [6:21]
**havent** [16:7] [31:22] [39:7] [137:16]
**having** [51:2] [93:16] [201:8] [214:2]
**head** [6:13] [162:9]
**hear** [197:5]
**held** [2:10] [10:7]
**hereby** [218:2] [219:4]
**hereto** [219:16]
**hesitate** [220:15]
**high** [49:20] [73:19] [76:19] [85:5] [166:15] [190:18] [206:19] [208:3] [209:9]
**highlevel** [49:20] [73:19] [76:19] [85:5] [190:18] [206:19] [208:3] [209:9]
**high-level** [49:20] [73:19] [76:19] [85:5] [190:18] [206:19] [208:3] [209:9]
**history** [8:14] [31:6] [57:19]
**hlw** [189:21]
**hold** [113:11]
**holders** [141:11]
**holding** [213:16]
**honestly** [7:14]
**hope** [213:12]
**hopefully** [40:20]
**hour** [7:4] [13:12] [151:18] [172:15]
**hours** [13:10]
**house** [51:5] [57:13]
**housekeeping** [172:21]
**however** [100:14] [152:11] [189:21] [198:12] [212:19]
**hundred** [130:11]
**hypothetical** [74:20] [204:22] [207:2]

I

**i.e** [160:12]
**idea** [23:11] [99:20] [104:20] [196:6]
**identification** [40:6] [42:17] [84:17] [146:17] [177:1]
**identified** [21:10] [24:12] [26:22] [31:17] [44:22] [54:20] [67:7] [90:20] [91:5,8,11] [215:21] [216:10 ,14]
**identify** [32:15] [127:19]
**illuminated** [57:3]
**im** [6:2] [8:21] [11:5] [18:2] [25:12] [28:19] [33:16] [35:5] [36:10] [39:3,12,18] [40:19] [42:6] [44:7,19] [52:17] [56:15] [57:15] [63:9,18,22] [72:21] [80:16] [81:2,17] [88:15] [101:21] [102:14] [103:10,20] [113:20] [117:8] [123:22] [124:9] [125:22] [126:18] [130:22] [132:22] [146:2] [147:7] [167:13,21] [168:12] [169: 18] [172:1] [176:19] [177:12] [178:3] [202:14,20] [205:7 ,11] [207:7] [210:13,16] [211:4,14] [212:9]
**impact** [57:20] [133:21] [174:2]
**implicated** [186:16]
**importantly** [6:17]
**imposed** [101:2]
**imprudent** [170:6]
**inaccurately** [62:6]
**inches** [83:12] [214:16]
**included** [4:17] [45:19,22] [50:13] [121:4] [128:17] [129:16] [141:8,9,10,11] [165:19] [174:19]
**includes** [161:10]
**including** [37:12] [41:7] [91:18] [169:17] [195:14] [207:16]
**inclusion** [50:14] [86:16] [182:2]
**incur** [134:8] [166:4,8,11,12 ,14,17] [168:7]
**incurred** [123:3] [139:19] [142:12] [160:14] [161:4,15] [171:6,8,9]
**indefinitely** [111:22] [112:19] [113:11]
**independent** [66:17]
**indicated** [36:22] [:]
**individual** [21:9] [60:19] [157:4,9]
**individuals** [18:12] [21:11] [22:13] [23:13] [31:16,18] [52:7] [54:21] [55:5] [67:6,15] [70:7] [71:17] [90:13] [179:19] [183:10]
**industry** [8:20] [10:4] [15:15] [20:2] [28:6] [34:3] [35:17] [57:20,21] [65:20] [66:6,10 ,21] [78:15] [84:5] [98:5] [117:5] [126:9] [127:22] [183:16]
**infer** [157:10]
**inform** [14:18]
**information** [8:3] [12:3] [32:11] [53:10] [54:12,21] [68:9] [88:21] [90:3] [93:21] [104:16] [107:4] [108:7] [122:8] [127:6] [136:21] [137:6] [139:6] [143:2,6,11 ,18] [144:17,20] [145:8] [149:4] [151:4] [152:1,5,11 ,15,17] [155:1,19] [156:3] [157:21] [158:4,8,14] [164:18] [165:7,14,17] [178:16] [183:20] [184:13] [185:19] [196:14] [202:8] [207:21] [208:18] [209:3]
**informed** [14:20]

**inperson** [14:3]
**in-person** [14:3]
**inphone** [14:2]
**in-phone** [14:2]
**input** [60:4] [138:9]
**inputs** [158:10]
**inputted** [129:10] [158:15]
**inquiry** [57:18]
**insight** [51:7] [60:5] [156:9]
**insofar** [68:19] [158:11]
**instance** [179:7] [190:19]
**institution** [67:14] [92:16] [93:16]
**institutional** [64:20]
**instruct** [58:19] [152:22] [153:3,13] [154:12] [165:4] [174:9,21] [183:2,6]
**instructed** [26:5] [172:13] [182:14]
**instruction** [153:16] [193:12]
**instructions** [6:3] [172:14]
**instrumentality** [33:13]
**intact** [76:18]
**intend** [114:18]
**intended** [55:13] [115:8] [120:16]
**intent** [15:8] [19:18] [27:8] [28:10,14] [33:7] [62:5] [105:10] [109:1] [110:3] [112:9,18] [113:4,11,17] [114:14] [116:3] [117:14,22] [119:11] [121:6]
**intentions** [58:17]
**interaction** [23:12]
**interested** [219:16]
**interim** [30:11] [165:2]
**interject** [179:17]
**internal** [155:21]
**interplay** [187:7,12]
**interpret** [122:6] [181:3]
**interpretation** [99:15] [182:20]
**interpretations** [139:11]
**interpreted** [6:15] [109:6] [122:4,21]
**interrelated** [179:6]
**introduce** [5:11]
**investigation** [114:3] [157:11]
**invoked** [211:1]
**involved** [18:16] [49:11] [52:7] [53:8] [67:6] [69:4] [71:18] [101:14] [181:13] [189:21] [196:14] [203:15] [208:18] [212:8]
**involvement** [143:13] [144:1] [146:6]
**isnt** [73:9] [194:21]
**issue** [17:10] [38:4] [55:22] [59:22] [87:22] [103:21] [104:13] [105:7] [133:19]
**issued** [177:8]
**issues** [11:17,21] [14:7] [23:15] [69:14] [112:7] [160:2] [172:8] [176:7] [181:8] [203:8]
**item** [14:22] [15:11] [131:6]
**items** [6:10] [165:18]
**itself** [16:13] [27:18] [28:19] [88:11] [113:20] [194:10,11] [200:20] [201:6]
**ive** [203:14]

J

**january** [15:18] [20:5] [34:7] [108:9] [110:15] [115:9] [116:2,11] [120:19] [123:6,15] [124:19] [133:22] [134:11] [138:21] [141:19] [166:18] [167:3,10,20] [174:5]
**jay** [23:16]
**job** [1:22] [11:1]
**jobs** [44:11]
**john** [159:12,14]
**joshua** [3:12] [220:1]
**judge** [57:17] [108:11] [114:11,13] [124:11] [160:17] [176:13] [178:13] [179:1]
**judgments** [161:18]
**july** [11:7] [34:19] [35:9] [37:22] [38:2] [123:10] [139:17] [142:21] [143:8] [146:22] [148:11,20] [149:8] [152:20] [160:9,18,22] [161:17] [162:3] [163:8,15,20] [166:5,6,18] [167:10,15] [169:17] [170:17] [173:7]
**june** [11:3,5] [41:7] [43:4] [91:18] [110:3] [133:12] [180:22]
**jurisdiction** [165:1]
**justice** [2:13] [3:14] [63:21] [89:9] [179:15] [183:2,9] [213:14]

K

**key** [11:17,21]
**kind** [8:16] [11:9] [42:5] [164:17] [166:22] [172:9] [204:12]
**kinds** [7:15] [211:18]
**knew** [71:15] [132:15]
**know** [8:7] [11:12] [12:17,22] [13:22] [20:11] [23:5,8] [30:13,16] [37:6] [39:22] [54:3,4,17] [58:13] [61:7] [64:4,13] [65:13] [73:4,6] [75:3,13] [81:21] [93:11] [94:6,22] [97:10] [99:13] [101:14] [102:16] [105:5] [106:5,7,16] [109:20] [121:22] [124:6] [128:6,12,14] [130:4,5] [132:12] [134:19] [140:21] [143:9] [144:15] [146:3] [151:6,7] [156:4] [159:4,5] [160:7] [163:9,11] [166:7] [167:22] [171:21] [172:2] [184:22] [185:5,11] [186:6] [187:4,17] [188:9,11] [194:17] [201:18,19] [206:14] [214:14]
**knowing** [212:8]
**knowledge** [39:14] [59:18] [64:21] [66:20] [71:21] [72:5] [89:5] [92:17] [93:21] [96:4] [102:21] [104:12] [125:8] [127:2] [133:8] [170:4] [187:2,6]
**knows** [188:16]
**kouts** [10:14,18,21]

L

**label** [34:19]
**labeled** [43:14] [45:10] [147:1]
**lack** [72:15] [77:4] [95:22] [98:7] [99:18] [106:3] [107:1] [109:18] [118:16] [137:19] [148:2] [150:4] [167:4,17] [168:10] [169:21] [184:2,16] [185:9,21] [186:11,19] [188:1]
**language** [109:9] [197:12]
**last** [13:1] [184:8,19] [213:21]
**later** [29:8] [51:12] [113:19] [148:12] [206:12]
**latter** [9:10]
**law** [5:13]
**lawrence** [13:19] [17:22] [18:5,19,22] [19:13,17,22] [20:8,12,21] [21:2] [23:14] [59:16] [61:14]
**lawyer** [175:14]
**lead** [92:10]
**learn** [24:21]
**learned** [184:18]
**least** [40:3]
**leave** [4:9] [40:12] [96:12] [184:4] [213:8]
**led** [196:14]
**legal** [46:6] [47:5] [73:21] [76:6,15] [80:5,14] [103:18] [104:9] [110:17] [115:19] [116:20] [119:13] [141:21] [142:8] [150:5] [190:10] [191:10,12,19] [192:4,7,19] [193:16] [195:19] [200:15] [201:5,22] [203:5] [204:22] [207:2] [208:7,15] [209:12]
**legislative** [31:6]
**length** [31:4]
**let** [7:10] [11:12] [62:13] [88:22] [89:7] [93:18] [121:22] [196:3] [197:16] [205:10]
**lets** [8:2] [12:12] [15:7] [24:13] [26:8] [34:14] [36:8] [42:11] [69:16] [77:7] [84:14] [89:10] [91:13] [105:9] [123:1] [127:6] [133:10] [153:6] [154:17] [163:2] [172:19] [175:17] [176:20] [181:1] [189:13]
**letter** [36:9] [85:1] [86:12] [102:10,17] [103:9] [146:14,22]
**letterhead** [85:3] [147:1]
**letters** [215:20] [216:5]
**lettow** [57:17] [114:11,13] [124:11] [160:17] [178:13]
**lettows** [108:11] [176:13]
**level** [150:22] [151:1] [155:18] [156:7] [166:15]
**levied** [165:1]
**liabilities** [139:19] [140:4] [149:19] [150:9,21] [173:4]
**liability** [16:1] [20:9] [37:10,13,18] [130:15] [131:7] [135:15] [142:16] [149:14,20] [151:2] [161:7,9,13] [163:1] [165:8,11]
**license** [100:17] [186:12,15,16] [187:3]
**licenses** [186:6]
**likewise** [15:21] [20:7] [21:9] [28:9] [175:4]
**limit** [34:19] [41:14] [69:21] [109:4] [176:9] [178:20] [182:14]
**limitation** [108:10,17]
**limitations** [101:1]
**limited** [5:17,20] [22:20] [34:12,15,22] [37:17] [41:11] [71:20] [91:20] [108:9] [123:7] [126:2] [129:3] [160:17] [173:6] [179:18] [188:22] [189:11] [193:19]
**limiting** [71:5] [213:19]
**limits** [35:8] [200:11]
**line** [130:18] [131:6]
**lines** [95:13]
**list** [32:21] [33:16,18] [40:16] [90:9,16] [145:15]
**listed** [90:14,17]
**listening** [119:17]
**listing** [129:11]
**lists** [146:15] [148:13]
**litigation** [11:17] [24:1] [30:15] [31:10] [38:22] [39:1,5,10] [129:2,6] [130:2] [131:7] [132:16] [138:12] [149:22] [150:8] [151:14] [158:20]
**little** [8:2,18] [14:21] [60:4] [93:19] [194:9] [198:8]
**lives** [20:12]
**llp** [3:5]
**lo** [13:7]
**located** [85:19]
**lodge** [33:10] [165:3]
**long** [9:16] [13:8] [74:12]
**longer** [161:13]
**longterm** [74:12]
**long-term** [74:12]
**look** [26:4,7] [29:7] [32:15] [36:8] [84:14] [86:7] [105:9] [106:9] [123:1] [124:4]

