# EXHIBIT C

**U.S. Department of Justice**

Civil Division

PDK:JED:HDL:AJLoRe
154-99-447

Telephone: (202) 307-0226
Fax: (202) 307-2503

*Washington, D.C. 20530*

April 11, 2007

VIA FACSIMILE AND UNITED STATES MAIL

Richard J. Conway, Esq.
Dickstein Shapiro LLP
1825 Eye Street, N.W.
Washington, DC 20006

Re: *Boston Edison Company v. United States*, No. 99-447C (Fed. Cl.)

Dear Mr. Conway:

We write in response to your April 5, 2007 letter regarding the recent depositions of Ronald Uleck, a current employee of the United States Nuclear Regulatory Commission ("NRC"), and David Zabransky, a current employee of the United States Department of Energy ("DOE"), whom the United States produced on March 28 and April 5, 2007, respectively, as designees to testify with respect to those topics contained in Boston Edison Company's ("Boston Edison") December 1, 2006 Rule 30(b)(6) deposition notice that the Court ruled to be permissible areas of discovery by order dated February 26, 2007.[1]

In your letter, in which you fail to provide any case law or other legal authority in support of Boston Edison's positions, you assert that both Mr. Uleck and Mr. Zabransky were not "prepared to testify on the Government's behalf," and you threaten to move to limit the use of Mr. Uleck's and Mr. Zabransky's testimony at trial should the United States refuse to allow Boston Edison the opportunity to take additional Government depositions in this matter. You further assert that the Government is somehow obligated to produce Mr. Michael Dusaniwskyj, a current NRC employee who has firsthand knowledge of the agency's review of the Pilgrim license transfer application, and Mr. Robert Morgan, a retired DOE employee whom Boston Edison already deposed extensively for two days in this case on March 21 and March 22, 2002, to testify at a deposition in this matter. We do not share your views regarding either issue. Messrs. Uleck and Zabransky were well prepared to testify upon the Government's behalf at their

---

[1] Specifically, subject to the limitations regarding the scope of those topics as set forth in the Court's February 26, 2007 order, the Government designated and produced Mr. Uleck on March 28, 2007, to testify as to Topic Nos. 2(g), 2(h), 7(b), 7(c), 7(d), and 7(e), and the Government designated and produced Mr. Zabransky on April 5, 2007, to testify as to Topic Nos. 2(b), 2(d), 2(e), 2(f), 2(h), 5, and 6 in Boston Edison's deposition notice.

depositions, and the United States is not obligated to produce any additional Government witnesses for depositions in this matter. Accordingly, we will oppose any effort by Boston Edison either to re-open the Government's Rule 30(b)(6) deposition, take any additional fact depositions of Government witnesses, or otherwise limit the ability of the Government to call Messrs. Uleck and Zabransky to testify at trial (should the Government elect to call these individuals as trial witnesses).[2]

As you are well aware, an organization named as a deponent pursuant to Rule 30(b)(6) "shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf," and such designee must testify "as to matters known or reasonable available to the organization." RCFC 30(b)(6). Thus, in the Federal courts, an individual designated to testify pursuant to Rule 30(b)(6) is required to testify "to the knowledge of the corporation, not the individual." See Poole v. Textron, Inc., 192 F.R.D. 494, 504 (D. Md. 2000) (emphasis in original). Consequently, the organization has a duty "to prepare the designees so that they may give knowledgeable and binding answers for the corporation, and this duty "goes beyond matters personally known to the designee or to matters in which the designee was personally involved." Id. (citation omitted). Hence, a Rule 30(b)(6) designee "does not give his personal opinions," but, rather, he presents the organization's "position" with respect to the topics at issue in the subject Rule 30(b)(6) deposition notice. United States v. Taylor, 166 F.R.D. 356, 361 (M.D.N.C. 1996) (citing cases).

