**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **BOSTON EDISON COMPANY,**<br>**Plaintiff,**<br><br>**v.**<br><br>**THE UNITED STATES,**<br>**Defendant.** | ) | |
| **ENTERGY NUCLEAR GENERATION CO.,**<br>**Plaintiff,**<br><br>**v.**<br><br>**THE UNITED STATES,**<br>**Defendant.** | ) | **No. 99-447C**<br>**No. 03-2626C**<br>**(Judge Charles F. Lettow)** |

**PLAINTIFF BOSTON EDISON COMPANY'S SURRESPONSE TO DEFENDANT'S RESPONSE TO PLAINTIFF ENTERGY NUCLEAR GENERATION COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Pursuant to the Court's Order entered May 17, 2007, Plaintiff Boston Edison Company ("Boston Edison") hereby submits this Surresponse to Defendant's Response to Plaintiff Entergy Nuclear Generation Company's ("Entergy") Motion for Partial Summary Judgment.[1] The Government's Response, not surprisingly, parrots many of the erroneous factual and legal contentions made in Entergy's Motion. Most notably, the Government, like Entergy, continuously mischaracterizes Boston Edison's diminished value claims as claims for future damages, ignoring the reality that Boston Edison's diminished value damages resulting from the

[1] Boston Edison filed its Memorandum in Opposition to Plaintiff Energy Nuclear Generation Company's Motion for Summary Judgment on Boston Edison's Claims for Diminution in Value ("Memorandum") on May 14, 2007, the same day that defendant filed its Response to Entergy's Motion for Partial Summary Judgment ("Response"). Boston Edison's Memorandum, which demonstrates the lack of factual or legal merit in Entergy's Motion for Summary Judgment on Boston Edison's Claims for Diminution in Value ("Motion"), also addresses many of the arguments contained in the Government's Response. The purpose of this Surresponse is to address arguments raised for the first time in the Government's Response.

Department of Energy's ("DOE") breach of Standard Contract were sustained on July 13, 1999, the date that Boston Edison sold the Pilgrim Nuclear Power Station ("Pilgrim") to Entergy. By mischaracterizing Boston Edison's claims and ignoring the fact that Boston Edison's damages were sustained nearly eight years ago, the Government attempts to argue that Boston Edison's diminished value claims are barred by the doctrine in *Indiana Michigan Power Co. v. United States*, 422 F.3d 1369 (Fed. Cir. 2005) and that Boston Edison's retention of its diminished value claims somehow violates the Assignment of Claims Act. Both of these arguments are manifestly incorrect.

### A. *Indiana Michigan* Does Not Preclude The Recovery Of Damages That Have Already Been Sustained

As explained in detail in Boston Entergy's Memorandum, Boston Edison's diminished value damages are in no way dependent on the outcome of future events. *See* Memorandum at 8-12. On July 13, 1999, the day Pilgrim was sold, Boston Edison transferred a decommissioning trust fund to Entergy that was significantly larger than would have been necessary but for the Government's breach. Plaintiff Boston Edison Company's Proposed Findings of Uncontroverted Fact Regarding its Diminished Value Claims ("PFF") ¶ 26. On the same day, Boston Edison received a lower purchase price payment from Entergy than would have been received had the Government not breached the Standard Contract. *Id.* ¶¶ 27, 28. Thus, Boston Edison was damaged through the diminished value of Pilgrim as of the day Pilgrim was transferred. As identified in Boston Edison's Memorandum of Contentions of Law and Fact and Entergy's Motion, Boston Edison has been able to calculate the quantum of its damages resulting from DOE's breach with specificity - $86.2 million in damages associated with excess decommissioning funding, $0.947 million in damages associated with the need to install additional spent fuel pool racks, and $36.4 million in damages associated with the higher rate of return and financing implications required by the Pilgrim sale. No future events or, indeed, no

events occurring subsequent to the sale of Pilgrim, can change the diminished value damages Boston Edison has already suffered. *Id.* ¶ 29.

Entergy, in its Motion, simply ignores these facts and would have the Court treat Boston Edison's diminished value damages as if they were no different from the costs that Entergy may or may not incur in the future. The Government, for its part, makes the same incorrect argument and also attempts to argue a slightly different, yet equally erroneous, proposition. The Government incorrectly argues that because Boston Edison's diminished value damages "relate to events that post-date the sale,"[2] this in and of itself precludes recovery of such damages under *Indiana Michigan.* Government's Response at 12.

This argument is plainly wrong. In *Indiana Michigan*, the Federal Circuit decided that it was inappropriate to award damages to a party who has not yet sustained the damages at issue. 422 F.3d at 1376-77. Boston Edison has sustained its diminished value damages, and the amount of these damages will not change based on future events. PFF ¶ 29. The Government's argument that "Boston Edison's diminution in value claim necessarily requires speculation as to future events that may or may not occur," Government's Response at 9, is factually incorrect; this reflects why *Indiana Michigan* does not preclude Boston Edison from recovering diminution in value damages.

Moreover, Boston Edison's diminished value damages are *not* " prospective damages for anticipated future nonperformance." Boston Edison's diminished value claims are based on how DOE's *actual nonperformance and breach as of January 31, 1998 – and its continued failure to perform through the July 13, 1999 sale date –* reduced the actual value of its property, and caused Boston Edison to sustain damages when the property was sold on July 13, 1999. In

---

[2] Entergy's Motion essentially ignores the fact that under section 2.2(g) of the Purchase and Sale Agreement, Boston Edison expressly retained all claims related or pertaining to DOE's defaults under the Standard Contract accrued as of the Closing Date, *"whether relating to periods prior to or following the Closing Date."* PFF ¶ 13.

reality, the extent of the Government's non-performance has proven to be even worse than the parties anticipated in 1999.

