IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| BOSTON EDISON COMPANY,<br><br>Plaintiff,<br><br>v.<br>UNITED STATES,<br><br>Defendant. | ) | |
| ENTERGY NUCLEAR GENERATION CO.,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | ) | No. 99-447C<br>No. 03-2626C<br>(Judge Lettow) |

DEFENDANT'S RESPONSE TO PLAINTIFF, BOSTON EDISON COMPANY'S, MOTION *IN LIMINE* TO EXCLUDE CERTAIN TESTIMONY OF ENTERGY'S WITNESS, MR. DONALD R. DENTON

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

SCOTT R. DAMELIN
PATRICK B. BRYAN
STEPHEN FINN
JOSHUA E. GARDNER
SONIA ORFIELD
Civil Division
1100 L Street, N.W.
Washington, D.C. 20530

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

HAROLD D. LESTER
Assistant Director

ALAN J. LO RE
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
1100 L Street, N.W.
Washington, D.C. 20530

May 23, 2007

Attorneys for Defendant

Table of Contents

SUMMARY OF ARGUMENT . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . 2

MR. DENTON POSSESSES THE REQUISITE PERSONAL KNOWLEDGE OF THE NATURE OF THE DECOMMISSIONING TRUST FUND AT THE TIME OF THE PILGRIM ACQUISITION TO TESTIFY AT TRIAL . . . . . . . . . . 2

MR. DENTON'S EXPERIENCE WITH THE PILGRIM DECOMMISSIONING TRUST FUND WHEN HE WAS THE MANAGER OF BUSINESS SERVICES UNREGULATED SATISFIES THE FIRST REQUIREMENT UNDER FRE 701 THAT ANY OPINIONS OR INFERENCES OFFERED INTO EVIDENCE BE LIMITED TO THOSE RATIONALLY BASED ON HIS PERCEPTIONS . . . . . . . . . . 11

CONCLUSION . . . . . . . . . . 13

## TABLE OF AUTHORITIES

### CASES

Agfa-Gevaert, A.G. v. A.B. Dick Co,
879 F.3d 1518 (7th Cir. 1989) . . . . . . . . . . 7, 13, 14

Alaska American Lumber Co., Inc. v. United States,
25 Cl. Ct. 518 (1992) . . . . . . . . . . 8

Boston Edison Co. v. United States,
64 Fed. Cl. 167 (2005) . . . . . . . . . . 5, 8

Carmen v. San Francisco Unified School Dist.,
237 F.3d 1026 (9th Cir. 2001) . . . . . . . . . . 9

Cuyahoga Metropolitan Housing Authority v. United States,
60 Fed. Cl. 481 (2004) . . . . . . . . . . 12

DIJO Inc. v. Hilton Hotels Corp.,
351 F.3d 679 (5th Cir. 2003) . . . . . . . . . . 12

Folio Impressions, Inc. v. Byer California,
937 F.2d 759 (2d Cir. 1991) . . . . . . . . . . 6

Kaczmarek v. Allied Chemical Corp.,
836 F.2d 1055 (7th Cir. 1987) . . . . . . . . . . 10

Kansas City Power & Light Co. v. Ford Motor Credit Co.,
995 F.2d 1422 (8th Cir. 1993) . . . . . . . . . . 6

Los Angeles Times Communications, LLC v. Department of the Army,
442 F.Supp.2d 880 (C.D. Cal. 2006) . . . . . . . . . . 5

Teen-Ed, Inc. v. Kimball Intern., Inc.,
620 F.2d 399 (3d Cir. 1980) . . . . . . . . . . 11

Texas Eastern Transmission Corp. PCB Contamination Ins. Coverage Litigation,
870 F.Supp. 1293 (E.D. Pa. 1992), aff'd, 995 F.2d 219 (3d Cir. 1993) . . . . . . . . . . 10

