No. 99-447C, No. 03-2626C
(Judge Lettow)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

BOSTON EDISON COMPANY,

Plaintiff,

v.

UNITED STATES,

Defendant,

ENTERGY NUCLEAR GENERATION CO.,

Plaintiff,

v.

UNITED STATES,

Defendant.

---

DEFENDANT'S RESPONSE TO PLAINTIFF BOSTON EDISON COMPANY'S MOTION *IN LIMINE* TO EXCLUDE TESTIMONY BY THE GOVERNMENT REGARDING ARTICLE XIV OF THE STANDARD CONTRACT

---


PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

HAROLD D. LESTER, JR.
Assistant Director

ALAN J. LO RE
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 307-0226
Fax: (202) 307-2503

Attorneys for Defendant

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

PATRICK B. BRYAN
SCOTT R. DAMELIN
STEPHEN P. FINN
JOSHUA E. GARDNER
SONIA M. ORFIELD
Trial Attorneys
Department of Justice


May 25, 2007

# TABLE OF CONTENTS


BACKGROUND ........................................................................................................ 2

SUMMARY OF ARGUMENT ........................................................................................ 12

DISCUSSION ........................................................................................................ 15

I. BOSTON EDISON'S MOTION PURSUANT TO RCFC 37(b)(2)(B) TO PRECLUDE THE GOVERNMENT FROM OFFERING ANY TESTIMONY REGARDING THE ASSIGNMENT PROVISION OF THE STANDARD CONTRACT SHOULD BE DENIED, AS MR. ZABRANSKY WAS ADEQUATELY PREPARED TO TESTIFY AT HIS DEPOSITION AND THE UNITED STATES OTHERWISE PROPERLY DISCHARGED ITS DISCOVERY OBLIGATIONS ........................................................ 15

II. MR. ZABRANSKY'S TESTIMONY IS RELEVANT BECAUSE IT RELATES TO THE ISSUE OF WHETHER THE DAMAGES SOUGHT BY BOSTON EDISON ARE FORESEEABLE ........................................................ 18

III. MR. ZABRANSKY, THE CONTRACTING OFFICER FOR THE STANDARD CONTRACT, POSSESSES THE REQUISITE PERSONAL KNOWLEDGE TO OFFER TESTIMONY AT TRIAL REGARDING THE STANDARD CONTRACT AND ITS PROVISIONS, INCLUDING THE ASSIGNMENT CLAUSE ........................................................ 23

CONCLUSION ........................................................................................................ 29

## TABLE OF AUTHORITIES

### CASES


Bohac v. Department of Agriculture,
239 F.3d 1334 (Fed. Cir. 2001) ........ 20

Boston Edison Co. v. United Stats,
64 Fed. Cl. 167 (2005) ........ 19, 24, 27

Boston Edison Co. v. United States,
75 Fed. Cl. 557 (2007) ........ 3, 4

Capital Properties, Inc. v. Untied States,
49 Fed. Cl. 607 ........ 16

Coram Healthcare Group v. Cigna, No. 00-2677,
2002 WL 32910044 (S.D.N.Y. July 24, 2002) ........ 16

Cuyahoga Metropolitan Housing Authority v. United States,
60 Fed. Cl. 481 (2004) ........ 27

DIJO Inc. v. Hilton Hotels Corp.,
351 F.3d 679 (5th Cir. 2003) ........ 27

Fab-Tech, Inc. v. E.I. Dupont De Numours & Co.,
2006 WL 3702753 (D. Vt. 2006) ........ 18

First Height Banks v. United States,
57 Fed. Cl. 162 (2003) ........ 22

In re Honda American Motor Co., Inc. Dealership Relations Litig.,
168 F.R.D. 535 (D. Md. 1996) ........ 16

Ierardi v. Lorillard, Inc., No. 90-7049,
1991 WL 158911 (E.D. Pa. Aug. 13, 1991) ........ 16

Indiana Michigan Power Co. v. United States,
422 F.3d 1369 (Fed. Cir. 2005) ........ 20

Krueger Assoc. v. American Dist. Tele. Co. of Pa.,
247 F.3d 61 (3rd Cir. 2001) ........ 19

Los Angles Times Communications, LLC v. Dep't of Army,
422 F. Supp. 2d 880, 886 (C.D. 2006) . . . . . . . . . . 25, 26

Landmark Land Co. v. Federal Deposit Insur. Corp.,
256 F.3d 1365 (Fed. Cir. 2001) . . . . . . . . . . 20

Mosley v. City of Northwoods, Missouri,
415 F.3d 908 (8th Cir. 2005) . . . . . . . . . . 19

Murphy v. Missouri Dep't of Corrections,
372 F.3d 979 (8th Cir. 2004) . . . . . . . . . . 19

Pivot Point Int'l, Inc. v. Charlene Products, Inc.
1996 WL 284949 (N.D. Ill. 1996) . . . . . . . . . . 20

Poole v. Textron, Inc.,
192 F.R.D. 494 (D. Md. 2000) . . . . . . . . . . 15

Proseus v. Anchor Line, Ltd.,
26 F.R.D. 165 (S.D.N.Y. 1960) . . . . . . . . . . 16, 17

Pugh v. City of Attica,
259 F.3d 619 (7th Cir. 2001) . . . . . . . . . . 24

Ramsey v. United States,
101 F. Supp. 353,
121 Ct. 426 (1951) . . . . . . . . . . 21

Scott Timber Co. v. United States,
33 F.3d 1358 (Fed. Cir. 2003) . . . . . . . . . . 21

Securities & Exchange Comm'n v. Morelli,
143 F.R.D. 42 (S.D.N.Y. 1992) . . . . . . . . . . 16

Societe Generale Energie Corp. v. New York Marine & General Ins. Co.,
368 F. Supp. 2d 296 (S.D.N.Y. 2005) . . . . . . . . . . 16

Teen-Ed, Inc. v. Kimball Intern, Inc.,
620 F.2d 399, 403 (3d. Cir. 1980) . . . . . . . . . . 23

United States E.E.O.C. v. Catholic Knights Inc. Society,
915 F. Supp. 26 (N.D. Ill. 1996) . . . . . . . . . . 24, 25

United States v. Taylor,
166 F.R.D. 356 (M.D.N.C. 1996) . . . . . . . . . . 16

Wells Fargo Bank, N.A. v. United States,
88 F.3d 1012 (Fed. Cir. 1996), cert. denied,
520 U.S. 1116 (1997) .......................................................................................... 20, 21, 22

**RULES**

Fed. R. Evid. 402 .............................................................................................................. 19

Fed. R. Evid. 602 ............................................................................................... 9, 10, 15, 16

Fed. R. Evid. 701 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

FRCP 30(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .*passim*

FRCP 37(b)(2)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15, 18

# INDEX TO APPENDIX

March 2, 2007 Letter From the Government's Counsel to Richard J. Conway, Counsel For Boston Edison . . . . . . . . . . . . . .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Portions of Transcript From April 17, 2002 Deposition of David Zabransky . . . . . . . . . . . . . . . . 3

April 11, 2007 Letter From Counsel for the Government to Richard J. Conway, Counsel For Boston Edison . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| BOSTON EDISON COMPANY,<br>Plaintiff,<br>v.<br>UNITED STATES,<br>Defendant. | |
| ENTERGY NUCLEAR GENERATION CO.,<br>Plaintiff,<br>v.<br>UNITED STATES,<br>Defendant. | No. 99-447C<br>No. 03-2626C<br>(Judge Lettow) |

