# APPENDIX

**U.S. Department of Justice**

Civil Division

PDK:DMC:HDL:PBBryan
154-99-447

Telephone: (202) 616-8299
Fax: (202) 307-2503

*Washington, D.C. 20530*

March 2, 2007

VIA FACSIMILE AND UNITED STATES MAIL

Bradley D. Wine, Esq.
Dickstein Shapiro LLP
1825 Eye Street, N.W.
Washington, DC 20006

Re: *Boston Edison Company v. United States*, No. 99-447C (Fed. Cl.)

Dear Mr. Wine:

Pursuant to the Court's February 26, 2007 order, the United States will designate and produce Mr. David Zabransky to testify on March 14, 2007, as to Topic Nos. 2(b), 2(d), 2(e), 2(f), 5, and 6 in Boston Edison Company's December 1, 2006 Rule 30(b)(6) deposition notice.[1] Mr. Zabransky will testify at the offices of the United States Department of Justice, located at 1100 L Street, N.W., Washington, D.C., 20530. Please let us know as soon as possible if Boston Edison is unable to attend this deposition on March 14, 2007.

In addition, we are in the process of selecting an appropriate Government designee from the United States Nuclear Regulatory Commission to testify with respect to the remaining topics included in Boston Edison's December 1, 2006 deposition notice that the Court ruled to be permissible. We will contact you shortly to schedule an appropriate time and location for such a deposition.

Further, we wish to confirm that the upcoming fact deposition of Mr. Bob Wood will commence at 9:00 a.m. on March 13, 2007, at the law offices of Dickstein Shapiro LLP, located

[1] As you are aware, pursuant to the Court's order, the scope of Topic No. 2(b) is limited only "to the formation of the assignment provision in the Standard Contract agreement." Similarly, as the Court ruled, Boston Edison may only seek testimony pursuant to Topic No. 2(f) "insofar as the parties' expectations in 1983 concerned the assignment provision," and the permissible scope of Topic No. 2(d) is limited to the formation of the assignment provision in the Purchase and Sale Agreement. Further, pursuant to the Court's ruling, the scope of Topic Nos. 5 and 6 is limited in time to the Government's factual understanding of the requested information up to the date when Boston Edison's interest in Pilgrim ended (i.e., July 13, 1999).

at 1825 Eye Street, N.W., Washington, D.C. Consistent with the parties' prior discussions, the Government hereby serves the attached revised deposition notice, which identifies the proper location for Mr. Wood's deposition. Accordingly, please note that the enclosed deposition notice supercedes the prior notice that the Government served in connection with this deposition on February 19, 2006.

Thank you for your attention to these matters. Should you have any questions with respect to the foregoing, please contact us.

Sincerely,

Patrick B. Bryan

PATRICK B. BRYAN
Trial Attorney
Commercial Litigation Branch

Enclosure

cc: L. Jager Smith, Jr., Esq.
Alex D. Tomaszczuk, Esq.

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

-----------------x

YANKEE ATOMIC ELECTRIC COMPANY; : Case Nos. 98-126C,
CONNECTICUT YANKEE ATOMIC POWER : 98-154C, 98-474C,
COMPANY; MAINE YANKEE ATOMIC : 98-483C, 98-484C,
POWER COMPANY; FLORIDA POWER & : 98-485C, 98-486C,
LIGHT COMPANY; NORTHERN STATES : 98-488C, 98-614C,
POWER COMPANY; DUKE POWER, a : 98-621C, 99-447C,
Division of DUKE ENERGY CORP.; : 00-440C, 00-695C,
INDIANA MICHIGAN POWER COMPANY; : 00-703C, 01-115C,
SACRAMENTO MUNICIPAL UTILITY : 01-116C, 01-249C

-----------------X

(Caption continued on the next page)

Deposition of DAVID ZABRANSKY
Washington, D.C.
Wednesday, April 17, 2002
9:38 a.m.

Job No.: 12597-1
Pages 1 through 226, Volume 1
Reported by: Diane Gomez, RPR



DISTRICT; SOUTHERN NUCLEAR :
OPERATING COMPANY, et al.; :
COMMONWEALTH EDISON COMPANY; :
BOSTON EDISON COMPANY; GPU :
NUCLEAR, INCORPORATED; WISCONSIN :
ELECTRIC POWER COMPANY; POWER :
AUTHORITY OF THE STATE OF NEW :
YORK; OMAHA PUBLIC POWER DISTRICT;:
NEBRASKA PUBLIC POWER DISTRICT; :
and TENNESSEE VALLEY AUTHORITY, :
Plaintiffs :
v. :
THE UNITED STATES, :
Defendant :

-----------------X

A 3



Deposition of DAVID ZABRANSKY, held at the offices of:

ARNOLD & PORTER
555 12th Street, Northwest
Washington, D.C. 20004
(202) 942-5000

Pursuant to agreement, before Diane Gomez, Registered Professional Reporter and Notary Public of the District of Columbia.