[126:17] [127:1] [128:15] [133:10] [135:3,5,9] [141:6] [145:7] [153:19] [154:4] [157:9] [158:1,3] [180:18] [189:3] [194:13] [211:6]
**looked** [24:5] [25:1] [75:22] [126:15,20] [127:11] [128:14] [131:20] [133:13] [135:11] [162:22] [164:19,20] [216:6]
**looking** [107:13] [131:5] [133:18] [134:2] [140:8] [162:14] [200:9]
**looks** [147:22] [148:10] [161:8] [211:8]
**loop** [172:19]
**lot** [17:12] [22:10] [199:8] [215:19]
**lunch** [166:1] [172:16]

M

**mailing** [146:15] [148:13]
**maintained** [70:17] [98:3] [149:11]
**major** [14:22]
**making** [77:12] [82:18] [85:4] [180:2] [181:1]
**man** [185:11]
**management** [9:1,4] [144:3] [169:2]
**mandated** [50:13]
**manion** [159:2,4]
**manner** [109:8] [118:2]
**march** [85:1]
**margins** [44:21]
**mark** [42:14] [176:20]
**marked** [40:5,10] [42:16,20] [84:16,20] [146:16,20] [176:22] [177:4] [189:14]
**material** [148:5] [158:2] [179:18]
**materials** [204:15,16]
**matter** [5:15] [25:8] [54:13] [177:9] [185:20] [213:13] [:]
**matters** [8:5,10]
**mattia** [177:18]
**may** [49:1] [72:18] [108:14] [128:11] [131:12] [133:5] [143:18] [145:17] [155:10] [156:18] [157:19,20] [164:18,19,20] [165:1] [168:6] [174:15] [175:12] [176:3] [177:14] [183:20] [189:20] [204:2] [209:8] [219:21]
**maybe** [13:12] [31:2] [73:16] [155:7]
**mean** [39:7] [46:12] [47:7] [49:14] [55:18] [65:13] [78:9] [82:17] [97:21] [98:8] [102:19] [106:6] [107:3] [116:7] [121:9] [143:19] [145:15] [151:2] [156:16,19] [157:10] [164:8] [190:5] [193:15] [195:17] [197:21,22] [206:4,5] [216:7]
**meaning** [110:4] [174:14]
**means** [15:16] [20:3] [34:5] [146:11] [153:20] [158:13] [163:19] [190:15] [192:16] [193:8] [195:1,4] [196:22] [199:12]
**meant** [11:10] [156:11]
**mechanics** [51:11] [99:4] [101:16]
**mechanisms** [24:19]
**medications** [7:15]
**meet** [12:21] [13:6] [191:14]
**meeting** [21:2] [173:1]
**meetings** [12:8,12] [13:3,5,9] [31:17] [211:17] [212:9,10]
**members** [51:2] [57:7,13] [58:1,17] [181:22]
**memorizing** [32:21]
**memory** [11:10] [28:21] [32:4,13] [94:16]
**mention** [27:7]
**mentioned** [13:13] [23:18] [24:2] [29:10] [90:8] [171:20] [203:1,22] [204:2] [205:11,16]
**met** [5:9] [20:18] [23:20]
**methodology** [162:5]
**mid** [133:13] [173:14]
**middle** [112:12]
**mike** [23:14]
**miltier** [136:14]
**mind** [61:10]
**minds** [49:11] [208:9]
**mine** [107:19]
**minimize** [168:6]
**minute** [5:10] [68:17] [105:9]
**minutes** [31:2] [165:22] [212:15]
**mischaracterize** [56:13]
**mischaracterizes** [50:4] [61:18] [66:4] [70:3] [72:1] [83:8] [87:10] [91:2] [92:22] [107:22] [112:3] [118:6] [119:14] [132:4] [135:8] [143:15] [149:3] [157:6] [162:18] [182:17] [192:18] [210:3] [211:13]
**modified** [39:22] [40:1] [108:4]
**morgan** [13:18,21] [14:3,6,10,15,18,20] [15:7,14,22] [16:6,10,19] [17:3] [18:2] [19:2,9] [23:20] [28:2] [50:16,21] [53:21] [54:7,9] [57:6,12] [59:7] [60:13,19] [61:3,11,20] [62:20] [64:4] [70:11] [73:7,9] [82:11] [85:2] [90:5,10] [92:9,14] [93:6,7,20] [94:4,14,21] [95:5] [96:10,13] [98:20] [99:1] [104:22] [105:5] [118:10] [119:17] [120:9] [121:6] [194:3] [197:11,17,19] [198:6] [199:2,19] [204:2] [205:16,19] [206:8] [209:15]
**morgans** [17:9] [24:7] [25:22] [26:2,9,10,20] [31:12] [58:1,16] [62:22] [63:14] [70:15] [114:6] [117:4] [118:9] [119:7,16] [120:1]
**morning** [5:9] [29:14]
**motion** [4:9] [40:12]
**move** [7:12] [26:2,8] [40:20]
**mr** [4:3,4] [5:8,9] [7:21] [10:14,18,21] [13:7,18,19,21] [14:3,6,10,15,18,20] [15:7,14,22] [16:6,10,15,16,19] [17:1,3,7,9,16,20,22] [18:2,5,19,22] [19:2,8,9,13,17,22] [20:8,12,21] [21:2,5,7,14,20] [22:3,5,16,19] [23:2,5,20] [24:7] [25:22] [26:2,9,10,20] [28:2,17] [29:5] [31:12] [32:12,17,22] [33:10,11,19,21] [34:11,14,15,17,18] [35:3,4,5,7,11,19,20,22] [36:2,3,6,7,8,10,12,14,17,18,19,22] [37:2,5,7,9,16,22] [38:2,7] [40:7,8] [41:3] [42:18,19] [43:1,8,10,13,20,22] [46:5,7,9,14,16] [47:4,13,20,22] [48:20] [49:3] [50:3,4,6,11,16,21] [52:14,19] [53:15,20,21] [54:1,5,7,9,11,14,18] [55:14] [56:3,20] [57:4,6,12,15] [58:1,4,13,16,19,21] [59:1,2,7,8,16,17] [60:13,19] [61:3,11,14,17,18,20] [62:3,20,22] [63:7,11,14] [64:4,8,15] [65:8,17] [66:3,4,11] [67:18] [68:7,10,12,14] [69:17,20] [70:2,3,11,14,15,18,20] [71:4,7,8,9,22] [72:1,8,14,22] [73:7,9,11,15,20] [74:4,7,17] [75:1,7,10,11,15,18,21] [76:4,10,13,20] [77:3,6] [79:17,20,21] [80:4,8,13,18] [81:2,6,19] [82:1,4,9,11,16] [83:2,7,8,17] [84:14,18,19,22] [85:7,8,11,14,16,19,21,22] [86:3,4] [87:9,14] [88:14,17] [89:3,6] [90:5,10,15,19] [91:1,2,5,6] [92:6,9,13,14,21,22] [93:2,4,6,7,13,20] [94:2,4,8,14,21] [95:5,9,15,22] [96:8,10,11,13,17] [97:1,7,9,13,16,22] [98:6,10,20] [99:1,6,12,16,21] [100:3,5,7,9,10,13,15,17,19,21] [101:3,8,13,19] [102:1,8,12] [103:16,22] [104:7,14,17,21] [105:1,5,8] [106:1,2,3,12] [107:1,7,21] [108:2,8,19,22] [109:7,11,15,17,18] [110:1,16,20] [111:6,12,16,19,21] [112:3,4,8,11,17,21] [113:3,10,15] [114:2,6,20,22] [115:5,18] [116:1,6,9,14,16,17,19] [117:3,4] [118:5,6,9,10,12,15,20] [119:4,7,9,12,14,16,17,21] [120:1,9,21] [121:6,12,17,19] [122:2,11,13,14,16,18,22] [123:20] [124:3,9,16] [125:4,8,9,11,14,19,22] [126:3] [127:15] [128:3] [129:22] [130:4,9] [132:3,4,10,12,13] [133:9,14] [135:7,8,16] [136:12,14,18,22] [137:4,8,11,15,17,18] [138:1,4,22] [139:12,18,19] [140:1,10,14,17,19] [141:1,7,20] [142:2,7,11,13,18] [143:14,21] [145:11,13,20] [146:10,18,19] [147:7,12,18] [149:2,3,9] [150:1,10] [151:17,19,21] [152:1,21,22] [153:4,7,12,17,22] [154:1,3,7,11,16,19,21] [155:12] [156:8] [157:5,6,15] [159:4,7,11,16,20] [160:3,8,16,20] [161:21] [162:6,17,18] [163:5] [164:7,14] [165:3,4,9,22] [166:2,12,14,16] [167:4,11,17,19] [168:8,15,18,21] [169:4,12,18] [170:9,11,15] [171:1,10,13,15,16,18,20,22] [172:2,4,18,19] [174:8,21] [175:1,3] [176:20] [177:2,3,14,19,22] [178:2] [180:1,12,14,15,17] [181:2,5,6,15,18,20] [182:6,12,16,17,22] [183:4,7] [184:1,9,15,21] [185:8,12,21] [186:3,8,14,19] [187:5,10,13,22] [188:5,6,10,18,20] [189:5,9] [190:3,9,13] [191:9,16,19,21] [192:3,11,17,18] [193:2,11,14] [194:2,3] [195:7,18] [196:5,9,11,12,16] [197:1,3,5,7,11,15,17,19] [198:2,6,11,15,21] [199:2,19,22] [200:5,14,16,19] [201:1,4,11,20,21] [202:4,13,16] [203:4,10,12,21] [204:2,7,17,21] [205:5,16,19] [206:1,6,8,15,16] [207:1,9] [208:6,11,14,19,21,22] [209:11,15,16] [210:2,3,8] [211:12,13,16] [212:15,17] [213:15,17] [214:3,5,21] [215:3,8,12,14,18] [216:18,20] [217:4] [220:1,8]
**mtu** [76:18]
**multiple** [6:5,16] [200:1]
**myself** [5:11] [136:12,19]