Accordingly, "[t]here is no requirement that a Rule 30(b)(6) witness have first-hand knowledge of and involvement in the underlying transaction" or other relevant factual matters, Coram Healthcare Group v. Cigna, No. 00-2677, 2002 WL 32910044, at * 1 n.32 (S.D.N.Y. July 24, 2002) (citing Securities & Exchange Comm'n v. Morelli, 143 F.R.D. 42, 44 (S.D.N.Y. 1992)), and a party is thus free to designate any representative to testify upon its behalf. See Capital Properties, Inc. v. Untied States, 49 Fed. Cl. 607, 613 (citing cases). However, pursuant to Rule 30(b)(6), a organization must designate a representative to testify who "identif[ies] with the [organization's] interests." In re Honda American Motor Co., Inc. Dealership Relations Litig., 168 F.R.D. 535, 541 (D. Md. 1996). In this respect, Federal courts have long recognized that a party "is not required to designate a retired employee to serve as a [Rule] 30(b)(6) designee, because 'it cannot be supposed that . . . former employees would identify their interests with those of their former employers to such an extent that admissions by them should be held to bind the employer.'" Ierardi v. Lorillard, Inc., No. 90-7049, 1991 WL 158911, at *2 (E.D. Pa. Aug. 13, 1991) (citing Proseus v. Anchor Line, Ltd., 26 F.R.D. 165, 167 (S.D.N.Y. 1960); see Honda American, 168 F.R.D. at 541-42 (an organization is not obligated to designate former employees as Rule 30(b)(6) representatives). As a consequence, "it is not uncommon to have a situation, as in the instant case, where a corporation indicates that it no longer employs

---

[2] Presently, the Government does not intend to call either Mr. Dusaniwskyj or Mr. Uleck to testify at trial. However, if we ultimately decide to call Mr. Dusaniwskyj as a trial witness, in the interest of fairness, the Government would allow Boston Edison the opportunity to depose Mr. Dusaniwskyj prior to commencement of trial.

individuals who have memory of a distant event or that such individuals are deceased." Taylor, 166 F.R.D. at 361. In such cases, it is appropriate for an organization to prepare a current employee to testify as a Rule 30(b)(6) designee "to the extent matters are reasonably available, whether from documents, past employees, or other sources." Id. (citation omitted).

In light of these principles, Boston Edison's objections with respect to the Government's designation of Messrs. Zabransky and Uleck as Rule 30(b)(6) representatives are without merit. First, Boston Edison has no basis upon which to demand the Government's production of Mr. Morgan to testify with respect to those topics in Boston Edison's notice pertaining to the development of the "assignment provision" in the Standard Contract. Because Mr. Morgan has long since retired from Government service, the United States is under no obligation to produce him to testify upon its behalf. See Anchor Line, 26 F.R.D. 165, 167 (a party may not be examined through officers no longer in the organization's employ as it "cannot be supposed that...former employees would identify their interests with those of their former employer to such an extent that admissions by them should be held to bind the employer"). In addition, as mentioned previously, because Boston Edison already took an extensive deposition of Mr. Morgan in this litigation, which occurred over the course of two days on March 21, 2002, and March 22, 2002, Mr. Morgan's deposition in this matter is closed. In the event that Boston Edison seeks to depose Mr. Morgan again, Boston Edison must seek leave of court not only to re-open Mr. Morgan's deposition pursuant RCFC 30(a)(2)(B), but also to re-open fact discovery. See, e.g., Independence Park Apartments v. United States, 59 Fed. Cl. 765, 769 (2004) ("RCFC 30(a)(2)(B) expressly requires that a party seeking to depose an individual more than once must obtain leave from the Court to do so."). The United States will oppose any effort by Boston Edison to compel Mr. Morgan to testify at a deposition in this matter.

Likewise, contrary to Boston Edison's baseless claim, the Government is not obligated to produce Mr. Dusaniwskyj to testify in response to those topics contained in Boston Edison's Rule 30(b)(6) deposition notice that relate to the NRC's involvement in connection with the transfer of the Pilgrim operating license from Boston Edison to Entergy Nuclear Generation Company ("Entergy"). Although Mr. Dusaniwskyj may have firsthand knowledge of the NRC's involvement with respect to the NRC's review of the Pilgrim license transfer, the United States is free to choose an appropriate officer from the NRC whose testimony shall bind the Government for purposes of this litigation, and the Government's designee need not have percipient knowledge of relevant factual events. See Coram, 2002 WL 32910044, at *13 n.32 ("There is no requirement that a Rule 30(b)(6) witness have first-hand knowledge of and involvement in the underlying transaction."). Pursuant to Rule 30(b)(6), it is the Government's prerogative to select and educate an appropriate witness to testify upon behalf of the United States, and Boston Edison is not entitled to choose an individual that it deems to be the best suited to testify as the Government's Rule 30(b)(6) designees. See Capital Properties, 49 Fed. Cl. at 613 (citing cases); Morelli, 143 F.R.D. at 44. Accordingly, contrary to the suggestion in your letter, in no way did

the United States act improperly by designating Mr. Uleck, as opposed to Mr. Dusaniwskyj, as its Rule 30(b)(6) representative in this matter.[3]