**B. Boston Edison's Retention Of Its Diminished Value Claims Is Valid**

Just as the Government relies on mischaracterizations of Boston Edison's diminished value claims to argue, incorrectly, that such claims are barred by *Indiana Michigan*, the Government mischaracterizes the claims to argue – again incorrectly – that Boston Edison's retention of its diminished value claims violates the Assignment of Claims Act, 31 U.S.C. § 3727. By pretending that Boston Edison is "seek[ing] damages for future, projected events that have not transpired," the Government would have the Court conclude that Boston Edison's diminished value claims "would lead to a scenario in which the Government might be required to make 'multiple payment of claims' to two separate claimants based upon the same contract." Government's Response at 12-13. This argument makes no sense, for at least two basic reasons.

First, Boston Edison's diminished value claims are ***not*** dependant on any "future, projected events which have not transpired." These claims are for damages that Boston Edison actually sustained nearly eight years ago when it sold Pilgrim to Entergy, and the terms of that sale were significantly impacted by the Government's conduct in breaching the Standard Contract. For this reason, it is nonsense for the Government to argue that "until Entergy actually incurs costs attributable to DOE's delay in SNF acceptance – no damages have accrued against DOE." *Id*. at 12. While Entergy may or may not have yet sustained damages due to DOE's breach, it defies logic and common sense to assert that Boston Edison has suffered no damages when it sold Pilgrim at a markedly lower value due to the dark cloud of DOE's breach. *See* PFF ¶¶ 26-29.

Second, it is disingenuous for the Government to argue that the Assignment of Claims Act must preclude Boston Edison's retention of its diminished value claims in order to protect

the Government from multiple claims in this matter, where the Court has consolidated the Boston Edison and Entergy cases so that it can ensure that the Government is not subject to inconsistent or duplicative judgments. Moreover, the Government's argument that the diminished value claims cannot stand because they would "impose upon the United States the burden of obtaining an offset against Entergy"[3] ignores the obvious – Entergy has no claims against the Government even when Entergy begins to incur costs necessitated by the Government's breach to the extent that such costs were covered in the Pilgrim sale price and the decommissioning trust fund transferred upon closing. *See* Memorandum at 21.

Finally, the Government is also wrong when it attempts to rely on the language of the Purchase and Sale Agreement ("PSA") to argue that Boston Edison may not pursue its diminished value claims. *See* Government's Response at 13-14. In fact, the Government's argument attempting to "reconcile" the PSA claims retention provisions with the indemnity provisions is contrary to widely accepted rules of contract interpretation, because the Government's interpretation reads out of the PSA a key phrase – "whether relating to periods prior to or following the Closing Date" – from section 2.2(g) of the PSA, *the PSA provision specifically prepared and clearly intended to define apportionment of claims upon the sale.* PFF ¶¶ 13-15. To the extent section 2.2(g) of the PSA, which specifically addresses claims retention and was specifically added to the contract by Boston Edison's counsel as a result of concerns expressed by the Massachusetts Attorney General that Boston Edison retain its claims, *id.*, conflicts with any language in the PSA indemnification provisions (which it does not), the language in section 2.2(g) must govern. *Franchi Construction Co. v. United States*, 609 F.2d 984, 988 (Ct. Cl. 1979); *Dravo Corp. v. United States*, 480 F.2d 1331, 1333 (Ct. Cl. 1973); *Kenneth Reed Construction Corp. v. United States*, 475 F.2d 583, 587 (Ct. Cl. 1973); 11 Richard

[3] Government's Response at 8.

A. Lord, *Williston on Contracts* § 32.10 (4th ed. 2003) ("Where general and specific clauses conflict, a specific clause governs the meaning of the contract."). *See also* Restatement (Second) of Contracts §§ 203(c), (d) ("specific terms and exact terms are given greater weight than general language" and "separately negotiated or added terms are given greater weight than standardized terms or other terms not separately negotiated"). Indeed, the Government's (and Entergy's) interpretations of the PSA provisions are unreasonable because they completely ignore the factual context in which the Purchase and Sale Agreement was negotiated, including the circumstances under which Boston Edison's former counsel added the language in section 2.2(g) to the PSA, and testimony given in Massachusetts regulatory proceedings making it obvious to all parties that Boston Edison was retaining its diminution in value claims. PFF ¶¶ 14-19; *see also* Memorandum at 15-16.

## CONCLUSION

For the reasons set forth above and in Boston Edison's Memorandum filed May 14, 2007, Entergy's Motion for Partial Summary Judgment should be denied.

Date: May 23, 2007

Respectfully submitted,

s/ Richard J. Conway
Richard J. Conway
DICKSTEIN SHAPIRO LLP
1825 Eye Street NW
Washington, DC 20006-5403
(202) 420-2200

*Counsel of Record for Boston Edison Company*

Of Counsel:

Bradley D. Wine
Nicholas W. Mattia, Jr.
Bernard F. Sheehan
DICKSTEIN SHAPIRO LLP
1825 Eye Street NW
Washington, DC 20006-5403
(202) 420-2200

Neven Rabadjija, Esq.
Associate General Counsel
NSTAR Electric & Gas Corporation
800 Boylston Street
17th Floor
Boston, MA 02199-0228

**CERTIFICATE OF ELECTRONIC FILING**

I hereby certify that on this 23rd day of May, 2007, a copy of the foregoing "Plaintiff Boston Edison Company's Surresponse to Defendant's Response to Plaintiff Entergy Nuclear Generation Company's Motion for Partial Summary Judgment" was filed electronically via the Court's Electronic Case Filing System. I understand that notice of this filing will be sent to all parties by operation of the Court's Electronic Case Filing System. Parties may access this filing though the Court's system.

s/ Bradley D. Wine
Bradley D. Wine