United States E.E.O.C. v. Catholic Knights Ins. Society,
915 F.Supp 25 (N.D. Ill. 1996) . . . . . . . . . . 6

United States v. Neal,
36 F.3d 1190 (1st Cir. 1994), cert. denied, 519 U.S. 1012 (1996) . . . . . . . . . . . 6, 7, 8, 11

United States v. Quezada,
754 F.2d 1190 (5th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 8, 11

United States v. Rodriguez,
162 F.3d 135 (1st Cir. 1998), cert. denied, 526 U.S. 1152 (1999) . . . . . . . . . . . . . . . . . . 6

United States v. Thompson,
559 F.2d 552 (9th Cir. 1977), cert. denied, 434 U.S. 973 (1977) . . . . . . . . . . . 6, 7, 8, 11

United States v. Wirtz,
357 F.Supp.2d 1164 (D. Minn. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Unterreiner v. Volkswagen of America, Inc.,
8 F.3d 1206 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

**STATUTES**

Rule for the Federal Court of Claims 16 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Federal Rule of Evidence 601 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Federal Rule of Evidence 602 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Federal Rule of Evidence 701 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 11

**OTHER SOURCES**

Stephen A. Saltzburg, Michael M. Martin, & Daniel J. Capra, Federal Rules of Evidence Manual
§ 602.02 (9th ed. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

## INDEX TO THE APPENDIX

DX 323

E-mail from Clifford Gatlin to Charles Minott; cc: Donald Denton, re: Draft Agenda Items for our meeting post outage on decommissioning . . . . . . . . . . . . . . . . . . . . . . . . . . 1

DX 324

E-mail from Charles Minott to Donald R. Denton, re: Post Shutdown Spent Fuel Storage Funding/Pilgrim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| BOSTON EDISON COMPANY,<br><br>Plaintiff,<br><br>v.<br>UNITED STATES,<br><br>Defendant. | ) | |
| | ) | No. 99-447C<br>No. 03-2626C<br>(Judge Lettow) |
| ENTERGY NUCLEAR GENERATION CO.,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | ) | |

DEFENDANT'S RESPONSE TO PLAINTIFF, BOSTON EDISON COMPANY'S, MOTION *IN LIMINE* TO EXCLUDE CERTAIN TESTIMONY OF ENTERGY'S WITNESS, MR. DONALD R. DENTON

Pursuant to Rules for the Court of Federal Claims 16 and the Court's Order dated February 26, 2007, defendant, the United States, respectfully submits this response to the "Motion *In Limine* To Exclude Certain Testimony Of Entergy's Witness, Donald R. Denton" that plaintiff, Boston Edison Company ("BECO"), filed on May 4, 2007.

## SUMMARY OF ARGUMENT

In its motion, BECO seeks to exclude Mr. Denton from testifying at trial regarding "the nature of the funds contained within the decommissioning trust fund transferred at the time of the Pilgrim Nuclear Power Station ('Pilgrim') acquisition," as set forth in the final witness list that the other plaintiff, Entergy Nuclear Generation Company ("Entergy"), filed in this case and does

not address the Government's identification of Mr. Denton as a witness in its final witness list. In an abundance of caution, the Government submits this response to BECO's motion *in limine* because the subject matter of Mr. Denton's expected testimony that BECO has moved to exclude is directly related to, and subsumed within, the subject matters for which we identified Mr. Denton as a witness in our April 30, 2007 final witness list. Contrary to BECO's assertions in its motion *in limine,* neither Federal Rule of Evidence ("FRE") 602 nor FRE 701 require the exclusion of Mr. Denton's testimony regarding the nature of the funds contained within the decommissioning trust fund transferred to Entergy because his testimony demonstrates that he possesses sufficient personal knowledge of the nature of the decommissioning trust fund at the time of the acquisition of Pilgrim by Entergy to meet the requirements of FRE 602 and to testify as a competent witness pursuant to FRE 601. Therefore, Entergy and the Government should be afforded the opportunity at trial to establish the foundation necessary for Mr. Denton to testify regarding the Pilgrim decommissioning trust fund.