DEFENDANT'S RESPONSE TO PLAINTIFF BOSTON EDISON COMPANY'S MOTION *IN LIMINE* TO EXCLUDE TESTIMONY BY THE GOVERNMENT REGARDING ARTICLE XIV OF THE STANDARD CONTRACT

Defendant, the United States, respectfully responds to the "Motion In Limine To Exclude Testimony By The Government Regarding Article XIV Of The Standard Contract, Including The Testimony Of Defendant's Witnesses, Mr. David Zabransky And Mr. Robert Morgan," that plaintiff, Boston Edison Company ("Boston Edison"), filed on May 4, 2007. For the reasons that follow, Boston Edison's motion should be denied, as the United States is entitled to call Mr. Zabransky, the Standard Contract contracting officer for the United States Department of Energy ("DOE") to testify regarding his firsthand knowledge and observations relating to the operation, purpose, and effect of the assignment provision of the Standard Contract. Further, Boston

Edison's motion with regard to Mr. Morgan should be denied as moot, as the United States does not currently intend to call Mr. Morgan to testify at trial concerning the assignment provision of the Standard Contract. However, as set forth below, to the extent that the Court excludes Mr. Zabransky's testimony, we reserve the right to call Mr. Morgan to testify at trial concerning the development of the assignment provision during contract formation. In such case, we would not object to Boston Edison's request to take a discrete deposition of Mr. Morgan regarding his knowledge of the purpose and effect of the assignment provision prior to trial.

## BACKGROUND

Boston Edison, along with other nuclear utility plaintiffs seeking damages against the Government for delayed acceptance by DOE of spent nuclear fuel and high-level radioactive waste (collectively, "SNF") pursuant to the Standard Contract, was a party to the coordinated discovery phase of this litigation conducted in 2001 and 2002. During the coordinated discovery proceedings, Boston Edison, through its counsel at the time, Shaw Pittman LLP (now Pillsbury Winthrop Shaw Pittman LLP), joined in a consolidated effort with the other nuclear utility plaintiffs to obtain document and deposition discovery from the Government relating to the plaintiffs' claims. At that time, Boston Edison, through its counsel, actively participated in the depositions of 13 Government witnesses (which were conducted over the course of 34 actual days of testimony in 2002) concerning matters relevant to its claims. Among the Government witnesses deposed by Boston Edison were David Zabransky – an employee of DOE's Office of Civilian Waste Management and the agency's current contracting officer for the Standard Contract – whom Boston Edison deposed as both a fact witness and a RCFC 30(b)(6) representative on April 17 through April 19, 2002, and April 26, 2002, respectively, and Robert

Morgan, whom Boston Edison deposed for two days as a percipient fact witness on March 21 and March 22, 2002.[1]

More than four years later, on November 7, 2006, Boston Edison served upon the Government an additional Rule 30(b)(6) deposition notice without seeking prior leave of Court, as required by RCFC 30(a)(2)(B). Because Boston Edison's deposition notice contained topics that were duplicative, cumulative, overly broad, and otherwise invalid, the Government "objected to the notice and asked Boston Edison to narrow its request." Boston Edison Co. v. United States, 75 Fed. Cl. 557, 564 (2007). On December 1, 2006, Boston Edison – without first responding to the Government's request to narrow the scope of its renewed Rule 30(b)(6) deposition notice – filed a motion to compel the Government to produce one or more knowledgeable designees, pursuant to RCFC 30(b)(6), to testify in response to Boston Edison's Rule 30(b)(6) deposition notice.[2] Because "[s]everal topics identified by Boston Edison for further depositions under Rule 30(b)(6) overlap[ped] the areas covered by prior deposition" and were otherwise invalid, the Court, by order dated February 26, 2007, denied various topics and subtopics contained in Boston Edison's December 1, 2006 deposition notice and granted Boston Edison the opportunity to take a limited deposition of the Government regarding certain topics

---

1/ In its response to Entergy Nuclear Generation Company's motion for partial summary, dated May 14, 2007, Boston Edison asserted that its "intention to retain and pursue its diminished value claims was underscored in its original complaint in this case filed on July 12, 1999." Boston Edison Response Br., May 14, 2007, at 16. Therefore, by Boston Edison's own admission, the issue of foreeeseeability with respect to the assignment of the Standard Contract was relevant at the time of Boston Edison's deposition of Mr. Morgan in 2002 during coordinated discovery.

2/ In its December 1, 2006 motion, Boston Edison included a proposed Rule 30(b)(6) deposition notice that was substantially similar to the notice that Boston Edison served upon the Government on November 6, 2007.

upon which Boston Edison had not previously deposed the Government. Id. at 567. Among the deposition topics that the Court deemed to be permissible areas of discovery was Boston Edison's request to depose the Government concerning issues relating to the formulation, purpose, and effect of the assignment provision of the Standard Contract.[3] See id. at 567-68.

Soon after the issuance of the Court's February 26, 2007 order, the United States designated two Government officials, Mr. Ronald Uleck, a current employee of the United States Nuclear Regulatory Commission ("NRC"), and Mr. David Zabransky, an employee of the United States Department of Energy ("DOE"), as designees to testify with respect to those topics contained in Boston Edison's December 1, 2006 Rule 30(b)(6) deposition notice that the Court ruled to be permissible areas of discovery, including DOE's understanding of potential spent nuclear fuel storage costs incurred by the nuclear industry in connection with DOE's delay in spent nuclear fuel acceptance, as well as DOE's position regarding the purpose and effect of the assignment provision of the Standard Contract.[4] A1-2.[5] Although we initially offered to produce

---

3/ The assignment provision, which is contained in Article XIV of the Standard Contract, states that "[t]he rights and duties of the Purchaser may be assignable with transfer of title to the SNF and/or HLW involved; provided, however, that notice of any such transfer shall be made to DOE within ninety (90) days of transfer."

4/ With respect to those topics relating to the assignment provision, subject to the limitations regarding the scope of those topics as set forth in the Court's February 26, 2007 order, the Government designated Mr. Zabransky on April 5, 2007, to testify as to the following topics contained in Boston Edison's December 1, 2006 Rule 30(b)(6) deposition notice: Topic Nos. 2(b), 2(d), 2(e), and 2(f). Specifically, with respect to Topic No. 2(b), which sought testimony from the Government regarding "the formulation of the terms of the Standard Contract," the Court permitted discovery "only insofar as the subtopic relates to the formulation of the assignment provision in the Standard Contract agreement." Boston Edison, 75 Fed. Cl. at 565, 567 (emphasis in original).

With regard to Topic No. 2(d), which sought testimony concerning "the terms and requirements of the Standard Contract," the Court permitted Boston Edison to examine the Government only "insofar as the subtopic relates to the formulation of the assignment provision"

Mr. Zabransky for deposition on March 14, 2007, Boston Edison declined our invitation and requested a later date for the deposition. Thereafter, the parties agreed to schedule Mr. Zabransky's deposition to commence on March 28, 2007. Nevertheless, because of illness, Mr. Zabransky was unable to sit for a deposition on March 28, 2007, and, consequently, the parties jointly agreed to conduct Mr. Zabransky's deposition following his recovery on April 5, 2007, which was eight days beyond the close of discovery pursuant to the Court's February 26, 2007 scheduling order.[6] See Joint Motion For Leave To Allow Deposition To Take Place After The Close of Discovery, dated March 28, 2007.

The Government selected Mr. Zabransky to serve as DOE's Rule 30(b)(6) designee concerning the assignment provision of the Standard Contract in large part because of his direct and daily involvement with respect to the Standard Contract in his capacity as the agency's Standard Contract contracting officer – a position requiring close familiarity with the individual

---

of the Standard Contract. Id.