A P P E A R A N C E S

ON BEHALF OF PLAINTIFFS FLORIDA POWER & LIGHT COMPANY, NORTHERN STATES POWER COMPANY, DUKE POWER, INDIANA MICHIGAN POWER COMPANY, BOSTON EDISON COMPANY, GPU NUCLEAR, INC., POWER AUTHORITY OF THE STATE OF NEW YORK, OMAHA PUBLIC POWER DISTRICT, and NEBRASKA PUBLIC POWER DISTRICT:

ALEX D. TOMASZCZUK, ESQUIRE
SHAW PITTMAN LLP
1650 Tysons Boulevard
McLean, Virginia 22102-4859
(703) 847-5097

ON BEHALF OF PLAINTIFF SACRAMENTO MUNICIPAL UTILITY DISTRICT:

JEFFREY L. HANDWERKER, ESQUIRE
ARNOLD & PORTER
555 12th Street, Northwest
Washington, D.C. 20004-1206
(202) 942-5000

APPEARANCES CONTINUED

ON BEHALF OF PLAINTIFF SACRAMENTO MUNICIPAL UTILITY DISTRICT:

TIMOTHY R. MACDONALD, ESQUIRE
ARNOLD & PORTER
Suite 4500
370 17th Street
Denver, Colorado 80202-1370
(303) 863-2334

ON BEHALF OF PLAINTIFFS SOUTHERN NUCLEAR OPERATING COMPANY, ALABAMA POWER COMPANY, and GEORGIA POWER COMPANY:

M. STANFORD BLANTON, ESQUIRE
BALCH & BINGHAM, LLP
1710 Sixth Avenue North
Birmingham, Alabama 35203
(205) 251-8100



APPEARANCES CONTINUED

ON BEHALF OF PLAINTIFF COMMONWEALTH EDISON COMPANY:

NORMAN M. HIRSCH, ESQUIRE
JENNER & BLOCK, L.L.C.
One IBM Plaza
Chicago, Illinois 60611-7603
(312) 222-9350

ON BEHALF OF PLAINTIFF WISCONSIN ELECTRIC POWER COMPANY:

RICHARD W. OEHLER, ESQUIRE
PERKINS COIE LLP
1201 Third Avenue, 40th Floor
Seattle, Washington 98101-3099
(206) 583-8419

A 4

APPEARANCES CONTINUED

ON BEHALF OF PLAINTIFF WISCONSIN ELECTRIC POWER COMPANY:

DONALD J. CARNEY, ESQUIRE
PERKINS COIE LLP
607 14th Street, Northwest
Washington, D.C. 20005-2011
(202) 628-6600

ON BEHALF OF DEFENDANT UNITED STATES:

KEVIN B. CRAWFORD, ESQUIRE
UNITED STATES DEPARTMENT OF JUSTICE
Civil Division
Commercial Litigation Branch
1100 L Street, Northwest
Room #12128
Washington, D.C. 20530
(202) 307-1011



APPEARANCES CONTINUED

ON BEHALF OF DEFENDANT UNITED STATES:

WILLIAM L. OLSEN, ESQUIRE
UNITED STATES DEPARTMENT OF JUSTICE
Civil Division
Commercial Litigation Branch
1100 L Street, Northwest
Room #7002
Washington, D.C. 20530
(202) 305-7594

CONTENTS

EXAMINATION OF DAVE ZABRANSKY PAGE
By Mr. Blanton 13

EXHIBITS
(Attached to the Transcript)

ZABRANSKY DEPOSITION EXHIBIT PAGE
1 Federal Register Notice dated 4/18/83, "Standard Contract for Disposal of Spent Nuclear Fuel" 28
2 Letter dated 9/30/96 from R. Cocherell 34
3 Letter from B. Tomasoni to R. Cocherell 39
4 Instructions for Completing Appendix C Delivery Commitment Schedule 43
5 1995 Acceptance Priority Ranking and Annual Capacity Report 44
6 Federal Register Notice dated 2/4/83 65
7 Final Interpretation of DOE's Nuclear Waste Acceptance Issues 67



EXHIBITS CONTINUED
(Attached to the Transcript)

ZABRANSKY DEPOSITION EXHIBIT PAGE
8 1984 Civilian Radioactive Waste Program Mission Plan 83
9 1985 Civilian Radioactive Waste Program Mission Plan 98
10 Excerpts from 1985 Mission Plan 114
11 "FWMS Cases Requested by the DOE HQ" 123
12 Proposed Contract Changes, Revision O, 4/13/92 124
13 "Index to Tables of Issues Related to the Standard Contract" 127
14 Document, "Disposal Contract Modifications" dated 10/22/84 130
15 Document from files of D. Zabransky 138
16 Document with Subject: Potential Modifications to the Standard Disposal Contract 139
17 Meeting Notes dated 3/25/87 142
18 Letter from J. Kearney to B. Rusche 150