N

**n.w** [2:14] [3:6,15] [220:]
**name** [5:12] [135:22] [136:3,6] [147:21] [:]

**names** [18:14] [146:14]
**narrowed** [40:18] [41:21] [108:4] [179:7]
**national** [21:16]
**nature** [126:22] [128:2]
**ne** [43:3]
**necessary** [182:10]
**need** [6:12] [7:4] [59:2] [91:14] [97:14] [106:19] [120:14,17] [121:7] [135:2] [138:15] [139:7] [155:20] [161:22] [181:20] [193:6]
**needed** [54:22] [107:12]
**needs** [107:6]
**neglected** [23:1]
**neither** [61:13] [219:11]
**next** [180:7]
**no** [1:4,,22] [6:13] [7:17] [10:13] [16:4,11] [17:17,21] [18:4,7,20] [19:10,17,21,22] [20:6,10,13,19] [22:4,17] [23:7,11,14] [27:7] [28:8] [29:2,15] [31:8,11,15,20] [32:2] [35:12] [36:6,7,18,20] [38:18] [39:3] [40:5] [42:16] [43:3] [44:3] [48:9] [51:4,6 ,7] [52:3] [53:7,8] [56:13] [57:2] [58:5,21] [59:6,10,14 ,21] [60:6,12] [61:20] [63:16] [65:21] [66:16,19] [67:6] [70:19,22] [71:7] [72:5,20] [73:3] [75:20] [78:3,19] [79:7] [80:7] [82:22] [84:10 ,13,16] [85:12] [86:6] [87:11] [88:3,16,20] [89:5] [90:17] [91:10] [93:12] [94:15] [95:1,11] [97:16] [98:12,19 ,22] [99:11,20] [103:4] [104:12,20] [106:7] [107:3] [108:10,17] [110:11] [113: 17] [114:22] [118:8] [120:11] [121:19] [122:15] [124:6,15] [125:11] [126:14] [136:3,5] [137:10] [139:22] [140:2,3] [141:12] [142:2,22] [144:5 ,11] [146:16] [150:7,14] [154:7] [161:13] [162:1,4] [163:2] [166:14] [169:9] [170:4] [171:15,18] [176:22] [177:19] [180:19] [181:12] [183:13] [184:5] [185:1,4] [186:2] [188:13,14] [189:2] [192:14] [196:6,7,14] [198:20] [199:6,10] [201:12] [203:16] [207:13,19,21] [208:18,20] [209:2,3,5,7,15] [210:13,16,21] [211:10,14 ,15] [215:7,8] [216:10,16,21] [217:4]
**nobody** [199:16] [202:7]
**nods** [6:13] [162:9]
**nondisclosure** [140:16]
**nondiscovery** [140:16]
**none** [11:10] [84:9] [126:16] [131:2] [134:4] [187:15]
**nonperformance** [134:15]
**nor** [29:3] [219:11,16]
**normal** [38:18]
**northern** [24:7] [25:22] [26:10,16,20] [28:10] [31:13]
**notary** [2:22] [219:1,19]
**notation** [44:21]
**note** [43:13] [85:11]
**noted** [:]
**notes** [94:13]
**nothing** [5:4] [71:16] [82:21] [102:21] [112:15] [131:2] [132:8,13] [140:3] [162:2] [163:20] [171:4] [196:2]
**notice** [2:21] [4:12] [32:14] [35:13] [41:19] [77:12,22] [82:18] [85:3] [105:3] [108:3] [109:9] [171:12,21] [180:5,18] [186:9,21] [189:22] [207:4] [211:4] [212:13] [213:19] [216:4]
**noticed** [172:11]
**notices** [48:17]
**nrc** [36:3] [66:12,14] [81:1] [99:13,20] [144:19] [145:8] [157:17,19] [183:10,15,20] [184:6,12,13] [185:3,19] [186:6] [187:3,7,17] [188:3] [214:22] [215:4]
**nrcs** [36:5,19] [100:4]
**nuclear** [1:7] [6:6] [8:19,20] [9:21] [10:3,4] [15:10,15] [20:2] [21:17] [33:9] [34:3] [35:17] [50:1] [51:22] [52:5] [56:12] [57:14,20,21] [59:18,19] [60:10,14] [61:6,15] [62:12,16] [63:5] [64:5] [65:6] [66:1,10,21] [67:17] [68:3] [72:11,12] [73:17] [75:12] [76:3] [80:2,11] [81:13] [85:5] [92:4,5,20] [98:4] [99:2] [101:6] [103:3] [104:5] [105:13] [106:20] [109:13,22] [110:9,10] [111:4] [112:2] [115:9] [123:3] [125:12] [126:9] [127:22] [134:9] [138:20] [142:20] [151:2] [153:20] [157:4] [161:20] [169:3] [174:5] [183:16] [185:15] [186:7,17] [197:4 ,12] [203:19] [205:14]
**number** [6:3] [8:5] [9:5,12] [10:19] [30:17] [149:7] [151:15]
**numbers** [135:12]
**numerical** [143:18]
**numerous** [172:3]
**nwp** [46:1]
**nwpa** [28:11,12,14] [29:4] [31:6] [50:18] [56:19] [58:2,16,18] [75:8] [76:8,16] [115:16] [117:14] [123:18] [182:3]

O

**obey** [193:11]
**object** [32:12] [34:11] [36:2] [46:5,9] [52:14] [57:16] [58:21] [66:7] [68:3] [76:5] [80:4,13] [81:2] [83:7] [107:21] [124:9] [125:22] [129:22] [136:22] [138:1] [142:11] [152:21] [153:12] [157:5] [160:16] [161:21] [164:7] [169:18] [170:11] [174:8] [183:4] [190:9] [191:9] [195:18] [213:16,20]
**objection** [22:16] [28:17] [33:11] [47:20] [48:20] [50:3] [53:15] [54:1,14] [55:14] [56:20] [61:17] [63:7] [64:8] [65:8,9] [66:3 ,5] [68:12] [69:17,18] [70:2 ,18] [71:4,22] [72:14,15] [73:11,20,22] [75:1,10,18] [76:4,13,14] [77:3,4] [81:19] [82:4,16] [87:9] [88:14] [89:3] [90:15] [91:1] [92:6,21] [94:2] [95:9,22] [96:1,11,12] [97:1,2,3,16,17,18] [98:6] [99:6,7,8,16,17] [101:8,19] [102:8] [103:16,17] [104:7 ,8,17,18] [105:1,2] [106:3] [107:1] [109:18] [110:16,17 ,18] [111:6,12,13,14] [112: 21] [113:1] [115:18,19] [116:6,14,19] [118:5,15,16] [119:4,12,13] [120:21,22] [122:18] [123:20] [132:3] [133:9] [135:7] [137:1,8,18 ,20] [138:22] [140:11] [141:20] [142:7] [143:14] [145:11,12] [146:10] [149: 2] [150:1,4] [154:11] [159:7] [160:3] [162:17] [165:4] [167:4,5,6,17] [168:8,9,10 ,18] [169:4,20] [181:15] [182:6,16] [184:1,2,15,16] [185:8,9,21,22] [186:8,19] [187:10,22] [188:6,18] [189:5,6] [190:10] [191:19 ,20] [192:3,17,19] [193:17] [197:1,2,7] [198:2,15] [199:22] [200:1,14,19] [201:4,21] [202:13] [203:4 ,5] [204:7,8,21,22] [205:1] [206:1,2,15] [207:1,2,3] [208:6,14] [209:11] [210:2 ,9] [211:12] [216:18]
**objections** [47:4] [67:19] [68:6] [74:7] [97:9] [150:2] [203:12]
**obligation** [145:13]
**obligations** [28:16] [29:1] [169:3] [213:18]
**obtain** [12:14] [81:14] [138: 16] [143:1] [144:17] [209:3]
**obtained** [152:6]
**obtains** [157:22]
**obviously** [201:8] [214:1]
**occasions** [172:3]
**occur** [49:5,6]
**occurred** [49:11]
**odd** [100:12]
**off** [7:8] [49:17] [79:17] [154:17,21]
**offer** [12:2]
**offered** [78:14] [160:1] [176:14] [213:2]
**offering** [171:13,17]
**office** [8:22] [9:5] [212:14]
**officer** [9:8,12] [11:6] [44:9] [46:15] [47:2,15] [48:12] [102:11] [192:12] [219:2]
**offices** [148:11]
**official** [10:2]
**officials** [38:12] [81:1]
**oh** [147:6]
**okay** [6:2] [8:19] [9:10,16] [10:1,6] [13:2,17] [14:9] [15:2] [16:22] [17:18] [18:3] [20:11] [21:14] [23:1] [27:4] [30:5,20] [31:5] [33:20] [37:2] [38:10] [43:19] [44:4] [45:6] [46:12] [47:14] [49:4] [52:9,20] [53:9] [55:9] [56:18] [60:1,13] [65:3] [67:9] [69:7] [71:19] [73:4,16] [80:9] [84:4,14] [86:2,7] [88:8] [90:2,5] [91:7] [94:9] [95:19] [99:13] [102:2] [105:20] [106:13,18] [110:12] [114:3] [117:12] [119:10] [120:8] [122:14] [124:17] [129:8] [130:16] [133:4] [135:1] [138:15] [140:5] [144:9] [145:2,7] [148:1] [157:2,21] [159:21] [164:15] [166:21] [171:16] [173:22] [175:16] [176:13] [178:12] [183:8] [185:13] [191:5,17] [193:3] [196:17] [202:9] [206:11,17] [211:17] [212:5,11] [214:17]
**once** [199:5]
**one** [13:10] [21:11] [26:6] [33:16] [39:11] [44:6,10,16 ,19] [52:3] [62:16] [63:6] [64:6] [65:6] [66:2] [67:2,6 ,16] [72:12] [76:8] [80:3,12] [81:12] [88:5] [90:17] [94:1] [95:7] [100:12] [103:15] [104:6] [108:16] [109:13] [110:12] [115:7] [128:16] [130:10] [131:4] [137:12] [145:16] [156:10,12] [157:12,13] [158:10] [163: 3] [179:6] [187:9] [199:10] [203:16] [204:1,13] [205:12] [207:19] [215:13] [216:3,5 ,9]
**ones** [19:1] [44:16] [70:9] [72:3] [89:21] [130:22] [216:13]

**onsite** [15:9] [19:19] [24:19] [25:12,14] [27:10,22] [30:10] [33:9] [105:12] [106:20] [107:16] [109:2,5] [110:6,14] [111:4,9] [112:1,20] [113:5,12,22] [114:15,19] [116:4] [117:6] [118:3] [120:18] [121:7,10,16]
**on-site** [15:9] [19:19] [24:19] [25:12,14] [27:10,22] [30:10] [33:9] [105:12] [106:20] [107:16] [109:2,5] [110:6,14] [111:4,9] [112:1,20] [113:5,12,22] [114:15,19] [116:4] [117:6] [118:3] [120:18] [121:7,10,16]
**open** [213:8,16]
**operate** [22:15] [46:11,13] [47:3] [102:4] [169:7]
**operates** [46:4,12]
**operating** [100:16]
**opinion** [177:8] [179:8] [201:9,12] [203:5] [207:11,14]
**opposed** [38:8] [197:6]
**opposing** [220:13]
**options** [125:7,10,20] [142:20] [143:7,10,19] [145:16,18] [164:4] [167:1]
**order** [11:22] [24:13] [34:12] [40:1,18] [42:10] [44:16] [54:7,22] [94:10] [108:5,12,13] [120:1] [128:8] [135:1] [138:16] [139:15] [147:8] [152:18] [181:4] [213:7,19]
**ordinarily** [6:4]
**ordinary** [128:22]
**original** [18:16] [21:12] [43:16] [220:10,] [:]
**otherwise** [216:13] [219:16]
**outcome** [219:17]
**outfall** [151:14]
**outside** [19:15] [28:7] [67:20] [73:22] [82:13] [111:11] [113:8] [181:7] [189:3]
**overall** [151:15]
**overbroad** [188:6]
**overlap** [42:5]
**overrode** [50:6]
**overseeing** [183:16]
**oversight** [143:13,16]
**owing** [37:18]
**own** [109:4] [216:17,22]
**owned** [109:13]
**owner** [86:15] [187:9]