Further, to the extent that Boston Edison's objects to Messrs. Uleck's and Zabransky's degree of preparedness to testify during their depositions, we take exception to your position. Contrary to the assertions in your letter, the Government properly educated and prepared Messrs. Uleck and Zabransky to testify in response to the designated topics contained in Boston Edison's notice. As Messrs. Uleck and Zabransky testified, both individuals spent numerous days, over the course of several weeks, preparing for their depositions. In particular, in preparation for his testimony, Mr. Uleck interviewed the relevant NRC employees who participated in the agency's review of the Pilgrim license transfer (including, among others, Mr. Dusaniwsky, with whom he spoke on multiple occasions in preparation for his deposition), reviewed the files that the agency maintained in connection with the transfer, and otherwise spent significant time reading pertinent documents relating to the sale. Indeed, as a financial analyst with nearly 20 years of work experience at the NRC, including significant experience in reviewing license transfer applications, Mr. Uleck was particularly well suited to testify in response to Boston Edison's deposition notice, and Mr. Uleck provided educated and well-informed responses to Boston Edison's counsel's questions during his deposition.

Mr. Zabransky – whom, like Mr. Morgan, Boston Edison previously deposed in this litigation on April 17-19, 2002, and April 26, 2002 – also prepared himself adequately to testify as to those topics for which he was designated to provide testimony. With respect to those topics relating to the purpose and effect of the "assignment provision" of the Standard Contract, Mr. Zabransky prepared himself by speaking to the four known surviving individuals who participated in the drafting of the Standard Contract upon behalf of the Government, namely, Robert Roselli, Mr. Michael Lawrence, Mr. James Cavanaugh, and Mr. Morgan, all of whom have previously been deposed during the course of the spent nuclear fuel litigation. Mr. Zabransky also reviewed various documents produced in this litigation and read portions of the administrative record in connection with DOE's promulgation of the Standard Contract in an effort to determine the meaning of the purpose and effect of the assignment provision.[4]

---

[3] Further, in light of the fact that Boston Edison has retained Mr. Robert Wood – a former NRC official who participated in the NRC's review of the Pilgrim license transfer from Boston Edison to Entergy – as a paid consultant in this case, Boston Edison presumably has known, well before Mr. Uleck's deposition, that Mr. Dusaniwskyj might possess relevant firsthand knowledge. Nonetheless, at no point during the discovery period in this case did Boston Edison request to depose Mr. Dusaniwskyj as a percipient fact witness. Now, after the close of discovery, it is inappropriate for Boston Edison to seek Mr. Dusaniwskyj's deposition, either as a fact witness or as a Rule 30(b)(6) representative of the United States, and, accordingly, the Government will oppose any effort by Boston Edison to take his deposition at this stage of the case.

[4] In your letter, you erroneously state that "Mr. Zabransky did not review the administrative record related to the promulgation of the Standard Contract, relying instead on counsel to review the record for him." To the contrary, as he testified during his deposition, Mr. Zabransky read various

Similarly, with respect to Topic No. 2(h), relating to the Government's expectations at the time that the Standard Contract was entered with respect to future onsite dry storage, and Topic Nos. 5 and 6, relating to the estimated costs and potential liabilities in connection with DOE's delay in performance, Mr. Zabransky testified that he spent significant time reviewing relevant portions of the trial testimony that Mr. Morgan provided during the course of another spent nuclear fuel case, in which Mr. Morgan addressed similar questions, and Mr. Zabransky also read numerous other documents that have been produced in this litigation, including, in particular, DOE's dry cask storage study, which DOE published in 1989. Indeed, because Mr. Zabransky spent significant time during his preparation reviewing such written materials as well as conferring with various DOE employees, including the known surviving DOE employees who participated upon behalf of the Government in the drafting of the Standard Contract in 1983, and given Mr. Zabransky's unique status as the current DOE contracting officer with regard to the Standard Contract, it is particularly disingenuous for Boston Edison to suggest that Mr. Zabransky was unprepared or otherwise unqualified to offer educated testimony in response to Boston Edison's deposition notice.[5]