## ARGUMENT

### I. MR. DENTON POSSESSES THE REQUISITE PERSONAL KNOWLEDGE OF THE NATURE OF THE DECOMMISSIONING TRUST FUND AT THE TIME OF THE PILGRIM ACQUISITION TO TESTIFY AT TRIAL

"Every person is competent to be a witness except as provided in" the Federal Rules of Evidence. Fed. R. Evid. 601. However, before a witness testifies to a matter, FRE 602 requires that sufficient evidence be introduced to support a finding that the witness has personal knowledge of the matter. Mr. Denton possesses the requisite personal knowledge under FRE 602 to testify about the nature of the funds in the Pilgrim decommissioning trust fund at the time of acquisition and, therefore, is a competent witness under FRE 601.

Mr. Denton is a retired Entergy employee who, from 1999 to 2006, was the Director of Business Services for the subset of Entergy's nuclear generation plants that are "merchant" plants (that is, those plants that are not regulated by state rate-setting agencies). Tr.[1] 11:23-12:4. Mr. Denton's educational and employment experience is in accounting, and he is a certified public accountant. Tr. 9:9-17; 10:2-5; 15:7-17:9.

Mr. Denton became the Manager of Business Services in 1999 after Pilgrim had been acquired and Entergy created the unregulated nuclear company. Tr. 22:11-18. In that position, Mr. Denton was the unregulated nuclear company's acting Chief Financial Officer and was responsible for the accounting functions within the company, including those for Pilgrim. Tr. 12:5-10; 22:2-10. Mr. Denton's responsibilities included preparing and reviewing financial statements, management reporting, preparing data for filings with the United States Securities and Exchange Commission, implementing and maintaining accounting standards, and reviewing and recording financial liabilities for the unregulated nuclear company (including the decommissioning and asset retirement obligations for Pilgrim). Tr. 12:17-13:2; 23:17-24:2; 24:10-22. Mr. Denton also provided financial information to the Entergy licensing group for filings with the United States Nuclear Regulatory Commission ("NRC") regarding the assets in the Pilgrim decommissioning trust fund. Tr. 14:3-15:6. From 1999 until his retirement from Entergy in 2006, Mr. Denton was personally involved with the acquisition of three other nuclear generations facilities. Tr. 40:11-23.

---

1/ "Tr." refers to the transcript of Mr. Denton's March 23, 2007 deposition, which is Exhibit A to BECO's motion *in limine.*

When he became Director of Business Services in 1999, the same year that Entergy bought Pilgrim, Mr. Denton determined that the decommissioning trust fund received from BECO was insufficient. Tr. 27:6-25. Mr. Denton became aware of the issue from his comparison of the decommissioning fund and projections of expected decommissioning liabilities. Tr. 28:3-10. Mr. Denton raised the issue with Mr. John Wilder, Entergy's Chief Financial Officer, who told him that he was aware of the problem and that Entergy's acquisition team had been aware of the problem when the plant was purchased. Tr. 28:5-18; 36:12-20; 168:4-16. Mr. Wilder also explained to Mr. Denton that Entergy had an "exit strategy" for the decommissioning fund that entailed running Pilgrim for five years or more so that the growth of the fund would provide sufficient money to initiate decommissioning. Tr. 28:19-29:6; 30:19-31:10. Mr. Denton also discussed the decommissioning fund and decommissioning liabilities with Mr. Robert Bellamy, the Vice President of Pilgrim, when Mr. Denton became aware that the decommissioning fund for Pilgrim was under funded. Tr. 54:3-5; 83:25-84:17. Mr. Denton discussed issues related to reporting the assets of the Pilgrim decommissioning trust fund to the NRC with Mr. Charles Minott, an Entergy employee who worked at Pilgrim and who had been a BECO employee prior to the acquisition. Tr. 37:23-38:4.