Similarly, with regard to Topic No. 2(e), which sought testimony concerning only the "provision of the Standard Contract which permitted Boston Edison to assign its rights and duties pursuant to the Standard Contract," the Court permitted Boston Edison to conduct discovery regarding this subtopic pursuant to Rule 30(b)(6). Id.

Finally, with regard to Topic No. 2(f), which sought testimony concerning "the expectations of the parties at the time of contracting," the Court limited the scope of the subtopic solely "insofar as the parties' expectations in 1983 concerned the assignment provision." Id.

5/ "A___" refers to a page in the appendix that is attached to this response.

6/ Boston Edison suggests that the United States intentionally and deliberately waited until "[m]ore than a month after the Court's February 26, 2007 Order, and after several scheduling delays" to produce Mr. Zabransky for deposition on April 5, 2007. Boston Edison's Motion In Limine, at 3. To the extent that Boston Edison seeks to portray the Government as somehow failing to act promptly to comply in good faith with the Court's February 26, 2007 order, Boston Edison's own refusal to accept the Government's offer to take Mr. Zabransky's deposition nearly one month earlier on March 14, 2007, belies Boston Edison's assertion.

provisions of the Standard Contract – as well as Mr. Zabransky's own extensive prior experience in the nuclear industry dating back to 1980, when, upon graduation from college, Mr. Zabransky joined Wisconsin Electric and Power Company as an engineer in the nuclear power department. See April 17, 2002 Deposition Transcript of David Zabransky, at 19:22-20:2 (A7). Mr. Zabransky, who worked at Wisconsin Power for fourteen years, became Wisconsin Power's contract administrator for nuclear fuel services in 1984 and, in that capacity, was responsible for administering the Standard Contract upon behalf of Wisconsin Electric. Id. at 20:4-21 (A7). Subsequently, in 1994, Mr. Zabransky left Wisconsin Electric to take a position as "team leader of waste acceptance" in the agency's Office of Acceptance, Transportation, and Integration, a role that involved "day-to-day administration" of the Standard Contract. Id. at 17:11-18:6; 22:15-23:6 (A7-8). Since joining DOE in 1994, in addition to serving in the role of "team leader of waste acceptance," Mr. Zabransky has served in a variety of other positions for the agency, including the position of "nuclear industry specialist," the contracting officer's technical representative, and ultimately, the contracting officer for the Standard Contract, a position which Mr. Zabransky has held continuously since the summer of 2002. April 5, 2007 Deposition Transcript of David Zabransky ("Zabransky Tr."), attached to Boston Edison's Motion at Exhibit A, at 9:4-10:11; 11:5-7.

In anticipation of his deposition on April 5, 2007, Mr. Zabransky prepared diligently over the course of several weeks to testify concerning Boston Edison's deposition topics concerning the assignment clause and other areas of examination. Tr: 12:8-32:2. In particular, with respect to Boston Edison's topics relating to the "assignment provision" of the Standard Contract, Mr. Zabransky prepared himself by speaking to the four known surviving individuals who participated in the drafting and formulation of the Standard Contract upon behalf of the

Government: namely, Messrs. Robert Roselli, Michael Lawrence, James Cavanaugh, and Robert Morgan, all of whom have previously been deposed during the course of the spent nuclear fuel litigation. Tr. 13:13-24:11; 69:19-70:14. Mr. Zabransky also reviewed documents and read portions of the administrative record in connection with DOE's promulgation of the Standard Contract. Tr. 12:8-11; 214:5-20; 26:8-27:7.

At his deposition on April 5, 2007, counsel for Boston Edison repeatedly asked Mr. Zabransky questions regarding DOE's understanding as to the purpose and intent of the assignment provision at the time that Boston Edison and other utilities entered into the Standard Contract. In response, Mr. Zabransky, drawing upon his review of relevant documents, discussions with the four known DOE representatives who participated upon behalf of the Government in the drafting of the Standard Contract in 1983, and his own knowledge as the current DOE contracting officer with regard to the Standard Contract, repeatedly provided complete and educated responses to counsel's questions. For example, Mr. Zabransky testified that the provision was included because the Nuclear Waste Policy Act ("NWPA") expressly required that such a provision be contained within the Standard Contract. Tr: 16:22-17:13; 21:5-22:12; 45:17-22; 46:1-4; In fact, at the time of contract formation, DOE attempted to determine why Congress required the inclusion of an assignment provision in the Standard Contract by holding discussions with certain members of Congress and congressional staffers, but DOE was nevertheless unable to determine why Congress had specified the inclusion of the assignment provision. Tr: 50:11-52:8; 57:5-11; However, from the agency's perspective, DOE understood at the time of contract formation that the purpose of the assignment provision was to allow nuclear utilities to transfer the title of SNF to reprocessing facilities or to other third parties with which a utility might wish to contract for services associated with SNF storage and disposal:

Q: You are the contracting officer, Mr. Zabransky, currently [at] the Department of Energy for the standard contract. You have to have an understanding of this contract, correct?

A: Yes.

Q: And its terms and provisions?

A. Yes.

Q: As the standard contract contracting officer, how does Article 14, the assignment provision of the standard contract, operate?

***

A: I mean again, the assignment provision was put in to allow a purchaser to assign or transfer rights and duties with the transfer of title for the SNF. So, the provision tells [the utility] how to do that.

***

Q: Have you ever had to deal with [the assignment provision] of the standard contract before as a contracting officer?

A: Yes.

Q: When?

A: Over the years people have assigned portions by assigning fuel to other people. So I have received notices to that effect.

Q: Do you understand what the function of this provision of the standard contract is?

***

A: In '83, speaking to those who were involved, it would have in their minds occurred if somebody was going to send this fuel out to be reprocessed.

Q: Explain to me what you mean by that?

A: Again, [the assignment provision] says that the assignment is not of the reactor. It's of the fuel. So that if a utility was going to send fuel off to the reprocessing facility to have it reprocessed under contract, whoever

> received it would have the rights to have that high-level waste disposed of.[7]

In light of this understanding, based upon Mr. Zabrasky's review of relevant documents and conversations with the four DOE officials who were personally involved in developing the terms of the Standard Contract in 1983, Mr. Zabransky testified during his deposition that DOE did not contemplate at the time of contract formation that the assignment provision of the Standard Contract would be used to effectuate the sale of a nuclear power plant in a deregulated energy market. See Tr: 51:9 – 53:6; 62:4-63:10; 65:3-67:8

Following Mr. Zabransky's deposition, Boston Edison contacted counsel for the Government and threatened to move to limit the use of Mr. Zabransky's testimony at trial should the United States refuse to allow Boston Edison the opportunity to take additional Government depositions in this matter. In particular, notwithstanding the fact that discovery had closed, Boston Edison demanded the opportunity to depose one of the retired DOE officials with whom Mr. Zabransky had spoken in preparation for his deposition, Mr. Morgan, whom Boston Edison already deposed previously in this case on March 21 and March 22, 2002, to testify at an additional Rule 30(b)(6) deposition in this matter.[8] Because the Government properly

---

7/ Tr. 46:15-49:22; see Tr: 73:17-22; 74:1-22; 75:1-22 (discussing again the reprocessing of spent nuclear fuel as the purpose of the assignment provision.)