A 5



EXHIBITS CONTINUED
(Attached to the Transcript)

ZABRANSKY DEPOSITION EXHIBIT PAGE
19 Letter dated 4/28/87 from S. Kraft to C. Jedrey 164
20 Letter dated 10/2/87 from C. Jedrey to S. Kraft 166
21 Statement of Sol Burstein dated 3/19/87 171
22 Documents from the Wisconsin Production 173
23 Letter dated 8/29/88 from J. Kearney to C. Kay 179
24 UWASTE Presentation dated 5/16/89 189
25 UWASTE Report dated 2/16/90 193
26 Preliminary Projection of Spent Fuel Acceptance Rate 197
27 Letter dated 2/16/94 from S. Parker to D. Dums 199
28 Document dated 3/31/92, "ACR Response Team Meeting" 214



PROCEEDINGS

DAVID ZABRANSKY
having been duly sworn, testified as follows:

MR. BLANTON: Before I start asking Mr. Zabransky questions, I want to put on the record an understanding we have with the government's counsel that Mr. Zabransky's deposition has been noticed both as a fact witness and he's been designated by the government, as I understand it, as the government's 30(b)(6) representative as to certain topics. Somebody want to tell me --

MR. OLSEN: I believe topics eight and ten.

MR. BLANTON: Eight and ten of the plaintiff's deposition notice under Rule 30(b)(6).

What we have agreed to do is essentially conduct Mr. Zabransky's fact deposition first and all the lawyers will have their chance to ask Mr. Zabransky questions regarding his fact deposition, and then we will take his deposition on the topics as to which he's been designated the government's representative under Rule 30(b)(6).

MR. CRAWFORD: That sounds exactly like

what we've agreed to. And you might want to put the 30(b)(6) deposition under separate cover.

MR. BLANTON: Which is okay by me, too.

EXAMINATION BY COUNSEL FOR PLAINTIFFS SOUTHERN NUCLEAR OPERATING COMPANY, ALABAMA POWER COMPANY and GEORGIA POWER COMPANY

BY MR. BLANTON:

Q Mr. Zabransky, my name is Stan Blanton. I'm counsel to Southern Nuclear Operating Company, Alabama Power Company, and Georgia Power Company in litigation filed by those companies against the United States in the Federal Court of Claims on the standard contract for disposal of spent nuclear fuel and high-level waste within the Department of Energy.

We're taking your deposition today under coordinated discovery proceedings that exist in the Federal Court of Claims amongst other nuclear as well as other companies. And these other lawyers sitting here at the table represent other companies that have filed similar complaints against the Department of Energy.

What I would like to do today is ask you a



series of questions and perhaps show you some documents and ask you questions about those documents. If I at any time ask you a question that you don't understand, I want you to stop me and make me rephrase my question so you understand it. Will you do that for me?

A Yes, I will.

Q If I in trying to ask a question attempt to repeat some testimony you've given and you feel that I've mischaracterized your testimony, I would like for you to stop me and make me properly characterize what you feel your testimony has been as well. Will you do that?

A Yes.

Q The parties to this coordinated discovery proceeding have entered into something called a joint motion for entry of agreement and protective order, and attached to that is an agreement and protective order -- and by "parties" I mean all the utilities and the government -- which deals with the protection of confidential information in general. Have you had a chance to review that protective order?

A 6

A No, I haven't.

Q Okay. I've handed you and your lawyers a copy of the protective order --

A One moment.

Q What I would like for you to do is to take as long as you need to to review the protective order, and then when you get through reviewing it I'm going to ask you if you agree to abide by its terms concerning the protection of confidential information that might be disclosed to you during the course of deposition.

A Okay.

Q Have you reviewed the terms of the order governing the protection of confidential information that might be revealed to you during the course of the deposition?

A Yes.

Q Do you agree to abide by the terms of the order --

A Yes.

Q -- with respect to that information?

Okay. Thank you.



Mr. Zabransky, have you ever had your deposition taken before?

A Once, yes.

Q Then you know this lady at the end of the table is the court reporter and she's going to take down everything you say and everything I say and that she can't take down nods and that you and I need not talk at the same time or she'll get up and leave. Do you understand that?

A Yes.

Q Mr. Zabransky, what is your current position?

A Currently I'm the acting director of the Waste Acceptance and Transportation Division, Department of Energy, Office of Civilian Radioactive Waste Management.

Q How long have you been in that position?

A I believe since sometime in January, early January. This year.

Q Are you acting director because somebody who used to be the director left --

A Yes.

Q -- and has not been replaced?
A Yes.
Q Who is that person?
A James Carlson.
Q What was your position before you became acting director?
A Team leader, waste acceptance.
Q Who did you report to when you were team leader of waste acceptance?
A James Carlson.
Q Who do you report to now?
A Jeff Williams.
Q What is Mr. Williams' title?
A The acting director of the Office of Acceptance, Transportation, and Integration.
Q Do you know who Mr. Williams reports to?
A I believe he reports to the director and the deputy director of the program.
Q So in your current job there's essentially one level of organization between you and the deputy director of the program. Is that accurate?
A That's correct.