P

**p.m** [217:6]
**page** [4:2] [40:14,16] [43:14,16] [44:21] [45:9,10] [86:8,9,11] [108:13] [147:6] [178:3,7,11,14] [180:3,8] [189:17] [220:10,]
**page/line** [:]
**pages** [218:3]
**papers** [70:16]
**paperwork** [146:7,12] [148:2] [211:1]
**paragraph** [86:10] [178:5]
**paragraphs** [178:10]
**parallel** [178:15]
**parameters** [163:18]
**parrot** [201:16]
**parse** [163:3]
**parsed** [89:20]
**part** [21:12,17] [24:2] [41:19,20] [43:15] [55:19] [78:4] [85:14] [89:10] [118:11] [126:4,6] [129:5] [138:16] [205:3]
**participated** [211:20] [212:4]
**particular** [14:9] [26:19] [34:4] [44:3] [99:5] [126:10,14,16] [127:2,8] [152:15] [153:11] [162:15] [165:1] [187:19] [194:22]
**particularly** [10:8] [120:10] [134:7] [172:8] [173:4] [175:19] [185:16]
**parties** [15:8] [19:18] [27:9] [33:8] [68:20] [69:1] [82:13] [91:19] [108:20] [109:1] [110:4] [112:10] [113:4] [180:10] [219:12,15]
**parts** [214:8,17]
**party** [62:16] [63:6] [64:6] [65:6] [66:2] [67:2,16] [72:12] [74:9,11] [80:3,12] [81:12] [94:1,6] [95:7] [202:10]
**passage** [58:15]
**past** [136:13] [159:6] [161:4] [170:5]
**patel** [18:10]
**paths** [23:22]
**patrick** [3:13]
**pats** [36:8]
**pay** [191:15] [206:21]
**pending** [7:7]
**people** [10:14,16] [18:13,14] [48:15,16] [69:8,10,22] [90:17] [93:10] [97:20] [136:9] [204:12]
**per** [33:18] [84:13] [132:14] [157:3]
**perform** [131:9] [162:3]
**performance** [118:2] [123:15] [124:12,19] [142:17]
**performed** [78:19] [127:8] [128:7,12] [132:19] [139:15] [152:13] [157:1,3] [160:22] [163:12] [173:11] [175:5] [216:16]
**performing** [27:20] [129:1] [158:1,2] [162:7,10] [164:6]
**perhaps** [136:13] [140:5] [144:19] [173:9] [179:16]
**period** [91:21] [95:2] [163:1] [164:1] [180:5] [181:14] [185:16] [216:5]
**periodically** [149:13]
**permissible** [50:2] [56:12]
**permit** [75:8] [76:2] [81:10]
**permits** [75:14,16]
**permitted** [42:2] [58:10] [81:9,11]
**person** [97:14]
**personal** [11:20] [62:22] [71:21] [133:7] [134:13] [171:11] [187:1] [193:19] [194:21] [199:17,19] [201:15,17]
**personally** [88:3]
**pertaining** [69:15] [130:19] [172:8] [173:18] [181:8]
**pertains** [173:3]
**phone** [13:11] [14:4] [16:20] [18:3] [21:6] [94:19] [120:9,15] [212:11]
**pick** [93:18] [125:12] [127:6]
**picking** [115:8]
**pilgrim** [34:4,16,20] [35:9] [102:3] [103:8] [105:22] [106:7] [107:18,19,20] [108:1,9,18] [109:5] [120:19] [123:11] [126:10,14,16] [127:9,14] [128:8,13,16] [129:9,14,15,19] [130:6,17,20] [131:3,5,8,9] [132:14] [133:6] [134:7,10] [139:20] [140:9] [141:17] [145:9,22] [152:16] [153:11] [160:11] [163:14] [164:4,13] [173:7,18] [174:6] [212:2,3]
**place** [94:19] [95:3] [103:5,11] [118:2] [125:1]
**plain** [109:9]
**plaintiff** [1:8] [3:2] [4:8] [5:6] [215:10]
**plan** [67:15] [167:21]
**planned** [65:5,15]
**planning** [166:22] [167:9,14]
**plans** [65:21] [168:4,13]
**plant** [34:21] [56:12] [59:18,20] [60:10,15] [61:6,16] [63:5] [64:6] [65:6] [66:1] [67:2,16,17] [73:18] [80:2,11] [81:11] [92:5,20] [94:1] [95:21] [96:21] [102:3] [103:3,7,15] [104:6] [105:22] [109:14] [110:10] [120:19] [123:11,12] [124:8] [134:6,10] [139:20] [140:9] [141:17] [145:9,22] [146:4] [157:4,11] [163:14] [164:4] [173:8] [174:7] [185:15] [186:18] [187:9] [204:20] [205:3,7] [209:19] [210:11] [212:1,2,3]
**plants** [52:1,5] [57:14] [62:12,16] [68:3] [72:12] [95:7] [98:4] [101:7] [109:22] [152:3] [157:9] [186:7,13]
**please** [6:20] [59:4] [62:7] [93:3] [139:6] [204:4] [220:9,12,]
**plower** [66:1]
**point** [9:11] [11:8] [24:11] [38:10] [53:2] [75:6] [83:12] [98:2,19] [103:10,20] [106:8] [118:19] [148:12] [151:9] [163:4] [193:20] [200:10,17] [208:16]
**policy** [57:21] [75:12] [197:4,13] [203:19]
**political** [76:1]
**pollock** [136:12,18] [147:18]
**pool** [106:9,17]
**pools** [125:16]
**populated** [152:14]
**populating** [154:6]
**portion** [177:17] [202:12]
**portions** [48:16] [215:15] [216:11]
**pose** [61:5]
**position** [9:3,11,17,18,19] [10:6,12] [11:16,21] [52:2,11] [53:4,9] [54:12] [55:10] [56:8,11] [60:21] [63:2,10,15] [66:22] [67:4] [68:5] [69:6] [70:10,13] [79:22] [80:7] [84:2] [87:4,12] [99:14] [100:2,4] [106:18] [107:15] [111:17] [113:7] [115:13] [120:4] [175:2,16] [181:3] [199:14] [201:19] [202:2] [207:14] [208:12,20] [209:2,5,7] [211:10] [213:5]
**possesses** [152:5]
**possession** [131:17]
**possibility** [56:5] [64:5] [205:19]
**possible** [50:7]
**possibly** [65:11]
**post** [82:3]
**postulate** [55:21]
**potential** [15:15] [16:1] [20:2,8] [25:2] [34:3] [35:16] [37:10,13] [59:17,19] [66:1] [98:4] [126:9] [127:21] [128:15] [130:14] [131:7] [141:6] [149:14,19] [150:21] [161:8] [163:1] [203:22] [205:17]
**power** [24:8] [34:3] [35:17] [51:22] [52:5] [57:14] [60:10,14] [61:6,16] [67:17] [68:3] [72:11,12] [80:2,11] [92:5,20] [98:4] [101:6] [109:13,22] [110:10] [126:9] [127:22] [185:15] [186:7,12,18]
**precluded** [103:13] [104:5] [124:11]
**prefer** [124:4]
**preliminarily** [7:11]
**preparation** [24:3] [28:3] [45:14] [69:22] [70:4] [82:6] [88:6] [89:11] [90:6,22] [91:9] [145:3,9] [212:7] [213:1] [214:9,18] [215:16]
**preparations** [12:6,14]

**prepare** [31:21] [82:3] [110:8] [118:22] [126:13] [161:7] [182:10] [183:11]
**prepared** [12:3] [29:18,22] [30:21] [32:16] [33:16] [35:1] [109:7] [130:1] [131:6] [134:12] [136:1,8,9] [137:13] [148:22] [155:5] [160:10]
**preparing** [31:6] [77:21] [114:4]
**present** [35:6] [149:11] [162:8]
**presently** [10:2]
**press** [157:20]
**presume** [87:13] [98:8,19] [106:8] [168:3] [187:2] [194:18]
**pretty** [40:3] [47:17] [201:2]
**previous** [61:18] [72:1] [83:8] [91:2] [92:22] [110:18] [112:4,12] [114:10] [118:6] [119:14] [132:4] [135:8] [149:3] [157:6] [160:14] [162:18] [182:17] [192:18] [210:3]
**previously** [16:7] [37:16] [62:7,8] [111:14] [112:22] [115:6] [173:13] [189:14] [209:17]
**primarily** [17:4] [158:5] [183:15]
**printed** [195:13]
**prior** [10:7] [50:6] [87:21,22] [115:7] [117:5] [159:22] [160:6] [167:15] [173:10] [204:5] [210:1] [216:6]
**priority** [41:18]
**private** [168:17]
**privilege** [12:16] [130:3] [138:3] [139:2] [155:3]
**privileged** [140:15] [155:6]
**privileges** [165:16]
**probably** [16:18] [20:13] [35:7]
**procedure** [220:14]
**proceeding** [217:5]
**proceedings** [5:1]
**p-r-o-c-e-e-d-i-n-g-s** [5:1]
**process** [11:4] [76:21] [77:9,15] [138:11] [181:14 ,16] [186:15,16] [187:4]
**produced** [30:14] [85:13,17]
**product** [127:17] [139:3] [140:12] [153:1,2,5,14] [154:13] [165:6,16] [172:14] [174:14]
**program** [117:9]
**programatic** [118:9] [119:7] [121:5]
**programatically** [119:18]
**prohibited** [104:5]
**prohibition** [50:7]
**prohibits** [80:2,11]
**projections** [160:12]
**projects** [161:11,12]
**promulgated** [62:10] [77:10] [196:17] [202:3]
**promulgation** [14:12] [18:16] [176:8] [200:4]
**property** [164:22]
**proposed** [4:12] [77:1] [85:3]
**propound** [175:12]
**propounded** [34:1] [35:21]
**prospective** [82:22] [102:7]
**protected** [155:2]
**protections** [155:3]
**provide** [32:10] [33:6] [54:12] [64:20] [72:9] [78:13] [89:15] [138:7] [183:9] [194:12]
**provided** [18:14] [29:11] [30:22] [43:5] [72:5] [74:20] [78:11] [86:15] [88:5,20] [90:7,9] [103:9] [108:6] [127:7] [137:5,16] [138:13] [149:1] [151:4,6,12,15] [158:20] [176:11] [189:21] [195:14] [207:15] [211:2] [212:13] [216:3,21]
**provides** [76:8,16] [149:4] [158:12]
**providing** [138:9] [150:20] [156:9]
**provision** [17:5,8,15] [19:3 ,6,8,11] [21:22] [22:9,14] [33:2] [41:13,17,22] [42:1] [45:12,13,18] [46:1,4] [47:3,8,11] [48:11,19] [50:14] [51:8,11] [52:12,21] [53:1,6,12,13] [55:13,20] [56:1] [57:8] [58:9] [60:3] [62:2] [68:21] [78:16] [79:8] [80:1,10,17] [81:8] [82:15,21] [84:12] [87:7] [88:13] [89:14] [91:22] [99:5] [101:5,16] [102:3] [103:2,6] [176:1,8] [178:21] [179:3] [181:9] [182:2] [185:6,17] [187:21] [189:18] [193:20] [194:5,7,10,11,13] [196:20] [198:7,13] [199:2 ,6] [202:8] [203:17] [207:20]
**provisions** [14:17,19] [15:4] [19:16] [22:6] [46:21] [57:9] [76:2] [82:8] [84:6]
**prudent** [169:2,15] [170:20]
**prudently** [171:8]
**public** [2:22] [78:15] [144:22] [156:4] [158:6] [219:1,19]
**publicly** [155:18] [157:16] [158:9] [164:17]
**published** [77:17,19] [177: 10] [196:19]
**publishing** [196:18]
**pull** [108:11]
**purchaser** [47:9] [49:1] [73:18] [74:8] [86:16] [111:10] [189:19] [190:4,7 ,15,16] [191:1,2] [197:21] [199:12] [200:12] [202:10,11 ,18,20] [204:20] [205:3,6,8]
**purchasers** [86:19] [209:8]
**purport** [58:13]
**purpose** [5:17] [25:8] [28:20] [53:12] [57:8] [80:20] [103:7] [111:3] [150:15] [151:13] [171:12] [194:20] [209:1]
**purposes** [5:10] [6:10] [7:5] [39:20] [40:10] [42:21] [56:1] [75:9] [84:21] [99:21] [101:6] [103:2] [110:13] [146:21] [148:14] [149:15,17] [150:12,13] [164:2] [177:5] [180:15] [200:12] [210:11] [211:19,22] [212:1] [213:9]
**pursuant** [2:21] [28:12] [42:3] [58:11] [172:13] [210:19] [213:7]
**pursue** [45:7]
**put** [22:11] [46:2] [47:8] [82:19] [88:8] [100:11] [119:19] [153:2,5,15] [197:13] [198:9,19] [203:18]
**putting** [100:22]

Q

**qualitative** [28:16]
**quantification** [148:21]
**queries** [129:9]
**query** [129:12]
**question** [7:7,8] [32:18] [53:19] [58:14] [59:1,7,9,13] [61:5,8] [65:12] [66:8] [67:10] [68:7] [71:5,6] [72:19] [85:17] [89:7] [95:17] [97:11] [109:8] [113:8,14] [127:19] [128:4] [135:2] [137:15] [139:5] [140:20] [142:5] [148:15] [154:4,8] [163:7] [171:2,4] [174:9,12] [181:19] [189:7] [192:22] [193:15] [196:3] [197:8] [198:1] [204:10] [215:2,14]
**questions** [6:18,19] [7:1] [36:15] [37:4,9] [39:16,18] [41:1,14] [51:10] [54:7,10] [58:20] [60:9,11,14] [67:19] [84:10] [100:17] [114:12] [115:7] [124:12] [148:16] [155:9] [171:11] [172:12] [175:12] [177:13] [185:14] [193:9] [198:14] [199:3,9] [201:9] [212:18] [213:5] [214:3,22] [215:9] [217:4] [220:]
**quick** [215:13]
**quickly** [29:21]
**quite** [55:22] [101:21] [104: 1] [116:8] [118:10] [156:11]
**quizzing** [11:15]