Thus, Messrs. Uleck and Zabransky satisfied their obligation to prepare accordingly in connection with these topics, and Boston Edison's baseless assertion that these witnesses were somehow unprepared or unqualified to testify as to these matters is unfounded. Indeed, in accordance with Rule 30(b)(6), Messrs. Uleck and Zabransky prepared themselves properly to testify "to the extent matters [were] reasonably available, whether from documents, past employees, or other sources."[6] Taylor, 166 F.R.D. at 361. Accordingly, the Government

---

portions of the administrative record in preparation for his deposition. Further, the fact that Mr. Zabransky reviewed the administrative record at the request of the Government's counsel, and not as a result of his own individual planning, does not somehow taint or otherwise undermine the level of Mr. Zabransky's preparation, as Boston Edison seems to suggest. Indeed, it is counsel's duty to bring potentially relevant information to the attention of a designee that will testify upon behalf of his or her client as a Rule 30(b)(6) representative. See, e.g., Poole, 192 F.R.D. at 504 ("Counsel for the entity should prepare the designated witness to be able to provide meaningful information about any designated area(s) of inquiry.") (citation omitted).

[5] Contrary to the assertion in your letter, Mr. Zabransky was under no obligation to review "the legislative history of the [Nuclear Waste Policy Act]" or to "obtain any information from sources outside of DOE regarding why and how that provision was mandated by Congress" in preparation for his deposition. The legislative history of the Nuclear Waste Policy Act is a topic that goes well beyond the scope of Boston Edison's deposition notice. In fact, the Government's understanding of the Nuclear Waste Policy Act was the subject of prior depositions during the coordinated discovery process. Indeed, as you are aware, in its February 26, 2007 order, the Court struck Topic No. 1 from Boston Edison's deposition notice, which sought testimony from the Government regarding the history of the nuclear industry and the effect of the Nuclear Waste Policy Act thereon.

[6] To the extent that Mr. Zabransky or Mr. Uleck was unable to provide Boston Edison with a definitive answer in response to certain questions that Boston Edison's counsel posed during their

properly discharged its obligations pursuant to Rule 30(b)(6), and we will oppose any effort by Boston Edison either to re-open the Government's Rule 30(b)(6) deposition or to take any additional fact depositions of Government witnesses at this stage of the litigation.

As always, please contact us if you have any questions or concerns with respect to this matter.

Sincerely,

Alan J. Lo Re /PBB

ALAN J. LO RE
Senior Trial Counsel
Commercial Litigation Branch

cc: Alex D. Tomaszczuk, Esq.
L. Jager Smith, Jr., Esq.

---

depositions, such a fact alone does not entitle Boston Edison to seek another Rule 30(b)(6) deponent of its choosing, particularly given that the Government and its designees made a good faith effort to prepare properly for the depositions. See, e.g., Boland Marine & Mfg. Co., Inc. v. M/V Bright Field, No. 97-3087, 1999 WL 280541, at *3 (E.D. La. May 3, 1999) (refusing to order party to re-produce Rule 30(b)(6) designee where party made a good-faith effort to prepare the designee to testify, notwithstanding the fact that the designee was unable to answer certain questions posed by counsel during the deposition). Indeed, to the extent that Boston Edison intended to ask certain specific questions of the Government's designee(s), Boston Edison should have narrowed its Rule 30(b)(6) deposition notice to reflect with specificity the areas of inquiry regarding which it sought to depose the Government. See, e.g., Prokosch v. Catalina Lighting, Inc., 193 F.R.D. 633, 638 (D. Minn. 2000) (For Rule 30(b)(6) to function effectively, the requesting party "must take care to designate, with painstaking specificity, the particular subject areas that are intended to be questioned, and that are relevant to the issues in dispute") (emphasis added).