Mr. Denton's testimony also demonstrates the particularities of his knowledge related to the Pilgrim decommissioning trust fund and the status of the fund at the time of acquisition. First, Mr. Denton and employees whom he supervised within the Business Services office evaluated Pilgrim's decommissioning trust fund by comparing a variety of scenarios regarding the fund and decommissioning liabilities. Tr. 31:23-32:12: 34:4-23. Second, his testimony demonstrated his familiarity with the provisional trust fund created at the time of sale by BECO

pursuant to the Purchase and Sale Agreement to provide additional funds to Entergy if the Pilgrim decommissioning trust fund was subject to tax as a result of the sale. Tr. 74:4-22. Third, Mr. Denton testified regarding his knowledge of the NRC regulations for decommissioning trust funds and that, in his discussions with licensing personnel from Entergy, he came to understand that it had always been the case that the funds in the decommissioning trust were specifically set aside for radiological decommissioning and not spent fuel storage. Tr. 101:5-102:8; 154:2-21; 155:19-156:1. In addition, documents demonstrate that Mr. Denton was involved with proper reporting of the decommissioning trust fund to the NRC and that this activity required him to become knowledgeable about what the status of the funds in the trust fund had been at the time of the transfer. A.[2] 1-2.

As this Court has recognized, the threshold for admissibility under FRE 602 is "inexacting." Boston Edison Co. v. United States, 64 Fed. Cl. 167, 181 (2005).

> [FRE] 602 requires that evidence be introduced sufficient to support a finding that the witness has personal knowledge of the matter. A witness is deemed qualified to testify unless no reasonable juror or court could believe that the witness had the ability and opportunity to perceive the event about which he testifies. The quality of such perceptions should go towards the testimony's weight rather than its credibility.

Id. (internal citations and quotations omitted).

"Although first-hand observation is the most common form of personal knowledge, first-hand observation is not the only basis for personal knowledge." Los Angeles Times Communications, LLC v. Department of the Army, 442 F.Supp.2d 880, 886 (C.D. Cal. 2006) (citing Stuart v. UNUM Life Ins. Co. Of Am., 217 F.3d 1145, 1155 (9th Cir. 2000)). A witness'

---

2/ "A. ____" refers to the attached appendix.

statements as to what he believed or thought are admissible provided the witness testifies based upon "general observation and knowledge and not upon conjecture or hearsay." Folio Impressions, Inc. v. Byer California, 937 F.2d 759, 764 (2d Cir. 1991) (citation omitted) (witness's statement that she "believed" rather then "knew" a document was in the defendant's possession was not a basis for exclusion). Personal knowledge may include "inferences and opinions, so long as they are grounded in personal observations and experience." United States v. Rodriguez, 162 F.3d 135, 144 (1st Cir. 1998) (quoting United States v. Neal, 36 F.3d 1190, 1206 (1st Cir. 1994), cert. denied, 519 U.S. 1012 (1996)), cert. denied, 526 U.S. 1152 (1999); see also Kansas City Power & Light Co. v. Ford Motor Credit Co., 995 F.2d 1422, 1432 (8th Cir. 1993) (witnesses had personal knowledge of how public service commission would react to company's decision based upon their experience).

Further, a witness may testify to activities, practices, and procedures even if the witness was not a direct participant in the event at issue. Neal, 36 F.3d at 1206 (witness who commenced employment at bank one month after robbery had personal knowledge that bank was federally insured on date of robbery based upon documents she had contact with during her employment); United States v. Quezada, 754 F.2d 1190, 1196 (5th Cir. 1985) (Government agent who did not observe execution of deportation warrant had personal knowledge based upon his familiarity with the procedure); United States v. Thompson, 559 F.2d 552, 553-54 (9th Cir. 1977) (witness had personal knowledge to testify that guest check from restaurant was not the type normally issued to customers even though the witness did not become manager of restaurant until three months after robbery), cert. denied, 434 U.S. 973 (1977); see also United States E.E.O.C. v. Catholic Knights Ins. Society, 915 F.Supp 25, 27 (N.D. Ill. 1996) (witness who was fired by

defendant a year before plaintiff's employment application was rejected may testify because he had personal knowledge of defendant's employment practices).