8/ Mr. Morgan was the director of the Nuclear Waste Policy Act Office, the precursor to the Office of Civilian Radioactive Waste Management ("OCRWM") within the Department of Energy ("DOE"), from January 1983 to January 1984. During that time, among other functions, he was responsible for the review of comments on the draft Standard Contract and the response to those comments in the promulgation of the Standard Contract in the Federal Register. In that regard, at the time of the formulation of the Standard Contract, Mr. Morgan reported directly to the Secretary of the of the Department of Energy and, as Mr. Zabransky testified, Mr. Morgan was in a position to understand DOE's position regarding the purpose and intent of the assignment provision of the Standard Contract. Tr. 69:1-70:13.

discharged its obligation to designate and produce an educated designee, and given that the United States was not obligated to produce and designate Mr. Morgan, who had long retired from the Government service, as a Rule 30(b)(6) representative in this matter, we indicated to Boston Edison's counsel, by letter dated April 11, 2007, that the United States would oppose any effort by Boston Edison either to re-open the Government's Rule 30(b)(6) deposition or to take any additional Government depositions at this stage of the litigation.[9] A10-15.

Nevertheless, on May 4, 2007, nearly one month after the conclusion of Mr. Zabransky's deposition and the close of discovery in this matter, Boston Edison filed the instant motion, in which Boston Edison seeks to preclude Mr. Zabransky (or any other witness offered by the Government) regarding the purpose and intent of the assignment provision.[10] In addition, in its

---

9/ Tellingly, outside the context of coordinated discovery, prior to Mr. Zabransky's April 5, 2007 deposition, Boston Edison did not seek to depose Mr. Morgan as a fact witness in this case regarding the assignment provision. It was only after Mr. Zabransky's deposition – during which Mr. Zabransky testified that the sales of nuclear power plants was not something considered by the agency at the time of contract formation – that Boston Edison suddenly took an interest in deposing Mr. Morgan regarding DOE's development of the assignment provision in the Standard Contract. Nevertheless, Boston Edison has known since at least 2002, by virtue of having deposed Mr. Morgan during coordinated discovery, that Mr. Morgan played a significant role in the formation of the Standard Contract and possessed knowledge as to the agency's original intent and understanding with respect to the terms and provisions of the Standard Contract at the time of contract formation. Notwithstanding this awareness, Boston Edison did not seek to depose Mr. Morgan regarding the development of the assignment clause during the discovery phase of this case and, instead, sought to depose the Government pursuant to RCFC 30(b)(6). To the extent that Boston Edison now claims to be "prejudiced" by the fact that Government refused Boston Edison's request after the close of discovery to produce Mr. Morgan for deposition, Boston Edison has no one but itself to blame for failing to seek deposition testimony from Mr. Morgan concerning these issues previously.

10/ On April 30, 2007, the Government filed its list of witnesses whom we expect to testify at trial in the matter. On our list, we list two witnesses, Mr. Zabransky and Mr. Morgan, whom the Government may elect to call at trial to testify concerning the assignment provision of the Standard Contract. In relevant part, we indicated that Mr. Zabransky is "expected to testify concerning . . . the Department of Energy's implementation of and, to the extent that parol evidence is appropriate, understanding of the assignment provision of the Standard Contract

motion, Boston Edison seeks the right to depose Mr. Morgan prior to trial, to the extent that the Government intends to call Mr. Morgan to testify regarding DOE's understanding of the assignment provision of the Standard Contract.

As an alternative remedy, Boston Edison requests that, should the Court allow Mr. Morgan to testify regarding the assignment provision, Boston Edison "should be permitted to depose Mr. Morgan on those topics before trial at the Government's expense." Boston Edison's Motion, at 2. Presently, the Government has no intention to call Mr. Morgan as a live witness at trial or to designate any prior testimony from Mr. Morgan regarding the Government's understanding of the assignment provision of the Standard Contract. Accordingly, as the Court is aware, Mr. Morgan was involved in DOE's formation of the Standard Contract in 1983 and in the very early stages of contact administration. Mr. Morgan has retired from Government service since 1988. We intend to designate Mr. Morgan's prior testimony in Northern States Power Co. v. United States, Fed. Cl. No. 98-484C, as we did in Systems Fuel Inc. v. United States, Fed. Cl. No. 03-2623. This prior testimony by Mr. Morgan does not relate to the assignment provision of the Standard Contract. Therefore, Boston Edison's alternate request to depose Mr. Morgan should be denied as moot. If, however, the Court were to prevent Mr. Zabransky from testifying at the trial in this matter, the Government reserves the right to call Mr. Morgan to testify concerning the assignment provision, and, in such case, we would not object to a discrete, short deposition of Mr. Morgan regarding the assignment provision prior to trial.

---

based upon his experience in the nuclear industry prior to his employment with DOE, as well as his role as the Standard Contract contracting officer, and other related matters." Def. Witness List, at 3. As indicated upon our witness list, Mr. Morgan, in relevant part, may testify regarding "the early implementation of the NWPA, the formation of the Standard Contract, and other related matters." Id. at 2.

## SUMMARY OF ARGUMENT

Boston Edison's motion to exclude David Zabransky from testifying at trial upon behalf of the United States relies upon the following baseless premises: (1) that, because Mr. Zabransky failed to offer "any concrete positions" during the Government's Rule 30(b)(6) deposition regarding the assignment provision of the Standard Contract, the United States violated the Court's February 26, 2007 discovery order, and, as a consequence, the Court should sanction the Government pursuant RCFC 37(b)(2)(B) by precluding the United States from offering any testimony at trial "regarding the assignment clause" all together (see Boston Edison's Motion, at 16-17); (2) in light of the fact that Boston Edison has made a "strong showing" regarding the foreseeability of damages in this case, the Government should be precluded from providing testimony at trial regarding the assignment clause, as such testimony would be irrelevant and unhelpful to the Court; and (3) that Mr. Zabransky should be precluded, as a matter of law, from testifying concerning his understanding of the assignment, pursuant to Federal Rule of Evidence ("FRE") 602 and FRE 701, because, as Boston Edison would have it, Mr. Zabransky "knew nothing" about the assignment provision during his deposition, as evidenced by the fact that his testimony, which he rendered at the time in his capacity as the Government's Rule 30(b)(6) designee, based upon the grounds that his understanding of the provision derived entirely from the "knowledge of others," including Messrs. Morgan, Roselli, Lawrence, and Cavanaugh. (see Boston Edison's Motion, at 13-15). These contentions are unsupported as a matter of fact and law.

First, contrary to Boston Edison's assertions, as demonstrated above, Mr. Zabransky provided educated and complete testimony concerning the Government's positions as to the purpose and intent of the assignment provision of the Standard Contract at the time of contract

formation. In preparation, Mr. Zabransky spent significant time over the course of several weeks reviewing documents and conferring with various DOE employees, including the known surviving DOE employees who participated upon behalf of the Government in the drafting of the Standard Contract in 1983. At his deposition, Mr. Zabransky provided the agency's position regarding the purpose and effect of the provisions of the assignment provision. Contrary to Boston Edison's position, pursuant to Rule 30(b)(6), the Government was not obligated to produce Mr. Morgan to testify as the designee upon behalf of the United States concerning the assignment provision, particularly in light of the fact that Mr. Morgan has long retired from Government service. Indeed, given Mr. Zabransky's unique status as the current DOE contracting officer with regard to the Standard Contract, it is particularly disingenuous for Boston Edison to suggest now that Mr. Zabransky was unprepared or otherwise unqualified to offer educated testimony in response to Boston Edison's deposition notice. As a consequence, there is no basis upon which Boston Edison may assert that the Government is somehow precluded from offering testimony regarding the assignment provision at trial because we breached our discovery obligations pursuant to RCFC 30(b)(6) and the Court's February 27, 2007, particularly in light of the fact that Boston Edison waited until the eve of trial to seek the broad form of discovery sanctions that it now requests.