Q Am I understanding you?
When did you become team leader of waste acceptance?
A I believe that's when I came to the government in '94 was my original position. I think that's what it was back then.
Q Do you recall a date more specific than just 1994 when you joined the government?
A I believe it was July 8th or 10th, whatever the Monday was after the Fourth of July that year.
Q What did you do before that?
A Worked for Wisconsin Electric Power Company.
Q What was your last position with Wisconsin Electric?
A I was manager of nuclear fuel services.
Q And I may slip up sometime during the next two days and call Wisconsin Electric WEPCO.
A Same thing.
Q But the court reporter likes to know acronyms for real-time.
How long were you manager of nuclear fuel



services at Wisconsin Electric?
A It was a couple of years, maybe since '91. I'm not sure of the exact date.
Q And what did you do before that?
A I was a project engineer in nuclear fuel for a number of years.
Q Did you begin your career with Wisconsin Electric?
MR. CRAWFORD: Objection. Vague.
Q Well, did you have a job between your graduation from college and -- well, did you graduate from college?
A Yes.
Q Did you have a job between graduation from college and joining Wisconsin Electric?
A No.
Q All right. How about just tell me all the positions you had with Wisconsin Electric and the dates of them as best you can.
A After my graduation?
Q Right.
A After graduation I was a civil engineer in



the nuclear power department, which would have been sometime in 1980.
Q Okay.
A And I became a project engineer, nuclear power department, sometime after that. I believe in around '84 I became a contract administrator for nuclear fuel.
Q That was in 1984?
A Yeah, sometime around '84. Sometime after that I became a project engineer for nuclear fuel, and then I believe in '91 or thereabouts I was the manager of nuclear fuel services.
Q As the contract administrator for nuclear fuel, what were your duties?
A My duties were to negotiate and administer all the contracts for the procurement of nuclear fuel commodities for the Point Beach nuclear plant.
Q When you were in that position was the standard contract for disposal of spent nuclear fuel in your area of responsibility?
A Yes.
Q And that job started in 1984 did you say?

A 7

21

A I believe it was around '84, yes.
Q In your previous position as project engineer for nuclear fuel, did you have any responsibilities with respect to nuclear fuel contracts?
MR. CRAWFORD: Objection as to whether it properly characterizes his prior testimony.
MR. BLANTON: Okay.
Q Well, don't let me mischaracterize your testimony.
What were your responsibilities as project engineer for nuclear fuel?
A As project manager of nuclear fuel I had responsibilities for the contracts as well as some other functions such as nuclear material accountability, economic forecasting, rate case development.
Q The project engineer job came after your contract administrator job?
A That's correct.
Q Is that what I fouled up? Okay.
I should have asked in your civil

22

engineering job did you have any connection with nuclear fuel contracts and specifically the standard contract for disposal of spent nuclear fuel?
A No.
Q What were your responsibilities when you were manager of nuclear fuel -- services? Did I say that right?
A That's correct. Same as project engineer but also included transient analysis, core-design activities, spent-fuel storage activities.
Q Did the project engineers and contract administrators for nuclear fuel report to you when you were manager --
A Yes.
Q -- of nuclear fuel services?
All right. What were your areas of responsibility when you became the team leader for waste acceptance for the Department of Energy?
A Primary responsibility was issues and management of the standard contract and utility interface.
Q What all sorts of things did that include?

A 8

23

A It included the day-to-day administration of the contract, overview of the payment and verification process, acting as the contracting officer's technical representative, contacts with utilities as required to facilitate contract administration.
Q What was the difference between your responsibilities and the contracting officer's responsibilities with respect to the standard contract in that job?
A I provided technical input to the contracting officer for their consideration in making determinations under the contract.
Q Did your responsibilities as team leader stay in general the same from 1994 until January when you became acting director?
A They expanded in that I became responsible for other DOE activities related to other portions of the waste stream that would go to Yucca Mountain, for instance the interface, the activities related to the acceptance of government-owned materials.
Q Was there a particular time when they

24

expanded or was it a gradual process?
A I think it was a gradual process that expanded over time as people left and systems -- things evolved.
Q Okay.
A We went through a downsizing, and as a result there were fewer people and the same work.
Q Was there a particular time when the downsizing occurred?
A I think -- no, I don't recollect. There was a particular time where there was a reduction in force, but there was no particular time where it addressed this. People just moved to different places as a result of that.
Q Okay. How have your duties changed with your most recent position?
A I am responsible for the transportation aspects now also.
Q Are you still responsible for all the other stuff that you were responsible for?
A Yes.
Q Is there somebody else in the team leader

spot now?
A No.
Q Have those two positions been combined or is the team leader spot just vacant?
A I'm still a team leader for waste acceptance. I'm just the acting director of the division.
Q Have you done anything to prepare for your deposition today?
A I've reviewed the contract. In preparation for my 30(b)(6) deposition I've reviewed documents provided to me by counsel. And I've had discussion with counsel.
Q Have you had any discussions with anybody other than your counsel to prepare?
A I've had discussions with Nancy Slater in conjunction with counsel. In preparation for my 30(b)(6) deposition.
Q Okay. I'm not asking you about the 30(b)(6) deposition right now, just your fact deposition.
A Okay.