R

**radioactive** [8:22] [85:5]
**raise** [9:11]
**raised** [61:15]
**rate** [29:3] [113:17] [114:8,12] [160:1] [170:6]
**rather** [86:13] [123:12]
**re** [13:7] [85:3] [220:6]
**reactor** [49:16] [74:16] [110:14] [116:5] [124:22] [125:2,6]
**reactors** [41:18]
**read** [26:12] [28:1] [59:2,4,5] [85:22] [142:4,6] [154:8,10] [159:17] [177:17] [198:13] [199:2] [206:20] [211:5] [213:22] [218:3] [:3,4]
**reading** [220:11]
**reads** [86:12] [189:19]
**reagan** [50:6]
**really** [8:7] [19:15] [42:5] [55:20] [102:21] [133:13] [134:5]
**reason** [7:13] [65:3] [95:6,19] [138:7,8] [156:14] [169:10] [184:5,12] [:]
**reasonable** [96:18] [97:6,12] [169:15] [170:21]
**reasonably** [171:7]
**reasons** [:5]
**recall** [15:11,19] [16:4,8,14] [17:17] [19:14] [20:22] [21:3,4] [24:10] [28:4,20] [29:6,11,19] [30:18] [44:18 ,19] [51:4] [61:4] [86:6] [102:19] [135:12] [147:10] [194:8] [212:21] [214:15]
**recalled** [212:12]
**receipt** [220:12]
**receive** [136:20] [176:18]
**received** [48:17] [49:19] [77:18] [87:5] [102:17,20] [148:5,10,12] [176:19] [180:4]
**recess** [79:19] [151:20] [154:18] [172:17] [212:16]
**recollect** [33:17]
**recollection** [11:13] [14:11 ,21] [15:2] [17:7] [19:7] [27:2,19] [29:15] [59:14] [62:1] [63:1] [78:17] [79:7,11 ,12] [102:10] [134:13] [194:9] [198:8,20] [199:6] [203:17] [207:20]
**record** [5:11] [6:11,13] [7:9] [39:20] [41:3] [43:1] [52:17,21] [53:1] [59:5] [71:16] [77:22] [78:2,4,8,18 ,21] [79:3,6,18] [82:20] [83:3,5,11] [85:1,15] [87:13 ,21] [88:3] [99:22] [142:6] [148:15] [153:6] [154:10,17 ,20,22] [177:6,15] [179:13] [180:2] [181:1,2] [212:19] [213:10,15,16] [214:7,9,13 ,18] [215:16] [216:12,17,22] [217:1] [219:10] [:5]

**records** [106:9] [134:19,20] [144:19]
**reduced** [219:8]
**reed** [159:14]
**reeds** [159:12]
**refer** [91:14]
**reference** [187:20]
**referenced** [131:3]
**references** [108:21] [179:1,9]
**referencing** [108:1]
**referring** [45:11]
**refers** [191:8] [196:8]
**reflect** [149:14] [153:8]
**reflected** [158:14]
**reflection** [6:22]
**refrain** [6:14]
**refresh** [11:13]
**reg** [85:6]
**regard** [15:9] [126:14]
**regarding** [15:3,7,14,16,22] [16:6] [19:18,19] [20:1,3,8,9] [28:10] [31:18] [33:7,8] [38:22] [52:12] [53:5] [59:19] [63:2] [68:17] [69:14] [77:2] [78:14,15] [79:6] [82:14] [84:6,7] [88:12] [89:13] [93:21,22] [99:3] [100:4] [103:1,6] [105:10,12] [106:19] [107:16] [108:15] [109:2] [110:5,8] [113:5] [114:15,18] [120:10] [122:9] [128:13] [129:9] [143:6] [145:8] [148:3,6,17] [152:15] [176:14] [178:21] [182:1] [185:14,20] [199:20] [201:19] [211:18] [220:11]
**register** [196:18]
**regular** [168:4]
**regulate** [66:10]
**regulates** [66:6]
**regulating** [65:20] [183:16]
**regulation** [66:21]
**regulations** [103:13] [104:4]
**regulatory** [81:13] [99:3]
**relate** [175:22] [204:3]
**related** [11:17,21] [14:8] [16:2] [25:13] [37:11] [40:16] [41:13] [64:1,2] [127:9,11] [131:22] [134:15] [135:13] [166:13] [176:7] [219:11]
**relates** [123:2] [180:4] [185:16]
**relating** [9:6] [128:7]
**relation** [25:9]
**relationship** [100:15]
**relative** [163:13] [219:14]
**relevance** [137:2,20] [185:10] [206:3,15]
**relevant** [83:16,22] [88:20] [89:16,22] [90:1] [132:9] [158:3] [162:15] [164:1] [183:21] [185:19]
**reliance** [158:5]
**relied** [79:2] [83:14,18] [84:1] [90:2]
**relief** [213:12]
**rely** [122:6] [131:18]
**relying** [94:9] [120:1]
**remember** [11:11]
**remembered** [198:7]
**remembers** [198:18]
**remind** [6:11]
**removal** [116:4]
**report** [10:20] [25:1,16] [51:7] [158:13] [159:1,12,17]
**reported** [1:21] [70:12] [96:15]
**reporter** [6:13]
**reporter/notary** [220:]
**reports** [31:9] [158:19]
**represent** [5:14]
**representation** [45:2]
**representative** [27:1] [195:2]
**representatives** [179:21] [181:12]
**represented** [7:18]
**reprocess** [204:15,16]
**reprocessed** [49:13,19]
**reprocessing** [49:18] [50:1] [55:22] [74:9,19] [75:9] [76:2,9,19] [202:22] [203:2] [204:1,6] [205:12,15] [206:19,20]
**reprocessingrelated** [204:6]
**reprocessing-related** [204:6]
**reprocessor** [204:19]
**request** [136:1] [149:1] [152:7] [173:20] [:4]
**requested** [59:5] [142:6] [154:10]
**requesting** [87:6,16]
**requests** [136:20]
**require** [193:22]
**required** [22:10] [27:21] [46:1] [117:7] [118:4] [138:18] [149:18] [166:22] [167:15]
**requirement** [149:21]
**requirements** [28:11] [41:16] [58:8] [164:5] [175:21] [178:17] [187:18]
**requires** [139:1]
**reracked** [125:16]
**research** [107:9,10]
**researched** [107:12]
**reserve** [212:20] [213:2,11,22]
**resides** [23:6]
**resolve** [213:12]
**respect** [9:10] [11:20] [19:5] [26:21] [27:4,9,11] [28:15] [30:8] [35:1,12,14] [36:6] [55:2] [64:21] [67:4,11] [69:4] [71:15] [76:8] [81:7] [87:22] [99:14] [101:15] [102:4] [108:18] [110:9] [111:2] [114:4,16] [115:2] [121:4] [127:1,14] [130:6,16] [133:6,20] [143:16] [146:7] [148:1] [152:16] [153:10] [155:15] [161:20] [173:7,10,12,17] [175:18] [176:4,6] [178:4] [187:8] [188:16] [200:3] [202:1,9] [204:5] [211:10] [212:21] [215:4]
**respond** [62:18]
**responded** [132:14]
**response** [77:19] [115:7] [203:14]
**responses** [7:2]
**responsibilities** [8:17] [9:2] [11:2] [86:18] [87:1,17]
**responsibility** [92:10] [93:7,12]
**responsible** [44:10] [47:15] [65:19] [69:11] [70:1,7] [72:7] [93:14] [96:14] [111:10] [112:1,16,20] [113:12] [114:1] [183:15] [220:]
**responsive** [215:22]
**restate** [6:20]
**result** [25:19] [61:8] [121:14] [123:5] [138:19] [141:18] [142:17] [143:12] [144:1] [149:21]
**resulting** [76:19]
**retaining** [152:14]
**retired** [18:8,9] [23:3,4] [136:15]
**retirement** [23:10]
**review** [24:21] [25:5] [26:1,5,9] [27:10] [31:5,9,13] [43:9,21] [63:12] [69:21] [70:15] [71:19] [77:22] [78:2,5,7,18,21] [79:2] [83:11,13] [85:8] [87:20] [88:3] [115:4] [121:21] [134:18] [147:3] [176:13] [177:7,11] [179:18,21] [214:8] [215:16] [216:13,21] [217:1]
**reviewed** [8:12] [12:10] [24:3,4,6,15] [25:8,21] [26:3] [27:16] [44:16,18] [45:13] [71:16] [83:15,21] [86:5] [93:16] [114:6] [117:16] [120:13] [158:14,19] [173:11] [176:16] [214:17] [215:19] [217:2]
**reviewing** [26:21] [119:6,16] [144:19]
**rfp** [43:6,15] [147:2]
**rfp122** [43:6]
**rfp-12-2** [43:6]
**rfp1263** [147:2]
**rfp-12-63** [147:2]
**rfp128** [43:15]
**rfp-12-8** [43:15]
**right** [10:19] [26:8] [29:20] [35:9] [38:9] [43:18] [46:3] [61:1] [93:14] [98:1] [122:13] [123:1] [124:1] [133:15] [134:14] [135:18] [140:2] [145:21] [149:10] [160:21] [162:7] [163:6,21] [178:10] [180:12] [213:3,6,22]
**righthand** [178:10]
**right-hand** [178:10]
**rights** [42:2] [47:9] [49:1,20] [58:11] [184:10,11] [189:19] [191:6,7,13,17,22] [192:1,2,8,15] [193:8,14,21] [194:4] [195:15] [196:7] [197:20] [199:12] [200:11] [204:18] [207:22] [208:1] [209:8] [212:20] [213:11]
**ris** [131:10,11,14] [135:17,20]
**rives** [147:10,13,14,15]
**robert** [85:2] [104:22]
**role** [215:3,7]
**room** [220:2]
**rosselli** [13:18] [16:15,16] [17:1,16,20] [19:2,8] [23:2,5] [54:11] [59:16] [61:14]
**rossellis** [17:7]
**rough** [8:4]
**roughly** [95:2]
**rule** [4:9] [77:12] [82:18] [85:4] [108:15] [213:18]
**rulemaking** [4:12]
**rules** [11:9]
**russo** [1:21] [2:21] [219:2] [220:20]

S

**safely** [125:3]
**sale** [51:22] [52:4] [56:5,11] [57:14] [59:17,19] [60:10,14] [61:6,15] [65:5] [66:1] [67:16] [72:10,11] [73:17] [80:2,11] [81:11] [101:6,12] [102:2] [103:2,7] [104:5] [174:6] [185:14] [186:17] [187:8] [209:19,20] [210:6,11] [212:1]
**sales** [68:3] [98:4]
**satisfied** [212:22] [213:17]
**satisfy** [132:17]
**saw** [72:20]
**say** [25:21] [47:14] [54:6,19] [55:4] [59:17] [64:13] [69:16] [74:18] [88:4] [103:20] [107:19] [108:19] [109:11] [110:12] [114:20] [118:8] [120:16] [127:15] [134:12] [148:20] [157:12,16] [165:18] [170:4] [181:6] [183:19] [197:19] [199:19] [205:6,9] [210:18] [216:11]
**saying** [104:11] [116:8] [118:11] [139:9] [156:22] [172:1]
**says** [48:6] [49:15] [108:22] [112:6] [113:3] [117:16] [126:7] [162:1,3] [171:3] [178:13] [180:3,18] [192:8,9] [197:20] [205:7]