BECO's motion relies upon an overly constricted interpretation of the concept of personal knowledge that greatly exceeds the requirements of FRE 602. The mere fact that Mr. Denton did not participate directly in the acquisition of Pilgrim is not dispositive as to whether Mr. Denton possesses personal knowledge of what the status of the decommissioning trust fund was at the time of transfer.[3] The question is whether, in the course of his duties at Entergy, he obtained that personal knowledge. Given his seven years of experience as the Director of Business Services starting immediately after the Pilgrim acquisition, his direct involvement with issues related to the Pilgrim decommissioning trust fund during those years, his supervision of analysis of the fund, and discussions in the execution of his duties with other knowledgeable Entergy employees about the transfer of the fund, Mr. Denton's personal knowledge surpasses the minimal requirements of FRE 602. Further, the deposition segments relied upon by BECO do not demonstrate a lack of personal knowledge by Mr. Denton, they merely demonstrate that Mr. Denton was not personally involved in the acquisition, a fact that is not, of itself, dispositive of the issue. Neal, 36 F.3d at 1206; Quezada, 754 F.2d at 1196; Thompson, 559 F.2d at 553-54. Further, merely because Mr. Denton obtained his knowledge, in part, from other Entergy employees does not demonstrate a lack knowledge under FRE 602. Indeed, knowledge obtained from others is an acceptable basis for the formation of personal knowledge. See Agfa-Gevaert,

---

3/ BECO's challenge to Mr. Denton's ability to discuss the status of the decommissioning trust fund is indeed ironic given BECO's apparent plan to have Mr. Robert S. Wood, a former NRC employee with no direct involvement in the purchase and sale of Pilgrim, testify extensively about the trust fund transferred from BECO to Entergy as part of the Pilgrim transaction.

A.G. v. A.B. Dick Co, 879 F.2d 1518, 1523 (7th Cir. 1989) (knowledge acquired through others may be personal knowledge within the meaning of FRE 602) (citing, *inter alia*, Robinson v. Watts Detective Agency, Inc., 685 F.2d 729, 739 (1st Cir. 1982) ("most knowledge has its roots in hearsay")).

In addition, the cases that BECO cites do not support their arguments. First, this Court's February 15, 2005 opinion in the instant matter is not distinguishable. In that opinion, this Court found that, by virtue of his oversight of the auction process for Boston Edison, Mr. Lubbock met the "inexacting" standard of FRE 602 because he was in a position to "perceive tendencies on the part of the buyers." Boston Edison Co., 64 Fed. Cl. at 181. Similarly, Mr. Denton meets the standard of FRE 602 because he possesses personal knowledge from being in a position at Entergy for seven years to perceive what the status of the funds in the decommissioning trust fund had been at the time of transfer.

Further, in Alaska American Lumber Co. v. United States, 25 Cl. Ct. 518 (1992), upon which BECO relies, the Court found that information contained in an affidavit was pure conjecture by the declarant and, therefore, inadmissible. The declarant had not been at the meeting that he described in the affidavit, and there was no other evidence in the affidavit that could have supported a finding of personal knowledge of the discussion in the meeting. The Alaska American Lumber case is distinguishable from those cases cited above where the Court determined that direct observation of the event was not needed to establish personal knowledge, Neal, 36 F.3d at 1206, Quezada, 754 F.2d at 1196, and Thompson, 559 F.2d at 553-54. The substance of the evidence offered in Alaska American Lumber regarding a conversation required

the witness' presence at the event and, in the absence of first-hand observation, there was no other evidence that demonstrated the declarant's personal knowledge.