Second, to the extent that Boston Edison asserts that the damages which it seeks in this case already have been found to be foreseeable based upon the "strong showing" that Boston Edison made in connection with the Government's summary judgment motion, in which we sought to dismiss Boston Edison's claims upon the basis of standing, such a contention is misplaced. As the parties agree, the issue of foreseeability is a factual matter to be determined at trial. Because Boston Edison has the burden to show that the specific diminution-in-value

damages that it now seeks were foreseeable and directly related to the purpose of the Standard Contract, the Government should thus be afforded the opportunity to present evidence at trial, such as the testimony of Mr. Zabransky and/or Mr. Morgan, concerning the implementation and effect of the assignment provision in the Standard Contract, such testimony is relevant to the this dispute, as it may relate to the issue of foresseability. In this regard, Mr. Zabransky – the current DOE contracting officer for the Standard Contract – is particularly well-suited to testify concerning the purpose and effect of the assignment provision at trial.

Third, with respect to Boston Edison's assertion that FRE 602 and FRE 701 somehow precludes Mr. Zabransky from testifying at trial in his personal capacity as a witness based upon the fact that he relied in part upon the statements of other DOE officials in testifying as DOE's designee during the Government's Rule 30(b)(6) deposition, is untenable. Mr. Zabransky intends to testify as a fact witness at trial concerning his individual role as the Standard Contract contracting officer, and in that capacity, Mr. Zabransky is expected to testify regarding DOE's implementation of the assignment provision and DOE's understanding of the purpose and impact of the clause upon the nuclear industry. In so doing, Mr. Zabransky will rely upon his years of experience at DOE and employment in the nuclear industry prior to joining the agency. Mr. Zabransky – who has provided testimony at eight spent nuclear trials and more than a dozen deposition concerning DOE's implementation and understanding of various terms of the Standard Contract, certainly has direct knowledge and experience concerning such matters. As a consequence, the Government should be permitted to call Mr. Zabransky to testify at trial concerning DOE's knowledge of the purpose and effect of the assignment provision of the Standard Contract.

DISCUSSION

I. BOSTON EDISON'S MOTION PURSUANT TO RCFC 37(b)(2)(B) TO PRECLUDE THE GOVERNMENT FROM OFFERING ANY TESTIMONY REGARDING THE ASSIGNMENT PROVISION OF THE STANDARD CONTRACT SHOULD BE DENIED, AS MR. ZABRANSKY WAS ADEQUATELY PREPARED TO TESTIFY AT HIS DEPOSITION AND THE UNITED STATES OTHERWISE PROPERLY DISCHARGED ITS DISCOVERY OBLIGATIONS

Boston Edison's request for the issuance of a discovery order, pursuant to RCFC 37(b)(2)(B), to preclude the Government from providing any testimony at trial relating to the assignment provision is unfounded, and the Court should deny Boston Edison's request to issue discovery sanctions at this stage of the case.

As an initial matter, contrary to Boston Edison's assertions, Mr. Zabransky was well prepared to testify during his deposition and the Government otherwise properly discharged its obligations pursuant to the Court's February 26, 2007 order and RCFC 30(b)(6). Pursuant to RCFC 30(b)(6), an organization named as a deponent pursuant to Rule 30(b)(6) "shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf," and such designee must testify "as to matters known or reasonable available to the organization." RCFC 30(b)(6). Thus, in the Federal courts, an individual designated to testify pursuant to Rule 30(b)(6) is required to testify "to the knowledge of the corporation, not the individual." See Poole v. Textron, Inc., 192 F.R.D. 494, 504 (D. Md. 2000) (emphasis in original). Consequently, the organization has a duty "to prepare the designees so that they may give knowledgeable and binding answers for the corporation, and this duty "goes beyond matters personally known to the designee or to matters in which the designee was personally involved." Id. (citation omitted).

Accordingly, "[t]here is no requirement that a Rule 30(b)(6) witness have first-hand knowledge of and involvement in the underlying transaction" or other relevant factual matters, Coram Healthcare Group v. Cigna, No. 00-2677, 2002 WL 32910044, at * 1 n.32 (S.D.N.Y. July 24, 2002) (citing Securities & Exchange Comm'n v. Morelli, 143 F.R.D. 42, 44 (S.D.N.Y. 1992)), and a party is thus free to designate any representative to testify upon its behalf. See Capital Properties, Inc. v. Untied States, 49 Fed. Cl. 607, 613 (citing cases). However, pursuant to Rule 30(b)(6), a organization must designate a representative to testify who "identif[ies] with the [organization's] interests." In re Honda American Motor Co., Inc. Dealership Relations Litig., 168 F.R.D. 535, 541 (D. Md. 1996). In this respect, Federal courts have long recognized that a party "is not required to designate a retired employee to serve as a [Rule] 30(b)(6) designee, because 'it cannot be supposed that . . . former employees would identify their interests with those of their former employers to such an extent that admissions by them should be held to bind the employer.'" Ierardi v. Lorillard, Inc., No. 90-7049, 1991 WL 158911, at *2 (E.D. Pa. Aug. 13, 1991) (citing Proseus v. Anchor Line, Ltd., 26 F.R.D. 165, 167 (S.D.N.Y. 1960); see Honda American, 168 F.R.D. at 541-42 (an organization is not obligated to designate former employees as Rule 30(b)(6) representatives). As a consequence, "it is not uncommon to have a situation, as in the instant case, where a corporation indicates that it no longer employs individuals who have memory of a distant event or that such individuals are deceased." United States v. Taylor, 166 F.R.D. 356, 361 (M.D.N.C. 1996) (citing cases). In such cases, it is appropriate for an organization to prepare a current employee to testify as a Rule 30(b)(6) designee "to the extent matters are reasonably available, whether from documents, past employees, or other sources." Id. (citation omitted).

In light of these principles, Boston Edison's objections with respect to the Government's designation of Mr. Zabransky as the Government's Rule 30(b)(6) representative concerning the assignment provision are without merit. First, Boston Edison has no basis upon which to demand the Government's production of Mr. Morgan to testify with respect to those topics in Boston Edison's notice pertaining to the development of the "assignment provision" in the Standard Contract. Because Mr. Morgan has long since retired from Government service, the United States is under no obligation to produce him to testify upon its behalf. See Proseus, 26 F.R.D. 165, 167 (a party may not be examined through officers no longer in the organization's employ as it "cannot be supposed that...former employees would identify their interests with those of their former employer to such an extent that admissions by them should be held to bind the employer").

Further, as discussed previously, at his deposition, Mr. Zabransky provided complete and candid answers to Boston Edison's questions regarding the purpose and effect of the assignment provision, and Mr. Zabransky prepared himself adequately to testify as to those topics for which he was designated to provide testimony. With respect to those topics relating to the purpose and effect of the "assignment provision" of the Standard Contract, Mr. Zabransky prepared himself by speaking to the four known surviving individuals who participated in the drafting of the Standard Contract upon behalf of the Government, namely, Robert Roselli, Mr. Michael Lawrence, Mr. James Cavanaugh, and Mr. Morgan, all of whom have previously been deposed during the course of the spent nuclear fuel litigation. Mr. Zabransky also reviewed various documents produced in this litigation and read portions of the administrative record in connection with DOE's promulgation of the Standard Contract in an effort to determine the meaning of the purpose and effect of the assignment provision. Indeed, because Mr. Zabransky

spent significant time during his preparation reviewing such written materials as well as conferring with various DOE employees, including the known surviving DOE employees who participated upon behalf of the Government in the drafting of the Standard Contract in 1983, and given Mr. Zabransky's unique status as the current DOE contracting officer with regard to the Standard Contract, it is particularly disingenuous for Boston Edison to suggest that Mr. Zabransky was unprepared or otherwise unqualified to offer educated testimony in response to Boston Edison's deposition notice.