Q Have you had conversations with Nancy Slater outside the presence of counsel about your fact deposition?
A No.
Q How about with anybody else outside the presence of counsel about your fact deposition?
A No.
Q Have you reviewed any documents other than the standard contract?
A Not in preparation for my fact deposition.
Q Have you reviewed the complaints in the case, or any of them?
A No.
Q Have you reviewed any of the briefs filed by either of the parties?
A No.
I'd like to clarify my last answer.
Q Okay.
A I've not reviewed any briefs, complaints, or filings as -- in preparation for my deposition. Over the course of my job over the last years I've reviewed them and read them. I haven't reviewed them



recently.
Q Okay. You say "over the last years." There have been several lawsuits over the standard contract. Is that correct?
A That's correct.
Q And some of those have been in the Court of Appeals for the District of Columbia circuit, and some of them have been in the Court of Federal Claims. Are you aware of that?
A I'm aware of that.
Q Do you know whether you've read any of the briefs filed in the cases currently pending in the Court of Federal Claims?
MR. CRAWFORD: Well, let me object to this line as getting into areas of privilege. I mean --
MR. BLANTON: You served them on us.
MR. CRAWFORD: Right.
MR. BLANTON: They're not privileged.
MR. CRAWFORD: Well, whatever he's done in reviewing them and so forth, but, I mean, your question is proper as to with respect to what he's reviewed in terms of preparing for his deposition, but



his other work on the case I would think is privileged.
Q You're obviously aware today of what you've read in the past. Is that correct?
A In the past counsel has provided me some -- some of the briefs. Some of the complaints. I'm not sure all of them or which ones, and asked me to take a look at certain parts of them and comment. But I don't know which ones in particular. I can't recollect.
(Deposition Exhibit Zabransky 1 was marked for identification and was attached to the transcript.)
Q Mr. Zabransky, I'm handing you a document that's been marked as Exhibit 1 to your deposition, which, if all goes well, is a Federal Register notice dated Monday, April 18, 1983, entitled Standard Contract for Disposal of Spent Nuclear Fuel and/or High-Level Radioactive Waste. And after some background material there is what purports to be a form of the standard contract for disposal of spent nuclear fuel and/or high-level radioactive waste. Do

A 9

U.S. Department of Justice

Civil Division

FILE COPY

PDK:JED:HDL:AJLoRe
154-99-447

Telephone: (202) 307-0226
Fax: (202) 307-2503

Washington, D.C. 20530

April 11, 2007

VIA FACSIMILE AND UNITED STATES MAIL

Richard J. Conway, Esq.
Dickstein Shapiro LLP
1825 Eye Street, N.W.
Washington, DC 20006

Re: *Boston Edison Company v. United States*, No. 99-447C (Fed. Cl.)

Dear Mr. Conway:

We write in response to your April 5, 2007 letter regarding the recent depositions of Ronald Uleck, a current employee of the United States Nuclear Regulatory Commission ("NRC"), and David Zabransky, a current employee of the United States Department of Energy ("DOE"), whom the United States produced on March 28 and April 5, 2007, respectively, as designees to testify with respect to those topics contained in Boston Edison Company's ("Boston Edison") December 1, 2006 Rule 30(b)(6) deposition notice that the Court ruled to be permissible areas of discovery by order dated February 26, 2007.[1]

In your letter, in which you fail to provide any case law or other legal authority in support of Boston Edison's positions, you assert that both Mr. Uleck and Mr. Zabransky were not "prepared to testify on the Government's behalf," and you threaten to move to limit the use of Mr. Uleck's and Mr. Zabransky's testimony at trial should the United States refuse to allow Boston Edison the opportunity to take additional Government depositions in this matter. You further assert that the Government is somehow obligated to produce Mr. Michael Dusaniwskyj, a current NRC employee who has firsthand knowledge of the agency's review of the Pilgrim license transfer application, and Mr. Robert Morgan, a retired DOE employee whom Boston Edison already deposed extensively for two days in this case on March 21 and March 22, 2002, to testify at a deposition in this matter. We do not share your views regarding either issue. Messrs. Uleck and Zabransky were well prepared to testify upon the Government's behalf at their