**scenario** [74:19] [204:20]
**schedule** [29:3]
**scope** [19:15] [34:13] [57:16] [58:22] [67:21] [68:13] [73:22] [75:2,11,19] [76:5,14] [80:15] [81:3,20] [82:5] [97:2,17] [99:7,17] [101:9,20] [103:17] [104:8,18] [105:2] [111:13] [113:2,8,13] [118:17] [120:22] [123:21] [124:10,13] [126:1] [137:1] [150:3] [159:8] [160:4,17] [167:6] [168:9,19] [169:5,19] [170:12] [171:10] [176:15] [182:7] [186:9,21] [206:2,5] [207:3] [213:19]
**se** [33:18] [84:13] [132:14]
**search** [130:21] [131:10,11 ,19] [132:2,6,18] [136:5]
**searched** [128:2] [129:13,18] [131:1]
**searches** [127:9] [128:7,12] [131:8]
**second** [100:22]
**secretary** [70:12] [93:6] [96:15]
**section** [123:17] [124:1]
**sections** [217:2]
**secured** [173:12]
**security** [21:17]
**seek** [172:9] [213:3,11]
**seeks** [178:16] [179:10]
**seem** [11:14] [107:11]
**seems** [44:6]
**seen** [44:2] [88:7] [177:22] [187:15] [214:15]
**seismic** [157:12]
**select** [90:5]
**sell** [67:2] [92:4,19] [94:1] [95:7,21] [96:20]
**selling** [48:6] [103:14]
**senate** [51:5] [57:13]
**send** [49:12,17]
**sense** [168:14] [199:8]
**sent** [102:10] [146:14]
**sentence** [180:3]
**series** [185:13]
**served** [41:19]
**serves** [28:20]
**set** [5:19] [9:12]
**settlements** [156:5]
**seven** [5:19] [71:11]
**several** [13:1,2] [83:12]
**shakes** [6:13]
**shall** [189:22]
**shape** [186:17]
**shapiro** [3:5] [5:14]
**sheet** [218:7] [220:] [:1,,6]
**short** [79:19] [151:20] [154:18] [172:17] [212:16]
**shorthand** [219:7]
**show** [32:14]
**showed** [78:19]
**shown** [12:11] [21:1]
**shut** [75:6]
**shutdown** [41:18]
**sign** [195:15] [207:16] [214:1]
**signature** [220:10,] [:]
**signature_date** [:]
**signaturedate** [:]
**signed** [62:10,14] [68:19] [92:1] [105:14,16] [110:3] [117:10] [180:10] [190:17] [218:7] [220:] [:]
**signing** [69:5,11] [70:1] [121:14,19] [220:11]
**similar** [17:2,9] [19:1] [22:8] [137:12]
**similarly** [178:22]
**simplistically** [191:11]
**simply** [67:1] [138:6]
**site** [105:18] [109:5] [125:6] [131:14,15,19] [144:14] [153:9]
**sites** [25:3] [124:22] [125:2] [127:2] [144:22] [155:20] [156:6]
**sitespecific** [153:9]
**site-specific** [153:9]
**sitting** [32:6] [65:3] [73:4] [74:21] [78:12] [84:4] [98:2] [111:17] [117:21] [142:19] [195:1] [196:6] [200:8]
**situation** [119:22]
**situations** [49:4] [119:18]
**six** [214:16]
**slightly** [67:9]
**snf** [8:5,10] [15:18] [16:2] [19:20] [20:5] [27:10] [34:6] [37:11] [47:10] [49:2] [73:19] [105:18] [107:17] [109:3,5] [110:6,15] [112:20] [113:6] [114:15,19] [116:4] [123:6] [124:8,18] [125:2] [134:10] [141:19] [164:4] [166:5,17] [167:1,2] [173:6] [189:21] [206:18] [208:3] [209:9]
**snm** [76:18]
**sold** [34:20] [62:16] [63:5] [64:6] [123:11] [145:22] [146:3]
**sole** [179:13] [195:2]
**solely** [22:20] [41:14] [179:19] [182:14] [183:2]
**somebody** [49:12]
**someone** [65:15] [90:21] [136:4] [147:20] [202:11]
**something** [36:21] [50:8] [52:8] [60:17] [62:21] [64:11] [65:15] [67:7] [92:11] [95:13] [96:5,6,9,10] [107:11] [119:19]
**sometime** [21:7] [148:10]
**somewhat** [179:5] [215:22]
**sorry** [35:5] [36:10] [147:7] [205:7]
**sort** [155:3]
**source** [53:10] [93:21] [104:15] [155:15]
**sources** [156:4] [157:17] [158:6] [165:7]
**speak** [13:21] [16:16] [28:21] [54:22] [90:6,21] [91:9] [97:5] [118:18] [125:5] [145:18,19] [170:7,10,13] [171:19]
**speaking** [49:10] [108:3] [207:7]
**speaks** [27:18] [28:19] [200:20] [201:5]
**specialist** [8:20,21] [9:22] [10:4,5]
**specially** [160:17]
**specific** [14:14] [24:10] [27:15] [39:16] [59:7] [87:1] [89:5] [100:8] [110:2 ,8] [114:5] [122:8] [128:6] [129:9] [145:8] [154:5] [155:20] [156:6] [157:10] [165:7] [170:7] [173:17] [191:22] [198:13] [199:3] [203:17]
**specifically** [14:16] [44:8] [56:4] [57:12] [58:5] [60:9] [61:5] [71:2] [74:14] [79:5] [81:10] [98:21] [107:5] [108:20] [110:7] [115:3] [121:3] [122:1] [125:4] [127:13] [129:13] [130:6,17 ,20] [131:9] [132:1] [133:6] [135:6] [138:18] [153:19] [178:4,13] [194:14] [198:12] [199:1]
**specifics** [22:18] [29:19] [31:4]
**specifies** [123:14]
**speculated** [64:14]
**speculation** [53:16] [54:2,15] [56:21] [64:9] [65:10] [68:4] [73:12] [94:3] [96:1] [104:18] [105:2] [110:18] [137:19] [168:10] [169:20] [184:2,16] [185:9,22] [186:20] [188:1] [200:2] [203:6] [205:1]
**spend** [120:15]
**spent** [6:6] [9:6,7] [15:10] [31:2] [33:9] [38:4] [50:1] [76:2,9] [85:5] [105:13] [106:20] [111:4] [112:1] [115:9] [117:1] [125:12] [133:11,22] [134:9] [138:20] [142:20] [143:7] [144:4] [151:2] [153:20] [160:13] [161:20] [166:19] [169:2] [174:5] [205:14]
**spoke** [55:19] [56:11] [60:20] [90:20] [91:11] [96:16] [120:9] [181:12] [214:22]
**spoken** [38:20] [55:5] [120:14] [165:10]
**spreadsheet** [136:7,8]
**stack** [31:3]
**staff** [10:11] [57:7,13] [82:12] [181:13] [182:1]
**staffers** [51:3]
**stamped** [43:6]
**standard** [4:13] [9:8,13] [14:13,14] [15:4] [16:3,12] [17:15,19] [19:13] [20:21] [22:3,6,15] [27:3,5,9] [33:3] [37:12] [41:4,8,12,17] [42:1,3,12] [43:2,16] [44:6 ,10,12] [45:2,19] [46:17] [47:1,3,16] [48:1,7,11,19] [50:15] [51:15] [52:13] [53:13] [57:9] [58:8,9,11] [62:9,14] [65:7] [67:5,12,20] [68:19] [69:16] [70:1] [76:22] [77:10] [78:1,16] [80:1,10,21] [81:8] [84:6] [85:4] [87:7,17] [88:10,13] [91:15] [92:2] [99:4] [100:16] [102:5,6] [105:15,16] [106:21] [109:12] [110:13] [111:3,8] [114:17] [121:14 ,18] [123:14] [146:8] [148:4] [175:21] [178:18,22] [179:3] [180:6,10,19] [181:10] [184:11] [185:6,17] [187:19] [188:4,17] [189:14,18] [191:18] [194:5] [202:22] [208:2] [215:1,5]
**standards** [58:7]
**standpoint** [199:15]
**start** [12:12] [77:7] [133:18] [165:13] [166:14]
**started** [134:2] [141:5] [163:15]
**starting** [152:7]
**state** [20:14,15] [75:4] [96:4] [212:19]
**stated** [62:20] [92:11] [93:5] [117:9] [123:13]
**statement** [63:1,14] [117:13] [209:22]
**statements** [28:1,5] [59:21] [120:1] [150:16,20] [151:11]
**states** [1:2,,9] [3:14] [24:7] [25:22] [26:10,16,20] [28:10] [31:13] [32:8] [41:6] [50:2] [65:21] [91:17] [110:2] [180:21] [188:15] [192:13]
**statute** [75:17] [76:1]
**statutes** [103:13] [104:4]
**statutory** [76:1]
**steps** [50:12]
**stipulate** [112:15]
**stipulated** [113:18]
**stop** [77:7] [118:13]
**stopped** [119:1]
**storage** [15:9,17] [19:19] [20:4] [24:6,14,19] [25:3,12 ,15] [26:3] [27:10,22] [30:8 ,9,10,11] [33:9] [34:5] [38:5] [71:14] [74:12] [105:12] [106:7,15,16,17,20] [107:6,16] [109:2,5] [110:6 ,14] [111:4,9,11] [112:1,16 ,20] [113:5,13,22] [114:15,19]

[116:5] [117:7] [118:3] [120:18] [121:8,10,16] [123:4,9] [125:18] [126:20] [127:12,22] [128:16] [134:8] [140:7] [141:17] [142:20] [143:7] [144:3,8,13] [148:19] [152:3,19] [153:20] [156:5] [160:11,13] [161:2,16] [164:4] [165:2] [166:5,13,17,20] [167:1] [169:17] [170:17,22]
**store** [125:2]
**stored** [124:21]
**storing** [105:18,21]
**street** [2:14] [3:6,15] [220:]
**strictly** [176:9] [179:22]
**strike** [29:7] [56:9] [62:12] [174:2]
**studies** [29:18,22] [30:6,20]
**study** [24:6,14,16] [25:14] [26:3] [71:14]
**stuff** [122:7]
**subagency** [66:14]
**subentity** [66:14]
**subject** [25:8] [30:5] [41:10] [53:22] [54:13] [61:15] [96:21] [140:16] [185:20]
**subjects** [30:7] [175:13]
**subpart** [86:11,14,17]
**subsequent** [6:16] [81:18] [106:21] [110:15] [114:16,20]
**subset** [193:22]
**substance** [12:15,18] [14:5] [16:22] [18:21] [21:19] [128:10] [138:9] [139:13] [152:11] [156:17]
**subtopics** [108:16]
**sued** [134:3] [141:4]
**sufficiency** [132:18]
**suggestion** [177:15]
**suggestions** [87:1]
**suggests** [145:12]
**supko** [159:22]
**supposed** [125:12]
**sure** [6:11,21] [7:11] [8:21] [11:5] [18:2] [25:6,12] [28:19] [37:3] [39:12] [40:19] [44:7,19] [56:1] [72:21] [99:22] [101:21] [102:14] [103:10] [117:19] [124:1] [151:19] [154:16] [167:12] [168:12] [176:19] [189:16] [202:14] [214:6]
**sworn** [5:3] [219:6]
**synonymous** [191:3]
**system** [129:10,11]
**systems** [126:18] [128:20] [131:1]