Similarly, the Court's decision in Carmen v. San Francisco Unified School District, 237 F.3d 1026 (9th Cir. 2001), is inapplicable here because, in upholding the district court's decision on summary judgment, the United States Court of Appeals for the Ninth Circuit found that there was no issue of fact where the plaintiff's affidavit merely stated that she "believed" that the school district had retaliated against her. The appellate court determined that subjective belief does not equate to personal knowledge. Id. Mr. Denton's testimony amply demonstrates that his personal knowledge is grounded in his experience at Entergy and is not conjecture or subjective belief, and, although he was not involved in the acquisition of Pilgrim, he had meaningful first-hand experience with issues related to the decommissioning trust fund for seven years immediately following the acquisition.

The Court's decision in Unterreiner v. Volkswagen of America, Inc., 8 F.3d 1206 (9th Cir. 1993), another case upon which BECO relies, is also distinguishable because, in that case, after the plaintiff testified at a deposition and stated in an affidavit (submitted a year after the deposition) that he had not seen a notice posted on a bulletin board, he stated in the same affidavit that there had been no notice posted on the bulletin board. The United States Court of Appeals for the Ninth Circuit determined that, for purposes of summary judgment, inconsistency by a party that discounts his knowledge does not create an issue of fact. Id. In dicta, the appellate court briefly discussed whether a fact-finder might be able to hear the testimony because the witness discounted his personal knowledge and determined that it may not be an abuse of discretion to exclude such testimony. Id. at 1211-12. Unterreiner is distinguishable

from the instant case because the witness himself, in prior testimony, had discounted his personal knowledge of whether the bulletin was posted. The appellate court noted that, where the substance of the testimony relies on "sense data," or first-hand observation, and the witness lacks such "sense data," the testimony may be excluded. Id. However, the court did not exclude other types of data or information as a means to obtain personal knowledge, such as, in this case, where Mr. Denton has seven years of experience handling issues related to the Pilgrim decommissioning trust fund.

Finally, BECO cites Kaczmarek v. Allied Chemical Corp., 836 F.2d 1055 (7th Cir. 1987), for the proposition that a witness lacks personal knowledge if he gains knowledge after the fact. However, the declarant in Kaczmarek was a safety director who testified regarding company safety practices. The accident about which he was testifying had occurred five years before he became safety director, and the only information that he had was the "say-so" of other people. The United States Court of Appeals for the Seventh Circuit noted that the witness lacked the observation of behavior and discussions with other people that are the basis of personal knowledge. Id. In the instant matter, Mr. Denton has had direct, timely personal observation of activities related to the trust fund, has discussed the trust fund with others, and has observed and discussed issues related to the decommissioning trust fund with other knowledgeable people. See Texas Eastern Transmission Corp. PCB Contamination Ins. Coverage Litigation, 870 F. Supp. 1293, 1304 (E.D. Pa. 1992) (witness had personal knowledge where he relied on various sources), aff'd, 995 F.2d 219 (3d Cir. 1993).

Mr. Denton had seven years of experience overseeing the financial accounting of the decommissioning trust fund for Pilgrim immediately after the acquisition. Mr. Denton not only

had supervisory responsibilities but was directly involved in identifying and resolving issues related to the accounting and regulatory reporting of the trust fund. Mr. Denton possesses personal knowledge because he had to resolve issues related to an underfunded trust fund, report the problem to management, and provide input on reports to the NRC. In so doing, he talked to management, Mr. Wilder, and other Entergy employees such as Mr. Bellamy and Mr. Minott. He ran analysis of the fund and helped clarify proper regulatory reporting of the trust fund. The mere fact that he was not a member of the acquisition team does not disqualify him from testifying based upon his personal knowledge. Neal, 36 F.3d at 1206; Quezada, 754 F.2d at 1196; Thompson, 559 F.2d at 553-54. Mr. Denton possesses sufficient personal knowledge to testify at trial regarding the decommissioning trust fund and his testimony should not be excluded under FRE 602, and BECO's motion *in limine* should be denied.