Accordingly, because Mr. Zabransky was properly prepared to testify and otherwise provided responsive answers to Boston Edison's questions during his deposition on April 5, 2007, the Government properly discharged its discovery obligations pursuant to RCFC 30(b)(6) and the Court's February 27, 2007 order, and Boston Edison's request to preclude the Government from providing any testimony at trial relating to the assignment provision as a discovery sanction pursuant to RCFC 37(b)(1)(B).[11]

## II. MR. ZABRANSKY'S TESTIMONY IS RELEVANT BECAUSE IT RELATES TO THE ISSUE OF WHETHER THE DAMAGES SOUGHT BY BOSTON EDISON ARE FORESEEABLE

Boston Edison further asserts that the Court should exclude Mr. Zabransky's testimony regarding DOE's understanding of the purpose and effect of the assignment provision because

---

[11/] In addition, by waiting to seek discovery sanctions against the Government in connection with Mr. Zabransky's April 5, 2007 deposition until the eve of trial, Boston Edison's objection to the Government's compliance with RCFC 30(b)(6) is untimely. See, e.g., Fab-Tech, Inc. v. E.I. Dupont De Numours & Co., No. 04-CV-275, 2006 WL 3702753, at *2 (D.Vt. 2006) (in denying *motion in limine* to preclude a Rule 30(b)(6) designee's testimony at trial, holding that "at this late date, the discovery period has ended, and the plaintiff's objection to defendant's compliance with Rule 30(b)(6) is untimely."). Indeed, Boston Edison's failure to seek relief under RCFC 37(b)(1)(B) undermines any claim of "prejudice" that Boston Edison claims it will sustain if the Court were to deny the instant motion.

such testimony is irrelevant pursuant to Fed. R. Evid. 402, in light of the "strong showing Boston Edison has already made regarding foreseeability of damages in this case," Boston Edison's Motion, at 17. In support for its assertion, Boston Edison cites to the Court's order in connection with the Government's motion for summary judgment, in which the Government sought to dismiss Boston Edison's complaint based upon standing grounds. See id. at 17 n.15 (citing Boston Edison Co. v. United States, 64 Fed. Cl. 167, 183-184 (2005)). Boston Edison's assertion is misguided.

Although the Court previously has ruled that "Boston Edison's diminution-in-value claim alleges adequate injury in fact for purposes of standing," Boston Edison, 64 Fed. Cl. at 183, the Court expressly reserved the right to adjudicate subsequently the Government's assertion that the damages sought by Boston Edison were impermissibly "remote, speculative, and unforeseeable to be recovered." Id. Indeed, as the Court noted in its ruling, "[a]t this stage, where standing is at issue, both [Boston Edison's] diminution-in-value theory of damages to supply injury in fact for standing and the [Government's] remote-damage defense to that theory have potential merit." Id. at 183 n.17 (refusing Boston Edison's motion to strike the Government's claim that Boston Edison's damages were too remote, speculative, and unforeseeable).[12]

---

12/ Further, to the extent that Boston Edison contends that the law of the case doctrine applies, and prevents the Court from determining whether Boston Edison's claimed damages are consequential, remote, overly speculative, and unforeseeable, because the Court previously denied the Government's motion for summary judgment, such a position is incorrect as a matter of law. The law of the case doctrine generally only applies after the appeal of a trial court decision. See Mosley v. City of Northwoods, Missouri, 415 F.3d 908, 911 (8th Cir. 2005) (holding that denial of motion for summary of judgment does not constitute law of the case, and that defendant could renew motion for summary judgment); Krueger Assoc. v. American Dist. Tele. Co. of Pa., 247 F.3d 61, 65 (3rd Cir. 2001) (same); Murphy v. Missouri Dep't of Corrections, 372 F.3d 979, 986 (8th Cir. 2004) ("an initial denial of summary judgment does not establish 'law of the case' such that a ruling may not be revisited"). Here, the fact that the Court previously denied the Government's motion for summary judgment has no preclusive effect.

Indeed, in this case, the issue of whether the alleged injury stemming from a partial breach of contract was "foreseeable" at the time of contract formation is a question of fact to be determined at trial. See Indiana Michigan Power Co. v. United States, 422 F.3d 1369, 1373 (Fed. Cir. 2005).[13] Foreseeability is measured based upon what the parties contemplated at the time of contract formation, rather than from the date of breach. See Bohac v. Department of Agric., 239 F.3d 1334, 1340 (Fed. Cir. 2001). Hence, as part of the foreseeability determination, Boston Edison has the burden to establish at trial that both the magnitude and type of damages were foreseeable at the time of contract formation. See Landmark Land Co. v. Federal Deposit Insur. Corp., 256 F.3d 1365, 1378 (Fed. Cir. 2001) (affirming trial court's denial of damages because the magnitude of damages was not foreseeable). "The mere circumstance that some loss was foreseeable, or even that some loss of the same general kind was foreseeable, will not suffice if the loss that actually occurred was not foreseeable." Restatement (Second) of Contracts, § 351, cmt. a (cited in Landmark Land, 256 F.3d at 1378).[14]

Additionally, courts routinely look to the purpose of the breached contract to determine whether the claimed damages were "consequential" to the breach rather than a direct damage. For example, in Wells Fargo Bank, N.A. v. United States, 88 F.3d 1012, 1021 (Fed. Cir. 1996),

---

13/ In fact, in its Memorandum of Contentions of Fact and Law, filed on March 30, 2007, Boston Edison concedes that the issue of whether the damages that it seeks are "foreeseeable" is a factual matter to be litigated at trial. See Boston Edison's Mem. of Fact and Law, at 34.

14/ In its motion, Boston Edison also proposes that the Court adopt exclusively the test for "foreseeability" that was employed in Landmark Land Co., Inc. v. F.D.I.C., 256 F.3d 1365 (Fed. Cir. 2001). Boston Edison's Motion, at 18. Insofar as Boston Edison seeks to convert the instant "motion in limine" into a dispositive motion relating to the requisite elements that it must demonstrate to prevail in its damages theory, such an attempt by Boston Edison is not proper at this stage of the litigation. See, e.g., Pivot Point Int'l, Inc. v. Charlene Products, Inc., No. 90-C-6933, 1996 WL 284949, at *4 (N.D. Ill. 1996) ("A motion in limine is not a substitute for a motion for summary judgment.").

cert. denied, 520 U.S. 1116 (1997), a bank filed a breach of contract action when the Government failed to honor its commitment to provide a guarantee for a particular construction loan that the bank extended pursuant to a Federal program. Id. at 1017. This Court had ruled that the Government had breached its contract with the bank and awarded profits that the bank allegedly lost because it was unable to make additional loans because the Government's refusal to issue the guarantee required the bank to maintain capital reserve. Id. at 1018. The Federal Circuit reversed the award of lost profit damages, explaining that the "purpose of the guarantee was to enable Wells Fargo to make profits from the interest on its loan to High Plains, not on some other loans it might make." Id. In reaching this conclusion, the Federal Circuit explained that lost profits that would have been realized from "independent and collateral undertakings," rather than those that would have "grown out of the contract itself," are, as a matter of law, unrecoverable:

> [I]f the profits are such as would have accrued and grown out of the contract itself, as the direct and immediate results of its fulfillment, then they would form a just and proper item of damages, to be recovered against the delinquent party upon a breach of the agreement. . . . But if they are such as would have been realized by the party from other independent and collateral undertakings, although entered into in consequence and on the faith of the principal contract, then they are too uncertain and remote to be taken into consideration as a part of the damages occasioned by the breach of the contract in suit.