[1] Specifically, subject to the limitations regarding the scope of those topics as set forth in the Court's February 26, 2007 order, the Government designated and produced Mr. Uleck on March 28, 2007, to testify as to Topic Nos. 2(g), 2(h), 7(b), 7(c), 7(d), and 7(e), and the Government designated and produced Mr. Zabransky on April 5, 2007, to testify as to Topic Nos. 2(b), 2(d), 2(e), 2(f), 2(h), 5, and 6 in Boston Edison's deposition notice.

depositions, and the United States is not obligated to produce any additional Government witnesses for depositions in this matter. Accordingly, we will oppose any effort by Boston Edison either to re-open the Government's Rule 30(b)(6) deposition, take any additional fact depositions of Government witnesses, or otherwise limit the ability of the Government to call Messrs. Uleck and Zabransky to testify at trial (should the Government elect to call these individuals as trial witnesses).[2]

As you are well aware, an organization named as a deponent pursuant to Rule 30(b)(6) "shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf," and such designee must testify "as to matters known or reasonable available to the organization." RCFC 30(b)(6). Thus, in the Federal courts, an individual designated to testify pursuant to Rule 30(b)(6) is required to testify "to the knowledge of the corporation, not the individual." See Poole v. Textron, Inc., 192 F.R.D. 494, 504 (D. Md. 2000) (emphasis in original). Consequently, the organization has a duty "to prepare the designees so that they may give knowledgeable and binding answers for the corporation, and this duty "goes beyond matters personally known to the designee or to matters in which the designee was personally involved." Id. (citation omitted). Hence, a Rule 30(b)(6) designee "does not give his personal opinions," but, rather, he presents the organization's "position" with respect to the topics at issue in the subject Rule 30(b)(6) deposition notice. United States v. Taylor, 166 F.R.D. 356, 361 (M.D.N.C. 1996) (citing cases).

Accordingly, "[t]here is no requirement that a Rule 30(b)(6) witness have first-hand knowledge of and involvement in the underlying transaction" or other relevant factual matters, Coram Healthcare Group v. Cigna, No. 00-2677, 2002 WL 32910044, at * 1 n.32 (S.D.N.Y. July 24, 2002) (citing Securities & Exchange Comm'n v. Morelli, 143 F.R.D. 42, 44 (S.D.N.Y. 1992)), and a party is thus free to designate any representative to testify upon its behalf. See Capital Properties, Inc. v. Untied States, 49 Fed. Cl. 607, 613 (citing cases). However, pursuant to Rule 30(b)(6), a organization must designate a representative to testify who "identif[ies] with the [organization's] interests." In re Honda American Motor Co., Inc. Dealership Relations Litig., 168 F.R.D. 535, 541 (D. Md. 1996). In this respect, Federal courts have long recognized that a party "is not required to designate a retired employee to serve as a [Rule] 30(b)(6) designee, because 'it cannot be supposed that . . . former employees would identify their interests with those of their former employers to such an extent that admissions by them should be held to bind the employer.'" Ierardi v. Lorillard, Inc., No. 90-7049, 1991 WL 158911, at *2 (E.D. Pa. Aug. 13, 1991) (citing Proseus v. Anchor Line, Ltd., 26 F.R.D. 165, 167 (S.D.N.Y. 1960); see Honda American, 168 F.R.D. at 541-42 (an organization is not obligated to designate former employees as Rule 30(b)(6) representatives). As a consequence, "it is not uncommon to have a situation, as in the instant case, where a corporation indicates that it no longer employs

---

[2] Presently, the Government does not intend to call either Mr. Dusaniwskyj or Mr. Uleck to testify at trial. However, if we ultimately decide to call Mr. Dusaniwskyj as a trial witness, in the interest of fairness, the Government would allow Boston Edison the opportunity to depose Mr. Dusaniwskyj prior to commencement of trial.

individuals who have memory of a distant event or that such individuals are deceased." Taylor, 166 F.R.D. at 361. In such cases, it is appropriate for an organization to prepare a current employee to testify as a Rule 30(b)(6) designee "to the extent matters are reasonably available, whether from documents, past employees, or other sources." Id. (citation omitted).

In light of these principles, Boston Edison's objections with respect to the Government's designation of Messrs. Zabransky and Uleck as Rule 30(b)(6) representatives are without merit. First, Boston Edison has no basis upon which to demand the Government's production of Mr. Morgan to testify with respect to those topics in Boston Edison's notice pertaining to the development of the "assignment provision" in the Standard Contract. Because Mr. Morgan has long since retired from Government service, the United States is under no obligation to produce him to testify upon its behalf. See Anchor Line, 26 F.R.D. 165, 167 (a party may not be examined through officers no longer in the organization's employ as it "cannot be supposed that...former employees would identify their interests with those of their former employer to such an extent that admissions by them should be held to bind the employer"). In addition, as mentioned previously, because Boston Edison already took an extensive deposition of Mr. Morgan in this litigation, which occurred over the course of two days on March 21, 2002, and March 22, 2002, Mr. Morgan's deposition in this matter is closed. In the event that Boston Edison seeks to depose Mr. Morgan again, Boston Edison must seek leave of court not only to re-open Mr. Morgan's deposition pursuant RCFC 30(a)(2)(B), but also to re-open fact discovery. See, e.g., Independence Park Apartments v. United States, 59 Fed. Cl. 765, 769 (2004) ("RCFC 30(a)(2)(B) expressly requires that a party seeking to depose an individual more than once must obtain leave from the Court to do so."). The United States will oppose any effort by Boston Edison to compel Mr. Morgan to testify at a deposition in this matter.