T

**taken** [53:4] [79:19] [151:20] [154:18] [172:17] [212:16] [219:3,7,13] [:]
**taking** [178:20]
**talk** [12:13] [18:13,15] [22:17] [32:16] [33:11,12,17] [36:22] [75:11] [90:9,12,14,17] [91:13] [100:3] [165:9] [175:20] [179:20] [181:22] [192:2] [194:3]
**talked** [18:1] [19:14] [23:14] [32:3] [69:9] [71:17] [99:19] [155:16] [194:6,7] [205:19]
**talking** [58:5] [92:9] [97:14] [122:11] [135:17,18,20] [155:1] [180:12] [196:1] [207:8,11,13,14]
**talks** [120:8]
**tax** [164:22]
**team** [21:12]
**technical** [9:5]
**tell** [5:3] [12:20] [22:5,13] [24:3] [43:11] [85:9] [105:6] [127:13] [130:7,10] [147:4] [155:5,6,8,11,13] [158:7] [179:12] [187:14] [191:7] [195:3,11] [202:11]
**tells** [47:11]
**temporary** [15:16] [20:3] [34:5] [123:4,9] [140:7] [148:19] [152:3,19] [161:2,16] [169:16] [170:17,22]
**ten** [184:8]
**term** [117:11] [148:2] [192:14]
**terms** [41:8,12,16] [46:21] [58:6,7] [78:6,10] [86:16,22] [87:2] [175:21] [178:17] [187:18] [191:14] [199:3]
**test** [11:10] [32:5,13]
**testified** [5:5] [8:9] [27:6] [36:4] [57:5] [62:7,9] [82:11] [115:6] [143:22] [173:13] [183:14] [209:17]
**testify** [5:18] [7:14] [32:7] [34:9] [36:1] [37:20] [54:8] [55:1,6] [64:17] [68:17] [94:10] [120:2] [122:21] [144:5]
**testifying** [29:6] [73:9] [92:15] [93:15] [194:8]
**testimony** [8:6,13] [11:19] [12:1] [16:6] [24:7] [25:9,22] [26:2,9,10,13,15,18,20] [27:11,13,16,17,18] [28:3,8,9,13,18,21,22] [29:8,12] [31:7,12] [33:2,6] [40:17] [50:4] [62:5] [66:4] [78:14] [82:3] [83:9] [91:3] [93:1] [112:4] [114:6] [117:15] [118:7] [119:7,15,17] [120:13] [121:7] [132:5] [135:9] [144:7] [145:3,10] [146:21] [149:4] [157:7] [160:1] [162:19] [172:5] [173:10] [182:18] [192:19] [201:13] [204:5] [210:1,4] [211:13] [212:7] [213:2,3,10] [215:17] [216:6] [218:4,5] [219:4,6,10]
**text** [109:4]
**thank** [141:14] [220:16]
**thats** [7:21] [8:1,11] [10:22] [17:6] [33:15] [35:21] [36:21] [38:9,14] [39:12,13] [43:18] [45:16] [55:8] [57:11] [60:22] [61:11] [64:13,19] [66:13] [79:4,15] [85:16] [98:1] [100:12,14,21] [101:1] [106:10] [110:22] [112:6] [120:5] [123:16] [124:1] [128:4] [130:18] [131:15] [139:21] [140:15] [142:2] [147:16] [149:21] [151:19] [156:6] [158:16] [163:17] [168:16] [170:13] [181:11] [183:18] [192:8] [198:22] [205:16]
**themselves** [184:20]
**theoretically** [74:11]
**thereafter** [219:7]
**therefore** [183:19]
**therefrom** [175:6]
**therein** [187:21]
**thereof** [199:21]
**thereto** [7:2]
**theyre** [48:6]
**theyve** [167:22]
**thick** [83:12,13] [214:16]
**thing** [7:6] [31:3] [47:18,21]
**things** [9:5] [29:20] [30:3] [50:18] [65:14] [72:4] [83:21] [104:10] [170:5] [204:1,12,14]
**think** [16:17] [30:12] [31:3] [36:18] [40:3] [51:16,22] [55:20] [56:6,7,13,17] [57:5] [59:12] [64:10] [67:1,16] [74:2] [81:4] [89:20] [90:8] [91:4] [92:8] [95:12] [114:13] [115:3] [121:2] [135:9] [139:7,9] [140:19] [141:3] [143:22] [149:6] [155:20,21] [156:14] [158:4,5,16] [165:8] [168:13] [171:9] [172:21] [181:2] [184:19] [188:22] [189:11] [190:7] [192:7] [194:8] [201:2] [204:11] [206:11] [207:22] [209:17] [210:6] [212:10]
**thinking** [195:12] [204:13]
**third** [29:9] [74:9,11] [202:10]
**though** [25:13] [54:19] [104:2]
**thought** [22:11] [55:19] [64:14] [65:16,22] [83:22] [89:16] [97:21] [107:4] [122:1] [133:3] [176:4] [189:1,12] [196:1] [205:18,21] [206:8] [209:18]
**thoughts** [19:4]
**three** [13:4] [24:12] [42:4,7,8] [54:20] [61:22]
**time** [5:16] [11:11] [15:8] [19:4,18] [31:4] [33:8] [34:19] [41:1] [42:9] [45:21,22] [51:13] [52:8] [55:11] [56:7,9] [62:19] [65:7,21] [67:13] [68:18] [69:3,14] [70:11,17] [75:6] [78:8] [83:12] [85:22] [91:19,21] [92:17] [94:7,21] [95:2,14] [96:5] [100:11] [102:14] [103:10] [105:11] [106:8] [109:1,14] [110:5] [112:10] [113:4] [114:22] [115:13] [116:3,12] [117:22] [119:11] [120:15,17] [133:16,17] [151:9] [163:2,4,14] [164:1] [169:1,11] [172:22] [173:22] [177:21] [180:10] [181:14] [185:15] [188:2] [195:9] [196:9] [202:17] [203:8] [207:8] [209:18] [210:6] [212:9,18]
**times** [6:6] [8:5] [120:14] [189:8] [197:8] [200:1]
**title** [8:16,22] [10:2] [47:10] [73:18] [74:10,13,15] [86:20] [189:20] [206:18] [208:3] [209:9]
**today** [5:16,17] [7:15,19] [8:6] [11:9,14] [12:7] [16:7] [31:7,22] [32:6] [34:10] [37:21] [38:17] [40:11] [51:19] [53:4] [54:8] [55:1,7] [65:4] [66:22] [69:22] [73:5,10] [74:21] [78:12] [82:3] [84:5] [87:21] [91:9] [93:15,17] [94:11] [98:2] [100:5] [107:14] [111:18] [117:22] [120:2] [142:19] [146:21] [175:12,19] [178:21] [179:5] [183:12,22] [193:4] [195:2] [196:7] [197:10] [199:11,18] [200:10] [209:2] [212:7] [213:10,21] [214:10,19] [215:17]
**todays** [6:16] [12:4] [25:9] [28:3] [31:19] [40:17] [42:21] [45:14] [77:21] [84:21] [87:22] [89:11] [90:6,22] [135:6] [145:3,9] [164:2] [176:15] [177:5] [194:20]
**together** [10:15,16] [153:2,5,15] [159:6]
**told** [71:13] [73:7] [83:6] [88:2] [95:11] [96:3] [105:6] [115:3] [121:3] [141:3] [142:9] [155:17] [197:3] [199:5]
**tom** [147:15,17]
**took** [103:11] [196:18] [197:12] [211:10]
**top** [178:10]
**topic** [23:16] [25:4,11] [27:13] [33:20,21] [34:13,21] [35:6,8,12] [36:4,17] [37:8] [57:18] [58:2] [59:15] [61:22] [68:9,15] [81:22] [89:17,19] [90:1] [91:13]

[93:12,17,20] [96:16] [100:14,18] [105:10] [107:13] [108:4,8,10] [113:9,14] [114:5,16] [120:10] [122:21] [123:1,2,7] [126:1,7,13] [133:12] [160:19] [170:15] [172:8] [173:2,6,10,12,14] [176:4] [178:4,5,14,15] [179:1] [180:3,4,8] [209:4]
**topics** [5:20] [26:21] [32:15] [33:16,22] [38:11] [39:16,18,19] [40:16,21] [42:4,8] [58:6] [64:22] [71:2,8,10,11] [89:18] [100:4,7,9,20] [172:11,20] [175:18] [179:5,11,15] [182:7] [183:21] [215:22]
**total** [161:9] [163:1]
**totality** [217:2]
**totally** [179:6]
**town** [18:4] [20:16]
**transcript** [4:17] [213:9] [220:11] [:3,7]
**transcription** [218:5] [219:8]
**transcripts** [31:14]
**transfer** [47:9,10] [49:2] [73:18] [74:10,12,15] [75:8] [102:4] [146:8] [187:3] [189:20,22] [190:1] [208:3,5] [209:8] [210:19]
**transferred** [208:13]
**transfers** [206:18]
**transshipped** [125:16]
**trial** [8:9] [26:15,17] [31:12] [101:2]
**trials** [23:21]
**tried** [50:17] [141:6]
**true** [98:1] [218:4] [219:9]
**truth** [5:3,4]
**try** [6:14] [8:17] [28:20] [42:8] [155:8] [158:8] [168:6]
**trying** [16:17] [56:15] [161:5]
**turn** [13:20] [40:8,14] [45:9] [189:13,17]
**types** [25:2]
**typically** [7:3] [143:11] [144:21]

U

**u.s** [2:13] [220:6] [:]
**uh** [6:14,15] [120:7] [200:6] [202:5]
**uhhuh** [120:7] [200:6] [202:5]
**uh-huh** [120:7] [200:6] [202:5]
**uhhuhs** [6:14]
**uh-huhs** [6:14]
**uhuhs** [6:15]
**uh-uhs** [6:15]
**uleck** [36:3,14,19] [100:3,15,19]
**ultimately** [191:13] [196:18]
**unable** [64:5] [78:13] [196:21]
**unaware** [84:4]
**understand** [6:4,18,19] [20:17] [33:1] [35:19] [48:18] [58:2] [64:16] [67:11] [70:9] [76:12] [108:20] [110:22] [116:8] [117:12,20] [121:22] [134:7] [138:10] [141:1] [146:11] [152:4,6] [154:3] [156:14] [163:6,17] [169:10] [175:1,16] [180:14] [181:17,19] [190:4] [195:6,15] [204:9]
**understanding** [5:22] [6:22] [7:1] [12:1] [15:14] [20:1] [25:11] [32:6] [33:5,12,14] [34:2,9] [35:4,15,16] [36:5,13,20] [37:1,20] [38:6] [39:4,9] [45:18] [46:18] [47:18] [49:22] [51:14] [52:11] [57:1,19] [77:16] [80:20] [81:9,14] [82:20] [83:4,19] [84:8] [99:22] [105:21] [106:11,14] [109:17] [111:1] [116:10,12] [117:21] [123:3,8,19] [124:18] [126:8] [131:13] [138:16] [139:16,18] [140:6] [141:16] [144:6,9,12] [148:5,9,18] [152:2] [160:10] [163:13] [164:16] [166:4] [169:14] [170:16,19] [171:5] [190:14,16] [192:14] [193:4,13,19,20] [194:21] [195:8,10] [196:7] [201:15] [214:12]
**understandings** [110:8] [160:18]
**understood** [22:14] [37:2]
**undertake** [167:15] [176:2]
**undertook** [12:6]
**unfairly** [173:9]
**unique** [161:18] [164:3,8,12]
**uniquely** [206:7]
**united** [1:2,,9] [3:14] [32:8] [41:6] [50:2] [65:20] [91:17] [110:2] [180:21] [188:15] [192:13]
**universe** [126:5,6]
**unreasonably** [171:8]
**unrelated** [23:15]
**unsuccessful** [50:19]
**until** [133:7,13] [161:12] [163:15]
**updated** [149:13]
**upon** [52:6] [122:6] [156:3] [184:7,17] [208:17] [:5]
**us** [114:11,14] [120:14] [136:10] [149:18] [158:3,7] [211:5]
**use** [87:2] [101:5] [103:1,6] [129:4] [155:18,20] [156:2] [158:9] [162:5] [210:10] [211:18]
**used** [149:16,19] [165:7]
**useful** [56:1]
**using** [86:21] [144:8,10] [210:15]
**utilities** [9:13,21] [27:20] [44:13] [79:9] [84:10] [87:16] [103:14] [105:18] [111:22] [112:19] [113:12] [114:1] [121:9] [123:4] [126:5] [128:15,17] [143:13,16] [152:15] [154:5] [158:6] [161:19] [168:2,17] [170:1,5] [195:14] [207:16] [215:20]
**utility** [8:20] [10:4] [25:3] [48:5] [49:17] [56:5] [63:3] [67:2] [92:3,18] [93:22] [95:6,20] [96:20] [103:15] [110:9] [129:12] [143:20] [152:20] [153:21] [157:3,9] [158:11] [168:3] [169:1,7,14] [170:8,19] [190:17]
**utilized** [55:13] [127:4] [150:19]
**utilizing** [144:2]