## II. MR. DENTON'S EXPERIENCE WITH THE PILGRIM DECOMMISSIONING TRUST FUND WHEN HE WAS THE MANAGER OF BUSINESS SERVICES UNREGULATED SATISFIES THE FIRST REQUIREMENT UNDER FRE 701 THAT ANY OPINIONS OR INFERENCES OFFERED INTO EVIDENCE BE LIMITED TO THOSE RATIONALLY BASED ON HIS PERCEPTIONS

FRE 701 permits a witness to testify about his opinions or inferences if they are rationally based on the perception of the witness. See Fed. R. Evid. 701; United States v. Wirtz, 357 F.Supp.2d 1164, 1169 (D. Minn. 2005). "The general application of [FRE] 701 indicates that a lay witness may testify about facts within his or her range of generalized knowledge, experience, and perception." Id. (citing United States v. Espino, 317 F.3d 788, 797 (8th Cir. 2003)). "FRE 701 effectively incorporates the personal knowledge requirement" of FRE 602 "as a prerequisite to acceptance of opinions by lay persons." Stephen A. Saltzburg, Michael M. Martin, & Daniel J. Capra, Federal Rules of Evidence Manual § 602.02 (9th ed. 2006); see Teen-Ed, Inc. v.

Kimball Intern., Inc., 620 F.2d 399, 403 (3d Cir. 1980) (personal knowledge sufficient under FRE 602 qualifies witness to testify to his opinions under FRE 701).

BECO's argument to exclude Mr. Denton's testimony under FRE 701 is identical to its argument for exclusion under FRE 602. To the extent that Mr. Denton offers testimony under 701 regarding the status of funds for the Pilgrim decommissioning trust fund at the time of transfer and it is rationally based on his perceptions, it should not be excluded. As discussed above, through his experience Mr. Denton possesses personal knowledge on the subject of the status of the decommissioning trust fund sufficient to satisfy the requirements of FRE 602 and, therefore, FRE 701. Teen-Ed, Inc., 620 F.2d at 403. Further, the cases that BECO cites supporting its argument, Cuyahoga Metropolitan Housing Authority v. United States, 60 Fed. Cl. 481 (2004), and DIJO Inc. v. Hilton Hotels Corp., 351 F.3d 679 (5th Cir. 2003), are inapposite. In Cuyahoga Metropolitan Housing Authority and DIJO, the courts excluded testimony by witnesses who offered testimony regarding studies and appraisals that they claimed to have conducted, but where the inputs had been received by others and were not the product of the testifying witnesses' own observations or independent knowledge. This case is entirely different from those two cases because the testimony offered in those cases was based upon incomplete knowledge of studies and analysis that was to be the substance of the witnesses' testimony.

CONCLUSION

For the foregoing reasons, the Government respectfully requests that this Court deny Boston Edison Company's motion *in limine* to exclude certain testimony by Mr. Donald R. Denton regarding the nature of funds contained within the decommissioning trust fund transferred at the time of the Pilgrim Nuclear Power Station acquisition.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/Harold D. Lester Jr.
HAROLD D. LESTER
Assistant Director

s/Alan J. Lo Re by Stephen Finn
ALAN J. LO RE
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 307-0226
Fax: (202) 307-2503

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

PATRICK B. BRYAN
SCOTT R. DAMELIN
STEPHEN FINN
JOSHUA E. GARDNER
SONIA ORFIELD
Civil Division
Department of Justice
1100 L Street, N.W.
Washington, D.C. 20530