Id. at 1022-23 (emphasis added) (quoting Ramsey v. United States, 101 F. Supp. 353, 121 Ct. Cl. 426 (1951)).

Similarly, in Scott Timber Co. v. United States, 33 F.3d 1358 (Fed. Cir. 2003), a timber contractor claimed that the Government breached various timber sales contracts when the Government suspended performance on the contracts to protect an endangered bird species that was indigenous to the area covered by the contracts. In addition to claiming damages equal to

the cost of obtaining replacement timber in the open market, the contractor also sought costs related to its sawmill operations, including labor, taxes and insurance. Id. at 1372. This Court granted the Government's motion for summary judgment with respect to the costs related to the plaintiff's sawmill operations, concluding that they were "remote and speculative damages and therefore not recoverable." Id. The Federal Circuit affirmed, explaining that the plaintiff's "sawmill expenses are not directly related to the timber sales contracts. Any sawmill costs were not a direct result of the suspensions in this case." Id.; see also First Height Banks v. United States, 57 Fed. Cl. 162, 174 (2003) ("We hold, as a matter of law, that the subject of the bargain was confined to the opportunity to take advantage of the tax laws; that it would not have been foreseeable to federal negotiators that plaintiffs were entering into the arrangement to secure future funds for homebuilding projects. Absent some specific reference, those projects, and the potential profits on them, were simply too remote to be within the parties' contemplation as a potential collateral damage from a breach.").[15]

Mr. Zabransky's expected testimony, based upon his familiarity with the Standard Contract and its provisions as DOE's Standard Contract contracting officer, may be pertinent to the issue of whether the damages sought by Boston Edison flow directly from the Standard Contract and DOE's implementation thereof, and thus, the Court should not exclude such testimony before trial upon the basis of relevance. As Mr. Zabransky testified, it is his and the agency's understanding that the provision functions to allow utilities to transfer title to spent

---

15/ The gravamen of Boston Edison's claim for damages is that as a direct and proximate result of DOE's failure to meet its obligation to remove SNF, the value of Pilgrim was substantially reduced. However, it is beyond dispute that the sale of Boston Edison's nuclear utility to Entergy does not flow directly from the Standard Contract, but, instead, constitutes an independent and collateral undertaking. Pursuant to the NWPA, the Secretary is authorized to enter into contracts "for the acceptance of title, subsequent transportation, and disposal" of SNF. 42 U.S.C. § 10222(a)(1) (2004).

nuclear fuel to reprocessing facilities or to other third parties with which a utility might wish to contract for services associated with spent nuclear fuel storage and disposal. Such testimony contradicts Boston Edison's assertion that the assignment provision contemplates the sale of nuclear power plants, and thus, may assist the Court in determining whether the damages sought by Boston Edison are properly foreseeable.

## III. MR. ZABRANSKY, THE CONTRACTING OFFICER FOR THE STANDARD CONTRACT, POSSESSES THE REQUISITE PERSONAL KNOWLEDGE TO OFFER TESTIMONY AT TRIAL REGARDING THE STANDARD CONTRACT AND ITS PROVISIONS, INCLUDING THE ASSIGNMENT CLAUSE

Boston Edison asserts that, as a matter of law, FRE 602 and 701 prohibit Mr. Zabransky from testifying at trial regarding the assignment provision because Mr. Zabransky relied, in part, upon conversations with other current and former DOE officials in providing testimony concerning the purpose and effect of the assignment provision during his Rule 30(b)(6) deposition. Such a position is misplaced, as Mr. Zabransky has sufficient personal knowledge to testify regarding the assignment clause and DOE's implementation thereof.

As an initial matter, as Boston Edison would have it, the rule against hearsay precludes him from testifying as to the conversations that he had with Messrs. Morgan, Cavanaugh, Roselli, and Lawrence during his preparation for his April 5, 2007 Rule 30(b)(6) deposition, which informed his understanding as the purpose and effect of the assignment provision at the time of contract formation. Boston Edison's Motion, at 14. Boston Edison, however, provides no authority for the proposition that a party's Rule 30(b)(6) designee is somehow precluded from testifying at trial as to matters for which he was designated to testify at deposition. In fact, contrary to Boston Edison's assertion, some Federal courts have denied motions to exclude statements offered by a Rule 30(b)(6) designee, holding that the hearsay rule does not prevent a

party from offering statements that were provided by a Rule 30(b)(6) witness during discovery, given that the Rule 30(b)(6) designee's role is to speak as to "matters known or reasonably known to the organization." See, e.g., Pugh v. City of Attica, Inc., 259 F.3d 619, 628 n.7 (7th Cir. 2001) (citing Fed. R. Civ. Pro. 30(b)(6)); see also Societe Generale Energie Corp. v. New York Marine & General Ins. Co., 368 F. Supp. 2d 296, 299, n.3 (S.D.N.Y. 2005) (rejecting argument that affidavit provided by Rule 30(b)(6) that relayed information that was not based upon the designee's personal firsthand knowledge constituted inadmissible hearsay, given that a Rule 30(b)(6) testifies as to the organization's knowledge, not his personal knowledge).

Notwithstanding the applicability of the hearsay rule upon Mr. Zabransky's Rule 30(b)(6) testimony, Mr. Zabransky possesses sufficient personal knowledge to offer testimony at trial regarding the standard contract, as his knowledge concerning the Standard Contract and the assignment provision is based upon his firsthand knowledge and not simply the statements of Mr. Morgan, as Boston Edison asserts. Pursuant to FRE 602, a fact witness "may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."[16] As this Court has recognized, the threshold for admissibility pursuant to FRE 602 is "inexacting." Boston Edison Co. v. United States, 64 Fed. Cl. 167, 181 (2005). "Although first-hand is the most common form of personal knowledge, first-hand

---

16/ FRE 701 permits a witness to testify about his opinions and inferences if they are rationally based upon the perception of the witness. See Fed. R. Evid. 701. "FRE 701 effectively incorporates the personal knowledge requirement of FRE 602 "as a prerequisite to acceptance of opinions by lay persons." Stephan A. Saltzburg, Michael M. Martin & Daniel J. Capra, Federal Rules of Evidence Manual § 602.02 (9th ed. 2006); see Teen-Ed, Inc. v. Kimball Intern, Inc., 620 F.2d 399, 403 (3d. Cir. 1980) (personal knowledge sufficient under FRE 602 satisfies witness to testify to his opinions under FRE 701). Because Boston Edison's argument to exclude Mr. Zabransky's testimony under FRE 701 is identical to its argument for exclusion under FRE 602, this section addresses Boston Edison's argument relating to both evidence rules.

observation is not the only basis for personal knowledge." Los Angeles Times Communications, LLC v. Department of Army, 422 F. Supp. 2d 880, 886 (C.D. Cal. 2006) (citing Stuart v. UNUM Life Ins. Co. Of Am., 217 F.2d 1145, 1155 (9th Cir. 2000)).