Likewise, contrary to Boston Edison's baseless claim, the Government is not obligated to produce Mr. Dusaniwskyj to testify in response to those topics contained in Boston Edison's Rule 30(b)(6) deposition notice that relate to the NRC's involvement in connection with the transfer of the Pilgrim operating license from Boston Edison to Entergy Nuclear Generation Company ("Entergy"). Although Mr. Dusaniwskyj may have firsthand knowledge of the NRC's involvement with respect to the NRC's review of the Pilgrim license transfer, the United States is free to choose an appropriate officer from the NRC whose testimony shall bind the Government for purposes of this litigation, and the Government's designee need not have percipient knowledge of relevant factual events. See Coram, 2002 WL 32910044, at *13 n.32 ("There is no requirement that a Rule 30(b)(6) witness have first-hand knowledge of and involvement in the underlying transaction."). Pursuant to Rule 30(b)(6), it is the Government's prerogative to select and educate an appropriate witness to testify upon behalf of the United States, and Boston Edison is not entitled to choose an individual that it deems to be the best suited to testify as the Government's Rule 30(b)(6) designees. See Capital Properties, 49 Fed. Cl. at 613 (citing cases); Morelli, 143 F.R.D. at 44. Accordingly, contrary to the suggestion in your letter, in no way did

the United States act improperly by designating Mr. Uleck, as opposed to Mr. Dusaniwskyj, as its Rule 30(b)(6) representative in this matter.[3]

Further, to the extent that Boston Edison's objects to Messrs. Uleck's and Zabransky's degree of preparedness to testify during their depositions, we take exception to your position. Contrary to the assertions in your letter, the Government properly educated and prepared Messrs. Uleck and Zabransky to testify in response to the designated topics contained in Boston Edison's notice. As Messrs. Uleck and Zabransky testified, both individuals spent numerous days, over the course of several weeks, preparing for their depositions. In particular, in preparation for his testimony, Mr. Uleck interviewed the relevant NRC employees who participated in the agency's review of the Pilgrim license transfer (including, among others, Mr. Dusaniwsky, with whom he spoke on multiple occasions in preparation for his deposition), reviewed the files that the agency maintained in connection with the transfer, and otherwise spent significant time reading pertinent documents relating to the sale. Indeed, as a financial analyst with nearly 20 years of work experience at the NRC, including significant experience in reviewing license transfer applications, Mr. Uleck was particularly well suited to testify in response to Boston Edison's deposition notice, and Mr. Uleck provided educated and well-informed responses to Boston Edison's counsel's questions during his deposition.

Mr. Zabransky – whom, like Mr. Morgan, Boston Edison previously deposed in this litigation on April 17-19, 2002, and April 26, 2002 – also prepared himself adequately to testify as to those topics for which he was designated to provide testimony. With respect to those topics relating to the purpose and effect of the "assignment provision" of the Standard Contract, Mr. Zabransky prepared himself by speaking to the four known surviving individuals who participated in the drafting of the Standard Contract upon behalf of the Government, namely, Robert Roselli, Mr. Michael Lawrence, Mr. James Cavanaugh, and Mr. Morgan, all of whom have previously been deposed during the course of the spent nuclear fuel litigation. Mr. Zabransky also reviewed various documents produced in this litigation and read portions of the administrative record in connection with DOE's promulgation of the Standard Contract in an effort to determine the meaning of the purpose and effect of the assignment provision.[4]

---

[3] Further, in light of the fact that Boston Edison has retained Mr. Robert Wood – a former NRC official who participated in the NRC's review of the Pilgrim license transfer from Boston Edison to Entergy – as a paid consultant in this case, Boston Edison presumably has known, well before Mr. Uleck's deposition, that Mr. Dusaniwskyj might possess relevant firsthand knowledge. Nonetheless, at no point during the discovery period in this case did Boston Edison request to depose Mr. Dusaniwskyj as a percipient fact witness. Now, after the close of discovery, it is inappropriate for Boston Edison to seek Mr. Dusaniwskyj's deposition, either as a fact witness or as a Rule 30(b)(6) representative of the United States, and, accordingly, the Government will oppose any effort by Boston Edison to take his deposition at this stage of the case.