V

**vague** [22:16] [28:17] [46:10] [47:5,20] [48:20] [52:15] [65:8] [69:18] [71:4] [82:16] [88:14] [89:3] [90:15] [97:1,18] [99:6] [102:8] [115:18] [116:6,14] [118:15] [142:12] [146:10] [161:21] [164:7] [181:15] [184:1] [191:20] [202:13] [203:4] [204:8] [216:18]
**valley** [75:5]
**value** [39:12]
**various** [29:10,18] [31:1] [44:11,13] [152:3]
**version** [24:5] [25:18] [51:5] [177:22]
**versus** [61:9] [192:1]
**view** [179:5,10] [185:18] [186:2]
**views** [28:14] [175:20] [176:6,10] [178:17] [182:21] [185:5] [187:18] [188:3]
**visiting** [20:17]
**vs** [1:5,] [220:6] [:]

W

**wake** [167:2]
**walk** [190:2]
**want** [6:21] [7:11] [8:15] [11:8,14,16] [12:14,18] [32:14] [37:3] [48:6] [114:7,8] [117:19] [128:6,11] [130:4,5] [136:4] [138:5] [141:1] [150:11] [151:18] [156:11,13] [158:7] [163:9,10] [164:16] [171:10,21] [172:9] [177:17] [179:15] [190:2] [194:19] [195:5] [201:12,13,14,16,18] [211:6] [214:6]
**wanted** [204:15]
**washington** [1:14] [2:15] [3:7,16] [20:14,17] [220:]
**wasnt** [17:12] [22:10] [64:11] [82:22] [92:11] [95:13] [138:13] [147:19] [156:10] [182:9,10] [206:7]
**waste** [9:1,4] [49:21] [73:19] [75:9,12] [76:19] [85:6] [105:22] [190:18] [197:4,13] [203:19] [206:19] [208:3] [209:9]
**ways** [6:16] [30:12] [205:12]
**web** [131:10,11,14,19] [135:18,21] [144:22]
**webb** [3:4] [5:13]
**weeks** [13:1] [14:1] [95:4]
**well** [8:10] [12:17] [16:20] [26:1] [29:7] [39:21] [42:14,15] [54:20] [55:17] [68:15] [72:18] [81:7] [89:10] [109:11] [115:17] [123:18] [153:6] [161:10] [193:3] [202:17] [204:14] [206:9]
**went** [29:20] [54:9] [144:22] [154:21]
**west** [75:5]
**westlaw** [4:15] [177:22]
**wet** [144:3,8]
**whatever** [145:17] [157:20]
**whatnot** [67:15]
**whats** [111:1]
**whatsoever** [7:5] [108:11] [186:4,5] [189:2]
**whenever** [151:11]
**whereupon** [217:5]
**whether** [50:7] [51:11] [63:3,4,13] [67:1] [68:1] [73:5] [75:22] [79:22] [81:10] [87:5] [89:12] [92:15,16,18] [93:22] [95:5] [99:1] [113:10] [134:14] [140:14] [144:13] [170:18,19] [171:7] [172:7,9,10] [185:5,18] [186:6] [193:21] [201:13] [208:1] [212:6] [214:22]
**whoever** [49:19]
**whole** [5:4]
**whom** [132:1] [146:3] [150:17] [219:3]
**whose** [207:11] [219:4]
**why** [13:20] [20:17] [24:15] [26:1,9] [45:18] [50:13,18,19] [51:7] [57:3] [59:11] [60:3,5,7] [63:17] [64:4] [65:4,15] [68:11] [69:21] [73:9] [79:17] [95:6,20] [97:8] [107:8,10] [118:21] [120:12] [122:3,17] [135:5] [137:15] [145:7] [155:13] [170:10,13] [172:6,15] [176:9] [179:17] [182:5] [198:7,18,19]
**will** [6:9,10,12,14,20] [7:3] [8:17] [11:12] [12:20]

[32:12] [33:10,11] [34:11] [36:2] [37:8] [40:8,14,15,19] [41:14] [42:8] [52:14] [68:3,16] [73:16] [84:22] [107:21] [128:9] [129:22] [138:1] [140:10] [148:15] [152:21] [153:3,12,13] [155:20] [158:7] [165:3,15] [170:11] [172:16] [174:8,21] [175:14] [177:5,11] [179:12] [183:6] [184:4] [203:13] [212:19] [220:10]
**willing** [119:19]
**wine** [3:3] [4:3] [5:8,12] [22:19] [29:5] [32:17,22] [33:19] [34:14,17] [35:3,11 ,22] [36:6,8,12] [37:2,7] [38:2,7] [40:7] [41:3] [42:18] [43:1,8,20] [46:7,14] [47:13 ,22] [49:3] [50:11] [52:19] [53:20] [54:5,18] [56:3] [57:4] [58:4,19] [59:1,8] [62:3] [63:11] [64:15] [65:17] [66:11] [68:10,14] [69:20] [70:14,20] [71:7,9] [72:8,22] [73:15] [74:4,17] [75:7,15,21] [76:10,20] [77:6] [79:17,20] [80:8,18] [81:6] [82:1,9] [83:2,17] [84:14,18,22] [85:7,14,19] [86:3] [87:14] [88:17] [89:6] [90:19] [91:6] [92:13] [93:2,13] [94:8] [95:15] [96:8,17] [97:7,13,22] [98:10] [99:12,21] [100:9,19] [101:3,13] [102:1,12] [103:22] [104:14,21] [105: 8] [106:2,12] [107:7] [108:2 ,19] [109:11,15] [110:1,20] [111:16,21] [112:8,17] [113:3,15] [114:2] [115:5] [116:1,9,16,17] [117:3] [118:12,20] [119:9,21] [121:12,19] [122:2,13,16,22] [124:3,16] [125:11,19] [126:3] [128:3] [130:4,9] [132:10] [133:14] [135:16] [137:4,11,17] [138:4] [139:12,19] [140:1,14] [141:1,7] [142:2,13,18] [143:21] [145:20] [146:18] [147:12] [149:9] [150:10] [151:19,21] [153:4,7,17] [154:1,7] [155:12] [157:15] [159:11,20] [160:8,20] [162:6] [163:5] [164:14] [165:22] [166:2,14,16] [167:11,19] [168:15,21] [169:12] [170:9,15] [171:13 ,16,20] [172:4,18] [175:1,3] [176:20] [177:2,19] [178:2] [180:12,15] [181:5,18] [182:12,22] [183:7] [184:9 ,21] [185:12] [186:3,14] [187:5,13] [188:5,10,20] [189:9] [190:13] [191:16,21] [192:11] [193:2] [194:2] [196:5,11,16] [197:5,15] [198:11,21] [200:5,16] [201:1,11] [202:4,16] [203:10,21] [204:17] [205: 5] [206:6,16] [207:9] [208:11 ,19,22] [209:16] [210:8] [211:16] [212:15,17] [214: 21] [215:12] [216:20] [217: 4]
**wise** [114:22]
**wish** [197:17]
**wishes** [179:2]
**within** [52:3] [66:15] [67:13] [69:13] [87:17] [89:9] [98:4] [102:22] [130:2] [132:1] [133:5] [181:10] [187:17] [188:15] [190:1,5] [194:5] [199:4] [200:11,17] [220:12]
**without** [139:5,13] [156:17] [164:11] [174:13] [191:12] [207:6]
**witness** [22:17] [28:18] [32:19] [33:15] [38:3] [43:18] [46:11] [47:7] [48:21] [50:5] [52:16] [53:18] [54:3,16] [55:17] [56:22] [58:20] [59:4,6] [61:20] [63:9] [64:10] [65:13] [66:9] [68:8] [69:19] [70:6,19] [72:3,20] [73:13] [74:2,8] [75:3,13,20] [76:7 ,16] [80:6,16] [81:4,21] [82:6,17] [83:10] [86:2] [87:11] [88:15] [89:4] [90:16] [91:4] [92:8] [93:5] [94:4] [95:11] [96:3,13] [97:5,10,20] [98:8] [99:10,19] [101:11,21] [102:9] [103:19] [104:11,20] [105:4] [106:6] [107:3] [108:6] [109:21] [111:7,20] [112:5,14] [113:16] [115:2,21] [116:7 ,21] [118:8,18] [119:6,16] [121:2,20] [122:15,20] [123:22] [124:15] [125:15] [127:20] [132:7] [133:10] [135:11] [137:3,10,21] [139:7,21] [141:3,22] [142:9,14] [143:17] [145:14] [146:13] [147:9] [149:6] [150:7] [154:12,14] [157:8] [159:10,18] [160:6] [161:22] [162:9,21] [164:10] [165:18] [167:9] [168:12,20] [169:9] [170:3] [171:14,17] [172:12] [174:9,17] [179:13] [181:7] [182:9,20] [183:6,22] [184:5,17] [185:11] [186:2 ,12] [187:1] [188:8] [191:11] [192:6,21] [193:18] [195:22] [196:13] [197:9] [198:5,17] [200:3,21] [201:7] [202:1,14] [203:7,13] [204:11] [205:2] [206:4] [207:6] [208:8,16] [209:14] [210:5] [211:14] [219:4,6,10] [220:]
**witnesses** [6:4] [114:10] [179:2,11] [213:4,21]
**wl** [177:10]
**wont** [155:22]
**wood** [184:22]
**word** [172:10] [174:3]
**wordings** [77:1]
**work** [8:14,17] [9:4] [10:13,15 ,16] [18:18] [22:15] [30:12] [70:16] [116:18] [127:17] [135:13] [139:2] [140:12] [146:15] [153:1,2,5,14] [154:13] [165:6,16] [172:14 ,21] [174:14] [202:19] [203:1,11] [205:13]
**worked** [23:16] [47:18] [73:7] [93:6] [136:10,14,16] [158:17] [159:6] [168:16] [185:2]
**working** [23:8] [151:14] [163:18] [184:18]
**works** [18:10] [20:14] [165: 12] [202:12]
**world** [156:22]
**wouldnt** [121:10,11] [150:8]
**write** [210:14,17]
**writings** [211:15]
**written** [50:10]
**wrong** [210:15]
**wrote** [25:1] [105:5]

Y

**yea** [83:13]
**yeah** [36:12] [98:1]
**year** [153:22] [154:2,5,6] [160:14,15]
**years** [23:15] [48:15] [97:12] [162:13] [184:8,19]
**yes** [6:1,8] [7:20] [10:10] [16:21] [21:13] [22:22] [27:14] [29:13] [30:11,19] [33:4] [39:2] [44:1,14] [46:20,22] [48:2,4,13] [55:3] [60:18] [66:18] [77:14] [83:22] [84:3] [89:17] [90:1,4,12] [91:12] [94:12,17,20] [98:11] [104:11] [105:19] [107:18] [115:11,15,22] [116:16] [117:16,18] [122:13] [126: 6,12] [129:7,20] [135:4,20] [136:10] [137:3,17] [140:19] [141:12,13] [145:1] [146:2] [148:9] [150:22] [151:3] [159:10] [160:7] [162:12] [168:20] [173:16] [183:18] [186:13] [187:2] [188:5] [195:9] [196:11] [205:17,20] [209:1,6] [210:7] [214:11,20] [216:15]
**yet** [106:16] [128:11] [130:8] [151:8]
**youre** [32:7] [53:10] [116:8] [193:3] [196:21]
**yourself** [132:17] [176:9] [182:14] [206:9] [211:7]
**youve** [71:10]

Z

**zabransky** [1:13] [2:10] [4:2] [5:2,9] [33:11,21] [35:7,19] [36:17,22] [37:9] [40:8,10] [42:19,21] [43:10 ,22] [46:16] [59:2] [68:7] [75:11] [79:21] [84:19,20] [85:8,22] [86:4] [100:5,10,13] [109:7,17] [112:11] [125:4 ,8,14] [140:19] [145:13] [146:19,20] [152:1,22] [154:21] [156:8] [165:4,9] [171:10] [172:2,19] [177:3 ,4] [181:2,6,20] [190:3] [193:14] [195:7] [197:3] [201:20] [212:17] [213:17] [214:3] [215:3,18] [218:2,10] [220:] [:2,19]
**zabranskys** [50:4] [61:18] [66:4] [70:3] [72:1] [83:8] [91:2] [92:22] [112:4] [118:6] [119:14] [132:4] [135:8] [149:3] [157:6] [162:18] [182:17] [192:18] [210:3] [211:13]