May 23, 2007

Attorneys for Defendant

# APPENDIX

SPEYERER, PAUL D

**From:** Gatlin, Clifford
**Sent:** Saturday, April 21, 2001 1:37 PM
**To:** Minott, Charles
**Cc:** DENTON, DONALD R; IUPE, LINDA C; Gerety, John
**Subject:** RE: Draft Agenda Items for our meeting post outage on decommissioning

Charlie,

The agenda looks good to me. I think many of the same players should be involved: Don Denton, Mike Caruso, John Gerety, Susan Warbington, John Jacobs, Linda lupe, and yourself. I honestly don't know who would fit your item "A". I suspect it may have been Dan Keuter, but that's just a guess. I will copy Linda lupe on this email. Maybe she and Don Denton can determine who that individual is. In section 3, you refer to the parent guaranty that Pilgrim currently must maintain for catastrophic events associated with Pilgrim. We had originally hoped that this amount could be shared amongst the Northeast, but for some reason it could not happen. I am pretty sure that Don Denton can speak to that issue.

Cliff

-----Original Message-----
**From:** Minott, Charles
**Sent:** Thursday, April 12, 2001 5:11 PM
**To:** Gatlin, Clifford
**Subject:** Draft Agenda Items for our meeting post outage on decommissioning

Cliff:
I was asked to work up some draft agenda items for our meeting right after the outage to understand the basis for the initial trust amount ($423million) the related decommissioning estimate and the target real growth of the trust amount. I look to you to change as needed and also to suggest who the players should be. From my perspective, we need someone for item "A" below who really knows the answers to the four questions...so far I can't find anyone; also, who would be the appropriate decision makers to address items B and C?

Charlie

A) Basis for initial trust amount

1) Basis for $782(2012$) million "target decommissioning trust fund amount?
2) Relationship to TLG adjusted decommissioning estimate of $578 million(97$)?
3) Basis for Entergy alteration of above $578 million to $572million
4) Split of decommissioning(50.75) and spent fuel (50.54bb) costs

B) Strategy for trust investment

1) Required net after tax annual return needed to achieve desired amounts established from above and also to meet the NRC minimum?
a) after tax earnings rate?
b) assumed growth rate in NRC minimum cost

2) Beneficial to continue commingling the decommissioning and spent fuel storage trust amounts?

3) Any change in strategy with life extension?

C) $50million decommissioning guarantee

1)Potential to share the coverage and cost of maintaining the guarantee among multiple plants?



ENGC/BECO DOE 1ST RFP-3-301

Boston Edison
Defendant's Exhibit
0323

**SPEYERER, PAUL D**

**From:** Minott, Charles
**Sent:** Monday, August 13, 2001 1:11 PM
**To:** DENTON, DONALD R
**Cc:** Gatlin, Clifford
**Subject:** Post Shutdown Spent Fuel Storage Funding/Pilgrim

Don:
I understand Entergy identifies areas of potential financial risk (risk profiles?). Is there any such item identified to address potential financial obligations for Pilgrim post-shutdown spent fuel storage? If so, may I get a copy of it for Mike Bellamy?

From what I can gather, the $400 million funding received from Boston Edison was based on an amount to cover the NRC minimum decommissioning amount required under 10CFR50.75. This NRC amount does not fund post shutdown spent fuel storage costs which are required under 10CFR50.54. These post shutdown spent fuel storage costs can be significant even if DOE were to perform as specified in their contract.

Is there any light you can shed on this?

Thank you.

Charlie



Boston Edison
Defendant's Exhibit
0324

ENGC/BECO DOE 1ST RFP-3-307

CERTIFICATE OF FILING AND CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of May, 2007, a copy of foregoing "DEFENDANT'S RESPONSE TO PLAINTIFF, BOSTON EDISON COMPANY'S, MOTION *IN LIMINE* TO EXCLUDE CERTAIN TESTIMONY OF ENTERGY'S WITNESS, MR. DONALD R. DENTON" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Stephen Finn