Personal knowledge may include "inferences and opinions, so long as they are grounded in personal observations and experience." United States v. Rodriguez, 162 F.3d 135, 144 (1st Cir. 1998) (citation omitted). Further, an employee may testify as to the policies and practices of its employer to the extent that the employee "holds a position in which he would be expected to know" such matters as part of his employment. United States E.E.O.C. v. Catholic Knights Ins. Society, 915 F. Supp 26, 27 (N.D. Ill. 1996) (witness who was fired by company prior to the time that plaintiff application with company may testify because he had personal knowledge of defendant's business practices); see Los Angeles Times Communications, 422 F. Supp. 2d at 886 ("Plaintiff fails to appreciate that a declarant can testify about practices and procedures in place before the witness was employed with the organization about which he is relating information."). Further, merely because a witness obtains his knowledge, in part, from other individuals does not necessarily demonstrate a lack of knowledge under FRE 602, as knowledge obtained from others may be an acceptable basis for the formation of personal knowledge in certain circumstances. See Agfa-Gervaert, A.G. v. A.B. Dick Co., 879 F.2d 1518, 1523 (7th Cir. 1989) (knowledge acquired through others may be personal knowledge within the meaning of FRE 602) (citing, inter alia, Robinson v. Watts Deterctive Agency, Inc., 685 F.2d 729, 739 (1st Cir. 1982) ("most knowledge has its roots in hearsay.").

Boston Edison, relying upon discrete "sound bites" from Mr. Zabransky's April 5, 2007 deposition, inaccurately depicts the substance, and the basis, of Mr. Zabransky's knowledge with respect to the Standard Contract and the assignment provision. Although Mr. Zabransky for

purposes of his Rule 30(b)(6) deposition educated himself by speaking with the four surviving DOE officials who participated in the drafting of Standard Contract upon behalf of the agency regarding the drafting history of the assignment provision, Mr. Zabransky's understanding of the purpose and effect of the provision also stems from others sources, such as his own personal experience in the nuclear industry, documents (including public statements in the Federal Register regarding the proposed and final rule-making process in connection with the issuance of the Standard Contract, as well as additional documents contained in the corresponding administrative record) and his significant DOE work experience as the Contracting Officer and, before that, the Contracting Officer's Technical Representative. Indeed, Mr. Zabransky has testified at trial as a fact witness in eight different spent nuclear fuel trials before this Court with regard to the Standard Contract, including the Standard Contract's Delivery Commitment Schedule process, issues relating to the Government's rate of acceptance under the Standard Contract, and other matters.[17]

Further, the fact that Mr. Zabransky did not become engaged personally regarding the agency's implementation of the Standard Contract until 1993, when he joined DOE, and thus was not involved personally with respect to the formation of the Standard Contract in 1983 (unlike Messrs. Morgan, Roselli, Lawrence, and Cavanagh) does not exclude Mr. Zabransky from testifying at trial concerning the assignment provision altogether. See Catholic Knights

---

17/ Specifically, Mr. Zabransky has provided trial testimony in the following eight cases before this Court: Yankee Atomic Electric Company v. United States, 98-126C, 98-154C, 98-474C; Sacramento Municipal Utility District v. United States, 98-488C; Tennessee Valley Authority v. United States, 01-249C; Pacific Gas and Electric Company v. United States, 04-74C; Southern Nuclear Operating Company v. United States, 98-614C; Northern States Power Company v. United States, 98-484C; Systems Fuels, Inc. v. United States, 03-2624C; and Systems Fuels, Inc. vs. United States, 03-2623C.

Ins. Society, 915 F. Supp at 27; Los Angeles Times Communications, 422 F. Supp. 2d at 886 ("Plaintiff fails to appreciate that a declarant can testify about practices and procedures in place before the witness was employed with the organization about which he is relating information."). Rather, the lack of certainty about particular observations is a matter "to be argued to jury rather than reason for excluding evidence for lack of personal knowledge." United States v. Mixon, 979 F. Supp. 1386, 1390 (D. Kan. 1997); see Boston Edison, 64 Fed. Cl. at 181 (citing Adkins v. Drickson, 523 F. Supp. 1281, 1284 (E.D. Pa. 1981) ( "The quality of a witness's observations is not an issue for foundation; it is a matter for impeachment.")). The Standard Contract and its provisions, including the assignment clause, are topics for which Mr. Zabransky has personal knowledge to testify, and, accordingly, the Court should reject Boston Edison's attempt to exclude Mr. Zabransky's factual testimony regarding such issues at trial.

In support of its argument to preclude Mr. Zabransky based upon his lack of relevant firsthand knowledge, Boston Edison cites only three cases, none of which is applicable in this instance. First, in Cuyahoga Metropolitan Housing Authority v. United States, 60 Fed. Cl. 481, 482 (2004), and DIJO Inc. v. Hilton Hotels Corp., 351 F.3d 679, 686 (5th Cir. 2003), both of which Boston Edison cites, the courts excluded testimony by witnesses regarding studies and appraisals that they claimed to have conducted but where the inputs had been received by others and were not the product of the testifying witnesses' own observations or independent knowledge. This case is entirely different from those two cases, however, because the testimony offered in Cauyahoga Mountain Authority and DIJO was based upon incomplete knowledge of particular studies, calculations, and analyses that was to be the substance of the witness's testimony. Such circumstances do not exist here, as the Government does not intend to call Mr. Zabransky to testify concerning the validity of certain models or calculations of otherwise to

provide expert or technical testimony. Rather, in this case, the Government intends to call Mr. Zabransky to testify as to his personal knowledge – based upon over twenty-five years of relevant experience in the nuclear industry, and his daily involvement in administering the Standard Contract upon behalf of both DOE and a utility contract-holder (Wisconsin Electric), concerning the meaning of the assignment provision of the Standard Contract. Indeed, it is beyond dispute that the Standard Contract is well within Mr. Zabransky's personal knowledge, and, as the current DOE contracting officer for the Standard Contract, he is well-suited to testify as to the assignment provision.

Similarly, Boston Edison's reliance upon Protection Strategies, Inc. v. United States, No. 07-125C, 2007 WL 1031710, at *6 (Fed. Cl. 2, 2007), is misplaced. There, the Court struck a witness's declaration upon the grounds that it merely relayed the contents of a particular conversation that the witness had with a third party. Here, however, Mr. Zabransky's knowledge concerning the assignment provision of the Standard Contract is not solely based upon a single conversation with Mr. Morgan, as Boston Edison would have it. Rather, Mr. Zabransky's understanding as to the meaning of the provision is based upon his direct firsthand knowledge of the Standard Contract. Indeed, as he testified at his deposition, over the years, Mr. Zabransky has dealt with utilities seeking to transfer title to fuel under the assignment provision. Further, based upon his institutional knowledge he has gained as the Standard Contract contracting officer, which includes not only conversations that he has had with Messrs. Morgan, Roselli, Lawrence, and Cavanagh, but also his daily, routine involvement with respect to the Standard Contract in his role as the contracting officer, as well as his interaction with utilities that have sought to transfer title to fuel under the assignment provision, Mr. Zabransky firsthand knowledge and experience qualifies him to testify as to the meaning and implementation of the

assignment provision at trial. As a consequence, because the authority upon Boston Edison relies is inapplicable, Boston Edison has failed to meet its burden to demonstrate that Mr. Zabransky lacks the requisite firsthand knowledge to testify as to the assignment provision at trial, and Boston Edison's motion should thus be denied.

## CONCLUSION

For the above reasons, defendant respectfully requests that the Court deny in its entirety Boston Edison's "Motion In Limine To Exclude Testimony By The Government Regarding Article XIV Of The Standard Contract, Including The Testimony Of Defendant's Witnesses, Mr. David Zabransky And Mr. Robert Morgan," dated May 4, 2007.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/ Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director

s/ Alan J. Lo Re
ALAN J. LO RE
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 307-0226
Fax: (202) 307-2503

Attorneys for Defendant

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
U.S. Dept. of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

PATRICK B. BRYAN
SCOTT R. DAMELIN
STEPHEN P. FINN
JOSHUA E. GARDNER
SONIA M. ORFIELD
Trial Attorneys
U.S. Department of Justice

May 25, 2007