[4] In your letter, you erroneously state that "Mr. Zabransky did not review the administrative record related to the promulgation of the Standard Contract, relying instead on counsel to review the record for him." To the contrary, as he testified during his deposition, Mr. Zabransky read various

Similarly, with respect to Topic No. 2(h), relating to the Government's expectations at the time that the Standard Contract was entered with respect to future onsite dry storage, and Topic Nos. 5 and 6, relating to the estimated costs and potential liabilities in connection with DOE's delay in performance, Mr. Zabransky testified that he spent significant time reviewing relevant portions of the trial testimony that Mr. Morgan provided during the course of another spent nuclear fuel case, in which Mr. Morgan addressed similar questions, and Mr. Zabransky also read numerous other documents that have been produced in this litigation, including, in particular, DOE's dry cask storage study, which DOE published in 1989. Indeed, because Mr. Zabransky spent significant time during his preparation reviewing such written materials as well as conferring with various DOE employees, including the known surviving DOE employees who participated upon behalf of the Government in the drafting of the Standard Contract in 1983, and given Mr. Zabransky's unique status as the current DOE contracting officer with regard to the Standard Contract, it is particularly disingenuous for Boston Edison to suggest that Mr. Zabransky was unprepared or otherwise unqualified to offer educated testimony in response to Boston Edison's deposition notice.[5]

Thus, Messrs. Ulეck and Zabransky satisfied their obligation to prepare accordingly in connection with these topics, and Boston Edison's baseless assertion that these witnesses were somehow unprepared or unqualified to testify as to these matters is unfounded. Indeed, in accordance with Rule 30(b)(6), Messrs. Ulеck and Zabransky prepared themselves properly to testify "to the extent matters [were] reasonably available, whether from documents, past employees, or other sources."[6] Taylor, 166 F.R.D. at 361. Accordingly, the Government

---

portions of the administrative record in preparation for his deposition. Further, the fact that Mr. Zabransky reviewed the administrative record at the request of the Government's counsel, and not as a result of his own individual planning, does not somehow taint or otherwise undermine the level of Mr. Zabransky's preparation, as Boston Edison seems to suggest. Indeed, it is counsel's duty to bring potentially relevant information to the attention of a designee that will testify upon behalf of his or her client as a Rule 30(b)(6) representative. See, e.g., Poole, 192 F.R.D. at 504 ("Counsel for the entity should prepare the designated witness to be able to provide meaningful information about any designated area(s) of inquiry.") (citation omitted).

5 Contrary to the assertion in your letter, Mr. Zabransky was under no obligation to review "the legislative history of the [Nuclear Waste Policy Act]" or to "obtain any information from sources outside of DOE regarding why and how that provision was mandated by Congress" in preparation for his deposition. The legislative history of the Nuclear Waste Policy Act is a topic that goes well beyond the scope of Boston Edison's deposition notice. In fact, the Government's understanding of the Nuclear Waste Policy Act was the subject of prior depositions during the coordinated discovery process. Indeed, as you are aware, in its February 26, 2007 order, the Court struck Topic No. 1 from Boston Edison's deposition notice, which sought testimony from the Government regarding the history of the nuclear industry and the effect of the Nuclear Waste Policy Act thereon.

6 To the extent that Mr. Zabransky or Mr. Ulеck was unable to provide Boston Edison with a definitive answer in response to certain questions that Boston Edison's counsel posed during their

properly discharged its obligations pursuant to Rule 30(b)(6), and we will oppose any effort by Boston Edison either to re-open the Government's Rule 30(b)(6) deposition or to take any additional fact depositions of Government witnesses at this stage of the litigation.

As always, please contact us if you have any questions or concerns with respect to this matter.

Sincerely,

Alan J. Lo Re /PBB

ALAN J. LO RE
Senior Trial Counsel
Commercial Litigation Branch

cc: Alex D. Tomaszczuk, Esq.
L. Jager Smith, Jr., Esq.

---

depositions, such a fact alone does not entitle Boston Edison to seek another Rule 30(b)(6) deponent of its choosing, particularly given that the Government and its designees made a good faith effort to prepare properly for the depositions. See, e.g., Boland Marine & Mfg. Co., Inc. v. M/V Bright Field, No. 97-3087, 1999 WL 280541, at *3 (E.D. La. May 3, 1999) (refusing to order party to re-produce Rule 30(b)(6) designee where party made a good-faith effort to prepare the designee to testify, notwithstanding the fact that the designee was unable to answer certain questions posed by counsel during the deposition). Indeed, to the extent that Boston Edison intended to ask certain specific questions of the Government's designee(s), Boston Edison should have narrowed its Rule 30(b)(6) deposition notice to reflect with specificity the areas of inquiry regarding which it sought to depose the Government. See, e.g., Prokosch v. Catalina Lighting, Inc., 193 F.R.D. 633, 638 (D. Minn. 2000) (For Rule 30(b)(6) to function effectively, the requesting party "must take care to designate, with painstaking specificity, the particular subject areas that are intended to be questioned, and that are relevant to the issues in dispute") (emphasis added).